# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 1:12-CV-00282 (RGA) |
| v. | )<br>) |
| JPMORGAN CHASE & CO., | ) JURY DEMANDED<br>)<br>) |
| Defendant. | )<br>)<br>) |

## JPMORGAN CHASE & CO.'S ANSWER TO
## PI-NET INTERNATIONAL, INC.'S COMPLAINT

Defendant JPMorgan Chase & Co. ("JPMC"), for its Answer to the Complaint of Pi-Net International, Inc. ("Pi-Net" or "Plaintiff"), responds as follows:

### The Parties

1. JPMC admits that Plaintiff is a California corporation. JPMC lacks sufficient information to admit or deny whether Plaintiff maintains its principal place of business at 222 Stanford Avenue, Menlo Park, California 94025, and therefore denies this allegation. JPMC further denies the remaining allegations of paragraph 1 of the Complaint.

2. JPMC admits that the patents asserted here list on their faces Lakshmi Arunachalam as inventor, but otherwise denies the allegations of paragraph 2 of the Complaint.

3. JPMC admits that JPMorgan Chase & Co. is a Delaware corporation with a registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801. JPMC admits that it maintains an

office at 270 Park Avenue, New York, New York.  JPMC admits that it is a global financial services firm that operates in various locations, including the United States of America.  JPMC admits that its Form 10-K for the fiscal year ended December 31, 2011 states that it has $2.3 trillion in assets and $183.6 billion in stockholders' equity as of December 31, 2011.  JPMC admits that it conducts business in the fields of investment banking, financial services for consumers and small businesses, commercial banking, financial transaction processing, asset management, and private equity.  JPMC otherwise denies the allegations of paragraph 3 of the Complaint.

## Jurisdiction and Venue

4. JPMC admits that Plaintiff's Complaint purports to allege an action for patent infringement under Title 35, United States Code.  JPMC admits that subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a).  JPMC lacks sufficient information to admit or deny whether Plaintiff is the assignee of the patents-in-suit with standing to sue, and on that basis denies that the Court has subject matter jurisdiction.  JPMC further denies having committed an act of patent infringement in this or any other district.

5. JPMC admits the allegations of paragraph 5 of the Complaint.

6. JPMC admits the allegations of paragraph 6 of the Complaint.

## Background

7. JPMC admits that U.S. Patent No. 5,987,500 (the "'500 Patent") on its face lists November 16, 1999 as its issue date, "Value-Added Network System for Enabling Real-Time, By-Directional Transactions on a Network" as its title, Lakshmi Arunachalam as its inventor, and Pi-Net International, Inc. as its assignee.  JPMC further admits that a copy of the '500 Patent

is attached to the Complaint as Exhibit A. JPMC otherwise denies the allegations of paragraph 7 of the Complaint.

8. JPMC admits that U.S. Patent No. 8,037,158 (the "'158 Patent") on its face lists October 11, 2011 as its issue date, "Multimedia Transactional Services" as its title, and Lakshmi Arunachalam as its inventor. JPMC further admits that a copy of the '158 Patent is attached to the Complaint as Exhibit B. JPMC otherwise denies the allegations of paragraph 8 of the Complaint.

9. JPMC admits that U.S. Patent No. 8,108,492 (the "'492 Patent") on its face lists January 31, 2012 as its issue date, "Web Application Network Portal" as its title, and Lakshmi Arunachalam as its inventor. JPMC further admits that a copy of the '492 Patent is attached to the Complaint as Exhibit C. JPMC otherwise denies the allegations of paragraph 9 of the Complaint.

10. JPMC admits that http://www.chase.com; http://www.jpmorgan.com; and http://www.jpmorgansecurities.com are websites. JPMC denies that the screenshot provided in paragraph 10 displays technology embodying the claims of the patents-in-suit. JPMC further denies the remaining allegations of paragraph 10 of the Complaint.

11. JPMC denies the allegations of paragraph 11 of the Complaint.

12. JPMC admits that http://www.jpmorgan.com is a website. JPMC otherwise denies the allegations of paragraph 12 of the Complaint.

13. JPMC denies the allegations of paragraph 13 of the Complaint.

## COUNT I

(Infringement of the '500 Patent)

14. Paragraph 14 of the Complaint contains no averments. To the extent there are averments in paragraph 14, JPMC denies them.

15. JPMC denies the allegations of paragraph 15 of the Complaint.

16. JPMC denies the allegations of paragraph 16 of the Complaint.

## COUNT II

(Infringement of the '158 Patent)

17. Paragraph 17 of the Complaint contains no averments. To the extent there are averments in paragraph 17, JPMC denies them.

18. JPMC denies the allegations of paragraph 18 of the Complaint.

19. JPMC denies the allegations of paragraph 19 of the Complaint.

## COUNT III

(Infringement of the '492 Patent)

20. Paragraph 20 of the Complaint contains no averments. To the extent there are averments in paragraph 20, JPMC denies them.

21. JPMC denies the allegations of paragraph 21 of the Complaint.

22. JPMC denies the allegations of paragraph 22 of the Complaint.

23. JPMC denies the allegations of paragraph 23 of the Complaint.

24. JPMC denies all allegations in the Complaint that are not otherwise specifically admitted in this Answer.

25. JPMC requests that the Court deny the relief requested by Plaintiff in the paragraph of the Complaint titled "PRAYER FOR RELIEF."

## AFFIRMATIVE DEFENSES

26. JPMC's Affirmative Defenses are listed below. JPMC reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

### (Generally Applicable Affirmative Defenses)

27. Each of paragraphs 1-26 are hereby incorporated by reference.

28. All relief requested by Plaintiff should be denied for lack of subject matter jurisdiction because Plaintiff lacks standing to sue.

29. The allegations of the Complaint fail to state a claim upon which relief can be granted.

30. The relief requested by Plaintiff is barred, in whole or in part, to the extent Plaintiff has failed to comply with the requirements of 35 U.S.C. § 287.

### (Affirmative Defenses Related to the '500 Patent)

31. Each of paragraphs 1-30 are hereby incorporated by reference.

32. JPMC has not infringed and is not infringing the '500 Patent either directly or by inducing or contributing to infringement by others literally or under the doctrine of equivalents.

33. JPMC has not willfully infringed and is not willfully infringing the '500 Patent.

34. The '500 Patent is invalid, void and unenforceable because it fails to meet the conditions for patentability set forth in Title 35 of the United States Code including, but not limited, to 35 U.S.C. §§ 101, 102, 103 and 112 thereof.

35. The relief requested by Plaintiff related to the '500 Patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

36. The '500 Patent was procured by inequitable conduct by one or more of the inventor, her assignee, and/or their attorneys and/or agents and/or others owing a duty of candor to the United States Patent and Trademark Office (the "USPTO"). The inventor, her assignee and/or their attorneys and/or agents and/or others owing a duty of candor to the USPTO failed to disclose information that, but for the failure, would have precluded issuance of one or more claims of the '500 Patent. In addition, the failure to disclose the information was intentional to prevent the USPTO from learning that the inventor did not invent what her patent identifies as "core" concepts to the invention. Therefore, the '500 Patent is unenforceable. The inequitable conduct committed is described as follows and is subject to further amendment as JPMC obtains additional information during discovery.

   i. The application for the '500 Patent was filed on June 20, 1997 as a divisional application of, and claiming priority to, U.S. Patent No. 5,778,178 (the "'178 Patent").

   ii. Both the '178 Patent and the '500 Patent claim priority to a provisional application filed in the USPTO on November 13, 1995 ("the '634 Provisional Application").

   iii. The specification and drawings of the '178 Patent and the '500 Patent are identical.

   iv. Claims 19-34 of the '500 Patent are virtually identical to claims 1-16 of the '178 Patent with the only difference being that the phrase "World Wide Web" in claims 1-16 of the '178 Patent is replaced with the word "network" in claims 19-34 of the '500 Patent. By way of example, the table below contains

the text of claims 1-8 of the '178 Patent and the text of the virtually identical claims 27-34 of the '500 Patent (differences between claims are <u>underlined</u>):

| *Claims 1-8 of the '178 Patent* | *Claims 27-34 of the '500 Patent* |
|---|---|
| 1. An object router on a <u>World Wide Web</u>, said object router comprising: | 27. An object router on a <u>network</u>, said object router comprising: |
| means for associating an object identity with information entries and attributes, wherein the object identity represents a networked object; | means for associating an object identity with information entries and attributes, wherein the object identity represents a networked object; |
| means for storing said information entries and said attributes in a virtual information store; and | means for storing said information entries and said attributes in a virtual information store; and |
| means for assigning a unique network address to said object identity. | means for assigning a unique network address to said object identity. |
| 2. The object router in claim <u>1</u> wherein said means for associating said object identity with said information entries and said attributes in said virtual information store further includes means for associating a name, a syntax and an encoding for said object identity. | 28. The object router in claim <u>27</u> wherein said means for associating said object identity with said information entries and said attributes in said virtual information store further includes means for associating a name, a syntax and an encoding for said object identity. |
| 3. The object router in claim <u>2</u> wherein said name of said object identity specifies an object type. | 29. The object router in claim <u>28</u> wherein said name of said object identity specifies an object type. |
| 4. The object router in claim <u>3</u> wherein said object type and an object instance uniquely identify an instantiation of said object type. | 30. The object router in claim <u>29</u> wherein said object type and an object instance uniquely identify an instantiation of said object type. |
| 5. The object router in claim <u>4</u> wherein said syntax defines a data structure for said object type. | 31. The object router in claim <u>30</u> wherein said syntax defines a data structure for said object type. |
| 6. The object router in claim <u>1</u> further comprising means for utilizing said unique network address to identify and route said object identity on the <u>World Wide Web</u>. | 32. The object router in claim <u>27</u> further comprising means for utilizing said unique network address to identify and route said object identity on the <u>network</u>. |
| 7. The object router in claim <u>1</u> further | 33. The object router in claim <u>27</u> further |

7

| | |
|---|---|
| comprising means for utilizing said unique network address to identify and route said object identity on the Internet. | comprising means for utilizing said unique network address to identify and route said object identity on the Internet. |
| 8. The object router in claim 1 further comprising the step of utilizing said unique network address of said object identity to perform Operations, Administration, Maintenance & Provisioning (OAM&P) functions. | 34. The object router in claim 27 further comprising the step of utilizing said unique network address of said object identity to perform Operations, Administration, Maintenance & Provisioning (OAM&P) functions. |

    v.    Upon information and belief, patent applicant Arunachalam authored the '634 Provisional Application, the patent application that led to the issuance of the '178 Patent (the "'178 Application"), and the patent application that led to the issuance of the '500 Patent (the "'500 Application").

    vi.    In prosecuting the '634 Provisional Application, the '178 Application, and the '500 Application, patent applicant Arunachalam had a duty of candor and good faith in dealing with the USPTO, which included the duty to disclose to the USPTO all information known to her that was material to patentability.

    vii.    Indeed, as part of the '500 Application, patent applicant Arunachalam executed a declaration in which she stated that (i) she was the original, first, and sole inventor of the subject matter which was claimed and for which a patent was sought; (ii) she had reviewed and understood the contents of the specification and that she did not believe that its contents were described in any printed publications before her invention; and (iii) she acknowledged her duty to disclose information material to the patentability of her patent application.

    viii.    The text of the '178 Application and the '500 Application include concepts and verbatim passages that were copied from RFC 1213 ("Management Information

8

Base for Network Management of TCP/IP-Based Internets"), which was published in March 1991. This reference was not disclosed to the USPTO during prosecution of either the '178 Application or the '500 Application.

ix. On information and belief, patent applicant Arunachalam either performed that copying herself or, at the very least, was aware of such copying prior to, or during, the prosecution of the '178 Application and the '500 Application.

x. The length of some of the passages that appear verbatim indicates that someone must have copied these passages into the '178 Application and the '500 Application from the prior art references.

xi. Moreover, the manner in which the copied text is presented demonstrates an intention to deceive the reader of the '178 Patent and the '500 Patent into believing that the concepts described are part of a proprietary solution invented by patent applicant Arunachalam.

xii. Some of the copied text is provided below:

| *Text from RFC 1213* | *'500 Patent Specification*<br>(column 7, lines 64–65, column 8, lines 19–23, 27–31; claims 19, 20, 27, and 28) |
|---|---|
| Managed objects are accessed via **a virtual information store**, termed the Management Information Base or MIB. Objects in the MIB are defined using Abstract Syntax Notation One (ASN.1) [8] defined in the [Internet standard] SMI. | DOLSIBs are **virtual information stores** optimized for networking. (column 7, lines 64–65)<br><br>. . . **in a virtual information store** . . . (claims 19, 27) |
| In particular, **each object has a name, a syntax, and an encoding. The name is an object identifier, an administratively assigned name, which specifies an object** | **Each object** in the DOLSIB **has a name, a syntax and an encoding. The name is an administratively assigned object ID specifying an object type. The object type** |

9

| | |
|---|---|
| **type. The object type together with an object instance serves to uniquely identify a specific instantiation of the object.** For human convenience, we often use a textual string, termed the OBJECT DESCRIPTOR, to also refer to the object type. | **together with the object instance serves to uniquely identify a specific instantiation of the object.** (column 8, lines 19–23)<br><br>. . . in said virtual information store further includes the step of associating **a name, syntax and an encoding** for said object identity. (claims 20, 28) |
| **The syntax of an object type defines the abstract data structure corresponding to that object type.** The ASN.1 language is used for this purpose. However, the SMI [12] purposely restricts the ASN.1 constructs which may be used. These restrictions are explicitly made for simplicity. | . . . **The syntax of an object type defines the abstract data structure corresponding to that object type.** (column 8, lines 27–29) |
| The encoding of an object type is simply how that object type is represented using the object type's syntax. Implicitly tied to the notion of an object type's syntax and encoding is **how the object type is represented when being transmitted on the network.** The SMI specifies the use of the basic encoding rules of ASN.1 [9], subject to the additional requirements imposed by the SNMP. | Encoding of objects defines **how the object is represented by the object type syntax while being transmitted over the network.** (column 8, lines 29–31) |

xiii. Patent applicant Arunachalam included the above copied text in a section of the '500 Patent (between column 7, line 42 and column 8, line 31) which describes the "VAN switch 520." Patent applicant Arunachalam described the VAN switch 520 as "one significant aspect of the present invention." (column 8, lines 54–55)

xiv. In describing the VAN switch 520, patent applicant Arunachalam stated that "VAN switch 520 provides multi-protocol object routing, depending upon the specific VAN services chosen. This multi-protocol object routing is provided

10

via a proprietary protocol, TransWeb™ Management Protocol (TMP). . . . One embodiment of the present invention utilizes TMP and distributed on-line service information bases (DOLSIBs) to perform object routing." ('500 Patent, column 7, lines 52–63)

xv. As described above, patent applicant Arunachalam's description of DOLSIBs as a "virtual information store" where "each object . . . has a name, a syntax and an encoding" was copied from RFC 1213. That concept was not the applicant's at all. Yet the concept of using DOLSIBs was described as a critical and core element of how the applicant's allegedly "proprietary" TMP object routing would work.

xvi. Given that this concept was instead copied from a prior art industry standard verbatim, applicant's representation in the '500 Patent itself that the concept was proprietary to the applicant is a material misrepresentation of fact that was never cured.

xvii. Moreover, that misrepresentation was relied on by the USPTO to distinguish claims of the '500 Patent over the prior art of record. For example, during prosecution of the '500 Patent, the examiner rejected several then-pending application claims based on an article by Andrew Davidson from *Dr. Dobb's Journal* called "Coding with HTML forms: HTML goes interactive." In response, the applicant introduced new claims 36–51 and with that amendment, the applicant argued that Davidson did not disclose the "object identity" being claimed. Specifically, the applicant asserted that the object identity being claimed in newly introduced claims 36–51 was "used to uniquely identify and

11

access the object from the virtual information store." ('500 Patent File History, Amendment of March 30, 1999 at page 12.)

xviii. That discussion is a direct reference to the object identity description in column 8, lines 19–32 that patent applicant Arunachalam copied from a prior art reference. If the examiner had been informed that the text relied upon by the applicant to distinguish claims 36–51 over Davidson was based on a prior art reference, the examiner would not have allowed claims 36–51 over Davidson. Rather, the examiner would have rejected the claims as obvious over Davidson in view of RFC 1213.

xix. Therefore, but for the applicant's failure to disclose the prior art references from which it copied text into the patent, at least application claims 36-51 would not have issued. Thus, at a minimum, RFC 1213 is material under the "but-for" standard and applicant's description of copied sections as core elements is a material misrepresentation based on that reference. The USPTO relied on that material misrepresentation.

xx. Similar concepts from two other references – namely, RFC 1155 ("Structure and Identification of Management Information for TCP/IP-based Internets"), published in May 1990, and RFC 1157 ("A Simple Network Management Protocol (SNMP)"), published in May 1990 – appear in the '500 Patent.

xxi. Patent applicant Arunachalam did not disclose any of the three RFC references to the USPTO or tell the USPTO that portions of the '178 Application and the '500 Application had been copied from those prior art references.

xxii. Patent applicant Arunachalam and/or her attorneys had to have known about the prior art references for someone to have copied the text into the '178 Patent and the '500 Patent.

xxiii. Since those references were published as Internet Standards in 1990 and 1991, they are clearly prior art.

xxiv. Patent applicant Arunachalam has been aware of these Internet Standards since 1994 at the latest, and during the entire pendency of the '634 Provisional Application, the '178 Application, and the '500 Application.

xxv. On information and belief, patent applicant Arunachalam even referenced these Internet Standards in a company business plan, dated September 1, 1995.

xxvi. On information and belief, patent applicant Arunachalam intentionally removed the references to these Internet Standards from this September 1, 1995 business plan before filing it in the USPTO as the '634 Provisional Application to which the '178 Application and the '500 Application claim priority.

xxvii. These Internet Standards, and the fact that content in the '500 Application (including content repeated in at least one of the claims) was copied from the Internet Standards, constituted highly material information that a reasonable USPTO examiner would have considered important in deciding patentability, and that would have led to the rejection of some or all of the claims in the '500 Application but for the withholding.

xxviii. Patent applicant Arunachalam admitted that she should have, but failed to, disclose the documents recited in paragraphs i and xiii, above, to the USPTO. Specifically, on February 13, 2009, patent applicant Arunachalam filed a Duty

13

of Candor disclosure under 37 C.F.R. § 1.56 for the application that issued as the '158 Patent ("the '158 Application"), which claims priority to the '500 Patent, the '178 Patent, and the '634 Provisional Application. In this document, patent applicant Arunachalam admits to her failure to disclose prior art, stating that "[t]he inventor admits that these documents were not disclosed to the Patent Office in the previous cases since she did not know of them, and that there is language in her specification that is similar to that contained in those documents."

xxix. Yet, patent applicant Arunachalam intentionally withheld this information from the USPTO. Patent applicant Arunachalam must have withheld this information with the intention of deceiving the USPTO into believing that she had invented these concepts, knowing in fact they had been copied from elsewhere. That patent applicant Arunachalam intended to deceive the USPTO is the only reasonable inference that can be drawn from the fact that she knew of the information, knew of its materiality, represented to the USPTO that the information was her own, and chose to withhold the actual source of the information, thus falsely leading the USPTO to believe that the subject matter described and claimed in the '178 Application and the '500 Application was her own.

xxx. The USPTO ordered *ex parte* reexamination of the '178 Patent on January 23, 2009 in view of four references, including RFC 1213. On October 4, 2010, the USPTO issued a final rejection of all claims of the '178 Patent in view of

14

    references, including RFC 1213, thus demonstrating the materiality of RFC 1213 under the but-for standard.

 xxxi. On information and belief, patent applicant Arunachalam's statement to the USPTO in her Duty of Candor disclosure documents that she did not know of the Internet Standards during the pendency of the '634 Provisional Application, the '178 Application, and the '500 Application is false as she intentionally removed references to them from her company's business plan prior to filing it as the '634 Provisional Application. Thus, patent applicant Arunachalam's inequitable conduct before the USPTO continues and is ongoing.

 xxxii. Patent applicant Arunachalam is clearly aware that the withheld prior art references are material to the patentability of the '500 Patent given the fact that she is prosecuting the '178 Patent reexamination herself. However, she has never filed a Duty of Candor disclosure statement to the USPTO regarding the '500 Patent, has never requested an *ex parte* reexamination of the '500 Patent based on the withheld references and has instead sought to enforce the '500 Patent against JPMC.

37. Paragraph 36 is hereby incorporated by reference. Plaintiff's actions described in paragraph 36 constitute affirmative egregious misconduct. Therefore, the '500 Patent is unenforceable.

38. For the reasons explained in paragraph 36, and subject to further amendments as JPMC obtains more information during discovery, Plaintiff is guilty of unclean hands, which precludes it from enforcing the '500 Patent against JPMC.

15

39. Plaintiff is barred from enforcing the '500 Patent against JPMC pursuant to the doctrine of laches.

40. Plaintiff is barred from asserting the '500 Patent against JPMC pursuant to the doctrine of equitable estoppel.

41. Under 35 U.S.C. § 286, Plaintiff cannot recover damages for any infringement of the '500 Patent committed more than six years prior to the filing of the Complaint.

**(Affirmative Defenses Related to the '158 Patent)**

42. Each of paragraphs 1-30 are hereby incorporated by reference.

43. JPMC has not infringed and is not infringing the '158 Patent either directly or by inducing or contributing to infringement by others literally or under the doctrine of equivalents.

44. JPMC has not willfully infringed and is not willfully infringing the '158 Patent.

45. The '158 Patent is invalid, void and unenforceable because it fails to meet the conditions for patentability set forth in Title 35 of the United States Code including, but not limited, to 35 U.S.C. §§ 101, 102, 103 and 112 thereof.

46. The relief requested by Plaintiff related to the '158 Patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

47. The '158 Patent is unenforceable pursuant to the doctrine of inequitable conduct. The allegations relating to inequitable conduct in prosecution of the '500 Patent and the '178 Patent, as described in paragraph 36, are hereby incorporated by reference. The '158 Patent shares a specification with and traces priority to the '500 Patent and the '178 Patent. As described in paragraph 36, Plaintiff committed inequitable conduct during prosecution of the '500 Patent and the '178 Patent by copying both concepts and text from prior art references into the specification and claims. Moreover, Plaintiff's inequitable conduct continues and is

16

ongoing as she has made false statements to the USPTO in Duty of Candor disclosures filed during prosecution of the '158 Application. This broad pattern of inequitable conduct is immediately and necessarily related to Plaintiff's attempts to enforce the '158 Patent, and therefore renders the '158 Patent unenforceable at least under the doctrine of infectious inequitable conduct.

48. Paragraphs 36 and 47 are hereby incorporated by reference. Plaintiff's actions described in paragraphs 36 and 47 constitute affirmative egregious misconduct. Therefore, the '158 Patent is unenforceable.

49. For the reasons explained in paragraph 47, and subject to further amendments as JPMC obtains more information during discovery, Plaintiff is guilty of unclean hands, which precludes it from enforcing the '158 Patent against JPMC.

50. Plaintiff is barred from asserting the '158 Patent against JPMC pursuant to the doctrine of equitable estoppel.

**(Affirmative Defenses Related to the '492 Patent)**

51. Each of paragraphs 1-30 are hereby incorporated by reference.

52. JPMC has not infringed and is not infringing the '492 Patent either directly or by inducing or contributing to infringement by others literally or under the doctrine of equivalents.

53. JPMC has not willfully infringed and is not willfully infringing the '492 Patent.

54. The '492 Patent is invalid, void and unenforceable because it fails to meet the conditions for patentability set forth in Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112 thereof.

55. The relief requested by Plaintiff related to the '492 Patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

56. The '492 Patent is unenforceable pursuant to the doctrine of inequitable conduct. The allegations relating to inequitable conduct in prosecution of the '500 Patent and the '178 Patent, as described in paragraph 36, are hereby incorporated by reference. The '492 Patent shares a specification with and traces priority to the '500 Patent and the '178 Patent. As described in paragraph 36, Plaintiff committed inequitable conduct during prosecution of the '500 Patent and the '178 Patent by copying both concepts and text from prior art references. Moreover, Plaintiff's inequitable conduct continues as she has made false statements to the USPTO in a Duty of Candor disclosure filed during prosecution of the '158 Application from which the '492 Patent claims priority. This broad pattern of inequitable conduct is immediately and necessarily related to Plaintiff's attempts to enforce the '492 Patent, and therefore renders the '492 Patent unenforceable at least under the doctrine of infectious inequitable conduct.

57. Paragraphs 36 and 56 are hereby incorporated by reference. Plaintiff's actions described in paragraphs 36 and 56 constitute affirmative egregious misconduct. Therefore, the '492 Patent is unenforceable.

58. For the reasons explained in paragraph 56, and subject to further amendments as JPMC obtains more information during discovery, Plaintiff is guilty of unclean hands, which precludes it from enforcing the '492 Patent against JPMC.

59. Plaintiff is barred from asserting the '492 Patent against JPMC pursuant to the doctrine of equitable estoppel.

**PRAYER FOR RELIEF**

WHEREFORE, JPMC demands judgment in its favor:

a. Entering judgment against Plaintiff and dismissing with prejudice the Complaint against JPMorgan Chase & Co.;

b. Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding JPMC their costs and attorneys' fees; and

c. Awarding any such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

JPMC demands a trial by jury on all issues so triable.

Dated: May 23, 2012

*/s/ Robert S. Saunders*
Robert S. Saunders (ID No. 3027)
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
*Attorney for Defendant*

*Of Counsel*
Daniel A. DeVito
Douglas R. Nemec
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
*Attorneys for Defendant*