```
1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3

4    PI-NET INTERNATIONAL INC    : CA No. 12-280-RGA,

5                                :   12-281-RGA,

6              Plaintiff,        :   12-282-RGA,

7                                :   12-353-RGA

8    v.                          :   12-354-RGA,

9                                :   12-355-RGA

10   BANK OF AMERICA, ET AL      :   12-356-RGA

11                               :

12             Defendants,       :   July 12, 2012

13   ..........................:

14                                   10:00 O'clock a.m.

15

16

17

18

19

20             TRANSCRIPT OF RULE 16 CONFERENCE

21        BEFORE THE HONORABLE RICHARD G. ANDREWS

22             UNITED STATES DISTRICT JUDGE

23

24

25   APPEARANCES:
```

```
 1

 2   For Plaintiff:       PAZUNIAK LAW OFFICE

 3                        BY:  GEORGE PAZUNIAK, ESQ

 4

 5

 6   For Defendants:      POTTER, ANDERSON & CORROON

 7                        BY:  RICHARD L. HORWITZ, ESQ

 8                             -and-

 9                        GOODWIN PROCTER

10                        BY:  JOHN P. HANISH, ESQ

11                        BY:  KEVIN J. CULLIGAN, ESQ

12                        For Defendants Bank of America &

13                        Merrill Lynch

14

15                        GREENBERG TRAURIG

16                        BY:  GREGORY E. STUHLMAN, ESQ

17                        For Defendants M&T & Wilmington Trust

18

19                        WEIR & PARTNERS LLP

20                        BY:  KENNETH E. AARON, ESQ

21                        BY:  CANDICE HEBDEN, ESQ

22                        For Defendant Sovereign Bank

23

24                        ASHBY & GEDDES

25                        BY:  JOHN G. DAY, ESQ
```

1              -and-

2       PILLSBURY WINTHROP SHAW & PITTMAN

3       BY:  WILLIAM P. ATKINS, ESQ

4       For Defendant UBS Financial

5

6       POTTER, ANDERSON & CORROON

7       BY:  RICHARD L. HORWITZ, ESQ

8            -and-

9       PRYOR CASHMAN

10      BY:  JAMES R. KLAIBER, ESQ

11      For Defendant Citizens Financial Group

12

13      DUANE MORRIS

14      BY:  SAMUEL W. APICELLI, ESQ

15      BY:  BENJAMIN A. SMYTH, ESQ

16            -and-

17      GIBSON DUNN.

18      BY:  BRIAN M. BUROKER, ESQ

19      ESQ BY:  TZUNG-LI, ESQ

20      For Defendants Capitol One & ING Bank

21

22      SKADDEN ARPS

23      BY:  DOUGLAS R. NEMEC, ESQ

24      BY:  JESSICA RAATZ, ESQ

25      For Defendant JPMorgan

1    Court Reporter:              LEONARD A. DIBBS

2                                Official Court Reporter

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    P R O C E E D I N G S

3

4          THE COURT:  Good morning.  Please be seated.

5          This is a Rule 16 Conference in Pi-Net International

6   Inc versus Bank of America, Civil Action No. 12-280.  And the

7   same plaintiff versus Wilmington Trust Co, number 12-281, versus

8   JPMorgan Chase & Company, number 12-282, versus UBS Financial

9   Services Inc, number 12-353, versus Sovereign Bank N.A., number

10  12-354, versus Citizens Financial Group Inc, number 12-355,

11  versus Capital One Financial Corporation, et al, number 12-356.

12          That's seven cases.  Did I miss any?

13          MR. PAZUNIAK:  It should be eight, your Honor.

14          MR. HORWITZ:  Your honor, the other case is the WSFS

15  case.

16          THE COURT:  That's not on my list here.  What number is

17  that?

18          MR. HORWITZ:  12-352.

19          THE COURT:  352?

20          MR. HORWITZ:  Yes, your Honor.

21          THE COURT:  All right.

22          So, why don't we have the appearances.

23          Mr. Pazuniak is going to be outnumbered.

24          Okay.  We've got Mr. Pazuniak for the plaintiff.

25          Who do we have for all these defendants?

1      MR. HORWITZ:  Your Honor, Rich Horwitz of Potter

2  Anderson.  I'm here on behalf of Bank of America and Merrill

3  Lynch in the 280 case along with Kevin Culligan and John Hanish

4  from Goodwin Proctor.

5      MR. HANISH:  Good morning, your Honor.

6      MR. HORWITZ:  I am also in the 355 case on behalf of

7  Citizens Financial, and me is Jim Klaiber of Pryor Cashman

8      THE COURT:  All right.  Good morning.

9      Who do we have for M&T bank?

10      MR. STUHLMAN:  Good morning, your Honor.  Greg Stuhlman

11  of Greenberg Traurig in Wilmington for M&T bank.

12      THE COURT:  All right.

13      For number 12-282?

14      MS. RAATZ:  Good morning, your Honor.  Jessica Raatz

15  from Skadden Arps for JPMorgan Chase & Co.  With me is Douglas

16  Nemec from our New York office.

17      THE COURT:  Thank you.

18      Number 12-352?

19      MR. PAZUNIAK:  They may not be here, your Honor.  That

20  case will probably go away very shortly.

21      THE COURT:  Are they part of the negotiations for this

22  order?

23      MR. PAZUNIAK:  They were.  Mr. Olsen from WSFS, General

24  Counsel, has filed all the pleadings and specifically signed off

25  on the order.

1          THE COURT:  Okay.

2          Number 12-353?

3          MR. DAY:  Good morning, your Honor.  John Day from

4   Ashby & Geddes.  With me is William Atkins from the Pillsbury

5   firm in Washington, D.C.

6          THE COURT:  All right.  Good morning.  Number 12-354?

7          MR. AARON:  Good morning, your Honor.  Kenneth Aaron

8   and Candice Hebden from Weir & Partners in Wilmington.

9          Mr. Horwitz has already said he's here for number

10  12-355.

11          12-356?

12          MR. SMYTH:  Good morning, your Honor.  Ben Smyth from

13  Duane Morris.  I'm here on behalf of Capital One.  I also have

14  with me Sam Apicelli from the Philadelphia office and Brian

15  Buroker from Gibson Dunn.

16          THE COURT:  Did I omit anyone there?

17          So, I looked at the order, I think that I'm prepared to

18  pick among these things on everything except for one thing.  I

19  just wanted to make sure I understood what was at issue.

20          And the thing that I would appreciate is just having

21  whatever comments people want to make is on page six, where it's

22  talking about privilege and beyond the agreed language,

23  defendants have a proposal talking about all other withheld

24  documents and plaintiff's proposal, is that there should be some

25  documents that are excepted, I guess from the general rule

1    relating to communications between a client and outside counsel,

2    who I presume to be Mr. Pazuniak in connection with prior

3    litigation by a different party, or Pazuniak's work product in

4    connection with prior litigation by a different party.

5           I guess my first question is, do these patents have

6    anything in common with this prior litigation?

7           MR. PAZUNIAK:  If I may address the issue, your Honor?

8           THE COURT:  Yes, please.

9           MR. PAZUNIAK:  Your Honor, the reason I raised it, it

10   is not just myself.  Web Exchange has been involved in

11   approximately five other litigations prior to this.  These cases

12   involve patents that are sort of in the same chain, are related

13   to the patents here in suit.

14           THE COURT:  They are the same family but different

15   patents?

16           MR. PAZUNIAK:  Correct.  In those cases, at least four

17   of those cases were in this District Court.

18           This was Web Exchange versus All State, Web Exchange

19   versus Dell, Web Exchange versus Federal Express and Microsoft

20   versus Web Exchange.

21           And some of those cases were extremely extensive.  If

22   your Honor referred to the docket list, like 300.

23           The litigations involved multiple firms, both on the

24   side of the plaintiff and on the side of the defendants.  And it

25   seems that under the established normal rule, documents that are

1    generated after litigation are not normally scheduled.

2            In this case, these are cases that were filed,

3    obviously, decided before these cases were filed.  But it would

4    seem that the same principle that you don't schedule litigation,

5    privileged logs should apply.

6            In those cases, I don't know how many documents total

7    there would be.  But as your Honor can imagine, if you have

8    fairly extensive litigation, there is going to be tons of

9    documents.  And trying to collect and schedule all of these

10   documents in a privileged log is extremely burdensome,

11   difficult.  And it seems not to serve any purpose.

12           The only people I want to exclude, the only documents

13   that I want to exclude from the privileged logs are

14   communications between the client and outside counsel, or the

15   outside counsels internal work product.  Those are very limited.

16           And it seems no reasonable basis exists for them ever

17   being questioned as to privilege.  So why create these huge

18   logs?

19           THE COURT:  Tell me how would these documents became an

20   issue.

21           MR. PAZUNIAK:  I'm not sure that they would be.  But I

22   expect that defendants' document requests will encompass the

23   documents in the possession of counsel for the parties, you

24   know, from the prior litigations.

25           And I have no trouble producing things like depositions

1   and discovery, whatever.

2           THE COURT:  There is no privilege on them.

3           MR. PAZUNIAK:  Exactly.  I have no problem producing

4   it.  We've already discussed with defendants' counsel that they

5   will ask for those documents.

6           My concern is that without this kind of limit,

7   defendants will subject plaintiff to the extreme burden and cost

8   of generating these privileged logs for documents that cannot

9   conceivably be discoverable because they are plain

10  attorney-client communications, and/or internal work product.

11          THE COURT:  All right.

12          Is there somebody on the defendants' side who wants to

13  address this issue?  Mr. Horwitz?

14          MR. HORWITZ:  Good morning, your Honor.  I'm going to

15  address this and any other issues on behalf of defendants this

16  morning.

17          Plaintiff sued all of us.  There are burdens that come

18  along with that litigation.  We think this is just one of those

19  burdens that is a part of all litigation.

20          Your Honor may or may not remember the name Web

21  Exchange.  Web Exchange was the plaintiff in the cases that Mr.

22  Pazuniak mentioned.  Mr. Pazuniak said there were a lot of

23  counsel involved.  That's because that's the series of cases

24  that went from Judge Farnan to Judge Robinson to you and you

25  finally dismissed those cases with prejudice after the plaintiff

1    in those cases did not post a $100,000 that you ordered and did

2    not have new counsel appear of record.

3         This was not a situation where multiple counsel were

4    all working together.  This was a situation where three or four

5    counsel appeared and withdrew.

6         Mr. Pazuniak was in.  Mr. Pazuniak withdrew.  Mr.

7    Pazuniak came back in again just at the end.

8         This is a new unique situation.  And it is the same

9    individual who is the principal of both Web Exchange and the

10   plaintiff in these cases.

11        So we are in a situation where, I think, admittedly,

12   Mr. Pazuniak had said that he's asking for something that is

13   different than the normal rule.  We don't think he's established

14   anywhere near the kind of showing that he would have to make to

15   avoid logging these documents.  And they are important.  They

16   are relevant.  These patents are in the same family as you

17   discussed with Mr. Pazuniak.

18        There are serious inequitable conduct issues that were

19   pled in the prior litigation that have already been pled by at

20   least some of the defendants in this case in their initial

21   answers.

22        There are documents, we don't know.  They may not be

23   privileged.  And Mr. Pazuniak, he admitted that he hasn't even

24   seen the documents or looked through the documents to tell.

25        At one point he says this is going to be a huge amount.

1    A few sentences later, he said it's very limited.  I wrote that

2    down and put quotes around it.  It's very limited what he wants

3    to exclude.  There are going to be documents here where

4    attorney-client relationship did not exist at the time because

5    of the disputes between counsel and the plaintiff in the prior

6    litigation.

7            There might be crime fraud exceptions that apply here

8    to communications between counsel and the plaintiff in that

9    case.  We don't know yet.  But we can't give that up.

10           We need to see the logs so we can determine and

11   challenge.  And, I think, frankly, Mr. Pazuniak needs to go

12   through that process to determine if there are relevant

13   documents and whether they should be produced.

14           So this is not an ordinary case.  He has not made the

15   showing, we submit, this morning as to why anything other than

16   the normal rule should apply.  And that is what we have put

17   forth in our papers here.

18           THE COURT:  Don't go away, Mr. Horwitz.

19           Mr. Pazuniak, you told me how big the Court's file is.

20           The sorts of documents that you would have to schedule,

21   do you have an idea how many documents we're talking about?

22           MR. PAZUNIAK:  I can say that I believe the principal

23   of Pi-Net as Mr. Horwitz pointed out is also the principal of

24   Web Exchange.

25           I don't know exactly how many of these documents she

1  has on her -- in her e-mail system.  But I do know from having

2  looked at the documents that were provided to me by the Kasowitz

3  firm, that was her first counsel, that there were a number of

4  e-mail communications between the client and the Kasowitz firm.

5          But exactly how many of those?  I don't know.

6          THE COURT:  I'm looking for an order of magnitude here.

7          MR. PAZUNIAK:  I'm guessing, your Honor, that by the

8  time we get through there is going to be several, you know,

9  maybe 10,000.

10         THE COURT:  10,000 communications?

11         MR. PAZUNIAK:  10,000 communications over the years.

12 It's also just not the burden on the plaintiff, I assume that at

13 some point, the defendants may very well go and try to subpoena

14 the files of former counsel such as the Kasowitz Benson firm.

15 And they will have the same issue, same burden of having to

16 schedule all of their communications.

17         THE COURT:  That's probably pretty much an issue for

18 another day.

19         MR. PAZUNIAK:  I understand Mr. Horwitz's concern.  The

20 documents will be reviewed.  Of course, they will be reviewed.

21         The fact is that trying to create privilege logs is a

22 time consuming expensive proposition.  And Mr. Horwitz says, Oh,

23 this is like -- he says there's a lot of documents but it's

24 limited.  The number of documents is large.  But the scope of

25 the exclusion is very limited, and that is, communications

1    between a client and an attorney.  And those things are mainly

2    privileged.

3         If the defendants think that there is inequitable

4    conduct, that inequitable conduct is not between counsel in the

5    litigations and the client.  So that has nothing to do with it.

6         THE COURT:  I do remember Web Exchange.  I do remember

7    among other things that Ms. Arunachalam would write letters to

8    the Court much more frequently than most people.

9         So the idea that she could be busy writing letters to

10   people who are not her attorneys even though they are attorneys,

11   they could be in the files.

12        I guess what Mr. Horwitz says strikes me as basically

13   -- basically, I don't know about Pi-Net.  It doesn't strike me

14   as essentially what he says, you know, the reason why we have

15   privileged logs in the first place is to give the other side a

16   hint at least as to, you know, there might be something they

17   want to challenge the assertion of privilege, right?

18        MR. PAZUNIAK:  If you are in the middle of litigation

19   and you have a communication between a client and outside

20   counsel --

21        THE COURT:  Right.  If you're in the middle of

22   litigation, that's not going to, you know, for whenever you

23   filed this suit, I guess, a couple of months ago.

24        MR. PAZUNIAK:  I don't mean in this litigation.

25        THE COURT:  We're talking about historical thing,

1    right?

2           MR. PAZUNIAK:  Right.  I'm talking in the prior

3    litigations.  While you have litigation ongoing and you have

4    communication between the attorney and the outside litigation

5    counsel, all defendants are going to get is a statement, yes,

6    there's a communication on this day, on this day between such

7    counsel.

8           It doesn't actually provide anything other than an

9    identification of a document that is clearly privileged.

10          So the effort of trying to generate these lists seems

11   to be far outweighed by whatever possible benefit they can get.

12          If defendants believe that there is some basis for a

13   crime of fraud exception, you don't establish the claim of fraud

14   exception by looking at the documents.  You establish a crime of

15   fraud exception, which is extremely rare, you establish it by

16   other showing.  And then the privilege is waived.

17          So again, all these comments about, you know, which I

18   think are basically unfair about the client.  But regardless,

19   it's not a basis for imposing an undue burden that does nothing

20   that tells you, Okay, here's communications.  It's in the middle

21   of litigation and there's going to be e-mail traffic.

22          So the burden of putting this together, it's just not

23   clear.

24          THE COURT:  Do you have anything to add?

25          MR. HORWITZ:  Your honor, all I'll say is, we have no

1    record other than Pazuniak's representation today, which I still

2    think are not based on the kind of review that would be required

3    for a declaration, which, I think if Mr. Pazuniak wants to file

4    a Motion for Protective Order and try to establish a basis, he

5    can do that.

6            But certainly where we are today based on the record,

7    based on the situation here, based on the fact that all of these

8    -- well, that a number of these patents, there's the overlap

9    with the prior case.

10           I don't think there's anything that this Court should

11   do other than have the normal rules apply.

12           THE COURT:  All right.

13           I think your last point, which is a winning point,

14   which essentially is, punt this for another day, right?

15           I mean, in essence, I say this to Mr. Pazuniak, too.

16   I'll put in the defendants -- actually I'm not sure who the

17   scribe is here.  Maybe Mr. Pazuniak will resubmit this.

18           Put in the defendants' language with the understanding

19   that I'm not precluding a motion after a meet-and-confer to

20   issue some kind of Protective Order, all right?

21           MR. PAZUNIAK:  Fine, your Honor.

22           MR. HORWITZ:  Fine, your Honor.

23           Your Honor while I'm up, can I at least give you the

24   explanation as to what the difference is on the early

25   disclosures?

1          THE COURT:  Hold on a minute.

2          MR. HORWITZ:  It starts on page two.

3          THE COURT:  I saw that.

4          MR. HORWITZ:  If you are going to go our way, I can sit

5   down.  If you don't think you are, I would at least like to tell

6   you why we differ.

7          THE COURT:  I'll give you a chance and Mr. Pazuniak a

8   chance to tell me why yours is the better suggestion, whatever

9   it is you want to say.

10          MR. HORWITZ:  Your honor, we put in the specific kind

11   of information that we thought should come as part of the early

12   disclosures really based on another order that your Honor

13   entered in another multi-defendant case.

14          THE COURT:  Chances are, did I enter that order because

15   the parties stipulated to it?

16          MR. HORWITZ:  I was not in that case.  That's what we

17   based it on.  That was entered June 1st of this year.

18          THE COURT:  In what case?

19          MR. HORWITZ:  Pragmatus.  There are nine civil action

20   numbers.

21          And when we spoke about this with Mr. Pazuniak, he

22   said, Well, I don't want to put that in the order, but that's

23   the kind of information you're going to get.

24          Once he said that's the kind of information we're going

25   to get, I don't know what the problem is in not having the

1    specificity in the order so we don't have to come back to you

2    later if we don't get some of that information.  And we have

3    also agreed to give detailed information so your Honor can see

4    on the invalidity side.

5            THE COURT:  I take it the invalidity side is also the

6    same thing that is in the Pragmatus order?

7            MR. HORWITZ:  Yes, based on that order.   That's all we

8    have to say on that point.

9            THE COURT:  Mr. Pazuniak?

10           MR. PAZUNIAK:  Maybe I should remind Mr. Horwitz what

11   he started saying in response to the other issues we had, which

12   is, let's do things that are usual.  What I'm asking for is

13   unusual and out of the ordinary.

14           I don't know why Pragmatus lawyers agreed to the

15   language that they did and your Honor entered.  It was not a

16   disputed issue to my knowledge and understanding.

17           THE COURT:  It's easy enough to tell.  People submit a

18   proposed order and then there's a final order.  If the proposed

19   order has the language, then it's not disputed.

20           MR. PAZUNIAK:  Right.  In this case, the language that

21   defendants are asking for is simply not the kind of language

22   that one finds in any orders in this Court.  It's not part of

23   your Honor's standard Rule 16 Conference Order.

24           It's not part of the default discovery order.

25           THE COURT:  I get that.

1          Leaving aside that it's going outside the norm, Mr.

2     Horwitz says, more or less, I'll give you something that pretty

3     much like that anyhow.  Nobody likes to be ordered to do

4     something.

5          What's your objection to it?

6          MR. PAZUNIAK:  Your Honor, the fact is that this kind

7     of language and other orders, because this is frequently used in

8     the Eastern District of Virginia, for example.

9          It just results in a lot of motion practice, because

10    people then starting filing motions that someone has violated a

11    Court Order that required this or required that.

12         And we start getting into issues such as, Well, on page

13    three, you know, you have to say there's a Section 112,

14    paragraph 6 provision, you have to identify the structure, acts

15    or materials of the accused that it performs.  Then you start

16    getting into fights, Well, what have you done?  Is that in

17    compliance with this order?

18         It's the sort of thing that just results in a lot of, I

19    think, unnecessary motion practice.  And that has been my

20    experience.

21         There is a reason that this kind of language is found

22    in some Courts and has never been followed in this district.

23       Now, we will create sort of this -- in this case, a new

24    paradigm for all future orders.  Now every defendant in every

25    case will be looking for this.

1          THE COURT:  Hold on a minute.

2          Well, I see that it was jointly agreed upon in the

3     Pragmatus cases.

4          It seems to me like it was probably meant to help

5     advance the litigation you say in the Eastern District of

6     Virginia, which is known for its speed, suggests to me that is

7     at least one purpose of it.

8          I'm going to go with the defendants' proposal.

9          All right.  We've resolved that one.

10         All right.  In terms of the scheduling, the hearing on

11    claim construction, paragraph 12, given this number of parties,

12    I'm not actually going to try to other than Mr. Pazuniak, if

13    somebody has a conflict, there is not much I can do about it.

14         June 21st, 2013, 9:00 a.m.

15         Does that work for you, Mr. Pazuniak?

16         MR. PAZUNIAK:  That's fine, your Honor.

17         THE COURT:  All right.

18         In terms of the disclosure of expert testimony, I would

19    prefer instead of having it all teed off the Markman decision, I

20    prefer to work on the principle that I'm going to do the Markman

21    decision in 60 days and give you actually specific dates, so the

22    dates that I had in mind are the Initial Burden of Proof

23    Disclosure of Expert Testimony, October 18th, 2013.

24         The Rebuttal Disclosure, November 18th, 2013.

25         The Reply Expert Reports, December 18th, 2013.

1          And The Deposition of Experts to be done by February

2     7th, 2014.

3          I tracked the time frame.  I pick the starting date

4     other than just leaving it up in the air.  Is there anybody on

5     objects to that?   Mr. Pazuniak?

6          MR. PAZUNIAK:  It just seems to postpone everything to

7     fairly late.  If we have a claim construction, I guess your

8     Honor is setting June 21.  So your Honor says 60 days.  That's

9     all right your Honor.  It just seems to extend things.

10          THE COURT:  Here's what it was.  I said August 21st,

11     then I saw 30 days unless for supplemental discovery relating to

12     fact discovery cutoff, 60 days.  So I just assumed there would

13     be supplemental discovery.  That's the reason for that timing,

14     all right?

15          MR. PAZUNIAK:  This is fine, your Honor.  We'll live

16     with it.

17          MR. HORWITZ:  Fine with us.  I was going to mention

18     that.  It's covered already by the other discovery.  The other

19     thing that I didn't to mention to the Court, the parties agreed

20     to it but we didn't highlight it for you.  On the claim

21     construction briefing, we had proposed for each of those briefs

22     ten pages more.

23          THE COURT:  Thank you for pointing that out.  I had not

24     noticed that.

25          Why is that?

1          MR. HORWITZ:  With all parties and --

2          THE COURT:  How many patents are here in this case?

3          MR. HORWITZ:  Three patents, your Honor.  Obviously, if

4   we don't need it, we won't use it.

5          As I said, Mr. Horwitz, I do appreciate you pointing it

6   out.  Part of me wants to say no.  Really, you know, go with the

7   standard number of pages.  I think that probably works fine for

8   Mr. Pazuniak.  It works a little bit worse for you all because

9   presumably you have to negotiate what you're going to do and

10  such.

11         And so it's unfair to Mr. Pazuniak if I say, Well, you

12  have to stick with the normal page limit and you get extra pages

13  because there are so many of you.

14         I'll probably live to regret this, but I will stick

15  with what you agreed to.

16         MR. HORWITZ:  Thank you, your Honor.

17         So, Case Dispositive Motions.  This is continuing off

18  the -- changing the trigger dates to actual dates, February

19  21st, 2014.

20         I didn't real understand, Mr. Pazuniak, your proposal

21  in terms of the Trial Scheduling Conference.  And I didn't

22  understand whether you were just being deferential to the

23  Court's calendar or whether -- what exactly you meant by your

24  proposal.

25         MR. PAZUNIAK:  I've been advised by Nicole that the

1    Court will set its own date.

2              THE COURT:  I appreciate that.

3              March 14th.  But instead of doing it at 9:00 a.m., how

4    about 8:30?

5              And the Pretrial Conference, May 23rd, 2014 at 9:00

6    a.m.

7              And the first trial would be June 2nd, 2014.  And

8    presumably, the question of who the defendant will be in that

9    particular case is something that would be worked out at the

10   trial scheduling conference in March.

11             And what I would anticipate, assuming there are

12   multiple defendants left at the time, is that there will be

13   ranked order.  If for some reason or another, defendant number

14   one settled, whatever reason doesn't go to trial, defendant

15   number 2 will step into their place, okay?

16             MR. PAZUNIAK:  Fine, your Honor.

17             MR. HORWITZ:  Fine, your Honor.

18             THE COURT:  All right.

19             There is a provision for Alternative Dispute

20   Resolution.  I take it since it is in the order -- I've seen

21   people take it out, that nobody objects to this being in the

22   order?

23             MR. HORWITZ:  Not on our side, your Honor.

24             MR. PAZUNIAK:  No, your Honor.

25             THE COURT:  Let's see, this comes from you, Mr.

1    Horwitz?  I guess you're responsible for resubmitting it?

2              MR. HORWITZ:  Either, I will -- maybe Mr. Pazuniak

3    will.

4              We heard informally from your staff that sometimes it's

5    easier since he's in all the cases, for him to submit it by one

6    person since there is no confusion.

7              THE COURT:  I was just basing it on the fact that it

8    came from you, that I thought maybe that meant it was on your

9    computer.  You can send it to him and it will be on his

10   computer.

11             Typically, plaintiff does take this burden.

12             MR. PAZUNIAK:  I thanked Richard for volunteering for

13   taking the first job.  I understand that.  I will do that, your

14   Honor.

15             THE COURT:  If I could just ask that you do it within

16   five days.

17             MR. PAZUNIAK:  Yes, your Honor.

18             THE COURT:  Is there anything else that -- first off,

19   is there anything in the order that I've overlooked?

20             Is there anything else that anybody wants to talk about

21   while we're all here?

22             MR. HORWITZ:  I think you covered everything in the

23   order.  From the defendants side, we have nothing else to decide

24   today, your Honor.

25             THE COURT:  Mr. Pazuniak?

1          MR. PAZUNIAK:  Nothing else, your Honor.  Thank you.

2          THE COURT:  All right.  We stand in recess.

3          (At this time, the Rule 16 Conference concluded)