**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BANK OF AMERICA, N.A. and MERRILL )<br>LYNCH, PIERCE, FENNER & SMITH )<br>INCORPORATED, )<br>)<br>Defendants-Counterclaimants. ) | C.A. No. 12-280-RGA |
| PI-NET INTERNATIONAL INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JPMORGAN CHASE & CO., )<br>)<br>Defendant. ) | C.A. No. 12-282-RGA |
| PI-NET INTERNATIONAL, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UBS FINANCIAL SERVICES INC., )<br>)<br>Defendant. ) | C.A. No. 12-353-RGA |
| PI-NET INTERNATIONAL, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOVEREIGN BANK, N.A., )<br>)<br>Defendant. ) | C.A. No. 12-354-RGA |

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., )<br>  )<br>   Plaintiff, )<br>  )<br> v. )<br>  )<br>CITIZENS FINANCIAL GROUP, INC., )<br>  )<br>   Defendant. )<br>  ) | C.A. No. 12-355-RGA |

# DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT OF INDEFINITENESS

Robert S. Saunders (ID No. 3027)
SKADDEN, ARPS, SLATE, MEAGHER &
 FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

John G. Day (ID No. 2403)
Lauren E. Maguire (ID No. 4261)
Andrew C. Mayo (ID No. 5207)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Tel.: (302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant UBS Financial Services, Inc.*

Kenneth E. Aaron (ID No. 4043)
WEIR & PARTNERS, LLP
824 Market Street Mall, Suite 800
Wilmington, Delaware 19899
Tel.: (302) 652-8181
kaaron@weirpartners.com

*Attorneys for Defendant Sovereign Bank, N.A.*

Richard L. Horwitz (ID No. 2246)
David E. Moore (ID No. 3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel.: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and Citizens Financial Group, Inc.*

**TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ................................................................................................... ii

**I.   CONSIDERING DEFENDANTS' MOTION FOR EARLY SUMMARY JUDGMENT IS EFFICIENT AND APPROPRIATE.** ................................................. 2

**II.  THE MEANS-PLUS FUNCTION TERMS FOR COMPUTER-IMPLEMENTED "PROCESSING" AND "TRANSMITTING" ARE INVALID AS INDEFINITE.** ............................................................................................ 4

    A.    The Patents-In-Suit Fail To Disclose The Required Algorithm For The Computer-Implemented Functions Of "Processing" And "Transmitting." .............. 4

    B.    An Algorithm Must Be Disclosed For The "Processing" Function Of The '492 Patent Claims Because They Are Governed By 35 U.S.C. § 112(f). ................ 6

    C.    Plaintiff's Identified Structure For The "Transmitting" Function Is Inadequate And Not Clearly Linked To The Claimed Function. .............................. 8

**III. THERE IS NO GENUINE DISPUTE THAT "KEEPING A TRANSACTION FLOW CAPTIVE" AND "ROUTED TRANSACTIONAL DATA STRUCTURE" ARE NOT DEFINED IN THE SPECIFICATION OR PROSECUTION HISTORY, AND HAD NO GENERALLY ACCEPTED MEANING IN THE RELEVANT ART.** ................................................ 9

**CONCLUSION** ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*,
  521 F.3d 1328 (Fed. Cir. 2008)..................................................................................3, 4

*Bancorp Services, L.L.C. v. Hartford Life Insurance Co.*,
  359 F.3d 1367 (Fed. Cir. 2004).................................................................................9, 10

*Blackboard, Inc. v. Desire2Learn Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009)........................................................................................3

*Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*,
  412 F.3d 1291 (Fed. Cir. 2005)........................................................................................3

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012)...............................................................................2, 4, 5

*Function Media, L.L.C. v. Google Inc.*,
  No. 2012-1020 (Fed. Cir. Feb. 13, 2013) ........................................................................8

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
  649 F.3d 1350 (Fed. Cir. 2011)....................................................................................6, 7

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
  718 F. Supp.2d 529 (D. Del. 2010), *rev'd in part*, 649 F.3d 1350 (Fed. Cir. 2011)............6

*In re Katz Interactive Call Processing Patent Litigation*,
  639 F.3d 1303 (Fed. Cir. 2011)........................................................................................4

*Medical Instrumentation and Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003)........................................................................................8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008)........................................................................................3

*Noah Systems, Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012)........................................................................................3

*Soque Holdings (Bermuda) Ltd. v. Keyscan, Inc.*,
  No. C 09-2651, 2010 WL 2292316 (N.D. Cal. June 7, 2010) ..........................................7

The defendants in the above-captioned cases ("Defendants") seek leave to file an early motion for summary judgment of indefiniteness because that motion presents two discrete issues of law that can be resolved on a factual record that is already complete, and because its early resolution could greatly narrow the scope of this case.  (*See* D.I. 45.)  Plaintiff does not dispute either of these points.  Plaintiff instead argues the merits of Defendants' underlying motion for summary judgment, while failing to address the fundamental question presented in Defendants' motion for leave: whether it makes sense to take up the issue of indefiniteness now.  Indeed, Plaintiff's lengthy arguments on the merits only confirm that now *is* the proper time to do so.[1]

As discussed below, Plaintiff's substantive arguments miss the mark, and only confirm the deficiencies in the disclosure of the patents-in-suit that Defendants highlighted in their motion for summary judgment.  Regardless of who ultimately carries the day on the underlying question of indefiniteness, the substantive issues that Defendants raised are now joined and ripe for resolution.  An early decision on indefiniteness would simplify *Markman* proceedings, and has the potential to drastically reduce the number of claims-at-issue in this case.  Thus, because Defendants' summary judgment motion presents questions of law that both sides have now thoroughly addressed, and cannot help but streamline this case no matter how it is resolved, Defendants' motion for leave should be granted.

---

[1] Although Plaintiff's substantive arguments only distract from the procedural issue presented by Defendants' motion for leave, Defendants will also address Plaintiff's principal substantive arguments here.

I.   **CONSIDERING DEFENDANTS' MOTION FOR EARLY SUMMARY JUDGMENT IS EFFICIENT AND APPROPRIATE.**

Plaintiff offers three reasons why the Court should refuse to consider Defendants' motion for summary judgment early in the case: (1) the Court might have to consider the meaning of claim terms in separate proceedings; (2) the Federal Circuit has overturned some summary judgment decisions involving indefiniteness; and (3) Defendants' position that the asserted claims are indefinite should be rejected.  (D.I. 52 at 1-2.)  None of these is a valid basis to reject Defendants' request for leave.

First, Plaintiff argues that by considering Defendants' summary judgment motion now, the Court would be "forc[ed] . . . to do two claim constructions rather than a single proceeding."  (D.I. 52 at 1, 14.)  Plaintiff ignores the thrust of Defendants' summary judgment motion, which is that the terms at issue are not amenable to construction consistent with the Patent Act and Federal Circuit precedent.  Rather than doubling the amount of *Markman*-related efforts that the Court must undertake, considering Defendants' motion now would likely streamline *Markman* proceedings and the case as a whole.  Defendants believe that if the Court applies the appropriate law governing means-plus-function claims and "coined" terms, that process will lead to the inevitable conclusion that those terms are not amenable to construction.  Thus, more than 90% of the asserted claims would be invalidated.  By deciding Defendants' motion now, the Court may substantially reduce the number of patent claims at issue, and therefore substantially reduce the number of issues remaining in this litigation.

Second, Plaintiff cites seven instances where the Federal Circuit reversed a district court's decision that a patent claim was indefinite.  (D.I. 52 at 2 n.2.)  That the Federal Circuit has previously reversed holdings of indefiniteness is irrelevant to the present motion.  Like claim construction, indefiniteness is a matter of law that is reviewed *de novo*, which

enhances the likelihood of reversal regardless of when an issue is decided and what decision is reached. *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012). The Federal Circuit has certainly not reversed *every* district court decision invalidating patent claims as indefinite. On the contrary, Defendants cited at least seven instances in their opening summary judgment brief where the Federal Circuit upheld district court determinations that computer-implemented means-plus-function claims were indefinite.[2]

       Third, Plaintiff argues that because it should ultimately prevail on the merits of Defendants' motion, it is not "worthwhile for the Court to divert its efforts to consider the presented arguments out of time." (D.I. 52 at 2.) To that end, Plaintiff offers a 12-page substantive discussion of Defendants' proposed summary judgment motion. (*Id.* at 3-14.) That discussion only underscores why the Court should grant Defendants' motion for leave—the parties have already substantively engaged on this issue, such that it is ripe for adjudication. Plaintiff offered no indication that any additional time or discovery would be necessary to respond to Defendants' summary judgment motion; instead, Plaintiff was able to respond with a lengthy substantive argument. Delaying the consideration of Defendants' motion—and re-briefing and revisiting these arguments again in later stages of the case—would inevitably result in unnecessary duplication of effort and expenses.

---

[2] *See, e.g.*, *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383-86 (Fed. Cir. 2009); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337-38 (Fed. Cir. 2008); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1319 (Fed. Cir. 2012); *Ergo Licensing, LLC*, 673 F.3d at 1365; *Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359, 1367 (Fed. Cir. 2008); *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302-03 (Fed. Cir. 2005), all of which were cited in Defendants' brief in support of their motion for summary judgment. (*See* D.I. 45, ex. B.)

## II.  THE MEANS-PLUS FUNCTION TERMS FOR COMPUTER-IMPLEMENTED "PROCESSING" AND "TRANSMITTING" ARE INVALID AS INDEFINITE.

### A.  The Patents-In-Suit Fail To Disclose The Required Algorithm For The Computer-Implemented Functions Of "Processing" And "Transmitting."

In its response brief, Plaintiff identifies no algorithm for the "processing" or "transmitting" functions in claims 1-7 and 35 of U.S. Patent No. 5,987,500 ("the '500 patent"), or the "processing" function in claims 1-8 of U.S. Patent No. 8,108,492 ("the '492 patent"). There is a good reason for this omission—no algorithm was disclosed in the specification or prosecution history of the patents-in-suit. Faced with this indisputable deficiency, Plaintiff's primary argument is that no algorithm needs to be disclosed. This position flatly contradicts the law governing means-plus-function terms.

The Federal Circuit has established a bright-line default rule that a "'computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.'" *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (citation omitted). There is no dispute among the parties that the "processing" and "transmitting" functions of the '500 patent are "computer-implemented," and there similarly appears to be no dispute that the '500 patent discloses no algorithm to carry out these functions.

Plaintiff nevertheless asserts that the patentee's failure to disclose an algorithm should not result in a finding of indefiniteness because only a general purpose computer is necessary to carry out the claimed "processing" functions. (D.I. 52 at 9-10.) Plaintiff relies primarily on *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1313-14 (Fed. Cir. 2011). (D.I. 52 at 9-10.) But Plaintiff ignores subsequent Federal Circuit authority, which has narrowly circumscribed the holding in *Katz*:

4

> [*Katz*] identified a narrow exception to the requirement that an algorithm must be disclosed for a general-purpose computer to satisfy the disclosure requirement: when the function "can be achieved by any general purpose computer without special programming." . . . If special programming is required for a general-purpose computer to perform the corresponding claimed function, then the default rule requiring disclosure of an algorithm applies. It is only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed.

*Ergo Licensing, LLC*, 673 F.3d at 1364-65 (emphasis added). In particular, so long as the claimed computer-implemented function "requires more than merely plugging in a general purpose computer," then a clearly linked, corresponding algorithm for that function must be disclosed. *Id.* at 1365.

Plaintiff initially takes the view that the "processing [of a] transaction request" as part of a "real-time transaction[] on a network" is akin to the sort of computer function that is performed when an icon is displayed on a computer screen, and thus no special programming is needed to perform the claimed invention. (D.I. 52 at 9-10.) But Plaintiff almost immediately contradicts that statement, by identifying the "Back Office" systems that banks use to "effectuate . . . transaction[s]" in real-time as the "means for processing" that transaction. (D.I. 52 at 11.) Plaintiff cannot credibly contend that these "Back Office" systems consist merely of general purpose computers—indeed, these are the quintessential examples of special purpose computer programming, likely involving countless lines of computer code and algorithms, none of which can be obtained merely by "plugging in a computer" that has been purchased off the shelf. Given that Plaintiff has acknowledged that a general purpose computer is *not* adequate to "process" the claimed transaction in the manner required by the asserted claims, the patents-in-suit must disclose an algorithm for doing so.

In short, Plaintiff has offered no reason to depart from the default rule requiring disclosure of an algorithm, and its own arguments demonstrate that this case does not fit into the

5

"narrow exception" to that rule carved out in *Katz*. Because the default rule applies here, and because no amount of additional argument, briefing, or delay in the schedule can conjure such an algorithm where none exists, Defendants' summary judgment motion should be considered now.

### B. An Algorithm Must Be Disclosed For The "Processing" Function Of The '492 Patent Claims Because They Are Governed By 35 U.S.C. § 112(f).

Plaintiff also argues that no algorithm need be disclosed for the "processing" function disclosed in the '492 patent because those claims should not be subject to means-plus-function treatment. In support of this argument, Plaintiff relies primarily on *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1352 (Fed. Cir. 2011). (D.I. 52 at 3-4.) Plaintiff's position appears to be that because the Federal Circuit held that the terms "modernizing device" and "computing unit" in a multistep method for installing a modernized elevator were not subject to means-plus-function treatment, the Court must reject Defendants' argument that the phrase "computer system . . . for processing the transaction request in real-time" should be governed by 35 U.S.C. § 112(f). Plaintiff is wrong. In fact, the *Inventio* decision only supports Defendants' argument for the '492 claims.

In determining that the terms "modernizing device" and "computing unit" were subject to means-plus-function analysis, this Court considered only the claim language itself, noting that the structural qualities of these terms were found only "in the specification, rather than the claim language." *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 718 F. Supp. 2d 529, 559 (D. Del. 2010). The Federal Circuit concluded that the District Court took too narrow a view, and should have "consult[ed] the intrinsic record, including the written description, when determining" whether a claim phrase without the term "means" should nonetheless be subject to § 112(f). *Inventio*, 649 F.3d at 1357. For the "modernizing device," the written description of the *Inventio* patent depicted a five-component structure, and explained "how the elements are

6

connected together and to the" other components of the system. *Id.* at 1358-59. Similarly, the "computing unit" was defined as a particular type of computing device, which executed a particular "'destination dispatch algorithm'"—in fact, the description of the *Inventio* patent went so far as to "explain the steps that the computer program product performs." *Id.* at 1354, 1360 (citation omitted).

Unlike the *Inventio* patent, which defined a particular type of "modernizing device" and "computing unit" involving specialized algorithms, the '492 patent is devoid of any such description. Indeed, the only structure that Plaintiff identifies for the "processing" limitation in the claims of the '492 patent is a generic "computer system." (D.I. 52 at 6.) As discussed at length in Defendants' summary judgment opening brief (D.I. 45, ex. B at 13-15), the '492 patent provides no additional structural detail on the internal architecture for this computer (as the *Inventio* patent did) or the type of algorithm that this generic computer would carry out (as the *Inventio* patent also did). Thus, the "computer system . . . for processing" term is little more than a structural black box, for which purely functional language is utilized. Under these circumstances, the Court should follow the approach taken in *Soque Holdings (Bermuda) Ltd. v. Keyscan, Inc.*, No. C 09-2651, 2010 WL 2292316 (N.D. Cal. June 7, 2010), which recognized that a bare reference to a "'computer' provides no basis to distinguish the structure from any other general purpose computer [and] does not adequately describe a specific structure" that would allow the claim to avoid means-plus-function treatment. *Id.* at *12.[3]

---

[3] Plaintiff also cites a number of cases involving terms other than "computer systems," or those involving the mechanical arts. (D.I. 52 at 5-6.) Given that those cases relate to non-analogous claim language in non-analogous fields of art, they should not be considered as controlling or persuasive authority governing the language at issue in the '492 patent.

7

### C. Plaintiff's Identified Structure For The "Transmitting" Function Is Inadequate And Not Clearly Linked To The Claimed Function.

Finally, Plaintiff argues that the '500 patent does provide a corresponding structure for "transmitting a transaction request from said transactional application": the "Exchange component." (D.I. 52 at 8.) Plaintiff reproduces nearly three dozen lines of text from the '500 patent, but not one of those lines discloses the *transmission* of a transaction request. Indeed, the "exchange component" is described as performing a number of functions, including "creat[ing] and allow[ing] for the management or distributed control of a service network," "display[ing] a . . . web page," and "manag[ing]" a connection between a user and "Bank services"—but it is *not* described as performing a "transmitting" function. (D.I. 8-9 (quoting and citing the '500 patent, col. 6:7-9, 19-21, 28-30, 40-65).) To accept Plaintiff's argument, the Court would have to re-write the '500 patent, adding the function of "transmission" to the list of functions that are actually executed by the "exchange component." Plaintiff appears to acknowledge this fact, noting that Defendants are likely to disagree that the "exchange component" corresponds to the "transmitting" function. (*See* D.I. 52 at 9.) On this point, Plaintiff is correct—Defendants certainly disagree that a structure that is not described as "transmitting" nonetheless should be construed as "clearly linked" to that function. *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (noting the longstanding requirement "that a particular structure be clearly linked with the claimed function in order to qualify as corresponding structure"). In any event, Plaintiff has already identified what it considers to be corresponding structure, so the parties' dispute on this point has now crystallized and is ripe for adjudication.[4]

---

[4] Regardless of whether the "exchange component" is construed as corresponding to the "transmitting" function, it is clear that this function must be implemented, at least in part, by
*(cont'd)*

### III. THERE IS NO GENUINE DISPUTE THAT "KEEPING A TRANSACTION FLOW CAPTIVE" AND "ROUTED TRANSACTIONAL DATA STRUCTURE" ARE NOT DEFINED IN THE SPECIFICATION OR PROSECUTION HISTORY, AND HAD NO GENERALLY ACCEPTED MEANING IN THE RELEVANT ART.

Plaintiff's opposition brief includes a three-page recitation of Federal Circuit law that generally relates to indefiniteness of claim terms. (D.I. 52 at 12-14.) Plaintiff then asserts that "Defendant's motion flies into the teeth of this unequivocal established law, by trying to have the Court consider indefiniteness of claim terms without construing the terms ['keeping a transaction flow captive' and 'routed transactional data structure']." (D.I. 52 at 14.) To the contrary, Defendants are not asking the Court to skip the step of claim construction. Instead, Defendants assert that those terms cannot be construed, because the Court has no intrinsic or extrinsic evidence at its disposal to guide that process. In other words, any attempt at claim construction would be futile because the patentee elected to be her own lexicographer, and then failed to provide a definition for the relevant terms.

Plaintiff does not dispute that the terms "keeping a transaction flow captive" and "routed transactional data structure" were coined by the patentee, and does not cite any passage from the patents-in-suit, prosecution histories, dictionary, or other extrinsic resource that provides any insight into what is meant by these terms. Most tellingly, *Plaintiff has not put forward any definition for what is meant by either of these terms*. (*See* D.I. 52 at 12-14.) That Plaintiff was apparently unable to do so not only demonstrates that Defendants' motion for

_____
*(cont'd from previous page)*
the use of a computer. As such, an algorithm must be disclosed for executing this function. *Function Media, L.L.C. v. Google Inc.*, No. 2012-1020, slip op. at 10-11 (Fed. Cir. Feb. 13, 2013) (affirming the indefiniteness of a "means for transmitting" where the patent merely described "that the structure behind the function of transmitting is a computer program that transmits" but "no algorithm [was] disclosed").

9

summary judgment is ripe for resolution, but also distinguishes the patents-in-suit from the patents asserted in the cases that Plaintiff cited in its response brief, including *Bancorp Services, L.L.C. v. Hartford Life Insurance Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004). (*See* D.I. 52 at 12.) In *Bancorp*, the Court determined that the undefined phrase "surrender value protected investment" was actually synonymous with the phrase "stable value protected investment credits," which was well-known in the relevant industry. *Bancorp*, 359 F.3d at 1371-74. Plaintiff here has pointed to no "well-known" phrases from the relevant art that the terms "keeping a transaction flow captive" or "routed transactional data structure" were intended to invoke. Thus, the Court cannot "fairly infer[]" any meaning for these terms from the patents-in-suit or relevant art. *Id.* at 1373. Because the patentee has coined multiple terms, but skipped the step of assigning a meaning to those terms, these claims should be declared invalid now.

## CONCLUSION

The parties squarely disagree on several key points of law. As Plaintiff's response brief indicates, the relevant factual and legal record necessary to resolve those points of law is already before the Court. Given the broad ramifications that a decision resolving these already-joined issues would have, Defendants respectfully submit that their motion for leave to file their summary judgment motion for indefiniteness should be granted.

DATED:  February 14, 2013　　　　　　　　　　Respectfully submitted,

*/s/ Robert S. Saunders*　　　　　　　　　　　　*/s/ Kenneth E. Aaron*
Robert S. Saunders (ID No. 3027)　　　　　　　Kenneth E. Aaron (ID No. 4043)
SKADDEN, ARPS, SLATE, MEAGHER &　　　　WEIR & PARTNERS, LLP
　　FLOM LLP　　　　　　　　　　　　　　　824 Market Street Mall, Suite 800
One Rodney Square　　　　　　　　　　　　　Wilmington, Delaware 19899
P.O. Box 636　　　　　　　　　　　　　　　　Tel.:  (302) 652-8181
Wilmington, Delaware 19899　　　　　　　　　kaaron@weirpartners.com
Tel.:  (302) 651-3000
rob.saunders@skadden.com　　　　　　　　　　*Attorneys for Sovereign Bank, N.A.*

*Attorneys for JPMorgan Chase & Co.*

*/s/ Andrew C. Mayo*　　　　　　　　　　　　*/s/ David E. Moore*
John G. Day (ID No. 2403)　　　　　　　　　　Richard L. Horwitz (ID No. 2246)
Lauren E. Maguire (ID No. 4261)　　　　　　　David E. Moore (ID No. 3983)
Andrew C. Mayo (ID No. 5207)　　　　　　　　POTTER ANDERSON & CORROON LLP
ASHBY & GEDDES, P.A.　　　　　　　　　　　Hercules Plaza, 6th Floor
500 Delaware Avenue, 8th Floor　　　　　　　　1313 N. Market Street
P.O. Box 1150　　　　　　　　　　　　　　　Wilmington, Delaware 19801
Wilmington, Delaware 19899　　　　　　　　　Tel.:  (302) 984-6000
Tel.:  (302) 654-1888　　　　　　　　　　　　rhorwitz@potteranderson.com
jday@ashby-geddes.com　　　　　　　　　　　dmoore@potteranderson.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com　　　　　　　　　　*Attorneys for Bank of America, N.A.;*
　　　　　　　　　　　　　　　　　　　　　*Merrill Lynch, Pierce, Fenner & Smith*
*Attorneys for UBS Financial Services., Inc.*　*Incorporated; and Citizens Financial*
　　　　　　　　　　　　　　　　　　　　　*Group, Inc.*

11