```
 1                     UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF DELAWARE

 3

 4     PI-NET INTERNATIONAL, INC.,  :   CA NO. 12-282-RGA

 5                                  :   November 12, 2013

 6                 Plaintiff,       :

 7                                  :   1:00 o'clock p.m.

 8     v.                           :

 9                                  :

10     JPMORGAN CHASE & COMPANY,    :

11                                  :

12                 Defendant.       :

13     ............................:

14

15

16               TRANSCRIPT OF DISCOVERY DISPUTE

17          BEFORE THE HONORABLE RICHARD G. ANDREWS

18                UNITED STATES DISTRICT JUDGE

19

20

21     APPEARANCES:

22

23     For Plaintiff:     O'KELLY, ERNST & BIELLI

24                        BY:  GEORGE PAZUNIAK, ESQ.

25
```

```
 1    For Defendant:      SKADDEN, ARPS, SLATE, MEGAHER & FLOM

 2                        BY:  ROBERT S. SAUNDERS, ESQ.

 3                        BY:  EDWARD L. TULIN, ESQ.

 4

 5

 6

 7

 8

 9    Court Reporter:      LEONARD A. DIBBS

10                         Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2                         P R O C E E D I N G S
 3
 4                    (The proceedings occurred at 1:18 o'clock p.m. as
 5       follows:)
 6
 7                    THE COURT:  Good afternoon.  Please be seated.
 8                    MR. PAZUNIAK:  Good afternoon, Judge.
 9                    MR. TULIN:  Good afternoon.
10                    THE COURT:  So this is a discovery issue in Pi-Net
11       International Inc v. JPMorgan Chase & Company, Civil Action No.
12       12-282-RGA.
13                    Mr. Pazuniak, good afternoon.
14                    MR. PAZUNIAK:  Good afternoon.
15                    THE COURT:  Mr. Saunders, good afternoon.
16                    I assume you are, Mr. Tulin?
17                    MR. TULIN:  Yes.
18                    THE COURT:  You look familiar.
19                    Have we met before.
20                    MR. TULIN:  I used to -- I'm sorry -- I used to clerk
21       for Judge Burke.  We have met before.
22                    THE COURT:  Very recently then.
23                    MR. TULIN:  We did.
24                    THE COURT:  Okay.  Sorry about that.
25                    MR. TULIN:  Good to see you again, your Honor.
```

```
 1                THE COURT:  Hopefully, the next time I'll know where
 2      I've seen you from.
 3                All right.
 4                So I got these letters.  I have read the two letters, I
 5      read at least portions of the October 3rd letter, and I looked
 6      at some e-mails that followed.
 7                But what I have not done is, and what I would prefer
 8      not to do if I don't have to is, look at the box.
 9                How big of a box is this?
10                THE LAW CLERK:  A four-volume box.
11                THE COURT:  A four-volume box of the documents, which,
12      I take it, we're agreed, more or less, that at least two-thirds
13      of these documents are privileged, and, so, we're really just
14      concerned with waiver.
15                And then there's one-third that involves this person
16      named Kesan -- or I think that's the name -- who's apparently a
17      professor at Illinois.
18                I didn't notice any response on the Kesan thing, Mr.
19      Pazuniak.
20                MR. PAZUNIAK:  Actually, Mr. Kesan is an attorney.  He
21      was identified as an attorney in the -- in the privilege logs
22      that we have provided.
23                THE COURT:  All right.
24                Did you --
25                MR. PAZUNIAK:  Unfortunately --
```

```
 1                THE COURT:  -- did you tell me any of that in your

 2      letter?

 3                MR. PAZUNIAK:  No.  I'm sorry, your Honor, I didn't see

 4      that as a -- as the issue.  I apologize.

 5                THE COURT:  Well, no, I mean it's just I got a letter

 6      from Mr. Tulin, I guess that sort of said -- hold on a minute.

 7                (Pause)

 8                You know, the first thing is -- well, the second thing

 9      is bolded, is whether the Pi-Net disclosures are privileged.

10                MR. PAZUNIAK:  Yes, and -- and it gets complicated,

11      your Honor, because a lot of claims that, you know, that were

12      put in that something was privileged really are not privilege.

13      They were not.  Even though the documents have attorney-client

14      privilege on them.

15                What my client had done was, at some point, she got

16      some things from an attorney that had like claims and arguments

17      for -- within the PTO, and then she kept using the same document

18      in the same format, which made it --

19                THE COURT:  Wait.  Let me see if I'm understanding.

20                Mr. Tulin has identified 65 disputed documents, at

21      least 65.

22                Are you saying that, in fact, some of these are not

23      actually disputed, because they're not properly claimed as

24      attorney-client?

25                MR. PAZUNIAK:  Correct.  We did not claim them as
```

1          attorney-client, because they were not.

2                    THE COURT:  Okay.

3                    Well, I mean I gather you didn't claim any of these 65.

4                    MR. PAZUNIAK:  Yes, what --

5                    THE COURT:  Other than maybe the two or three that were

6          mentioned at the depositions.

7                    MR. PAZUNIAK:  -- what happened, of course, is that we

8          did go through the process of identifying the privileged

9          documents.  We created a huge privilege log and --

10                   THE COURT:  No.  And I read -- I saw about --

11                   MR. PAZUNIAK:  Right.

12                   THE COURT:  -- your outside inventor.

13                   MR. PAZUNIAK:  And -- and as it turned out, I finally

14         was able to finish it over the weekend and today, and submitted

15         it to the other side earlier today.

16                   There's actually, all told, were 124 documents out of

17         127,000 that were produced, that should have been held

18         privileged.  Some of those are the ones that were included in

19         the letter.

20                   There are other documents, which were not included in

21         the letter that we identified, and I have submitted the letter

22         to Mr. Tulin saying we'd like to claw-back that under the

23         Protective Order.

24                   THE COURT:  Okay.  Let me just see if I've got this

25         straight, which is, I think there was a -- I think I remember

1      seeing the number 13,000 --

2              MR. PAZUNIAK:  Mm-hmm.

3              THE COURT:  -- pages of privileged documents.

4              What you're saying is that grossly overstates the

5      amount that should have been claimed?

6              MR. PAZUNIAK:  No, no.  I'm sorry, your Honor.

7              The 13,000 is the number of privileged documents to

8      which we had claimed privilege and had listed on a privilege

9      log.

10             THE COURT:  Right.

11             MR. PAZUNIAK:  And that's fine.

12             Mr. Tulin and I had some questions regarding some of

13     those, and I think we've resolved them, or at least I haven't

14     heard any problems at least with that.

15             In addition -- but we produced 128,000 documents.

16             THE COURT:  Right, right.  But you were just talking

17     about --

18             MR. PAZUNIAK:  There was an understanding.

19             THE COURT:  -- something -- well, wait, wait.

20             You just said something about there's only 124 disputed

21     documents, and I'm trying to figure out that's 124 compared to

22     --

23             MR. PAZUNIAK:  Well --

24             THE COURT:  -- then, in other words -- and maybe I've

25     got it backwards.

```
 1            What you're saying is, you produced in discovery 124

 2   documents that you now want to claw-back?

 3            MR. PAZUNIAK:  Correct, your Honor.

 4            THE COURT:  Okay.

 5            MR. PAZUNIAK:  Okay.  And some of those documents --

 6   and we did not know that those documents had been produced, or

 7   that there was an issue, frankly, until we got the October 3

 8   letter from Mr. Tulin.

 9            At that point, we said, Oh, we better make another

10   review and see what's going on.

11            The review is kind of difficult, because 124 documents

12   are not between an attorney and a client.  The privileged

13   information is more or less buried in an e-mail, and, so, we had

14   to review, basically, approximately 15,000 documents.

15            After going through, we found that there's 124 that

16   should have been withheld as privileged.

17            THE COURT:  All right.  So what you said is, earlier

18   today you've given Mr. Tulin a letter trying to claw-back those

19   124?

20            MR. PAZUNIAK:  Correct, correct, your Honor.

21            And I recognize it was done only an hour-and-a-half or

22   two hours before this hearing.

23            THE COURT:  Well, and I appreciate your saying that,

24   because I'm sure Mr. Tulin would say that.

25            MR. PAZUNIAK:  But it was -- it was -- it wasn't -- it
```

1      was a process that actually was speeded up to make sure that we

2      had it done before this -- this hearing.

3            But some of those 124 are on the list that Mr. Tulin

4      submitted to your Honor, some are not, and, on the other hand,

5      some of the documents that Mr. Tulin mentioned, we do not claim

6      a privilege to, because they're not privileged.

7            THE COURT:  Okay.  So just -- so Mr. Tulin says at

8      least 65.

9            And I don't recall, but I assume if I looked at these

10     four volumes, they would have the 65 that's identified.

11           MR. TULIN:  It does.

12           MR. PAZUNIAK:  Right.

13           THE COURT:  How many of those 65 are you trying to

14     claw-back?

15           MR. TULIN:  18.

16           THE COURT:  Okay.

17           (Pause)

18           MR. TULIN:  I think that's right, Judge.

19           MR. PAZUNIAK:  I think that's about right.  I didn't

20     count them, but that sounds right.

21           THE COURT:  Okay.  So with an hour-and-a-half you've

22     done some basic arithmetic?

23           MR. TULIN:  We tried to, your Honor, yes.

24           MR. PAZUNIAK:  We did.

25           MR. TULIN:  We have a copy of what we received, if your

1      Honor wants to see it?

2              THE COURT:  Well, I don't think there is a need to see

3      that this particular minute.

4              What -- what is your view, Mr. Tulin?

5              MR. TULIN:  As to the claw-back that occurred roughly

6      an hour-and-a-half ago, it was the first time we had learned

7      that Pi-Net's position was that any of the documents that we had

8      identified in the letter from November the 8th were not going to

9      be privileged, including the ones that were marked as

10     attorney-client privilege.

11             In the letter that was submitted yesterday, DI-100, it

12     was our impression that Pi-Net was taking the view that all of

13     the documents were privileged and had been inadvertently

14     produced.

15             I take the claw-back from Mr. Pazuniak from earlier

16     today, that that view has changed now, and at least as to 47 of

17     the 65 documents, including 43 of which were marked as

18     attorney-client privilege, there is no assertion of privilege.

19     In effect, then, those should operate, if they are in -- if they

20     did, in fact, convey attorney-client communications as a waiver

21     of subject matter.  We would have to look further into that.

22             THE COURT:  Well, and that's not something that's fair

23     to you or even to me to do today, given the exchange, the recent

24     exchange.

25             And I take it we are agreed that 47 of these 65, the

1          issue is now moot, right?

2                    MR. PAZUNIAK:  Yes, your Honor.

3                    THE COURT:  Okay.  Just checking.

4                    MR. PAZUNIAK:  Yes.

5                    THE COURT:  Because I already misunderstood you once,

6          so I wanted to make sure I --

7                    MR. PAZUNIAK:  Right.

8                    THE COURT:  -- it helps sometimes to repeat what I

9          think I'm hearing.

10                    MR. PAZUNIAK:  Yes.

11                    MR. TULIN:  As to the remaining 18 documents -- and,

12          your Honor, I guess we would have a couple of things to say

13          about those -- I don't think there's any dispute about the law

14          that would govern this sort of situation.  And that there's

15          really four different sources of law, Rule 502B of the Federal

16          Rules of Evidence which, in turn, references Federal Rule of

17          Civil Procedure 26(e)(5)(B).

18                    Those provisions provide that if a production is

19          inadvertent, it would not give rise to a waiver, if, in fact,

20          inadvertency was shown; if, in fact, proper procedures were

21          taken or reasonable precautions were taken to prevent that

22          disclosure from occurring; and that reasonable procedures were

23          instituted or instigated after the discovery to rectify any

24          error.

25                    And at least to those 18 documents, your Honor, we

1    think the only efforts that had been taken were the ones that

2    occurred 90 minutes ago with the first written claw-back that we

3    received as to those.

4              THE COURT:  Well, I'm accepting Mr. Pazuniak's

5    representation, as I imagine you are, that he spent all weekend

6    getting to that letter.

7              MR. TULIN:  And as far as the weekend, as I'm sure that

8    was for Mr. Pazuniak, we do certainly accept that.

9              I guess we would take some issue with the timing of

10   that, your Honor.

11             THE COURT:  And I appreciate the timing argument,

12   because in the end that seems to be -- that is your main -- I

13   think that's your main argument.

14             Before you go on that, let me just asking something,

15   because I forget whether this is -- I have the feeling it's

16   either hinted at or expressly stated in your letter, Mr.

17   Pazuniak.  And, so, this is well known to the defendant, but

18   it's not well known to me.

19             How much in the way of legal resources do you have?

20   Does the plaintiff have devoted to this case?

21             MR. PAZUNIAK:  A lot less than defendants.

22             THE COURT:  Well, that tells me very little.  That's

23   why I --

24             MR. PAZUNIAK:  Well --

25             THE COURT:  -- because I can appreciate that they have

```
 1    as much as they need.  You know, I know you.  I thought I saw

 2    another name here.  I understand you have other cases.

 3              Is there anybody besides you, and say one other person,

 4    one other legal person working on this case for the plaintiff?

 5              MR. PAZUNIAK:  Essentially, your Honor is correct.

 6    It's two legal persons plus some paralegal support.

 7              That's one -- one of the problems that occurred is on

 8    the timing issue.  We had no reason to think that there was

 9    anything major going on until we got Mr. Tulin's letter of

10    October 3.

11              And then I saw that, Oh, we better look at this, and I

12    turned it over to a paralegal.  As it's turned out, the

13    paralegal had some medical issues, and the job didn't get done,

14    so I had to go and start doing some of this myself with another

15    lawyer, or a young lawyer.

16              And it's just took a while, because we had to go

17    through several layers, and several reviews, because once we got

18    past one review, then we discovered we had overlooked something,

19    because of the way this thing was done.  And then we had to go

20    back again and do it again.

21              So -- so the process was not like ignored.  It was

22    ongoing.  It just took a while, because --

23              THE COURT:  Yes.

24              MR. PAZUNIAK:  -- there is a certain lack of manpower,

25    and in the middle of various other things that are going on in
```

```
 1      the case, including the other issues that I think were resolved

 2      between the parties regarding discovery.

 3               But they were resolved.  They had to be resolved.

 4               You also have the expert reports that were being done,

 5      so that takes a little bit of time.  So we acted as promptly as

 6      we could, but it takes a little while to get there.

 7               THE COURT:  All right.

 8               Mr. Tulin, how many lawyers from Skadden, Arps do you

 9      think have billed time in this case?

10               MR. TULIN:  Six.

11               THE COURT:  All right.

12               So here's -- go ahead.

13               MR. TULIN:  I'm sorry, your Honor, just a quick

14      response to Mr. Pazuniak.

15               The first we heard that there was anything sort of

16      remedial review, or any review going on, was in the letter from

17      yesterday that that -- had we known, we might have been able to

18      come to things a little bit differently, and might have been

19      able to confront the issues in at least a different or better

20      way.

21               THE COURT:  No, no.  I saw your letter of October 3rd

22      saying, Let's meet-and-confer, so there is no criticisms implied

23      or expressed here.

24               MR. TULIN:  The -- the other thing I would say is,

25      while -- while I don't -- all the numbers that the parties have
```

```
 1    been talking about today are accurate, at least as far as I'm

 2    aware.

 3           However, at least from what I can tell, if you do two

 4    key words searches within the plaintiff's production; one for

 5    attorney-client privilege in quotation marks and one that

 6    combines the name of the inventor, Arunachalam with any one of

 7    Dr. Arunachalam's outside trial counsel, you'll get

 8    approximately 512 documents, and all 65 of the documents that

 9    were the subject of the motion are included in that.

10           So with some simple key word searching, you would get

11    all the documents that were at issue here.

12           THE COURT:  And -- and I'm going to betray my

13    technological ignorance here, but Judge Burke may have mentioned

14    this, too, some time while you worked for him, once upon a time,

15    it was hard to search for, say, PDF documents for particular

16    words and things.  And I have sort of seen that now everybody

17    can take these things and digitize them.

18           Is it the case that, essentially, that there's nothing

19    that can't be easily key word searched by some like, you know,

20    other than handwritten stuff?

21           MR. TULIN:  I -- I believe that's accurate.  It's a

22    production that the plaintiff -- that we received from the

23    plaintiff with regard to J.P. Morgan's production.  Everything

24    had been OCR'd, such that it was easily tech searchable.

25           I believe that Pi-Net's had made the same efforts with
```

1    regard to their production.  We're talking about e-mails in this

2    case, which are easily searchable --

3           THE COURT:  Right, right, right.

4           MR. TULIN:  -- you know, under these circumstance.

5           So, at least when it comes to that issue -- the other

6    thing I would say about these documents is that we did not bring

7    the motion just to cause a headache for --

8           THE COURT:  No --

9           MR. TULIN:  -- plaintiff's counsel.

10          THE COURT:  -- no, I don't think you did.

11          MR. TULIN:  These really are documents that go to the

12   heart of certain disputed issues.  And some of them are -- may

13   became very important.

14          For instance, if the motion was granted, your Honor is

15   likely to see these documents, or the at least certain of them

16   in a Summary Judgment Motion.  Then if that's not granted it,

17   then at a trial.

18          THE COURT:  Well, you know, I hear what you're saying.

19   When I was looking at what you said -- you know this is -- this

20   is on Page 3 of your letter, the extent of the disclosure -- you

21   say these documents relate to Pi-Net's view of the scope of the

22   prior art.

23          That doesn't seem to me like something that I'm going

24   to see on Summary Judgment.

25          The appropriate claim construction for key terms, I

1          don't think I'm going to see that.

2                    The value and rational underlying prior licenses to the

3          patent-in-suit.

4                    Yes, I can imagine seeing that, but not on Summary

5          Judgment, but that might go to damages for sure.

6                    The bases for Pi-Net's infringement contentions.  I'm

7          not so sure about that either.

8           The date of the alleged invention, whether Dr. Arunachalam can

9                    swear behind any references.  I can see why

10         that's useful information, but I'm not -- I wasn't actually even

11         -- you know, that one, I can see why that's interesting.

12                   And then the inequitable conduct allegations, I'm

13         curious, what is the basis for what you're saying?

14                   MR. TULIN:  Sure.  Your Honor, let's -- let's take the

15         fifth one, the one about the alleged invention date.

16                   There are a number of references that the expert that

17         has been retained by J.P. Morgan has offered an opinion on that

18         they anticipate are or render obvious the claims of the asserted

19         patents.

20                   Many of these reference fall within a period of time

21         between the start of 1995 and November of 1995.  We've gotten an

22         indication in interrogatory responses from Pi-Net that they

23         intend to swear behind --

24                   THE COURT:  Right.

25                   MR. TULIN:  -- those references.

1              THE COURT:  So he thought all of this in November of

2      1994?

3              MR. TULIN:  Exactly.  That -- that sort of idea.

4              And that may became quite -- that may become quite

5      important, because there may not be much of a dispute as so what

6      the disclosures of those references show.  It may be really all

7      about the date of the swear behind.

8              And, so, if there are documents that relate to what

9      date one can show conception, reduction to practice, and

10     corroboration thereof.

11             THE COURT:  But -- and I guess --

12             MR. TULIN:  And, in fact, there are four documents.

13             I am sorry to interrupt.

14             THE COURT:  I was just going to say, and you've seen

15     these.

16             Do these documents -- I mean I guess if Dr. Arunachalam

17     wrote to her lawyer, or somewhere it's buried in there, Yes, I

18     remember it very well.  It was the July 4th weekend and I was

19     celebrating, and all of a sudden I said, Aha.

20             So that kind of thing, I could imagine that is, in

21     fact, the sort of thing we're talking about?

22             MR. TULIN:  It's the reverse direction, your Honor, and

23     without --

24             THE COURT:  I mean -- okay, okay.

25             MR. TULIN:  -- and without getting too much into that,

1            THE COURT:  I think I understand reverse direction.

2    What you mean.  I think I do.  In any event, it good enough for

3    this purpose.

4            MR. PAZUNIAK:  Your Honor, may I address that?  I'll be

5    happy to show the document --

6            THE COURT:  No, I don't want to see the document.

7            MR. PAZUNIAK:  Because the fact of the matter is, most

8    of everything that your Honor read is in there.

9            I think most of those references are to the documents

10    that involve the re-exam process, which are those that were

11    marked attorney-client privilege, but we're not claiming a

12    privilege to, because there was no attorney involved.  They were

13    just documents in the files that the client had generated.

14            The issue that was -- that was just discussed, the date

15    of invention, the only documents -- and I can show it to you,

16    because counsel had pointed to it -- there's only one document.

17            And that's a document that says, Oh, he -- a request by

18    my client to the attorney, can you send me copies of these

19    documents?

20            And the client -- and the attorney writes it back and

21    there's a few comments.

22            That's all there is.  One letter with a handful of

23    comments.  This is not a waiver of all kinds of issues.

24            THE COURT:  Let me just ask:

25            Mr. Tulin, have you had time in the hour-and-a-half,

1    or however how much time you've had, to figure out the 47 that

2    are now no longer -- do you know which ones that are still in

3    dispute in terms of substance, or, you know --

4          MR. TULIN:   I -- I do, your Honor.

5          THE COURT:   Okay.

6          MR. PAZUNIAK:   And the other point I wanted to make,

7    your Honor is, all the comments about whether we should have

8    been more faster or something, the Protective Order in this case

9    that was stipulated by -- stipulated by J.P. Morgan, and signed

10   by your Honor, says very clearly, No demonstration or proof of

11   error, inadvertence, excusable neglect, or absence of negligence

12   shall be required of the producing parties, or such party to

13   avail itself of the claw-back provision.

14         So we do not under, the Court's Order, and stipulated

15   by J.P. Morgan, we do not have to show error, inadvertence, or

16   anything.   The only thing we have to do is act promptly, which

17   is what I was trying to do.

18         THE COURT:   Well, and -- but that seems to be what the

19   issue is, because I would say, based on what you submitted in

20   your letter, that even if you had to show inadvertence, I mean I

21   was satisfied, based on what you said, that while you may not

22   have done the highest and best possible efforts, you've made

23   reasonably diligent efforts to try to, by hiring a firm and

24   trying to cull out what's attorney-client.

25         So, you know, whenever you produce a document, there's

1    some amount of inadvertence that you didn't need to produce.

2            So -- so I took it to be that the real issue here was

3    sort of the promptness of it and, realistically, I accept, under

4    the circumstances -- you know, Mr. Tulin says you should have a

5    written claw-back request -- and I forget whether that's the

6    order of the rule or both -- and I think that, under the

7    circumstances, you know, I guess to some extent, I'm sorry it

8    required a meeting of us all to do it, but I'm prepared to

9    accept that the letter you handed in him earlier is reasonably

10   prompt, given the disparity of resources that I perceive being

11   either side here.

12           And by that I don't mean that I think Skadden is over

13   litigating the case, I think you're under litigating the case,

14   but I appreciate that having some familiarity with what I think

15   is the financial backing that you have from prior litigation

16   with Dr. Arunachalam, that I think on all things considered,

17   while I do not want to encourage any sloppiness, or just lack of

18   diligence, I think you're being diligent.  I just think

19   handicapped by not having sufficient resources.  So I would ask

20   that the 18 documents be clawed back.

21           MR. TULIN:  And, of course, your Honor, we -- we'll

22   comply with whatever order that the Court puts forward.

23           Just a couple of just brief responses to what your

24   Honor has stated, with regard to the disparity of resources and

25   the like.

1          This is a case which is fairly high stakes for J.P.

2     Morgan.   The damages claim in this case is in the hundreds of

3     millions of dollars.

4          We've had expert -- expert reports exchanged on this

5     and this is something that we are taking very seriously.   It's

6     something that we brought into Court and this is obviously

7     something that Pi-Net brought us into Court for.   And, you know,

8     so certainly it's something -- it's something that we've taken

9     seriously.

10          And I guess just -- as to the cases that we have --

11     that we have seen, this sort of time line where the documents

12     have been out there for six or seven months, and then there is

13     in this case the 47 days, which passes between the first notice

14     of the documents and the first communication, that there's

15     either a remedial review going on, or that a claw-back is going

16     is to be occurring, does seem out of step with the sort of

17     situations that District Courts in particular, and the Third

18     Circuit, has said is what's required under -- under the rules,

19     and would give rise to a waiver under the circumstances.

20          There have been narrower times with more prompt and

21     greater attention to things with a smaller number of documents,

22     where there has been waiver found.

23          With all that being said, we will respect whatever --

24     whatever decision that will comply with the -- with anything the

25     Court orders.

1                    THE COURT:  All right.

2                    Well, and I would just say, I mean -- and I know it

3         doesn't sound based on what I'm saying -- I am sympathetic to

4         what you said.  I just think.  On balance.  That I think, you

5         know -- and maybe only by a thread -- but I think that plaintiff

6         has met its burden, and, so, I will ask that you return those

7         documents.

8                    MR. PAZUNIAK:  Your Honor, if I may just add one

9         comment?

10                   Actually, plaintiff and defendant have worked out a lot

11        of the discovery issues in the course of this case, and

12        including some other issues that came up regarding the privilege

13        log issues regarding other questions.

14                   We have been able to work all these things out,

15        including in this intermediate period.  Part of the problem that

16        occurred is -- is I viewed this -- and I think we talked about

17        it, but maybe I wasn't clear enough -- I understood that J.P.

18        Morgan was saying you waived it already --

19                   THE COURT:  Well, no, no.

20                   MR. PAZUNIAK:  -- and we're going to court.  And it

21        wasn't, perhaps, not --

22                   THE COURT:  I read the October 3rd letter looking for

23        exactly that and they didn't say they were going to court then.

24        They said let's meet-and-confer about this.

25                   So, you know, if that were the only thing, I would -- I

1        think you overstated the case of what that letter said.

2               But, in any event, I appreciate that what you've done

3        since and before today, I think puts you in a better stead.

4               MR. PAZUNIAK:  Thank you, your Honor.

5               MR. TULIN:  Your Honor, just one last comment?

6               We would like to preserve the argument regarding the

7        subject matter waiver as to the documents for which the

8        attorney-client privilege is no longer asserted.  There may just

9        need to be some other --

10              THE COURT:  And -- and I appreciate that it's a fluid

11       situation, and no matter how much you've done in the last

12       hour-and-a-half that -- you know, other than -- I guess what I

13       am saying is based on the argument which I took to be your main

14       argument, which is, it wasn't a reasonably prompt claw-back

15       request, on that I am ruling against you.

16              Whatever else might be out there that you haven't had a

17       chance to think about, because it was only an hour-and-a-half

18       ago, you know, you can think about that, talk to Mr. Pazuniak,

19       and if there's -- you know, I think anything else is preserved.

20              Is that what you're asking or saying?

21              MR. TULIN:  Yes.

22              We may be back on an another issue of privilege, but

23       certainly not the one as to the -- as to the 18 documents.

24              THE COURT:  All right.

25              Well, thank you for coming in.

1              Mr. Tulin, good to see you again.

2              Mr. Saunders, good to see you.

3              THE COURT:  Mr. Pazuniak, thank you.

4              MR. PAZUNIAK:  Thank you.

5              (The proceedings adjourned at 1:47 o'clock p.m.)

6                             *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25