# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF Delaware

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-282-RGA |
| ) | |
| JPMORGAN CHASE & CO., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### PLAINTIFF'S OPENING BRIEF IN SUPPORT OF
### MOTION TO EXCLUDE THE EXPERT
### TESTIMONY OF DEFENDANT'S RETAINED EXPERT, DR. MICHAEL SIEGEL

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff*
*Pi-Net International, Inc.*

Table of Contents

I. NATURE AND STAGE OF THE PROCEEDING ........................................................... - 1 -

II. SUMMARY OF ARGUMENT ........................................................................................ - 1 -

III. LEGAL STANDARD ....................................................................................................... - 2 -

IV. ARGUMENT .................................................................................................................... - 2 -

   A. Dr. Siegel Cannot Testify That Certain References Anticipate the Inventions ............... - 2 -

      1. Requirement for "Anticipation" ................................................................................ - 3 -

      2. All Pi-Net Claims of the Patents-In-Suit Require a Web System .............................. - 4 -

      3. U.S. Patent 5,799,157 to Escallon ............................................................................. - 5 -

      4. U.S. Patent 5,774,668 to Choquier ............................................................................ - 6 -

      5. U.S. Patent 5,870,724 to Lawlor ............................................................................... - 7 -

   B. Dr. Siegel's Undisclosed and Unsupported Obviousness Contentions .......................... - 8 -

      1. "Obviousness" Disclosure of Dr. Siegel's Expert Reports ........................................ - 8 -

      2. Obviousness Standard ................................................................................................ - 9 -

      3. Dr. Siegel Should Be Precluded From Arguing Generalized Obviousness ............. - 11 -

      4. Dr. Siegel Should Be Precluded From Arguing Obviousness Based On Scholl ...... - 14 -

   C. Dr. Siegel Should Be Precluded From Arguing Facts Without Foundation .................. - 15 -

V. CONCLUSION ................................................................................................................ - 16 -

i

# TABLE OF AUTHORITIES

**CASES**

*Bennett Marine, Inc. v. Lenco Marine, Inc.*,
  2013 WL 5273116 (Fed. Cir. 2013)............................................................................- 10 -
*Broadcom Corp. v. Emulex Corp.*,
  732 F.3d 1325 (Fed. Cir. 2013)...................................................................... - 9 -, - 10 -
*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013)...................................................................................- 11 -
*Daubert v. Merrill Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................ passim
*In re Chaganti*,
  2014 WL 274514 (Fed. Cir. 2014)..............................................................................- 13 -
*In re Ruskin*,
  347 F.2d 843 (1965)......................................................................................................- 4 -
*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed.Cir.2012).....................................................................................- 10 -
*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)......................................................................................- 10 -, - 12 -
*K–TEC, Inc. v. Vita–Mix Corp.*,
  696 F.3d 1364 (Fed.Cir.2012).....................................................................................- 10 -
*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*,
  731 F.3d 1258 (Fed. Cir. 2013)...................................................................................- 11 -
*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
  737 F.3d 1345 (Fed. Cir. 2013)...................................................................................- 13 -
*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011)......................................................................................- 4 -
*St. Jude Med., Inc. v. Access Closure, Inc.*,
  729 F.3d 1369 (Fed. Cir. 2013)...................................................................................- 12 -
T*ASER Int'l, Inc. v. Karbon Arms, LLC*,
  2013 WL 6705149 (D. Del. 2013) ..............................................................................- 10 -
*Therasense, Inc. v. Becton, Dickinson & Co.*,
  593 F.3d 1325 (Fed. Cir. 2010)......................................................................- 3 -, - 4 -
*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  2013 WL 1702159 (D. Del. 2013) ..............................................................................- 15 -

**STATUTES**

35 U.S.C. § 103...................................................................................................- 9 -, - 13 -
35 U.S.C. § 282..............................................................................................................- 11 -

**RULES**

F.R.Civ.P. Rule 26(a)(2)(B)(i).......................................................................................- 12 -
Federal Rule of Evidence 702 ................................................................................... passim

## I. NATURE AND STAGE OF THE PROCEEDING

Plaintiff respectfully moves to exclude certain testimony of Defendant's expert, Dr. Michael Siegel, relating to invalidity for failure to comply with the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993).

This is a patent infringement action filed by Plaintiff Pi-Net International, Inc. ("Pi-Net") against Defendant JPMorgan involving –U.S. Patent No. 5,987,500 ("the '500 patent") (App. A), U.S. Patent No. 8,108,492 ("the '492 patent") (App. C), and U.S. Patent No. 8,037,158 ("the '158 patent") (App. C).

Discovery is complete, and all proposed expert witnesses have provided expert reports and have been deposed. This case is set for trial on June 2, 2014. (D.I. 95)

One of the expert reports submitted by JPMorgan is that by Dr. Michael Siegel, Exhibit AH (A-1706-2068), together with his reply report, Exhibit AI (A-2069-2115). Dr. Siegel intends to testify that the claims of the Patents-in-suit are invalid for anticipation and obviousness. In accordance with the Scheduling Orders in this case (D.I. 90, 95), Plaintiff Pi-Net has moved to exclude the certain of the testimony of Dr. Siegel with respect to these invalidity issues.

This is Pi-Net's opening brief in support of that motion.

## II. SUMMARY OF ARGUMENT

Defendant JPMorgan has proffered the expert testimony of Dr. Siegel on patent validity. Certain of his opinions do not comply with the requirements of FRE 702 and *Daubert*.

First, Dr. Siegel proposes to testify that certain prior art references anticipate the claims of the Patents-in-suit. All the claims of the '158 and '492 Patents-in-suit are limited to Web systems or methods practiced on the Web expressly, and the claims of the '500 Patent require the Web, because Web servers and Web browsers/pages are part of the structures included in the

claims by the means-plus-function elements. Yet, some of the references cited by Dr. Siegel as anticipatory admittedly do not mention the Web. These references cannot be asserted as anticipatory references as a matter of law, and Dr. Siegel should not be allowed to argue to the jury that such references are anticipatory. If any claim of the Patents-in-suit is not limited to the Web, then, nevertheless, Dr. Siegel's proposed anticipation testimony should not be allowed with respect to those claims that are limited to the Web.

Second, Dr. Siegel's proposed testimony that the claims of the Patents-in-suit are obvious is nothing more than pure *ipse dixit*, unsupported by any analysis. Dr. Siegel did not identify any combinations, establish that the prior art was analogous, provided no reason or motivation to combine, or consider any other factor required by law to support the legal conclusion of obviousness.

Finally, Dr. Siegel proposes to testify to facts about which he has no personal knowledge and which are not matters of record.

### III. LEGAL STANDARD

To avoid needless repetition, the section entitled "III. Legal Standard" in Plaintiff's Opening Brief In Support Of Motion To Exclude The Expert Testimony Of Defendant's Retained Expert, Susan Spielman, On Validity is here incorporated.

### IV. ARGUMENT

#### A. Dr. Siegel Cannot Testify That Certain References Anticipate the Inventions

Dr. Siegel has cited eight separate references as allegedly anticipating some or all the claims of all three Patents-in-suit. (Exh. AH, A-1711, 2072). Pi-Net disagrees with Dr. Siegel's contentions, and submitted an expert report which explain Dr. Siegel's errors. (Exh. AD, A-1270 etc.) Although Dr. Siegel errs with respect to all allegations of anticipation, certain of Dr. Siegel's assertions of anticipation are so plainly contrary to law that they can be addressed in a

*Daubert* motion, and should be excluded from trial, and the deficiencies are with respect to undisputed requirements of the claims, and, thus, are independent of any constructions of the claims.

### 1. Requirement for "Anticipation"

To invalidate patent claims for anticipation requires that the challenger must demonstrate by clear and convincing evidence that a single prior art references discloses the invention of the particular claim exactly as stated in the claim. Thus, in *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325 (Fed. Cir. 2010), the Court explained:

> "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be "treated ... as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning." "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102."

*Therasense*, 593 F.3d at 1332 (internal citations omitted). The disclosure in the proposed anticipatory reference may be "inherent," but a disclosure is "inherent" only if it is necessarily and invariably found in or part of the disclosed embodiment. Thus, the Court in *Therasense* stated:

> The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim. "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation...." "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or

> combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.

*Therasense*, 593 F.3d at 1332-33 (internal citations omitted).

A functional equivalent of a claimed element is not an anticipatory disclosure, whether direct or inherent. Thus, in *Old Reliable Wholesale, Inc. v. Cornell Corp*., 635 F.3d 539, 545 (Fed. Cir. 2011), for example, the Court cited *In re Ruskin*, 347 F.2d 843, 846 (1965) for the proposition that "Even where a prior art device is the 'functional equivalent' of a patented product, it does not anticipate unless it discloses the structure required by the asserted claims."

### 2. All Pi-Net Claims of the Patents-In-Suit Require a Web System

All the asserted claims of the Pi-Net Patents-in-suit are directed to the Web, as a matter of law. Thus, the two independent asserted claims of Patent 8,108,492 are directed to:

> *Claim 1*: A system, comprising:
>
> a <u>Web server</u>, including a processor and a memory, for offering one or more <u>Web applications</u> as respective point-of-service applications in a point-of-service application list on a Web page….
>
> *Claim 10*: A method for performing real-time <u>Web transactions from a Web application</u>, comprising:
>
> receiving a request at a <u>Web server</u>, including a processor and a memory, for a real-time <u>Web transaction from a Web application on a Web page</u>, wherein the Web server is configured to hand over the request to a Value Added Network (VAN) switch…..

(App. C). Similarly, the sole independent claim of Patent 8,037,158 is directed to:

> *Claim 1*. A method for performing a real time <u>Web transaction</u> from a <u>Web application</u> over a digital network <u>atop the Web</u>, the method comprising:
>
> providing a <u>Web page</u> for display on a computer system coupled to an input device;
>
> providing a point-of-service application as a selection within the Web page, wherein the point-of-service application provides access to both a checking and savings account, the point-of-service application operating in a service network <u>atop the World Wide Web</u>….

(App. B).

The claims of the '500 Patent do not use the word "Web," but all the claims include terms that require a Web server and Web browser/Web page. For example, '500 Patent asserted independent claims 1 and 35 are written in means-plus-function language, and the structures corresponding to the "means" claims require, *inter alia*, a Web browser/Webpage and a Web server. (D.I. 74)

### 3. U.S. Patent 5,799,157 to Escallon

Dr. Siegel proposes to testify that the claims of the Patents-in-suit are anticipated by U.S. Patent 5,799,157 to Escallon. (A-1730). In rebuttal, Pi-Net's expert, Chuck Easttom, pointed out that Escallon does not disclose any Web system or method, and, in fact, does not even disclose anything operational on the internet. (Exh. AD, A-1405) Dr. Siegel then filed a reply report that addressed only one point of Mr. Easttom's rebuttal on Escallon, and effectively confirmed that Escallon does not disclose any Web system or method. (Exh. AI, A-2094-95)

In his deposition, when asked where Escallon discloses a Web system or method, Dr. Siegel's only response was as to point out that Escallon had a section titled "Background of the Invention" in which Escallon cited a prior art reference that was titled and described as follows: "An article in Business Week magazine ("The Internet". Nov. 14. 1994. p. 80) describes an "electronic catalog …" (Exh AQ Dep pp. 206-10, A-2619-20; Escallon Patent, Exh BA at col 1 lines 27-30). Dr. Siegel justified his assertion of anticipation, because a skilled artisan allegedly could have implemented Escallon on the Web:

> It is my opinion that a person of ordinary skill in the art could take a diagram like this, and an understanding of the Web, and the rest of the document and their knowledge and implement Escallon on the Web

(Exh AQ Dep p. 210, A-2610).

Thus, Dr. Siegel effectively admits that Escallon does not anticipate any of the claims of the Patents-in-suit (or at least the '492 and '158 Patent claims that explicitly require a Web server and Web browser/pages, and any claim of the '500 Patent construed to include the same), because he admits that Escallon does not disclose any system or method on the Web.

### 4. U.S. Patent 5,774,668 to Choquier

Dr. Siegel proposes to testify that the claims of the Patents-in-suit are anticipated by U.S. Patent 5,774,668 to Choquier. (Exh. AH, A-1730). In rebuttal, Pi-Net's expert, Chuck Easttom, pointed out that Choquier does not disclose any Web system or method, and mentions the internet only in a limited context of an alternate communication standard within a network system. (Exh. AD, A-1421-22)[1]  Dr. Siegel then filed a reply report that confirmed Mr. Easttom's statement, but alleged that Choquier mentioned TCP/IP in passing, and

> The same protocol is used for today's World Wide Web.  That is, the Web is a particular embodiment of TCP/IP that was well known at the time the patents-in-suit were filed.  Thus, a person skilled in the art would have understood that a system capable of operating over TCP/IP—such as Choquier—could also have operated on the Web.

(Exh. AI, A-2095).

Thus, Dr. Siegel admits that Choquier does not disclose any system or method on the Web, much less that the Web system is arranged exactly as in the claims of the Patents-in-suit. His admission that the reference requires that a skilled artisan has to make a judgment call to jump from the bare mention of an alternate TCP/IP system to create a Web system and method, based on the fact that the artisan would recognize that "a system capable of operating over

---

[1]  As Mr. Easttom points out, Choquier was a patent application filed by Microsoft on June 7, 1995 – i.e., long after the Web was a recognized and established system.  The Web was not mentioned by Microsoft, because the invention was specific to load balancing of systems and was unrelated to anything pertinent in the Patents-in-suit.

TCP/IP—such as Choquier—could also have operated on the Web" does not and cannot meet the requirements of proving anticipation.

### 5. U.S. Patent 5,870,724 to Lawlor

Dr. Siegel proposes to testify that the claims of the Patents-in-suit are anticipated by U.S. Patent 5,870,724 to Lawlor. (Exh. AI, A-1730). In rebuttal, Pi-Net's expert, Chuck Easttom, pointed out that Lawlor does not disclose any Web system or method, and stated:

> Lawlor is as irrelevant as any reference can be. For example, Lawlor never uses the words, or analogs of the words, or the concepts of HTTP, Web, Internet (except a single reference to "Internet ATM network"), POSvc Application, object, or object routing, or, for that matter, any aspect of the Pi-Net patents.

(Exh. AD, A-1440). Dr. Siegel then filed a reply report that essentially confirmed Mr. Easttom's statement. In particular, Dr. Siegel challenged one statement in Easttom's report, but did not challenge the statement that Lawlor does not disclose any Web system or method. (Exh. AD, A-2096). In his deposition, he confirmed:

> There is some discussion about things that the patent does disclose in my document that are packet data networks and ATM networks. And so networks -- packet data networks are described. And then one skilled in the art at the time would understand that that could very well apply to the Web. But the word Web -- I agree with you the word Web as you've searched does not appear.

(Exh AQ Dep p. 216, A-2621)

Thus, Dr. Siegel admits that Lawlor does not disclose any system or method on the Web, much less that the Web system is arranged exactly as in the claims of the Patents-in-suit. His proposed testimony that Lawlor anticipates the Patents-in-suit must be stricken.

**B. Dr. Siegel's Undisclosed and Unsupported Obviousness Contentions**

**1. "Obviousness" Disclosure of Dr. Siegel's Expert Reports**

In the claim charts attached to his expert report, Dr. Siegel identified certain specific combinations of the primary prior art patent with a series of secondary references to establish that the limitation "access to both a checking and savings account" was met. (See Exh. AH at A-1777, 1778, 1803, 1804, 1838, 1839, 1874, 1876, 1912, 1913, 1931, 1953-54, 1996, 1998, 2023, 2024). These specific assertions are referred to as the "Disclosed Obviousness Contentions," and, although Pi-Net disagrees with the sufficiency and merit of the Disclosed Obviousness Contentions, they are not challenged by this *Daubert* motion. Thus, the discussions below explicitly excludes the above, but is directed to all other assertions of obviousness in Dr. Siegel's expert report.

Specifically, in addition to these Disclosed Obviousness Contentions, Dr. Siegel also intends to testify that the Patents-in-suit are obvious simply because a skilled artisan could have modified the references based on the artisan's knowledge and some unidentified combination of references. Thus, Dr. Siegel states in his report:

> I further expect to testify that, alternatively, the asserted claims are rendered obvious by a combination of any one of the foregoing references in combination with the knowledge that a person of ordinary skill in the art would have had as of November 1995.

(Exh. AH ¶20, A-1711; see also ¶42 at A-1719). Dr. Siegel then included the following boilerplate statement after each of the references where he had claimed anticipation:

> To the extent that any claim element is not disclosed by [the reference], it is my opinion that, for the reasons discussed herein, a person of skill in the art would have been motivated to combine [the reference] with the other references I discuss in this Report, so as to render the asserted claims obvious.

(Exh. AH ¶¶ 67, 73, 79, 85, 92, 97, 102, 107 at A-1727-28, 1730-31, 1733, 1736, 1740, 1743, 1745, 1747; see also ¶39 at A-1717 and ¶39 at A-1717 ¶41 at A-1718)

Pi-Net answered Dr. Siegel's report by submitting the rebuttal report by Mr. Easttom. (Exh. AD). Mr. Easttom specifically pointed to many claim limitations which he contended were not found in the primary references asserted by Dr. Siegel. That is, if Mr. Easttom were correct, then there would be no anticipation of the claims of the Pi-Net Patents-in-suit, and the only other option for invalidating the claims on the basis of prior art would require resort to the obviousness standard.

Dr. Siegel then filed a reply expert report. (Exh. AI, A-2069-98). The reply report challenged some of Mr. Easttom's statements, but Dr. Siegel did not further combine any primary reference with a secondary reference to establish obviousness, or say anything more than what was in his original report. Dr. Siegel repeated his earlier boilerplate statements.[2] Dr. Siegel did not propose any additional analysis or claim charts, or otherwise provide any further support for his obviousness arguments.

### 2. Obviousness Standard

The standard for obviousness under 35 U.S.C. § 103 is well-established and known:

> Obviousness is a question of law based on underlying findings of fact. An analysis of obviousness must be based on several factual inquiries: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4) objective evidence of nonobviousness, if any.

---

[2] Specifically, Dr. Siegel's reply report states:

> I further expect to testify that, alternatively, the asserted claims are rendered obvious by a combination of any one of the foregoing references in combination with the knowledge that a person of ordinary skill in the art would have had as of November 1995.

(Exh. AI, ¶ 9, A-2072). See also, Exh. AI, ¶ 26, A-2080, and ¶69, A-2098).

*Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013). The challenger must prove obviousness by clear and convincing evidence. *Id*. The *Broadcom* Court stated that the challenger's evidence must show that "a person of ordinary skill in the art at the time of the invention … would have had a reason to modify [a primary reference] to include [the missing element]." *Id*. [citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1366 (Fed.Cir.2012) (finding invention nonobvious when none of the "reference[s] relate to the [problem] described in the patents" and no evidence was proffered "indicating why a person having ordinary skill in the art would combine the references")]. Thus, there must be some "motive or reason" for a specific combination. *Id*. The Court then added:

> Even assuming that a person of ordinary skill might have some motivation to add a data path to Pickering, the record does not show any reasonable expectation that this significant change would be successful. An invention is not obvious just "because all of the elements that comprise the invention were known in the prior art;" rather a finding of obviousness at the time of invention requires a "plausible rational [sic] as to why the prior art references would have worked together."

*Broadcom*, 732 F.3d at 1335. See also *Bennett Marine, Inc. v. Lenco Marine, Inc.*, 2013 WL 5273116 (Fed. Cir. 2013) ("While the expert testimony arguably demonstrates the presence of the various components of the claimed system in the prior art, that, alone, does not demonstrate the obviousness of the claimed invention. "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.") [citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)].

"To qualify as prior art for an obviousness analysis, a reference must qualify as 'analogous art,' i.e., it must satisfy one of the following conditions: (1) the reference must be from the same field of endeavor; or (2) the reference must be reasonably pertinent to the particular problem with which the inventor is involved." *K–TEC, Inc. v. Vita–Mix Corp.*, 696

F.3d 1364, 1375 (Fed.Cir.2012). The relevant law was summarized in T*ASER Int'l, Inc. v. Karbon Arms, LLC*, 2013 WL 6705149 (D. Del. 2013):

> In order to determine whether prior art is analogous, one asks: "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed.Cir.2010) (internal citations omitted). "A reference is reasonably pertinent if it, as a result of its subject matter, logically would have commended itself to an inventor's attention in considering his problem." *K–TEC, Inc. v. Vita–Mix Corp.*, 696 F.3d 1364, 1375 (Fed.Cir.2012) (internal citations omitted). Furthermore, "[w]hether a reference in the prior art is 'analogous' is a fact question." *Id*.

The above processes for determining obviousness were established, because hindsight can easily make inventions appear to have been obvious. See:

> Among the difficult challenges of applying the doctrine of obviousness is avoidance of even a hint of hindsight. Obviousness "cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention."

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013).

"Obviousness, like other grounds of invalidity, must be analyzed on a claim-by-claim basis." *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013) [citing *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed.Cir.1992) (concluding that all grounds of invalidity must be evaluated against individual claims, as required by the plain language of 35 U.S.C. § 282)].

### 3. **Dr. Siegel Should Be Precluded From Arguing Generalized Obviousness**[3]

Dr. Siegel's "obviousness" expert report consists of *ipse dixit* conclusory assertions that all

---

[3] As note earlier, this does not apply to the Disclosed Obviousness Contentions. Pi-Net is not suggesting that the Disclosed Obviousness Contentions meet the *Daubert* or FRE 702 standards,

- 11 -

the claims are obvious on the basis of some undisclosed combinations, without even recognizing the well-established legal requirements for establishing that a claim would have been obvious. For example, the legal requirements require identifying the various claim elements in the prior art. If one or more of elements of the Pi-Net's invention were disclosed in the various references – which they are not – Dr. Siegel would have had to (i) consider whether that prior art is analogous, (ii) identify the differences between the prior art and each individual claim, (iii) identify the specific teaching of the prior art that impact obviousness, and (iv) demonstrate the motivation or reason for combining the one or more teachings to complete the invention. These details are not only the legal standards for arguing obviousness, but following the established process is necessary to determine whether Dr. Siegel's testimony is

- based on sufficient facts or data;
- the product of reliable principles and methods; and
- reliably applied to the facts of the case,

as required by FRE 702. Yet, Dr. Siegel did not follow the mandated process at all. Indeed, Dr. Siegel provides no analysis or justification for his stated conclusions of obviousness.

Dr. Siegel's report is thus legally insufficient. His assertions lack the required methodology or reliability to be allowed to be presented to the jury. Having failed to present an obviousness claim as required by established law, his proposed expert testimony is neither relevant nor reliable, and may not be presented to the jury. As the Federal Circuit recently cautioned:

> Even under our "expansive and flexible" obviousness analysis (see *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007)), we must guard against "hindsight bias" and "*ex post* reasoning" (id. at 421).

*St. Jude Med., Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1381 (Fed. Cir. 2013).

---

but, to limit the burden on the Court, is merely limiting its Motion to the transgression of FRE 702 and *Daubert*.

Preliminarily, it is noted that F.R.Civ.P. Rule 26(a)(2)(B)(i) requires that an expert report "must contain … a complete statement of all opinions the witness will express and the basis and reasons for them." Thus, Dr. Siegel's "complete statement of … the basis and reasons" for his opinions is what in his expert reports. The "basis and reasons" for his proposed obviousness testimony is foreclosed by F.R.E. Rule 702, because Dr. Siegel has not provided any basis or reasons for his conclusions, and his proposed testimony has not been shown to "based on sufficient facts or data;" "the product of reliable principles and methods"; or that Dr. Siegel "has reliably applied the principles and methods to the facts of the case." FRE 702.

The Federal Circuit has held that conclusory statements by an expert cannot meet a challenger's burden of proof on invalidity. *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1349 (Fed. Cir. 2013) ("The expert testimony is likewise unavailing. … The administrative law judge and Commission did not act unreasonably in finding this conclusory sentence did not rise to the level of clear and convincing evidence."). Indeed, the Federal Circuit does not even permit the PTO to blanketdly reject proposed claims for obviousness where the PTO does not process the obviousness determination in accordance with established precedent. Thus, in one recent case, the Court stated:

> Nonetheless, Mr. Chaganti's argument regarding the lack of a stated reason to combine is not unreasonable. We caution the Board and the PTO that such reasons must be clearly articulated. It is not enough to say that there would have been a reason to combine two references because to do so would "have been obvious to one of ordinary skill." Such circular reasoning is not sufficient—more is needed to sustain an obviousness rejection.

*In re Chaganti*, 2014 WL 274514 (Fed. Cir. 2014).

Dr. Siegel has presented no basis for concluding that his obviousness conclusion meet the standards imposed by FRE 702 and *Daubert*. Dr. Siegel has presented only claim charts that purport to show that the claims of the Patents-in-suit are anticipated, and, thereafter, mere *ipse*

- 13 -

*dixit* that – if there is no anticipation – that the claims are obvious, and without addressing 35 U.S.C. § 103.  Because that assertion does not address the legal requirements, his proposed testimony cannot be shown to be based on sufficient facts or data; to be the product of reliable principles and methods; or to have been reliably applied to the facts of the case, as required by FRE 702 and *Daubert*.

### 4. Dr. Siegel Should Be Precluded From Arguing Obviousness Based On Scholl

Dr. Siegel's reports includes one slight deviation or exception to what is otherwise the *ipse dixit* that all claims are obvious.  Specifically, he twice repeated the following assertion:

> I further expect to testify that Claims 1-6 and 11 of the '158 Patent, and Claims 3, 10, and 11 of the '492 Patent would have been anticipated and/or rendered obvious to one of ordinary skill in the art at the time of the alleged invention, by U.S. Patent 5,742,762 to Scholl in view of any of the above references or Home Banking: Open Market Signs 1st Union for Home Banking; The American Banker (March 21, 1995); NetBill: An Internet Commerce System Optimized for Network-Delivered Systems, by Marvin Sirbu; CommerceNet: Spontaneous Electronic Commerce on the Internet, by Jay M. Tenenbaum; Electronic Commerce on the Internet, by Robert Neches, et al.; or Stanford Federal Credit Union Pioneers Online Financial Services, Business Wire (June 21, 1995).

(Exh. AH ¶20, A-1712; Exh. AI, ¶ 9, A-2072-73).

This statement is isolated only because it is a slight variation of what is otherwise Dr. Siegel's report that simply says "the claims are obvious because I say so."  The slight deviation in the above paragraph from his other assertions is insubstantial.  Merely asserting that a group of asserted claims of two separate patents would have been obvious in view of "any of the above references" or of the several more indiscriminately cited references, and without any further analysis, is akin to saying nothing at all.  The proposed testimony must be excluded based on the principles previously stated.

### C. Dr. Siegel Should Be Precluded From Arguing Facts Without Foundation

Dr. Siegel also proposes to testify as to alleged facts, for which he has no foundation or basis to testify. Although his report contains many such assertions, certain purported facts are presented for resolution as representative. These are the following:

> a. For instance, <u>I am informed that a "virtual information store" was not invented by Pi-Net; this concept was copied from SNMP</u>. Therefore, any SNMP reference can be used to fill in this limitation to the extent it is not disclosed in another reference. RFC 1213 is one such reference. One of ordinary skill would have found it obvious to use the virtual information store (MIB) from SNMP in combination with other references or systems in order to take advantage of the efficiency, flexibility, and location transparency provided by SNMP's virtual information store.

(Exh. AH, ¶124, A-1754)

> b. Mr. Easttom asserts that because the PTO granted the '492 and '158 patents despite considering Rogers, that Rogers does not anticipate or render obvious the asserted claims. (Easttom Report at 95-96) However, <u>I am informed that the constructions that Pi-Net has proposed in this case are substantially broader than those employed by the PTO during prosecution</u>. Thus, the PTO's treatment of Rogers does not alter my views regarding the relevance or disclosure of Rogers.

(Exh. AI, ¶57, A-2094)

> c. even a cursory Web search would reveal that Lawlor was implemented in the "real-time EFT network-based payments" system of its assignee, Online Resources & Communications Corporation, and certain Citibank systems. (JPM0204209-0204219).

(Exh. AI, ¶63, A-2096)

The *Daubert* issues presented by these assertions are on all fours with the situation in *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 1702159 (D. Del. 2013). There, an expert proposed to testify that a certain program was necessarily included in a product, because it was the only known or available program. The Court struck the testimony, stating:

> [The expert] may not opine that the code he analyzed was executed or implemented in a product XU demonstrated, offered for sale, or sold prior to the critical date. That opinion depends upon the inference that the code he

- 15 -

> analyzed was present in an XU product that was implemented at specific demonstrations…. [The expert] has not provided any reliable basis for drawing this inference based on his expertise. He testified that he drew that inference based on record evidence that XU had only one product, so the code he analyzed must have been included in that product, and based on comparing code text to screen shots in user manuals and affiliated documents. This falls short of a reliable opinion based on … scientific, technical, or specialized knowledge, as required by Rule 702. The danger of unfair prejudice of [the] opinion on this ultimate inference, coming from an undisputed expert …, would also substantially outweigh its probative value. Fed.R.Evid. 403.

Dr. Siegel should not be allowed to assert facts for which he has no foundation, or to assert opinions expressed to him by others.

## V. **CONCLUSION**

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that its motion to strike testimony be granted.

> */s/ George Pazuniak*
> George Pazuniak (DE Bar No. 478)
> O'KELLY ERNST & BIELLI, LLC
> 901 North Market Street, Suite 1000
> Wilmington, DE 19801
> Tel: 302-478-4230
> GP@del-iplaw.com
>
> *Attorneys for Plaintiff Pi-Net Int'l, Inc.*