# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PI-NET INTERNATIONAL, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil No. 1:12-cv-00282-RGA |
| | : |
| JPMORGAN CHASE & CO. | : |
| | : |
| Defendant. | : |
| | : |

## DEFENDANT'S BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
## DEFENDANT'S RETAINED EXPERT, SUSAN SPIELMAN, ON VALIDITY

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
douglas.nemec@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

DATED:  February 14, 2014

## TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF PROCEEDINGS ................................................................1

II.     SUMMARY OF ARGUMENT .......................................................................................1

III.    STATEMENT OF FACTS ..............................................................................................3

        A.      The Patents-in-Suit.............................................................................................3

        B.      The Spielman Initial Report ...............................................................................5

        C.      The Spielman Reply Report................................................................................7

IV.     THE APPLICABLE LAW ..............................................................................................8

V.      ANY TESTIMONY BASED ON MS. SPIELMAN'S INITIAL REPORT IS
        RELIABLE AND ADMISSIBLE....................................................................................9

        A.      Ms. Spielman Properly Considered The Parties' Proposed Claim
                Constructions As Applicable. ............................................................................9

        B.      Ms. Spielman's Opinions Relating To The Lack Of Written Description In
                The Patents-In-Suit Are Proper And Admissible..............................................14

        C.      Ms. Spielman's Opinions Relating To The Lack Of Enablement In The
                Patents-In-Suit Are Proper And Admissible.....................................................17

        D.      Ms. Spielman's Opinions Relating To Indefiniteness Of The Patents-In-
                Suit Are Proper And Admissible. .....................................................................19

VI.     ANY TESTIMONY BASED ON MS. SPIELMAN'S REPLY REPORT IS
        RELIABLE AND ADMISSIBLE..................................................................................20

CONCLUSION.............................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)...........................................................................9

*Alcon Research Ltd. v. Barr Laboratories, Inc.*,
    837 F. Supp 2d 364 (D. Del. 2011)...................................................................17

*Asahi Glass Co. Ltd. v. Guardian Industries Corp.*,
    Civ. No. 09-515-SLR, 2011 WL 4459606 (D. Del. Sept. 26, 2011) .........................13, 17

*Boston Scientific Corp. v. Johnson & Johnson*,
    647 F.3d 1353 (Fed. Cir. 2011)........................................................................16

*Cordance Corp. v. Amazon.com, Inc.*,
    631 F. Supp. 2d 477 (D. Del. 2009)..............................................................2, 12

*Golden Bridge Technology, Inc. v. Apple Inc.*,
    Civ. No. 10-428-SLR, 2013 WL 1431652 (D. Del. Apr. 9, 2013) ...................................17

*i4i Ltd. Partnership v. Microsoft Corp.*,
    598 F.3d 831(Fed. Cir. 2010) *aff'd*, 131 S.Ct. 2238 (2011)................................................9

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009)........................................................................15

*LizardTech, Inc. v. Earth Resource Mapping*,
    424 F. 3d 1336 (Fed. Cir. 2005)........................................................................14

*Meadows v. Anchor Longwall and Rebuild, Inc.*,
    306 F. App'x 781 (3d. Cir. 2009)........................................................................9

*Medisim Ltd. v. BestMed LLC*,
    861 F. Supp. 2d 158 (S.D.N.Y. 2012)..............................................................14, 19

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
    448 F.3d 1309 (Fed. Cir. 2006)........................................................................19

*Oxford Gene Technology Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)..................................................................13

*Personalized Media Communications, LLC v. Zynga, Inc.*,
    No. 2:12-CV-00068-JRG-RSP, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013) .................19

*Pritchard v. Dow Agro Sciences*,
    430 F. App'x 102 (3d Cir. 2011) ........................................................................9

*Pure Earth, Inc. v. Call*,
    531 F. App'x 256 (3d Cir. 2013) ........................................................................8

*Sprint Communications Co. L.P. v. Vonage Holdings Corp.*,
    No. 05-2433-JWL, 2007 WL 2572417 (D. Kan. Sept. 4, 2007) ................................18, 19

*United States v. Lee*,
    339 F. App'x 153 (3d Cir. 2009) ........................................................................8

*United States v. Mitchell*,
    365 F.3d 215 (3d Cir. 2004) ..............................................................................9

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988) ..........................................................................18

## <u>STATUTES</u>

35 U.S.C. § 112 ....................................................................................11, 13, 16

35 U.S.C. § 112(a) ................................................................................1, 13, 14

## I.    NATURE AND STAGE OF PROCEEDINGS

Defendant JPMorgan Chase & Co. ("JPMC") respectfully submits this brief in opposition to the Motion to Exclude Expert Testimony of Defendant's Retained Expert, Susan Spielman, On Validity (D.I. 116), filed by plaintiff Pi-Net International, Inc. ("Pi-Net").  On January 29, 2014, Pi-Net filed that motion and two other *Daubert* challenges to JPMC's experts, while JPMC filed three motions for summary judgment and a *Daubert* motion to exclude certain testimony of Pi-Net's damages expert.  (D.I. 109-122)  A *Markman* and case dispositive motion hearing is scheduled for March 6, 2014, and trial is scheduled to begin June 2, 2014.  (D.I. 95)

## II.    SUMMARY OF ARGUMENT

1. Ms. Spielman is an expert with more than 25 years of experience in the field of computer science and software development.  Pi-Net does not even attempt to challenge Ms. Spielman's qualifications.  Instead, Pi-Net argues that Ms. Spielman's opinions relating to the invalidity of the patents-in-suit should be excluded because she allegedly (a) failed to consider the parties' proposed claim constructions in her analysis; (b) failed to apply the correct legal standards from 35 U.S.C. § 112(a); and (c) offered improper opinions on the issue of claim indefiniteness.  (D.I. 116 at 2-3)  Pi-Net's characterizations of Ms. Spielman's report bear no resemblance to her actual analysis, which carefully reflects the relevant intrinsic record (including the proposed claim constructions) and applies the appropriate legal standards.

2. Pi-Net's principal argument is that, in opining that the patents-in-suit contain an inadequate written description and fail to enable the full scope of the asserted claims, Ms. Spielman did not "consider or provide any claim constructions, [and so] her entire report must be stricken under [Fed. R. Evid.] 702 and *Daubert* for that reason alone."  (D.I. 116 at 2)  Pi-Net is wrong on both the facts and the law.  In her Initial Expert Report, Ms. Spielman first opines that it is not possible to construe certain terms-at-issue because a person of ordinary skill in the art

would not be able "to discern the bounds of what is meant by" each respective term.  (*See, e.g.*, Ex. AJ at ¶¶ 43, 56, 69)  Then, Ms. Spielman considers the alternative scenario—*i.e.*, that the Court rejects JPMC's indefiniteness arguments and *adopts Pi-Net's proposed constructions*—and concludes that certain claim elements are not enabled, and that there is no evidence of possession of those elements in the specification.  (*See, e.g.*, Ex. AJ at ¶¶ 46, 61, 73)  In other words, for each term, Ms. Spielman first "applies" JPMC's proposed construction (which is that the terms are not amenable to construction, and therefore are indefinite), and then applies Pi-Net's proposed constructions (to analyze whether, if construed, those claims are adequately described and enabled).  Even if Ms. Spielman did not explicitly recite the accompanying constructions, that level of structural formalism is not required for expert reports.  *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 477 (D. Del. 2009).

       3.  Pi-Net's argument that Ms. Spielman applied the wrong standards for assessing enablement and the adequacy of the written description is equally untenable.  Ms. Spielman accurately cited and applied the legal standards for both of these defenses.  (*See* Ex. AJ at ¶¶ 24-25)  For instance, Pi-Net correctly notes that the sufficiency of a patent's written description is assessed by asking whether the disclosure "reasonably conveys that the inventor *had possession* of the claimed subject matter."  (D.I. 116 at 9 (emphasis added))  Ms. Spielman's Initial Report refers to the lack of "possession" of the claim elements *fourteen separate times*.  (Ex. AJ at ¶¶ 18, 46-49, 51, 55, 61, 67, 73)  Similarly, Pi-Net correctly notes that "claims lack enablement when *undue experimentation* is required."  (D.I. 116 at 12 (emphasis added))  Ms. Spielman's Initial Report refers to the quantity of experimentation or "trial and error" required to make and use the claimed technology *six separate times*.  (Ex. AJ at ¶¶ 15, 17, 25, 52, 55, 62)  Contrary to

Pi-Net's unsupported assertions, Ms. Spielman's opinions thus fit squarely within the appropriate legal construct.

4. Pi-Net's objection to Ms. Spielman's opinions relating to the indefiniteness of the asserted claims is particularly puzzling, given that Pi-Net's own technical expert, Dr. Bardash, was the first expert to address the issue of indefiniteness in his reports and declarations. (*See, e.g.*, D.I. 66 at ¶ 40 ("Defendant argues that the term 'a routed transactional data structure . . .' is indefinite.  I disagree."); Ex. AA at 38 ("I recognize that Defendant is arguing that the claim term is indefinite. I respectfully disagree that it is indefinite."))  Although Pi-Net cites many cases relating to the general principles of indefiniteness, (*see* D.I. 116 at 14), Pi-Net has not cited any instance where a Court has excluded expert testimony merely because it relates to how a person of skill in the art would understand claim scope.

5. Finally, while Pi-Net has moved to exclude testimony from Ms. Spielman based on her "reply report, Exhibit AK," (D.I. 116 at 1), Pi-Net's opening brief does not provide a single citation to Ms. Spielman's Reply Report.  Pi-Net also does not explain how, if at all, its criticisms of Ms. Spielman's Initial Expert Report apply to the particular arguments that she made in her Reply Report.  Pi-Net thus has provided no basis to exclude testimony from Ms. Spielman based upon any opinions in her Reply Report, which consists entirely of rebuttal to the Second Expert Report of Dr. Bardash ("Second Bardash Report").

For the foregoing reasons, and as discussed in greater detail below, Pi-Net's motion should be denied in its entirety.

## III.   STATEMENT OF FACTS

### A.   The Patents-in-Suit

Pi-Net asserts that JPMC's online banking systems and methods of using them infringe at least one claim of U.S. Patent Nos. 5,987,500 ("the '500 patent"), 8,037,158 ("the '158

patent"), and 8,108,492 ("the '492 patent") (collectively "the patents-in-suit").  In particular, Pi-Net accuses JPMC of infringing claims 1-6, 10-12, 14-16, and 35 of the '500 Patent; claim 4 of the '158 Patent; and claims 1-8 and 10-11 of the '492 Patent (collectively, the "asserted claims").[1] The asserted claims of the '492 and '500 patents generally relate to systems and methods for performing "real-time" transactions using a "value-added network (VAN) switch," and by "keeping a transaction flow captive."  Claim 1 of the '500 patent is representative:

> A configurable ***value-added network switch*** for enabling real-time transactions on a network, said configurable ***value-added network switch*** compromising [*sic*]:
>
> means for ***switching to a transactional application*** in response to a user specification from a network application, said transactional application providing a user with a plurality of transactional services managed by at least one value-added network service provider, said value-added network service provider ***keeping a transaction flow captive***, said plurality of transactional services being performed interactively and ***in real time***;
>
> means for transmitting a transaction request ***from said transactional application***; and
>
> means for processing said transaction request.

(Ex. A at 9:44-58 (emphasis added))  The sole asserted claim of the '158 patent (claim 4) requires the "real-time" transfer of funds from a checking account to a savings account using a "routed transactional data structure" in a "Web application" to perform "object routing":

> A method for performing a real time Web transaction from a ***Web application*** over a digital network atop the Web, the method comprising:
>
> providing a Web page for display on a computer system coupled to an input device;
>
> providing a point-of-service application as a selection within the Web page, wherein the point-of-service application provides access to both a checking and

---

[1]   Pi-Net asserts that claim 12 of the '492 patent "has never been asserted."  (D.I. 116 at 16) That is untrue.  Pi-Net specifically asserted that claim in the Joint Claim Construction Chart (D.I. 64 at 2), and has apparently now elected to drop it.

savings account, the point-of-service application operating in a service network atop the World Wide Web;

accepting a first signal from the Web user input device to select the point-of-service application;

accepting subsequent signals from the Web user input device; and

***transferring funds from the checking account to the savings account in real-time utilizing a routed transactional data structure that is both complete and non-deferred***, in addition to being specific to the point-of-service application, the routing occurring in response to the subsequent signals. . . .

***wherein object routing is used to complete the transfer of funds in a Web application***.

(Ex. B at 9:41-10:15, 10:21-22 (emphasis added))

## B.    The Spielman Initial Report

Ms. Spielman is a software systems and web application consulting engineer who was retained by JPMC's counsel to provide technical opinions relating to the alleged invalidity of the patents-in-suit.  Ms. Spielman is a renowned expert in the field of the patents-in-suit, and has two technical degrees: a B.S. in Computer Science and an M.S. in Computer Information Systems.  (Ex. AJ at ¶ 6)  On October 25, 2013, Ms. Spielman served a 25-page Initial Expert Report that addressed, *inter alia*, (1) whether the claim language of the patents-in-suit is "sufficiently clear" to allow a person of skill in the art to discern the bound of the claims; (2) "whether a person of ordinary skill in the art would have understood the patentee to have been in possession" of the claimed technology; and (3) whether a person of ordinary skill in the art "would have been able to make and use the claimed technology, and the degree of experimentation necessary to do so."  (*Id.* at ¶ 15)  Ms. Spielman considered a number of documents, including the patents-in-suit, the parties' *Markman* submissions, and the Declaration of Pi-Net's technical expert, Michael Bardash, on the issue of claim construction (D.I. 66, dated April 1, 2013).  (Ex. AJ at Ex. B)  Ms. Spielman also offered her opinion on how a person of

5

ordinary skill in the relevant art should be defined *id.* at ¶ 26), and recited the applicable legal standards for indefiniteness, assessing the adequacy of the written description, and evaluating whether the claims were enabled by the specification (*id.* at ¶¶ 21-25).

   Ms. Spielman's Initial Report provides a brief interpretation of the text and figures of the patents-in-suit (Ex. AJ at ¶¶ 27-39), and then offers opinions relating primarily to five claim elements: (1) the VAN switch/system required in all asserted claims of the '500 and '492 patents; (2) the "routed transactional data structure . . ." (hereinafter "RTDS") required by the sole asserted claim of the '158 patent; (3) "keeping a transaction flow captive" required by all asserted claims of the '500 patent; (4) the "Application" terms, including "POSvc application," "web application," and "network application," required by all asserted claims of the '500 and '492 patents; and (5) the means-plus-function ("MPF") terms that appear in one or more of the asserted claims of the '500 and '492 patents.  (*See id.*)

   As expressed in her Initial Report, Ms. Spielman's view is that these five terms "are unclear, undefined, ambiguous, and/or of indeterminate scope," which would support a conclusion of claim indefiniteness.  (Ex. AJ at ¶¶ 16, 17)  This expert opinion is consistent with the *Markman* arguments set forth by JPMC in its claim construction briefing.  (*See* D.I. 74)  For the MPF terms, it is Ms. Spielman's opinion that an "algorithm would be required for a computer processor to carry out the [claimed] functions."  (*Id.* at ¶ 75)  In her view, each of these claims is invalid because the specification fails to disclose an algorithm for any of them.  (*Id.* at ¶¶ 76-78) As for the remaining claim elements, Ms. Spielman acknowledges that JPMC's *Markman* position could be rejected by prefacing her discussion of whether each claim element is sufficiently described or enabled with the phrase: "[e]ven if a person of skill in the art was able to discern the bounds of the claimed [term]."  (*Id.* at ¶¶ 46, 52, 61, 67, 73)  In that alternative

case, Ms. Spielman assumes that the Court adopts Pi-Net's constructions, and her focus is on whether the entire scope of the claim (as defined first and foremost by the language of the claim itself) is enabled or adequately described.  Ms. Spielman concludes that for each of these terms, the specification lacks an enabling disclosure (because of the substantial and extensive experimentation required) and provides none of the hallmarks of possession that a person of skill in this art would have recognized in November 1995.  (*Id.* at ¶¶ 17, 18)

      C.      **The Spielman Reply Report**

      On December 10, 2013, Ms. Spielman expanded, clarified, and amplified her opinions in her Reply Report, which specifically responded to the Second Bardash Report.  She noted that even after carefully reviewing Dr. Bardash's report (which, like Dr. Spielman's Initial Report, addressed issues of claim indefiniteness, lack of written description, and lack of enablement) her opinion is that (1) a person of ordinary skill in the art "would have been unable to determine what [the asserted] claims cover and what they do not cover"; (2) "*extensive and substantial experimentation* would have been required to make and use the claimed elements set forth in paragraph 17 of the Initial Spielman Report"; and (3) there is no evidence that as of November 1995 "the inventor was *in possession* of at least the claim elements described in paragraph 17 of the Initial Spielman Report."  (Ex. AL at ¶ 8 (emphasis added))

      Ms. Spielman's Reply Report begins with a lengthy rebuttal of Dr. Bardash's definition of a person of ordinary skill in the art, noting several errors both in the relevant field of the patents-in-suit, and in the level of skill that such a person would have had as of November 1995.  (Ex. AL ¶¶ 11-16)  Following the same general format as her Initial Report, Ms. Spielman's Reply points out several errors in Dr. Bardash's analysis, including:

- Pi-Net's proposed construction for the "VAN Switch" requires that it operate in the "OSI application layer," but "the patents-in-suit disclose only the theoretical concept of 'switching' occurring in the OSI application layer. (Ex. AL at ¶ 17)  Indeed, the

patents-in-suit do not evidence possession of a "switch" that operates exclusively in the OSI application layer, as required by Pi-Net's construction, because it is described in the specification "in contradictory fashion as necessarily operating in other [OSI] layers." (*Id.* at ¶ 20)

- Dr. Bardash improperly describes the "service network"—which is associated with the VAN Switch—as "virtual." That would have been "nonsensical to a person of ordinary skill in the relevant art in 1995." (*Id.* at ¶ 18)

- Pi-Net included source code algorithms in other patents, but not in the patents-in-suit, which underscores the lack of possession of the claimed invention. This also indicates lack of enablement, given the lack of "working embodiment[s] of the claimed VAN Switch." (*Id.* at ¶¶ 23-28)

- There is "no explanation" in the patents-in-suit "of how a RTDS . . . can be utilized to transfer funds from a checking account to a savings account," as required by claim 4 of the '158 patent. (*Id.* at ¶ 40)

- Dr. Bardash also makes several basic technical errors in his interpretation of the patents-in-suit, including (a) his incorrect characterization of a CORBA object as middleware; (b) his mistaken statements regarding the relationship between ORBs and the SOAP protocol; and (c) his inaccurate characterizations of the HTTPS and s-HTTP protocols. (*Id.* at ¶¶ 30-34)

## IV.    THE APPLICABLE LAW

"An expert witness may be permitted to testify regarding scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Lee*, 339 F. App'x 153, 158 (3d Cir. 2009) (internal quotation marks omitted). "Rule 702 and *Daubert* require a district court to ensure that 'expert testimony is not only relevant, but reliable.'" *Pure Earth, Inc. v. Call*, 531 F. App'x 256, 259 (3d Cir. 2013) (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012)). However, "[t]he standard for determining reliability 'is not that high.'" *Pure Earth,* 531 F. App'x at 259 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)). Indeed, "[t]he Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact so testimony should not be excluded simply because a judge thinks its probative

8

value is outweighed by other evidence." *Pritchard v. Dow Agro Sciences*, 430 F. App'x 102, 104 (3d Cir. 2011) (citation omitted) (internal quotation marks omitted).

In evaluating the admissibility of expert testimony, the District Court's focus "'must be solely on principles and methodology, not on the conclusions that they generate.'" *Meadows v. Anchor Longwall and Rebuild, Inc.*, 306 F. App'x 781, 789 (3d Cir. 2009) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).  That is, "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010); *accord United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process— competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny.") (citation omitted).  Thus, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd.*, 598 F.3d at 852; *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (disagreements regarding "conclusions reached" and "factual assumptions" "go to the weight to be afforded the testimony and not its admissibility"); *Mitchell*, 365 F.3d at 244 (holding that *Daubert* "neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance").

## V.   ANY TESTIMONY BASED ON MS. SPIELMAN'S INITIAL REPORT IS RELIABLE AND ADMISSIBLE.

### A.   Ms. Spielman Properly Considered The Parties' Proposed Claim Constructions As Applicable.

Pi-Net contends that the "overarching and fatal problem" with Ms. Spielman's Initial Expert Report is that she failed to apply "the claims as they are construed by the Court."

(D.I. 116 at 4; *see also id.* at 15 (addressing alleged failure to apply claim construction for "VAN Switch"); *id.* at 16 (addressing alleged lack of claim constructions for other terms))  Pi-Net completely misreads both Ms. Spielman's Initial Report and the applicable law.

As noted above, the Court has not yet construed any of the disputed claim terms. JPMC's position is that it will not be possible to construe most of the disputed claim terms, because those terms are ambiguous, nonsensical, and do not delineate the bounds of the claimed technology in a way that a person of ordinary skill in the art in 1995 could have understood.  (*See* D.I. 64 (JPMC's proposed "construction" for 20 of the disputed claim terms is that the "term is indefinite"))  In the first instance, Ms. Spielman's Initial Expert Report corroborates that position, by opining that for at least the terms "VAN switch" and "VAN system," "RTDS," "keeping a transaction flow captive," and the "Application" terms, a person of skill in the art would not have been able to discern their bounds.  (Ex. AJ at ¶¶ 16, 17, 43-44, 56-57, 63, 66, 69)  Ms. Spielman also opines that because there can be no genuine dispute that an algorithm is required for the MPF terms of the '500 patent and the '492 patent, each of those terms should be declared invalid due the failure of the specification to disclose a corresponding algorithmic structure.  (*Id.* at ¶¶ 75-78)  Thus, Ms. Spielman's report clearly "applies" JPMC's claim construction position for each of these terms.  Although Pi-Net disagrees with JPMC's position, that does not give Pi-Net license to ignore Ms. Spielman's analysis of it.

Ms. Spielman then considers the alternative scenario for the non-MPF terms,[2] *i.e.*, that the Court rejects JPMC's claim construction arguments regarding indefiniteness and construes the terms consistent with Pi-Net's proposed constructions.  Under Pi-Net's proposed

---

[2]   Because there is no genuine dispute that each of the MPF terms requires an algorithm to perform the claimed function, the only "construction" that Ms. Spielman applies for the MPF terms is that they are indefinite.

10

construction, the "VAN Switch" in the asserted claims of the '500 and '492 patents is used to perform "object routing," by "connecting the object sender and the object receiver . . . on an online service network."  (D.I. 64 at 16)  Ms. Spielman applies this construction and considers what protocols are disclosed in the specification for effecting this connection between the front-end and back-end of the relevant system, as required under Pi-Net's proposed construction.  She concludes that the only protocols disclosed are either ineffective or non-existent.  (*See, e.g.*, Ex. AJ at ¶¶ 50-53)  Ms. Spielman also specifically considers the language of the relevant claims, including claim 1 of the '492 patent, which requires that the "VAN Switch" run "on top of a facilities network selected from the group consisting of the World Wide Web, the Internet and email networks."  (*Id.* at ¶ 54)

Similarly, for the "RTDS" limitation found in the sole asserted claim of the '158 patent, Ms. Spielman alternatively applies Pi-Net's construction, which is essentially synonymous with "object routing."  (D.I. 64 at 13; *see also* D.I. 66 at ¶ 46 ("the [RTDS] refers to what is described in the specification as 'object routing'"))  Ms. Spielman specifically refers to this definition, and then applies it perform her analysis under 35 U.S.C. § 112.  (*See* Ex. AJ at ¶¶ 58, 61, 62)  Likewise, for "keeping a transaction flow captive," Ms. Spielman applies the definition set forth in Dr. Bardash's Declaration, which is to maintain continuous control over a real-time Web transaction "*at the network entry point*."  (Ex. AJ at ¶ 65 (quoting D.I. 66 at ¶ 36))  Finally, for the "Application terms," Ms. Spielman explicitly cites and quotes from Pi-Net's proposed constructions, and then utilizes them in her analysis.  (Ex. AJ at ¶ 72 (citing D.I. 64, the "Joint Claim Construction Chart"))

Thus, there can be no question that for the terms that Ms. Spielman addressed in her initial report, she properly considered and applied JPMC's proposed constructions, Pi-Net's

proposed constructions, or both.  While Ms. Spielman did not quote the entirety of the parties' proposed constructions verbatim, such formality is not required.  Indeed, Judge Thynge rejected an argument that is nearly identical to Pi-Net's in *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 477 (D. Del. 2009).  In *Cordance*, the alleged infringer sought to strike a declaration of a technical expert relating to the written description requirement because the expert "did not explicitly state that he reviewed the court's claim construction order, or whether he applied it for purposes of his written description opinion." *Id.* at 480.  Judge Thynge noted that there is no precedent for excluding expert testimony if the written report lacks an explicit statement relating to claim construction; expert testimony is excluded only if it is "*inconsistent* with a court's claim construction." *Id.* at 481 (emphasis added).  "[A]n explicit statement . . . that [an expert] applied the court's claim construction" is *not required*.  *Id.*  Moreover, the Court noted several instances in the *Cordance* expert declaration where claim construction was referenced, and where the legal standards for claim construction were cited.  *Id.*  As compared to the *Cordance* declaration, here there is even more evidence in Ms. Spielman's Initial Report that the parties' proposed claim constructions were directly referenced and considered.  (*See, e.g.*, Ex. AJ at ¶¶ 21, 44, 50-53, 65, 72)  Thus, as in *Cordance*, this Court should reject Pi-Net's argument.

   The cases that Pi-Net cites in support of excluding Ms. Spielman's testimony do not compel a different outcome, because each is distinguishable from the present facts.  First, Pi-Net cites Judge Jordan's decision in *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004).  (D.I. 116 at 5)  In *Oxford*, this Court held that an expert's conclusions were inadmissible because he "appl[ied] a *negative* or alternative construction of the claims . . . and ma[d]e blanket conclusions of invalidity based on 'anticipation and/or obviou[ness] [sic],' assuming the court found *that such construction did not apply*." *Id.* at 436 (third alteration in

original) (emphasis added).  In other words, this expert opined that if certain "features would not be included" in the claims, then those claims "would be invalid as anticipated and/or obvious in view of the following prior art."  *Id.* at 436.  Pi-Net does not argue that Ms. Spielman applied a "negative" construction—nor could it, because Ms. Spielman clearly applied both JPMC's and Pi-Net's proposed constructions as part of her analysis.  Moreover, Ms. Spielman never argued that the absence of any elements would impact her conclusions, as was the case in *Oxford*; if the claims are not invalid for indefiniteness, then in her view they run afoul of 35 U.S.C. § 112(a) "even if" Pi-Net's constructions are adopted.

Similarly distinguishable is *Asahi Glass Co. Ltd. v. Guardian Indus. Corp.*, Civ. No. 09-515-SLR, 2011 WL 4459606 (D. Del. Sept. 26, 2011).  Pi-Net quotes *Asahi* for a description of how an expert must analyze defenses under Section 102 and 103: "[a]n expert witness who has been proffered to opine on the validity of a patent must . . . construe the asserted claims . . . and then perform a *limitation-by-limitation comparison* of each claim to each prior art reference."  (D.I. 116 at 6 (emphasis added))  But for Section 112—which was the focus of Ms. Spielman's reports, it is not necessary to perform a "limitation-by-limitation" analysis of every claim term (though that is necessary for Dr. Siegel, JPMC's expert who opined on anticipation and obviousness).  Instead, an analysis that focuses on whether there is evidence of possession of one claim element, or the need for undue experimentation to make and use one aspect of the invention, is sufficient for purposes of Section 112(a).  *See, e.g.*, *LizardTech, Inc. v. Earth Res. Mapping*, 424 F. 3d 1336, 1345 (Fed. Cir. 2005) (noting that enablement and written description requirements "usually rise and fall together," and that the specification must enable and show possession of the "full breadth" and "full scope" of the claims).

13

Finally, Pi-Net cites *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 171 (S.D.N.Y. 2012).  (D.I. 116 at 6)  As discussed below, *Medisim* actually **supports** the proffered testimony of Ms. Spielman on enablement, because the *Medisim* court rejected a challenge to similar expert testimony on that topic.  *Id.* at 169-70.  In any event, the portion of *Medisim* that Pi-Net cites is distinguishable.  The *Medisim* Court had construed the term "core body temperature" to mean "the temperature of blood in the **pulmonary artery**."  *Id.* at 171 (emphasis added).  The defendant's technical expert in *Medisim* did not analyze whether the prior art disclosed calculation of temperature specifically in the pulmonary artery.  *Id.*  In contrast, Pi-Net does not argue that Ms. Spielman ignored a particular aspect of Pi-Net's proposed constructions; indeed, Ms. Spielman's analysis tracks the language in Pi-Net's proposed constructions (with an analysis of protocols to carry out the "object routing" required in the proposals for the VAN Switch and the RTDS, etc.).  (*See, e.g.*, Ex. AJ at ¶¶ 45-54)

### B.    Ms. Spielman's Opinions Relating To The Lack Of Written Description In The Patents-In-Suit Are Proper And Admissible.

As an initial matter, Pi-Net criticizes Ms. Spielman for focusing on whether the specification of the patents-in-suit was written with sufficient clarity so as to allow a person of skill in the art to understand the scope of the claimed technology.  Pi-Net argues that "inventions must be protected *regardless of the patent's clarity*."  (D.I. 116 at 7-8 (emphasis added))  This contention—which is based primarily on an outdated case from the 19th century—is **directly** at odds with the established law.  As the Federal Circuit has recently reaffirmed, the written description requirement "protects the quid pro quo between inventors and the public," and thus this requirement is satisfied only if the patent "'convey[s] with **reasonable clarity** to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.'"  *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376-77 (Fed. Cir. 2009) (quoting *Vas-Cath*

*Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) (emphasis added).  Ms. Spielman's

testimony regarding the "clarity" of the patents-in-suit is thus not merely admissible; it is

essential testimony for the trier of fact to consider.

Pi-Net's remaining written description arguments represent little more than a

disagreement with Ms. Spielman's conclusions, which is not a basis to exclude any of her

opinions.  Indeed, Pi-Net even acknowledges that Ms. Spielman applied the proper standard for

assessing the written description (i.e., "the 'possession' requirement"), which underscores that

nothing was methodologically improper or unreliable about Ms. Spielman's analysis.  (D.I. 116

at 10)  Further confirming the propriety of Ms. Spielman's analysis are the *fourteen separate*

*times* that she refers to either the "possession" requirement or "possession" of particular claim

elements.  (Ex. AJ at ¶¶ 18, 46-49, 51, 55, 61, 67, 73)  With this extensive and proper analysis at

the heart of Ms. Spielman's report, Pi-Net's only remaining argument is that testimony regarding

"lack of specific examples" in the specification should be inadmissible.  (D.I. 116 at 10)

As an initial matter, Pi-Net does not cite a single case where an expert opinion

regarding the written description requirement was excluded under the *Daubert* standard because

that expert considered whether any examples or embodiments of the claimed invention were

disclosed in the specification.  Indeed, after *Ariad*, the Federal Circuit clarified that "[a]lthough

examples are not always required to satisfy the written description requirement, ***the lack of any***

***disclosure of examples may be considered*** when determining whether the claimed invention is

adequately described."  *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1364

(Fed. Cir. 2011) ("*BSC*") (emphasis added).  Thus, while examples may not be required in every

circumstance to comply with Section 112, the Federal Circuit does not have a *per se* rule against

considering this issue as part of the written description inquiry.  Given that Pi-Net has cited no

instance where an opinion relating to the lack of working examples in the patents-in-suit led to the exclusion of testimony, and given that the Federal Circuit has explicitly permitted the introduction of such evidence, it would be improper to exclude Ms. Spielman's opinions here. That also makes intuitive sense—while the *presence* of working examples may not be required, the *absence* of working examples is certainly relevant to the question of whether the patentee possessed the elements that are recited in the asserted claims as of November 1995.

Moreover, the lack of working examples is but one opinion from Ms. Spielman's Initial Report.  Ms. Spielman further notes that (1) unlike later patents naming Dr. Arunachalam as the inventor, the patents-in-suit contain no exemplary code; (2) the specification depicts the VAN Switch inconsistently; (3) the patents-in-suit use terminology that is inconsistent with the prior and contemporaneous art from November 1995; and (4) the only protocol described in the patents-in-suit for implementing the claimed "VAN Switch" (the TransWeb[TM] Management Protocol) never existed, and would therefore have been completely unknown to a person of skill in the art.  (Ex. AJ at ¶¶ 47-49)  According to Ms. Spielman, these are the sorts of factors that would lead a person of skill in the art as of November 1995 to conclude that Dr. Arunachalam lacked possession of the full scope of the claimed invention.[3]  Moreover, these are precisely the sorts of factors that the Federal Circuit generally considers when assessing the adequacy of the written description.  *See, e.g.*, *Alcon Research Ltd. v. Barr Labs., Inc.,* 837 F. Supp 2d 364, 384 (D. Del. 2011) ("[T]he factors relevant to the written description inquiry are similar to the *Wands* factors we use to analyze enablement: 'the nature and scope of the invention at issue,' 'the

---

[3]   This is particularly true here, where the one example of the claimed VAN Switch provided in the specification is exclusively described in terms of a protocol that the patentee never possessed, because there is no dispute that this protocol *never existed*.  (*See* D.I. 122)

existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue.'").

Pi-Net again cites *Asahi Glass* in this section of its opening brief, and contends that it is "on all fours here, and justifies striking Ms. Spielman's testimony that the patents-in-suit are invalid." (D.I. 116 at 11)  While this Court did exclude certain expert testimony in that case, the facts there are fully distinguishable from Ms. Spielman's report.  In *Asahi Glass*, the expert erred in several ways, by providing evidence relating to the written description requirement that was mere "speculation," and that was "unaccompanied by factual support."  2011 WL 4459606 at *1.  Pi-Net has made no allegation that Ms. Spielman's opinions are mere speculation, and has not challenged the factual support for her opinions, which is specifically provided through citation to record evidence and based on her quarter-century of experience in the relevant art.  Thus, this case is much more similar to *Golden Bridge Tech., Inc. v. Apple Inc.*, Civ. No. 10-428-SLR, 2013 WL 1431652, at *2 (D. Del. Apr. 9, 2013) (denying a *Daubert* motion to exclude expert testimony regarding written description requirement).

### C.    Ms. Spielman's Opinions Relating To The Lack Of Enablement In The Patents-In-Suit Are Proper And Admissible.

Pi-Net advances two arguments in favor of excluding Ms. Spielman's testimony on lack of enablement:  (1) Ms. Spielman does not expressly recite the eight *Wands* factors; and (2) Ms. Spielman's opinions are only that "routine experimentation" is required to implement the claimed invention, which is less than the "undue experimentation" required for a successful enablement defense.  (D.I. 116 at 2, 12-13)  These arguments rest on a fundamental misreading of the applicable law, and a fundamental mischaracterization of Ms. Spielman's report.

First, Pi-Net criticizes Ms. Spielman for "never mention[ing] the *Wands* factors," which are a set of several factual inquiries that the Federal Circuit has recognized can be

17

considered as part of the enablement inquiry.  (D.I. 116 at 2)  However, this argument is without

merit because all of the *Wands* factors do not have to be reviewed when determining whether a

disclosure is enabling.  *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL,

2007 WL 2572417, at *3 (D. Kan. Sept. 4, 2007) (denying motion to exclude expert opinion on

enablement even though expert did not "expressly consider the eight enablement factors set forth

by the Federal Circuit in *In re Wands*").  Moreover, as discussed above, Ms. Spielman

specifically considered several *Wands* factors, including at least factors 1-4, which are directed

to the quantity of experimentation necessary, the amount of direction or guidance presented, the

absence of working examples, and the nature of the invention.[4]  *See In re Wands*, 858 F.2d 731,

737 (Fed. Cir. 1988).

        Pi-Net's second argument—that Ms. Spielman did not opine that "undue"

experimentation is required, and that her opinions are merely *ipse dixit*—is equally misplaced.

As with its arguments regarding written description, Pi-Net merely disagrees with the amount of

experimentation that Ms. Spielman opines would be required to implement at least the claimed

"VAN Switch" and "RTDS."  The question is not whether the "lack of working examples" and

substantial "trial and error" that Ms. Spielman identifies will ultimately carry the day; the

question is whether Ms. Spielman's views on these topics are admissible.  Numerous cases make

clear that these opinions are unquestionably admissible.  *See, e.g., Old Town Canoe Co. v.

Confluence Holdings Corp.*, 448 F.3d 1309, 1320 (Fed. Cir. 2006) (reversing judgment as a

matter of law on the issue of enablement where the "evidence [was] sufficient for a reasonable

juror to conclude that the trial and error required to practice the claimed invention could be

unduly laborious"); *Medisim*, 861 F. Supp. 2d at 171 (cited by Pi-Net) (denying *Daubert* motion

---

[4]    *See, e.g.*, Ex. AJ at ¶¶ 15, 17, 25, 48-50, 52, 55, 62.

to exclude opinions relating to undue experimentation because expertise in the field meant that conclusions were not "mere *ipse dixit* conclusion[s]"); *Sprint*, 2007 WL 2572417, at *4 (denying motion to exclude expert testimony regarding lack of enablement and noting that objections "go to the weight of [expert's] testimony, not its admissibility").

In support of excluding Ms. Spielman's opinions on lack of enablement, Pi-Net cites *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-CV-00068-JRG-RSP, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013).  (D.I. 116 at 12)  However, in that case, the expert did not consider whether the *claims* were enabled, but instead considered whether the specification "enables Zynga's games."  *Id.* at *2.  In other words, the accused products were used as the "touchstone for enablement," which was "contrary to the" established law.  *Id.*  Because the expert "misstate[d] the law regarding enablement," the opinions had to be excluded.  *Id.*  Pi-Net has not (and cannot) argue that Ms. Spielman misstated the law of enablement—she did not even refer to the accused products in her Initial Report, and instead focused on how the intrinsic disclosure would have been understood by a person of ordinary skill in the art as of 1995.  (*See* Initial Spielman Rep. at ¶ 25)

### D.    Ms. Spielman's Opinions Relating To Indefiniteness Of The Patents-In-Suit Are Proper And Admissible.

Pi-Net challenges Ms. Spielman's proffered testimony relating to indefiniteness in two sections of its opening brief:  (1) Section IV.B., in which Pi-Net argues that certain of Ms. Spielman's opinions are "*ad hominem*" attacks (D.I. 116 at 7); and (2) Section IV.E, in which Pi-Net argues that Ms. Spielman cannot, under any circumstances, "testify on the subject" of claim indefiniteness (*id.* at 15).  Both of these arguments are unsupported, and are contrary to the established law.  As for Pi-Net's first contention, Pi-Net proffers no basis for excluding the substance of any of Ms. Spielman's allegedly "*ad hominem*" attacks, which compare the

disclosure of the patents-in-suit to the "vernacular and terminology" in use as of November 1995, and the "frame of reference" that such a person would have had. (*See* D.I. 116 at 6 (quoting Ex. AJ at ¶ 40)) And as for Pi-Net's second contention, both Ms. Spielman and Dr. Bardash have considered the issue of claim indefiniteness in their written reports (and, in the case of Dr. Bardash, in a declaration that was submitted to the Court). (*See, e.g.*, D.I. 66) If Pi-Net's views about the inappropriateness of expert testimony on indefiniteness are correct, then large portions of Dr. Bardash's declaration and expert reports must also be excluded.[5] Pi-Net cannot reconcile its own actions with its request to exclude Ms. Spielman's opinions.

## VI.   ANY TESTIMONY BASED ON MS. SPIELMAN'S REPLY REPORT IS RELIABLE AND ADMISSIBLE.

Although Pi-Net asks this Court to exclude any testimony from Ms. Spielman based on her Reply Report, Pi-Net provides absolutely no arguments, citations, or quotations specific to the Reply Report. As noted above, Ms. Spielman's Reply Report is addressed exclusively to rebutting the points that Dr. Bardash made in his Second Expert Report, and Pi-Net has provided no basis upon which to exclude testimony based on any of the 46 paragraphs in that report. It is now too late for Pi-Net to raise any arguments based on Ms. Spielman's Reply Report. *See* Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."). Ms. Spielman should therefore be permitted to testify to all topics set forth in her Reply Report.

## CONCLUSION

Pi-Net's *Daubert* motion rests on an improper factual and legal foundation, and provides no basis to exclude Ms. Spielman's testimony. Pi-Net's motion should thus be denied.

---

[5]   As JPMC has previously noted, the Court need not even reach the expert opinions on indefiniteness to hold the claims invalid as a matter of law. (D.I. 104 at 6)

Respectfully submitted,

/s/ *Robert S. Saunders*

OF COUNSEL:                          Robert S. Saunders (ID No. 3027)
Daniel A. DeVito                     Jessica Raatz Kunz (ID No. 5698)
Douglas R. Nemec                     SKADDEN, ARPS, SLATE,
Edward L. Tulin                         MEAGHER & FLOM LLP
Andrew D. Gish                       920 N. King Street, 7th Floor
SKADDEN, ARPS, SLATE,                Wilmington, Delaware  19801
   MEAGHER & FLOM LLP                Tel.:  (302) 651-3000
Four Times Square                    Fax:  (302) 651-3001
New York, New York  10036            rob.saunders@skadden.com
Tel.:  (212) 735-3000                jessica.kunz@skadden.com
douglas.nemec@skadden.com

                                     *Attorneys for Defendant JPMorgan Chase & Co.*

DATED:  February 14, 2014

21