# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF Delaware

| | |
|---|---|
| **PI-NET INTERNATIONAL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **C.A. No. 12-282-RGA** |
| ) | |
| **JPMORGAN CHASE & CO.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

# PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## JPMC's MOTION SUMMARY JUDGMENT OF INVALIDITY

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff*
*Pi-Net International, Inc.*

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDING.................................................... 1

II.    SUMMARY OF ARGUMENT ........................................................................ 1

III.   STATEMENT OF FACT ............................................................................. 2

IV.    LEGAL STANDARDS ............................................................................... 3

   A.    Summary Judgment Standard......................................................... 3

   B.    Presumption of Validity for United States Patents.......................... 4

   C.    Written Description ...................................................................... 4

   D.    Enablement.................................................................................. 5

   E.    Indefiniteness ............................................................................. 6

V.    ARGUMENT........................................................................................... 8

   A.    JPMC Has Not Supported Its Motion ........................................... 8

   B.    JPMC Has Not Proven Indefiniteness as a Matter of Law............... 10

   C.    The "Application Terms" Not Indefinite....................................... 10

   D.    The Claims Are Not Invalid as a Matter of Law for  Lack Of Written Description Under 35 U.S.C. § 112(A) ...................................................................... 10

   E.    JPMC has not Demonstrated Lack of Written Description of "Back-End"................... 12

   F.    JPMC has not Demonstrated Lack of Written Description of "Back-End"...................... 13

   G.    JPMC has not Demonstrated Lack of Written Description of "Back-End".................. 14

VI.     CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*ALZA Corp. v. Andrx Pharms., LLC,*

603 F.3d 935 (Fed.Cir.2010) ........................................................................................... 5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*

314 F.3d 1313 (Fed. Cir. 2003) ....................................................................................... 6

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242 (U.S. 1986) ................................................................................................ 3

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*

598 F.3d 1336 (Fed. Cir. 2010) ....................................................................................... 4

*Atmel Corp. v. Information Storage Devices, Inc.,*

198 F.3d 1374 (Fed.Cir.1999) ......................................................................................... 7

Automotive Technologies International, Inc. v. BMW of North America, Inc.,

501 F.3d 1274 (Fed. Cir. 2007) ..................................................................................... 15

*B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.,*

375 Fed. Appx. 28 (Fed. Cir. 2010) ................................................................................ 3

*Bose Corp. v. JBL, Inc.,*

274 F.3d 1354 (Fed. Cir. 2001) ....................................................................................... 8

*British Telecommunications PLC v. Coxcom, Inc.,*

2014 WL 119198 (D. Del. 2014) ..................................................................................... 7

*Butamax Advanced Biofuels LLC v. Gevo, Inc.,*

931 F. Supp. 2d 589 (D. Del. 2013) ................................................................................ 5

*Cephalon, Inc. v. Watson Pharm., Inc.*,

   707 F.3d 1330 (Fed. Cir. 2013) ........................................................................... 5, 6

*Clearwater Sys. Corp. v. Evapco, Inc.*,

   394 F. App'x 699 (Fed. Cir. 2010) ......................................................................... 12

*Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*,

   526 F. App'x 927 (Fed. Cir. 2013) ......................................................................... 12

*Datamize v. Plumtree Software, Inc.*,

   417 F.3d 1342 (Fed.Cir.2005) ................................................................................. 7

*Deere & Co. v. Bush Hog, LLC*,

   703 F.3d 1349 (Fed. Cir. 2012) ............................................................................... 7

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*,

   849 F.2d 1430 (Fed.Cir.1988) ............................................................................... 13

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,

   435 F.3d 1366 (Fed. Cir. 2006) ............................................................................... 7

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,

   323 F.3d 956 (Fed. Cir. 2002) ............................................................................ 5, 6

*Exxon Research & Eng'g Co. v. United States*,

   265 F.3d 1371 (Fed. Cir. 2001) ........................................................................... 7, 8

*Haemonetics Corp. v. Baxter Healthcare Corp.*,

   607 F.3d 776 (Fed. Cir. 2010) ................................................................................. 7

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,

   802 F.2d 1367 (Fed. Cir. 1986) ............................................................................... 6

*In re Wands*,

858 F.2d 731 (Fed.Cir.1988) ................................................................................... 5, 6

*Intervet Am., Inc. v. Kee–Vet Labs., Inc.*,

887 F.2d 1050 (Fed.Cir.1989) ................................................................................. 12

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,

2013 WL 6627945 (D. Del. 2013) ............................................................................. 4

*Johns Hopkins Univ. v. Cellpro, Inc.*,

152 F.3d 1342 (Fed. Cir. 1998) ................................................................................. 5

Leader Techs., Inc. v. Facebook; Inc.,

*2011 WL 1514701 (D. Del. 2011)* ............................................................................. 3

Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.,

*527 F.3d 1330 (Fed. Cir. 2008)* ................................................................................. 3

*Microsoft Corp. v. i4i Ltd. P'ship*,

131 S. Ct. 2238 (2011) ............................................................................................... 4

*Phillips v. AWH Corp.*,

415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 9

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,

522 F.3d 1299 (Fed.Cir.2008) ................................................................................... 5

*Praxair, Inc. v. ATMI, Inc.*,

543 F.3d 1306 (Fed.Cir.2008) ................................................................................... 7

*Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133 (2000) ................................................................................................... 3

*Renishaw PLC v. Marposs Societa' per Azioni*,

   158 F.3d 1243 (Fed.Cir.1998) ................................................................................... 13

*Secor View Technologies LLC v. Nissan N. Am., Inc.*,

   2013 WL 6147788 (D.N.J. 2013) .............................................................................. 7

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,

   758 F.2d 613 (Fed. Cir. 1985) ................................................................................... 8

*Source Search Techs., LLC v. LendingTree, LLC*,

   588 F.3d 1063 (Fed. Cir. 2009) ................................................................................. 8

*SRAM Corp. v. AD-II Eng'g, Inc.*,

   465 F.3d 1351 (Fed. Cir. 2006) ................................................................................. 4

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,

   655 F.3d 1364 (Fed. Cir. 2011) ................................................................................. 8

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,

   734 F.3d 1332 (Fed. Cir. 2013) ................................................................................. 4

*TriMed, Inc. v. Stryker Corp.*,

   608 F.3d 1333 (Fed. Cir. 2010) ................................................................................. 4

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,

   659 F.3d 1376 (Fed. Cir. 2011) ................................................................................. 8

*Vas-Cath Inc. v. Mahurkar*,

   935 F.2d 1555 (Fed. Cir. 1991) ................................................................................. 5

## STATUTES

35 U.S.C. § 112 ......................................................................................................... 9

35 U.S.C. § 112(a) .................................................................................................... 8

35 U.S.C. § 112(b) ................................................................................................................... 6

35 U.S.C. § 282 ....................................................................................................................... 4

**RULES**

Fed.R.Civ.P. Rule 56(a) ........................................................................................................... 3

Fed.R.Civ.P. Rule 56(c)(1) .................................................................................................. 3, 9

## I.   NATURE AND STAGE OF THE PROCEEDING

Defendant JPMorgan Chase & Co. ("JPMC") has moved for summary judgment of invalidity of claims asserted by Plaintiff Pi-Net International Inc. ("Pi-Net"), and has filed an opening brief in support thereof. D.I. 121, 122.  ("Motion")  This is Pi-Net's answering brief in opposition of that motion.

## II.   SUMMARY OF ARGUMENT

JPMC has not met its heavy burden of demonstrating that there is no genuine dispute as to any material fact that the claims of the Pi-Net patents are invalid as a matter of law under 35 U.S.C. §112.  The legal deficiencies of JPMC's Motion are fundamental, each of which independently requires a denial of the Motion.  The main deficiencies include:

A.  The Motion rests entirely on factual assertions and argument of JPMC's counsel, and not on the basis of any record.  Thus,

- JPMC filed the Motion without any declaration.

- JPMC does not even rely on the expert reports of Susan Spielman or Dr. Michael Siegal, JPMC's invalidity experts, citing only two specific conclusory sentences in Ms. Spielman report.  (D.I. 122 at 11, 17).

- JPMC does cite selected documents and deposition testimony, but they are tied together only by counsel's *ipse dixit*, and, even if viewed as acceptable evidence, none demonstrate the absence of genuine issues of material fact.

- JPMC ignores entirely the record that establishes a genuine dispute as to all the issues raised in JPMC's Motion.  To confirm that is a genuine dispute as to each material

fact in JPMC's Motion, Pi-Net has served the Declaration of Dr. Michael Bardash
that challenges JPMC's purported facts (based entirely on the pre-existing record).

B.  The Motion badly distorts the plain language of the Pi-Net patent claims.  Indeed,
JPMC makes no argument that actually applies to the claims as they actually written
and construed.

In short, JPMC begins its brief with *ad hominem* that the patents here are without any
merit.  The patents here may be "rare," because they are so fundamental and introduced an
entirely new concept to the Web transactions.  But, JPMC has not proven that they are invalid by
clear and convincing evidence, and certainly not as a matter of law on the grounds that there are
no genuine disputes of material fact..

At a minimum, there are genuine issues of material fact that preclude summary judgment
in JPMC's favor.

### III.    STATEMENT OF FACT

Pi-Net has previously filed an expert report by Dr. Bardash that responded to the expert
report presented by Ms. Susan Spielman, JPMC's designated expert for issues surrounding 35
U.S.C. § 112.  (Exh. AB; A-1210-51).  JPMC, however, does not refer to Ms. Spielman's report,
and, therefore, in excess of caution, in view of the fact that JPMC has filed a motion for
summary judgment, Pi-Net also is filing the Declaration of Dr. Michael Bardash in Response to
Defendant's Motions for Summary Judgment. (Exh. BE).  The Declaration specifically addresses
JPMC's assertions in its Motion.  Pi-Net in particular refers to Paragraphs 6-56 of Dr. Bardash's
declaration in which he responds to the purported material facts relied upon in JPMC's Motion
for summary judgment of invalidity.

The material facts in the Declaration and any other material facts are addressed below in

connection with Pi-Net's response to specific arguments.

## IV.   LEGAL STANDARDS

### A.  Summary Judgment Standard

Grant of summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a).

Fed.R.Civ.P. Rule 56(c)(1) requires the moving party to:

(A) cit[e] to particular parts of materials in the record…; or

(B) show[] that the materials cited do not establish … presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In considering the motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (U.S. 1986). *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Conflicting expert testimony can, alone, create a genuine issue of material fact, compelling the court to deny a motion for summary judgment. *Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008) (holding that the "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"); *see also B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 Fed. Appx. 28, 32 (Fed. Cir. 2010) ("conflict in expert declarations … created a genuine issue of material fact that made summary judgment inappropriate"); *Leader Techs., Inc. v. Facebook; Inc.*, 2011 WL 1514701, at *2 (D. Del. 2011) ("conflicting expert testimony raises genuine issues of material fact that are appropriate for consideration by a jury in the first instance and, hence, preclude summary judgment.").

**B.  Presumption of Validity for United States Patents**

A patent is presumed valid, 35 U.S.C. § 282, with the infringer having the burden of proving invalidity by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) ("Section 282 requires an invalidity defense to be proved by clear and convincing evidence.")

Because patents are presumed valid, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340 (Fed. Cir. 2010); *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006).

**C.  Written Description**

Compliance with the written description requirement is a question of fact, and the inquiry under the relevant statute, 35 U.S.C. § 112(a), is whether the written description allows "persons of ordinary skill in the art to recognize that the inventor invented what is claimed" or "that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  "The "level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013).  The "test for possession "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 2013 WL 6627945 (D. Del. 2013).

To satisfy the written description requirement, the patentee "does not have to describe exactly the subject matter claimed, [rather] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991). The written description requirement "is satisfied by the patentee's disclosure of 'such descriptive means as words, structures, figures, diagrams, formulas, etc. that fully set forth the claimed invention.'" *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). A party challenging written description must "provide clear and convincing evidence that persons skilled in the art would not recognize in the disclosure a description of the claimed invention." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 931 F. Supp. 2d 589, 612 (D. Del. 2013) (citing *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1306–07 (Fed.Cir.2008))

## D. **Enablement**

To prevail on lack of enablement, the challenger must prove by clear and convincing evidence that the asserted patents do not enable one of ordinary skill to make the invention without undue experimentation. *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1359-60 (Fed. Cir. 1998). The enablement requirement

> is met when at the time of filing the application one skilled in the art, having read the specification, could practice the invention without "undue experimentation." Whether undue experimentation is required "is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations."

*Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (quoting *In re Wands*, 858 F.2d 731, 736–37 (Fed.Cir.1988) and *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed.Cir.2010).

Courts usually apply the so-called *Wands* factors in determining whether any particular

claim is invalid for lack of enablement: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Wands*, *supra*, 858 F.2d at 737 ("*Wands* factors"). See *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1372 (Fed.Cir.1999) ("The *Wands* factors, when applied from the proper temporal perspective ... are a useful methodology for determining enablement...."). What is relevant depends on the facts, and although experimentation must not be undue, a reasonable amount of routine experimentation required to practice a claimed invention does not violate the enablement requirement. *Cephalon*, *supra*, 707 F.3d at 1336.

"The specification need not explicitly teach those in the art to make and use the invention; the requirement is satisfied if, given what they already know, the specification teaches those in the art enough that they can make and use the invention without 'undue experimentation.'" *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003); see also *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) ("[A] patent need not teach, and preferably omits, what is well known in the art.").

**E.   Indefiniteness**

The statute, 35 U.S.C. § 112(b) provides that:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The provision raises a question of law:

> We adhere to the principle that "determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." In *Cybor*, we reaffirmed that although a court may consider or reject certain extrinsic evidence in resolving disputes en route to pronouncing the meaning of claim language, "the court is not crediting certain evidence over other

evidence or making factual evidentiary findings.  Rather, the court is looking to the extrinsic evidence to assist in its construction of the written document...."  We therefore reject Exxon's argument that the issue of indefiniteness turns on an underlying factual dispute that should not have been resolved as a matter of law on summary judgment.

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (internal

citations omitted).[1]  A claim is invalid as indefinite only where it is "not amenable to

construction" or is "insolubly ambiguous."[2]

"Absolute clarity is not required to find a claim term definite.  ...[A] claim term may be

definite even when discerning the meaning is a 'formidable [task] and the conclusion may be one

over which reasonable persons will disagree.'"  *Star Scientific, Inc. v. R.J. Reynolds Tobacco*

---

[1] See also *Datamize v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347–48 (Fed.Cir.2005) ("'By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of validity and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.'"); *British Telecommunications PLC v. Coxcom, Inc.*, 2014 WL 119198 (D. Del. 2014) ("The definiteness requirement is rooted in § 112[b], which provides that 'the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.'  A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.").

[2] *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012); *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) ("because claim construction frequently poses difficult questions over which reasonable minds may disagree, proof of indefiniteness must meet "an exacting standard."  "Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite."  .... An accused infringer must thus demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art.");  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed.Cir.2008) ("Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction.").  Thus, indefiniteness under § 112(b) is properly raised during claim construction because it is "inextricably intertwined with claim construction.'" *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1368-69 (Fed. Cir. 2006); *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed.Cir.1999);  *Secor View Technologies LLC v. Nissan N. Am., Inc.*, 2013 WL 6147788 (D.N.J. 2013).

*Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011) (quoting *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) and citing *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).  "If the claims, read in light of the specification, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more." *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).  In particular, "[if the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite." (Id. at 1370-71 (quoting *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001)).) "The requirement that the claims 'particularly point[] out and distinctly claim[]' the invention is met when a person experienced in the field of the invention would understand the scope of the subject matter that is patented when the claim is read in conjunction with the rest of the specification." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384 (Fed. Cir. 2011).  Close questions of indefiniteness "are properly resolved in favor of the patentee." (*Datamize*, 417 F.3d at 1348.)

## V.    ARGUMENT

### A.  JPMC Has Not Supported Its Motion

JPMC has moved for summary judgment of invalidity of most of the claims of the Pi-Net Patents on the grounds that the claims violate the written description, enablement and definiteness requirements of 35 U.S.C. §112.  All three requirements are directed to one skilled in the art.  The statutory enablement requirements are directed to the "person skilled in the art to which it pertains, or with which it is most nearly connected."  35 U.S.C. § 112(a).  Similarly, the Courts have established that the written description and definiteness requirements are viewed from the perspective of one skilled in the art.  (Section IV, *supra*).

8

The claim limitations themselves are given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.")

Thus, all the claim construction and validity issues turn on the perspective of one skilled in the art. Yet, JPMC has presented no evidence with its Motion about how a skilled artisan would interpret the patent claims, and whether a skilled artisan would find the Pi-Net patents lacking the written description, enablement and definiteness mandates of 35 U.S.C. § 112. JPMC does not even rely on the expert reports of Susan Spielman or Dr. Michael Siegal, JPMC's invalidity experts, citing only to two specific conclusory sentences in Ms. Spielman report. The first reference is a conclusory and unsupported assertion in Ms. Spielman's report that a skilled artisan "would not have understood from the specification of the patents-in-suit that the patentee had possession of a VAN Switch configurable to perform 'real-time' transactions'"(D.I. 122 at 11), and the second is an equally conclusory statement that "make or use a VAN Switch (or any sort of a switch or system capable of performing "real time" transactions) without engaging in substantial and significant efforts at trial and error." (D.I. 122 at 17; Exh. AJ, A-2133). JPMC further refers to certain alleged admissions by Pi-Net's experts, but they are mischaracterized to a greater or lesser extent, and, in any event, none come close to establishing that there is not genuine dispute of material fact.

JPMC has not complied with Rule 56(c). JPMC cannot establish that it is entitled to judgment as a matter of law on issues on which is bears the burden of proof by clear and

convincing evidence by citing (and mischaracterizing) snippets of the record and counsel's *ipse dixit*.

### B.  JPMC Has Not Proven Indefiniteness as a Matter of Law

JPMC argues to the Court, without any support, to hold the presumptively valid claims of all three Pi-Net patents to be invalid as a matter of law, simply because JPMC's counsel say so. (D.I. 122 at 7-8).  There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite.  (Exh. BE at ¶¶ 6-8).

### C.  The "Application Terms" Not Indefinite

JPMC argues to the Court, without any support analysis, to hold the presumptively valid claims of all three Pi-Net patents to be invalid as a matter of law because the claims cannot be definite even if construed.  (D.I. 122 at 8-11).  There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite.  (Exh. BE at ¶¶ 6-8).

To support its argument, JPMC tortures the claim constructions to allege that the current constructions result in "circularity."  The standard for indefiniteness is not that a proposed construction is "circular," but that the claims cannot be construed at all.  (Section IV.E, *supra*). Dr. Bardash has shown that the alleged "circularity" can easily be resolved without changing the substance of the actual construction.  (Exh. BE at ¶ 10-17).  JPMC has not shown that, upon dutiful effort to resolve any alleged "circularities," that the claim terms are "not amenable to construction" or is "insolubly ambiguous," which is what JPMC has to demonstrate to support invalidity.  (Section IV.E, *supra*).

### D.  The Claims Are Not Invalid as a Matter of Law for Lack Of Written Description Under 35 U.S.C. § 112(A)

JPMC argues to the Court, without any record support (except a one sentence conclusory statement by Ms. Spielman), to hold the presumptively valid claims of all three Pi-Net patents to

be invalid as a matter of law for lack of written description.  (D.I. 122 at 11-16).  There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite. (Exh. BE at ¶¶ 30-45).

Whether claims are supported by a written description is a question of fact.  (Section IV.C, *supra*).  JPMC cites nothing except counsel's *ipse dixit*, which is not sufficient to demonstrate that a person of ordinary skill in the art would not be able to "recognize that the inventor invented what is claimed" or "that the inventor had possession of the claimed subject matter as of the filing date." (Section IV.C, *supra*).  On the other hand, there is the declaration of Dr. Bardash demonstrating in great detail why the claims are supported by the written description.  (Exh. BE at ¶¶ 30-45).  Thus, even if counsel's argument was viewed as an adequate substitute for the understanding on skilled in the art, there is at least a genuine dispute of material fact.

JPMC apparently overlooked Dr. Bardash's Second Expert Report, when JPMC said that Dr. Bardash did not opine that the claims were supported by written description.  (D.I. 122 at 11)  As Dr. Bardash points out in his current declaration, he devoted 12 pages of his Second Report to responding to the allegations that the claims were not supported by a written description.  (Exh. BE at ¶ 30).

JPMC bases its entire argument on the assumption that the VAN Switch was supported solely by the patent's reference to the "TMP<sup>tm</sup> Protocol." (D.I. 122 at 12).   But, that is error, because the VAN Switch is not tied to the "TMP<sup>tm</sup> Protocol" or any protocol.  "TMP<sup>tm</sup> Protocol" was simply a proposed preferred embodiment, and it is not part of, or otherwise material to, the construction of VAN Switch.  It is note that so far neither Pi-Net nor the PTO had suggested that VAN Switch be construed in any way that makes "TMP<sup>tm</sup> Protocol" relevant to the term or its

construction.  (D.I. 64 at 16; Exh. BB).  Indeed, JPMC has never suggested that either, until the present Motion.

### E.  JPMC has not Demonstrated Lack of Written Description of "Back-End"

JPMC argues to the Court, without any record support, to hold presumptively valid claims of all three Pi-Net patents to be invalid as a matter of law because "the specification provides no evidence that the inventor possessed any "back-end" elements required by the asserted claims." (D.I. 122 at 15-16).  There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite.  (Exh. BE at ¶¶ 39-45).

JPMC is simply rewriting the claims in the same manner as JPMC argued in connection with its motion for summary judgment of non-infringement.  JPMC is in error for the same reasons as were argued there.

The '492 Patent claims recite a "back-end transactional application." The claims of the '500 Patent and the '158 Patent do not recite any "back-end" term in the limitations.  JPMC provides no authority for its argument that the fact that a word or phrase is used in the construction of a claim term, that the word or phrase is somehow transformed to a claim term, subject to the same infringement and validity requirements as a claim term.  Nor is there any support for JPMC's argument that terms should be read into the claims, because they are necessary for some practical implementations. [3]  Certainly, it is not understood how JPMC

---

[3] [A]dding an extraneous limitation … is improper."  *Creative Integrated Sys., Inc. v. Nintendo of Am., Inc*., 526 F. App'x 927, 935 (Fed. Cir. 2013); *Clearwater Sys. Corp. v. Evapco, Inc*., 394 F. App'x 699, 706 (Fed. Cir. 2010) ("the district court improperly imported an extraneous limitation into the claim."); *Intervet Am., Inc. v. Kee–Vet Labs., Inc*., 887 F.2d 1050, 1053 (Fed.Cir.1989) ("[T]his court has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'") (quoting *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co*., 849

purports to make such an argument without any record, such as an expert declaration, supporting the proposed rewriting of the claims.  JPMC's arguments are without merit.[4]

JPMC argues – as always without any support of any record reflecting the understanding of one skilled in the art – that "There is no evidence in the specification that the inventor possessed the 'back-end' or back office systems explicitly required by the asserted claims."  (D.I. 122 at 16).  JPMC does not even explain what specific patent limitation it is addressing, much less does JPMC establish that the claims are invalid as matter of law.

### F.  JPMC has not Demonstrated Lack of Written Description of "Back-End"

JPMC argues to the Court, without any record support, to hold presumptively valid claims of all three Pi-Net patents to be invalid as a matter of law because "the specification provides no evidence that the inventor possessed any "back-end" elements required by the asserted claims." (D.I. 122 at 15-16).  There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite.  (Exh. BE at ¶¶ 39-45).

---

F.2d 1430, 1433 (Fed.Cir.1988)); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed.Cir.1998) ("when a claim term is expressed in general descriptive words, we will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims.")

[4] JPMC's arguments for reading a "back-end" limitation into the '500 and '158 patent claims are also inconsistent with JPMC's arguments in the claim construction briefing.  In those briefs, directly contrary to its present position on summary judgment, JPMC had argued that:  "claim 1 of the '158 patent does not recite either a "transactional application" or "back-end transactional application'" (D.I. 74 at 76); and that "the claims of the '500 patent do not recite a … 'back-end transactional application.'"  (D.I. 74 at 76).  JPMC has not attempted to reconcile its directly contradictory arguments.

### G. JPMC has not Demonstrated Lack of Written Description of "Back-End"

JPMC argues to the Court, without any record support, to hold the presumptively valid claims of all three Pi-Net patents to be invalid as a matter of law for alleged lack of enablement. (D.I. 122 at 17-20). There is at least a genuine dispute of material fact as to whether these terms can be construed and are definite. (Exh. BE at ¶¶ 46-56).

JPMC argues that:

> In this case, no reasonable jury could conclude that anything less than undue experimentation would be needed to implement the claimed invention—in particular because both Ms. Spielman (one of JPMC's technical experts) and Mr. Easttom (one of Pi-Net's technical experts) agree that considerable experimentation and effort would be necessary to implement the technology in the asserted claims. (See Ex. AJ at ¶ 52 (opining that a person could not design a system as required by the asserted claims, "without engaging in substantial and significant efforts at trial and error"); Ex. AO at 306-08 (opining based on "countless real world examples" that it was "just too hard" prior to about 2003 to design and implement web applications)).

(D.I. 122 at 17). As explained in the Declaration of Dr. Bardash (Exh. BE at ¶¶ 48-49), the problem with JPMC's argument is that the cited paragraph of Ms. Spielman's expert report refers only to the VAN Switch and says that

> in my opinion a person of skill in the art as of the date of the alleged invention would not have been able to make or use a VAN Switch (or any sort of a switch or system capable of performing "real time" transactions) without engaging in substantial and significant efforts at trial and error. The patents-in-suit would have provided essentially no guidance in that effort; a person of skill in the relevant art would have been starting, effectively, from scratch.

(A-2133). Dr. Bardash pointed out that his Second Report showed that Ms. Spielman made the statement without addressing any particular construction of the term "VAN Switch," and Dr. Bardash detailed the errors in her analysis of the VAN Switch in that Second Report.

Similarly, Mr. Easttom's report never said anything remotely supporting JPMC's statement. In the cited portion of his deposition, he was addressing questions directed to combining various dissimilar items of prior art technologies. (Ex. AO at 306-08, A-2503). He

14

never addressed the sufficiency of the Pi-Net patent disclosures.  Second, he testified about how

hard it is to Web design systems from scratch.  However, there is a huge difference between a

hard task and "undue experimentation." As Dr. Bardash points out, building an airliner or a

bridge from existing blueprints may be a hard task, but it would not qualify as "undue

experimentation."  Mr. Easttom was talking in the cited section about "creating a web

application," which is hard work, but, in fact, any person skilled in the art had technology to do

it, and a huge number of websites and web applications were created in the 1995-96 time frame

and in the years that followed.  There were already thousands of web sites in existence in 1995.

Thus, Mr. Easttom's testimony says only that implementing web applications requires a lot of

hard work, but he does <u>not</u> say that practicing the Pi-Net patent required "undue

experimentation," and the two are very different concepts.

> JPMC then argues that:

> The asserted claims are closely analogous to those that were held invalid in
> Automotive Technologies International, Inc. v. BMW of North America, Inc.,
> 501 F.3d 1274, 1282 (Fed. Cir. 2007). In that case, the asserted claims
> encompassed electronic side impact sensors for use with automotive airbags.
> Id. at 1277. The patent specification in that case disclosed "only one short
> paragraph and one figure . . . provid[ing] an overview of an electronic sensor
> without providing any details of how the electronic sensor operate[d]." Id. at
> 1282. Expert knowledge could not cure this deficiency, because "'[i]t is the
> specification, not the knowledge of one skilled in the art, that must supply the
> novel aspects of an invention in order to constitute adequate enablement.'" Id.
> at 1283 (citation omitted). Similarly, the patents-in-suit provide only a
> conceptual overview of what functions a VAN Switch should perform, with no
> details of how to actually make and use an operational VAN Switch.

(D.I. 122 at 18).  The *Automotive Technologies* case bears no relationship to any issue here.

JPMC has not even provided a construction of VAN Switch.  It has not discussed either

Pi-Net's construction of VAN Switch or the PTO's construction (which are very similar).  How

JPMC can argue that VAN Switch is not enable, when JPMC has not even construed the term,

remains a mystery.

JPMC's final argument is that the "*Wands* Factors" dictate invalidity for lack of enablement.  (D.I. 122 at 18).  However, JPMC's expert reports never addressed the "*Wands* Factors," and JPMC's brief also does not.  JPMC cannot argue "*Wands* Factors" because they are tied closely to the knowledge of one skilled in the art, and JPMC has no record whatsoever of the "*Wands* Factors" in view of one skilled in the art.

## VI.    CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that JPMC's motion for summary judgment be denied.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff Pi-Net Int'l, Inc.*

16