# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **PI-NET INTERNATIONAL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | C.A. No. 12-282-RGA |
| ) | |
| **JPMORGAN CHASE & CO.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
### JPMC's MOTION SUMMARY JUDGMENT OF NON-INFRINGEMENT
### AND
### IN SUPPORT OF ITS MOTION TO STRIKE

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff
Pi-Net International, Inc.*

## TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDING ................................................................ 1

II. SUMMARY OF ARGUMENT ............................................................................................. 1

III. STATEMENT OF FACT ...................................................................................................... 2

IV. ARGUMENT ......................................................................................................................... 4

   A. JPMorgan's Summary Judgment Motion Should be Stricken In Light of JPMorgan's Failure To Comply With Court Rules, the Scheduling Order and Discovery Obligations ........ 4

      1. JPMorgan Withheld Information Required To Be Produced ....................................... 4

      2. JPMorgan's Information is Inadmissible as a Matter of Law ...................................... 7

      3. JPMorgan's Response to Interrogatory 4 Precludes Its Motion ................................. 7

      4. Prejudice to Pi-Net ........................................................................................................ 8

      5. JPMorgan's Laches Summary Judgment Motion Should be Denied and Stricken .... 10

   B. If JPMorgan's Motion is Not Stricken, Pi-Net is Entitled to Discovery Before the Court Considers the Motion ................................................................................................... 11

V. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Eaton Corp. v. Appliance Valves Corp.*,
   790 F.2d 874 (Fed.Cir.1986) ................................................................................................ 8

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
   2013 WL 3216109 (D. Del. 2013) ....................................................................................... 8

*Philips Electronics N. Am. Corp. v. Contec Corp.*,
   2004 WL 769371 (D. Del. 2004) ....................................................................................... 11

*Smithkline Beecham Corp. v. Ranbaxy Labs, Ltd.*,
   No. 03–2158(MLC) (D.N.J. Feb. 22, 2006) ........................................................................ 9

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*,
   2012 WL 1015993 (D. Del. 2012) aff'd, 522 F. App'x 915 (Fed. Cir. 2013) ...................... 9

*Stambler v. RSA Sec., Inc.*,
   212 F.R.D. 470 (D. Del. 2003) ...................................................................................... 8, 10

*Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.*,
   109 F.3d 739 (Fed.Cir.1997) ............................................................................................... 9

*Woods v. DeAngelo Marine Exhaust, Inc.*,
   692 F.3d 1272 (Fed. Cir. 2012) ........................................................................................... 8

**RULES**

Fed.R.Civ.P. Rule 26(a) ................................................................................................... 1, 5, 7

Fed.R.Civ.P. Rule 37(c) ....................................................................................................... 1, 7

Fed.R.Civ.P. Rule 56(d) .............................................................................................. 2, 11, 12

## I.     NATURE AND STAGE OF THE PROCEEDING

Defendant JPMorgan Chase & Co. ("JPMorgan") has moved for summary judgment of unenforceability on the basis of laches of Plaintiff Pi-Net International Inc. ("Pi-Net") claims under the '500 Patent, and has filed an opening brief in support thereof.  (D.I. 111, 112) ("Motion")  Pi-Net has moved to strike JPMorgan's Motion, because it relies on contentions and evidence that JPMorgan has failed to disclose in discovery as required by the federal rules and this Court's Orders.  This is Pi-Net's answering brief in opposition to JPMorgan's Motion and in support of Pi-Net's motion to strike the Motion and the contentions and evidence cited in that Motion.

## II.     SUMMARY OF ARGUMENT

JPMorgan had pled in its Answer that Pi-Net's claims under the '500 Patent were unenforceable because of laches.  Therefore, JPMorgan was obligated to comply with the disclosure provisions of Fed.R.Civ.P. Rule 26(a).  Yet, JPMorgan did not identify the person with knowledge upon whom it is now relying, and did not produce the documents in support of its defense that are relied upon in the Motion. Fed.R.Civ.P. Rule 37(c) provides an "automatic sanction" of precluding the use of such evidence and testimony in any Court proceeding.  Therefore, JPMorgan's motion must be stricken, because it is entirely based on inadmissible evidence.  Further, the motion must be denied, because it is based on contentions that contradict JPMorgan's interrogatory responses.

Further, Pi-Net served an interrogatory on JPMorgan requesting JPMorgan's contentions as to the defense and specification of evidence.  Pi-Net also served document requests that related in part to the laches defense.

JPMorgan answered the interrogatory that it was relying solely on what it said in its pleading. And, although it said it would produce documents and other information requested by Pi-Net, JPMorgan did not produce the information or documents upon which it is now relying in support of laches.

Finally, if not stricken, and if the Court intends to entertain JPMorgan's laches Motion, then Pi-Net respectfully requests that the Court postpone consideration of the motion pursuant to Fed.R.Civ.P. Rule 56(d) so that Pi-Net can conduct the discovery that is necessary to address the entirely new contentions and evidence that JPMorgan submitted in support of its motion.

### III. STATEMENT OF FACT

The relevant facts are set forth in the Declaration of George Pazuniak, contemporaneously filed herewith as Exhibit BF. As provided in that Declaration:

1. JPMorgan's Motion relies on a declaration of Declaration of Dr. William F. Mann III (Exhibit DAW). Prior to JPMorgan's service of his declaration, Dr. Mann had never been identified in this case in any disclosure, discovery response or in any other manner. Further, the information in his declaration had never been disclosed in this case.

2. The following documents relied upon in the Motion (D.I. 112) had never been produced in discovery of this case or otherwise disclosed of this case, and were first disclosed with the service of the Brief: Exhibits DAB, DAM, DAW, and DBE.

3. The following documents relied upon by JPMorgan had never been produced or otherwise disclosed during the fact discovery period of this case, and were first disclosed long after the close of fact discovery: Exhibits DAC, DAD, DAE, DAF, DAG, DAH, DAI, DAJ, DAK, DAL, DAN, DAO, and DAP. When JPMorgan produced these documents, JPMorgan did not provide any explanation of the purpose of the documents, and specifically did not disclose

that the documents were related to JPMorgan's laches defense. (Pazuniak Declaration, Exh. BF at ¶ 5).

4. JPMorgan had filed an Answer pleading in part that Patent No. 5,987,500 ("'500 Patent") was unenforceable on the basis of laches, and specifically: "Plaintiff is barred from enforcing the '500 Patent against JPMC pursuant to the doctrine of laches." (D.I. 11 at ¶ 39)

5. In view of this pleading, Pi-Net served Interrogatory No. 4, which stated:

> To the extent not specifically identified in Defendant's initial disclosure of invalidity contentions, state in detail and with particularity each and [sic] allegation that any asserted claim of any patent-in-suit is invalid or unenforceable, or which you may argue precludes any liability in this case (provided that any information specifically provided in response to Interrogatory No. 2 need not be repeated).

(Exhibit BG at p. 8). JPMorgan's only substantive response to this interrogatory was as follows:

> … JPMC responds as follows: All such allegations that JPMC has formulated at this time are listed in Defendants' Initial Invalidity Contentions and JPMC's Answer (D.I. 11). However, JPMC reserves the right to amend its response as it formulates additional allegations.

(Exhibit BG at pp. 8-9). JPMorgan did not mention or refer to laches in Defendants' Initial Invalidity Contentions, and "JPMC's Answer (D.I. 11)" stated with respect to laches only the following: "Plaintiff is barred from enforcing the '500 Patent against JPMC pursuant to the doctrine of laches." Thus, JPMorgan's only pre-dispositive motion disclosure of its defense was the one-sentence pleading in its Answer.

6. In addition to the interrogatory, Pi-Net also served several document requests that would have required JPMorgan to produce the documents that are relied upon in JPMorgan's motion, but which were not produced. For example, Exhibits DAC, DAE, DAF, DAG, DAH, DAI, DAM, DAN and DAO are documents that should have been produced, but were not, in response to Document Request No. 11 which requested:

3

> All technical articles, marketing and/or sales materials, brochures, and press releases concerning any of the Accused Instrumentalities.

(Exh. BH at 11).

7. Exhibit DBE was required to have been produced, but was not, in response to Pi-Net's Document Requests Nos. 17 and 18, which requested:

> 17. All documents concerning the cost to develop, use, and/or maintain the Bank Website. To the extent such metrics are pulled from an electronic database or otherwise available in spreadsheet or database format, they should be produced as .csv or .xls files (or the like) in electronic format.
>
> 18. All documents concerning the cost to develop, use, and/or maintain the Accused Instrumentalities. To the extent such metrics are pulled from an electronic database or otherwise available in spreadsheet or database format, they should be produced as .csv or .xls files (or the like) in electronic format.

(Exh. BH at 13-14).

8  All the above-cited documents should also have been produced, but were not, in response to Pi-Net's Document Request No. 26, which requested:

> All documents concerning the enforceability of any one or more claims of the Patents-in-Suit, including documents which may be relied upon in asserting arguments concerning the unenforceability of any one or more claims of the Patents-in-Suit at trial or in the course of any other proceeding.

(Exh. BH at 18).

## IV. ARGUMENT

### A. JPMorgan's Summary Judgment Motion Should be Stricken In Light of JPMorgan's Failure To Comply With Court Rules, the Scheduling Order and Discovery Obligations

#### 1. JPMorgan Withheld Information Required To Be Produced

Perhaps nothing is more troubling in litigation than to be faced with a dispositive motion based on facts and contentions that federal rules required to be disclosed but were never disclosed in discovery. In this case, JPMorgan has moved for summary judgment of

4

unenforceability of the '500 Patent.  Its brief contains 20 pages of contentions, and relies upon a declaration and multiple documents, including one document that is a compilation from JPMorgan's internal financial records.  Yet, JPMorgan had never disclosed its unenforceability contentions or the evidence relied upon prior to filing the summary judgment motion, despite this Court's Orders and the federal rules.

JPMorgan was obligated to identify Dr. Mann and produce the withheld documents as a matter of law, even without considering Pi-Net's document requests and interrogatory.  The governing rule is Fed.R.Civ.P. Rule 26(a)(1)(A) which states:

> (A) In General. … a party must, without awaiting a discovery request, provide to the other parties:
>
>   (i) the name … of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses….;
>
>   (ii) a copy … of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses …

Thus, Rule 26(a)(1)(A)(i) required JPMorgan to disclose the name of its declarant, Dr. Mann, because he clearly had discoverable information in support of JPMorgan's defenses, but JPMorgan never disclosed him.  Similarly, Rule 26(a)(1)(A)(ii) required JPMorgan to disclose the exhibits and  "electronically stored information" listed above, but which JPMorgan did not disclose until JPMorgan filed its present motion.

JPMorgan also violated the Court's Order in this case.  The Scheduling Order originally provided that fact discovery would terminate by July 12, 2013. (D.I. 17).  That period was later extended by stipulation to September 18, 2003. (D.I. 80).  Thereafter, the parties exchanged letters with the Court regarding future proceedings, and the Court Ordered that the parties resolve scheduling issues to comport with the dates for dispositive motions. (D.I. 90).  In

5

response to the Court's Order, the parties negotiated and jointly submitted a revised Scheduling Order, which was entered by the Court. (D.I. 95). The jointly-proposed Order required that fact discovery be completed by October 4, 2013, and provided for shortened periods for future activities to meet the Court's March 6, 2014 date for hearing of *Markman* issues and all dispositive motions. (D.I. 95)

Thus, JPMorgan was obligated to respond to Pi-Net's discovery in time for the parties to complete fact discovery by October 4, 2013. That included properly responding to Pi-Net's Interrogatory No. 4 and document requests, which JPMorgan represented it would answer. Thus, JPMorgan was required to answer Pi-Net's interrogatory requesting that JPMorgan "state in detail and with particularity each … allegation that any asserted claim of any patent-in-suit is … unenforceable, or which you may argue precludes any liability in this case." (Exhibit BG at pp. 8). JPMorgan answered that interrogatory, but did not provide any of the contentions upon which it now relies. Instead, JPMorgan responded by citing only its one-sentence pleading in its Answer:

> Subject to these objections and JPMC's General Objections, JPMC responds as follows: All such allegations that JPMC has formulated at this time are listed in Defendants' Initial Invalidity Contentions and JPMC's Answer (D.I. 11). However, JPMC reserves the right to amend its response as it formulates additional allegations.

(Exhibit BG at pp. 8-9). JPMorgan's answer meant that JPMorgan was not relying on any evidence or contentions, because JPMorgan did not mention or refer to laches in Defendants' Initial Invalidity Contentions, and "JPMC's Answer (D.I. 11)" stated with respect to laches only the following: "Plaintiff is barred from enforcing the '500 Patent against JPMC pursuant to the doctrine of laches."

JPMorgan's responses were obviously acceptable to Pi-Net, and thus Pi-Net had neither reason nor basis to pursue further discovery, because laches was an affirmative defense on which

6

JPMorgan had the burden of proof. If JPMorgan was not relying on any information or contentions, Pi-Net had no reason to question JPMorgan's decision or pursue further discovery. Thus, until JPMorgan filed its motion for summary judgment, JPMorgan had had not disclosed anything about its laches defense, had not produced any discovery relating to it, and its plain response was that JPMorgan was not relying on any evidence or contentions.

### 2. **JPMorgan's Information is Inadmissible as a Matter of Law**

Fed.R.Civ.P. Rule 37(c) provides that JPMorgan's withholding of information results in not allowing JPMorgan to present its information:

> Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Rule 37(c) is mandatory. JPMorgan did not identify the witness and did not provide the documents, and that information cannot be used "on a motion, at a hearing, or at a trial." JPMorgan has not even attempted to demonstrate that its refusal to comply with Rule 26 "was substantially justified or is harmless." Thus, the striking of the information is mandatory, and not discretionary.

### 3. **JPMorgan's Response to Interrogatory 4 Precludes Its Motion**

The parties negotiated a schedule to comply with the Court's Order that the parties arrange proceedings in this case so that all *Markman* and dispositive motions could be heard on March 6, 2014. As shown in the Pazuniak Declaration, Pi-Net had served Interrogatory 4 requesting that JPMorgan explain any unenforceability defense that JPMorgan would assert.

JPMorgan said that it would rely only on what it had pled, which was a single sentence in its pleading. "In every trial there comes a time when discovery must be closed for issues to be resolved through summary judgment and/or trial." *Stambler v. RSA Sec., Inc.*, 212 F.R.D. 470,

7

472 (D. Del. 2003).

This Court on several occasions has precluded parties from relying on evidence and related contentions that were not fairly disclosed during discovery. Thus, in *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, 2013 WL 3216109 (D. Del. 2013), Judge Robinson ruled in words that easily apply here in finding that Defendant's defense was untimely and highly prejudicial:

> At best, [JPMorgan] stood by silently as [Pi-Net] relied on [JPMorgan's discovery response]. At worst, [JPMorgan] purposefully disregarded the scheduling order and engaged in trial by ambush with its eleventh-hour defense. Either way, to allow [JPMorgan's] belated new … theory would substantially prejudice [Pi-Net]. Such prejudice would be almost impossible to cure at this stage of litigation …. Rule 26(e) "is designed to prevent a party from surprising his adversary by setting forth new facts ... not disclosed during the discovery process."

What is particularly noteworthy here is that even when JPMorgan produced long after close of discovery the documents now cited in the motion, JPMorgan did not say that these documents were related to laches, and did not update its interrogatory response. In *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283 (Fed. Cir. 2012), the Court found such supplementation to be ineffective and as if not produced at all, because "contention interrogatories serve an important purpose in enabling a party to discover facts related to its opponent's contentions," when the supplementing party failed to provide complete information, the "purported supplement … was in violation of Rule 26(e)." The Court also noted: "The boundaries of the district court's discretion are defined by unfair, prejudicial harm to a party deprived of an adequate opportunity to present its case" (quoting *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed.Cir.1986)). *Woods*, 692 F.3d at 1282.

   4. **Prejudice to Pi-Net**

JPMorgan's belated new contentions, designation of witnesses and production of documents, long after close of discovery and in conjunction with dispositive motions, is *per se*

8

prejudicial.  Judge Stark's analysis in *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 2012 WL 1015993 (D. Del. 2012) aff'd, 522 F. App'x 915 (Fed. Cir. 2013), is equally applicable here:

> the Court finds that the Defendants will likely suffer prejudice if St. Clair is allowed to supplement its expert reports because Defendants will have to spend additional time and money to refute St. Clair's new theories.  See *Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739, 745 (Fed.Cir.1997) ("When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense."); *Smithkline Beecham Corp. v. Ranbaxy Labs, Ltd.*, No. 03–2158(MLC) (D.N.J. Feb. 22, 2006) (concluding that "allowing additional expert reports on new opinions would unduly prejudice the parties and would disrupt the orderly and efficient trial of the case") ***
>
> … although the prejudice Defendants will suffer can be partially cured by allowing Defendants to file rebuttal expert reports and, if warranted, new motions for summary judgment, the Court finds that the prejudice Defendants face cannot be wholly cured. …
>
> Fifth, St. Clair fails to present a valid explanation for its failure to disclose its infringement contentions and supporting expert reports in accordance with the deadline set by the Scheduling Orders.

Here, the Court ordered and the parties negotiated a schedule to push this case to *Markman*/dispositive motion hearing on March 6, 2014 and a trial scheduled to start on June 2, 2014.  A Defendant cannot throw a monkey-wrench into the schedule by filing a motion five-weeks before the *Markman*/dispositive motion hearing that relies entirely on theories and evidence that had never been disclosed in discovery, and where the federal rules were manifestly ignored.  See also *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("When scheduling orders are violate, an opposing party is often prejudiced by the ensuing delay and resultant expense.").

Were JPMorgan permitted to rely on these last-minute contentions and evidence, Pi-Net would have to begin a new set of discovery, particularly given JPMorgan's newly-laid contention that the burden of evidence had shifted to Pi-Net to disprove prejudice.  Because JPMorgan

9

contends that JPMorgan has produced sufficient evidence to require the shifting of the burden of proof to Pi-Net, Pi-Net would be forced to effectively challenge JPMorgan's contentions and prepare its own affirmative case.  The resulting new discovery would likely delay the resolution of this case to the Court's and Pi-Net's prejudice.

### 5. **JPMorgan's Laches Summary Judgment Motion Should be Denied and Stricken**

A Defendant should not be rewarded with a postponement of dispositive hearings and/or trial by failing to comply with Court Rules and Orders.  Any prejudice to JPMorgan is of its own making and does not outweigh the prejudice to the Court and Pi-Net.  This Court has not been shy to preclude parties from benefiting from ignoring Court Rules and Orders, and should not be reluctant here.  JPMorgan is a highly sophisticated and experience litigant, as are its counsel.  JPMorgan has not attempted to excuse its failure to provide discovery of its contentions or to provide the evidence, and it cannot.  Thus, if the choice is whether the wrongdoer or the victim should be prejudiced, it should be the wrongdoer.  Thus, in *Stambler v. RSA Sec., Inc*., 212 F.R.D. 470, 472 (D. Del. 2003), the Court explained:

> Defendants have attempted to cure the prejudice by offering to allow plaintiff to depose the witnesses.  This solution creates more problems than it solves.  These witnesses are located throughout the United States. … The prejudice will only be increased if plaintiff is forced to depose these fact witness less than six weeks before trial.
>
> Furthermore, allowing these witnesses to testify will disrupt the orderly and efficient resolution of this case.  Two of these witnesses were identified in response to, or support of, summary judgment motions.  Discovery has been closed for over four months.  Presently, the court must address the seven pending summary judgment motions.
>
> Allowing defendants to support their summary judgment positions with previously unidentified fact witnesses is clearly prejudicial to plaintiff.  Defendants offer to allow depositions of these witness to cure this prejudice.  However, re-opening the fact record through depositions at this late stage would impede the court's ability to manage its docket. First the fact record would be re-opened, and then the summary judgment briefs would need to be supplemented to account for the revised record. This is impractical (not to

>mention disorderly and inefficient) at this late stage. In every trial there comes a time when discovery must be closed for the issues to be resolved through summary judgment and/or trial. In the case at bar, that time has long since passed.

See also *Philips Electronics N. Am. Corp. v. Contec Corp.*, 2004 WL 769371 (D. Del. 2004):

>Philips' motion to exclude untimely produced evidence … is hereby GRANTED.  Following the … discovery cutoff in this case, a cutoff that was twice extended, CMT came forward with additional documents which it has failed to persuade me could not have been produced during the extended discovery period.  …. Remarkably, CMT asserts that it should be able to rely on those documents now because Philips didn't seek to compel the extension of the deposition before.  That approach, of course, would put the onus for late production on the wronged party and ignores the import of Federal Rule of Civil Procedure 37(c)(1), which provides that "[a] party that without justification fails to disclose information required [by the rules of discovery] is not, unless such failure is harmless, permitted to use as evidence at trial ... information not so disclosed."
>
>That provision was added to the Rules to serve as an "automatic sanction" intended to provide "a strong inducement for disclosure of material that the disclosing party would expect to use as evidence[.]" Advisory Committee Note to 1993 Amendments to Fed.R.Civ.P. 37. … What I have heard is the claim that delivering documents after the close of discovery, including the close of expert discovery, should be permitted because "CMT has consistently made its best efforts to comply with its discovery obligations." (Id. at 4.) … [A]n "A" for effort does not excuse CMT's failure to abide by its disclosure obligations. "In every trial there comes a time when discovery must be closed for issues to be resolved through summary judgment and/or trial."  Since CMT has not shown that its failure to properly and timely produce the evidence in question is harmless, the evidence will not be permitted at trial.

(internal citations omitted).

### B. If JPMorgan's Motion is Not Stricken, Pi-Net is Entitled to Discovery Before the Court Considers the Motion

JPMorgan's motion should be stricken for the reasons outline above.  If not stricken, and if the Court intends to entertain the motion, then Pi-Net respectfully requests that the Court postpone consideration of the motion pursuant to Fed.R.Civ.P. Rule 56(d) so that Pi-Net can conduct the discovery that is necessary to address the entirely new contentions and evidence that

11

JPMorgan submitted in support of its motion. Counsel for Plaintiff has filed a declaration pursuant to Rule 56(d) attesting that Pi-Net cannot present facts essential to justify its opposition to JPMorgan's laches motion without further discovery. See Pazuniak Declaration filed concurrently herewith.

## V. CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that JPMC's motion for summary judgment be stricken, and that JPMorgan be precluded from relying at trial on the contentions and evidence submitted with the motion. If not stricken, and if the Court intends to entertain JPMorgan's laches motion, then Pi-Net respectfully requests that the Court postpone consideration of the motion pursuant to Fed.R.Civ.P. Rule 56(d) so that Pi-Net can conduct the discovery that is necessary to address the entirely new contentions and evidence that JPMorgan submitted in support of its motion.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff Pi-Net Int'l, Inc.*