# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF Delaware

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-282-RGA |
| ) | |
| JPMORGAN CHASE & CO., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## MOTION TO EXCLUDE THE EXPERT
## TESTIMONY OF DEFENDANT'S RETAINED EXPERT, DR. MICHAEL SIEGEL

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff
Pi-Net International, Inc.*

February 26, 2014

## Table of Contents

I. NATURE AND STAGE OF THE PROCEEDING ......................................................... - 1 -

II. ARGUMENT .................................................................................................................. - 1 -

    A. Dr. Siegel Cannot Testify That Certain References Anticipate the Inventions ........... - 1 -
        1. Dr. Siegel Cannot Testify Contrary to Basic Underlying Law ................................ - 1 -
        2. The Three References Cannot Anticipate as a Matter of Law .................................. - 2 -

    B. Dr. Siegel's Undisclosed and Unsupported Obviousness Contentions ........................ - 4 -
        1. "Obviousness" Disclosure of Dr. Siegel's Expert Reports ...................................... - 4 -
        2. Dr. Siegel Should Be Precluded From Arguing Obviousness Based On Scholl ..... - 5 -

    C. Dr. Siegel Should Be Precluded From Arguing Facts Without Foundation ................ - 6 -
        **1.** Alleged Copying Of The Patent Specification From The Prior Art ......................... - 7 -
        **2.** Opinions About the Breadth Pi-Net Claim Constructions ........................................ - 8 -
        3. Licensing of Lawlor ................................................................................................... - 8 -

III. CONCLUSION ............................................................................................................... - 9 -

## TABLE OF AUTHORITIES

**CASES**

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013) .................................................................................... - 4 -

*Comaper Corp. v. Antec, Inc.*,
  539 F. App'x 1000 (Fed. Cir. 2013) ............................................................................. - 3 -

*Daubert v. Merrill Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ...................................................................................................... - 1 -

*In re Ruskin*,
  347 F.2d 843 (C.C.P.A. 1965) ...................................................................................... - 2 -

*In re TMI Litigation*,
  193 F.3d 613 (3d Cir. 1999) .......................................................................................... - 7 -

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed.Cir.2008) ...................................................................................... - 4 -

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011) ...................................................................................... - 2 -

*Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*,
  678 F.3d 1280 (Fed. Cir. 2012) <u>cert. denied</u>, 133 S. Ct. 940 (2013) ....................... - 4 -

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997) ...................................................................................................... - 3 -

*Richardson v. Suzuki Motor Co., Ltd.*,
  868 F.2d 1226 (Fed. Cir. 1989) ........................................................................... - 2 -, - 4 -

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
  295 F.3d 1292 (Fed. Cir. 2002) .................................................................................... - 4 -

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  2013 WL 1702159 (D. Del. 2013) ............................................................................... - 7 -

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  145 F. Supp. 2d 1168 (N.D. Cal. 2001) ...................................................................... - 3 -

**RULES**

Federal Rule of Evidence 702 ............................................................................. - 1 -, - 6 -, - 7 -
Federal Rule of Evidence Rule 402 ............................................................................... - 7 -

## I. NATURE AND STAGE OF THE PROCEEDING

Plaintiff Pi-Net International, Inc. ("Pi-Net") moved to exclude portions of the testimony of Dr. Michael Siegel, a proposed invalidity expert for Defendant JPMorgan Chase & Co. ("JPMC") (Exh. AH), for failure to comply with the requirements of Fed.R.Civ.P. Rule 26(a)(1)(A), Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). (D.I. 117, 118). JPMC has filed an answering brief (D.I. 127), and this is Pi-Net's reply brief in support of its motion.

## II. ARGUMENT

### A. Dr. Siegel Cannot Testify That Certain References Anticipate the Inventions

#### 1. Dr. Siegel Cannot Testify Contrary to Basic Underlying Law

Pi-Net moved to preclude Dr. Siegel's proposed testimony that three prior art patents, Escallon (Exh. DBH), Choquier (Exh. DBI) and Lawlor (Exh. DBJ), anticipate Pi-Net's patent claims, because the three cited references do not disclose any Web system as required by the Pi-Net patent claims. (D.I. 118 at 2-7). JPMC's response mischaracterizes Pi-Net's argument as mere disagreement between experts. (D.I. 127 at 1). In fact, Dr. Siegel's proposed testimony on anticipation is not reliable, because he tramples basic law – accepted by JPMC – that to invalidate patent claims for anticipation requires that the challenger demonstrate by clear and convincing evidence that a single prior art references discloses all the elements of a claim exactly as stated in the claim. Here, Dr. Siegel proposes to testify that the three references anticipate, even though he and JPMC concede that the references do not mention the Web or Web systems. Expert testimony that a prior art reference is anticipatory, when the reference does not disclose a claimed element, is not permitted by *Daubert* or Rule 702, because such testimony is <u>not</u> "the product of reliable principles and methods," and the expert has <u>not</u> "reliably applied the

principles and methods to the facts of the case." (Rule 702)

### 2. The Three References Cannot Anticipate as a Matter of Law

JPMC's arguments only confirm that the three challenged references do not actually disclose the Web or a Web system, and, thus, cannot anticipate. Thus, as to Escallon (Exh. DBH), JPMC argues that "Dr. Siegel provided a clear, technical rationale for his opinion that the "pages" of the "electronic book" described in Escallon were <u>technically equivalent to the 'Web page'</u> in the asserted claims." (D.I. 127 at 8). This argument by JPMC only confirms that the law prohibits Dr. Siegel from testifying that Escallon anticipates, because the Federal Circuit has repeatedly instructed that anticipation may not be shown by equivalents. See, for example, *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1236-37 (Fed. Cir. 1989)

> The jury had erroneously been instructed that anticipation may be shown by equivalents, a legal theory that is pertinent to obviousness under Section 103, not to anticipation under Section 102.

See also *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544-45 (Fed. Cir. 2011) ("Regardless of whether the VT–2 and the commercial embodiment of the '950 patent did '[e]xactly the same thing,' there could be no anticipation…"); *In re Ruskin*, 347 F.2d 843, 846 (C.C.P.A. 1965) ("the functional equivalent is not enough to be a full anticipation of the specific device claimed").

Given JPMC's admission that Escallon (Exh. DBH) does not disclose the Web or a Web system, but discloses only what Dr. Siegel deems to be an "equivalent," the law prohibits Dr. Siegel from testifying that Escallon anticipates Pi-Net patent claims.

JPMC then argues that the Lawlor (Exh. DBJ) disclosed a "digital packet network." (D.I. 127 at 9). This argument by JPMC only confirms that the law prohibits Dr. Siegel from testifying that Lawlor anticipates, because Dr. Siegel never suggested, and there is no support for the argument, that the Web and a "digital packet network" are synonymous. Almost any

computer network, including any local area network, ISDN line and cellular network, is a "digital packet network," but not all computer networks are on the Web. JPMC confirms that Lawlor (Exh. DBJ) discloses only a "digital packet network" and not a Web system. Thus, the law prohibits Dr. Siegel from testifying that Lawlor anticipates Pi-Net patent claims.

JPMC next says that Escallon and Choquier refer to the "Internet" and "the Transport Control Protocol/Internet Protocol," and then argues *non sequitur* that:

> It is Dr. Siegel's opinion that the Internet is not technologically distinct from certain other computer networks. Specifically, Dr. Siegel has opined that the Internet is simply the name for one particular network, but it is not technologically or patentably distinct from certain predecessor networks.

(D.I. 127 at 9). Even if JPMC's and Dr. Siegel's interpretations and arguments are correct, none of the references refer to a World Wide Web system. Therefore, JPMC's point is unclear. Neither "Internet" nor "TCP/IP" is synonymous with, or the same as, the term "Web."[1] JPMC's reference to "patentably indistinct" is meaningless, because that is not a term used in the law in determining whether prior art references anticipate. Dr. Siegel is required to follow the law, not invent new legal concepts as he goes along. A prior art reference anticipates – or to use JPMC's "not patentably distinct" language – only where "there is clear and convincing evidence that the prior art device 'disclosed, either expressly or inherently, all the structural limitations contained in the asserted apparatus claims.'" *Comaper Corp. v. Antec, Inc.*, 539 F. App'x 1000, 1001 (Fed. Cir. 2013). See also *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341,

---

[1] *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 849-53 (1997) (stating that the "Internet is an international network of interconnected computers," while the Web is a "category of communication over the Internet …, which allows users to search for and retrieve information stored in remote computers, as well as, in some cases, to communicate back to designated sites. In concrete terms, the Web consists of a vast number of documents stored in different computers all over the world."); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 145 F. Supp. 2d 1168, 1171 (N.D. Cal. 2001) ("The 'Internet' and 'World Wide Web' are distinct entities… Generally, the Internet is a decentralized networking system which links computers and computer networks around the world. The World Wide Web is a publishing forum consisting of millions of individual web sites which contain various forms of content ….").

1351 (Fed. Cir. 2013) ("Anticipation requires clear and convincing proof that a single prior art reference 'not only disclose[s] all of the elements of the claim within the four corners of the document, but ... also disclose[s] those elements arranged as in the claim.'") (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed.Cir.2008)). Further, as a matter of precaution, it is also noted that the prior art references cannot anticipate as allegedly inherently disclosing the Pi-Net patent claims, because "Inherent anticipation requires that the missing descriptive material is "necessarily present," not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002)[2]

JPMC argues that "Pi-Net never suggests that Dr. Siegel's credentials are flawed, and it never attacks his methodology." (D.I. 127 at 8). That is incorrect. A "methodology" that contradicts underlying legal principles is not reliable. Dr. Siegel must be precluded from testifying that the three references anticipate, because a finding of anticipation is legally foreclosed because each of the three references fails to disclose the Web or a Web system.

### B. Dr. Siegel's Undisclosed and Unsupported Obviousness Contentions

#### 1. "Obviousness" Disclosure of Dr. Siegel's Expert Reports

JPMC accuses Pi-Net of "falsely assert[ing] that certain of Dr. Siegel's opinions amount to "generalized obviousness" based on "undisclosed combinations" of prior art," but then cites to the very generalized combinations of multiple references about which Pi-Net complained. (D.I. 127 at 9-10). JPMC also confirms that Dr. Siegel's only obviousness contentions only involve

---

[2] "Patentably distinct" is a phrase usually found in determining whether claims are invalid for double patenting of the obviousness type, which is irrelevant to anything here. See, e.g., *Richardson*, supra; *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1297 (Fed. Cir. 2012) cert. denied, 133 S. Ct. 940 (2013) ("Unless the earlier claim anticipates the later claim under § 102, the question whether the two claimed compounds are 'patentably distinct' implicates the question of obviousness under § 103, 'which in the chemical context requires identifying some reason that would have led a chemist to modify the earlier compound to make the later compound with a reasonable expectation of success.") ("internal citations omitted)

combinations of his primary references: "Rogers, Escallon, Choquier, Lawlor, Chelliah, Goradia, Gifford, Payne, and Scholl," and not the other references he cites in his report. (D.I. 127 at 10).

Even if Dr. Siegel's obviousness contentions are limited solely and only to mixing-and-matching the nine separate references, as JPMC represents, Dr. Siegel's obviousness contentions are still generalized, because here is no specificity of any potential combinations of the nine references.

### 2. Dr. Siegel Should Be Precluded From Arguing Obviousness Based On Scholl

In addition to the above obviousness assertion of combining the nine primary references in undisclosed combinations, Pi-Net also challenged Dr. Siegel's proposed testimony that the Pi-Net patent claims are obvious in view of Scholl and any number of other references including not only the other primary references, but also including other references. (D.I. 127 at 10). Specifically, Dr. Siegel asserted that:

> I further expect to testify that Claims 1-6 and 11 of the '158 Patent, and Claims 3, 10, and 11 of the '492 Patent would have been anticipated and/or rendered obvious to one of ordinary skill in the art at the time of the alleged invention, by U.S. Patent 5,742,762 to Scholl in view of any of the above references or *(1)* Home Banking: Open Market Signs 1st Union for Home Banking; The American Banker (March 21, 1995); *(2)* NetBill: An Internet Commerce System Optimized for Network-Delivered Systems, by Marvin Sirbu; *(3)* CommerceNet: Spontaneous Electronic Commerce on the Internet, by Jay M. Tenenbaum; *(4)* Electronic Commerce on the Internet, by Robert Neches, et al.; or *(5)* Stanford Federal Credit Union Pioneers Online Financial Services, Business Wire (June 21, 1995).

(Exh. AH ¶20, A-1712; Exh. AI, ¶ 9, A-2072-73).

JPMC's response is that Dr. Siegel did provide additional explanations of the Scholl combinations with other references, and points to Dr. Siegel's expert report at "Ex. AH at Ex. D at ¶¶ 4, 5, 18, 27." (D.I. 127 at 14) That citation, however, does not match anything in the

record.³ Thus, Dr. Siegel expert report is simply that he proposes to testify the Pi-Net patent claims are obvious in view of Scholl in combination with about 13 other references, without providing any detail or support for his proposed testimony. Moreover, while Dr. Siegel has at least charted the eight primary references to the Pi-Net patent claims, Dr. Siegel has not charted any of the five additional references to the Pi-Net claims. JPMC has not cited any authority by which an expert can testify as to opinions that manifestly fail the requirements of Fed.R.Civ.P. Rule 26(a)(2)(B), which mandates that all experts provide:

> (i) a complete statement of all opinions the witness will express <u>and the basis and reasons for them</u>; [and]
>
> (ii) the facts or data considered by the witness in forming them….

(Emphasis supplied). Moreover, Rule 702 prohibits Dr. Siegel's testimony unless JPMC demonstrates that:

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 is not met when an expert says that various patent claims are obvious in view of the combination of a primary reference plus any combination of 13 other references.

### C. Dr. Siegel Should Be Precluded From Arguing Facts Without Foundation

Pi-Net objected to Dr. Siegel's proposed testimony that begins with "I am informed" and which is followed by prejudicial irrelevancies. (D.I. 118 at 15-16). JPMC's response only confirms that the proposed testimony must be precluded.

JPMC proposes that this case differs from *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL

---

³ "Exhibit D" to Dr. Siegel's report is a collection of his "anticipation" claim charts for all nine primary references, and Exhibit D does not use a "¶" format. (A-1774-2068). Exhibit D includes a section addressing Scholl. (A-1909-48). However, that section does not say anything about any combinations for obviousness (except for those assertions that Pi-Net excluded from its motion).

1702159 (D. Del. 2013), because that case involved "guesswork," while "Dr. Siegel's opinions … are directly grounded in documents that are both publicly available and of record in this case." That misstates the standard. Dr. Siegel can only testify as to "reliable opinion based on … scientific, technical, or specialized knowledge, as required by Rule 702." *XpertUniverse, supra.* As in *XpertUniverse,* Dr. Siegel "has not provided any reliable basis for drawing this inference based on his expertise," and his testimony must be stricken.

### 1. **Alleged Copying Of The Patent Specification From The Prior Art**.

JPMC's argument on this point betrays JPMC's arrant misuse of the proposed testimony. Pi-Net moved to preclude Dr. Siegel's proposed testimony that the phrase "virtual information store" in the Pi-Net specifications was copied from a prior art reference. (D.I. 118 at 15-16) The term does not appear in any of the asserted claims. Pi-Net pointed out the issue was prejudicially irrelevant, and, in any event, Dr. Siegel did not possess any particular expertise that would be helpful to the jury.

JPMC's response is to argue that the statement is true. (D.I. 127 at 15-16). Nevertheless, even if it is true that the inventor "copied" the term "virtual information store" from RFC 1156, as JPMC argues, JPMC cannot justify the relevance of the topic at all, much that Dr. Siegel is entitled to testify on the issue. Federal Rule of Evidence Rule 402 states unequivocally that "Irrelevant evidence is not admissible." Further, JPMC itself has argued that "The proponent of expert testimony has the burden of establishing the reliability of his or her testimony." (D.I. 110 at 8).[4] JPMC has not explained the relevance of the proposed testimony and has not supported

---

[4] JPMC cited the following support: "See Fed. R. Evid. 702 advisory committee's notes (2000 Amendments) (a proponent of expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence"); see also *In re TMI Litigation*, 193 F.3d 613, 705 (3d Cir. 1999) ("[I]t is the burden of the party offering the expert scientific testimony to demonstrate reliability by a preponderance of the evidence")." *Id.*

Dr. Siegel's expertise to testify on the matter. Even if "the record is replete with evidence demonstrating that Dr. Arunachalam copied the concept of a 'virtual information store' from prior art references, RFC 1156 and RFC 1213," Dr. Siegel has no "scientific, technical, or specialized knowledge" on the basis of which he is qualified to say anything about the subject.

### 2. Opinions About the Breadth Pi-Net Claim Constructions

Pi-Net moved to preclude Dr. Siegel's proposed testimony that "I am informed that the constructions that Pi-Net has proposed in this case are substantially broader than those employed by the PTO during prosecution" (D.I. 118 at 15-16). The issue was prejudicially irrelevant, and, in any event, Dr. Siegel does not possess any particular expertise that would be helpful to the jury. Pi-Net moved that "Dr. Siegel should not be allowed to assert facts for which he has no foundation, or to assert opinions expressed to him by others." *Id*.

JPMC's response does not address Pi-Net's objection or explain the relevance of Dr. Siegel testifying to the jury about the alleged breadth of Pi-Net claim constructions – a matter that is handled by the Court and not a jury. Instead, JPMC argues that

> While the ultimate breadth of the claims is a matter of dispute, Pi-Net proffers no basis to exclude Dr. Siegel's characterizations of the breadth of the asserted claims."

(D.I. 127 at 16). JPMC's response is legally bankrupt. As noted before, FRE Rule 402 states unequivocally that "Irrelevant evidence is not admissible," and JPMC concedes that "The proponent of expert testimony has the burden of establishing the reliability of his or her testimony." (D.I. 110 at 8). Therefore, JPMC must establish that the proposed expert testimony is relevant and that Dr. Siegel is qualified to give it. JPMC has not even attempted to shoulder either burden.

### 3. Licensing of Lawlor

JPMC thinks it "bizarre" that Pi-Net would question Dr. Siegel's proposed testimony that

- 8 -

that Lawlor patent prior art "was implemented in the 'real-time EFT network-based payments' system of its assignee, Online Resources & Communications Corporation, and certain Citibank systems." (D.I. 127 at 16).

Yet, to support the opinion, Dr. Siegel refers only to some generalized hearsay public relations materials. None of the references cited by Dr. Siegel or by JPMC in its brief provide any comparison of the Lawlor patent to any commercial implementation. There is also no license in the record. Generalized PR materials, without more, are not sufficiently reliable for any expert to testify as their content as if they were fact. Allowing experts to "cherry-pick" public relations materials and testify as to them as if they were facts presents exactly the problem of prejudice under Rule 403 that *XpertUniverse, supra,* was intended to extinguish.

### III. CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that its Motion to strike the specified improper testimony of Dr. Siegel be granted.

Respectfully Submitted,

February 26, 2014
/s/ George Pazuniak
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff Pi-Net Int'l, Inc.*