## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF Delaware

| | |
|---|---|
| **PI-NET INTERNATIONAL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **C.A. No. 12-282-RGA** |
| ) | |
| **JPMORGAN CHASE & CO.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## MOTION TO EXCLUDE THE EXPERT
## TESTIMONY OF DEFENDANT'S RETAINED EXPERT, DAWN HALL

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff*
*Pi-Net International, Inc.*

February 26, 2014

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING................................................................. 1

II.     ARGUMENT ....................................................................................................................... 1

    A.      JPMC Cannot Present Evidence of Acceptable, Non-Infringing Alternatives ................ 1

    B.      "Non-Object" Alternatives Must Be Excluded ................................................................ 9

    C.      Ms. Hall May Not Testify About Pi-Net's Settlement Agreements ................................ 9

    D.      Ms. Hall May Not Testify Regarding JPMorgan's Licensing Policies......................... 10

III.    CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Am. Seating Co. v. USSC Grp., Inc.*,

    514 F.3d 1262 (Fed. Cir. 2008)..................................................................... 3

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,

    2013 WL 5958178 (N.D. Cal. 2013) ............................................................. 3

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,

    658 F. Supp. 2d 630 (M.D. Pa. 2009) .......................................................... 8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,

    2012 WL 3686736 (W.D. Pa. 2012) ............................................................ 8

*Cordis Corp. v. Boston Scientific Corp.*,

    2005 WL 1322953 (D. Del.  2005) ............................................................... 4

*Daubert v. Merrill Dow Pharm., Inc.*,

    509 U.S. 579 (1993)..................................................................................... 1

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,

    567 F.3d 1314 (Fed. Cir. 2009)..................................................................... 5

*Fiskars, Inc. v. Hunt Mfg. Co.*,

    279 F.3d 1378 (Fed. Cir. 2002)..................................................................... 4

*Fresenius Med. Card Holdings, Inc. v. Baxter Int'l, Inc.*,

    2006 WL 1390416 (N.D. Cal. 2006) ............................................................ 9

*Fromson v. Western Litho Plate & Supply Co.*,

    853 F.2d 1568 (Fed.Cir.1988)...................................................................... 7

*Grain Processing Corp. v. Am. Maize–Prods. Co.*,

   185 F.3d 1341 (Fed.Cir.1999)............................................................. 3, 4, 5

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC.*,

   2013 WL 6036029 (M.D. Pa. 2013) (D.I. 128 at 10, 11) ....................... 9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,

   694 F.3d 51 (Fed. Cir. 2012)............................................................. 4, 9, 10

*Lucent Technologies, Inc. v. Gateway, Inc.*,

   580 F.3d 1301 (Fed. Cir. 2009).............................................................. 7

*Micro Chem. Inc. v. Lextron, Inc.*,

   318 F.3d 1119 (Fed.Cir.2003).............................................................. 4

*Nurserygoods Co. v. Thorley Indus., LLC*,

   2013 WL 6328772 (W.D. Pa. 2013) ..................................................... 8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,

   702 F.3d 1351 (Fed.Cir.2012)............................................................... 3

*ResQNet.com, Inc. v. Lansa, Inc.*,

   594 F.3d 860 (Fed. Cir. 2010)............................................................ 9, 10

*Riles v. Shell Exploration & Prod. Co.*,

   298 F.3d 1302 (Fed.Cir.2002).............................................................. 4, 7

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,

   289 U.S. 689 (1933)........................................................................... 7

*SSL Servs., LLC v. Citrix Sys., Inc.*,

   2012 WL 1995514 (E.D. Tex. 2012) .................................................... 9

*St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*,

  935 F. Supp. 2d 779 (D. Del. 2013)............................................................................. 8

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,

  953 F.2d 1360 (Fed.Cir.1991).................................................................................... 3

*TASER Int'l, Inc. v. Karbon Arms, LLC*,

  2013 WL 6773663 (D. Del. 2013)............................................................................. 5

*TWM Mfg. Co., Inc. v. Dura Corp.*,

  789 F.2d 895 (Fed.Cir.1986)..................................................................................... 3

## RULES

Fed.R.Civ.P. Rule 26(a)(1)(A).................................................................................. 1, 2

Fed.R.Civ.P. Rule 26(a)(2) .................................................................................... passim

Fed.R.Civ.P. Rule 37(c)............................................................................................ 2, 5

Federal Rule of Evidence 602...................................................................................... 2

Federal Rule of Evidence 701...................................................................................... 4

Federal Rule of Evidence 702.................................................................................. passim

Federal Rule of Evidence 703................................................................................... 7, 10

## I.   NATURE AND STAGE OF THE PROCEEDING

Plaintiff Pi-Net International, Inc. ("Pi-Net") moved to exclude the testimony of Dawn Hall, a proposed damages expert for Defendant JPMorgan Chase & Co. ("JPMC") (Exhibit AM [A-2253-2315]), for failure to comply with the requirements of Fed.R.Civ.P. Rule 26(a)(1)(A), Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). (D.I. 119, 120).  JPMC has filed an answering brief (D.I. 128), and this is Pi-Net's reply brief in support of its motion.

## II.   ARGUMENT

### A.  JPMC Cannot Present Evidence of Acceptable, Non-Infringing Alternatives

JPMC has not carried its burden of proving that Ms. Hall should be allowed to present evidence of acceptable non-infringing alternatives.  Presentation of such expert evidence requires adequate support in the record, and compliance with the substantive law, the Federal Rules of Civil Procedure and the Rules of Evidence.  Here, JPMC is missing every step or point in the process, and any of the following is sufficient to preclude Ms. Hall's proposed testimony:

1.  JPMC Cannot Prove any "Chase CGI Systems:  JPMC's argument initially rests on the fiction that JPMC's predecessors had utilized a "CGI" system. (D.I. 128 at 3, 7, 10, 15-18). The entire support for this conclusion is contained in a single introductory phrase in Ms. Hall's report that reads: "Not only had Chase (Bank One) used CGI to implement its online banking systems as of approximately 2000-2001…."  (Exh. AN at 30, A-2285).  Ms. Hall's only support for the statement is "Discussions with Rick Romanelli 11/20/2013."  (*id*. at fn. 111, A-2285).  This single introductory phrase and citation to a private conversation is the entire foundation of JPMC's "acceptable non-infringing alternative" argument.  (D.I. 128 at 3, 7, 10, 15-18).

The "acceptable non-infringing alternative" argument, however, cannot get past this first

hurdle, because there is no record of any such system, and none can be presented at trial as a matter of law.  First, neither JPMC nor Ms. Hall can rely on what Mr. Romanelli said, because he was not associated with JPMC or any JPMC predecessor in the relevant timeframe, has not laid any foundation to testify, and, therefore, cannot testify as to the alleged fact.  He did not join JPMC until after the alleged events. (Exh. BC at 15-16).  Therefore, Federal Rule of Evidence 602 precludes his testimony ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")  Second, if Mr. Romanelli had personal knowledge, Rule 26(a)(1)(A) required JPMC to have identified Mr. Romanelli and disclosed all documents relevant to that defense.  Yet, JPMC never listed Mr. Romanelli as a person having knowledge about Chase or Bank One allegedly using any CGI-specification system at any time.  (Exh. BI at ¶ 3; Exh. BJ)  Also, JPMC had never disclosed any alleged Chase CGI-specification online banking system, and had never disclosed or even mentioned non-infringing alternatives prior to the service of answering expert reports, and had never produced any documents suggesting or mentioning any CGI use at Chase or Bank One. (Exh. BI at ¶ 4).

Therefore, Fed.R.Civ.P. Rule 37(c) preclude JPMC from springing Mr. Romanelli's alleged knowledge in the course of pre-trial briefings.[1]

2.     "CGI" is Not an Identifiable Replacement for the Accused Instrumentalities:

JPMC proceeds as if "CGI" constitutes an identifiable non-infringing system.  Yet, JPMC's own expert, Dr. Siegel, explained that "CGI" is "a specification for an interface," and not a

---

[1] JPMC argues that Pi-Net "chose not to question Mr. Romanelli about [Chases use of CGI in 2000-01] … [as]  a strategic choice." (D.I. 128 at 16).  JPMC does not explain, however, how Pi-Net would have known to ask him the questions, given JPMC withholding of information that Mr. Romanelli had such knowledge.

2

specifically-defined body of programs or other technology.  (Exh. AQ at 121-23; A-2598).  A specification is not a blueprint or schematic, and is not an identifiable system *per se,* and the label does not identify a substitute for each of the Accused Instrumentalities.

3.      Alternative Must Be "Acceptable":  A non-infringing alternative must be "acceptable" to be considered in a damages analysis.  JPMC has not identified any specific alternative system, and thus JPMC cannot show that such unidentified systems would meet the acceptability requirements of an online banking system corresponding to JPMC's systems.  To demonstrate acceptability, JPMC would have to show that each proposed alternative has the features and advantages of each of the respective infringing Accused Instrumentalities.[2]  The "[m]ere existence of a competing device does not make that device an acceptable substitute."[3]  A "non-infringing replacement product is not considered a substitute unless it is 'acceptable to all purchasers of the infringing product.'  In other words, buyers must view the substitute as equivalent to the patented device."[4]

4.      Alternative Must Be "Available":  JPMC also does not dispute that a non-infringing alternative must be "available," before it can be considered in a damages analysis.  To be available, an alternative must be "on the market" or at least be "readily" available at the time

---

[2] *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 702 F.3d 1351, 1361 (Fed.Cir.2012) ("products lacking the advantages of the patented invention can hardly be termed a substitute acceptable to the customer who wants those advantages"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1373 (Fed.Cir.1991); *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 2013 WL 5958178 (N.D. Cal. 2013).

[3] *TWM Mfg. Co., Inc. v. Dura Corp.,* 789 F.2d 895, 901 (Fed.Cir.1986).

[4] *Am. Seating Co. v. USSC Grp., Inc.,* 514 F.3d 1262, 1270 (Fed. Cir. 2008) (quoting *Grain Processing Corp. v. Am. Maize–Prods. Co.,* 185 F.3d 1341, 1347 (Fed.Cir.1999))

of infringement."[5]  "[S]ubstitutes only theoretically possible," rather than actually available, will not limit lost profits.[6]  "The ability to make a noninfringing alternative alone is not enough to render such a substitute 'available' …."[7]   Availability can be shown, for example, upon the Defendant's showing of "specific facts … it had 'the necessary equipment, know-how, and experience' during the period of infringement to implement the non-infringing process." *Fiskars, Inc. v. Hunt Mfg. Co*., 279 F.3d 1378, 1382 (Fed. Cir. 2002).

     5.    <u>Only Expert Evidence Can Support Availability of Acceptable Non-Infringing</u> <u>Alternatives</u>:  JPMC continues to ignore Federal Rule of Evidence 701, which plainly excludes non-expert witnesses from offering testimony which is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Any such evidence must be presented by an expert witness, who is qualified as provided in FRE Rule 702, and who has been properly disclosed as provided in Fed.R.Civ.P. Rule 26(a)(2).  Thus, to justify that a system is "non-infringing," JPMC must compare the properly-construed claims with the proposed non-infringing system, which, in a case such as here, requires expert testimony.  Further, only an expert can opine that a particular system had the features and advantages desired by the bank and its customers to make it "acceptable," because that constitutes an opinion based on specialized knowledge.[8]  Similarly, expert testimony would have been required to support a contention that

---

[5] *Grain Processing Corp. v. Am. Maize–Prods. Co*., 185 F.3d 1341, 1349, 1354 (Fed.Cir.1999).

[6] *Id.* at 1353.

[7] *Cordis Corp. v. Boston Scientific Corp*., 2005 WL 1322953 (D. Del.  2005) (quoting *Micro Chem. Inc. v. Lextron, Inc*., 318 F.3d 1119, 1123 (Fed.Cir.2003)).

[8] *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 67 (Fed. Cir. 2012) ("A damages theory must be based on 'sound economic and factual predicates.'") (quoting *Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302, 1311 (Fed.Cir.2002)).  Thus, in *Fiskars, Inc. v. Hunt Mfg. Co*., 279 F.3d 1378, 1382 (Fed. Cir. 2002), the Court rejected Defendant's proposed

an alternative would be available to JPMC.[9]

The need for expert testimony is inescapable as the Court stated in *TASER Int'l, Inc. v. Karbon Arms, LLC*, 2013 WL 6773663 (D. Del. 2013).  JPMC attempts to limit *TASER* to a case where a "$.05 royalty was 'pulled . . . out of the sky.'" (D.I. 128 at 17).  But the Court stated "Expert testimony would be needed in order to establish the feasibility and cost of a design around."  The Court's statement is unassailable in view of the law cited above.  JPMC's further suggestion that this case can be distinguished because "Ms. Hall's costs figure was based on JPMC's actual know-how and capacity as of 2001" is a meaningless distinction, because JPMC has not disclosed any alleged "know-how" or "capacity" during discovery; and "know-how" and "capacity" must still be presented by an expert witness.

    6.    <u>JPMC Has Not Provided Any Expert Evidence To Support an Acceptable Alternative To The Infringing Accused Instrumentalities</u>:  JPMC cites Dr. Siegel in support of its argument that JPMC had available acceptable non-infringing alternatives. (D.I. 128 at 6, 7, 9-14).  Yet, JPMC never responds to Pi-Net's showing that F.R.Civ.P Rule 26(a)(2)(B)(i) and Rule 37(c) prohibit Dr. Siegel from testifying about any alleged acceptable non-infringing alternatives, because he never addressed any such system in any of his expert reports.  (D.I. 120 at 6-10).  JPMC cannot ignore the Federal Rules of Civil Procedure simply because it is JPMorgan and the biggest bank in the country.  Laws and rules still apply to JPMC.  JPMC has

---

alternative, because "Although it certainly had the opportunity at trial to present *expert testimony* that its non-infringing product would be acceptable to consumers…, Hunt apparently chose not to do so."

[9]  "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) (quoting *Grain Processing*, 185 F.3d at 1353).

failed to articulate any ground on the basis of which Dr. Siegel could testify about any alleged

non-infringing acceptable alternatives to the infringing Accused Instrumentalities.

JPMC argues that Dr. Siegel's expert reports somehow reflect "his expert view that CGI-

based systems would have been acceptable alternatives as of 2001." (D.I. 128 at 11).  JPMC is

wrong.  Rule 26(a)(2)(B)(i) requires an expert report, and

The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and
reasons for them;

(ii) the facts or data considered by the witness in forming them….

(Emphasis supplied).  Dr. Siegel's reports never used the words "acceptable," "non-infringing,"

"alternative" or "as of 2001" (except in unrelated contexts), much less addressed the issues.  The

paragraphs of his reports cited by JPMC are directed to prior art issues, and do not address

anything remotely relevant to the issue of acceptable non-infringing alternatives available to

JPMC at the time of the hypothetical negotiations and then during the damage period.

JPMC also cites Dr. Siegel's statement in his deposition that: "I think CGI… can do

exactly what is in this invention."  (D.I. 128 at 11).  JPMC's argument distorts the law.  First, the

deposition does not substitute for a complete expert report as required by Rule 26(a)(2)(B)(i).

Second, the hypothetical negotiations assume that the Pi-Net patents were valid and infringed,

and, thus, Ms. Hall cannot assert that the Pi-Net patents were the same as CGI.   Dr. Siegel says

nothing about whether JPMC had available a non-infringing online banking substitute for the

infringing Accused Instrumentalities.  Rule 702 and *Daubert* cannot be met by vague conclusory

comments of the type relied upon by JPMC.

7.   Dr. Siegel's Alleged Telephone Opinions Are Not "Data" under FRE 703:  JPMC

argues that Ms. Hall can testify about what Dr. Siegel allegedly told her, because "Pi-Net

provides no evidence that Dr. Siegel's opinions are not the sort of data reasonably relied upon by damages experts." (D.I. 128 at 9).  JPMC is wrong.  Federal Rule of Evidence 703 refers to "facts or data in the case."  An expert opinion about acceptable non-infringing alternatives is an expert opinion based on facts and data, and not itself a fact or a data point.  JPMC asks the Court to nullify both Rule 26(a)(2)(B)(i) and FRE Rule 702, by allowing otherwise incompetent and undisclosed opinions to be presented to a jury, without the other side ever having the opportunity to investigate, by simply having one expert, who knows nothing about an issue, testify about what another expert whispered privately to her.  If an expert can present to a jury the opinions of another person who had never disclosed the opinions as required by Rule 26(a)(2) and was never vetted as required by FRE Rule 702, then there is no point to either Rule 26(a)(2)(B)(i) or Rule 702.

        8.     <u>The Alleged "200,000" Cost of the "Alternative" Can Not Be Supported:</u>  JPMC asserts that Mr. Romanelli told Ms. Hall in a private telephone call that during the damage period he could have substituted the infringing Accused Instrumentalities with a yet-unidentified "CGI-specification" system for only $200,000 over the entire damage period.  JPMC argues this opinion is "purely factual in nature." (D.I. 128 at 15)[10]  Leaving to one side the lack of

---

[10]  The hypothetical negotiation would necessarily look at the entire additional cost of the alleged non-infringing alternative over the entire damage period.  *Sinclair Refining Co. v. Jenkins Petroleum Process Co*., 289 U.S. 689, 698 (1933); *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1301, 1333 (Fed. Cir. 2009); *Fromson v. Western Litho Plate & Supply Co*., 853 F.2d 1568, 1575 (Fed.Cir.1988), <u>overruled on other grounds</u> by *Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 383 F.3d 1337 (Fed.Cir.2004) (en banc); *Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302, 1311 (Fed. Cir. 2002) ("A 'reasonable royalty' … analysis necessarily involves some approximation of the market as it would have hypothetically developed absent infringement.")

foundation for Mr. Romanelli's alleged factual statement, because he was not there and thus has

no personal knowledge of the matter (Exh. BC at 15-16), JPMC does not even attempt to explain

how the cost of a hypothetical alternative system in 2001 (and then over the damage period) is

not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702,"

which requires an expert.  Federal Rule of Evidence 701 prohibits such opinion evidence by a lay

person, and Mr. Romanelli never filed any expert disclosure as required by Fed.R.Civ.P. Rule

26(a)(2).  Therefore, Mr. Romanelli cannot testify on the matter, and, thus, Ms. Hall also cannot

testify for the same reason that she cannot testify about what Dr. Siegel allegedly told her.

       9.   <u>Precedent Cited by JPMC Supports Only Preclusion of Ms. Hall's Testimony:</u>

All the cases cited by JPMC actually support Pi-Net's position, because in each case, the

proponent had submitted an expert report that specifically identified and analyzed an available

acceptable non-infringing alternatives as required by Rule 26(a)(2)(B)(i).  JPMC has not cited

any precedent for allowing an expert to rely on alleged conversations by persons who had not

themselves served a detailed report identifying and evaluating a specific proposed acceptable

non-infringing alternative, as required by Rule 26(a)(2)(B)(i).[11]

---

[11] *St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc*., 935 F. Supp. 2d 779, 781 (D. Del. 2013) (D.I. 128 at 2, 10, 14-15) (involved a damage expert report that relied on a technical expert report which identified and evaluated an acceptable non-infringing alternative available to Defendant) (See Exh. BI at ¶8); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*., 2012 WL 3686736 at *2-5 (W.D. Pa. 2012) ("*CMU*") (D.I. 128 at 10, 11) (The technical expert was challenged for alleged failure to make a sufficient analysis of "whether the alleged alternatives were available to Marvell or acceptable to its customers" [Id. at *3], but the Court concluded that the expert had "'good grounds' for concluding that these technologies existed and that they could achieve similar results as those derived from CMU's patented technologies." [Id. at *5]); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc*., 658 F. Supp. 2d 630, 641 (M.D. Pa. 2009) (D.I. 128 at 9, 20) (issue was whether the expert utilized an incorrect standard to determine whether the features of specifically-identified alternatives made them acceptable non-infringing substitute substitutes); *Nurserygoods Co. v. Thorley Indus., LLC*, 2013 WL 6328772 at *5 (W.D. Pa. 2013) (D.I. 128 at 9) (issues related to the price point of a specific children's swing

**B.  "Non-Object" Alternatives Must Be Excluded**

JPMC admits that Dr. Siegel did not address the "Non-Object" systems in his report.  (D.I.

128 at 11-12).  No law supports JPMC's proposal that the Court can ignore explicit Rule 26's

expert report requirements simply because Pi-Net was [allegedly] on notice of Dr. Siegel's views

regarding this third non-infringing alternative from Ms. Hall's report." (*Id.*)  Further, the report

must be by the testifying expert not a surrogate; and must be complete, and not merely say a few

words.  The proposed testimony violates every rule on expert testimony and must be excluded.

**C.  Ms. Hall May Not Testify About Pi-Net's Settlement Agreements**

Defying established Federal Circuit law, JPMC misinterprets *ResQNet.com, Inc. v. Lansa,*

*Inc.*, 594 F.3d 860 (Fed. Cir. 2010) to argue that Pi-Net's Settlement Agreements can be allowed

into evidence.  Well-established law excludes such settlement agreements pursuant to FRE Rules

403 and 408, and because such settlement agreements are inconsistent with the concept of

hypothetical negotiations.  Thus, the Federal Circuit has plainly stated that *ResQNet* is limited to

the particular facts of that case, where settlements were allowed as the best evidence.

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

---

which was argued to be an acceptable non-infringing alternative); *Fresenius Med. Card Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1390416 at *7 (N.D. Cal. 2006) (D.I. 128 at 11) (issue was whether an expert report had made "[a] reasonable estimate of damages ... by apportioning the … incremental profit difference between the 2008H [non-infringing alternative] and the 2008K [infringing product].");  *SSL Servs., LLC v. Citrix Sys., In*c., 2012 WL 1995514 at *3 (E.D. Tex. 2012) (D.I. 14) (D.I. 128 at 14) (Court allowed expert testimony only because "Citrix's technical expert served a report addressing the existence of non-infringing alternatives actually sold on the market.  That report analyzed such non-infringing alternatives, identified why they were non-infringing, and described how they functioned," which the Court found to be "reliable.");  *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*., 2013 WL 6036029 (M.D. Pa. 2013) (D.I. 128 at 10, 11) (issue was whether the proposed expert testimony was based "on the mistaken belief that infringement damages must be capped at the cost of using a noninfringing alternative.").

The settlements here are governed by *LaserDynamics*, and not by *ResQNet,* because fact pattern here is even less hospitable to settlement agreements than it was in *LaserDynamics*.  The Pi-Net settlements (i) do not correspond to the quality or amount of JPMC's infringement in this case; (ii) occurred 11-12 years after the date of the hypothetical negotiations, (iii) were entered early in litigations when both validity and infringement were being challenged, and (iv) were entered when Pi-Net was at a severe disadvantage financially.  The Pi-Net settlements "reflect not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances."  *Id.*

### D.  Ms. Hall May Not Testify Regarding JPMorgan's Licensing Policies

JPMC has not disclosed a single license or other agreement.  Ms. Hall has insufficient relevant experience to be allowed to testify about JPMC's alleged licensing policies.  The statements of Massimo Iori are directed to ultimate issues and are opinions, not "facts or data" within the scope of FRE Rule 703.  Dr. Arunachalam was deposed on the topic of licensing.  Mr. Iori was not, because JPMC never identified him a person with knowledge.  (Exh. BJ).  JPMC cannot use the artifice of expert testimony to get into evidence relevant information which JPMC should have disclosed, but withheld.

### III.  CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that its Motion to strike the specified improper testimony of Dawn Hall be granted.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230

10

GP@del-iplaw.com

*Attorneys for Plaintiff Pi-Net Int'l, Inc.*