## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL INC., | |
| Plaintiff, | |
| v. | Civ. No. 1:12-cv-00282-RGA |
| JPMORGAN CHASE & CO., | |
| Defendant. | |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS, LACK OF ENABLEMENT, AND LACK OF WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel:  (212) 735-3000

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  SUMMARY OF ARGUMENT ....................................................................................1

II. THE NEW BARDASH DECLARATION IS UNTIMELY, PREJUDICIAL, AND
    FAILS TO CREATE A GENUINE ISSUE OF MATERIAL FACT.................................2

    A.  The New Bardash Declaration Is Improper. ............................................................2

    B.  Pi-Net's Reliance On The New Bardash Declaration Is Misplaced........................3

III. ALL ASSERTED CLAIMS ARE INVALID AS INDEFINITE. ......................................4

    A.  Under Pi-Net's View Of Expert Testimony, Dr. Bardash's New Opinions
        on Indefiniteness Should Be Excluded. ...................................................................4

    B.  Dr. Bardash Confirms That The "Application" Terms Are Indefinite....................4

IV. ALL ASSERTED CLAIMS ARE INVALID FOR LACK OF WRITTEN
    DESCRIPTION UNDER 35 U.S.C. § 112(a). ....................................................................5

    A.  Dr. Bardash Confirms That The Specification Does Not Evidence
        Possession of The Claimed "VAN Switch" Or The Claimed Method Of
        "Object Routing."....................................................................................................5

    B.  Pi-Net Confirms Lack Of Possession Of The Required "Back-End"
        Elements....................................................................................................................7

V.  ALL ASSERTED CLAIMS ARE INVALID FOR LACK OF ENABLEMENT..............9

    A.  Dr. Bardash Confirms Undue Experimentation Is Required. .................................9

    B.  Dr. Bardash Does Not Dispute That The Specification Provides No
        Working Examples, And No Direction Or Guidance To Move Beyond The
        Prior Art. ................................................................................................................10

VI. CONCLUSION.............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Halliburton Energy Services, Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)...........................................................................................5

*INVISTA North America S.A.R.L. v. M & G USA Corp.*,
    No. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013).................................3

*Ortho-McNeil Pharmaceutical, Inc. v. Teva Pharmaceuticals Industries, Ltd.*,
    344 F. App'x 595 (Fed. Cir. 2009) .....................................................................................4

*Realtime Data, LLC v. Morgan Stanley*,
    No. 11 Civ. 6696(KBF), 2012 WL 2545096 (S.D.N.Y. June 27, 2012),
    *aff'd*, No. 2013-1092, 2014 WL 278757 (Fed. Cir. Jan. 27, 2014).....................................7

**STATUTES**

35 U.S.C. § 112.................................................................................................................................1

35 U.S.C. § 112(a) ..........................................................................................................................6

## I.    SUMMARY OF ARGUMENT

Pi-Net's opposition to JPMC's motion for summary judgment of invalidity (D.I. 131) is based on several fundamentally flawed arguments, none of which is sufficient to create a genuine issue of fact as to any of the grounds set forth in JPMC's opening brief (D.I. 122).

First, although JPMC cites the reports and/or depositions *of three experts* in its opening brief, Pi-Net mischaracterizes JPMC's invalidity motion as resting "entirely on factual assertions and argument of JPMC's counsel, and not on the basis of any record." (D.I. 131 at 1) Even a cursory examination of JPMC's opening brief reveals extensive reliance on the record.

Second, Pi-Net fixates on JPMC's failure to file a separate expert declaration in support of its motion. It is true that in the typical infringement case, there is often a "battle of the experts" over whether the asserted patent disclosure satisfies the requirements of 35 U.S.C. § 112. But in this case, the dearth of disclosure in the patents-in-suit is so pronounced that Pi-Net's technical expert, Dr. Bardash, was unable to dispute any of the key material facts relating to Section 112 issues in the three reports he served during expert discovery. JPMC was therefore able to rely on Dr. Bardash (and other evidence) to support its invalidity arguments. Recognizing that it could not rely on any of Dr. Bardash's three prior reports to oppose JPMC's motion, Pi-Net had Dr. Bardash compose a new, 78-paragraph, 38-page declaration (Ex. BE, "the New Bardash Declaration"), which cites new exhibits that had never before been produced, and advances entirely new arguments. Under the reasoning of Pi-Net's *own motions*, the New Bardash Declaration should be excluded: (1) for offering opinions on claim indefiniteness that violate the *Daubert* standard for admissibility (*see* D.I. 116); and (2) for advancing new arguments based on new evidence that was not disclosed during discovery (*see* D.I. 132, 133).

Third, even if Dr. Bardash is allowed to serve a *fourth* expert report based on new

evidence after the close of discovery, the New Bardash Declaration either concedes or fails to dispute the key material facts for each invalidity argument in JPMC's opening brief:

- _Indefiniteness_:  Dr. Bardash concedes that the term "Web application" and the term "POSvc application" are synonymous, coined terms that are defined exclusively in terms of one another.  (Ex. BE at 6)  There can thus be no dispute that the bounds of this coined terminology are insolubly ambiguous.

- _Lack of Written Description for VAN Switch/Object Routing_:  Dr. Bardash concedes that the only way of making and using the VAN Switch disclosed in the specification is the TransWeb^TM Management Protocol, which "never reached fruition." (Ex. BE at 17-18 (emphasis added))  Dr. Bardash further confirms that the only depictions of the claimed VAN Switch in the specification are "two abstract drawings." (Ex. BE at 20)

- _Lack of Written Description for "Back-End" Elements_:  Dr. Bardash concedes that "the asserted claims require . . . a back-end transactional application, which . . . processes the requested transaction." (Ex. BE at 3)  Yet, Dr. Bardash is unable to identify even one back-end transactional application disclosed in the specification that "corresponds to the front-end POSvc Application on a Web page."

- _Lack of Enablement_:  Dr. Bardash confirms that Pi-Net's experts agree that "creating a web application"—which is required by the asserted claims—would have been a near-impossible task at the time of the alleged invention.  (Ex. BE at 24-25)

Thus, Pi-Net's mischaracterization and untimely submission of evidence notwithstanding, Pi-Net has failed to create a genuine dispute of the material facts in JPMC's motion, which should be granted.

## II.    THE NEW BARDASH DECLARATION IS UNTIMELY, PREJUDICIAL, AND FAILS TO CREATE A GENUINE ISSUE OF MATERIAL FACT.

### A.    The New Bardash Declaration Is Improper.

Pi-Net never cites Dr. Bardash's three prior reports or prior declaration in its opposition brief.  Instead, it relies exclusively on paragraphs 6-56 of the New Bardash Declaration.  This fact underscores that, although Pi-Net argues that the New Bardash Declaration is "based entirely on the pre-existing record" (D.I. 131 at 2), it actually contains new opinions based on previously undisclosed evidence.  These new arguments relate to:  (1) new

2

proposed claim constructions; (2) how to define a "protocol," including citation to extrinsic evidence that still has not been produced to JPMC; (3) the OSI model; (4) middleware systems; and (5) Dr. Bardash's interpretation of Mr. Easttom's reports.  (*See, e.g.*, Ex. BE ¶¶ 10-29, 33-34, 49)  As discussed below, none of these new arguments creates a genuine issue of fact, even if the Court were to excuse Pi-Net's failure to comply with its scheduling orders.  Moreover, as the caselaw that Pi-Net has already cited in its prior briefing demonstrates, this Court has excluded expert declarations that contain "previously undisclosed theories [relating to] invalidity." *INVISTA N. Am. S.A.R.L. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 3216109, at *3 (D. Del. June 25, 2013) (striking paragraphs of expert declaration because allowing those "new expert opinions, in the middle of summary judgment briefing . . . would unduly prejudice" the opposing side).  Thus, the Court should reject the New Bardash Declaration as untimely.[1]

**B.  Pi-Net's Reliance On The New Bardash Declaration Is Misplaced.**

Pi-Net's opposition brief makes repeated factual assertions without citation to the record.  Pi-Net's lackadaisical approach appears to be based on its misapprehension that the mere inclusion of the (albeit untimely) New Bardash Declaration alone is sufficient to defeat a motion for summary judgment.  (*See* D.I. 131 at 3)  Although Pi-Net cites large swaths of the New Bardash Declaration, Pi-Net does not explain how any of the cited sections create a genuine issue of material fact.  While conflicting expert testimony can, under certain circumstances, compel denial of a motion for summary judgment, "unsupported expert testimony cannot serve as a bar to summary judgment."  *Ortho-McNeil Pharm., Inc. v. Teva Pharm. Indus., Ltd.*, 344 F. App'x 595, 603 (Fed. Cir. 2009).

---

[1] To the extent that the Court denies JPMC's invalidity motion, JPMC reserves the right to move to exclude the new arguments from the New Bardash Declaration, or, in the alternative, for leave to serve a supplemental report and to depose Dr. Bardash on his new opinions.

## III.  ALL ASSERTED CLAIMS ARE INVALID AS INDEFINITE.

### A.  Under Pi-Net's View Of Expert Testimony, Dr. Bardash's New Opinions on Indefiniteness Should Be Excluded.

In its opening brief in support of its motion to exclude the expert invalidity reports of JPMC's technical expert, Ms. Susan Spielman, Pi-Net asserted that "Ms. Spielman's opinions do not comply with the requirements of FRE 702 and *Daubert*."  (D.I. 116 at 1)  Pi-Net urged the Court to "strik[e] the report in its entirety," including Ms. Spielman's opinion "that the claim language is indefinite under §112(b)."  (D.I. 116 at 3)  Just weeks after Pi-Net argued that expert reports should be struck for providing opinions on indefiniteness, Pi-Net served an expert report that provides opinions on the issue of indefiniteness.  (*See* Ex. BE ¶ 8 ("In any event, in my opinion, the claim limitations cited by JPMorgan in its brief are not indefinite."))  While JPMC acknowledges that timely and properly supported expert opinions can be relevant to the issue of indefiniteness (D.I. 126 at 19-20), the opinions in the New Bardash Declaration are neither timely nor properly supported.  Moreover, Pi-Net's blatant double talk on the relevance of expert testimony to indefiniteness speaks volumes about the futility of its position on the merits.

### B.  Dr. Bardash Confirms That The "Application" Terms Are Indefinite.

There is no dispute that all asserted claims require a point-of-service ("POSvc") application, a "Web application," or "a network application."  There is also no dispute that the term "POSvc application" is a coined term that had never been used prior to the patents-in-suit. In its opening brief, JPMC argues that it is meaningless to define a coined phrase in terms of itself, which is what Pi-Net has proposed in its constructions for the Application Terms.  Pi-Net offers three arguments in response, none of which is sufficient to overcome JPMC's motion.

First, Pi-Net argues that JPMC "tortures the claim constructions" in alleging that Pi-Net's proposals result in insoluble ambiguity.  (D.I. 131 at 10)  But JPMC has merely inserted

*Pi-Net's own proposed constructions* for the term "Web application" wherever that phrase appears in a disputed claim term.  That is not "torturing" Pi-Net's proposed constructions; it is applying them.  Second, Pi-Net argues that the "standard for indefiniteness is . . . that the claims cannot be construed at all."  (D.I. 131 at 10)  That is wrong.  *See, e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) (holding that, even if construed, a "claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope")  Finally, Dr. Bardash contends that the insoluble circularity that JPMC identified can be resolved.  (D.I. 131 at 10)  But the New Bardash Declaration only begs the question of how a person of ordinary skill in the art could make sense of the "Application Terms."  Dr. Bardash argues that a "shortened" definition—different from any that Pi-Net set forth in its *Markman* briefing—resolves any issue of ambiguity.  (Ex. BE ¶¶ 10, 14)  But like the definition that Pi-Net originally proposed, this new one also defines the "POSvc application" in terms of a Web application.  (Ex. BE ¶ 10 (defining the POSvc application as "a transactional **Web application** displayed on a web page, and displaying an 'object' data structure in the **Web application**") (emphasis added))  This newly proposed definition does not eliminate the ambiguity that JPMC pointed out in its opening brief—it compounds it, because Dr. Bardash concedes that "***a Web application is a POSvc Application on a web page***."  (Ex. BE ¶ 11)  Dr. Bardash again defines the coined term "POSvc application" exclusively in terms of itself, and thereby confirms that it is indefinite.

## IV.  ALL ASSERTED CLAIMS ARE INVALID FOR LACK OF WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112(a).

### A.  Dr. Bardash Confirms That The Specification Does Not Evidence Possession Of The Claimed "VAN Switch" Or The Claimed Method Of "Object Routing."

In its opening brief, JPMC cited two expert reports in support of its position that the specification of the patents-in-suit fail to evidence possession of the claimed "VAN Switch"

5

or the use of that "VAN Switch" to perform "object routing."  First, JPMC cited the opinion of

Sue Spielman, one of JPMC's experts, that "a person of skill in the art as of the date of the

alleged invention *would not have understood from the specification of the patents-in-suit that the*

*patentee had possession of a VAN Switch*," which she explained in detail in her First Expert

Report.  (D.I. 122 at 11 (citing Ex. AJ))  Second, JPMC cited Pi-Net's expert, Dr. Bardash, who

never offered an opinion rebutting Ms. Spielman's views before the close of expert discovery.

(D.I. 122 at 11-12)  Pi-Net argues that Dr. Bardash did respond to Ms. Spielman's views in his

Second Report, but Pi-Net could not find a single citation or quotation from that Second Report

to substantiate its argument.  (*See* D.I. 131 at 11-12)  Pi-Net's only other argument is that the

disclosure of a single, non-existent protocol for the VAN Switch is irrelevant because "the VAN

Switch is not tied to the TMP$^{TM}$ Protocol or any protocol."  (D.I. 131 at 11)

       Contrary to Pi-Net's assertion, the New Bardash Declaration *confirms* that the

only description of the VAN Switch in the specification *directly ties* the VAN Switch to the TMP

protocol.  Dr. Bardash opines that the "critical feature of the VAN Switch is the object routing,

and not the particular method of doing that."  (Ex. BE ¶ 34)  However, Dr. Bardash never

disputes that the only "particular method of doing" object routing that the specification discloses

is "via a proprietary protocol, TransWeb$^{TM}$ Management Protocol (TMP)," which "never reached

fruition."  (Ex. BE ¶ 33)  Thus, the only way of carrying out the "critical feature of the [claimed]

VAN Switch" never "reached fruition," and Dr. Bardash was unable, even after multiple attempts,

to find any evidence to dispute Ms. Spielman's view that the specification showed "possession"

only of a protocol *that never existed*.  Thus, even if Pi-Net is correct that the non-existent TMP

protocol was intended to be "a proposed preferred embodiment" (D.I. 131 at 11), it cannot

6

dispute that it is the *only embodiment* that is described as providing the "critical feature" of the claimed technology: object routing through a VAN Switch.

JPMC's opening brief also cites Dr. Bardash's Second Report and notes that the only Figures that Dr. Bardash discusses are "abstract, conceptual drawings" that provide no structural details that would evidence possession of the claimed "VAN Switch." (D.I. 122 at 13-14) Pi-Net's opposition contains no response, and, indeed, the New Bardash Declaration concedes that the only two figures from Dr. Bardash's Second Report relating to the VAN Switch are "*two abstract drawings*." (Ex. BE ¶ 38 (emphasis added)) Dr. Bardash contends that "there are many other descriptions and figures in the patents beyond the two abstract drawings," but he does not point to even one such description or figure. (*See id.*) This sort of unsupported assertion cannot defeat summary judgment. *See Realtime Data, LLC v. Morgan Stanley*, No. 11 Civ. 6696(KBF), 2012 WL 2545096, at *5-8 & nn.5, 7 (S.D.N.Y. June 27, 2012) (granting summary judgment that patents failed to satisfy written description requirement where patentee's technical expert failed to support his "conclusory" assertions with citations to the specification). Because Dr. Bardash confirms that the specification provides only abstract, conceptual drawings of a VAN Switch that uses a non-existent protocol to perform the "critical feature" of the claimed technology, the specification does not evidence possession of the "VAN Switch."

**B.   Pi-Net Confirms Lack Of Possession Of The Required "Back-End" Elements.**

In response to JPMC's showing that the specification does not evidence possession of the required "back-end" claim elements, Pi-Net (1) accuses JPMC of "simply rewriting the claims," and (2) generally cites the New Bardash Declaration (without providing any explanation). (D.I. 131 at 12) Neither argument is sufficient to defeat JPMC's motion.

While Pi-Net now admits that the patents-in-suit must evidence possession of "back-end transactional applications" for the asserted claims of the '492 patent, Pi-Net argues

7

that the specification need not show such possession for the claims of the '500 and '158 patent. (D.I. 131 at 12)  According to Pi-Net, the phrase "transactional application" from the '500 patent should have the identical construction as the phrase "back-end transactional application."  (D.I. 122 at 15)  Pi-Net argues that even though *Pi-Net itself* proposed that the '500 patent claims should be construed to require a back-end application "that corresponds to the front-end POSvc Application on a Web page," that construction should not be used to determine whether that claim satisfies the "validity requirements" of Section 112.  (D.I. 131 at 12)  To reject this argument, the Court need look no further than *Pi-Net's own prior briefing*, which sought to exclude the expert testimony of Ms. Spielman because she allegedly did not apply the proposed claim constructions in her Section 112 analysis.  (D.I. 116 at 4 (arguing that Ms. Spielman "ignored the claimed inventions" because "challenges to validity require a construction of the claims to determine their meaning and scope"))

Having proposed a construction for the "meaning and scope" of the '500 patent claims, Pi-Net now seeks to discard that proposal, and disregard the very caselaw that it has cited to the Court, because its proposed construction includes claim elements that are *not supported by any disclosure in the specification*.  The Court should reject this untenable position.  Pi-Net does not dispute that the phrase "back-end transactional application" never appears in the text or figures of the written description.  And Dr. Bardash points only to the appearance in Figure 4B of the words "middleware" and "middleware applications," which are never discussed in the specification.  (Ex. BE at 22)  Dr. Bardash never explains how generic prior art middleware applications can "correspond[] to the front-end POSvc Application on a Web page," as required

8

by *Pi-Net's own construction*.  The reason Dr. Bardash cannot offer an explanation is because, as

JPMC established in its opening brief, the specification provides none.[2]

## V.    ALL ASSERTED CLAIMS ARE INVALID FOR LACK OF ENABLEMENT.

### A.    Dr. Bardash Confirms Undue Experimentation Is Required.

In its opening brief, JPMC offered two reasons that undue experimentation would

be required to make and use the claimed technology:  (1) a person of skill in the art would need

to "invent her own new protocol" because the "proprietary" TMP protocol never existed; and (2)

the parties' experts agree that it would have been a virtually impossible task of trial and error to

make and use the claimed technology.  (D.I. 122 at 17-19)  Neither Pi-Net nor the New Bardash

Declaration addresses the first argument, and thus there is no dispute that inventing a new

protocol would have been necessary to practice the claimed technology (given that the

proprietary protocol disclosed in the specification would have been useless because it did not

exist).  As for JPMC's second argument, Pi-Net generally references the New Bardash

Declaration, where Dr. Bardash interprets Mr. Easttom's testimony as opining only that it is

"hard . . . to Web design systems [*sic*] from scratch."  (D.I. 131 at 15)  However, Mr. Easttom

was specifically asked how he would characterize the task of creating a "web application"—

which is a claim element that is required by the asserted claims.  (Ex. AO at 307)  To that, he

answered that even in 2003, "nobody even talked about" designing "web applications" for a

system that "didn't already have a web-based platform" because it was "just too hard."  (*Id.*)  This

is nearly identical to Ms. Spielman's opinion from her report.  Dr. Bardash tries to dismiss this

---

[2] Similarly, neither Pi-Net nor Dr. Bardash dispute that the step of "transferring funds from the checking account to the savings account" in the '158 patent requires accessing various back-end systems.  Other than the generic, three-word reference to "middleware" and "middleware applications," Dr. Bardash does not identify any portion of the specification that allegedly shows possession of any application for transferring funds.  (Ex. BE ¶ 45)

agreement, by arguing that the experts agree only that this is a "hard task," and although other

tasks like "building an airliner or a bridge from existing blueprints may be a hard task, . . . [they]

would not qualify as 'undue experimentation.'"  (D.I. 131 at 15)  Dr. Bardash's statement only

confirms Ms. Spielman's point, because *there are no blueprints provided in the patents-in-suit—*

no starting point, other than a vague, abstract concept.  Dr. Bardash does not point to any such

"blueprints" in the patents-in-suit, and thus affirms that, consistent with Ms. Spielman and Mr.

Easttom's views, undue experimentation would have been required to make and use the claimed

technology.

### B.   Dr. Bardash Does Not Dispute That The Specification Provides No Working Examples, And No Direction Or Guidance To Move Beyond The Prior Art.

*Wands* factors (2), (3), and (5) establish that no reasonable jury could conclude

that the asserted claims are enabled, particularly because the specification provides no working

examples that would allow a person of skill in the art to move beyond the prior art, CGI-based

systems.  (D.I. 122 at 19-20)  Pi-Net offers no substantive response to JPMC's argument, (D.I.

131 at 16), and Dr. Bardash does not identify a single working example in the specification (Ex.

BE at 26).  As such, Dr. Bardash does not genuinely dispute that, as Ms. Spielman identified in

her report, a person of ordinary skill in the art would have been essentially "starting from

scratch" when attempting to make and use the claimed technology.  (D.I. 122 at 20)

## VI.   CONCLUSION

Pi-Net's opposition brief is awash in contradiction, unsupported assertions, and

complete silence on many of the key material facts that JPMC identified in its opening brief.

Pi-Net's reliance on untimely, conclusory statements from Dr. Bardash (none of which are

explained in Pi-Net's brief) is insufficient as a matter of law to create a genuine issue of fact.  For

the foregoing reasons, JPMC's motion for invalidity should be granted in its entirety.

DATED: February 26, 2014          Respectfully submitted,

                                  /s/ *Robert S. Saunders*

                                  Robert S. Saunders (ID No. 3027)
OF COUNSEL:                       Jessica Raatz Kunz (ID No. 5698)
Daniel A. DeVito                  SKADDEN, ARPS, SLATE,
Douglas R. Nemec                      MEAGHER & FLOM LLP
Edward L. Tulin                   920 N. King Street, 7th Floor
Andrew D. Gish                    Wilmington, Delaware  19801
SKADDEN, ARPS, SLATE,             Tel:  (302) 651-3000
    MEAGHER & FLOM LLP            Fax:  (302) 651-3001
Four Times Square                 rob.saunders@skadden.com
New York, New York  10036         jessica.kunz@skadden.com
Tel:  (212) 735-3000
                                  *Attorneys for Defendant JPMorgan Chase & Co.*