# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO.,<br><br>        Defendant. | Civ. No. 1:12-cv-00282-RGA |

**DEFENDANT'S COMBINED REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF LACHES FOR U.S. PATENT NO. 5,987,500 AND OPPOSITION BRIEF TO PLAINTIFF'S MOTION TO STRIKE**

**REDACTED VERSION
FILED PUBLICLY
MARCH 5, 2014**

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
douglas.nemec@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

DATED:  February 26, 2014

733792-WILSR01A - MSW

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PI-NET INTERNATIONAL INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO.,<br><br>               Defendant. | Civ. No. 1:12-cv-00282-RGA |

**DEFENDANT'S COMBINED REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT OF LACHES FOR U.S. PATENT
NO. 5,987,500 AND OPPOSITION BRIEF TO PLAINTIFF'S MOTION TO STRIKE**

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel:  (212) 735-3000

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

**TABLE OF CONTENTS**

Page

I.   SUMMARY OF ARGUMENT ...............................................................................................1

II.  THERE IS NO BASIS TO STRIKE JPMC'S LACHES MOTION. ...................................3

    A.   The Documents Cited In JPMC's Motion Were Timely Produced. ..........................3

        1.   Publicly Available Documents Need Not Be Produced. ..............................3

        2.   Pi-Net's Tactics Delayed Production of the Challenged Documents. ...........5

        3.   Even if the Challenged Documents Relating to Prejudice Are Struck, JPMC Still Has Established that the Laches Presumption Applies. ..........................................................................................................6

    B.   Pi-Net Failed To Seek Discovery Specific To JPMC's Laches Defense. .................7

    C.   Pi-Net's Cited Caselaw Does Not Support Striking JPMC's Motion. ......................8

III. THERE IS NO BASIS TO DENY OR DELAY JPMC'S LACHES MOTION. .................9

    A.   Pi-Net Waived Any Arguments Not Made In Its Answering Brief. .........................9

    B.   Pi-Net Has Not Satisfied The Requirements Of Rule 56(d). ....................................9

IV.  CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)......................................................................................5

*Avocet Sports Technology Inc. v. Polar Electro Inc.*,
    No. C-12-02234 EDL, 2013 WL 1729668 (N.D. Cal. Apr. 16, 2013) ...............................5

*Bleecker v. Standard Fire Insurance Co.*,
    130 F. Supp. 2d 726 (E.D.N.C. 2000)..............................................................................4

*Brown v. United States Steel Corp.*,
    462 F. App'x 152 (3d Cir. 2011)....................................................................................10

*Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*,
    679 F. Supp. 2d 512 (D. Del. 2010)..............................................................................7, 8

*Dobrich v. Walls*,
    No. CIVA 05-120 JJF, 2006 WL 2642218 (D. Del. Sept. 14, 2000)……………………..3

*FMC Corp. v. Guthery*,
    No. 07-5409 (JAP), 2009 WL 2488148 (D.N.J. Aug. 11, 2009).......................................10

*Glover v. City of Wilmington*,
    No. 11-431-RGA, 2013 U.S. Dist. LEXIS 111002 (D. Del. Aug. 7, 2013) .......................9

*I/P Engine, Inc. v. AOL Inc.*,
    915 F. Supp. 2d 736 (E.D. Va. 2012) ...............................................................................8

*International Business Machines Corp. v. BGC Partners, Inc.*,
    No. 10 Civ. 128(PAC), 2013 WL 1775437 (S.D.N.Y. Apr. 25, 2013) ..............................7

*INVISTA North America S.À.R.L. v. M&G USA Corp.*,
    No. 11-1007-SLR-CJB (D. Del. June 25, 2013).................................................................8

*Pennsylvania, Department of Public Welfare v. Sebelius*,
    674 F.3d 139 (3d Cir. 2012)..............................................................................................9

*Skirpan v. Pinnacle Health Hospitals*,
    No. 1:07-CV-1703, 2010 WL 3632536 (M.D. Pa. Apr. 21, 2010).....................................9

*Speth v. Goode*,
    No. 95-0264 (JBS/AMD), 2012 WL 3277105 (D.N.J. Aug. 9, 2012)..............................10

*St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electric Industrial Co.*,
	Nos. 04-1436-LPS et al, 2012 WL 1015993 (D. Del. Mar. 26, 2012), *aff'd*, 522 F.
	App'x 915 (Fed. Cir. 2013) ........................................................................................8, 9

*Stambler v. RSA Security, Inc.*,
	212 F.R.D. 470 (D. Del. 2003) ...........................................................................................8

*Tillman v. Pepsi Bottling Group, Inc.*,
	538 F. Supp. 2d 754 (D. Del. 2008) ....................................................................................9

I.   **SUMMARY OF ARGUMENT**

Pi-Net does not even attempt to dispute the merits of JPMC's laches motion, and instead seeks the extraordinary remedy of striking a summary judgment motion. (D.I. 132, 133) Recognizing that it has no valid excuse for its unreasonable, decade-long delay in asserting the '500 patent, Pi-Net resorts to baseless accusations of procedural violations. Pi-Net's complaints of withheld evidence and undisclosed contentions distort the record. If anything, the circumstances about which Pi-Net complains are the product of *Pi-Net's own failure* to disclose its damages theory for the '500 patent until after the close of fact discovery, *Pi-Net's own failure* to seek specific discovery, and *Pi-Net's own failure* to obtain publicly available information pertinent to its claims. Pi-Net's misleading and inaccurate portrayal of JPMC provides no basis for striking JPMC's laches motion for at least the following reasons:

- There is no dispute that JPMC properly pled the affirmative defense of laches against the '500 patent in its Answer on May 23, 2012—nearly two years ago. (D.I. 1, ¶ 39)

- Although Pi-Net claims to have served discovery requests that relate to JPMC's laches defense, not one of them uses the word "laches." (*See* Exs. BG and BH)

- Pi-Net incorrectly contends that JPMC's motion is based "entirely on inadmissible evidence." (D.I. 133 at 1) JPMC actually relied in large part on *Pi-Net's* own evidence, including: the depositions of Pi-Net's CEO, Dr. Arunachalam; Pi-Net's expert reports; and more than a half-dozen other documents Pi-Net produced.

- Pi-Net challenges the admissibility of a subset of documents that are cited in JPMC's motion, arguing that they were not produced until after the close of fact discovery. However, nearly half of the documents that Pi-Net identifies are publicly available screenshots—similar to those that Pi-Net referenced (but failed to produce) after the close of fact discovery, and upon which its experts rely. (*See*, *e.g.*, Ex. AA)

- Nearly all of the documents to which Pi-Net now objects (for the first time) were produced in October or November *of last year*. In fact, Pi-Net's own damages expert, Mr. Stevan Porter, actually relied on a document that JPMC produced shortly after the close of discovery. (Ex. AF at Ex. 2 at 3 and Ex. 8.10 at 9 (citing JPM0201584, produced by JPMC on October 22, 2013))

- The reason that JPMC produced certain documents after the close of fact discovery was that Pi-Net first specified its damages and infringement theories (and identified the alleged date that JPMC first infringed) nearly a month after fact discovery, on October 25, 2013.  Then, for the first time, JPMC learned that Pi-Net alleged that infringement began in late 2001, that BankOne was the other party in the hypothetical negotiation, and that Pi-Net's expert would be relying on more than *thirty-seven* different screenshots to prove infringement of the Accused Instrumentalities (though Pi-Net still, to this day, has not produced them).

Pi-Net's motion to strike is a last-minute attempt to compensate for Pi-Net's "under litigating" this case (as the Court has already recognized), and it should be denied.  (D.I. 102 at 21)

The deadline for responding to JPMC's laches motion has come and gone.  Pi-Net did not seek an extension of the briefing deadlines, and Pi-Net already filed its "answering brief in opposition to [JPMC's] Motion."  (D.I. 133 at 1)  Pi-Net failed to offer a substantive response to JPMC's opening brief in the one "answering brief" that it was allowed.  And although Pi-Net contends that it should be permitted, in the alternative, to conduct discovery (and then presumably to file a second "answering brief"), Pi-Net has failed to justify the need for such discovery under Fed. R. Civ. P. 56(d) ("Rule 56(d)").  Pi-Net did not specify what discovery is needed, how that discovery could create a genuine issue of fact, or from whom discovery would be taken.  Moreover, no amount of discovery can overcome the following undisputed facts:

- Pi-Net asserts that the first infringement by an Accused Instrumentality was in late 2001, more than a decade before Pi-Net brought suit.  (Ex. AF at ¶ 15)

- Six years prior to the filing of this lawsuit, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had been performed using the Accused Instrumentalities, and more than ▮▮▮▮▮▮ such transactions were performed during Pi-Net's delay.  (Ex. AM, Schedules 1.0 and 1.1)



- The same publicly available website was used to access the Accused Instrumentalities for more than a decade prior to the filing of this suit. (D.I. 112 at 14)

Pi-Net did not outline how any specific, additional discovery could allow it to overcome these undisputed facts. Pi-Net's request for additional discovery should thus be denied, and JPMC's motion for partial summary judgment of laches for the '500 patent should be granted.

## II.     THERE IS NO BASIS TO STRIKE JPMC'S LACHES MOTION.

### A.     The Documents Cited In JPMC's Motion Were Timely Produced.

JPMC's laches motion relied on 36 documents that are of record in this case. Pi-Net does not challenge the admissibility of *more than half* of those documents, and instead alleges only that a subset of those materials were "first disclosed long after the close of fact discovery." (D.I. 133 at 2)[1] The challenged documents generally fall into three categories: (1) publicly available information or information that was already known to Pi-Net (Exs. DAB, DAC, DAE-DAI, DAM); (2) materials that relate to BankOne's advertising and marketing of its online banking systems (Exs. DAD, DAJ-DAL, DAN-DAP); and (3) documents that relate to the prejudice that JPMC suffered as a result of Pi-Net's delay (Exs. DAW, DBE). None of these documents should be excluded, and, even if they are, JPMC's laches motion should still be granted.

#### 1.     Publicly Available Documents Need Not Be Produced.

Eight of the challenged documents are from publicly available Internet archives or websites. (*See* Exs. DAC, DAE-DAI, DAM, and DAN) Because these materials are not kept in the ordinary course of JPMC's business, and were equally accessible to both Pi-Net and JPMC at all times, JPMC was under no obligation to produce them. *See, e.g.*, *Dobrich v. Walls*, No. CIVA 05–120 JJF, 2006 WL 2642218, at *3 (D. Del. Sept. 14, 2006) (denying a motion to

---

[1] Pi-Net asserts that the following 17 documents were improperly produced after the close of fact discovery: DAB-DAP, DAW, and DBE (hereinafter "the challenged documents").

3

compel publicly available media reports and noting that "[w]ith respect to documents that are already in the public domain, . . . their production by Defendants is not required"); *accord Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 738 (E.D.N.C. 2000) ("Discovery is not required of documents of public record when documents are in the possession of or readily obtainable by the [opposing] party. . . ."). As discussed below, the publicly available screenshots were not responsive to any of Pi-Net's document requests—but even if they were, JPMC specifically objected to producing any publicly available information and information that was outside its possession (as these online documents were). (*See* Ex. BH at 3, 18) Nevertheless, JPMC produced all but one of the publicly available documents by Nov. 25, 2013—more than two months before filing its laches motion.

Indeed, Pi-Net's own approach to publicly available screenshots and online documents reveals not only that Pi-Net could have readily obtained these screenshots, but also that JPMC has been far more diligent in producing these types of documents than Pi-Net has. For instance, Pi-Net's expert, Dr. Bardash, cites more than *thirty-seven* screenshots from the www.chase.com website in his First Expert Report. (D.I. 112 (citing Ex. AA at 65-93, 101-03, 109)) Dr. Bardash particularly identifies certain of these screen shots as "2007 and 2009 versions of the public page from Internet Archive." (Ex. AA at 67; Ex. AN at 179-80)[2] None of them were ever produced to JPMC with Bates-numbers, and they were first disclosed through insertion in Dr. Bardash's

---

[2] Dr. Bardash also relies on screenshots from the Chase Mobile Application, QuickPay (Ex. AA at 141-42); screenshots and text from http://restkit.org (*id.* at 145-46, 158-59) screenshots and text from http://json.org (*id.* at 147-51); and screenshots and text from Microsoft's website (*id.* at 155-58). None of these materials were identified during fact discovery, and none of them were ever produced with Bates-numbers. Moreover, Pi-Net's damages expert, Mr. Porter, relies primarily on publicly available documents that were never produced by Pi-Net in this case—of the 209 materials that he considered, only 33 of these documents were produced with Bates-numbers. (Ex. AF at A-1628–33) Mr. Porter also relies on information from the "Wayback" machine (the Internet archive). (*Id.* at A-1632)

report more than three weeks after the close of fact discovery. Indeed, Pi-Net has continued to introduce non-produced screenshots of the Accused Instrumentalities into this case after the close of fact discovery, including most recently on January 8, 2014. (*See* Ex. AN at 261-270 (introducing new screenshots at the Bardash deposition)) Under Pi-Net's view, JPMC's laches motion should be struck because JPMC produced publicly available screenshots three months ago, while Pi-Net can rely on the same sort of screenshots—none of which Pi-Net produced—in Pi-Net's post-fact-discovery reports. This unfair double standard provides no basis to strike JPMC's laches motion.

### 2. Pi-Net's Tactics Delayed Production of the Challenged Documents.

The defense of laches "*limits the scope of damages* a court will consider" by "bar[ring] recovery of damages plaintiff might have suffered before initiating litigation, but does not bar prospective relief." *Avocet Sports Tech. Inc. v. Polar Electro Inc.*, No. C-12-02234 EDL, 2013 WL 1729668, at *2 (N.D. Cal. Apr. 16, 2013) (emphasis added); *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) ("Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred."). In other words, the applicability of the laches defense depends on the damages that are ultimately sought by the plaintiff—if the plaintiff elects not to pursue pre-suit damages, then laches does not apply.

In this case, Pi-Net did not disclose its damages theory until the first round of expert reports—which was after the close of fact discovery (on October 25, 2013). That was the first time that Pi-Net disclosed: (1) the date of alleged first infringement and the alleged date of the hypothetical negotiation (*i.e.*, late 2001); (2) that BankOne was a party to the hypothetical negotiation; and (3) that Pi-Net was seeking damages for the '500 patent for the six years prior to the filing of its Complaint. Pi-Net never disclosed the contours of its damages theory during discovery—its initial disclosures note that the "amount of monetary damages is unknown," and

5

merely identify potential categories of damages, without clarifying the start date for those damages. (Ex. DBM at 4) Pi-Net takes the untenable position that JPMC should have anticipated the details of Pi-Net's damages theory, and then preemptively argued how that undisclosed theory should be limited. As soon as Pi-Net set forth its damages theory, JPMC promptly produced the challenged documents in Oct.-Nov. 2013.

Also on October 25, 2013, JPMC learned that Pi-Net's expert would be relying on publicly available screenshots obtained from the "Wayback" machine (an Internet archive) to prove infringement. (Ex. AA at 67) Indeed, Dr. Bardash relies on these publicly available screenshots in his claim charts for multiple elements, including as evidence of the claimed "POSvc application." (Ex. AA at A-1204–05) The nature of Dr. Bardash's reliance on these publicly available documents that Pi-Net had not (and still has not) produced thus justifies JPMC's production of similar documents to show what Pi-Net should have known regarding the allegedly infringing activity as of the early 2000s.

### 3. Even if the Challenged Documents Relating to Prejudice Are Struck, JPMC Still Has Established that the Laches Presumption Applies.

Pi-Net does not dispute that all but four of the 36 documents JPMC cites in its laches motion were already produced *last year*. Of the remaining four, one of the documents simply verifies—consistent with her deposition testimony—that ███████████████████ ████████████████████████. (Ex. DAB; *cf.* DBD at 69:11-72:13) The second document is a short excerpt from JPMC's publicly available 2006 Annual Report, which merely verifies that, at that time, JPMC had millions of online banking customers. (Ex. DAM) The final two documents are: (1) an 8-paragraph declaration from Bill Mann, a JPMC employee who helped coordinate JPMC's search for documents in this case (Ex. DAW); and (2) a summary of information relating to how much JPMC spent on the Accused Instrumentalities during the

6

period of delay (Ex. DBE). Unlike the 34 other documents upon which JPMC relies, relating to whether Pi-Net knew or should have known of JPMC's alleged acts of infringement, and whether Pi-Net had any excuse or justification for its delay, these two documents relate to the prejudice that JPMC suffered due to Pi-Net's delay. Even if the Court excludes these documents, that is not a reason to strike JPMC's motion, because JPMC can remain "'utterly mute'" on the issue of prejudice and still prevail at the summary judgment stage. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 526 n.75 (D. Del. 2010) (citation omitted).

### B. Pi-Net Failed To Seek Discovery Specific To JPMC's Laches Defense.

Pi-Net never served a single discovery request that directly sought the underlying contentions or facts relating to JPMC's affirmative defense of laches. Instead, Pi-Net argues that JPMC should have identified the challenged documents and other laches-related arguments in response to a generic interrogatory that sought all information relating to any "allegation that any asserted claim of any patent-in-suit is invalid or unenforceable, or which you may argue precludes any liability in this case." (D.I. 133 at 3 (citing Ex. BG at 8-9)) As an initial matter, "interrogatories that 'indiscriminately sweep an entire pleading' and 'require the responding party to provide in essence a running narrative or description of the entire case,'" are "inherently improper." *Int'l Bus. Machs. Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128(PAC), 2013 WL 1775437, at *13-14 (S.D.N.Y. Apr. 25, 2013) (denying motion to exclude evidence supporting laches defense). Moreover, as noted above, JPMC's laches defense was triggered by Pi-Net's damages and infringement theories, which were not disclosed until after fact discovery. Pi-Net cites no interrogatories or document requests that relate to JPMC's damages theories.

Pi-Net notes that, in JPMC's Answer, JPMC contends that the '500 patent is "unenforceable" based on the doctrine of laches, and therefore that any interrogatory or document request that uses the term "unenforceable" should be read to encompass the limitation

7

that laches places on pre-suit damages. (D.I. 133 at 3) However, that reading distorts the nature of the laches defense, which provides a limitation on the relief that a patentee can recover for alleged infringement. *See I/P Engine, Inc. v. AOL Inc.*, 915 F. Supp. 2d 736, 744 (E.D. Va. 2012) (concluding that it was "appropriate to limit [patentee's] damages based upon the principle of laches"). To the extent that Pi-Net does not seek pre-suit relief for infringement, then laches would not render the '500 patent "unenforceable" at all. Until Pi-Net finally clarified whether and to what extent it would be seeking to "enforce" the '500 patent for pre-suit damages, JPMC could not have been expected to set forth a theory regarding those pre-suit damages. Because Pi-Net did not explain that theory until after fact discovery, its complaints that JPMC should have responded to that then-undisclosed damages theory ring hollow.

    **C.    Pi-Net's Cited Caselaw Does Not Support Striking JPMC's Motion.**

Pi-Net does not cite a single case in which this Court (or any other court) struck a summary judgment motion and cites no case where a party was precluded from asserting laches based on the alleged failure to disclose the basis for that defense during discovery. Instead, Pi-Net relies upon *Stambler v. RSA Sec., Inc.*, 212 F.R.D. 470 (D. Del. 2003). (D.I. 133 at 8, 10) In *Stambler*, the Court precluded certain late-disclosed witnesses from testifying at trial—whereas here, the only witness to which Pi-Net objects (Mr. Bill Mann) offers only limited testimony on a topic on which JPMC can remain "'utterly mute.'" *Crown*, 679 F. Supp. 2d at 526 n.75 (citation omitted). Pi-Net also relies upon *INVISTA N. Am. S.À.R.L. v. M&G USA Corp.*, No. 11-1007-SLR-CJB (D. Del. June 25, 2013) (cited in D.I. 133 at 8), but that case was primarily directed to the question of whether "new expert opinions, introduced in the middle of summary judgment briefing, should be excluded." *Id.* at *3. JPMC has not put forth any new expert opinions. Finally, although Pi-Net relies on *St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indust. Co.*, Nos. 04-1436-LPS et al, 2012 WL 1015993 (D. Del. Mar. 26, 2012) (cited in

8

D.I. 133 at 9), that case weighs strongly *against* Pi-Net's motion to strike. In *St. Clair*, this Court concluded that certain new theories disclosed in a new expert report were untimely, but "[n]evertheless, . . . consider[ed] [them] in assessing whether Defendants are entitled to summary judgment" because of the strong "interest [in] addressing disputes on their merits." *Id.* at *10-11.

### III. THERE IS NO BASIS TO DENY OR DELAY JPMC'S LACHES MOTION.

#### A. Pi-Net Waived Any Arguments Not Made In Its Answering Brief.

Pi-Net completely ignored the substance of JPMC's laches motion. Setting aside any complaints about the allegedly late production of certain documents, Pi-Net failed to address any of the twenty cases that JPMC cited, or the nineteen record documents that were not challenged in Pi-Net's motion to strike. These failures alone compel that JPMC's laches motion be granted.[3]

#### B. Pi-Net Has Not Satisfied The Requirements Of Rule 56(d).

In the alternative, Pi-Net argues that it is "entitled to discovery [under Fed. R. Civ. P. 56(d)] before the Court considers [JPMC's laches] motion." (D.I. 133 at 11-12) Pi-Net has not satisfied the requirements of Rule 56(d). In seeking discovery under Rule 56(d), a party must submit an affidavit that identifies "'what particular information is sought; [and] how, if uncovered, it would preclude summary judgment.'" *Pa., Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (citation omitted). The affidavit from Pi-Net's counsel includes only the generic statement that "[a]ny attempt to respond to JPMorgan's evidence and motion would require discovery, including depositions of JPMorgan[,] requests for more documents, and

---

[3] *See, e.g.*, *Glover v. City of Wilmington*, No. 11-431-RGA, 2013 U.S. Dist. LEXIS 111002, at *20 (D. Del. Aug. 7, 2013) (noting that the failure to address arguments in a responsive brief is "the essence of a waiver"); *Tillman v. Pepsi Bottling Grp., Inc.*, 538 F. Supp. 2d 754, 770 (D. Del. 2008) (holding that "failure to dispute a single issue of material fact leaves the court little choice but to grant the [summary judgment] motion"); *Skirpan v. Pinnacle Health Hosps.*, No. 1:07-CV-1703, 2010 WL 3632536, at *7 (M.D. Pa. Apr. 21, 2010) ("[F]ailure to respond to arguments raised on summary judgment . . . acts as a waiver of these issues.").

discovery of why JPMorgan had withheld the contentions and evidence until the present." (Ex. BF ¶ 14) Pi-Net does not name any individuals it seeks to depose, identify any specific documents that it would seek, or offer any explanation as to how that information would preclude summary judgment.[4] Pi-Net thus fails to provide the specificity required by Rule 56(d). *See Brown v. U.S. Steel Corp.*, 462 F. App'x 152, 156 (3d Cir. 2011) (affirming rejection of Rule 56(d) motion because the movant "failed to adequately state the specific reasons" that additional discovery was needed other than his unsubstantiated belief that there were "'additional records'" (citation omitted)); *Speth v. Goode*, No. 95-0264 (JBS/AMD), 2012 WL 3277105, at *7 (D.N.J. Aug. 9, 2012) (rejecting a Rule 56(d) affidavit because it "lacks the specificity required"); *FMC Corp. v. Guthery*, No. 07–5409 (JAP), 2009 WL 2488148, at *4-5 (D.N.J. Aug. 11, 2009) (denying reconsideration of summary judgment of laches where "additional discovery . . . would fail to yield evidence which tended to show that . . . laches bar" did not apply).

IV.  **CONCLUSION**

Pi-Net has no substantive basis to oppose JPMC's laches motion, so it has relied instead on overblown discovery complaints—which resulted from Pi-Net's "under-litigation" strategies, delayed disclosure of its claims, and failure to specifically seek discovery on disputed issues (or recognize relevant documents when they were produced in 2013). Pi-Net should not be permitted to hold back its theories, to penalize JPMC for not guessing what those ultimately would be, and then to ignore the substance of a timely filed summary judgment motion. Pi-Net's motion to strike should be denied, and JPMC's laches motion should be granted.

---

[4] Pi-Net does not argue that it needs any time for discovery relating to its own witnesses or documents, although the most relevant information—Pi-Net's knowledge of the Accused Instrumentalities, Pi-Net's efforts to discover JPMC's alleged infringement, and excuses or justifications for Pi-Net's decade-long delay—is exclusively *in Pi-Net's possession*.

| | |
|---|---|
| DATED: February 26, 2014 | Respectfully submitted, |
| | /s/ *Robert S. Saunders* |
| | Robert S. Saunders (ID No. 3027) |
| OF COUNSEL: | Jessica Raatz Kunz (ID No. 5698) |
| Daniel A. DeVito | SKADDEN, ARPS, SLATE, |
| Douglas R. Nemec |    MEAGHER & FLOM LLP |
| Edward L. Tulin | 920 N. King Street, 7th Floor |
| Andrew D. Gish | Wilmington, Delaware  19801 |
| SKADDEN, ARPS, SLATE, | Tel:  (302) 651-3000 |
|    MEAGHER & FLOM LLP | Fax:  (302) 651-3001 |
| Four Times Square | rob.saunders@skadden.com |
| New York, New York 10036 | jessica.kunz@skadden.com |
| Tel:  (212) 735-3000 | |
| | *Attorneys for Defendant JPMorgan Chase & Co.* |