THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., <br><br> Defendant. | Civ. No. 1:12-cv-00282-RGA |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION
<u>FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

REDACTED VERSION
FILED PUBLICLY
MARCH 5, 2014

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel:  (212) 735-3000

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co*.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.  SUMMARY OF ARGUMENT ........................................................................................1

II. THERE IS NO DISPUTE THAT JPMC DOES NOT INFRINGE UNDER
    JPMC'S CONSTRUCTIONS OF "REAL TIME" OR "OBJECT ROUTING." .................3

III. THE NEW BARDASH DECLARATION DOES NOT GIVE RISE TO A
     GENUINE DISPUTE THAT JPMC PRACTICES "BACK-END" ELEMENTS. .............5

    A.  The New Bardash Declaration Does Not Establish A Genuine Dispute
        That JPMC Practices Back-End Limitations Of The '500 and '492 Patents. ...........5

    B.  Dr. Bardash's Newfound Opinions Do Not Even Purport To Create A
        Dispute Regarding Accused Instrumentalities That Do Not Move Money. .............7

    C.  There Is No Dispute That ███████ Does Not Satisfy The Funds Transfer
        Limitation Of The '158 Patent. ..................................................................................8

IV. THERE IS NO DISPUTE THAT JPMC'S WEB SERVERS DO NOT CONNECT
    TO BACK-END SYSTEMS "ON TOP OF" THE WEB OR THE INTERNET. ................9

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

**Page**

*Apeldyn Corp. v. AU Optronics Corp.*,
 831 F. Supp. 2d 817 (D. Del. 2011), *aff'd*, 522 F. App'x 912 (Fed. Cir. 2013) .................. 4

*Automated Transactions LLC v. IYG Holding Co.*,
 768 F. Supp. 2d 727 (D. Del. 2011), *aff'd*, 484 F. App'x 469 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 955 (2013) ................................................................................................ 10

*Bayer CropScience AG v. Dow AgroSciences LLC*,
 Civil No. 10-1045 RMB/JS, 2012 WL 4498527 (D. Del. Sept. 27, 2012), *aff'd*,
 728 F.3d 1224 (Fed. Cir. 2103) ............................................................................................ 4

*Bayer Healthcare LLC v. Abbott Laboratories*,
 No. 03-189-GMS, 2005 WL 2346890 (D. Del. Sept. 26, 2005) .......................................... 4

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
 442 F.3d 1301 (Fed. Cir. 2006) ............................................................................................ 2

*Peck v. Bridgeport Machines, Inc.*,
 237 F.3d 614 (6th Cir. 2001) ........................................................................................ 7, 10

*Serverside Group Ltd. v. Tactical 8 Technologies, L.L.C.*,
 No. C 12-2016-MWB, 2013 WL 6448824 (N.D. Iowa Dec. 9, 2013) ................................ 7

*Tillman v. Pepsi Bottling Group, Inc.*,
 538 F. Supp. 2d 754 (D. Del. 2008) ..................................................................................... 4

I. SUMMARY OF ARGUMENT

JPMC offered two different categories of arguments in favor of granting summary judgment of non-infringement. (D.I. 114) First, if the Court adopts JPMC's proposed claim constructions for certain disputed claim terms, then JPMC's systems and methods lack at least one element required by the asserted claims. Second, irrespective of the Court's ultimate constructions for the disputed claim terms, Pi-Net has no evidence of the "back end" elements required by all asserted claims, or that certain claim elements are found "on top" of a facilities network in JPMC's Accused Instrumentalities, as claims 1-8 of the '492 patent require.

Pi-Net's opposition brief does not even attempt to dispute JPMC's claim-construction based arguments, and instead advances the untenable view that JPMC's motion—filed on the last day permitted for case-dispositive motions and roughly four months before the start of trial—is "premature." (D.I. 130 at 13) There can be no dispute that if the Court adopts JPMC's proposed construction for "real-time," then Pi-Net has no evidence that JPMC infringes any of the asserted claims, and that if the Court adopts JPMC's proposed construction for "object routing," then Pi-Net has no evidence that JPMC infringes any asserted claim of the '158 patent. As for JPMC's second category of arguments, Pi-Net offers three responses, none of which creates a genuine issue of material fact.

*First*, Pi-Net asserts that JPMC's non-infringement motion "rests entirely on factual assertions and argument of JPMC's counsel, and not on the basis of any record." (D.I. 130 at 1) That is absurd. Because of Pi-Net's failure to adduce evidence of infringement for multiple claim limitations, JPMC was able to rely primarily on *Pi-Net's own experts*, and its opening brief included 24 citations to Pi-Net's expert reports, 15 citations to Dr. Bardash's deposition, three citations to the statements of Pi-Net's counsel to this Court, as well as numerous citations to the patents-in-suit and Pi-Net's *Markman* submissions. (*See* D.I. 114) While JPMC

did not separately submit a new declaration from an expert, that is certainly not required; Pi-Net has the burden of proving infringement. *See, e.g.*, *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307-08 (Fed. Cir. 2006) (holding that expert testimony of non-infringement is not necessary to prevail on summary judgment, and that movant can meet its burden by pointing out the absence of evidence to support the non-movant's case).

*Second*, Pi-Net abandons the position that its counsel and experts have repeatedly made both in the record and directly to the Court, which is that the claimed "invention is the front end [and] not anything that happens in the back end." (*See* Ex. DAX) Pi-Net now finally appears to have realized that its prior position is directly at odds with the actual language of the asserted claims. Indeed, all of the asserted claims require at least one "back-end" element, either as an explicit term or based on Pi-Net's own proposed claim constructions. Having performed this late-stage argumentative about-face, Pi-Net is left scrambling to come up with evidence that such "back-end" elements are present in JPMC's systems. In a futile attempt to bridge this evidentiary gap, Pi-Net served a new, 38-page declaration from Dr. Bardash ("the New Bardash Declaration") identifying JPMC's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a "back-end transactional application." (Ex. BE at ¶ 60) However, even if the Court considers the untimely New Bardash Declaration, it cannot satisfy Pi-Net's burden of proving infringement for the asserted claims because: (a) it directly contradicts Dr. Bardash's prior reports and testimony; (b) it fails to identify the "back-end transactional application" for JPMC's Accused Instrumentalities that do not "move money"; and (c) there is no dispute that ▮▮▮▮▮▮ does not "transfer funds" itself, as required by all asserted claims of the '158 patent.

*Third*, as to the question of whether the connection "to a back-end transactional application" in JPMC's internal systems occurs "on top" of the Web or Internet, Pi-Net falsely

asserts (without any evidence) that because certain communications in JPMC's internal system utilize the HTTP and SOAP protocols, that necessarily means that JPMC's systems satisfy the "on top" limitation. (D.I. 130 at 9) In reality, the undisputed factual testimony in this case conclusively establishes that JPMC's *private* network is not the same as the *publicly* accessible Web, although both format certain communications using the HTTP and SOAP protocols.

II. **THERE IS NO DISPUTE THAT JPMC DOES NOT INFRINGE UNDER JPMC'S CONSTRUCTIONS OF "REAL TIME" OR "OBJECT ROUTING."**

Pi-Net does not dispute that, if the Court adopts JPMC's proposed construction of the term "real time," then JPMC does not infringe a single asserted claim. Pi-Net also does not dispute that, if the Court adopts JPMC's proposed construction of the term "object routing," then JPMC does not infringe a single asserted claim of the '158 patent. Instead, Pi-Net offers a mere six lines of text—devoid of a single citation to case law, expert testimony, or any other source—complaining that "the Court has not entered the proposed claim constructions, and any discussion of the outcome if the Court were to so construe the claims is premature." (D.I. 130 at 13) Pi-Net is wrong for at least three reasons.

First, the schedule in this case mandates consideration of both claim construction and dispositive motions at this stage. The Court explicitly ordered the parties to submit case-dispositive motions by January 29, 2014, and to present arguments on claim constructions and dispositive motions at a "Markman and Dispositive Motion Hearing" on March 6, 2014. (D.I. 95 (emphasis added)) Because JPMC submitted its non-infringement motion in strict compliance with the Court's order, it cannot be considered premature. Indeed, if this portion of JPMC's non-infringement motion were deemed premature, then JPMC would effectively lose the opportunity to ever argue summary judgment of non-infringement on these terms, because trial is scheduled to begin in roughly three months, on June 2, 2014. (D.I. 95)

3

Second, when *Markman* hearings are held after the deadline for dispositive motions, this Court routinely grants motions for summary judgment of non-infringement based on proposed claim constructions.  *See, e.g.*, *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 10-1045 RMB/JS, 2012 WL 4498527, at *8 (D. Del. Sept. 27, 2012) ("Because this Court has adopted [defendant's] construction of Claim 1 and because [plaintiff] does not dispute that [defendant's] products would not infringe . . . under such construction, summary judgment as to [defendant's] non-infringement claim is warranted."); *Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817, 836-37 (D. Del. 2011) (adopting plaintiff's proposed claim construction and, as a result, its motion for summary judgment); *Bayer Healthcare LLC v. Abbott Labs.*, No. 03-189-GMS, 2005 WL 2346890, at *11, 16 (D. Del. Sept. 26, 2005) (adopting disputed claim construction and granting summary judgment of non-infringement accordingly).

Third, Pi-Net's position contradicts its own argument that the invalidity opinons of JPMC's expert, Ms. Spielman, should be excluded because they allegedly "fail[] to apply any construction of any claim limitation."  (D.I. 116 at 5)  Pi-Net cannot argue that applying proposed constructions is both a prerequisite to admissibility and a bar to summary judgment.

Because Pi-Net has declined to respond to JPMC's timely arguments, the Court should grant summary judgment of non-infringement of all asserted claims if it adopts JPMC's construction of "real time," and/or summary judgment of non-infringement of all asserted claims of the '158 patent if it adopts JPMC's construction of "object routing."  *Tillman v. Pepsi Bottling Grp., Inc.*, 538 F. Supp. 2d 754, 770 (D. Del. 2008) ("While plaintiff states that she opposes [defendant's] summary judgment motion, her failure to dispute a single issue of material fact leaves the court little choice but to grant [defendant's] motion.").

4

### III. THE NEW BARDASH DECLARATION DOES NOT GIVE RISE TO A GENUINE DISPUTE THAT JPMC PRACTICES "BACK-END" ELEMENTS.

#### A. The New Bardash Declaration Does Not Establish A Genuine Dispute That JPMC Practices Back-End Limitations Of The '500 and '492 Patents.

In a last-ditch effort to retract its prior disavowal of the "back-end" claim limitations, Pi-Net relies on two arguments: (1) that JPMC is incorrectly "revising" the language of the '500 patent to include "back-end" elements; and (2) the New Bardash Declaration for the first time identifies one element of JPMC's infrastructure ▮▮▮▮▮ as the "back-end transactional application" limitation of the '500 and '492 patents.[1] (D.I. 130 at 4-5) Neither argument offers a basis for denying summary judgment.

As to Pi-Net's first argument, Pi-Net asserts that the term "transactional application" in the asserted claims of the '500 patent is somehow different than the term "back-end transactional application" in the asserted claims of the '492 patent. (Response at 4-5) But Pi-Net has proposed *identical constructions* for these terms. (D.I. 64 at 14; D.I. 74 at 78-88) Indeed, Dr. Bardash's report cites a "transactional application" as satisfying the "back-end transactional application" limitation of claim 1 of the '492 patent. (Ex. AA, Appx. J at 28-29) Having proposed a synonymous construction for these claim limitations, Pi-Net cannot jettison that definition now that it has adverse consequences for Pi-Net's infringement case.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] The untimely New Bardash Declaration fails to create a genuine issue of fact. However, as discussed in JPMC's reply brief in support of its invalidity motion (filed concurrently), to the extent that the Court denies JPMC's motions for summary judgment, JPMC reserves its rights to seek exclusion of the New Bardash Declaration, or, in the alternative, for leave to serve a supplemental responsive report and to depose Dr. Bardash on his new opinions.



This litany of contradictions demonstrates that Dr. Bardash's present position is nothing more than an attempt to manufacture a factual dispute where none exists. "[I]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed

to create issues of credibility by contradicting his own earlier testimony.'" *Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, No. C 12-2016-MWB, 2013 WL 6448824 (N.D. Iowa Dec. 9, 2013) (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983)) (second alteration in original); *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) ("[Plaintiff's expert's] affidavit is not cognizable for purposes of the summary judgment decision because it was made after the motion for summary judgment was filed and because it contradicts his earlier deposition testimony.") Thus, Dr. Bardash's opinions—which are malleable to the point of meaninglessness—cannot preclude summary judgment of non-infringement of the asserted claims of the '500 and '492 patents.

**B.  Dr. Bardash's Newfound Opinions Do Not Even Purport To Create A Dispute Regarding Accused Instrumentalities That Do Not Move Money.**

[redacted]

7



8

## IV. THERE IS NO DISPUTE THAT JPMC'S WEB SERVERS DO NOT CONNECT TO BACK-END SYSTEMS "ON TOP OF" THE WEB OR THE INTERNET.

In its opening brief, JPMC argued that the Accused Instrumentalities "do not infringe [claims 1-8 of the '492 patent] because they each fail to operate 'on top of' the Web, the Internet, or an email network."[2] (D.I. 114 at 15) Even assuming for the sake of argument that ▌ could satisfy the "back-end transactional application" limitation, there is no dispute that JPMC's systems "connect[] through the Web server to ▌" over a private network, not the Web or the Internet, as claims 1-8 of the '492 patent require. As discussed above, Pi-Net has untenably proposed that ▌ is *both* the VAN Switch and the "back-end transactional application." That means that both the VAN switch and the connection "to a back-end transactional application" must be "on top of" the Web or Internet. (Ex. C at 9:57-64) As shown below in JPMC's network architecture diagram (cited by Pi-Net in D.I. 130 at 10), ▌ (and connections thereto) are exclusively within JPMC's private network, not on the Internet or Web:



---

[2] The claim language allows for connection via an "email network," but Pi-Net does not dispute that JPMC servers do not operate over an email network. (Ex. C at 9:62-64)

9

(D.I. 130 at 10 (red annotations added) (blue annotations in Pi-Net's opposition))  Thus, a user of www.chase.com accesses JPMC's Web servers over the Internet, but those Web servers communicate with ▮▮▮▮▮▮ over a private network, which is where ▮▮▮▮▮▮ sits.  (*Id.*)

Pi-Net has no evidence that either claim element is met by JPMC's Accused Instrumentalities, and therefore attempts to confuse the issue with technical jargon.  Pi-Net highlights the non-controversial fact that JPMC Web servers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (D.I. 130 at 9)  This is irrelevant, because the claim language requires that data transmission occur "on top of" a particular *network*—the Web or the Internet. (Ex. C at 9:62-64)  While the Web and the Internet often format communications using the HTTP protocol, private networks that also happen to format communications using the same protocol are not part of the Web or the Internet any more than the United States is part of Canada simply because both countries speak English.  (*See* Ex. AJ at ¶ 25)  This case is thus closely analogous to *Automated Transactions LLC v. IYG Holding Co.*, 768 F. Supp. 2d 727, 736-38 (D. Del. 2011).  In that case, Judge Robinson construed disputed claim terms relating to the "Internet" to mean a "public network," *id.* at 737, and then granted summary judgment of non-infringement because the accused systems connected to "back-end servers by way of a *private frame relay network*."  *Id.* at 740 (emphasis added).  Just as in *IYG*, transmission of data over JPMC's private network indisputably does not occur "on top of" the Web or the Internet, and thus summary judgment of non-infringement of these claims should be granted.

## CONCLUSION

For the foregoing reasons, JPMC respectfully requests that the Court grant JPMC's summary judgment motion and dismiss Pi-Net's claims for infringement.

10

| | |
|---|---|
| DATED: February 26, 2014 | Respectfully submitted, |
| | */s/ Robert S. Saunders* |
| | Robert S. Saunders (ID No. 3027) |
| OF COUNSEL: | Jessica Raatz Kunz (ID No. 5698) |
| Daniel A. DeVito | SKADDEN, ARPS, SLATE, |
| Douglas R. Nemec |    MEAGHER & FLOM LLP |
| Edward L. Tulin | 920 N. King Street, 7th Floor |
| Andrew D. Gish | Wilmington, Delaware 19801 |
| SKADDEN, ARPS, SLATE, | Tel: (302) 651-3000 |
|    MEAGHER & FLOM LLP | Fax: (302) 651-3001 |
| Four Times Square | rob.saunders@skadden.com |
| New York, New York 10036 | jessica.kunz@skadden.com |
| Tel: (212) 735-3000 | |
| | *Attorneys for Defendant JPMorgan Chase & Co.* |