**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PI-NET INTERNATIONAL INC., | |
| Plaintiff, | |
| v. | Civ. No. 1:12-cv-00282-RGA |
| JPMORGAN CHASE & CO., | |
| Defendant. | |

**EXHIBITS DAU, DAV, DAZ, DBA, DBB, DBC, DBD, DBE, DBG AND DBN
TO TRANSMITTAL DECLARATION OF JESSICA RAATZ KUNZ**

**REDACTED VERSION
FILED PUBLICLY
MARCH 5, 2014**

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
douglas.nemec@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

DATED:  February 26, 2014

# EXHIBIT DAU



Highly Confidential - Subject to Protective Order

WXC000452831



Highly Confidential - Subject to Protective Order

WXC000452832

# EXHIBIT DAV

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PI-NET INTERNATIONAL, INC.,

    Plaintiff,

  v.

JPMORGAN CHASE & CO,

    Defendant.

C.A. No. 1:12-cv-00282-RGA

HIGHLY CONFIDENTIAL
Subject to Protective Order

## PLAINTIFF'S INITIAL INFRINGEMENT CONTENTIONS
## PURSUANT TO § 4 OF SCHEDULING ORDER FOR
## JPMORGAN CHASE & CO.

### Introduction

In accordance with § 4 of the Scheduling Order in this case, Plaintiff provides below the following information:

(a) In accordance with the Order of the Court, a maximum of six Accused Instrumentalities of the Defendant of which Plaintiff is aware. This identification is as specific as possible in view of the "core documents" provided by the Defendant (including each system, apparatus, device, service, process, method or act by name, or number and function, if known; and each service, process or method by name and function, if known, or by any system, apparatus, or device which when used, results in the practice of the claimed method or process);

(b) Each claim of each patent-in-suit that is allegedly infringed by the Defendant;

(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that Plaintiff contends is

PI-NET Initial Infringement Contentions, rev January 31, 2013    Page 1
JPMorgan Chase        HIGHLY CONFIDENTIAL

governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d)  Each element of each asserted claim set forth below is claimed to be literally present in the Accused Instrumentality.

(e)  Plaintiff claims a priority date of November 13, 1995 for each claim listed below.

## Content Description

Below, subject to the limitations hereafter set forth, Plaintiff first provides an overview of Defendant's online banking system relevant to the Accused Instrumentalities.  After the overview of the online banking system, Plaintiff identifies information available as to those six Accused Instrumentalities in accordance with the Court's Orders.

Plaintiff contends that each of the Accused Instrumentalities infringes each of the claims of the '500 and '492 Patents, and that each Accused Instrumentality infringes for the same reason.  The claims of the '158 Patent are applied only to certain Accused Instrumentalities as defined below.

## Limitations

The information set forth below is based on the limited documents provided by Defendant and other information reasonably available to the Plaintiff.  The documents provided so far by Defendant were sparse and incomplete.  The documents provided by Defendant are also not self-explanatory, utilize internal nomenclature of Defendant's personnel, and are obviously are not a complete exposition of the technology underlying the Accused Instrumentalities.  Consequently, it is possible, if not likely, that some aspects of Defendant's system were not completely understood and that errors may thereby have arisen.  Therefore, Plaintiff reserves the

## Account Transfers

Defendant has not produced any meaningful documents relating to this Accused Instrumentality. JPM 0001-0008, titled "Transfers - Add Repeating Transfer" includes some "Business Rules" includes some consumer-oriented descriptions of a proposed functionality. The document does indicate the various transactions can be performed by this Accused Instrumentality, and that that the Transfer function utilizes SOAP (JPM 0006-0007, 0013). But, other than the reference to the many transactions of which this Accused Instrumentality is capable and the disclosure of SOAP routing, there is no technical information as to these and most of Defendant's document production.

The Transfer Accused Instrumentality is reflected in the following public documents:







The consumer-oriented Business Rules documents do demonstrate that Defendant's online banking Transfer Accused Instrumentality, like the other Defendant Accused Instrumentalities, is operating and completing transactions in real-time and interactively, while Defendant's online system and Accused Instrumentalities maintain the transactions captive.

The following flow chart is an example that Defendant's online banking Transfer Accused Instrumentalities is operating and completing transactions in real-time and interactively, while Defendant's Accused Instrumentalities maintain the transactions captive:

- Leverage Alert Platform for all communications to customer (Email, SMS, and SMC).



(JPM 0062)

## Payments

Defendant has not produced any meaningful documents relating to this Accused Instrumentality.

The Payments Accused Instrumentality is reflected in public documents, such as the following:



















## Customer Center

Defendant has not produced any meaningful documents relating to this Accused Instrumentality.

The Accused Instrumentality is reflected in the following screenshot:



## Account Activity (Business Card)

Defendant has not produced any meaningful documents relating to this Accused Instrumentality. The Accused Instrumentality is reflected in the following public screenshots:







JPM 0239 shows the following depiction of Defendant's business card system:



(JPM 0239)

### Wire Transfers

Defendant has not produced any relevant documents relating to this Accused Instrumentality. For example, Defendant produced JPM 0213, an Excel spreadsheet relating to this function, but that spreadsheet deals solely with business rules to implement Dodd-Frank. No technical information is contained in the document.

The Accused Instrumentality is reflected in the following public screenshots:







The following three drawings are the only information provided by Defendant as to its wire transfer functionality, albeit without any explanatory text. (JPM 0240-0241):

# EXHIBIT DAZ

**HIGHLY CONFIDENTIAL**

**[Page 1]**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


PI-NET INTERNATIONAL, INC., )

          Plaintiff,     )

          vs.          ) No. C.A. No. 1:12-cv-00282-RGA

JPMORGAN CHASE & CO.,     )

          Defendant.     )


          Deposition of RICHARD JOHN ROMANELLI,

taken before GREG S. WEILAND, CSR, RMR, CRR,

pursuant to the Federal Rules of Civil Procedure for

the United States District Court pertaining to the

taking of depositions, at Suite 2800, 155 North

Wacker Drive, in the City of Chicago, Cook County,

Illinois, commencing at 9:07 o'clock a.m., on the

1st day of October, 2013.


VOLUME I


THIS TRANSCRIPT AND THE EXHIBITS REFERENCED HEREIN

HAVE BEEN DESIGNATED HIGHLY CONFIDENTIAL PURSUANT TO

PROTECTIVE ORDER

**HIGHLY CONFIDENTIAL**

```
 1    PRESENT:
 2
 3    ON BEHALF OF THE PLAINTIFF:
 4      O'KELLY, ERNST & BIELLI, LLC
 5      BY: MR. GEORGE PAZUNIAK
 6      901 North Market Street
 7      Suite 1000
 8      Wilmington, Delaware 19801
 9      (302) 478-4230
10      E-mail: gp@del-iplaw.com
11
12    ON BEHALF OF THE DEFENDANT:
13      SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
14      BY: MR. DOUGLAS R. NEMEC
15        MR. ANDREW GISH
16      4 Times Square
17      New York, New York 10036
18      (212) 735-2419 (Mr. Douglas R. Nemec)
19      (212) 735-2635 (Mr. Andrew Gish)
20      E-mail: douglas.nemec@skadden.com
21          andrew.gish@skadden.com
22
23
24
25
```

                                          **[Page 2]**

```
 1                  INDEX
 2    October 1st, 2013
 3    TESTIMONY OF RICHARD JOHN ROMANELLI, Volume I
 4                                      PAGE
 5    Examination by Mr. Pazuniak ......................10
 6
 7              DEPOSITION EXHIBITS
 8    NUMBER       DESCRIPTION            PAGE
 9    Exhibit 47c   High Level Architecture      152
10      Document, Biz Card
11      Enhancements, Phase 1,
12        SR#06027491, Bates labeled
13        JMP0115052 through 0115069
14    Exhibit 54   CIG - CXC Phase 1B, Bates     90
15      labeled JPM0159339
16    Exhibit 122   Document Bates labeled       189
17        JPM0146770 through 0146771
18    Exhibit 123   Document Bates labeled       188
19        JPM0147055 through 0147091
20    Exhibit 124   Document Bates labeled       188
21        JPM0147092 through 0147106
22    Exhibit 125   Document Bates labeled       187
23        JPM0190750 through 0190757
24    Exhibit 126   Documents Bates labeled      186
25        JPM0190787 through 0191063
```

                                          **[Page 3]**

```
 1         DEPOSITION EXHIBITS (CONTINUED)
 2    NUMBER        DESCRIPTION          PAGE
 3    Exhibit 183   Defendant JPMorgan Chase &      22
 4      Co.'s Objections and Responses
 5      To Plaintiff's Notice of
 6      Deposition Pursuant to Fed. R.
 7      Civ. P. 30(b)(6), 16 pages
 8    Exhibit 184   Defendant JPMorgan Chase &      22
 9      Co.'s Objections and Responses
10      to Plaintiff's Second Notice of
11      Deposition Pursuant to Fed. R.
12      Civ. P. 30(b)(6), 32 pages
13    Exhibit 185   Letter to Dear Prospective      23
14      Spectrum Customer, with
15      attachments, Bates labeled
16      Spectrum/Pronto 1 through 102
17    Exhibit 186   Letter to Dear Colleague,       25
18      September/October 1994, with
19      attachments, Bates labeled
20      ChasePCBanking 1 through 61
21    Exhibit 187   Document titled Microsoft Money  30
22      3.0, no Bates label, 1 page
23
24
25
```

                                          **[Page 4]**

```
 1         DEPOSITION EXHIBITS (CONTINUED)
 2    NUMBER        DESCRIPTION          PAGE
 3    Exhibit 188   News Release dated June 13,      31
 4      1995, with attachments, Bates
 5      labeled ChaseDirect 1 through
 6      113
 7    Exhibit 189   Article, Chase's Automation      33
 8      Game Plan, Bates labeled
 9      JPM0067453 through 0067458
10    Exhibit 190   Pi-Net Litigation Prior Art      33
11      Search, Bates labeled
12      JPM0070653 through 0070654
13    Exhibit 191   Wharton Financial Institutions   35
14      Center, Innovation in Retail
15      Banking, by Frances X. Frei, et
16      al., Bates labeled JMP0067139
17      through 0067185
18    Exhibit 192   Innovation in Financial          39
19      Services, Case Study: Home
20      Banking, by Jeremy Shapiro,
21      Bates labeled JPM0067225
22      through 0067268
23    Exhibit 193   Document Bates labeled           40
24      JPM0002111
25
```

                                          **[Page 5]**

**HIGHLY CONFIDENTIAL**

DEPOSITION EXHIBITS (CONTINUED)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 194 | Online Inquiry Management, Software Architecture Document, Version 1.3, Bates labeled JPM0059432 through 0059456 | 41 |
| Exhibit 195 | PowerPoint, CIG IT Town Hall, IT Updated, no Bates labels, 47 pages | 44 |
| Exhibit 196 | Document Bates labeled JPM0002103 through 0002105 | 61 |
| Exhibit 197 | Authorization Technical Specification - ER110, March 2010 - Authorization Middleware, Bates labeled JPM0002084 through 0002101 | 63 |
| Exhibit 198 | Screen shots, Payments & Transfers, no Bates labels, 9 pages | 72 |
| Exhibit 199 | Screen shot, Transfer Money, no Bates label, 1 page | 74 |
| Exhibit 202 | Screen shot, Transfer Money, no Bates label, 1 page | 75 |
| Exhibit 203 | Screen shots, Pay Bills, no Bates labels, 2 pages | 79 |

**[Page 6]**

DEPOSITION EXHIBITS (CONTINUED)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 204 | Screen shot, Pay Bills, no Bates label, 1 page | 79 |
| Exhibit 205 | Screen shots, Pay Bills, no Bates labels, 2 pages | 80 |
| Exhibit 206 | Screen shot, Payments & Transfers, Wire Money, no Bates label, 1 page | 83 |
| Exhibit 207 | Screen shot, Payments & Transfers, Wire Money, no Bates label, 1 page | 83 |
| Exhibit 208 | Screen shot, Payments & Transfers, Wire Money, no Bates label, 1 page | 83 |
| Exhibit 209 | The WebSphere Platform Foundation, Bates labeled JPM0173637 through 173685 | 197 |
| Exhibit 212 | Morcom MoneyTransfer Webservice API, Developer Guide version 1.0, Bates labeled JPM0159418 through 0159464 | 195 |

**[Page 7]**

DEPOSITION EXHIBITS (CONTINUED)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 213 | CIG Infrastructure Technology Strategy Plan - WebSphere vs. WebLogic, Bates labeled JPM0083129 through 0083135 | 196 |
| Exhibit 218 | Excel spreadsheet, Bates labeled JPM0190505 | 184 |
| Exhibit 219 | Excel spreadsheet, Bates labeled JMP0190506 | 184 |
| Exhibit 221 | Excel spreadsheet, Bates labeled JPM0052256 | 180 |
| Exhibit 223 | Excel spreadsheet, Bates labeled JPM0147116 | 183 |
| Exhibit 226 | Technical Approach, ES-213, Enterprise Systems Release, SR#12049828, Bates labeled JPM0088864 through 0088877 | 191 |
| Exhibit 227 | 2013 Tech Refresh Program, Bates labeled JPM0098230 through 0098288 | 192 |
| Exhibit 233 | Excel spreadsheet, Bates labeled JPMC0000213 | 180 |
| Exhibit 234 | Chart, CIG | 156 |

**[Page 8]**

DEPOSITION EXHIBITS (CONTINUED)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 235 | Chart, CIG Wires Processing Flow with Funding Details | 156 |
| Exhibit 237 | Document Bates labeled JMP0030606 through 0030620 | 189 |
| Exhibit 238 | Document Bates labeled JPM0190758 through 0190786 | 191 |

**[Page 9]**

**[3]  (Pages 6 to 9)**

**HIGHLY CONFIDENTIAL**

```
 1          (Witness sworn.)
 2      RICHARD JOHN ROMANELLI
 3   after being first duly sworn, testified as follows:
 4          EXAMINATION
 5   BY MR. PAZUNIAK:
 6      Q.  Please state your full name for the
 7   record.
 8      A.  My name is Richard John Romanelli.
 9      Q.  And what is your address?
10      A.  My home address?
11      Q.  Home address, yes.
██████████████████████████████████████
██████████████████████████████████████
14      Q.  And by whom are you employed?
15      A.  JPMorgan Chase.
16      Q.  And what is your present position?
17      A.  My present position is an architecture
18   lead manager position.
19      Q.  Okay.  Now, can you just give us briefly
20   your educational background.
21      A.  I graduated Illinois State University.  I
22   graduated a Master's program at Northwestern
23   University.  And that's my ...
24      Q.  Okay.  And what degree did you get at
25   Illinois State University and in what year?
```

[Page 10]

```
 1      A.  I received a Bachelor of Science Degree in
 2   computer science in 1987.
 3      Q.  And in what specialization did you get
 4   your Master's and in what year?
 5      A.  My Master's Degree was a Master's of
 6   management degree in 1998.
 7      Q.  And after graduating Illinois State
 8   University, did you go to work?
 9      A.  I did.
10      Q.  And where was that?
11      A.  I started working at IBM.
12      Q.  In what location?
13      A.  I was in Austin, Texas.
14      Q.  And what was your position there?
15      A.  I started in the software development lab
16   as a, I believe as a tester in the testing group.
17      Q.  And how long did you stay with IBM?
18      A.  Could you be more specific about that?
19      Q.  How long did you retain your employment at
20   IBM?
21      A.  I stayed at IBM Austin until 1994.
22      Q.  And then what changed?
23      A.  I came to Chicago.
24      Q.  Still working for IBM?
25      A.  I was working as a consultant.
```

[Page 11]

```
 1      Q.  For whom?
 2      A.  Sorry?
 3      Q.  For whom?
 4      A.  For myself.
 5      Q.  Okay.  And did you have a name for your
 6   company?
 7      A.  No.  It was just a private startup
 8   company.
 9      Q.  Okay.  And what kind of -- well, before we
10   get to that, what other job titles and
11   responsibilities did you have with IBM between 1987
12   and 1994?  Perhaps you can just list it for us and
13   give us the approximate date range.
14      A.  Okay.  After testing, so this would have
15   been mid 1988, I was a developer, software developer
16   probably through about 1990, and then in 1990 I was
17   a staff and support position for the product that we
18   had, and then in 1992, I took a job again as a
19   development manager, a development lead I guess we
20   called them then.  And then in 1994 I left Austin.
21      Q.  And was there any particular product that
22   you were working on between, let's say, 1990 and
23   1994?
24      A.  Yes, there was.
25      Q.  And what was that?
```

[Page 12]

```
 1      A.  It was a DB2 on OS/2 product.
 2      Q.  That's a database?
 3      A.  Yes.
 4      Q.  Okay.  And how long were you a
 5   self-employed consultant?
 6      A.  I was a consultant from June '94 to August
 7   '95.
 8      Q.  And any specific areas that you provided
 9   consulting in?
10      A.  Not really.  I mean, could you be --
11      Q.  Okay.
12      A.  -- more specific about the question?
13      Q.  Can you tell us for whom you consulted
14   between June 1994 and August 1995?
15      A.  I actually was a consultant at IBM in
16   Chicago.
17      Q.  And what product were you working on?
18      A.  We were working with a customer.  There
19   was no product, per se.
20      Q.  Okay.  And what was the customer?
21      A.  The customer at the time was Bank of
22   America.
23      Q.  And was there any particular functionality
24   or end use that you were working on during that
25   year?
```

[Page 13]

**[4]  (Pages 10 to 13)**

**HIGHLY CONFIDENTIAL**

1    Q.  Yes.  It's a continuation of the same
2  thing, so maybe we will just, unless you have --
3  it's not a really good point, so maybe we will just
4  continue for a little while.
5    A.  All right.  Why don't we continue and then
6  let's mark --
7    Q.  But if you want to take a break, that's
8  separate.
9    A.  Well, why don't we try to mark again
10  around the end of the hour or 12:30 and we will see
11  where we are.
12    Q.  That's fine.
13    So let's take a look at this chart,
14  Page 11 of Exhibit 54, at the section called
15  Customers, and let's reflect on either a retail
16  customer for right now --
17    A.  Excuse me.  Can you get me back to where I
18  was here?  Do you know where I was in this thing?
19    Q.  We're on Exhibit --
20    A.  No, I mean this thing, the operating
21  system.  I scrolled to scroll down on the right-hand
22  side, and then Windows, whatever this thing is,
23  what's it called?
24    MR. NEMEC:  Windows must be 8.
25    THE WITNESS:  Right, Windows 8 took over

[Page 98]

1  now goes and puts in the ID and password.  And what
2  happens after that?
3    A.  Okay.  So from the point at which, I'm
4  asking, do you want me to start from the point at
5  which the user is going to create a session or log
6  in to chase.com?
7    Q.  Right, exactly.  That's why I said I want
8  it as complete as possible so that we don't have
9  loose ends and have a clear understanding.
10    A.  Let me see if I can get the right size of
11  the diagram to see it all at once.
12    So using this diagram and identifying
13  where I think the diagram might be inaccurate, the
14  user would be presented a page that's not depicted
15  in this diagram for the chase.com homepage or log-in
16  page.
17

[Page 100]

1  and I lost my place.
2    Sorry.
3    MR. PAZUNIAK:  I happen to dislike
4  Windows 8 tremendously.
5    THE WITNESS:  The problem is that
6  right-hand scroll.
7    MR. PAZUNIAK:  That's fine.  Just make
8  yourself comfortable with whatever.
9  BY MR. PAZUNIAK:
10    Q.  So we're on Page 11, Exhibit 54, and let's
11  first look at consumer retail customers.
12    A.  Okay.
13    Q.  And look at the function, let's say,
14  transferring funds.
15    Can you just take us through the sequence
16  of events that occurs in the processing of that and
17  utilizing to the extent possible the information
18  that we have on this chart to help us go through it?
19    Can you do that?
20    A.  What part, where should I start?  Like
21  what should I assume, or do you want me to assume
22  it's already --
23    Q.  I want to be completely accurate, so we
24  would start with a consumer going to chase.com and
25  seeing enter your user ID and password, and the user

[Page 99]



[Page 101]

[26]  (Pages 98 to 101)

**HIGHLY CONFIDENTIAL**



Page 102:

15    So you might see a log-in page, the
16  customer would take the action, fill in their user
17  ID, fill in their password, select the Submit
18  button.  What I described happens, and then an HTML
19  page is rendered back to the customer.
20    Q.  And that page that's rendered would be
21  changed in some ways in accordance with the
22  authorization to which that particular user is
23  entitled?
24    A.  That's correct.
25    Q.  And where would the system make that

**[Page 102]**

Page 104:

16    Q.  That's fine.  Out of curiosity, has anyone
17  determined how many millions of lines of code are
18  incorporated in the Chase On-Line system?
19    A.  I don't know that anyone has determined
20  that.

**[Page 104]**

Page 103:

1  decision as to what is shown to the user?

**[Page 103]**

**[Page 105]**

**[27]  (Pages 102 to 105)**

# EXHIBIT DBA

**HIGHLY CONFIDENTIAL**

**[Page 1]**

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

PI-NET INTERNATIONAL INC.,:

        Plaintiff,     :

                       :

    vs.               :

                       :

JPMORGAN CHASE & CO.,   :

        Defendant.    :  NO. 12-282-RGA

***HIGHLY CONFIDENTIAL***

- - -

September 17, 2013

- - -

Videotape deposition of MICHAEL S. HARTMAN

taken pursuant to notice, held the Law Offices

of Skadden, Arps, Slate, Meagher & Flom LLP,

One Rodney Square, Wilmington, DE 19899,

commencing at 9:08 a.m., on the above date,

before Jennifer P. Miller, Registered

Professional Reporter and Notary Public for

the State of Delaware.

**HIGHLY CONFIDENTIAL**



```
 1   A P P E A R A N C E S :
 2   O'KELLY, ERNST & BIELLI, LLC
     GEORGE PAZUNIAK, ESQUIRE
 3     901 N. Market St.
       Suite 1000
 4     Wilmington, DE 19801
       (302) 478-4230
 5
 6     Counsel for Plaintiff
 7
 8   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     ANDREW D. GISH, ESQUIRE
 9   DOUGLAS R. NEMEC, ESQUIRE
       One Rodney Square
10     P.O. Box 636
       Wilmington, DE 19899
11     (302) 651-3000
12       Counsel for Defendant
13
14
15   ALSO PRESENT:  DAVID LEVIN, VIDEOGRAPHER
16                  MICHAEL BARDASH (VIA SKYPE)
17
18
19
20
21
22
23
24
25
                                    [Page 2]
```

```
 1              - - -
 2         P R O C E E D I N G S
 3              - - -
 4         THE VIDEOGRAPHER:  This is the
 5   videotape deposition of Michael S.
 6   Hartman in the matter of Pi-Net
 7   International Incorporated versus
 8   JPMorgan Chase & Company in the United
 9   States District Court for the District of
10   Delaware, Civil Action No. 12-282-RGA.
11         This deposition is being held
12   at Skadden Arps, 190 Square 920 North
13   King Street, Seventh Floor, Wilmington,
14   Delaware on Tuesday, September 17, 2013
15   at 9:08 a.m.
16         My name is David Levin from
17   U.S. Legal Support.  I am the Video
18   Specialist.  The Court Reporter today is
19   Jennifer Miller, also from U.S. Legal
20   Support.
21         Going on the record at 9:08.
22   Counsel will now state their appearances
23   for the record.
24         MR. PAZUNIAK:  George Pazuniak
25   for Plaintiff Pi-Net International.
                                    [Page 3]
```

```
 1         MR. GISH:  Andrew Gish for
 2   Defendant JPMorgan Chase & Co. and the
 3   witness.
 4         MR. NEMEC:  Doug Nemec from
 5   Skadden Arps for the Defendants.
 6         THE VIDEOGRAPHER:  Will the
 7   Court Reporter please swear in the
 8   witness.
 9              - - -
10         MICHAEL S. HARTMAN, after
11   having been first duly sworn, was
12   examined and testified as follows:
13              - - -
14         E X A M I N A T I O N
15              - - -
16   BY MR. PAZUNIAK:
17     Q.  Please state your name for the
18   record.
19     A.  It's Michael Scott Hartman.
20     Q.  And where do you live?
21
22
23
24
25     Q.  And by whom are you employed?
                                    [Page 4]
```

```
 1     A.  JPMorgan Chase.
 2     Q.  And what is your position there?
 3     A.  I'm an architect lead.
 4     Q.  Now, have you been deposed before?
 5     A.  I have not.
 6     Q.  So I'm sure your counsel has given
 7   you all the requisite instructions for a
 8   deposition.  However, just to -- in excess of
 9   caution, I will ask you to remember just a few
10   simple rules.
11         One is I will be asking you
12   questions, and I will assume that you
13   understand my question when I ask it.  You do
14   not feel my question is as understandable or
15   if there's any confusion, just ask me to
16   rephrase it, and I will be happy to do that.
17         If I am talking, I will ask you
18   not to talk by the same token.  When you're
19   talking, I will refrain from talking or when
20   your counsel is saying something.
21         The Court Reporter can only
22   take one person at a time, so we have to be
23   careful.
24         If you need to take a break,
25   just let me know, and we can do that at any
                                    [Page 5]
```

**HIGHLY CONFIDENTIAL**



**[Page 86]**

1    **Q.** Just choose any one. I just want to
2  be able to --
3    A. Okay.
4    **Q.** -- have an example that you can
5  follow through.
6    A. Yes. I guess if we take the
7  scenario of the customer wanting to view the
8  account summary information, like what's your
9  balance, your credit line, your payment due
10  date, et cetera, there would be a request from
11  the card holder's browser to view the page
12  that has that information on the website.
13    **Q.** Uh-hum.

**[Page 88]**

1    **Q.** Does that complete your answer?
2    A. That does complete it.

**[Page 87]**

**[Page 89]**

**HIGHLY CONFIDENTIAL**



6    **Q.**  And so does -- take me through --
7    take me through the communication technical
8    process once you have a user who opens up to a
9    Web page such as page two, the demo page two,
10   and -- and gets the information.
11            How -- how -- can you just take
12   me through how this page was created from the
13   time that the card holder logged on?
14       A.  So we would retrieve the information
15   for the online user to understand which
16   accounts the user has.

17       **Q.**  And all of that takes how many
18   milliseconds?
19       A.   My understanding is that our average
20   page load time for the my accounts page for
21   all Chase Online is around six -- six seconds
22   total.

[Page 110]

[Page 112]

[Page 111]

[Page 113]

# EXHIBIT DBB

***HIGHLY CONFIDENTIAL***

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Case No. 12-282-RGA

PI-NET INTERNATIONAL, INC.,                    :
                                               :
                                               :
        Plaintiff,                             :
                                               :
                                               :
        vs.                                    :
                                               :
                                               :
                                               :
                                               :
J.P. MORGAN CHASE & CO,                        :
                                               :
        Defendant.                             :
                                               :
                                               :
                                               :
                                               :


       -------------------------------------

       DEPOSITION UNDER ORAL EXAMINATION OF:

              LAKSHMI ARUNACHALAM, PH.D.


                September 26, 2013


                   -----------

   REPORTED BY:  JENNIFER L. WIELAGE, CCR, RPR, CRR
                   ------------

1      TRANSCRIPT of the deposition of the
2  above-named witness, called for Oral Examination in
3  the above-entitled matter, said deposition being
4  taken pursuant to Federal Court Rules, by and before
5  JENNIFER WIELAGE, Certified Shorthand Reporter and
6  Notary Public of the State of New Jersey, License No.
7  XI01916, at the office of SKADDEN, ARPS, SLATE,
8  MEAGHER & FLOM, LLP, 920 N. King Street, Wilmington,
9  Delaware, on Thursday, September 26, 2013, commencing
10  at 9:00 in the forenoon.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**[Page 2]**

1                I N D E X
2  W I T N E S S
3  Testimony of:
4  LAKSHMI ARUNACHALAM, PH.D.          PAGE NO.
5  EXAMINATION BY MR. TULIN:              8
6         E X H I B I T S
7
8  NUMBER          DESCRIPTION          PAGE
9  DX-136    30(b)(6) Defendants'      10
            Notice of 30(b)(6)
10           Deposition
11  DX-137    Plaintiff Pi-Net         15
            International Inc.'s
12           Response to Defendants'
            First Set of Common
13           Interrogatories
    DX-138    Plaintiff Responses to   15
14           Defendants' Second Set
            of Common
15           Interrogatories
    DX-139    WXC000048976 through     26
16           WXC000048989
17  DX-140    WXC 000191466 through    80
            WXC 000191468
18  DX-141    Patent No. 5,987,500     89
19  DX-142    Patent No. 8,037,158     89
20  DX-143    Patent No. 8,108,492     90
21  DX-144    WXC0000037370 through    90
            WXC0000037453
22  DX-145    WXC000047148            136
23  DX-146    WXC000009172 through    148
            WXC000009194
24  DX-147    WXC 0000007581 through  152
            WXC 000007594
25

**[Page 4]**

2  A P P E A R A N C E S :
3  O'KELLY, ERNST & BIELLI, LLC
   1600 Market Street
4  Philadelphia, Pennsylvania 19103
   (215) 543-7182
5  BY:  GEORGE PAZUNIAK, ESQ.
     Attorneys for the Plaintiffs
6
7
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
8  Four Times Square
   New York, New York 10036
9  (212) 735-2815
   BY: EDWARD L. TULIN, ESQ.
10  BY: DOUGLAS R. NEMEC, ESQ.
     Attorneys for the Defendant
11
12
13
   ALSO PRESENT - KEN AMRHEIN, U.S. Legal Support,
14  SAMUEL MOULTRIE
15
16
17
18
19
20
21
22
23
24
25

**[Page 3]**

1  DX-148    WXC 000047257 through    160
            WXC 000047264
2  DX-149    WXC000047267 through     167
            WXC00047331
3  DX-150    WXC 0000068226 through   191
            0000068256
4  DX-151    WXC 0000030868 through   221
            0000030928
5  DX-152    WXC000289467 through WXC 228
            000289472
6  DX-153    WXC 000456972 through    251
            WXC 000456974
7  DX-154    WXC 000059589           263
   DX-155    WXC 000059839 through    269
8            000059840
   DX-156    WXC000064351 through     283
9            WXC000064354
   DX-157    WXC0000085621 through    297
10           WXC0000085630
   DX-158    WXC000062538 through     307
11           WXC000062540
   DX-159    WXC000459049 through     317
12           WXC000459052
   DX-160    U.S. Patent No.          325
13           6,212,556
14
15
16
17
18
19
20
21
22
23
24
25

**[Page 5]**

**[2]  (Pages 2 to 5)**

HIGHLY CONFIDENTIAL

DEPOSITION SUPPORT INDEX
DIRECTION TO WITNESS NOT TO ANSWER

Page Line

255 5

REQUEST FOR PRODUCTION OF DOCUMENTS

Page  Line

STIPULATIONS

Page  Line

QUESTION MARKED

Page  Line

[Page 6]

---

Morgan.

MR. PAZUNIAK:  George
Pazuniak representing the
plaintiff, Pi-Net International
and the witness.

THE VIDEOGRAPHER:  Will the
court reporter please swear in the
witness?

LAKSHMI ARUNACHALAM,
having been first duly sworn according to
law, testifies as follows:

EXAMINATION BY MR. TULIN:

Q.   Good morning,
Dr. Arunachalam.

A.   Good morning, Ed.

Q.   Dr. Arunachalam, you've been
deposed before; is that correct?

A.   Yes.

Q.   Today is likely to be very
similar to those prior depositions, but
just so we're on the same page, I'd like
to go over a little bit about what we can
expect from today's proceeding.

I'll be asking you a series
of questions and our court reporter will

[Page 8]

---

THE VIDEOGRAPHER:  Okay.
This now begins the videotaped
deposition of Lakshmi Arunachalam
taken in the matter of Pi-Net
International Incorporated vs.
J.P. Morgan Chase & Company for
the United States District Court
for the District of Delaware, Case
No. 12-282-RGA.

This deposition is being
held at Skadden Arps, Slate,
Meager & Flom, 1 Rodney Square,
920 North King Street, Wilmington,
Delaware, on September 26, 2013.
My name is Ken Amrhein for U.S.
Legal Support.  I'm the video
legal specialist.  The court
reporter today is Jen Wielage also
from U.S. Legal Support.

We are going on the record
at 9:08 a.m.  counsel will now
state their appearance for the
record.

MR. TULIN:  Ed Tulin from
Skadden, Arps representing J.P.

[Page 7]

---

be taking down both the questions that I
ask you as well as the answers that you
give.

Because of that, it's very
important, if we can, to try to avoid
talking over each other or gestures or
nods of the head; anything that the court
reporter can't take down.

Can you try to keep your
answers verbal for me?

A.   Yes.

Q.   And we have a variety of
refreshments in the back.  If there's any
reason that you need to take a break, to
get some refreshments or otherwise,
that's fine.  Just let me know.  I would
ask, however, that if I've already asked
you a question, you go ahead and answer
that question and then we'll take our
break.

Does that sound good?

A.   That sounds fine.

Q.   There may be a time today
where you don't understand a question
that I've asked you.  If that occurs,

[Page 9]

[3]  (Pages 6 to 9)





1    last paragraph on the front page of
2    Exhibit 159.
3        A.    Okay.  "I have created"?
4        Q.    "I have created", yes.
5        A.    Yeah.
6        Q.    These two sentences read, "I
7    have created a trillion dollar vision
8    that I made true in the marketplace and I
9    am extremely proud of that.  I own the
10   cloud.  I own every Web 2.0 transaction.
11   I own every media transaction there is
12   and is to come."
13        Do you see those two
14   sentences?
15        A.    Yes, I do.
16        Q.    When you were referring to
17   the vision that you had created, are you
18   referring to the patents in suit?
19        A.    Sure.  It's a horizontal
20   platform that met the universal need.  I
21   created such huge commercial success,
22   yeah, and the implementation of that in
23   software, et cetera, or whatever I have
24   done in my own way, it's -- you know --
25   success is about making that effort.

[Page 322]

1    That is success.  Right?  And don't give
2    up, never.
3        Q.    And when you were --
4        A.    And even if we have to deal
5    with -- you said you're a very mighty law
6    firm even though we're a very small
7    group.  Even though we have to deal with
8    mighty smart lawyers, I will persevere
9    on.
10       Q.    When you refer to --
11       THE WITNESS:  You got that,
12   right?
13   BY MR. TULIN:
14       Q.    -- owning the cloud --
15       A.    Yes.
16       Q.    -- what are you referring
17   to?
18       A.    I'm referring to what the
19   patent -- the patent office -- U.S.
20   Patent and Trademark Office has given me
21   exclusive rights for what I have claimed
22   in the patents.
23       Q.    And so when you referring to
24   "owning the cloud", you're referring to
25   rights that you have based upon the

[Page 323]

1    patents in suit?
2        MR. PAZUNIAK:  Objection.
3        A.    About what the claims --
4    what I've claimed in each of the patents
5    and shall continue to claim in new
6    patents that I shall write, yes.
7    BY MR. TULIN:
8        Q.    And is that also true with
9    respect to your statement that you own
10   every Web 2.0 transaction, is that also
11   based on the claims of the patents in
12   suit?
13       A.    Yes, the patent office --
14   the U.S. Patent and Trademark Office has
15   given me exclusive right to whatever I've
16   claimed in each of the patents in the
17   patent portfolio and that take priority
18   to the earliest -- so I'm the earliest
19   Internet patent that does this kind of
20   thing.
21       Q.    Dr. Arunachalam, you can set
22   that exhibit aside.  And it's 5:45.  Are
23   you doing okay?
24       A.    I'm doing okay.  I'd rather
25   go longer today and end early so we all

[Page 324]

1    catch an early train tomorrow.
2        Q.    Why don't we do one more
3    topic and we'll call it a day?  Don't
4    want to keep you too long today.
5        A.    But if you want to go
6    longer, I am game for it tonight.
7        Q.    Let's go ahead and mark as
8    Exhibit 16.
9        A.    See, my sister had cancer so
10   I don't want to drive late in the
11   night.  If we can leave early tomorrow...
12       MR. TULIN:  Let's go ahead
13   and mark as Exhibit 160, U.S.
14   Patent No. 6,212,556.
15       (Exhibit DX-160, U.S. Patent
16   No. 6,212,556, was marked for
17   Identification by the court
18   reporter.)
19       A.    Okay.
20   BY MR. TULIN:
21       Q.    Dr. Arunachalam, do you
22   recognize the Exhibit 160?
23       A.    Of course.  It's my patent,
24   yeah.
25       Q.    And we'll use the same

[Page 325]

[82]  (Pages 322 to 325)

# EXHIBIT DBC

**HIGHLY CONFIDENTIAL**

```
                ***HIGHLY CONFIDENTIAL***
          UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE


                           Case No. 12-282-RGA
PI-NET INTERNATIONAL, INC.,                   :
                                              :
                                              :
          Plaintiff,                          :
                                              :
                                              :
          vs.                                 :
                                              :
                                              :
                                              :
                                              :
J.P. MORGAN CHASE & CO.,                      :
                                              :
          Defendant.                          :
                                              :
                                              :
                                              :
                                              :


          ---------------------------------------
          DEPOSITION UNDER ORAL EXAMINATION OF:
                  LAKSHMI ARUNACHALAM
                     (VOLUME II)
               September 27, 2013


                    -----------
     REPORTED BY:  JENNIFER L. WIELAGE, CCR, RPR, CRR
                    ------------
```

**HIGHLY CONFIDENTIAL**

1    TRANSCRIPT of the deposition of the
2  above-named witness, called for Oral Examination in
3  the above-entitled matter, said deposition being
4  taken pursuant to Federal Court Rules, by and before
5  JENNIFER WIELAGE, Certified Shorthand Reporter and
6  Notary Public, License No. XI01916, at the office of
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, 920 N.
8  King Street, Wilmington, Delaware, on Friday,
9  September 27, 2013, commencing at 8:00 in the
10  forenoon.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**[Page 2]**

I N D E X

W I T N E S S

Testimony of:

LAKSHMI ARUNACHALAM, PH.D.          PAGE NO.

EXAMINATION BY MR. TULIN:          8

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|--------|-------------|------|
| DX-161 | WXC000080941 through WXC000080995 | 13 |
| DX-162 | WXC000142243 through WXC000142274 | 54 |
| DX-163 | WXC000012993 through WXC000013004 | 77 |
| DX-164 | WXC000017847 | 93 |
| DX-165 | WXC000017765 through WXC000017766 | 101 |
| DX-166 | WXC0007162 through WXC0007165 | 112 |
| DX-167 | WXC000007193 through WXC 000007213 | 114 |
| DX-168 | WXC000048904 through 000048905 | 118 |
| DX-169 | WXC000294687 through WXC00294699 | 123 |
| DX-13 | WXC000064138 through WXC0000064155 | 140 |
| DX-170 | WXC000062916 through WXC000062920 | 147 |
| DX-15 | WXC000059862 through WXC000059864 | 159 |
| DX-16 | WXC000171933 through WXC000171936 | 178 |

**[Page 4]**

A P P E A R A N C E S :

O'KELLY, ERNST & BIELLI, LLC
1600 Market Street
Philadelphia, Pennsylvania 19103
(215) 543 7182
BY: GEORGE PAZUNIAK, ESQ.
Attorneys for the Plaintiff

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York  10036
(212) 735 2815
BY: EDWARD L. TULIN, ESQ.
BY:  DOUGLAS R. NEMEC, ESQ.
Attorneys for the Defendant


ALSO PRESENT   KEN AMRHEIN, U.S. Legal Support

**[Page 3]**

| | | |
|--------|-------------|------|
| DX-171 | WXC000061980 through WXC000062004 | 188 |
| DX-172 | WXC000062047 through WXC000062051 | 204 |
| DX-18 | WXC000058408 through WXC000058411 | 213 |
| DX-173 | WXC000458895 through WXC000458899 | 242 |
| DX-174 | WXC000059423 through 000059427 | 245 |
| DX-175 | WXC000055792 through WXC000055799 | 255 |
| DX-176 | WXC00027077 through WXC000270793 | 263 |
| DX-177 | WXC000454927 through WXC0454930 | 274 |
| DX-178 | Settlement Agreement | 279 |
| DX-178 | Excerpt from the Bank of America 2012 Annual Report | 291 |
| DX-179 | Excerpt from the Bank of America 2012 Annual Report | 292 |
| DX-180 | Capital One License Agreement | 296 |
| DX-181 | Excerpt From the Capital One Annual Report | 307 |
| DX-182 | WXC00270813 through WXC000270830 | 311 |

**[Page 5]**

**[2]  (Pages 2 to 5)**

**HIGHLY CONFIDENTIAL**



**[Page 6]**

```
1        DEPOSITION SUPPORT INDEX
         DIRECTION TO WITNESS NOT TO ANSWER
2
             Page Line
3
             304  23
4            317  7
             317  17
5            317  22
             317  25
6
7    REQUEST FOR PRODUCTION OF DOCUMENTS

             Page  Line
8
9
         STIPULATIONS
10
11           Page  Line
12
13       QUESTION MARKED
14           Page  Line
15
16
17
18
19
20
21
22
23
24
25
```

**[Page 7]**

```
1              THE VIDEOGRAPHER:  Okay.
2    This begins Volume 2 of the
3    videotaped deposition of
4    Dr. Lakshmi Arunachalam taken in
5    the matter of Pi-Net International
6    Incorporated vs. J.P. Morgan Chase
7    & Company, the United States
8    District Court for the District of
9    Delaware, Case No. 12-282-RGA.
10   This deposition is being held at
11   Skadden, Arps, Slate, Meagher &
12   Flom, 1 Rodney Square, 920 North
13   King Street, Wilmington, Delaware
14   on September 27, 2013.
15             I'm Ken Amrhein from U.S.
16   Legal Support.  I'm the video
17   specialist.  The court reporter
18   today is Jen Wielage also from
19   U.S. Legal Support.
20             We are going back on the
21   record at 8:11 a.m.  Counsel,
22   please proceed.
23   LAKSHMI ARUNACHALAM,
24   222 Stanford Avenue, Menlo Park,
25   California, 94025, having been previously
```

**[Page 8]**

```
1    duly sworn according to law testifies as
2    follows:
3    EXAMINATION BY MR. TULIN:
4        Q.   Good morning,
5    Dr. Arunachalam.
6        A.   Good morning.
7        Q.   Dr. Arunachalam, do you
8    understand that you are still under oath
9    in this deposition?
10       A.   Yes.
11       Q.   And before we begin and jump
12   back into the topics, you'd mentioned you
13   had something to add to your testimony
14   from yesterday.
15             What is it you'd like to
16   add?
17       A.   Oh, yes.  We had talked
18   about some little document, some exhibit,
19   you showed yesterday
20
21                        et cetera?  When we
22   talked about Amtrak this morning, I just
23   remembered that Martin Wade's employee
24   from the old Wall Street days at -- what
25   place is that -- Prudential Securities
```

**[Page 9]**

```
1    where he was head of mergers and
2    acquisitions.  His guy, Bill Hill, he's
3    some head of Amtrak here in Wilmington.
4    I just remembered last night.  It was too
5    late or he and I would have met.  And he
6    had done a valuation of WebXchange back
7    in the Internet boom days, right?  And
8    the valuation he gave based on
9    transaction basis -- we talked about
10   transactions, right?  But in those days,
11   we didn't even understand transactions as
12   well as we do now.  And he put the
13   valuation of WebXchange, based on web
14   transactions at
15
16
17
18
19
20       Q.   Did you see any written
21   documents from Mr. Hill that related to
22   that valuation?
23       A.   Yes.
24       Q.   When did you see those?
25       A.   Oh, he prepared it at that
```

# EXHIBIT DBD

1

```
 1              Confidential - Arunachalam
 2     IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF DELAWARE
 3     -------------------------------x
       WEBXCHANGE INC.,
 4
                      Plaintiff,
 5
               v.        C.A. No. 08-132(JJF)
 6
       DELL, INC.
 7
                      Defendant.
 8     -------------------------------x
       WEBXCHANGE INC.,
 9                     Plaintiff,
10             v.        C.A. No. 08-133(JJF)
11     FEDEX CORPORATION, FEDEX
       KINKO'S OFFICE & PRINT
12     SERVICES, INC., and
       FEDEX CORPORATE SERVICES,
13     INC.,
                      Defendants.
14     -------------------------------x
15         CONFIDENTIAL - ATTORNEYS' EYES ONLY
16
17
18              LAKSHMI ARUNACHALAM
19              New York, New York
20           Thursday, August 26, 2010
21
22
23
24     Reported by:  Steven Neil Cohen, RPR
25     Job No. 312988
```

2

```
 1              Confidential - Arunachalam
 2              August 26, 2010
 3                  10:29 a.m.
 4
```

Highly Confidential - Subject to Protective Order

WXC000355557

```
 5                    Videotaped Deposition of LAKSHMI
 6          ARUNACHALAM, taken by Defendants, pursuant
 7          to notice, at the offices of Vinson &
 8          Elkins, LLP, 666 Fifth Avenue, New York, New
 9          York,  before Steven Neil Cohen, a
10          Registered Professional Reporter and Notary
11          Public of the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                  3
 1                    Confidential - Arunachalam
 2                         APPEARANCES
 3
 4          KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
 5          1633 Broadway
 6          New York, New York 10169
 7                    Attorneys for Plaintiff and
 8                    Lakshmi Arunachalam
 9          BY:    LAWRENCE GOODWIN, ESQ.
10                 CHARLOTTE PONTILLO, ESQ.
```

Highly Confidential - Subject to Protective Order

WXC000355558

```
11
12    VINSON & ELKINS LLP
13    666 Fifth Avenue
14    26th Floor
15    New York, New York 10103
16             Attorneys for Dell, Inc.
17    BY:    CONSTANCE S. HUTTNER, ESQ.
18           EFREN GARCIA, ESQ.
19
20
21
22
23
24
25
```

□
                                                    4
```
1               Confidential - Arunachalam
2     FINNEGAN, HENDERSON, FARABOW, GARRETT &
3     DUNNER, LLP
4     Two Freedom
5     11955 Freedom Drive
6     Reston, Virginia 20190
7                Attorneys for Fed Ex
8                Defendants
9     BY:    JEFFREY A. BERKOWITZ, ESQ.
10           JOHN S. SIEMAN, ESQ.
11
12
13
14
15
```

WXC000355559

16
17
18
19
20
21
22
23
24
25

5

1                    Confidential - Arunachalam
2              IT IS HEREBY STIPULATED AND
3        AGREED, by and between counsel for the
4        respective parties hereto, that the sealing
5        and filing of the within deposition be
6        waived; that such deposition may be signed
7        and sworn to before any officer authorized
8        to administer an oath; that all objections,
9        except as to form are reserved to the time
10       of trial.
11
12
13
14
15
16
17
18
19
20
21

Highly Confidential - Subject to Protective Order

WXC000355560

22
23
24
25

◻

6

1          Confidential - Arunachalam
2          THE VIDEOGRAPHER:  This is tape
3     number 1 to the videotaped deposition of
4     Lakshmi Arunachalam in the matter of
5     WebXchange, Inc. versus Dell, Inc. in
6     the United States District Court,
7     Northern District of California.
8          This deposition is being held at
9     Vinson & Elkins, 666 Fifth Avenue, New
10    York, New York on August 26, 2010 at
11    approximately 10:29 a.m.
12          My name is Aydaline Garcia and I
13    am the video specialist.
14          The court reporter is Steve Cohen.
15          Will counsel introduce themselves
16    beginning with the party noticing this
17    proceeding.
18          MS. HUTTNER:  My name is Connie
19    Huttner.  I am with Vinson & Elkins and
20    I represent Dell.
21          MR. GOODWIN:  I am --
22          MS. HUTTNER:  With me is Efren
23    Garcia, also from Vinson & Elkins, John
24    Sieman and Jeff Berkowitz from Finnegan,
25    Henderson representing Federal Express.

◻

Highly Confidential - Subject to Protective Order
WXC000355561



Highly Confidential - Subject to Protective Order

WXC000355609



Highly Confidential - Subject to Protective Order



Highly Confidential - Subject to Protective Order



Highly Confidential - Subject to Protective Order

WXC000355612



Highly Confidential - Subject to Protective Order

WXC000355613



0                                                          70

1                    Confidential - Arunachalam



Highly Confidential - Subject to Protective Order

WXC000355614



71

1          Confidential - Arunachalam

Highly Confidential - Subject to Protective Order

72

1              Confidential - Arunachalam



73

1              Confidential - Arunachalam



Highly Confidential - Subject to Protective Order

WXC000355616

# EXHIBIT DBE

**JPMorgan Chase & Co. - Digital**

**Total Investment Spend**

**2006-2013**

**(000's)**

| | 2006 Actuals | 2007 Actuals | 2008 Actuals | 2009 Actuals | 2010 Actuals | 2011 Actuals | 2012 Actuals | 2013 Actuals | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | 2006 to 2013 Trend | | | | | |

Mobile Investment

Chase.com Investment

Total Investment Spend

# EXHIBIT DBG

## Gish, Andrew (NYC)

| | |
|---|---|
| **From:** | George Pazuniak <gp@del-iplaw.com> |
| **Sent:** | Wednesday, October 23, 2013 3:29 PM |
| **To:** | Tulin, Edward L (NYC) |
| **Cc:** | DeVito, Daniel A (NYC); Nemec, Douglas R (NYC); Gish, Andrew (NYC); Saunders, Robert S (WIL); Raatz, Jessica (WIL); Daukas, Courtney L (NYC) |
| **Subject:** | RE: Pi-Net International, Inc. v. JPMorgan & Co., Case No. 12-282 (D. Del.) |
| **Attachments:** | E Tulin Ltr to G Pazuniak re Arunachalam Depo (10-11-13).pdf |

Ed,

In response to your requests:

1. "Tax returns for WebXchange and Pi-Net, which were identified as the only financial records and documents that keep track of those companies' revenue (pgs. 61-62)" Tax returns are generally not discoverable, and certainly not as a matter of course. You are correct that tax returns have not been produced and they will not be, unless there is some adequate showing of manifest reasons for such disclosure.

2. "Any written agreements governing the relationship between Martin Wade on the one hand, and Pi-Net or WebXchange on the other hand (pg. 67)" I have confirmed that the only agreements with Martin Wad have already been produced. I assume that you have included the agreement that was produced in conjunction with Mr. Wade's subpoena and deposition.

3. "Any employment contracts executed by Dan Brune (pg. 71)" There are a number of agreements or drafts of agreement s as to Mr. Brune that have been produced. My best information from Mr. Brune and Pi-Net are that there are no other written agreements.

4. "Any computer code that was created for the implementation at France Telecom, including that which was given to the Kasowitz firm (pg. 181)" All such code has been provided in the production. I have found that the code is not readily readable. I can upload the code to you directly from the disks if you wish to play around with it.

5. "Any "real code" that was given to the Kasowitz firm (pg. 193)" Same as item 4 above.

6. "Any code for the "prototypes" that were "shown[n] to a VC to get some money from them." (pgs. 196-97)" Same as item 4 above. We have not identified any code that was specific to the VCs, but should be one or more of the codes noted above.

7. "Any software modules "that could implement the invention that's described in the '500 patent" (pg. 202)" Same as item 4 above. We have not identified any code that was specific to '500 Patent, but should be one or more of the codes noted above.

8. "Any installation guides or user manuals for TransWeb Exchange or Cyberman (pg. 247)" Have no idea what is being referenced here, but all documents relating to "Cyberman" and "Transweb" have been produced, and there are a number of such documents.

9. "Written documents from Bill Hill that relate to any valuation of WebXchange, including those which were given to the Kasowitz firm (pgs. 9-10)" I have not yet identified such documents, but that is still in process in light of your request.

10. "Minutes from any shareholder meetings of WebXchange or Pi-Net held in the last two years (pgs. 25-26)" I have not requested whether there are any such documents, because I do not see the relevance of any minutes of the company during the period of litigation.

11. "Electronic files that had the computer code that Pi-Net and/or WebXchange have developed over the years—i.e., code "beyond that in Exhibits 148 through 150" (pg. 39)" See item 4 above.

12. "Source code for the modules listed in Exhibit B of DX-171 (pgs. 202-03)" See item 4 above.

13. "Copies of the "no sue" letters referenced in DX-18 (pg. 220)"  I cannot even figure what these documents may be, or if Dr. Arunachalam ever had them.   Still trying to figure out whether it is anything that we might have had.  I believe that all such documents had been produced at same time as the emails, if we had the documents.

14. "Any letters sent by Fish & Richardson to potential infringers, including the letter sent to Cisco in 1999, which is referred to in DX-174 (pg. 247)."  There are Fish & Richardson letters, but they are privileged communications.  We have not had a chance to look further.

At this point, we do not agree to the removal of the "Highly Confidential."  Part of the problem is that if parts of the deposition are released, then, to avoid having the parts are taken out of context, other parts have to be produced.

George

---

**From:** Tulin, Edward L [mailto:Edward.Tulin@skadden.com]
**Sent:** Friday, October 11, 2013 4:51 PM
**To:** George Pazuniak
**Cc:** DeVito, Daniel A; Nemec, Douglas R; Gish, Andrew; Saunders, Robert S; Raatz, Jessica; Daukas, Courtney L; Tulin, Edward L
**Subject:** Pi-Net International, Inc. v. JPMorgan & Co., Case No. 12-282 (D. Del.)

Dear George,

Please see the attached correspondence.

Best,
Ed

**Edward L. Tulin**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522
T: 212.735.2815 | F: 917.777.2815
edward.tulin@skadden.com

---
****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
****************************************************
****************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

*************************************************

====================================================================================

# EXHIBIT DBN

**HIGHLY CONFIDENTIAL**

**[Page 1]**

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

PI-NET INTERNATIONAL INC.,:

        Plaintiff,     :

                    :

    vs.              :

                    :

JPMORGAN CHASE & CO.,   :

        Defendant.    :  NO. 12-282-RGA

- - -

September 18, 2013

- - -

***HIGHLY CONFIDENTIAL***

    Videotape deposition of MICHAEL K.
O'LEARY taken pursuant to notice, held the Law
Offices of Skadden, Arps, Slate, Meagher &
Flom LLP, One Rodney Square, Wilmington, DE
19899, commencing at 9:04 a.m., on the above
date, before Jennifer P. Miller, Registered
Professional Reporter and Notary Public for
the State of Delaware.

**HIGHLY CONFIDENTIAL**



```
 1        Q.  And what specifically were you
 2   charged with doing?
 3        A.  Consolidating the behavior of the
 4   Chase product and the Bank One product to be
 5   consistent, or take the enhanced one platform
 6   from a capability that the other bank had.
 7        Q.  Did you essentially merge the bill
 8   payment functions of the two?
 9        A.  Yes.
10        Q.  And which was the surviving system?
11        A.  The Bank One Voyager platform.
12        Q.  Do you know why that survived versus
13   the Chase system?
14        A.  No.
15        Q.  It wasn't your call?
16        A.  No.
17        Q.  Now, at this point in -- well,
18   December of 2004, you authored this document,
19   were you now an architect?
20        A.  No.
21        Q.  Not yet?
22        A.  No.
23        Q.  So at this point you were -- well,
24   what was your title at this point?
25        A.  I was at this point in 2004, I was
```

**[Page 42]**

```
 7        Q.  Now, you described in Exhibit 50
 8   a -- things that as I understand it are plans
 9   to be done as opposed to have already been
10   done; is that correct?
11        A.  I wouldn't say it's planned.  It's
12   --
13        Q.  Being accomplished?
14        A.  It's planned to enhance.
15        Q.  Pardon me?
16        A.  It's planned to be enhanced.
17        Q.  Okay.  Did the things that you
18   specified as planned to be enhanced actually
19   occur?
20        A.  Yes.
```

**[Page 44]**

```
 1   still the manager of the Tandem development
 2   team.
 3        Q.  Okay.  I don't recall seeing Tandem.
 4        All right.  I'll ask you to
 5   look at page six of the document that's JPM
 6   45928.  I might also ask you to look at page
 7   23, which is JPM 45315, and page 15, which is
 8   45307.
 9        Those are the --
10        A.  I'm sorry, what was the second page?
11        Q.  Page 15, which is JPM 45307.
12   They're all -- pages 15 and 23 are both charts
13   one for schedule payment and the other one is
14   to modify payment.
15        So let's -- the reason I ask
16   you to look at it is because I may be jumping
17   from one page to the other.
```

**[Page 43]**

**[Page 45]**