IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PI-NET INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., <br><br> Defendant. | Civil Action No. 12-282-RGA |

MEMORANDUM OPINION

George Pazuniak, Esq. (argued), O'KELLY ERNST & BIELLI, LLC, Wilmington, DE.

　　Attorney for Plaintiff Pi-Net International Inc.

Jessica Raatz, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, DE; Douglas R. Nemec, Esq. (argued), SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY; Edward L. Tulin, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY; Andrew Gish, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY.

　　Attorneys for Defendant JPMorgan Chase & Co.

April 7, 2014

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

In March 2012, plaintiff Pi-Net International, Inc. filed patent infringement actions against Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith, Inc., JPMorgan Chase & Co., UBS Financial Services Inc., Sovereign Bank, N.A., and Citizens Financial Group, Inc. alleging infringement of U.S. Patent Nos. 5,987,500 (the "'500 patent"), 8,037,158 (the "'158 patent"), and 8,108,492 (the "'492 patent"). The defendants sought leave to file the instant motion for partial summary judgment of indefiniteness, representing to the Court that a favorable resolution would "drastically reduce the scope of this case" by invalidating 90% of the asserted claims. (D.I. 45 at 2). Because of the potential for judicial efficiency, the Court granted the motion. (D.I. 58).

The defendants filed their motion for partial summary judgment on March 5, 2013. (D.I. 59). At issue are five terms found in many of the three patents' asserted claims. These terms are: 1) "means for transmitting a transaction request from said transactional application," 2) "means for processing said transaction request," 3) "a computer system executing the Back-end transactional application for processing the transaction request in real-time," 4) "keeping a transaction flow captive," and 5) "routed transactional data structure." (D.I. 60 at 1-2). JPMorgan[1] contends that the first two terms are computer-implemented means-plus-function terms for which no algorithm is disclosed. (*Id.*). The third term should be construed as a means-plus-function term, JPMorgan argues, because "computer system" does not connote sufficiently definite structure to a person having ordinary skill in the art ("PHOSITA"). (*Id.* at 2). Finally, JPMorgan asserts that the last two terms are insolubly ambiguous because the patentee did not

---

[1] The cases against the other defendants are either dismissed or stayed.

define them in the specification or the prosecution history and they do not have a generally accepted meaning to a PHOSITA. (*Id.*).

Pi-Net argues that all five terms are definite. Pi-net claims that the first term has a clearly identified structure in the specification, and no algorithm is required for the second term because the claimed function can be performed by a general purpose computer without special programming. (D.I. 66 at 10-13). The third term does not contain the word "means," and Pi-Net maintains that JPMorgan has failed to overcome the accompanying rebuttable presumption against applying § 112, ¶ 6 in this situation. (*Id.* at 14-16). Pi-Net argues that the final two terms, which were added during the patents' prosecution to overcome prior art, have support in the specification and prosecution history. (*Id.* at 16-18). In support of its position on each of the terms, Pi-Net submitted a declaration from its expert, Dr. Bardash. (D.I. 66-1).

## I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita,*

3

475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Indefiniteness is a legal question that must be decided by the Court. *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007) ("A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C § 112, paragraph 2, is 'a legal conclusion . . . .'" (quoting *Intellectual Prop. Dev., Inc. v. UA–Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1318 (Fed. Cir. 2003))). All valid patents must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b) (2012). The principal justification for the definiteness requirement "is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002).

This requirement "does not compel absolute clarity," and "[o]nly claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005) ("[W]e also follow the requirement that clear and convincing evidence be shown to invalidate a patent."). Indeed, a claim will be found

4

sufficiently definite so long as "one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.").

An additional set of principles governs the determination of definiteness for means-plus-function terms. The Federal Circuit has recognized a presumption in favor of applying 35 U.S.C. § 112, ¶ 6[2] whenever the word "means" is used in the claim language to describe a limitation. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008) ("A claim element that contains the word 'means' and recites a function is presumed to be drafted in means-plus-function format under 35 U.S.C. § 112 ¶ 6."). The presumption can be overcome "where the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003). In order for there to be sufficient structure, the claim language must specify "the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008).

Once it has been determined that the term is written as a means-plus-function limitation, courts employ a two-part test to construe the term. First, the court is required to determine the claimed function. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). The second step is to "identify the corresponding structure in the written description of the patent that performs that function." *Id.* The identified structure is required to "permit one

---

[2] Now § 112(f).

5

of ordinary skill in the art to 'know and understand what structure corresponds to the means limitation.'" *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (quoting *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007)). Otherwise, the term is invalid. *Id.*

In the special case where the corresponding structure of a means-plus-function term is a computer, the patent must disclose an algorithm for performing the claimed function. "[S]imply disclosing a computer as the structure designated to perform a particular function" is insufficient to limit the scope of the claim under § 112, ¶ 6 because "a general purpose computer programmed to carry out a particular algorithm creates a 'new machine' . . . ." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("[A] general purpose computer 'in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.'" (quoting *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999))).

The Federal Circuit carved out an exception to this rule, holding that it is "not necessary to disclose more structure than the general purpose processor" when the claimed functions "can be achieved by any general purpose computer without special programming." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). This exception is a "narrow" one, and an algorithm need not be disclosed "only in the rare circumstances where any general-purpose computer without any special programming can perform the function." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364-65 (Fed. Cir. 2012). Examples of functions that can be carried out by a general purpose computer without special programming include: processing, receiving, and storing. *See In re Katz*, 639 F.3d at 1316 ("Katz has not claimed a specific function performed by a special purpose computer, but has

simply recited the claimed functions of 'processing,' 'receiving,' and 'storing.'"). By contrast, any function that involves "more than merely plugging in a general-purpose computer" requires special programming. *Ergo Licensing, LLC*, 673 F.3d at 1365 (finding claim language reciting function of "controlling the adjusting means" to require special programming).

Several recent decisions have addressed the functional capabilities of a general purpose computer. The U.S. District Court for the District of Colorado held that a multi-tasking processing means for "coordinating data transfer" could be accomplished by a general purpose computer without special programming. *EdiSync Sys., Inc. v. Centra Software, Inc.*, 2012 WL 2196047, at *15-17 (D. Colo. June 15, 2012) ("[T]he functions associated with these terms can be implemented by a general purpose processor and do not constitute specific computer-implemented functions to which corresponding algorithms must be disclosed."). I previously held that a general purpose computer without special programming could perform the function of displaying an icon. *United Video Props., Inc. v. Amazon.com, Inc.*, 2012 WL 2370318, at *11 (D. Del. June 22, 2012) ("'[D]isplaying' an icon is a common function that can be achieved by any general purpose computer without special programming."); *see also SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *11 (D. Del. Sept. 4, 2013) (finding no algorithm required for the "processing means" claim element because that function could be achieved by a general purpose computer without special programming).

## II. DISCUSSION

### A. "means for transmitting" and "means for processing"

JPMorgan has failed to meet its burden of proving that a "means for transmitting" and a "means for processing" are indefinite computer-implemented means-plus-function terms. Pursuant to § 112, ¶ 6's structure requirement, the patentee must disclose an algorithm for

7

carrying out the claimed function unless it could be accomplished by a general purpose computer without special programming—the *Katz* exception. JPMorgan argues that both[3] of these terms are of the computer-implemented means-plus-function variety. As such, the terms are indefinite unless a general purpose computer without special programming can perform the claimed function or an algorithm is disclosed. At this stage, the Court cannot rule out the possibility that a general purpose computer without special programming could perform the claimed function, or that an algorithm is disclosed. Therefore, JPMorgan did not prove indefiniteness by clear and convincing evidence. *See Datamize, LLC*, 417 F.3d at 1348.

The patents cover a method and apparatus for providing real-time, two way transactions via the internet. For example, at the time of the invention, internet users could browse their accounts on the bank's website, but they could not make transactions as if they were interacting with a live teller at the bank. '500 patent, 7:8-10. The present invention permits the bank[4] to interact in real-time with the internet user; the bank might include in its point of service application access to checking and savings accounts, which would permit the user to transfer money from one account to the other in real-time. *Id.* at 6:40-7:12. Claim one of the '500 patent, which is representative and contains both terms, recites:

> A configurable value-added network switch for enabling real-time transactions on a network, said configurable value-added network switch compromising [sic]:
> means for switching to a transactional application in response to a user specification from a network application, said transactional application providing a

---

[3] Pi-Net never explicitly agrees that "means for transmitting" is a computer-implemented term. Instead, Pi-Net contends that it is a regular means-plus-function term with the "Exchange" as the corresponding structure. (D.I. 66 at 10). The "Exchange" is comprised of a web page and a point-of-service (POSvc) application, which is fancy terminology for an application displayed on a web page. (*Id.* at 11). The Court is skeptical of Pi-Net's position that the Exchange, as opposed to a computer or computer program, is the proper structure for this term because the Exchange exists on either a web server or computer system. *See* '500 patent, 6:14-16 (explaining that the Exchange can reside either on a web server or "on a separate computer system that resides on the Internet").
[4] The computer systems utilized by the bank or other entity with which the user interacts are referred to as "back office computers" or "back office processes."

8

>   user with a plurality of transactional services managed by at least one value-added network service provider, said value-added network service provider keeping a transaction flow captive, said plurality of transactional services being performed interactively and in real time;
>   
>   means for transmitting a transaction request from said transactional application; and
>   
>   means for processing said transaction request.

*Id.*, claim 1.

The Court is not convinced that a general purpose computer without special programming in 1997[5] was incapable of performing the "processing" and "transmitting" functions. In fact, the Federal Circuit has explicitly recognized "processing" as a function capable of being performed by a general purpose computer. *In re Katz*, 639 F.3d at 1316 ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' discussed below, those functions can be achieved by any general purpose computer without special programming."); *see also SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *11 (finding that a general purpose computer without special programming could perform the "processing means" function). There is also a claim construction issue regarding the "processing" term. Specifically, what processing activity by the "back office computers" is required and whether that is included in the term's scope. At oral argument, Pi-Net's counsel stated that the whole point of the invention was to connect two computer systems to facilitate the real-time transaction, and that the specific computer systems used by the entity doing the processing were not important. (D.I. 104 at 41-42 ("[A] general purpose computer, in this kind of a situation, is perfectly fine, because we are not trying to change the back office processes. We're letting them stay the way they are. Our point is only to connect to them, and that is what—this is what [our expert] Dr. Bardash said, again, in his Declaration.")). Despite the representation that the invention does not cover what the back

---

[5] 1997 is the filing date for the earliest of the three patents at issue.

9

office computers actually do in responding to the request, the patent claims "a means for processing said transaction request." Whether the patent can properly claim this without some disclosure as to the functions and processes that those back office computers perform is a matter best suited for claim construction. This issue must be decided before summary judgment of indefiniteness could be granted.

The "transmitting" claim term presents a more difficult issue. In arguing that an algorithm is required for the "transmitting" function, JPMorgan cites to the Federal Circuit's recent decision in *Function Media, L.L.C. v. Google, Inc.* 708 F.3d 1310 (Fed. Cir. 2013). In *Function Media*, the Federal Circuit affirmed the district court's finding[6] that the term "means for transmitting" was indefinite for failure to disclose an algorithm. *Id.* at 1317. The patentee argued that the structure for the "means for transmitting" was computer software and cited portions of the specification that purported to reference programs that perform the transmission, including the "PGP." Brief of Plaintiff-Appellant at 25, Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310 (Fed. Cir. 2013) (No. 2012–1020). In addition, the patentee asserted that a PHOSITA would be able to write an operative computer program to perform the function based on the disclosures in the specification. *Id.* at 26.

The Federal Circuit began by explaining that an algorithm is required when dealing with a "special purpose computer-implemented means-plus-function limitation." *Function Media, L.L.C.*, 708 F.3d at 1317-19. The references to the specification are insufficient to support a finding of definiteness, the Federal Circuit stated, because "[t]hese citations all explain that the software automatically transmits, but they contain no explanation of how the PGP software performs the transmission function." *Id.* at 1318. The court also noted that, "[h]aving failed to

---

[6] The district court in *Function Media* construed the claim terms before the Federal Circuit issued the *Katz* decision. *Function Media, L.L.C. v. Google, Inc.*, 2009 WL 3260566 (E.D. Tex. Oct. 9, 2009).

provide any disclosure of the structure for the 'transmitting' function, [the patentee] cannot rely on the knowledge of one skilled in the art to fill in the gaps." *Id.* at 1319. Therefore, the claim was held to be indefinite.

The Federal Circuit did not address whether a general purpose computer was insufficient to perform the claimed function. Neither party cited the *Katz* case in their briefs to the Federal Circuit, nor did the patentee argue that a general purpose computer without special programming would be sufficient to perform the claimed function. *See* Brief of Plaintiff-Appellant at 22-29, Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310 (Fed. Cir. 2013) (No. 2012-1020); Brief for Defendant-Appellee Google, Inc. at 57-62, Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310 (Fed. Cir. 2013) (No. 2012-1020); Reply Brief of Plaintiff-Appellant at 29-30, Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310 (Fed. Cir. 2013) (No. 2012-1020). Instead, the main thrust of the patentee's argument appeared to be that the specification provided sufficient guidance on how the claimed structure performed the "transmitting" function. Thus, *Function Media* did not decide whether "means for transmitting" necessarily required a special purpose computer.

The term at issue in *Function Media* is nearly identical to the "transmitting" function in the '500 patent, and the Federal Circuit found that term indefinite for failing to disclose an algorithm. Despite the apparent strength of JPMorgan's position, however, summary judgment at this juncture is premature. The Court has not yet held a claim construction hearing to construe the terms at issue, and, as noted above, Pi-Net contests whether the "transmitting" term is properly construed as a computer-implemented means-plus-function term.[7] This construction must be done in order to identify the function and corresponding structure. Once the function

---

[7] Pi-Net also has not yet responded to JPMorgan's argument regarding *Function Media* because that precedent was first cited in JPMorgan's reply brief.

11

and structure are decided, the Court will be in a better position to determine whether the Exchange, or any other disclosed structure, is sufficient to support a finding that the terms are definite. Thus, an issue of material fact remains that prevents the Court from granting summary judgment in JPMorgan's favor at this time.

Moreover, even if the *Katz* exception does not apply to either term, the flow chart in Figure 8, common to all three patent specifications, might be sufficient to satisfy the algorithm requirement. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("Precedent and practice permit a patentee to express that procedural algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." (internal quotation marks omitted)). "[T]he amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole." *Id.* The requisite level of detail is not discussed in the current briefing. Although unlikely, it is possible that the flow chart in Figure 8 detailing the steps of the invention constitutes sufficient structure. *Id.* ("[T]he patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function."). This would also prevent a finding of indefiniteness.

In summary, JPMorgan argues strenuously that the terms are invalid because the functions at issue require more than simply plugging in a general purpose computer. In order for the Court to agree with JPMorgan on this issue, an issue for which JPMorgan carries the burden of proof by clear and convincing evidence, an expert opinion comparing the functional capabilities of a general purpose computer during the relevant time frame with the disputed functionalities might have been helpful. JPMorgan has not provided any such expert declaration or affidavit stating that a general purpose computer without special programming would be

unable to perform the "processing" and "transmitting" functions. Based on the current record, and without the benefit of a claim construction hearing, it is difficult to say that no disputed issue of material fact exists regarding whether the claimed functions could have been performed by a general purpose computer without special programming.

### B. "a computer system executing the Back-end transactional application for processing the transaction request in real-time"

The term, "a computer system executing the Back-end transactional application for processing the transaction request in real-time" is not properly construed as a means-plus-function term. A claim term that does not contain the word "means" is presumptively not subject to § 112 ¶ 6. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002). The presumption "can be overcome if it is demonstrated that 'the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.'" *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) (quoting *CCS Fitness*, 288 F.3d at 1369); *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("*MIT*") ("Claim language that further defines a generic term like 'mechanism' can sometimes add sufficient structure to avoid 112 ¶ 6.").

This presumption, however, "is a strong one that is not readily overcome." *Lighting World*, 382 F.3d at 1358; *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1374 (Fed. Cir. 2012) ("When the claim drafter has not signaled his intent to invoke § 112, ¶ 6 by using the term 'means,' we are unwilling to apply that provision without a showing that the limitation essentially is devoid of anything that can be construed as structure. Thus, we will not apply § 112, ¶ 6 if the limitation contains a term that 'is used in common parlance or by persons of skill in the pertinent art to designate structure.'" (internal citations omitted)). Even though a term

13

might not bring a particular structure to mind, that is not dispositive and the court can look to the dictionary to see if the term is one that is "understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Id.* at 1360; *MIT*, 462 F.3d at 1354.

JPMorgan asserts that "a computer system executing the Back-end transactional application for processing the transaction request in real-time" should be governed by § 112, ¶ 6 because the patentee replaced the word "means" with "the equally generic term 'computer system.'" (D.I. 60 at 11). The U.S. District Court for the Northern District of California recently endorsed this position, albeit in an unreported decision. *See Soque Holdings (Bermuda) Ltd. v. Keyscan, Inc.*, 2010 WL 2292316, at *11 (N.D. Cal. June 7, 2010) (construing "computer displaying, in response to the scanner sensing a document, a plurality of user-selectable options for processing image data from said scanner" as a means-plus-function term). In *Soque*, the court found that referencing "a 'computer' provides no basis to distinguish the structure from any other general purpose computer; thus, 'computer' does not adequately describe a specific structure." *Id.* at *12. Accordingly, the court determined that the term was properly construed as a means-plus-function term and that an algorithm must be disclosed. *Id.* ("[I]f 'computer' is insufficient structure for a 'means' limitation, the naked term 'computer' cannot describe sufficient structure when recited directly in the claim limitation. An algorithm of some nature— that discloses how the plurality of user-selectable options is generated—is necessary to save this claim from indefiniteness.").

In order to reach the requirement to disclose an algorithm, the presumption against applying § 112, ¶ 6, which by itself is a difficult burden, must first be overcome. *See Flo Healthcare Solutions, LLC*, 697 F.3d at 1374; *Lighting World*, 382 F.3d at 1358. The claim term

14

here is not "devoid of anything that can be construed as structure" because it recites a "computer system." *Flo Healthcare Solutions, LLC*, 697 F.3d at 1374. A computer system is a physical structure that is sufficient to prevent JPMorgan from rebutting the presumption. Further, assuming JPMorgan has overcome the strong presumption against applying § 112, ¶ 6 to a claim term that does not contain the word "means," it is possible that a general purpose computer without special programming would be able to perform the claimed executing and processing functions. *See* Section II.A, *supra*. If a general purpose computer without special programming is sufficient, the patentee is not required to disclose an algorithm to maintain validity. *See In re Katz*, 639 F.3d at 1316. Therefore, the Court is not convinced that it should invalidate this term, prior to an actual claim construction hearing, on the grounds that it is an invalid means-plus-function term.

### C. "keeping a transaction flow captive" and "routed transactional data structure"

The Court is not persuaded that "keeping a transaction flow captive" and "routed transactional data structure" are indefinite. A claim term is only indefinite if it is not amenable to construction or is insolubly ambiguous. *Datamize, LLC*, 417 F.3d at 1347. This is true even if discerning the meaning of a claim term is a formidable task. *Exxon Research & Eng'g Co.*, 265 F.3d at 1375.

JPMorgan argues that the terms at issue here are indefinite because neither the specification nor the prosecution history define the terms and they lack a generally understood meaning in the art. (D.I. 60 at 16). There is no dispute that both terms were added to overcome a prior art reference, and therefore they are not defined in the specification. (D.I. 66 at 17). JPMorgan criticizes Dr. Bardash's declaration as insufficient to support his opinion that the disputed terms possess a generally understood meaning in the art. (D.I. 60 at 17-19). In his

15

declaration, Dr. Bardash states that the plain claim language, specification, and prosecution history would allow a PHOSITA to understand each term, and he provides a proposed definition that is consistent with the PHOSITA's understanding. (D.I. 66-1 at 15-21). Dr. Bardash supports his position by citing to relevant portions of the specification and prosecution history for both terms. (*Id.*). Although it does appear that the link between Dr. Bardash's cited passages and his proposed definitions is somewhat tenuous in places, there is no competing declaration or affidavit from a JPMorgan expert for the Court to rely upon. (*Id.* (citing a prosecution history argument focusing on the invention's ability to allow a user to connect to multiple services as support for his definition of "keeping a transaction flow captive")). Without an opposing expert to identify the deficiencies, if any, in Dr. Bardash's declaration, it is difficult to say that his opinion regarding a PHOSITA's understanding of the claim language is incorrect. Therefore, the record currently before the Court is insufficient to support a finding by clear and convincing evidence that "keeping a transaction flow captive" and "routed transactional data structure" are indefinite.

## III. CONCLUSION

For the reasons set forth above, JPMorgan's motion for partial summary judgment is denied. An appropriate order consistent with this memorandum opinion will follow.

16