# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **PI-NET INTERNATIONAL, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**JPMORGAN CHASE & CO.,** )<br>)<br>**Defendant.** )<br>) | **C.A. No. 12-282-SLR** |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285
## AND FED. R. CIV. P. 54(d)(2) (D.I. 173, 174)

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff*
*Pi-Net International, Inc.*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDING ................................................................ 1

II. SUMMARY OF ARGUMENT ............................................................................................ 1

III. STATEMENT OF FACT .................................................................................................... 3

    A. PTAB Proceedings and Expertise ................................................................................. 3

    B. VAN Switch Example .................................................................................................... 4

    C. Pi-Net's Claim Construction Arguments ....................................................................... 5

    D. The Court's Summary Judgment Rulings ...................................................................... 6

    E. The Inventor's Testimony .............................................................................................. 6

IV. ARGUMENT ....................................................................................................................... 7

    A. Legal Standards For Exceptional Case .......................................................................... 7

    B. Statutory Presumption of Validity ................................................................................. 8

    C. Case Is Not Exceptional Where Defendant Prevailed On Invalidity of Presumptively Valid Patent Claims ....................................................................................................... 9

    D. Case Is Not Exceptional Where Patentee Followed the Claim Constructions of the PTAB ............................................................................................................................ 11

    E. Pi-Net's Exercise of Its Statutory Rights Does Not Support Exceptionality ................ 13

    F. Frivolous "Exceptional Case" Motions Should Be Deterred ....................................... 13

V. CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*Eon-Net LP v. Flagstar Bancorp*,

   653 F.3d 1314, 1327 (Fed. Cir. 2011) ................................................................................ 15

*Fogerty v. Fantasy, Inc.*,

   510 U.S. 517, 534 n. 19, 114 S.Ct. 1023 (1994) .............................................................. 7, 11

*Machinery Corp. of Am. v. Gullfiber AB*,

   774 F.2d 467, 471 (Fed.Cir.1985) ....................................................................................... 7

*Microsoft Corp. v. i4i Ltd. P'ship*,

   ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011) ..................................................................... 8, 9

*Nat'l Recovery Technologies, Inc. v. Magnetic Separation Sys., Inc.*,

   166 F.3d 1190, 1195 (Fed. Cir. 1999) ................................................................................. 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

   ___ U.S. ___, 134 S. Ct. 1749 (2014) ......................................................................... passim

*Pi-Net Int'l Inc. v. Citizens Fin. Grp. Inc.*,

   2013 WL 6094223 (D. Del. 2013) ....................................................................................... 3

*Taurus IP, LLC v. DaimlerChrysler Corp.*,

   726 F.3d 1306, 1326–27 (Fed.Cir. 2013) ........................................................................ 8, 11

**STATUTES**

35 U.S. Code §281 ................................................................................................................ 13, 15

35 U.S. Code §282(a) ........................................................................................................ 1, 10, 15

35 U.S. Code §6(a) ..................................................................................................................... 3

35 U.S. Code §6(b) .................................................................................................................. 3

35 U.S.C. §112 ........................................................................................................................ 9

35 U.S.C. §112(b) ............................................................................................................ passim

35 U.S.C. §285 ........................................................................................................... 1, 7, 8, 15

**RULES**

Federal Rule of Civil Procedure 54(d)(2) ................................................................................ 1

## I.   NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action by Plaintiff Pi-Net International Inc. ("Pi-Net") against Defendant JPMorgan Chase & Co. ("JPMorgan"). The Court granted summary judgment of invalidity of the asserted claims of the Pi-Net Patents in suit (D.I. 165, 166), following the Court's construction of the claims (D.I. 163, 164). JPMorgan has now moved, pursuant to 35 U.S.C. §285 and Federal Rule of Civil Procedure 54(d)(2), for attorney fees incurred in this action (DI 173, 174, hereinafter referred to as the "Motion"). This is Pi-Net's answering brief in opposition to JPMorgan's Motion.

## II.   SUMMARY OF ARGUMENT

JPMorgan's Motion is bereft of any support in the facts or the law. JPMorgan ignores the most critical facts and legal principles, and replaces facts and law with empty allegations that Pi-Net should have known that its presumptively valid claims were invalid. Rather than citing the appropriate law and the relevant record, JPMorgan quotes testimony of former disgruntled Pi-Net associates that do not even discuss the patent claims, but only whether Pi-Net had ever reduced the inventions to sufficient practice to be commercialized. Indeed, if any attorney fees are appropriate it is to Pi-Net for the cost incurred in having to respond to JPMorgan's legally meritless Motion.

The Court granted summary judgment of invalidity on the basis that certain claim terms were indefinite, and accepted the conclusions of JPMorgan's expert that the claims were invalid for lack of enablement and written description. Yet, federal patent law explicitly provides that each of these claims were presumed to be valid. 35 U.S. Code §282(a) ("A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple

dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.") JPMorgan does not even address the statute, much less explain how a patentee can be charged with misconduct by relying on the statutory presumption of validity.

Not only were the claims presumed to be valid, but the claims were being concurrently reviewed by the United States Patent and Trademark Office Patent Trial and Appeal Board ("PTAB"), which construed the claim limitations of the three patents and then applied the prior art to the construed claims. Pi-Net stated on the record that it could accept most of the PTAB constructions, because they were fundamentally consistent with its own constructions. Yet, JPMorgan ignores the PTAB's construction and never acknowledges that Pi-Net and its experts had applied the PTAB constructions in their infringement and validity positions. Instead of addressing the PTAB's rulings, JPMorgan blindly charges – without any explanation or support – that the Pi-Net/PTAB's claim constructions were so objectively unreasonable that attorney fees are warranted. JPMorgan effectively asks that the Court first hold that the PTAB is so incompetent that it rendered objectively unreasonable claim constructions, and then further hold that Pi-Net should have known that the PTAB's rulings were objectively unreasonable.

This is not an exceptional case warranting attorney fees. Pi-Net was entitled to rely on the presumption of validity of its patents, particularly where the dispositive issues were the definiteness, enablement and written description requirements that were presumptively reviewed and endorsed by the PTO. Moreover, it is fundamentally wrong to argue that Pi-Net's acceptance of the PTAB's claim constructions can be held to be so unreasonable as to warrant

attorney fees. Finally, as the owner of presumptively valid patents, Pi-Net was entitled to assert the patents in this and other cases, where it presented expert evidence that the Defendants infringed the patent claims based on the claim constructions propounded by the PTAB.

### III.   STATEMENT OF FACT

#### A. PTAB Proceedings and Expertise

Three patents here in suit are: U.S. Patent Nos. 8,108,492 (the "'492 patent"), 5,987,500 (the "'500 patent"), and 8,037,158 (the "'158 patent").

As acknowledged by JPMorgan, Pi-Net sued not only JPMorgan, but a series of other Defendants on the same patents. (DI 174 at 5). As JPMorgan also notes, the indemnifying party of one of the Defendants began proceedings to invalidate all three patents. These comprised petitions under the Leahy-Smith America Invents Act for the PTAB to provide a Covered Business Method review of the '158 Patent, and an *inter partes* review of the '492 and '500 Patents. See generally *Pi-Net Int'l Inc. v. Citizens Fin. Grp. Inc.*, 2013 WL 6094223 (D. Del. 2013). (DI 174 at 5).

Federal statutes require that the PTAB proceedings be handled by persons having both legal skill and relevant scientific background:

> (a) In General.— There shall be in the Office a Patent Trial and Appeal Board. ….
> The administrative patent judges shall be persons of competent legal knowledge and scientific ability who are appointed by the Secretary, in consultation with the Director.

35 U.S. Code §6(a). Congress charged the PTAB with quasi-judicial responsibility for, *inter alia*, "conduct[ing] inter partes reviews and post-grant reviews pursuant to chapters 31 and 32." 35 U.S. Code §6(b)

The PTAB subsequently construed most of the limitations of the three Patents that are here involved. (DI 141-2). Although the PTAB instituted a CBM review of the '158 Patent and

preliminarily indicated that one term – "routed transactional data structure" – may be indefinite[1], the PTAB also expressly held that certain other terms which were challenged as indefinite, were sufficiently definite to a person of ordinary skill in the art. The definite terms included at least the terms "service network atop the Web," "non-deferred" and "complete." (DI 141-2 at BB-36 to BB-37).

### B. VAN Switch Example

In light of JPMorgan's emphasis on the term "VAN Switch" in its brief (DI 174 at 14), it is helpful to consider the PTAB's consideration of that specific claim limitation. The PTAB's decisions explained VAN Switch and what it did. Thus, all three decisions by the PTAB included the following section:

> The VAN switch 520 has a layered architecture as shown in Fig. 7. Boundary service 701 provides the interface between the VAN switch, the Internet and the Web, and multi-media end user devices and the interface to an on-line service provider. Id., col. 8, ll. 42-48. Switching service 702, which is an OSI application layer switch, represents the core of the VAN switch. Id., col. 8, ll. 52-54. "Interconnected application layer switches form the application network backbone" and are described as a significant aspect of the Subject Patents. Id., col. 8, ll. 60-63. Switching service 702 routes user connections to remote VAN switches and facilitates connectivity with the Internet (a public switched network) and private networks, including back office networks, such as banking networks. Id., col. 8, ll. 57-60. Management service 703 contains tools used by the end users to manage network resources, including VAN switches, and provides applications that perform OAM&P functions, such as "security management," "fault management," "performance management," and "billing management." Id., col. 8, l. 64-col. 9, l. 8. "[A]pplication service 704 contains application programs that deliver customer services," including POSvc applications for banking, multi-media messaging, conferencing, financial services. Id., col. 9, ll. 9-14. Depending upon the type of VAN service, the characteristics of the network elements will differ. Id., col. 9, ll. 19-20.

(DI 141-2 at BB-10 to BB-11 [in conjunction with the '158 Patent], BB-46 to BB-47 [in conjunction with the '492 Patent], and BB-74-75 [in conjunction with the '500 Patent]).

---

[1] The alleged indefiniteness was answered by Pi-Net, and the PTAB is currently considering the issue.

The PTAB then construed the "VAN Switch" claim term and explained the basis of its construction. In conjunction with the '492 Patent, the PTAB stated:

> In addition to the Web page 505 and point-of-service applications, the exchange 501 includes a switching component and an "object routing component." Ex. 1001, col. 6, ll. 18-22. Figure 5B shows VAN Switch 520 as an element in the exchange 501, although the specification does not identify specifically the elements that constitute VAN Switch 520. Instead, the ´492 Patent twice states that the exchange 501 and the management agent 601 together constitute a valueadded network (VAN) switch. (Emphasis added). Ex. 1001, col. 7, ll. 51-53; col. 8, ll. 41-42. In the layered architecture of the VAN switch, switching service 702 "represents the core of the VAN switch" and "is an OSI application layer switch." Ex. 1001, col. 8, ll. 42-43, 52-54. Unlike Fig. 5, which includes object router 525, Fig. 7 does not show a separate routing component. Instead, the specification discloses that switching service 702, i.e., the core of the VAN switch, routes user connections to remote VAN switches, prioritizes requests, and performs multiplexing and flow control. Ex. 1001, col. 8, ll. 54-57. Management service 703 contains tools used by end users to manage network resources including VAN switches. Ex. 1001, col. 8, l. 66- col. 9, l. 1. In view of this disclosure, we construe the term "value-added network (VAN) switch" to mean *an OSI application layer switch having a switching component, object routing component and management component*.

(DI 141-2 at BB-51). The PTAB also adopted the same construction of the VAN Switch for the '500 Patent. (DI 141-2 at BB-82-83).

### C. Pi-Net's Claim Construction Arguments

In the course of the *Markman* proceedings, Pi-Net originally proposed constructions of all disputed terms. After the PTAB issued its claim constructions, Pi-Net argued that, with one exception, most of the PTAB constructions were mere variations of what Pi-Net had proposed and were equally acceptable constructions for the disputed terms. Pi-Net's infringement expert reports cited the PTAB claim constructions and showed why JPMorgan infringed the patent claims if the Court were to accept the PTAB claim constructions. (See, for example, DI 150-1 at A1021, A1017, A1018, A1019, A1020, A1021, A1022, A1023, A1029, A1032, A1036, A1037, A1038, A1039, A1040, A1042, A1043, A1044, A1045, A1046, A1047, A1048, A1051). In response to JPMorgan's motions for summary judgment, Pi-Net again cited the PTAB's claim

5

constructions. (See, for example, DI 131 at 11, 15; DI 141-5 at ¶¶ 32, 34) At the *Markman* hearing in this case, Pi-Net similarly presented the PTAB claim constructions to the Court for consideration. (See, for example, DI 169 at 50, 57, 59, 63, 67, 69, 71, 73, 75, 76, 77, 78, 79)

### D. The Court's Summary Judgment Rulings

In the course of construing the claims, the Court determined that a number of claim terms were legally indefinite. Based on that claim construction conclusion, the Court held the claims were invalid for failing to meet the definiteness requirement 35 U.S.C. §112(b). (D.I. 165 at 10-16). The Court further held that the claims were not sufficiently enabled (D.I. 165 at 16-19), and failed to provide the required written description of the claims. (D.I. 165 at 20-21). Finally, the Court concluded that the Court cannot complete a meaningful infringement analysis in view of the Court's finding that certain claim limitations for each of the patents-in-suit were indefinite, and "[a]dditionally, all the asserted claims are invalid, therefore, by operation of law they are not infringed." (D.I. 165 at 21-22).

### E. The Inventor's Testimony

JPMorgan cites what it alleges to be inventor's testimony that the patents were "poorly written" completely out of context. (DI 174 at 3, 15-16). In fact, the testimony in context was simply that one word only, "proprietary" in Column 7 of the patent text, was out of place in a patent specification. (DI 146, Ex. DBB at 203:6-23). Similarly, there is no legal justification for JPMorgan's gratuitous insertion of the deposition opinions of disgruntled former employees or associates who never addressed the patent claims, but only expressed their opinions about the credibility or value of Pi-Net's former business. (DI 174 at 16-18). What this insert has to do with the issues to be determined by the Court on this Motion remains unclear.

6

## IV. ARGUMENT

### A. Legal Standards For Exceptional Case

The general rule, known as the "American Rule," is that "each party bears its own costs." *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 471 (Fed.Cir.1985) ("Under the 'American Rule,' the prevailing litigant is ordinarily not entitled to any attorney fees, absent statutory authority."). A statutory exception to this rule can be found in 35 U.S.C. §285, which provides: "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party."

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ___ U.S. ___, 134 S. Ct. 1749 (2014), the Supreme Court held that the statutory exception to the American Rule should not be viewed as a normal occurrence, but is reserved for rare cases:

> We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023 (1994).

*Octane Fitness*, 134 S. Ct. at 1756. The Court further suggested that the courts may determine whether a case is exceptional by means of a "case-by-case exercise of their discretion, considering the totality of the circumstances," which include factors such as "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 fn. 6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023 (1994)).

However, only a "rare" will meet the legal requirement of being declared "exceptional." *Octane Fitness*, 134 S. Ct. at 1756, 1757. The Court stated that "when Congress used the word in §285 (and today, for that matter), '[e]xceptional' meant 'uncommon' 'rare,' or 'not ordinary.'" *Octane Fitness*, 134 S. Ct. at 1756.

There is a presumption that a plaintiff has asserted infringement of a duly granted patent in good faith. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326–27 (Fed.Cir. 2013).

## B. Statutory Presumption of Validity

JPMorgan ignores the statutory presumption of validity of issued patents. All patents are presumed to be valid and invalidity must be shown by clear and convincing evidence:

> Under § 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. §282. We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.

*Microsoft Corp. v. i4i Ltd. P'ship*, ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011).

The Supreme Court has also consistently pointed out that Congress has charged the PTO with the examination of patent applications and determining the definiteness, enablement and written description requirements that the Court found wanting on summary judgment in this case. The Supreme Court, thus, has stated:

> Pursuant to its authority under the Patent Clause, U.S. Const., Art. I, §8, cl. 8, Congress has charged the United States Patent and Trademark Office (PTO) with the task of examining patent applications, 35 U.S.C. §2(a)(1), and issuing patents if "it appears that the applicant is entitled to a patent under the law," §131. Congress has set forth the prerequisites for issuance of a patent, which the PTO must evaluate in the examination process. … In evaluating whether these and other statutory conditions have been met, PTO examiners must make various factual determinations—for instance, the state of the prior art in the field and the nature of the advancement embodied in the invention. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816 (1999).

*Microsoft Corp.*, 131 S. Ct. at 2242.

The statutory presumption particularly means that an issued patent is presumed to comply with the definiteness, enablement and written description requirements of 35 U.S.C. §112. *Nat'l Recovery Technologies, Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) ("Every patent is presumed valid. The presumption of validity includes a presumption that the patent complies with § 112.") (internal citations omitted).

### C. Case Is Not Exceptional Where Defendant Prevailed On Invalidity of Presumptively Valid Patent Claims

JPMorgan has not alleged that this case is exceptional based on the *Octane Fitness*' rubric of "the unreasonable manner in which the case was litigated." Thus, JPMorgan must demonstrate that, considering the totality of the circumstances, this is one of the "rare" cases that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)."

JPMorgan cannot meet that burden, and, instead, asks the Court to disregard the fundamental precept of the presumption of validity of issued patents. The Court held that the claims were invalid for indefiniteness and lack of enablement and written description. Yet, these are the very issues that Congress charged the PTO with examining and determining. *Microsoft Corp.*, 131 S.Ct. at 2242. This is not to say that a Court cannot reach a different conclusion than the PTO. But, a case cannot be "exceptional" where the Defendant prevails on the basis that the Court had a different view than the PTO as to whether the claims met the requirements of 35 U.S.C. §112(b).

JPMorgan argues that the "disclosure of Pi-Net's asserted patents—the claims, the text of the written description, and the Figures—is so intrinsically defective that the Court held every asserted claims invalid for at least three separate and independent reasons." (DI 174 at p.3).

But, a patentee is entitled to rely on the Federal statute that says that every claim of a patent is presumed to be valid, and the well-established law that the claims remain valid unless demonstrated to be invalid by clear and convincing evidence. A patentee is particularly entitled to enforce patents where the challenge is based on an opinion of Defendant's hired expert that argued definiteness, enablement and written description contrary to the presumed opinion of the PTO experts.

Similarly, JPMorgan argues that the "The Sheer Number of Defenses On Which JPMC Prevailed Support an Exceptional Case Finding." (DI 174 at 13). However, all the defenses on which JPMorgan prevailed were based on the requirements of 35 U.S.C. §112(b), and all of which were within the PTO's expertise and were endorsed by the PTO in issuing the patents. So long as the basis for prevailing was invalidity under 35 U.S.C. §112(b), the presumption of validity and the correctness of the PTO's review precludes any basis for finding a case exceptional.

Considering *Octane Fitness*' suggested factors, a patentee's enforcement of its patents in reliance on the fact that its patents are presumed to be valid and are challenged on the basis that were presumptively sanctioned by the PTO, cannot be held to be "frivolous," unless the statutory provisions that "[a] patent shall be presumed valid" and "[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity" in 35 U.S.C. §282 are deemed frivolous. Nor can it be validly argued that a patentee is "objectively unreasonable" when the patentee relies, as in this case, on the fact that it relied on the PTO's examination of its patent applications and the fact that the PTO's experts had deemed that the patentee's claims met the definiteness, enablement and written description requirements of 35 U.S.C. §112(b). Nor is there, or can be, any showing of improper "motivation" or "need in

particular circumstances to advance considerations of compensation and deterrence" where there is nothing more than the fact that the patentee pursued enforcement of its presumptively valid patents in the face of a Defendant's invalidity challenge based on its expert's disagreement with the PTO's judgment. *Octane Fitness*, 134 S. Ct. at 1756 fn. 6 (quoting *Fogerty v. Fantasy, Inc.*, *supra*).

### D. Case Is Not Exceptional Where Patentee Followed the Claim Constructions of the PTAB

JPMorgan's Motion argues that the case is so "exceptional" as to warrant attorney fees, because "Pi-Net's claims for infringement were objectively baseless," citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013), which JPMorgan alleges involved "similar circumstances." (DI 174 at 14). In fact the facts of *Taurus IP* are entirely distinguishable. The "exceptional case" finding in *Taurus IP* did not involve alleged invalidity of patent claims, much less under 35 U.S.C. §112(b). The Federal Circuit held the case exceptional, because in its infringement – not validity – arguments "Taurus's proposed constructions of 'user' … [fell] below the threshold required to avoid a finding of objective baselessness." *Id*. In other words, the patentee had proposed constructions that were far broader than supported by the intrinsic record in order to establish infringement. The presumption of validity and the correctness of the PTO's issuance of the claims was not in issue.

Here, the issue was whether the claims were invalid for indefiniteness, which is exactly within the PTO's purview, and was unrelated to any assertions of infringement.

Here, moreover, Pi-Net had generally argued constructions of its claims that had been suggested by the PTAB. Thus, JPMorgan argues that Pi-Net's claim constructions demonstrate that this case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)"

11

(quoting *Octane Fitness*, 134 S. Ct. at 1756), based on the fact that the defining characteristic of the "claims that were asserted against JPMC [was] their pervasive and insoluble ambiguity, which the Court recognized as clearly running afoul of the definiteness requirement of 35 U.S.C. §112." (DI 174 at 2). JPMorgan emphasizes in particular two claim limitations – "service network" and "VAN Switch." (DI 174 at 7). Both examples demonstrate, however, the bankruptcy of JPMorgan's Motion.

Thus, the PTAB expressly rejected the Petitioner's argument that the term "service network atop the Web" was indefinite. (DI 141-2 at BB-37). The PTAB held that the term is sufficiently defined in the specification, and particularly that:

> [The specification] discloses five components that provide service network functionality and states that the service network operates within the boundaries of an IP-based facilities network. At least with respect to this term, we are persuaded that one of ordinary skill would understand the bounds of the claim when read in light of the specification. *Exxon Research & Eng'g. Co. v. United States*, 265 F.3d 1371, 1375 (Fed, Cir. 2001). Therefore, we are not persuaded that the term "service network atop the Web" is indefinite.[2]

Similarly, JPMorgan's lengthy assertions that Pi-Net's proposed definition of "VAN Switch" exemplifies the allegedly objectively baseless nature of the litigation (DI 174 at 14) ignore that Pi-Net had proposed a construction of the term and detailed the basis for that construction in the patents and their prosecution histories. Thereafter, the PTAB discussed and construed "VAN Switch" during the concurrent PTO review proceedings. The PTAB defined VAN Switch as: "an OSI application layer switch having a switching component, object routing component and management component." (D.I 141-2 at BB-82-83). Pi-Net posited that the PTAB's construction was an acceptable alternative definition of the term. (DI 169 at p. 49). The

---

[2] Patentee, in its response to the PTAB's Decision to Institute, construed a "service network" as "an OSI application layer network running on top of a facilities network and that provides value-added network services (VAN services)," as supported by the specification of the Patents-in-suit.

12

PTAB's construction was consistent with, and had full support in the patent specification. (DI 141-1, Expert Report of Dr. Michael Bardash, Appendix AA at A-1039).[3] JPMorgan's Accused Instrumentalities would infringe whether Pi-Net's original or the more general PTAB construction was accepted. *Id*.

### E. Pi-Net's Exercise of Its Statutory Rights Does Not Support Exceptionality

JPMorgan alleges that Pi-Net had enforced its patents, and obtained at least some settlements prior to this Court's judgment. The fact of Pi-Net's enforcement of its patents cannot support JPMorgan's burden of proving that this case is exceptional. The Federal patent statute expressly authorizes a patentee to enforce its patents by such infringement actions. The law states expressly that "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S. Code §281.

### F. Frivolous "Exceptional Case" Motions Should Be Deterred

JPMorgan acknowledges that there is still scant authority implementing the new *Octane Fitness* standard, but argues that the need for deterrence suggests that Pi-Net should be sanctioned here. (DI 174 at 17-18). However, basic patent law supported Pi-Net's action against JPMorgan, and there is nothing to deter. In fact, if deterrence is needed, it is to deter frivolous motions for attorney fees as presented by JPMorgan by this Motion.

Pi-Net obtained three patents over a period of time. The issued patents were presumed to be valid, and it is especially presumed that the PTO complied with its obligations to examine the patents to make certain the §112(b) requirements of definiteness, enablement and written

---

[3] In fact, patentee, in its response to the PTAB's Decision to Institute, construed the term VAN Switch as: "an OSI application layer switch having a switching component, object routing component, management component, and a Point-of-Service application displayed on a Web page or Web browser," as per columns 9, 5, 6 and Figs. 5B and 7 of the specification of the patents-in-suit.

description were complied with.  Federal patent law also gave Pi-Net the right to file and pursue civil actions for damages for infringement of its presumptively valid patents.  Although the Court rejected Pi-Net's arguments, Pi-Net had presented detailed expert reports and declarations of undisputed experts in the field to support its claim constructions.  Additionally, the PTAB, who was charged by Congress with quasi-judicial responsibilities to review issued patents, had issued claim constructions in its Decision to Institute a review, which were generally very close to those argued by Pi-Net in this litigation in the District Court, and which supported Pi-Net's infringement arguments.

In short, Pi-Net had an absolute right to rely on the statutory presumed validity of its patents and the federal patent laws' grant of the right to enforce them.  No legal precedent or other authority suggests that a patentee is bound to accept the conclusions of a Defendant's expert that the presumptively-valid patents are allegedly unreadable by a person skilled in the art and invalid, when other experts expressly and in detail challenged each and every conclusion of the Defendant's expert and when the PTAB's experts could construe the claims.

Against this array of express statutory rights and presumptions that Pi-Net owned valid patents that it was entitled to enforce, JPMorgan presents nothing except unsupported assertions that Pi-Net should have accepted JPMorgan's expert's conclusions, ignored the presumed validity of the claims, and simply walked away without affording the judicial system the opportunity to pass its judgment on whether invalidity had been proven by clear and convincing evidence.

The Court determined that, in fact, the patents failed the requirements of definiteness, enablement and written description, but until that time, the patents were presumed valid and enforceable.  A patentee cannot be deemed to be objectively unreasonable in relying on the

presumed validity of its patents as it enforces them. To make sense of the provisions of §282, it should be a matter of law that §285 cannot be applied to a patentee's enforcement of its claims, at least when the defense is alleged failure to comply with §112(b).

In this particular case, moreover, the PTO and PTAB twice determined that the claims met the requirements of §112(b). To say that the case is exceptional is to say that the PTAB was objectively unreasonable in finding the term limitations to be construable, and in explaining what the patent meant by, for example, the terms "VAN Switch" and "service network."

Thus, this case does not suggest any need to deter Pi-Net or similar patentees. It does present a case for deterring frivolous motions for sanctions, so that §285 does not become a tool to effectively terrorize small patentees from enforcing the right granted to them by 35 U.S. Code §281 to "have remedy by civil action for infringement" of the patentees' patents that are presumed to be valid. If Pi-Net were to be liable for attorney fees in this case simply because the specification was too ambiguous or the claims failed the requirements of §112(b), then what case would not be "exceptional"? At least every time a patent were held invalid for failing §112(b), the same arguments for exceptionality could be made as here. The rights granted patentees under §281 and §282 would be rendered meaningless.

JPMorgan cites *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011), where the Federal Circuit commented that "the district court was unable 'to see the lack of merit of the patentee's infringement allegations" prior to engaging in "excessive claim construction analysis." (DI 174 at 18-19).

But, JPMorgan simply mischaracterizes the Court's decision here as one of "infringement." The issue considered by the Court was whether the claims met the requirements of 35 U.S.C. §112(b), and now the issue is whether the patentee could rely on the presumption of

15

validity and that the PTAB's proposed constructions of claim terms were so not intrinsically defective that no patentee could rely on the PTAB's expertise and judgment. JPMorgan ignores these relevant issues, while presenting legal arguments directed to an entirely different situation and mischaracterizing the record.

Thus, JPMorgan argues that Pi-Net had "undisputed knowledge of the fatal deficiencies in the patents-in-suit." (DI 174 at 19). No support is cited and there can be none, because federal statute and the facts demonstrate only that Pi-Net had the right to rely on the presumption of validity of its patents, and had the right to assume that the PTAB's proposed constructions were not "fatally deficient."

Equally, Pi-Net, as a patentee, is entitled and has the right to enforce its patents – regardless of how many suits are filed – so long as Pi-Net had a good-faith belief that there was infringement.

## V. CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that JPMorgan's motion for attorney fees be denied.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff Pi-Net Int'l, Inc.*