## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., <br><br> Defendant. | Civ. No. 1:12-cv-00282-SLR |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION
## FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285 AND FED. R. CIV. P. 54(d)(2)

### REDACTED -- PUBLIC VERSION

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
andrew.gish@skadden.com

DATED:  July 8, 2014

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PI-NET INTERNATIONAL INC., | |
| Plaintiff, | |
| v. | Civ. No. 1:12-cv-00282-SLR |
| JPMORGAN CHASE & CO., | |
| Defendant. | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION
FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285 AND FED. R. CIV. P. 54(d)(2)**

OF COUNSEL:

Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel.:  (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
andrew.gish@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

## TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT ........................................................................1

II.     MERE ISSUANCE OF THE ASSERTED PATENTS DOES NOT GRANT
        PI-NET A SAFE HARBOR FROM LIABILITY FOR FEES UNDER
        SECTION 285.............................................................................................................2

        A.      Categorical Prohibitions On Attorney Fee Awards Are Improper ........2

        B.      The Presumption Of Validity Does Not Immunize Pi-Net From Attorney
                Fees ...........................................................................................................4

        C.      The PTO's Treatment Of Related Pi-Net Patents In Reexamination
                Weakens The Presumption Of Validity ...................................................4

III.    THE PTAB'S CONSTRUCTIONS IN NO WAY DIMINISH THE
        SUBSTANTIVE STRENGTH OF JPMC'S INVALIDITY ARGUMENTS................5

        A.      The PTAB Was Not Permitted To Consider § 112 Arguments Regarding
                The '500 And '492 Patents ........................................................................6

        B.      The PTAB Found That All Asserted Claims Of The '158 Patent Are More
                Likely Than Not Invalid For Indefiniteness............................................6

        C.      Even If The PTAB Had Considered § 112 Arguments, Reducing A Claim
                To Words Does Not Equate To Validity Under § 112..............................7

        D.      Even If The PTAB Had Construed The Asserted Patents In Pi-Net's Favor,
                The Strength Of JPMC's Litigation Position Would Stand Out .............7

IV.     PI-NET HAS NOT REBUTTED JPMC'S SHOWING THAT THIS CASE
        "STANDS OUT"........................................................................................................8

V.      CONCLUSION .........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Endo Pharmaceuticals Inc. v. Mylan Pharmaceuticals Inc.,*
    No. 11-CV-00717 (RMB/KW), 2014 WL 334178 (D. Del. Jan. 28, 2014) ...................... 4

*In re Avid Identification Systems, Inc.,*
    504 F. App'x 885 (Fed. Cir. 2013) ................................................................. 2, 8

*In re Swanson,*
    540 F.3d at 1378 ................................................................................................. 8

*In re Taylor,*
    484 F. App'x 540 (Fed. Cir. 2012) .................................................................. 2

*Kimberly-Clark Corp. v. Procter & Gamble Distributing Co.,*
    973 F.2d 911 (Fed. Cir. 1992) ......................................................................... 4

*Nutrition 21 v. United States,*
    930 F.2d 867 (Fed. Cir. 1991) ......................................................................... 1

*Octane Fitness, LLC v. ICON Health & Fitness Inc.,*
    134 S. Ct. 1749 (Apr. 29, 2014) ................................................................... 1, 3

*Pozen Inc. v. Par Pharmaceutical, Inc.,*
    696 F.3d 1151 (Fed. Cir. 2012) ....................................................................... 4

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,*
    537 F.3d 1357 (Fed. Cir. 2008) ....................................................................... 7

*T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment,*
    821 F.2d 646 (Fed. Cir. 1987) ......................................................................... 4

**STATUTES**

35 U.S.C. § 311(b) ..................................................................................................... 6

35 U.S.C. § 112 ................................................................................................ *passim*

35 U.S.C. § 285 ............................................................................................... *passim*

## I.    SUMMARY OF ARGUMENT

Pi-Net opposes JPMC's motion for attorney fees based on the misguided notion that it "ha[d] an absolute right to rely on the statutory presumed validity of its patents," and invites this Court to establish a new rule as "a matter of law . . . § 285 cannot be applied" to award attorney fees where a defendant prevails on 35 U.S.C. § 112 grounds. (D.I. 180 at 14-15.)  This is directly at odds with the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, which explicitly rejected such bright line tests for evaluating fees motions just two months ago.  134 S. Ct. 1749, 1756-57 (Apr. 29, 2014) ("'there is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised").  Indeed, the presumption of validity is merely a "procedural device that places the burden going forward and the ultimate burden of persuasion at trial on one attacking the validity of a patent." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991).  Contrary to Pi-Net's argument, the presumption does not establish an "absolute right" to assert defective patents with impunity, particularly where the defects are intrinsic to the patent and known to the patentee-plaintiff.

Pi-Net's assertion that the Patent Trial and Appeals Board's ("PTAB") treatment of the patents-in-suit somehow immunizes Pi-Net's conduct is equally unavailing and also misleading. First, the PTAB never evaluated whether the patents-in-suit were invalid for lack of written description or lack of enablement because (a) it lacks authority to consider § 112 arguments for U.S. Patent No. 5,987,500 (the "'500 patent") and U.S. Patent No 8,108,492 (the "'492 patent" in Inter Partes Review ("IPR") proceedings; and (b) the petitioner did not raise such challenges against U.S Patent No. 8,037,158 (the "'158 patent").  Second, the PTAB determined that all claims of the '158 patent were "more likely than not" indefinite—thus corroborating that, as this Court already concluded, the claims of the '158 patent are defective.  (Ex. FA)  Third, and perhaps most glaringly, Pi-Net's brief fails to mention that the PTAB has concluded that it is

either more likely than not or reasonably likely that every asserted claim of the patents-in-suit is invalid.  Accordingly, the PTAB's treatment of the patents-in-suit does nothing to shelter Pi-Net from liability for JPMC's attorney fees, and instead corroborates JPMC's position.

Likewise, the fact that the PTAB was able to construe certain terms that this Court found indefinite is of no consequence because, "[i]n contrast to district court proceedings . . . claims under examination before the PTO are given their broadest reasonable interpretation."  *In re Taylor*, 484 F. App'x 540, 542 (Fed. Cir. 2012).  Thus, the fact that the PTAB was able to provide *some* construction for the asserted claims under this forgiving standard is no indication that the *correct* construction under district court standards is definite.  Moreover, the PTAB routinely finds—including during review of the asserted patents in this suit—that even claim terms reducible to words are nevertheless indefinite.  (*See* Ex. FA at 15-16, 34)

Because Pi-Net failed to establish that the presumption of validity provides it absolute immunity from liability under 35 U.S.C. § 285, failed to demonstrate that the PTAB's review of the patents-in-suit is relevant, and failed to rebut JPMC's showing that the claims were "exceptionally meritless," JPMC respectfully submits that the Court should declare this case exceptional under 35 U.S.C. § 285 and award JPMC its reasonable attorney fees.

## II.   MERE ISSUANCE OF THE ASSERTED PATENTS DOES NOT GRANT PI-NET A SAFE HARBOR FROM LIABILITY FOR FEES UNDER SECTION 285.

### A.   Categorical Prohibitions On Attorney Fee Awards Are Improper.

Pi-Net does not dispute the substantive strength of JPMC's case.  Instead, Pi-Net urges the Court to cast aside Supreme Court precedent and write a safe harbor provision into 35 U.S.C. § 285, because "it *should be* a matter of law that § 285 cannot be applied" where a defendant prevails on § 112 grounds.  (D.I. 180 at 15 (emphasis added).)  Yet, as Pi-Net's opposition brief acknowledges, this is not the law.  (*Id.*)

2

More importantly, as the Supreme Court ruled in *Octane Fitness*, this cannot become the law. The thrust of the Supreme Court's decision in *Octane Fitness* was that the statutory text of 35 U.S.C. § 285 is "inherently flexible" and should be evaluated by district courts "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Because "'[t]here is no precise rule or formula for making these determinations,'" the prior *Brooks Furniture* standard—which rigidly restricted fees to only those cases involving misconduct or claims both "'brought in subjective bad faith'" and "'objectively baseless'"—was improper.[1] *Id.* Pi-Net's proposed ban of attorney fee awards in any case where the defendant prevailed on validity grounds is precisely the type of rigid, bright line test that "impermissibly encumbers the statutory grant of discretion to district courts." *Id.* at 1755. Thus, instead of making new law that would fly in the face of brand new Supreme Court precedent, JPMC submits that this Court should apply its discretion and rule that the present case "is simply one that stands out from others with respect to the substantive strength of [JPMC's] litigating position (considering both the governing law and the facts of the case)." *Id.* at 1756.[2]

---

[1] Pi-Net inappropriately applies the more stringent *Brooks Furniture* framework in certain portions of its opposition brief. (*E.g.*, D.I. 180 at 2 ("JPMorgan blindly charges . . . that the Pi-Net/PTAB's claim constructions were so *objectively unreasonable* that attorney fees are warranted.") (emphasis added)); D.I. 180 at 14-15 ("A patentee cannot be deemed to be *objectively unreasonable* in relying on the presumed validity of its patents.") (emphasis added).) In fact, under *Octane Fitness*, JPMC need not prove that Pi-Net's position was "objectively baseless," but only that the strength of JPMC's litigating position "stands out." *Octane Fitness*, 134 S. Ct. at 1757.

[2] Pi-Net's opposition brief repeatedly invokes the Supreme Court's statement that attorney fees should be granted in "rare" instances. (*E.g.*, D.I. 180 at 7-8.) JPMC demonstrated in its opening brief why this is the "rare" case where the patentee-plaintiff had every indication that its patents were invalid, and plunged headlong into a series of patent infringement suits across the country. (*See* D.I. 174.) This conduct, combined with the sheer breadth and depth of defects in the disclosure and claims of the patents-in-suit, makes this case "rare" indeed.

3

### B.    The Presumption Of Validity Does Not Immunize Pi-Net From Attorney Fees.

Even if *Octane Fitness* did not prohibit bright line rules, establishing an absolute safe

harbor against attorney fee awards for validly issued patents is inappropriate because the

presumption of validity is rebuttable by clear and convincing evidence of invalidity." *E.g.*, *Endo*

*Pharm. Inc. v. Mylan Pharm. Inc.*, No. 11-CV-00717 (RMB/KW), 2014 WL 334178, at *6 (D.

Del. Jan. 28, 2014).   The statutory presumption of validity was not intended to provide

substantive immunity against any attorney fee awards; indeed, "the presumption . . . is

procedural, not substantive." *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d

646, 647-48 (Fed. Cir. 1987).   It manifests in the burden of "clear and convincing evidence"

"afforded issued patents." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1165 (Fed. Cir. 2012).

As this Court already recognized, the facts in this case clearly rebut the presumption of validity

and render this a case that "stands out" for purposes of Section 285.   (D.I. 165 at 10-21.)

### C.    The PTO's Treatment Of Related Pi-Net Patents In Reexamination Weakens The Presumption Of Validity.

Even if the presumption of validity offered some protection to Pi-Net, the PTO's

treatment of related patents in reexamination proceedings ongoing before this suit was filed cast

serious doubt on the presumption.   Where the actions of the PTO call into question the validity of

an issued patent, the presumption of validity weakens regardless of whether a court has officially

declared a patent invalid.   *See, e.g.*, *Kimberly-Clark Corp. v. Procter & Gamble Distributing*

*Co.*, 973 F.2d 911, 914 (Fed. Cir. 1992) ("[T]he presumption of validity provided by 35 U.S.C. §

282 [was] eroded by the grant of an 'interfering' patent.").   Though the PTO originally granted

the asserted patents, it more recently invalidated numerous claims of related patents in

reexaminations filed more than three years before the present lawsuit.   For instance, the PTO

recently rejected all claims of the parent of the asserted patents, U.S. Patent No. 5,778,178, in *ex*

4

*parte* reexamination. (Ex. FH at 1-2)  Earlier today, the PTAB affirmed the PTO's rejection of 8

of the 15 claims of U.S. Patent No. 5,778,178 for anticipation and obviousness on appeal.  (Ex.

FH at 1-2)  Though the PTAB reversed the PTO's ruling on the remaining 7 claims, it did so only

because it found the claims invalid for indefiniteness, and therefore felt that "applying prior art to

such claims would be speculative." (*Id.* at 11-12)  Because "rejections based on 35 U.S.C. § 112

are beyond the scope of a reexamination proceeding" the PTAB was not permitted to officially

invalidate the remaining 7 claims.  Nevertheless, the PTAB's ruling casts serious doubt on the

validity of these claims.

 Similarly, the PTO recently rejected all claims of related patent 6,212,556 in *ex parte*

reexamination, and all but two claims of related patent 7,340,506 in *inter partes* reexamination.

(Ex. FI at 3; Ex. FJ at 1-2)  Earlier today, the PTAB affirmed the PTO's rejection of all claims of

U.S. Patent No. 7,340,506 on appeal.  (Ex. FJ at 36)

 More pertinently, the PTAB has recently ruled that all claims of the '158 patent are "more

likely than not invalid" and all claims of the '500 and '492 patents are "reasonably likely" to be

invalid.  (Ex. FC; Ex. FD; Ex. FA)  Pi-Net brought this suit and persisted with it despite every

indication from the PTO that the patents-in-suit were infirm; Pi-Net should now be held

accountable for its decision to litigate in spite of those indications.

## III. THE PTAB'S CONSTRUCTIONS IN NO WAY DIMINISH THE SUBSTANTIVE STRENGTH OF JPMC'S INVALIDITY ARGUMENTS.

 Pi-Net argues at length that, because the PTAB construed the claims of the asserted

patents in Covered Business Method ("CBM") Review and IPR proceedings, the strength of

JPMC's invalidity case cannot stand out sufficiently to justify attorney fees.  (D.I. 180 at 2, 11-

13.)  This position is not only legally unsupported, it materially misstates the facts.  In reality, the

PTAB has already concluded that "there is a reasonable likelihood that" all asserted claims of the

'500 and '492 patents are invalid and that the asserted claims of the '158 patent are "more likely than not" unpatentable.  In other words, just as this Court has concluded, the PTAB appears headed for a conclusion that all claims of the asserted patents are invalid.  As for the specific invalidity grounds underlying this Court's decision, the PTAB either (a) was not permitted to consider those grounds; or (b) reached an initial conclusion consistent with JPMC's position.

### A.     The PTAB Was Not Permitted To Consider § 112 Arguments Regarding The '500 And '492 Patents.

The PTAB never held that the '500 and '492 patents pass muster under 35 U.S.C. § 112, because it never had the opportunity to consider the issue.  SAP America, Inc. ("SAP") petitioned for IPR of the '500 and '492 patents.  (Ex. FC; Ex. FD)  In an IPR, the PTAB may consider challenges "*only* on a ground that could be raised under section 102 or 103," *i.e.*, anticipation and obviousness.  35 U.S.C. § 311(b) (emphasis added).  The PTAB may not consider challenges based on 35 U.S.C. § 112 in an IPR.  *Id.*  Thus, these proceedings are not relevant to the Court's determinations of invalidity, all of which were based on Section 112.

### B.     The PTAB Found That All Asserted Claims Of The '158 Patent Are More Likely Than Not Invalid For Indefiniteness.

Similarly, SAP challenged the '158 patent in a CBM Review, but never held that the '158 patent passes muster under 35 U.S.C. § 112.  (Ex. FB)  SAP did not challenge the '158 patent on written description or enablement grounds, so the PTAB never considered those issues.  (*See id.*)

SAP did challenge certain terms of the '158 patent on indefiniteness grounds.  (Ex. FB at 74-80)  When given the opportunity to consider these Section 112 arguments, PTAB agreed that the term "routed transactional data structure" was indefinite, and therefore found that "it is more likely than not that claim 1 is unpatentable under 35 U.S.C. § 112(b)." (Ex. FA at 34)  Because all claims in the '158 patent depend from claim 1—including claim 4, the sole claim of the '158 patent asserted in this suit—the PTAB effectively ruled that all claims of the '158 patent were

6

more likely than not invalid for indefiniteness.[3]  (Ex. FE at 9:41-10:42)  Thus, contrary to Pi-Net's arguments, the PTAB's treatment of the '158 patent confirms the strength of JPMC's case.

### C.    Even If The PTAB Had Considered § 112 Arguments, Reducing A Claim To Words Does Not Equate To Validity Under § 112.

Further, as a matter of law, the mere fact that the PTAB reduced certain claims to words does not indicate that they are valid under § 112.  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008) ("[A] reduction of the meaning of a claim term into words is not dispositive of whether the term is definite.").  In fact, in its decision instituting CBM Review of the '158 patent, the PTAB construed "routed transactional data structure" to mean "a data structure that facilitates switching a user who selects a transactional application to a service provider program that provides immediate processing." (Ex. FA at 15-16)  Nevertheless, the PTAB went on to find "routed transactional data structure" more likely than not indefinite.  (Ex. FA at 34 ("Although we have construed the claim to give it the broadest reasonable interpretation . . . we are persuaded it is more likely than not that claim 1 is unpatentable under 35 U.S.C. § 112(b)."))  Thus, the PTAB's adoption of claim constructions in no way establishes the validity of the asserted patents.  During claim construction and summary judgment briefing Pi-Net urged the same mistaken position, but the mere fact that a claim term can be reduced to words is not probative of definiteness.  (*E.g.*, D.I. 131 at 10; D.I. 145 at 5.)

### D.    Even If The PTAB Had Construed The Asserted Patents In Pi-Net's Favor, The Strength Of JPMC's Litigation Position Would Stand Out.

Any relevance of the PTAB's claim constructions is further diminished by the fact that

---

[3] Though Pi-Net discusses the PTAB's construction of the term "VAN Switch" at length, the PTAB never considered § 112 arguments regarding this term during IPR or CBM Review.  (*See* D.I. 180 at 4-5, 12-13; Ex. FA; Ex. FC; Ex. FD.)  As such, the PTAB's construction cannot operate as an endorsement of the claims containing this term.

the PTAB applies a wholly different standard of claim construction than district courts (*i.e.*, their

"broadest reasonable construction").  As the PTAB has explained, this distinction is critical:

> There are . . . two claim construction standards: the Office's [broadest reasonable interpretation] construction and the district court standard set forth in *Phillips v. AWH*.  The difference in standards generally arises from the ability of an applicant or patent owner in Office proceedings to amend their claims, and the fact that there is no presumption of validity before the Office.  Through the use of the broadest reasonable interpretation standard, the Office is able to encourage inventors to amend their claims to remove uncertainties over breadth of claim scope.

(Ex. FF at 7-8)  That is, the PTAB construes terms broadly and liberally because the applicant

"has the ability to correct errors in claim language and to adjust the scope of claim protection as

needed during prosecution by amending the claims." *In re Taylor*, 484 F. App'x 540, 542 (Fed.

Cir. 2012); *see In re Avid Identification Sys., Inc.*, 504 F. App'x 885, 888 (Fed. Cir. 2013)

(finding that "because there was no consistent, explicit definition in the specification, and there

were varied uses of the phrase in the patent, the Board under its broadest reasonable construction

practice did not error in construing" the term at issue broadly).  Thus, "considering an issue at the

district court is not equivalent to the PTO having had the opportunity to consider it," and the

PTAB's constructions have no bearing on whether the substantive strength of JPMC's case is

exceptional. *In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008).

## IV.  PI-NET HAS NOT REBUTTED JPMC'S SHOWING THAT THIS CASE "STANDS OUT."

Because no safe harbor immunizes Pi-Net from liability under Section 285, fees are

warranted for the reasons expressed in JPMC's opening brief.  The thrust of JPMC's argument is

that Pi-Net's case was so exceptionally meritless that it "stands out" from typical patent suits.

The weakness of Pi-Net's claims is evidenced by at least three independent sources: (a) this

Court's invalidation of every asserted claim for three or more independent bases; (b) the PTAB's

determination that the asserted patents are "more likely than not" invalid (for the '158 patent) or

"reasonably likely" to be found invalid (for the '500 and '492 patents); and (c) the PTO's invalidation of essentially all claims of three related patents. (D.I. 174 at 2-3, 6-11, 13-17.)

Though Pi-Net attempts to recast JPMC's argument as asserting that "Pi-Net should have known that its presumptively valid claims are invalid," Pi-Net's knowledge of the defects in its patents is merely an exacerbating factor. (D.I. 180 at 1.) This factor nonetheless bears on just how much this rare case "stands out," particularly given that Pi-Net's knowledge of the weakness of its patents is shown at least by (a) its awareness of the PTO proceedings that were ongoing even before it sued JPMC; (b) its awareness of the PTAB proceedings initiated by SAP during the pendency of Pi-Net's suit against JPMC; (c) its pursuit of nuisance value settlements; (d) the sworn deposition testimony of its former employees[4]; and (e) the sworn deposition testimony of its principal, Dr. Lakshmi Arunachalam. (D.I. 174 at 2-3, 6-11, 13-17.)

In an attempt to disavow this knowledge, Pi-Net asserts that Dr. Arunchalam's testimony regarding the poor quality of the asserted patents refers only to the fact that the word "'proprietary' in Column 7 of the patent text[] was out of place in a patent specification." (D.I. 180 at 6.) In the first instance, knowledge of a critical flaw in the written description of TMP—which this Court held is present is "all of the disclosed embodiments" of the asserted patents—is problematic in and of itself. (D.I. 163 at 28.)



## V.    CONCLUSION

Pi-Net asks the Court to bless its decision to turn a blind eye to the overwhelming evidence that its patents were invalid. However, the Supreme Court's decision in *Octane Fitness* explicitly provides that such actions may have serious consequences under Section 285. Moreover, the logic underlying Pi-Net's desired new rule does not apply here, where both the PTO and the PTAB have expressed serious doubts as to the validity of Pi-Net's patents. Thus, for the foregoing reasons and those expressed in JPMC's opening brief, the Court should exercise its discretion to declare this case exceptional and award JPMC its reasonable attorney fees.

DATED:  June 30, 2014

OF COUNSEL
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
andrew.gish@skadden.com

Respectfully submitted,

*/s/ Robert S. Saunders*
Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

11