# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 12-282-SLR |
| | ) |
| JPMORGAN CHASE & CO., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S SUR-REPLY BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285
## AND FED. R. CIV. P. 54(d)(2) (D.I. 173, 174)

George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff
Pi-Net International, Inc.*

## TABLE OF CONTENTS

I.    SUR-REPLY ARGUMENTS ................................................................................................ 1

    A.    Legal Standards For Exceptional Case ............................................................................ 1

    B.    JPMorgan's Erroneous Assertion of Pi-Net's "Knowledge" ........................................... 3

    C.    This Case Does Not "Stand Out" ..................................................................................... 6

II.    CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

*Cases*

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517, 534 n. 19, 114 S.Ct. 1023 (1994) _____ 1

*Machinery Corp. of Am. v. Gullfiber AB*,
  774 F.2d 467 (Fed. Cir. 1985) _____ 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ___ U.S. ___,
  134 S. Ct. 1749 (2014) _____ 1, 2, 7

*Statutes*

35 U.S.C. §112 _____ passim

## I.   SUR-REPLY ARGUMENTS

### A.   Legal Standards For Exceptional Case

JPMorgan argues that the Supreme Court abjured any "bright line" tests and rejected the "objectively unreasonable" as a standard. (DI 181 at 1, 3, 4, fn. 1).  In fact, the Supreme Court did not say anything about "bright lines," but the Court did say that:

> In 1952, when Congress used the word in § 285 (and today, for that matter), "[e]xceptional" meant "uncommon," "rare," or "not ordinary."  An "exceptional" case, then, is simply one that stands out from others with respect to the substantive strength of a party's litigating position (*considering both the governing law* and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ___ U.S. ___, 134 S. Ct. 1749, 1751 (2014) (internal citations omitted).  The Court further added that the courts may determine whether a case is exceptional by considering both "frivolousness, motivation, ***objective unreasonableness (both in the factual and legal components of the case)*** and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 fn. 6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023 (1994)).

The Supreme Court also cited the legislative history of the original "exceptional case" enactment, and stated:

> This provision did "not contemplat[e] that the recovery of attorney's fees [would] become an ordinary thing in patent suits...." S.Rep. No. 79–1503, p. 2 (1946).

*Octane Fitness*, 134 S. Ct. at 1753 fn. 1.  The complete paragraph of the legislative history cited by the Supreme Court was as follows:

> It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, but the discretion given the court in this respect, in addition to the present discretion to award triple damages, will discourage infringement of

1

> a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty. The provision is also made general so as to enable the court to prevent *a gross injustice to an alleged infringer*.

S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.Code Cong.Serv. 1386, 1387, as quoted in *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 472 (Fed. Cir. 1985) (emphasis supplied). Thus, the legislative history of the statute cited by the Supreme Court reflects that Congress did differentiate between the standards applicable to infringers and patentees, and an alleged infringer can recover fees only to prevent "gross injustice."

Thus, JPMorgan errs on multiple fronts in its statement of the applicable principles. JPMorgan has not moved for fees under the "the unreasonable manner in which the case was litigated" *Octane Fitness* standard. JPMorgan has moved for fees only under the "substantive strength of a party's litigating position (*considering both the governing law* and the facts of the case)" standard. The "governing law" is a "bright line," and a significant barrier to JPMorgan's motion.

Moreover, *Octane Fitness* clearly stated that "objective unreasonableness (both in the factual and legal components of the case)" should be considered. Thus, JPMorgan is in error in arguing that "Pi-Net inappropriately applies the more stringent" test of whether the litigation was "objectively unreasonable." (DI 181 at p. 3 fn. 1). Objective unreasonableness is particularly a critical factor when the issue is whether fees should be granted in a case where the Court invalidated the patents under 35 U.S.C. §112 – i.e., on matters that the PTO was specifically charged with considering in originally issuing the patents.

Contrary to JPMorgan's assertion, Pi-Net is not arguing that the presumption of validity "establishes an absolute right to assert defective patents with impunity." (DI 181 at 1). However, determining an "exceptional case" does not allow unbridled discretion, but a case may be deemed exceptional or "rare" only where the alleged infringer can overcome the objective

2

reasonableness of a patentee moving forward with an infringement case in reliance upon the statutory right to enforce patents and the presumption of validity of three separate patents reviewed by different examiners at different times, to avoid "gross injustice."

### B. JPMorgan's Erroneous Assertion of Pi-Net's "Knowledge"

JPMorgan attempts to circumvent the fact of the presumption of validity and that the Court found the patents invalid under 35 U.S.C. § 112 by arguing that Pi-Net "knew" that all three presumptively-valid patents were in fact invalid. (DI 181 at 1). It supports the "knew of the invalidity" argument by citing PTO reexamination proceedings involving other Pi-Net patents. (DI 181 at 4-5).

JPMorgan had not mentioned these reexaminations in its opening brief, and its current arguments mark only desperation, because the reexamination proceedings actually prove the opposite of JPMorgan's argument. JPMorgan cites nothing in the cited reexamination of the related patents where the PTO had indicated any §112 problems with the language of the patent claims here in suit when Pi-Net sued JPMorgan.

On the other hand, the reexaminations cited by JPMorgan are worthwhile reviewing for what they say about whether there was any objectively reasonable basis to foresee the §112 issues raised here and found by the Court. On this front, the PTO had considered §112 issues with respect to the related Pi-Net patents. The PTO examiner found that some of the claim terms were defective under §112. (Exhibit A at 6-10). However, and of great relevance here, the PTO reexamination <u>allowed</u> two of the claims in the U.S. Patent No. 7,340,506 reexamination, and stated that the reason for patentability was that the prior art did not meet, *inter alia*, the "exchange [which PTO held was part of the VAN Switch]" and "value-added service network"

3

claim limitations. (Exhibit A at 12 etc.).[1] Thus, if the reexamination proceedings had any relevance here, it is that the PTO had not rejected "exchange" and "service network" claim limitations as indefinite, and had relied on those limitations to overcome the prior art.

More importantly, JPMorgan raises the reexamination and other current incomplete proceedings, when the most pertinent and obvious fact remains that Pi-Net had specifically relied on some of the claim terms here in issue for the patentability of the claims that issued. Thus, for example, in the '492 prosecution, Pi-Net specifically argued that the prior art was distinguishable, because it was missing

- A value-added network (VAN) switch;
- A value-added network (VAN) service;
- Real-time Web transactions from a Web application; and
- No service network running on top of a facilities network.

(DI 50, Exhibit F [prosecution history of the '492 patent] at p. 78). The examiner rejected two of the proposed claims for failure to comply with §112, but allowed the '492 patent claims here in issue after necessarily considering §112. (DI 50, Exhibit F at 83).

Similarly, the '158 patent claims were allowed after Pi-Net argued to the PTO that:

> Chelliah [*prior art*] displays multi-media content, distinguished from Applicant's "multimedia online service" from a multi-media Web application. Chelliah does not teach or disclose how to transact or **buy or sell in real-time** said multi-media content **from a point-of-service application**. …[N]or is the Web transaction in Chelliah or Montulli occurring "in a service network atop the World Wide Web, and as part of a complete, non-deferred, and real-time Web transaction from a Web application," with a transactional data structure connecting to a transactional point-of-service application across the Web.

(DI 49, Exhibit E [prosecution history of the '158 patent] at p. 187; emphases in the original).

---

[1] Exhibit A is attached to the Declaration of George Pazuniak being concurrently filed.

4

Similar arguments were made in the '500 prosecution to overcome the prior art and obtain allowance of the claims. (DI 49, Exhibit D [prosecution history of the '500 patent] at p. 22).

In addition, it may be noted that in another patent application resulting in the Pat. 6,212,556, which was a CIP of the present disclosures, Pi-Net had specifically argued for patentability on the grounds that the prior art lacked "means for switching," "means for transmitting," and a "VAN switch." (Pazuniak Decl. Exhibit B at B-11).

In short, at the time that Pi-Net sued JPMorgan, the record showed only that the patents were presumptively valid, and that Pi-Net had relied-upon, and the PTO had accepted, limitations such as "real-time," "VAN switch," "service network" and the other terms cited in JPMorgan's motion as not only meeting §112, but being the reasons that the prior art was distinguished.

Certainly, there is nothing in the prosecution record of the reexaminations of the related applications, or in the prosecution of the patents in suit, that even remotely supports JPMorgan's argument that the Pi-Net "knew" that its patent claims were invalid because the "VAN switch," "service network" and other the other challenged claim limitations were invalid under §112. In fact, the objective documented record demonstrates that the opposite was true.

JPMorgan similarly misleads the Court in arguing the current PTAB proceedings. JPMorgan states that "[i]n reality, the PTAB has already concluded that "there is a reasonable likelihood that" all asserted claims of the '500 and '492 patents are invalid and that the asserted claims of the '158 patent are 'more likely than not' unpatentable." To the contrary, the PTAB examined the challenged claims of the '500 and '492 patents against the alleged prior art cited by the Petitioner, and concluded that the claim limitations distinguished over all of the alleged prior art cited, leaving only one of the alleged prior art cited, namely, Chelliah, to be addressed

between the PTAB and the Patentee in the ongoing patent prosecution/re-examination process, which is still ongoing and awaiting a final decision.[2] Thus, the PTAB's actions did not provide any indication that the claims were defective or intrinsically invalid under §112. All of this points to the Patentee's/inventor's knowledge of the <u>validity</u> of the patent claims, and not to the invalidity of the patent claims under §112.

The remainder of JPMorgan's argument misses the point that – whether the PTAB could or could not have considered §112 issues at least with respect to the '500 and '492 patents – the fact remains that the PTAB had no difficulty in finding the claims sufficiently definite so as to apply the claim limitations to determine that the validity of the claims was confirmed over most of the art cited by the Petitioners, and only one alleged prior art patent remained to be addressed between the PTAB and the Patentee in the re-examination/patent prosecution process, yet awaiting a decision by the PTAB.

Certainly, there was nothing in the PTAB interim findings in the ongoing IPR and CBM process by the PTAB that would warrant that could have given reason for Pi-Net to "know" that its patents were intrinsically so defective that the presumption of validity was of no moment.

### C. <u>This Case Does Not "Stand Out"</u>

JPMorgan argues that the statutory presumption of validity and Pi-Net's statutory right to enforce its presumptively valid patents do not provide any "safe harbor" against a motion for attorney fees, because "Pi-Net's case was so exceptionally meritless that it 'stands out' from typical patent suits." (DI 181 at 8). But, the Supreme Court clearly stated that "exceptionality" is determined against the backdrop of the "governing law," and considering the "objective

---

[2] In fact, the Patentee submitted to the PTAB a Rule 1.131 Declaration by the inventor providing evidence that the inventor invented it before Chelliah.

unreasonableness" of the "legal component of the case."

The governing law and the "legal component" of reasonableness are that the patents claims are presumed valid by statute, and that patentees have the statutory right to enforce those presumptively valid patents. 35 U.S.C. §281; 35 U.S.C. §282(a). The Court found the claims invalid for indefiniteness, and for lack of written description and enablement support, under 35 U.S.C. § 112, which the PTO had been charged with enforcing when it issued the three patents in suit. No new dispositive information had surfaced and no new law had come to existence – and JPMorgan does not cite any such new dispositive information or law – when Pi-Net filed suit that could impact that statutory presumption of validity particularly as against §112 issues that the PTO was charged with enforcing when it issued the patents.

In opposition to the framework provided by *Octane Fitness*, JPMorgan can only make unsubstantiated assertions that somehow Pi-Net "knew" the invalidity and false allegations that Pi-Net sued only for "nuisance value."

To the contrary, the record indicates that it is, on the whole, a fairly typical patent case, which does not stand out from others either in terms of the substantive strength of Pi-Net's case, or in the manner in which Pi-Net has litigated it. Rather, an award of fees in this case would run contrary to the statutory policies of 35 U.S.C. §281 and §282(a).

## II. CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff Pi-Net respectfully requests that JPMorgan's motion for attorney fees be denied.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (DE Bar No. 478)
O'KELLY ERNST & BIELLI, LLC
901 North Market Street, Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
GP@del-iplaw.com

*Attorneys for Plaintiff*
*Pi-Net International, Inc.*