**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PI-NET INTERNATIONAL, INC.,

Plaintiff,

v.

J.P. MORGAN CHASE AND COMPANY,

Defendant.

C.A. No. 1:12-cv-00282-SLR

RECEIVED
SEP -3 2014
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## NOTICE OF MOTION AND MOTION TO VACATE JUDGMENT FOR FRAUD ON THE COURT PURSUANT TO FED. R. CIV. PROC. 60(B) AND 60(D)(3); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DR. LAKSHMI ARUNACHALAM; EXHIBITS

PLEASE TAKE NOTICE that on September 3, 2014 of the above-entitled

Court, Plaintiff  Pi-Net International, Inc./Lakshmi Arunachalam, Ph.d. will move

this Court under Federal Rule of Civil Procedure 60(d)(3)  and 60(B) for an order

vacating the judgment entered against them on or about  May 19, 2014 on the

grounds that,  among other things, said judgment was procured through judge bias

and fraud on the Court.  The Judges had financial holdings in a litigant and Judge

Andrews transferred the case inexplicably less than a week before the Markman

Hearing to Judge Robinson, who had no familiarity with the case and ruled in less

than a month after the Hearing.  Plaintiff's attorney, upon discovery of the fact that

the Judges had financial holdings in a litigant, refused to inform the Court. Further,

1

Plaintiff's attorney entered his own incorrect claim construction positions that were not in accord with the specification, prosecution history or any intrinsic or extrinsic evidence, and were against the instructions of the client. Plaintiff's attorney had received written instruction from the inventor that by doing so, against the instruction of the client, he would be committing malpractice. To make matters worse, Plaintiff's Counsel also filed an appeal in the Federal Circuit while he was intoxicated, against the instruction of the client to file a Request for Re-consideration based on the material new evidence of the Judges' financial holdings in a litigant, as more fully set forth in the declaration of Dr. Lakshmi Arunachalam and Exhibits attached thereto.

This motion is made pursuant to Federal Rule of Civil Procedure 60(d)(3) ("Rule 60") and shall be based upon this Notice, the attached Memorandum of Points and Authorities, the declaration of Dr. Lakshmi Arunachalam, and Exhibits attached thereto, the complete files and records of this action, and such other and further oral and documentary evidence as may be presented at the hearing on this Motion.

Dated September 3, 2014                    */s/Lakshmi Arunachalam*

Dr. Lakshmi Arunachalam
Individual, Inventor and
Owner of Patents-in-Suit

and
CEO,
Pi-Net International, Inc
222 Stanford Avenue
Menlo Park, CA 94025
650 854 3393
Laks22002@yahoo.com

*Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     SUMMARY OF CLAIMS

The Court must vacate all judgments in this case based on an irreparably flawed Markman Hearing and Opinion. The Opinion was prejudiced by the following circumstances:

1.     Judge bias and Fraud upon the Court; and

2.     Plaintiff's attorney malpractice and failure to follow written instructions.

Judges Andrews, Robinson and Stark held substantial interests and conflicts relationships in the litigants, including but not limited to, J.P. Morgan Chase and Company ("JPMorgan"), in violation of the Code of Conduct for U.S. Judges to avoid impropriety and the appearance of impropriety.

## II.     FACTS AND ARGUMENT

Plaintiff filed suit against Defendant J.P. Morgan on or about March 12, 2012 alleging patent infringement of the patents-in-suit. See Plaintiff's complaint on file.

Judgment was entered against Plaintiff on or about  May 19, 2014. Plaintiff contends that said judgment was procured through judge bias and fraud on the court in that the Judges had financial holdings in a litigant.  Judge Andrews transferred the case inexplicably, less than a week before the Markman Hearing,

4

to Judge Robinson. Judge Robinson had no familiarity with the case, yet ruled nonetheless in less than a month after the Hearing.

Plaintiff's attorney, upon discovery of the fact that the Judges had financial holdings in a litigant, *refused* to inform the Court of this newly discovered conflict. Further, Plaintiff's attorney entered his own *incorrect* claim construction positions that were (a) inconsistent with the specification, (b) inconsistent with the prosecution history or any intrinsic or extrinsic evidence, (c) against the explicit written instruction of the client not do so, and (d) in defiance of the explicit written instruction from the inventor that by doing so, he would be committing malpractice. If this were not flagrant enough, Plaintiff's attorney filed for an appeal in the Federal Circuit while he was intoxicated; against the instruction of the client to file a Request for Re-consideration following the discovery of the material new evidence that the Judges held financial interests in a litigant.

See the Declaration of Dr. Lakshmi Arunachalam and Exhibits attached thereto filed and served concurrently and incorporated herein by reference.

## Judge Bias

The Code of Conduct for U.S. Judges is clear. A judge must disqualify himself or herself even if his or her spouse holds *one share of stock* in a litigant. Canon 2 says a judge must avoid impropriety and the appearance of impropriety. It has come to Plaintiff's attention that Judge Andrews has financial holdings in

JPMorgan, the Defendant. For example, he holds stock in Fidelity Blue Chip Value Fund, <u>BVCVX</u>, which holds **$10,236,950,000** shares in JP Morgan-- the 8th largest holding in that fund. This clearly dictates recusal.

Judge Robinson's financial disclosure is uninstructive since she lists no assets at all, which cannot be. The rules require disclosure of all holdings. Plaintiff requires an updated financial disclosure that includes Judge Robinson's extended family holdings as required by 28 U.S.C. § 455.

Chief Judge Leonard P. Stark is similarly conflicted in matters involving J.P.Morgan. For example, he has considerably large financial holdings in J.P. Morgan. (Exhibit A)

On Apr. 10, 2010, Judge Stark stated in his Senate confirmation hearing regarding conflicts of interest and recusal: "I screen cases as they are referred to me for potential conflicts . . . [m]y practice has been to recuse myself if I have a close relationship with any of the parties, identified witnesses, or counsel."

New material evidence has surfaced in this case after the erroneous and prejudiced Markman Ruling. Judge Andrews and Chief Judge Stark had considerable financial holdings in a litigant, and also tainted Judge Robinson. This conflict of interest required disclosure and recusal, yet those with the knowledge of this conflict were utterly silent. The Judges and Plaintiff's Counsel had unclean hands since the public record shows the Judges' financial holdings in J. P. Morgan.

Plaintiff's Counsel had knowledge of the New Evidence, and failed to disclose it to the Court, and flagrantly ignored t client instruction.

Judge Andrews and Judge Stark did not disclose to Plaintiff that they had financial holdings in a litigant. This violation of their duty to disclose was a mistake. Plaintiff's Counsel refused to bring this to the attention of the Court, despite client instructions to do so. This was willful concealment of a key fact that was material to the outcome of the case and damaged the Plaintiff financially.

That Judge Andrews and Judge Stark had financial holdings in a litigant and did not disclose this to Plaintiff and transferred the case to Judge Robinson after Judge Andrews had been on the case for over 2 years inexplicably less than one week prior to the Markman Hearing and Judge Robinson ruled in less than a month with no familiarity of the case, readily obvious by her own incorrect claim constructions showing a bias to the Defendant, the motivation for this emerged after the Ruling, when it came to Plaintiff's attention that the Judges had financial holdings in a litigant, this was newly discovered evidence. Counsel refused to bring this to the attention of the Court, despite client instructions to do so.

Fraud is a deception deliberately practiced in order to secure unfair or unlawful gain (adjectival form fraudulent; to defraud is the verb). Fraud is both a civil wrong (i.e., a fraud victim may sue the fraud perpetrator to avoid the fraud and/or recover monetary compensation) and a criminal wrong (i.e., a fraud

perpetrator may be prosecuted and imprisoned by governmental authorities).
Defrauding people or organizations of money or valuables is the usual purpose of
fraud, but it sometimes instead involves obtaining benefits without actually
depriving anyone of money or valuables, such as obtaining a drivers license by
way of false statements made in an application for the same.[2]

The requisite elements of fraud are the intentional misrepresentation or
concealment of an important fact upon which the victim is meant to rely, and in
fact does rely, to the harm of the victim. The elements include proving the states of
mind of the perpetrator and the victim, and that some jurisdictions require the
victim to prove fraud with so-called clear and convincing evidence.

The remedies for fraud may include rescission (i.e., reversal) of a
fraudulently obtained agreement or transaction, the recovery of a monetary award
to compensate for the harm caused, punitive damages to punish or deter the
misconduct, and possibly others.[5]

In cases of a fraudulently induced contract, fraud may serve as a defense in
a civil action for breach of contract or specific performance of contract.

Fraud may serve as a basis for a court to invoke its equitable jurisdiction.

Another distinction is the unavailability of a jury in equity: the judge is
the trier of fact. In the American legal system, the right of jury trial in civil cases
tried in federal court is guaranteed by the Seventh Amendment *in Suits at common*

*law*, cases that traditionally would have been handled by the law courts. The question of whether a case should be determined by a jury depends largely on the type of relief the plaintiff requests. If a plaintiff requests damages in the form of money or certain other forms of relief, such as the return of a specific item of property, the remedy is considered legal, and a jury is available as the fact-finder. On the other hand, if the plaintiff requests an injunction, declaratory judgment, specific performance, modification of contract, or some other non-monetary relief, the claim would usually be one in equity.

Thus, Plaintiff has required proof by clear and convincing evidence where particularly important individual interests or rights are at stake. See, *e.g., Santosky* v. *Kramer,* 455 U. S. 745 (1982) (proceeding to terminate parental rights); *Addington* v. *Texas, supra* (involuntary commitment proceeding); *Woodby* v. *INS,* 385 U. S. 276, 285-286 (1966) (deportation).[29]

By contrast, imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by a 390*390 preponderance of the evidence. See, *e. g., United States* v. *Regan,* 232 U. S. 37, 48-49 (1914) (proof by a preponderance of the evidence suffices in civil suits involving proof of acts that expose a party to a criminal prosecution).

A preponderance-of-the-evidence standard allows both parties to "share the risk of error in roughly equal fashion." *Addington* v. *Texas, supra,* at 423. Any

9

other standard expresses a preference for one side's interests. The balance of interests in this case warrants use of the preponderance standard. The interests of defendants in a securities case do not differ qualitatively from the interests of defendants sued for violations of other federal statutes such as the antitrust or civil rights laws, for which proof by a preponderance of the evidence suffices. On the other hand, the interests of plaintiffs in such suits are significant. Defrauded investors are among the very individuals Congress sought to protect in the securities laws. If they prove that it is more likely than not that they were defrauded, they should recover.

Plaintiff therefore declines to depart from the preponderance-of-the-evidence standard generally applicable in civil actions. Accordingly, the Court's decision on an erroneous Markman Ruling and Summary Judgment of non-infringement and invalidity of the patents-in-suit should be reversed.

### Propriety Demands an Impartial Tribunal

The extraordinary facts in this matter dictate that this motion be filed in an unbiased court other than the originating District Court of the State of Delaware. One of the alleged offending judges is Judge Richard G. Andrews, the presiding judge in the matter, who transferred the case to Judge Robinson at the last minute. Another Judge is Chief Judge Leonard P. Stark, who approved the transfer of the case from Judge Andrews to Judge Robinson. Therefore, a 60(B) and 60(D)(3)

motion filed in this court, alleging the misconduct by the Judges, is *a prima facie* conflict of interest and would consume the parties resources needlessly. Therefore, in the interest of judicial economy this case must be transferred to a verifiably impartial tribunal.

## Corruption

Corruption is the abuse of power by a public official for private gain or any organized, interdependent system in which part of the system is either not performing duties it was originally intended to, or performing them in an improper way, to the detriment of the system's original purpose. The abuse of public offices for private gain is paradigmatic of corruption.

A common belief is that corruption is a judge taking bribes. The definition exceeds this theory. Corruption describes any organized, interdependent system in which part of the system is either not performing duties it was originally intended to, or performing them in an improper way, to the detriment of the system's original purpose. Corrupt judicial systems not only violate the basic right to equality before the law but deny procedural rights guaranteed by the United States Constitution.

*See* DOJ U.S. Parole Commission Public Announcement, See Sunshine Act (Pub. L. 94-409) [5 U.S.C. Section 552b]. Constructive fraud is a contract or act, which not originating in evil design and contrivance to perpetuate a positive fraud

or injury upon other persons, yet by its necessary tendency to deceive or mislead

them, or to violate a public or private confidence, or to impair or injure public

interest, is deemed equally reprehensible with positive fraud, and is therefore

prohibited by law…" Bovier's Law Dictionary- 1856 Edition. See Standard of

Review in *Bulloch v. United States*, 763 F. 2d1115, 1121 (10th Cir. 1985), the court

stated:

Fraud upon the court is fraud which is directed to the judicial machinery

itself and is not fraud between the parties or fraudulent documents, false statements

or perjury…It is where the court or a member is corrupted or influenced or

influence or influence is attempted where the judge has not performed his judicial

function… thus where the impartial functions of the court have been directly

corrupted." In sum, the Ninth Amendment simply lends strong support to the view

that the 'liberty' protected by the Fifth and 14th Amendments from infringement by

the Federal Government or the States is not restricted to rights specifically

mentioned in the first eight amendments." Similarly, in *Palko v. Connecticut*, 302

U.S. 319, 325, 326 (1937), it was said "that this category of fundamental rights

includes those fundamental liberties that are "implicit in the concept of ordered

liberty," such that "neither liberty nor justice would exist if they were sacrificed."

Judges cannot be put above the law. Our own former U.S. Attorney General John

Ashcroft condemned the judicial branch of government by characterizing this

branch as "organized crime." They intentionally go forth to destroy lives. This does not ensure integrity and restore public confidence. The American public, victimized and held hostage, have nowhere to turn.

Judge Andrews failed to act responsibly. Chief Judge Edith Jones at the Fifth Circuit Court of Appeals stated with regard to judicial corruption: "We must all in our own countries, lead the fight to ensure integrity within our police and judicial systems."

Judge Andrews' conduct is shocking to the universal sense of justice. A substantive Due Process violation has occurred when judicial misconduct violates "fundamental fairness" and is "shocking to the universal sense of justice." *Kinsella v. United States ex rel. Singleton* 361 U.S. 234, 246, 4L, Ed. 2d268, 80 S. Ct. 297 (1960). See *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952), where the Supreme Court applied the Due Process clause to the "whole course of the proceeding in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offences." Id. at 169. See also *U.S v. Russell*, 411 U.S. 423, 36 L. Ed 2d 366, 93 S. Ct. 1637 (1973). The aforementioned prosecutorial misconduct and official crime certainly offends the "canons of decency and fairness" spoken of by the Second Circuit. "…Sovereignty itself remains with the people, by whom and for whom all government exists and

13

acts." Justice Mathews of the U.S. Supreme Court in the case of Yick Wo v.

Hopkins, 118 US 356, 370*.

Counsel George Pazuniak, by suppressing the problem of judicial

misconduct, damaged the Plaintiff and caused financially measurable damage to

the Plaintiff. There is nothing in the Constitution that puts the misconduct of a

judge as something less than the misconduct of any other citizen. Judges cannot be

placed above ordinary men in the application of American justice. "Breaking the

law must be perceived as unethical and subject to discipline and charges, and never

an act of judicial discretion." See The Report: Judicial Independence,

Interdependence and Judicial Accountability: Management of the Courts From the

Judges. Perspective; Institute for Court Management: Court Executive

Development Program Phase III Project, May 2006, says on p. 11: When a judge

makes a void order and uses fraud to procure it, it becomes both an ethical and

legal question for charges of misconduct, and if found guilty, a judge's ruling

should immediately effect the original case by a ruling from the Judicial Council...

A void judgment which includes judgment entered by a court which lacks

jurisdiction over the parties or the subject matter, or lacks inherent power to enter

the particular judgment, or an order procured by fraud, can be attacked at any time

in any court, either directly or collaterally, provided that the party is properly

before the court." Long v. Shorebank Development Corp., 182 F. 3d 548 (C.A. 7

Ill. 1999). Irresponsible and improper conduct by Judges erodes public confidence
in the judiciary.

Chief Judge Edith Jones of the Fifth Circuit Court of Appeals stated on
March 7, 2003 at a Harvard Law School seminar that "the American legal system
is corrupt beyond recognition." Jones said that the question of what is morally right
is routinely sacrificed to what is politically expedient." "The integrity of law, its
religious roots, its transcendental quality are disappearing. She cited Blackstone:
"The law of nature, dictated by God himself, is binding, in all counties and at all
times; no human laws are of any validity if contrary to this; and such of them are
valid derive all force and all their authority from this original... the rule of law-that
it was dependent on transcendent religious obligation...unalienable rights were
given by God to all our fellow citizens. ..The answer  is a recovery of moral
principle, the sine qua non of an orderly society... The legal system has also been
wounded by lawyers who themselves no longer respect the rule of law." The Judge
quoted Kenneth Starr as saying: "It is decidedly unchristian to win at any cost." "
... strategic use of anger and incivility will achieve their aims. Others seem
uninhibited about making misstatements to the court or their opponents or
destroying or falsifying evidence," she claimed. "When lawyers cannot be trusted
to observe the fair processes essential to maintaining the rule of law, how can we
expect the public to respect the process?"

The Judge quoted George Washington: "Where is the security for property, for reputation, for life, if the sense of religious obligation desert the oaths, in courts of justice?" "...how can a system founded on law survive if the administrators of the law daily display their contempt for it?" "Agencies have an inherent tendency to expand their mandate," says Jones. "At the same time, their decision-making often becomes parochial and short-sighted....none of them addresses the "ought", the moral foundation or direction of law."

The Ninth Circuit in *Bagley v. Lumpkin*, 719 F. 2d 1462 (1983) at 1464 stated "[s]tanding alone, the government's failure to produce requested *Brady* information is a serious due process violation . . . [b]ut a failure to disclose requested Brady information that the defendant could use to conduct an effective cross-examination is even more egregious because it threatens the defendant's right to confront adverse witnesses, and therefore, his right to a fair trial."

The U.S. Supreme Court stated in **U.S. v. Bagley** at 682 "a new trial must be granted when evidence is not introduced because of the incompetence of counsel only if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

**A. THE COURT HAS THE POWER TO VACATE THE JUDGMENT THAT WAS ENTERED AGAINST THE PLAINTIFF FOR FRAUD ON THE COURT**

*Federal Rule of Civil Procedure 60(d)(3)* states in pertinent part that nothing in Rule 60 limits a court's power to set aside a judgment for fraud on the court.

Plaintiff contends that attorney for Plaintiff, George Pazuniak ("Counsel"), Judge Richard G. Andrews, Judge Sue L. Robinson and Chief Judge Leonard P. Stark were biased and committed fraud on the court by the following actions in deliberate and willful omissions that harmed the integrity of the judicial process.

At least Judge Richard G. Andrews and Chief Judge Leonard P. Stark had financial holdings in a litigant.

Judge Andrews, after presiding over the case for over 2 years, inexplicably transferred the case, less than a week before the Markman Hearing, to Judge Sue L. Robinson, who had no familiarity with the case, and yet ruled in less than a month after the Hearing nonetheless. The judge bias is evident to a reasonable person.

Upon discovery of the financial holdings of the Judges in a litigant, Counsel refused to inform the Court of this fact, against the instruction of the client to do so.

Counsel entered his own *incorrect* claim construction positions that were (a) inconsistent with the specification, (b) inconsistent with the prosecution history or any intrinsic or extrinsic evidence, (c) against the explicit written instruction of the client not do so, and (d) in defiance of the explicit written instruction from the inventor that by doing so, he would be committing

malpractice. If this were not flagrant enough, Plaintiff's attorney filed for an appeal in the Federal Circuit while he was intoxicated; against the instruction of the client to file a Request for Re-consideration following the discovery of the material new evidence that the Judges held financial interests in a litigant. The afore-mentioned conduct by:

1. Plaintiff's Counsel, George Pazuniak,

2. Judge Richard G. Andrews,

3. Judge Susan L. Robinson,

4. Chief Judge Leonard P. Stark, and

5. Other Officers of this Court,

is directed to the judicial machinery itself. Counsel's conduct is in reckless disregard of the truth, intentionally false and willfully blind to the truth. The conduct of the Judges is also willfully blind to the truth with a reckless disregard for the truth. Counsel's and the Judges' conduct is a concealment when they each have an affirmative duty to disclose. This conduct deceives the court. *See* Johnson v. Bell, 605 F.3d 333, 339 (6th Cir. 2010); (quoting Carter v. Anderson, 585 F.3d 1007, 1011-12 (6th Cir. 2009)).

The afore-mentioned conduct subverts or attempts to subvert the integrity of the Court itself and is a fraud perpetrated by officers of the Court so that the judicial machinery cannot perform in the usual manner its impartial task of

adjudging cases that are presented for adjudication.  Such egregious conduct and flagrant abuse of the Delaware Rules of Professional Conduct and Federal Rules of Civil Procedure by Counsel and the Judges involves a corruption and distortion of the judicial process itself. Counsel and the Judges failed to disclose exculpatory evidence in violation of their duty to disclose.

The district court abused its discretion and the Judgment must be reversed.

Counsel and the Judges engaged in constructive fraud and the Court must set aside the judgment as collusive. *See* Spence-Parker v. Md. Ins. Grp., 937 F. Supp. 551, 563 (E.D. Va. 1996).

The non-disclosure by Counsel and the Judges resulted in the Court passing a judgment without reviewing new material evidence that emerged, the non-disclosure of which "impugned" the "integrity of the Court and the judicial process.

## B.   FUNDAMENTAL CONSTITUTIONAL RIGHTS

This case seeks to protect bedrock American rights of due process and property afforded under the Fifth and Fourteenth Amendments of the Constitution of the United States. Plaintiff has an affirmative constitutional right to impartiality of the judicial process.

## C.   GOVERNMENT CONDUCT SHOCKS THE CONSCIENCE

The conduct of Plaintiff's attorney, George Pazuniak and the judges ("Offending Parties") in this matter shocks the conscience.

## D.   JUDGES HELD FINANCIAL HOLDINGS IN A LITIGANT

Judge Richard G. Andrews' and Chief Administrative Judge Leonard P. Stark's financial holdings in a litigant, J.P. Morgan Chase and Company is in Exhibit A.

## E.   OBSCENELY INCORRECT MARKMAN OPINION

Judge Andrews remarkably transferred the case less than a week before the Markman Hearing to Judge Sue L. Robinson, after being on the case for over two years. This conduct is shocking.

Then Judge Robinson ruled on the Markman Hearing within a month after the Markman Hearing. She had many claim constructions totally incorrect. They were not in accordance with the specification, prosecution history or other intrinsic and extrinsic evidence. Based on her grossly incorrect claim constructions, she then issued a Summary Judgment invalidating the patents-in-suit. She did not give the Parties the opportunity to provide her with additional Briefs to help her understand the claim construction positions of either Party.

Judge Andrews transferred this case over to Judge Robinson under the oversight of Chief Administrative Judge Stark. Therefore, Judge Stark's conduct has prejudiced these proceedings.

Plaintiff's Attorney George Pazuniak ("Counsel") presented claim construction positions, that were his own and expressly against the client's instructions and requests. Counsel did not provide competent representation to Plaintiff, as Dr. Arunachalam delineated in PLAINTIFF RESPONSE TO UNOPPOSED MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFF previously filed at the court on August 25, 2014, in the docket as Paper 93.

## F.    FRAUD ON THE COURT.

Fraud on the court has occurred in a severe way, prejudicing Plaintiff. This was constructive fraud by both the Judges and Counsel. This damaged the Plaintiff financially and Judge Robinson ruled that the Patents were invalid and passed a Summary Judgment that the patents were not infringed.

Constructive fraud occurred because:

1.     The Judges and Counsel failed in their affirmative duties to disclose conflicts pursuant to their codes of conduct.

2.     The Judges and Counsel engaged in violation of their duties by remaining silent when they had an affirmative duty to speak. Counsel engaged in deceptive material misrepresentations of past or present facts.

3.     Reliance thereon by Plaintiff;

4.     Injury to Plaintiff as a proximate result thereof; and

5.     The gaining of an advantage by Counsel and Judges at the expense of the Plaintiff.

## G.     PLAINTIFF'S COUNSEL'S ROGUE BEHAVIOR AND FRAUD ON THE COURT

1.     Plaintiff had hired new Appellate Counsel for the Appeal in the Federal Circuit against JP Morgan Chase case on August 13, 2014 and they made entry of appearance in that Court on August 15, 2014. Counsel instigated new Appellate Counsel to leave and interfered with contract and sent them an email intended to scare new Appellate Counsel away, when new Appellate Counsel filed in the Federal Circuit that Counsel had been fired for cause, and not as Counsel stated to that Court and to this Court,  giving both Courts a false reason of "irreconcilable differences," when the truth of the matter is Counsel had committed serious malpractice and engaged in willful misconduct, suppressing material evidence. New Appellate Counsel had agreed to take all the Delaware cases, in addition to the Appeal work in the Federal Circuit. But Counsel chased new Appellate Counsel away from taking the Delaware cases, as well as from the Appeal work. New Appellate Counsel were in the process of looking for local Counsel in Delaware, when Counsel sent them an email with the intention of scaring them away, a copy of which was attached as Exhibit B in Paper 93 filed by

Plaintiff to this Court on August 25, 2014 (Exhibit C). He engaged in willful
misconduct in order to suppress material evidence.

2.     Counsel has been obstructing new counsel from coming on board, not
only now, but also several times in the past when he quit in the middle of litigation
previously, providing false reasons to the court, when , in fact, he had committed
malpractice, instances of which abound:  for example, Counsel is not patent bar
registered and by himself writing and having another lawyer who was USPTO-bar
registered, file in the USPTO,  against Plaintiff's instruction not to do so, that the
"means for switching" is a "Web page..." and he had canceled over 200 valuable
claims Plaintiff had filed in the USPTO in re-exams against Microsoft.  He
instigated any counsel calling him not to take over the cases for Plaintiff in
Delaware.  And sure enough, he made sure that new Appellate Counsel did not
take over the above-captioned cases in Delaware, even though they had agreed to
take them over.

3.     When Counsel informed Plaintiff for the first time on August 28, 2014
(even though he received the Order on August 20, 2014) that the Judge's Order
entailed default judgment that would dismiss the above-captioned cases on the
same day as Counsel is allowed to withdraw by the Judge, if Plaintiff did not bring
new Counsel on September 3, immediately on August 28, 2014, the inventor of the
Patents-in-suit, Dr. Lakshmi Arunachalam filed a Motion for Substitution of

Parties and informed the Court she would go *pro se* in Court in the above-captioned cases, and by assigning the patents-in-suit to herself from her company Pi-Net International, Inc., thereby allowing her to go *pro se* and indeed presenting new counsel to this Court, namely, herself, as *pro se.*

4.     The Judge placed this Motion for Substitution of Parties in the Docket on August 28, 2014 and ordered that the Defendants in the above-captioned cases file their Answering Briefs no later than September 15, 2014.

5.     Counsel for Plaintiff refused to inform the Court upon discovery that the Judges had considerable financial holdings in a litigant. He engaged in the judicial misconduct, broadly citing a mutual fund exemption as *carte blanche* and stating that Judges holding financial interests in a litigant happens all the time. He did not inform the court upon discovery of the Judges' financial holdings, for his own personal financial gains to litigate for other clients before the same Judges, instead of doing what is in the best interests of the client.

6.     *See* 28 U.S.C. §455(a); Code of Conduct for United States Judges; *Liljeberg v. Health Services Acquisition Corp.*, 486 US 847, 860 (Supreme Court 1988); *Liteky v. United States*, 510 US 540 (Supreme Court 1994); *Preston v. U.S.*; U.S. Court Judicial Conference guidelines.

## IV.     RELIEF SOUGHT BY PLAINTIFF

24

1.     Plaintiff requests that this Court vacate the prejudiced Markman

Ruling and Summary Judgment, and to allow the case to have the Plaintiff submit

the inventor's position on claim construction that is in accord with the specification

and intrinsic and extrinsic evidence, and to conduct a new Markman Hearing and

to proceed to the Jury Trial, which was only a few weeks away, when Judge

Robinson stopped the case from proceeding further.

2.     Plaintiff reserves the right to conduct additional discovery on the

holdings of the members of the Court pursuant to 28 U.S.C. §455; Code of

Conduct for United States Judges;  *Liljeberg v. Health Services Acquisition Corp.*,

486 US 847, 860 (Supreme Court 1988); *Liteky v. United States*, 510 US 540

(Supreme Court 1994); and *Preston v. U.S.*; U.S. Court Judicial Conference

guidelines.

3.     Plaintiff respectfully requests that the Court withdraw Counsel George

Pazuniak's claim construction filing *ab initio*, and permit Plaintiff to re-file.


A Certificate of Service is attached here below.

Respectfully submitted,

DATED:     September 3, 2014          */s/ Lakshmi Arunachalam*

Dr. Lakshmi Arunachalam
Individual and inventor,

and

Dr. Lakshmi Arunachalam
CEO and Inventor
Pi-Net International, Inc
222 Stanford Avenue
Menlo Park, CA 94025
650 854 3393
Laks22002@yahoo.com

*Plaintiff*
*Dr. Lakshmi Arunachalam, and*
*Pi-Net International, Inc*

## EXHIBIT A:

## JUDGES' FINANCIAL HOLDINGS IN LITIGANT

| LEONARD P. STARK, Chief Judge, U.S. District Court of Delaware | | |
|---|---|---|
| **Financial Disclosure, 2012** | | |
| Source: *Judicial Watch*, Leonard P. Stark | Source: *SEC Edgar* | |
| *Ticker* | *Holding* | *JPMorgan Conflicts* |
| VINIX | Wachovia Vanguard Institutional Fund | **$2,161,083,000** shares in JPMorgan, the 9th largest holding in this fund |
| VMRGX | Vanguard Morgan Growth Fund | **$31,628,000** shares in JPMorgan |
| FUSEX | Fidelity Investments Spartan 50 Index Investor Class | **$896,713,000** shares in JPMorgan |
| FDRXX | Fidelity Investments Fidelity Cash Reserves | **$1,960,000,000** commercial paper in JPMorgan |
| FASMX | Fidelity Investment Fidelity Asset Manager 50% | **$1,090,000,000 shares in JPMorgan,** the 9th largest holding in this fund; represents 0.1% of a fund with assets totaling $1,090,672,117,000<br><br>In addition, one of the executive officers of this fund is **Stephanie J. Dorsey**. Quoting from the 2013 Annual Report, "Prior to joining Fidelity Investments, Ms. Dorsey served as Treasurer (2004-2008) of the **JPMorgan Mutual Funds** and Vice President (2004-2008) of **JPMorgan Chase Bank**. In addition, JPMorgan Chase Bank, New York, NY is a "Custodian" of this fund. |
| FASBX | Fidelity Investment Fidelity Asset Manager 70% | **$1,090,000,000 shares in JPMorgan,** the 9th largest holding in this fund; represents 0.1% of a fund with assets totaling $1,090,672,117,000<br><br>In addition, one of the executive officers of this fund is **Stephanie J. Dorsey**. Quoting from the 2013 Annual Report, "Prior to joining Fidelity Investments, Ms. Dorsey served as Treasurer (2004-2008) of the **JPMorgan Mutual Funds** and Vice President (2004-2008) of **JPMorgan Chase Bank**. In addition, JPMorgan Chase Bank, New York, NY is a "Custodian" of this fund. |

**JUDGE RICHARD G. ANDREWS, Judge, U.S. District Court of Delaware**
**Financial Disclosure, 2012**
Source: *Judicial Watch*, Richard G. Andrews - 2012  Source: *SEC Edgar*

| | | |
|---|---|---|
| BVCVX | Fidelity Blue Chip Value Fund | **$6,961,569,000** shares in JP Morgan-- the 8th largest holding in this fund.<br><br>In addition, one of the executive officers of this fund is **Stephanie J. Dorsey**. Quoting from the 2013 Annual Report, "Prior to joining Fidelity Investments, Ms. Dorsey served as Treasurer (2004-2008) of the **JPMorgan Mutual Funds** and Vice President (2004-2008) of **JPMorgan Chase Bank**. |
| Overview | Fidelity Delaware Portfolio 2012 (Index) (529 Plan) | This is a "build your own investment mix plan." The rules require disclosure of the funds selected by judicial employees. |
| FFFDX | Fidelity Freedom 2020 | One of the executive officers of this fund is **Stephanie J. Dorsey**. Quoting from the 2013 Annual Report, "Prior to joining Fidelity Investments, Ms. Dorsey served as Treasurer (2004-2008) of the **JPMorgan Mutual Funds** and Vice President (2004-2008) of **JPMorgan Chase Bank**. |
| PRRXX | T. Rowe Price Prime Reserve #1 | **450,000** shares in JP Morgan Chase Putters / Dri Ctfs -- the 10th largest holding in this fund. |
| PRRXX | T. Rowe Price Prime Reserve #2 | **450,000** shares in JP Morgan Chase Putters / Dri Ctfs -- the 10th largest holding in the fund. |
| VCVLX | Vanguard Capital Value Fund | **$19,446,000** shares in JP Morgan-- the 10th largest holding in this fund. |
| VWEHX | Vanguard High-Yield Corporate Inv | **$1,116,988,000** JPMorgan corporate bonds |
| VBILX | Vanguard Interim-Term Bond Index Adm | **$23,256,000** JPMorgan corporate bond |
| VWESX | Vanguard Long-Term Investment-Grade Inv | **$1,116,988,000** JPMorgan corporate bonds |
| VTSMX | Vanguard Total Stock Mkt Idx Inv | **$3,286,885,000** shares in JP Morgan-- the 10th largest holding in this fund |
| VTCLX | Vanguard Tax-Managed Capital Appreciation Fund | **$116,288,000** shares in JP Morgan – the 9[th] largest holding in this fund |
| Vanguard | Vanguard Tax-Managed Capital Appreciation F Ad (UGMA #1) | Ownership change; holdings uncertain |
| VWUSX | Vanguard US Growth Inv | **$37,152,000** shares in JP Morgan |

| | | |
|---|---|---|
| VWENX | Vanguard Wellington Admiral | **$1,347,496,000** shares in JP Morgan -- the 3rd largest holding in this fund |
| VWNFX | Vanguard Windsor II Inv | **$1,348,935,000** shares in JP Morgan – the 2nd largest holding in this fund |
| TWEIX | American Century Equity Income | **$151,846,704** shares in JPMorgan |
| BIGRX | American Century Income & Growth Inv | **$28,811,409** shares in JP Morgan – the 10th largest holding in this fund |
| SCMTX | DWS Intermediate Tax/AMT Free S | **$800,000** JPMorgan letter of credit |
| MUTHX | Franklin Templeton Class Z | **$207,658,971** shares in JP Morgan |
| HSVFX | Hennessy Select Large Value Original Fund | **$5,880,000** JPMorgan shares represent the 2nd largest holding in this fund representing 4% of the total assets of $147,000,000 |

---

**JUDGE SUE L. ROBINSON, Judge, U.S. District Court of Delaware**
**Financial Disclosure, 2012**
Source: *Judicial Watch*, Sue L. Robinson
http://www.judicialwatch.org/document-archive/sue-l-robinson-2012/

Judge Robinson lists a checking account, a rental property and Marathon stock as the only holdings. This disclosure appears incomplete, with no updated financial disclosure that includes Judge Robinson's extended family holdings as required by 28 U.S.C. § 455. Given her willingness to issue a Markman decision after only one week on this case raises questions of propriety.

Remarkably, just a week before the Markman Hearing, Judge Andrews reassigned the case to Judge Robinson inexplicably. Judge Robinson had no familiarity with the case, yet ruled on the claim construction nonetheless. This premature action prejudiced the proceedings. The current Markman ruling was untimely, and enough time should have been provided for additional briefings and argument in order for the Judge to become familiar with the claims. A week was not enough time.

---

Plaintiff reserves the right to conduct additional discovery to determine all

financial and other relationships with third parties who may be related to litigants

in this matter.

## EXHIBIT B:

Paper 93 in case docket in Case 12:cv-00355-RGA, incorporated by reference herewith.

# EXHIBIT C:

## COUNSEL'S OBSTRUCTIVE AND DEFAMATORY EMAIL

## TO PI-NET'S NEW APELLATE COUNSEL

**From:** George Pazuniak [mailto:gp@del-iplaw.com]
**Sent:** Friday, August 22, 2014 1:51 PM
**To:** john@jwcarpenterlaw.com
**Subject:** FW: 14-1495-SJ Pi-Net International, Inc. v. JPMorgan Chase & Co. "Clerk's Notice of Deficient Document"

John,

As a professional, I would think twice about re-filing Lakshmi's libel.

George

**From:**FilingNotice@cafc.uscourts.gov [mailto:FilingNotice@cafc.uscourts.gov]
**Sent:** Friday, August 22, 2014 1:28 PM
**To:** George Pazuniak
**Subject:** 14-1495-SJ Pi-Net International, Inc. v. JPMorgan Chase & Co. "Clerk's Notice of Deficient Document"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

### United States Court of Appeals for the Federal Circuit

**Notice of Docket Activity**

The following transaction was entered on 08/22/2014 at 1:28:51 PM EDT and filed on 08/22/2014

**Case Name:**    Pi-Net International, Inc. v. JPMorgan Chase & Co.

**Case Number:** 14-1495

**Docket Text:**
NOTICE OF DEFICIENCY: The response Docket No. [28] filed by Appellant Pi-Net International, Inc. in 14-1495 is submitted using the incorrect event and therefore cannot be accepted for filing at this time. You are being afforded the opportunity to correct the deficiency. At the discretion of the court, the corrected document may be accepted for filing if received before midnight (EST) on the date of this notice. [177143]

**Notice will be electronically mailed to:**

Ms. Victoria Elisabeth Brieant, Attorney: victoria@brieantlaw.com, vbrieant@aol.com
Daniel Alexander DeVito: daniel.devito@skadden.com,Nicholas.Mireles@skadden.com
Andrew D. Gish, -: andrew.gish@skadden.com
Jessica Raatz Kunz, -: jessica.kunz@skadden.com
Mr. Douglas R. Nemec, Principal Litigation Counsel: douglas.nemec@skadden.com,
dlmlcwas@skadden.com,andrew.gish@skadden.com
Mr. George Pazuniak, Attorney: gp@del-iplaw.com
Robert Scott Saunders: rob.saunders@skadden.com
Edward L. Tulin, -: edward.tulin@skadden.com

## EXHIBIT D:

Numerous emails between Dr. Lakshmi Arunachalam and George Pazuniak,
which will be shown to the Judge in camera in order to maintain privileges and
confidentiality pursuant to the Federal Rules of Evidence. This evidence includes
emails of July 9, 2013, October 22, 2013, November 11, 2013, and many more.

Hospital Records from Kaiser Permanente to evidence the effect on
the inventor from Counsel's harassment and flagrantly work counter to client
instructions will be produced. All this will be produced in camera at the
appropriate time pursuant to the Federal Rules of Evidence.

# DECLARATION OF INVENTOR DR. LAKSHMI ARUNACHALAM

I, Dr. Lakshmi Arunachalam, inventor of the patents-in-suit and CEO of Pi-Net International, Inc., hereby declare that what I filed in this Court as Paper 93 in Case 12:cv-00355 on August 25, 2014 is true.   I incorporate by reference herewith this Paper 93 from Case 12:cv-00355. I have proof and evidence in the form of emails, witnesses and other forms of testimony to evidence each and every one of my statements I made in the afore-mentioned Paper 93.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true.


Date: September 3, 2014                              */s/Lakshmi Arunachalam*
                                               Dr. Lakshmi Arunachalam
                                               222 Stanford Avenue
                                               Menlo Park, California 94025

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE
### CERTIFICATE OF SERVICE

I, Dr. Lakshmi Arunachalam, hereby certify that on September 3, 2014, the attached "Notice of Motion and Motion to Vacate Judgment for Fraud on the Court Pursuant to Fed. R. Civ. Proc. 60(B) and 60(D)(3); Memorandum of Points and Authorities; Declaration of Dr. Lakshmi Arunachalam; Exhibits," was delivered ***by hand*** to Judge Robinson  and Clerk of the Court for filing.

I further certify that on September 3, 2014, the attached "Notice of Motion and Motion to Vacate Judgment for Fraud on the Court Pursuant to Fed. R. Civ. Proc. 60(B) and 60(D)(3); Memorandum of Points and Authorities; Declaration of Dr. Lakshmi Arunachalam; Exhibits," was delivered ***by hand*** to Counsel  for Defendant J.P. Morgan Chase.


DATED:      September 3, 2014          */s/Lakshmi Arunachalam*

Dr. Lakshmi Arunachalam
222 Stanford Avenue
Menlo Park, CA 94025
650 854 3393
Laks22002@yahoo.com