## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PI-NET INTERNATIONAL INC.,

                        Plaintiff,

        v.

JPMORGAN CHASE & CO.,

                    Defendant.

Civ. No. 1:12-cv-00282-SLR

## DEFENDANT'S BRIEF IN OPPOSITION TO MOTION TO VACATE JUDGMENT FOR FRAUD ON THE COURT PURSUANT TO FED. R. CIV. P. 60(b) AND 60(d)(3)

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
andrew.gish@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ...........................................................................1

I.  SUMMARY OF ARGUMENT .........................................................................................1

II.  STATEMENT OF FACTS ................................................................................................3

 A.  Pi-Net's Infringement Claims.................................................................................3

 B.  The *Markman* Proceedings And Summary Judgment Rulings...............................4

III.  MOVANT'S MOTION IS PROCEDURALLY IMPROPER. ...........................................5

IV.  MOVANT HAS FAILED TO SHOW JUDICIAL BIAS OR FRAUD UPON THE COURT, AS REQUIRED UNDER RULE 60(**d**)(3). ........................................................6

 A.  Legal Standard Under Rule 60(d)(3) ......................................................................6

 B.  There Is No Evidence Of Intentional Fraud By Any Judicial Officer, Let Alone Clear And Convincing Evidence Of Fraud Upon The Court. .......................7

 1.  No Evidence of Bias or Improper Conduct by Judge Robinson .................7

 2.  No Evidence of Bias or Improper Conduct by Judge Andrews or Judge Stark......................................................................................................9

V.  MOVANT HAS NO BASIS FOR RELIEF UNDER RULE 60(b)..................................11

 A.  The Basis For Movant's Requested Relief Is Unclear. .........................................11

 B.  Legal Standards Applicable To Rule 60(b) Motions ............................................12

 C.  Movant's Allegations Of Judicial Misconduct Fail To Satisfy Either Rule 60(b)(1) Or Rule 60(b)(6). ....................................................................................13

 D.  Movant's Allegations Of Malpractice By Movant's Litigation Counsel Fail To Satisfy Either Rule 60(b)(1) Or Rule 60(b)(6). ...............................................14

VI.  MOVANT HAS PROVIDED NO BASIS FOR TRANSFERRING THIS CASE ...........18

VII.  JPMC SHOULD BE AWARDED ITS FEES AND COSTS INCURRED IN RESPONDING TO THIS FRIVOLOUS MOTION............................................................19

VIII.  CONCLUSION................................................................................................................20

## TABLE OF AUTHORITIES

## CASES

*Alexander v. Medtronic, Inc.*,
   No. 2:12-cv-04104-NKL, 2012 WL 3724052 (W.D. Mo. Aug. 27, 2012).......................19

*Automated Transactions LLC v. IYG Holding Co.*,
   768 F. Supp. 2d 727 (D. Del. 2011)...........................................................................8

*Box v. Petsock*,
   Civil Action No. 3:86-CV-1704, 2014 WL 4093248 (M.D. Pa. Aug. 18, 2014) ..............7

*Carefirst of Maryland, Inc. v. Care First Transportation, Inc.*,
   No. Civ.A. 02-229(MPT), 2002 WL 31500927 (D. Del. 2002) .........................................6

*Coltec Industries, Inc. v. Hobgood*,
   280 F.3d 262 (3d Cir. 2002).......................................................................................13, 14

*Cruz v. United States*,
   537 F. App'x 26 (3d Cir. 2013) ......................................................................................12

*Cunningham v. Riley*,
   No. Civ.A. 99-460-SLR, 2003 WL 21383723 (D. Del. June 12, 2003), *aff'd* 115 F.
   App'x 600 (3d Cir. 2004) ...............................................................................................14

*Default Proof Credit Card System*, *Inc. v. Home Depot U.S.A., Inc.*
    412 F.3d 1291, 1302 (Fed. Cir. 2005)............................................................................17

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995).........................................................................................16

*Gallant Blazer, Inc. v. City of Wilmington Fire Dept.*,
   No. Civ. 05-479-SLR, 2006 WL 1726664 (D. Del. June 14, 2006) ..................................6

*Gemalto S.A. v. HTC Corp.*,
   754 F.3d 1364 (Fed. Cir. 2014)........................................................................................16

*Herring v. United States*,
   424 F.3d 384 (3d Cir. 2005).................................................................................1, 7, 11

*Home Products International*, *Inc. v. United States*,
   633 F.3d 1369 (Fed. Cir. 2011)..........................................................................................6

*Hooten v. Greggo & Ferrara Co.*,
   No. 10-776-RGA, 2013 WL 5272366 (D. Del. Sept. 18, 2013), *aff'd* 559 F. App'x
   173 (3d Cir. 2014)............................................................................................................14

*Hurst v. State Farm Mutual Automobile Insurance Co.*,
Civ. Action No. 10-1001-GMS, 2012 WL 426018 (D. Del. Feb. 9, 2012) .......................7

*Innovative Sports Management, Inc. v. Neto*,
No. 13-1497 (SRC), 2013 WL 5935982 (D.N.J. Nov. 1, 2013) ......................................20

*Inwood International Co. v. Wal-Mart Stores, Inc.*,
243 F.3d 567, 2000 WL 1720676 (Fed. Cir. 2000) .........................................................18

*Jones v. City of Buffalo*,
867 F. Supp. 1155 (W.D.N.Y. 1994) ..............................................................................19

*Latshaw v. Trainer Wortham & Co., Inc.*,
452 F.3d 1097 (9th Cir. 2006) .......................................................................................15

*Lauren v. Nellis*,
No. 2:10–CV–01544–KJD–PAL, 2013 WL 621935 (D. Nev. Feb. 19, 2013)..................8

*McKnight v. U.S. Steel Corp.*,
726 F.2d 333 (7th Cir. 1984) ...........................................................................................8

*Merck & Co. v. Teva Pharms. USA Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)......................................................................................17

*Moolenaar v. Government of the Virgin Is.*,
822 F.2d 1342 (3d Cir. 1987)..........................................................................................12

*Nixon v. Abbott*,
No. 3:13-cv-3807-N, 2013 WL 5676304 (N.D. Tex. Oct. 18, 2013) ...............................19

*Noah System, Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012).......................................................................................16

*Pedro v. Office for Dispute Resolution*,
No. 11-777, 2012 WL 5588384 (E.D. Pa. Nov. 14, 2012) ..............................................13

*Phelps v. Kapnolas*,
No. 94-CV-7543-CJS, 2005 WL 2136917 (W.D.N.Y. Sept. 2, 2005) .............................18

*Project Management Institute, Inc. v. Ireland*,
144 F. App'x 935 (3d Cir. 2005)......................................................................................13

*Pryor v. U.S. Postal Service*,
769 F.2d 281 (5th Cir. 1985) ..........................................................................................15

*Revolutions Medical Corp. v. Viverito*,
No. 2:07–3711–MBS, 2008 WL 4542877 (D.S.C. Oct. 6, 2008)...................................8, 9

iii

*Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.*, C.A.,
No. 05-245-JJF, 2009 WL 3805569 (D. Del. Nov. 12, 2009) ............................................6

*United States v. Diaz*,
189 F.3d 1239 (10th Cir. 1999) ...................................................................................10

*United States v. Pelullo*,
Crim. No. 94-276(DRD), Civ. No. 01-124(DRD), 2011 WL 3022534
(D.N.J. July 22, 2011). ........................................................................................7, 9

*United States v. Singleton*,
867 F. Supp. 2d 564 (D. Del. 2012) ...........................................................................12

*United States v. Stone*,
411 F.2d 597(5th Cir. 1969) (per curiam) ......................................................................10

*United States v. Witco Corp.*,
76 F. Supp. 2d 519 (D. Del. 1999) ..............................................................................13

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) ...............................................................................................12

## STATUTES, RULES AND OTHER AUTHORITIES

28 U.S.C. § 455(b)(4) ...................................................................................................11

28 U.S.C. § 455(d)(4)(i) ...........................................................................................11, 15

Fed. R. Civ. P. Rule 60(b)(1) ................................................................................... passim

Fed. R. Civ. P. Rule 60(b)(2) .........................................................................................12

Fed. R. Civ. P. Rule 60(b)(3) .........................................................................................12

Fed. R. Civ. P. Rule 60(b)(4) .........................................................................................12

Fed. R. Civ. P. Rule 60(b)(5) .........................................................................................12

Fed. R. Civ. P. Rule 60(b)(6) ........................................................................12, 13, 14, 18

Fed. R. Civ. P. Rule 60(d)(3) .......................................................................................1, 7

Basil S. Krikelis, Daniel M. Silver & Patrick A. Walker, III, *Top 5 Reasons To File
Infringement Suits In Del.*, McCarter & English (July 24, 2009),
http://www.mccarter.com/Top-5-Reasons-To-File-Infringement-Suits-In-Del-07-
24-2009/ .............................................................................................................8

## NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement suit brought by plaintiff Pi-Net International, Inc. ("Pi-Net") against defendant JPMorgan Chase & Co. ("JPMC").  On May 14, 2014, after construing the disputed claim terms from among the asserted patents (D.I. 163, 164), the Court granted JPMC's motions for summary judgment of invalidity and non-infringement, concluding that all 24 of the claims asserted against JPMC were invalid for indefiniteness, lack of enablement, and lack of written description.  (D.I. 165, 166.)  In accordance with these rulings, on May 19, 2014, the Court entered judgment in JPMC's favor and against Pi-Net.  (D.I. 167.)  On May 21, 2014, Pi-Net filed a Notice of Appeal.  (D.I. 170.)  Pi-Net's appeal is currently pending before the U.S. Court of Appeals for the Federal Circuit, Case No. 14-1495.

Since judgment was entered and this case was closed, the relationship between Dr. Lakshmi Arunachalam, Pi-Net's president and CEO, and George Pazuniak, Pi-Net's counsel throughout this litigation, has deteriorated.  (*See* D.I. 193, 195.)  On September 3, 2014, Dr. Arunachalam filed a *pro se* motion on behalf of Pi-Net and herself individually (together, "Movant") to vacate the Court's judgment pursuant to Rules "60(B) [*sic*] and 60(d)(3)" of the Federal Rules of Civil Procedure.  (D.I. 191.)

## I.    SUMMARY OF ARGUMENT

1.  Movant's Rule 60 motion fundamentally misapprehends the applicable law, and thus is a frivolous attempt to avoid an adverse judgment.  Relying solely on unfounded and scurrilous accusations as a substitute for evidence, Movant alleges that Judge Andrews, Judge Robinson, and Chief Judge Stark committed "fraud upon the court," which resulted from "judge bias" against Pi-Net.  (D.I. 191 at 4.)  Rule 60 requires Movant to set forth "'clear, unequivocal, and convincing evidence'" of such allegedly fraudulent conduct.  *Herring v. United States*, 424 F.3d 384, 387 (3d Cir. 2005).  Movant has uncovered no evidence of any judicial bias or fraud.

2.  Specifically, Movant alleges that Judge Andrews and Chief Judge Stark both have "considerable financial holdings in a litigant, and also tainted Judge Robinson."  (D.I. 191 at 6.)  Movant is incorrect.  Judge Andrews and Chief Judge Stark have *no financial holdings in JPMC*; instead, each judge owns shares in common investment and/or mutual funds that include JPMC stock among their many constituent holdings.  Movant never explains how Judge Robinson was "tainted" by her colleagues' mutual fund holdings; instead, Movant merely intimates that because, in her view, Judge Robinson's *Markman* decision in this case was "obscenely incorrect," it must have been the product of judicial bias.  (D.I. 191 at 20.)  Movant's disagreement with that decision, no matter how passionately felt, is not a basis for relief under Rule 60.

3.  Movant also alleges that her attorney committed malpractice by, *inter alia*, failing to propose certain claim constructions, as Movant allegedly instructed him to do.  (D.I. 191 at 4-5.)  These allegations, even if true, do not provide a basis to vacate any orders or judgments of this Court, because: (a) the Court considered all of the relevant evidence in construing the disputed claims, and was not bound by any construction that Pi-Net may have proposed; (b) the judgment that Movant seeks to vacate was based on a variety of factual findings, none of which are the product of any alleged misconduct by Pi-Net's former counsel; and (c) the proper forum to challenge this Court's decisions and orders is on appeal to the Federal Circuit.

4.  Movant's Rule 60 motion is particularly inexcusable given that (a) Movant previously filed near-identical allegations against the judges of the Federal Circuit, and was told that ownership in a common investment fund cannot give rise to relief under Rule 60; and (b) Movant was advised by her former counsel that her accusations of judicial misconduct lacked legal support.  Neither the Court nor JPMC should have to expend resources on such a motion, and JPMC should be awarded its fees and costs incurred in connection with this opposition brief.

## II.     STATEMENT OF FACTS

### A.     Pi-Net's Infringement Claims

Pi-Net asserted three patents against JPMC: U.S. Patent Nos. 5,987,500 ("the '500

patent"); 8,037,158 ("the '158 patent"); and 8,108,492 ("the '492 patent") ("the patents-in-suit").

Pi-Net accused JPMC of infringing 24 claims: claims 1-6, 10-12, 14-16, and 35 of the '500

patent; claim 4 of the '158 Patent; and claims 1-8 and 10-11 of the '492 Patent (collectively, the

"asserted claims").  The patents-in-suit generally claim "a system and method for online

transactions, wherein a user takes an action at the 'front-end' that causes data to be routed through

a system and used a basis to execute a transaction at the 'back-end'" in real time.  (D.I. 165 at 2.)

Pi-Net first asserted infringement of the patents-in-suit in a series of eight virtually

identical complaints filed in the District of Delaware in March 2012 against multiple financial

institutions.[1]  Roughly one year later, half of those cases had been settled.  The remaining four

defendant groups (including JPMC, Bank of America, N.A., Citizens Financial Group, Inc., and

Capital One Financial Corp. (collectively, "the Defense Group")) submitted their collective

*Markman* positions in a joint filing with Pi-Net on May 15, 2013.  (D.I. 74.)[2]

---

[1]  *See Pi-Net Int'l Inc. v. Bank of Am., N.A.*, Civ. No. 12-cv-00280-RGA; *Pi-Net Int'l Inc. v. Wilmington Trust Co.*, Civ. No. 12-cv-00281-RGA; *Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*, Civ. No. 12-cv-00282-SLR; *Pi-Net Int'l Inc. v. WSFS Fin. Corp.*, Civ. No. 12-cv-00352-RGA; *Pi-Net Int'l Inc. v. UBS Fin. Servs. Inc.*, No. 12-cv-00353-RGA; *Pi-Net Int'l Inc. v. Sovereign Bank N.A.*, Civ. No. 12-cv-00354-RGA; *Pi-Net Int'l Inc. v. Citizens Fin. Grp., Inc.*, Civ. No. 12-cv-00355-RGA; *Pi-Net Int'l Inc. v. Capital One Fin. Corp.*, Civ. No. 12-cv-00356-RGA.

[2]  After *Markman* briefing was complete, two additional sets of defendants settled, leaving only JPMC and Citizens Financial Group, Inc. ("CFG") as defendants from Pi-Net's original suits. CFG's indemnitor, SAP America Inc. ("SAP"), then filed for review of the patents-in-suit in the U.S. Patent & Trademark Office ("PTO"), and Judge Andrews stayed the proceedings in CFG's case in June 2013.  (Civ. No. 12-355-RGA, D.I. 82)  The PTO initiated a covered business method review of the '158 patent, and *inter partes* review of the '500 patent and the '492 patent, having found that it was more likely than not that the asserted claims are invalid.  (Civ. No. 12-355-RGA, D.I. 85)  A final decision in those proceedings is expected on September 19, 2014.

### B.       The *Markman* Proceedings And Summary Judgment Rulings

The Defense Group's *Markman* position was based primarily on the contention that "almost every term of the patents-in-suit is insolubly ambiguous, and, therefore, that every claim in suit is invalid for indefiniteness."  (D.I. 74 at 1.)  This position was compelled by the unusually defective disclosure of the patents-in-suit:

> "This is not simply a case where the claim terms lack definitional support in the specification: the patents-in-suit suffer from a dearth of disclosure, internal inconsistencies, and insoluble ambiguity," such that "the claims simply *cannot be interpreted* in any logical manner in light of the intrinsic record."

(D.I. 74 at 2 (emphasis in original).)  The Defense Group identified two different categories of indefinite terms: (1) the means-plus-function terms found in the '500 patent and the '492 patent that lacked corresponding algorithmic structure, and (2) several other terms that were so vague and/or undefined as to leave the Court with the "impossible task of creating something out of nothing to attempt to determine the bounds of Pi-Net's right to exclude."  (D.I. 74 at 2.)

This case was reassigned from Judge Andrews to Judge Robinson on April 8, 2014.  The Court held a *Markman* hearing on April 15, 2014, and issued its *Markman* decision on May 14, 2014.  (D.I. 163.)  In that decision, the Court concluded that each and every asserted claim was indefinite.  All of the asserted means-plus-function limitations were found to be indefinite because they recite functions that are "more complex than the type of function that can be performed by a general purpose computer with no special programming," and no algorithm for executing those functions was disclosed in the patents-in-suit.  (D.I. 163 at 12-28.)  These findings invalidated 6 claims of the '500 patent, and 8 claims from the '492 patent.  In addition, the Court found that four claim terms ("VAN Switch"; "VAN system"; "switching"; and "service network") were indefinite because they are not amenable to construction.  (D.I. 163 at 3-8, 31.)

4

Having construed the disputed claim terms, the Court concluded that the 24 asserted claims were also invalid for lack of enablement because: (1) the lone embodiment of the claimed technology depended on a non-existent protocol, called TMP, which meant that a person of skill in the art would have had to develop her own protocol; (2) the specification provided no guidance as to how to use the claimed "VAN Switch" to effectuate a real-time transaction and described this element in internally inconsistent and abstract ways; (3) the specification offered no direction or guidance as to how to make and use a system that was distinct from the prior CGI art. (D.I. 165 at 17-19.) In addition, the Court concluded that the asserted claims were invalid for failure to satisfy the written description requirement because there was no evidence from the specification that the inventor possessed (1) the claimed VAN Switch, (2) a protocol for performing the claimed transactions, (3) the claimed front-end applications, or (4) the claimed back-end components. (*Id.* at 20-21.) In so doing, the Court relied on the independent experts of record in this case, and determined that the specification does not show possession of or provide an enabling disclosure for any key aspect of the claimed technology—not the VAN Switch, not the use of any components to perform "real-time" transactions, not the front-end applications, not the back-end components. (*See id.*)

## III.   MOVANT'S MOTION IS PROCEDURALLY IMPROPER.

Movant's motion should be stricken because it was filed by a non-party (Dr. Arunachalam) and an unrepresented corporation (Pi-Net). Although Dr. Arunachalam has filed a motion to be substituted for Pi-Net, (D.I. 197), she is not currently a party to this action. Thus, any filing she makes—including this motion—is improper. *Pi-Net Int'l, Inc. v. Citizens Fin. Grp.*, Civ. No. 1:12-cv-355-RGA, D.I. 101 ("Dr. Arunachalam, an individual, has filed a motion to be substituted in for the Plaintiff. . . . Unless and until that briefing is completed and the motion is resolved in Dr. Arunachalam's favor, Dr. Arunachalam cannot file documents as the

Plaintiff.").  By the same token, Pi-Net is not permitted to litigate in federal court unless it is represented by counsel.  *Gallant Blazer, Inc. v. City of Wilmington Fire Dept.*, No. Civ. 05-479-SLR, 2006 WL 1726664, at *2 (D. Del. June 14, 2006) ("A corporation cannot appear pro se or by a representative of the corporation, and may only participate in litigation through licensed counsel."); *accord Carefirst of Md., Inc. v. Care First Transp., Inc.*, No. Civ. A. 02-229(MPT), 2002 WL 31500927, at *3 (D. Del. Nov. 1, 2002).  The Court granted Mr. Pazuniak's motion to withdraw as Pi-Net's counsel, (D.I. 199), and Pi-Net's participation in this motion is improper.

In addition, as this case is currently postured, Movant's motion cannot be granted.  Pi-Net filed a Notice of Appeal on May 21, 2014, which divests this Court of authority to grant a Rule 60(b) motion.  *See, e.g.*, *Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, No. 05-245-JJF, 2009 WL 3805569, at *4 (D. Del. Nov. 12, 2009) ("[T]he Court is without authority to grant [a Rule 60(b)] motion while a Notice of Appeal is pending and may only deny such a motion or consider it."); *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1378 n.9 (Fed. Cir. 2011) ("Though the courts of appeal have differed on the procedures to be followed regarding Rule 60(b), there is broad agreement that a district court at least lacks the authority to *grant* a motion to reopen while an appeal is pending.").  Once an appeal from the underlying judgment has been taken, a district court can grant a Rule 60 motion seeking to vacate that judgment only after the district court has certified its intention to grant the motion, and after the appellate court has granted a motion to remand the case.  *See Sea Star Line, LLC*, 2009 WL 3805569, at *4 n.2.

## IV.   MOVANT HAS FAILED TO SHOW JUDICIAL BIAS OR FRAUD UPON THE COURT, AS REQUIRED UNDER RULE 60(d)(3).

### A.   Legal Standard Under Rule 60(d)(3)

A movant relying upon Rule 60(d)(3) must provide "clear, unequivocal, and convincing evidence" of: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the

court itself; and (4) in fact deceives the court." *Box v. Petsock*, No. 3:86-CV-1704, 2014 WL 4093248, at *5 (M.D. Pa. Aug. 18, 2014) (quoting *Herring v. United States*, 424 F.3d 384, 386-87 (3d Cir. 2005) (internal citations omitted)); *accord Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 10-1001-GMS, 2012 WL 426018, at *16 (D. Del. Feb. 9, 2012).  "[F]raud on the court must involve truly egregious conduct, such as bribing a judge, tampering with a jury, hiring an attorney for the purpose of influencing a judge." *United States v. Pelullo*, Crim. No. 94-276(DRD), Civ. No. 01-124(DRD), 2011 WL 3022534, at *18 (D.N.J. July 22, 2011).

> **B.      There Is No Evidence Of Intentional Fraud By Any Judicial Officer, Let Alone Clear And Convincing Evidence Of Fraud Upon The Court.**

> **1.      No Evidence of Bias or Improper Conduct by Judge Robinson**

Movant accuses Judge Robinson of two acts of "fraudulent" conduct: (1) providing allegedly incomplete Financial Disclosure Reports (D.I. 191 at 21); and (2) issuing an "obscenely incorrect Markman opinion . . . after only one week on the case" (D.I. 191 at 20, 29).  Movant has no evidence to support these accusations, and even if they were true, they are not the sort of "truly egregious conduct" that would provide a basis for relief under Rule 60(d)(3).

Movant alleges that "Judge Robinson's financial disclosure is uninstructive since she lists no assets at all, which cannot be."  (D.I. 191 at 6.)  Movant is incorrect.  On the contrary, Judge Robinson's Financial Disclosure Report for Calendar Year 2012 lists multiple assets, including substantial real estate holdings and inherited cash and stock holdings.  (*See* Ex. A)  There is no evidence that Judge Robinson currently holds, or has ever held, any financial interest in JPMC.  Moreover, while Movant suspects that Judge Robinson's financial disclosure is "incomplete," and therefore believes that it "raises questions of propriety," these unsupported and unsubstantiated theories do not constitute actual evidence of an "intentional fraud by an officer of the court." *Herring*, 424 F.3d at 386.

7

Movant's complaints regarding the timing and content of Judge Robinson's decision are similarly misplaced. Judge Robinson is one of the most experienced judges in the U.S. and, by some accounts, has more experience handling patent cases than any other active district judge.[3] Yet, she consistently manages to dispose of pending motions and hold trials in a timely manner. (*See* Ex. B at 15)  She has extensive experience analyzing patents covering technology that is closely analogous to that claimed in the patents-in-suit.  *See, e.g.*, *Automated Transactions LLC v. IYG Holding Co.*, 768 F. Supp. 2d 727 (D. Del. 2011) (resolving disputed issues relating to patents directed to systems and methods for enabling transactions over the internet).  Judge Robinson issued her *Markman* decision roughly five weeks after this case was transferred; it is not unreasonable to conclude that Judge Robinson was able to efficiently and expediently gain an understanding of this case—particularly because the parties thoroughly briefed the disputed issues, participated in a 3½ hour *Markman* hearing and oral argument, and provided extensive supplementary written materials at the *Markman* hearing.  (*See* D.I. 74, 169, 177.)

While Movant may earnestly believe that Judge Robinson erred in her *Markman* decision, that is not evidence of fraud or "judge bias."  (D.I. 191 at 17.)  Mere disagreement with Judge Robinson's decisions cannot justify the extraordinary relief sought under Rule 60.  *See, e.g.*, *McKnight v. U.S. Steel Corp.*, 726 F.2d 333, 338 (7th Cir. 1984) ("The appropriate way to seek review of alleged legal errors is by timely appeal; a [Rule 60] motion is not a substitute for an appeal."); *Lauren v. Nellis*, No. 2:10-CV-01544-KJD-PAL, 2013 WL 621935, at *2 (D. Nev. Feb. 19, 2013) ("Mere disagreement with the Court's ruling is not grounds for reconsideration under Rule 60(b)."); *Revolutions Med. Corp. v. Viverito*, No. 2:07-3711-MBS, 2008 WL

---

[3]  *See, e.g.*, Basil S. Krikelis, Daniel M. Silver & Patrick A. Walker, III, *Top 5 Reasons To File Infringement Suits In Del.*, McCarter & English (July 24, 2009), http://www.mccarter.com/Top-5-Reasons-To-File-Infringement-Suits-In-Del-07-24-2009/.

4542877, at *2 (D.S.C. Oct. 6, 2008) (same).  Instead, the appropriate remedy for an allegedly incorrect *Markman* ruling (or summary judgment determination) is an appeal to the Federal Circuit, which Pi-Net has already initiated.

2.      **No Evidence of Bias or Improper Conduct by Judge Andrews or Judge Stark**

The centerpiece of Movant's Rule 60 motion is her contention that Judge Andrews and Chief Judge Stark "had considerable financial holdings in a litigant," which resulted in "judge bias" that allegedly operated to Pi-Net's detriment.[4]  (D.I. 191 at 5-6.)  Movant attaches several printouts showing that Chief Judge Stark and Judge Andrews hold mutual funds that consist of a panoply of stocks and bonds (including JPMC stock).  (*See* D.I. 191 at 27-29.)  These financial holdings provide no evidence of "judge bias," and although Movant implicitly asserts that there is a vast conspiracy among the District of Delaware jurists to increase the value of JPMC stock,[5] Movant provides no actual evidence to support that notion.

Movant never explains how, even if Judge Andrews and Judge Stark did have financial interests in JPMC, those interests could provide a basis for relief from a decision and order entered by Judge Robinson, which is what Movant seeks.  Movant appears to imply Judge Andrews and Judge Stark nefariously conspired to transfer this case to Judge Robinson, apparently with knowledge that her decision would protect their financial interests in JPMC.  To call this theory untenable is a gross understatement.  The transfer of this case to Judge Robinson

---

[4] Movant also suggests that her counsel, George Pazuniak committed fraud upon the Court.  (*See* D.I. 191 at 21 ("This was constructive fraud by both the Judges *and Counsel*.") (emphasis added).)  Movant has provided no evidence that Mr. Pazuniak has committed "truly egregious conduct, such as bribing a judge, tampering with a jury, hiring an attorney for the purpose of influencing a judge." *Pelullo*, 2011 WL 3022534, *18.

[5] (*See, e.g.*, D.I. 191 at 6 (asserting that Judge Andrews and Chief Judge Stark "also tainted Judge Robinson"); *id.* at 19 (asserting that the judgment should be "set aside . . . as collusive").)

is not evidence of any conspiracy; cases are transferred among judges in this district and elsewhere for a variety of legitimate reasons. *See, e.g.*, *United States v. Stone*, 411 F.2d 597, 599 (5th Cir. 1969) (noting that judges are vested with "inherent" authority to transfer cases among themselves "for the expeditious administration of justice"); *United States v. Diaz*, 189 F.3d 1239, 1243-44 (10th Cir. 1999) (rejecting argument that "the assignment of five district judges to handle various portions of [defendant's] case violated his due process rights" and concluding that "'District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice'").   It is Movant's burden to set forth clear and convincing evidence of this alleged conspiracy, but Movant offers no direct or circumstantial evidence of any conspiratorial wrongdoing by any judges of this Court.   Moreover, there is no evidence that Judge Stark was even aware that this case was transferred from Judge Andrews to Judge Robinson—he did not become Chief Judge until more than two months after that transfer.

Indeed, this is not the first time that Movant has baselessly alleged judicial bias resulting from ownership of mutual funds.   In 2011, Movant attempted to file an *amicus curiae* brief in a Federal Circuit appeal filed by Leader Technologies, Inc. against Facebook Inc.   After she was denied the opportunity to file her *amicus* brief, Movant alleged that "the judges of [the Federal Circuit] had a conflict of interest in the *Leader Tech.* case because of ownership of Facebook stock."   (*See* Ex. C at 2-3)   The Federal Circuit responded to these allegations as follows:

> That is incorrect.   No judge on this three-judge panel owns or has owned Facebook stock.   The brief argues that mutual funds owned by judges on the panel have owned or do own Facebook stock.   But that is not a conflict of interest. Canon 3 C (3)(c)(1) of the Code of Conduct for United States Judges expressly provides that "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund."   Such a provision is intended to provide a safe harbor for judges to maintain investments.   Without such a provision, judges would be constantly recusing themselves from cases brought before them, hampering the administration of justice.

(*Id.* at 3)  Movant has repeated those previously rejected arguments here—Movant again points to common investment and mutual funds as evidence of Judge Stark's and Judge Andrews' allegedly improper financial interest in JPMC.  Those arguments are directly at odds with not only the clear language from the Federal Circuit and the Canons of Judicial Conduct, but also with the applicable statutory authority.  *See* 28 U.S.C. § 455.  Generally, recusal is required when a judge has a "financial interest . . . in a party to the proceeding."  28 U.S.C. § 455(b)(4).  However, the statute specifically carves out "[o]wnership in a mutual or common investment fund" from the definition of "financial interest," unless "the judge participates in the management of the fund."  28 U.S.C. § 455(d)(4)(i).  The only alleged "financial interest" on the part of any judge from this District is in a "mutual or common investment fund," and Movant has provided no evidence that either Judge Andrews or Judge Stark has ever participated in the management of any of their respective mutual fund holdings.

Neither Judge Andrews nor Judge Stark has any financial interest in JPMC.  Neither Judge Andrews nor Judge Stark issued the *Markman* decision or judgment that Movant challenges in her motion.  There is no evidence that Judge Andrews or Judge Stark had any role in the decisions that Movant contends are "obscenely incorrect."  (D.I. 191 at 20.)  Accordingly, there can be no question that Movant has failed to show by clear and convincing evidence that Judge Andrews or Judge Stark committed "intentional fraud."  *Herring*, 424 F.3d at 386.

## V.   MOVANT HAS NO BASIS FOR RELIEF UNDER RULE 60(b).

### A.   The Basis For Movant's Requested Relief Is Unclear.

Movant makes passing mention of Rule "60(B) [*sic*]" as a separate basis for relief from the *Markman* order and judgment in this case.  (*See, e.g.*, D.I. 191 at 1, 10.)  Movant has not specified what subsection (if any) of Fed. R. Civ. P. 60(b) she contends is a basis for relief here, and several Rule 60(b)'s subsections are clearly inapposite.  Although Movant alleges that Judge

Andrews' and Judge Stark's holdings in mutual funds are "newly discovered evidence," (D.I. 191 at 5), this is publicly available information that, with reasonable diligence, could have been uncovered at any time.  Thus, Rule 60(b)(2) is inapplicable to Movant's requested relief.  Movant also does not allege that JPMC has engaged in any fraud, misrepresentation, or misconduct; Rule 60(b)(3) therefore does not apply to the instant motion.  Similarly, Rule 60(b)(4) is generally limited to jurisdictional defects.  *See, e.g.*, *Cruz v. United States*, 537 F. App'x 26, 27 (3d Cir. 2013) ("Rule 60(b)(4) provides for relief . . . if the court that rendered it lacked jurisdiction over the subject matter or the parties . . . .").  Movant does not allege any jurisdictional defects; instead, Movant simply disagrees with the Court's judgment, which is not a basis for relief under Rule 60(b)(4).  *See, e.g., United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (explaining that '[a] judgment is not void,' for example, 'simply because it is or may have been erroneous'").  Finally, Movant does not assert that judgment has been "satisfied, released or discharged," or any other ground for relief in Fed. R. Civ. P. 60(b)(5).

It thus appears that Movant intended to invoke Rule 60(b)(1) and Rule 60(b)(6) as potential mechanisms for relief.

### B.      Legal Standards Applicable To Rule 60(b) Motions

"Rule 60(b) motions require the court to exercise sound discretion in light of all relevant circumstances." *United States v. Singleton*, 867 F. Supp. 2d 564, 572 (D. Del. 2012).  Further, "[t]he remedy provided by Rule 60(b) is 'extraordinary and [only] special considerations must justify granting relief under it.'"  *Moolenaar v. Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987) (citation omitted).  Rule 60(b)(1) provides authority for a court to "relieve a party . . . from a final judgment, order, or proceeding" based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b), (b)(1).  "The burden is on the movant to demonstrate that she is

entitled to relief under Rule 60(b)(1)." *Pedro v. Office for Dispute Resolution*, No. 11-777, 2012 WL 5588384, at *3 (E.D. Pa. Nov. 14, 2012).

In contrast, Rule 60(b)(6) "is a catch-all provision that allows relief for 'any other reason justifying relief from the operation of the judgment.'" *United States v. Witco Corp.*, 76 F. Supp. 2d 519, 527 (D. Del. 1999) (citation omitted).  The Third Circuit "'has consistently held that the Rule 60(b)(6) ground for relief from judgment provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances.'" *Coltec Indus., Inc. v. Holland*, 280 F.3d 262, 273 (3d Cir. 2002) (citation omitted).  Rule 60(b)(6) generally requires the movant to make "'"a more compelling showing of inequity or hardship"'" than would normally be required to reopen a case under any of the other subsections of Rule 60(b).  *Project Mgmt. Inst., Inc. v. Ireland*, 144 F. App'x 935, 937 n.1 (3d Cir. 2005) (citations omitted).

### C.    Movant's Allegations Of Judicial Misconduct Fail To Satisfy Either Rule 60(b)(1) Or Rule 60(b)(6).

Other than a bare reference to Rule "60(B) [*sic*]" as a basis for her motion, Movant has not explained how the alleged judicial bias satisfies the specific requirements for "extraordinary" relief under Rule 60(b)(1) or 60(b)(6).  Movant argues that "Judge Andrews and Judge Stark did not disclose to Plaintiff that they had financial holdings in a litigant.  This violation of their duty to disclose was a *mistake*."  (D.I. 191 at 7 (emphasis added).)  Rule 60(b)(1) does allow for relief in the case of a "mistake."  However, as discussed above, there is no evidence that Judge Andrews or Judge Stark made any "mistakes."  They did not disclose that "they had financial holdings in a litigant" for a very simple reason:  *neither of them has financial holdings in a litigant.*  Instead, they both hold shares in common investment funds, which in turn hold shares of JPMC stock.  Both of those judges *did* disclose their holdings in these funds, which is why Movant was able to attached that information to her motion.  (*See* D.I. 191 at 27-29.)  In any

event, even if Judge Andrews or Judge Stark had made some "mistake," that provides no basis to vacate a series of separate, independent decisions rendered by Judge Robinson.

Movant also alleges that the *Markman* opinion in this case is "totally incorrect," and thus, presumably, contains a number of alleged "mistakes." (D.I. 191 at 20.) However, this Court has repeatedly recognized that alleged legal error, without more, is not the sort of "mistake" that could give rise to a claim for relief under Rule 60(b)(1). *Hooten v. Greggo & Ferrara Co.*, No. 10-776-RGA, 2013 WL 5272366, at *1 (D. Del. Sept. 18, 2013); *Cunningham v. Riley*, No. Civ. A. 99-460-SLR, 2003 WL 21383723, at *3 (D. Del. June 12, 2003) (denying a Rule 60 motion and noting that an appeal is the proper mechanism for resolving alleged legal mistakes).

Finally, Movant has not satisfied her heavy burden of showing the sort of "exceptional circumstances" that are required to invoke the catchall provision of Rule 60(b)(6). *See Coltec Indus., Inc.*, 280 F.3d at 273. Instead, Movant has provided evidence only of *unexceptional* conduct—namely, (1) that she disagrees with a Court decision that is adverse to the positions that Pi-Net advanced in the litigation, and (2) that certain judges of this district have permissibly chosen to invest in mutual funds (and properly disclosed those investments).[6] There can be no question that these circumstances—which are encountered in virtually every federal case that proceeds to judgment—are insufficient to justify relief under Rule 60(b)(6).

### D.      Movant's Allegations Of Malpractice By Movant's Litigation Counsel Fail To Satisfy Either Rule 60(b)(1) Or Rule 60(b)(6).

Movant has catalogued a series of actions that she contends constitute "attorney malpractice and failure to follow written instructions" by her former counsel, George Pazuniak,

---

[6] In contrast to the unexceptional circumstances discussed in Movant's motion, this case is substantively exceptional for the reasons set forth in JPMC's motion for attorney fees. (*See* D.I. 174.) The revelations regarding Pi-Net's approach to this litigation have only confirmed that Movant's conduct is exceptional.

Esq.[7]  (D.I. 191 at 4.)  Averments of attorney malpractice are generally insufficient to justify

relief under Rule 60(b)(1).  *See, e.g.*, *Latshaw v. Trainer Wortham & Co.,* 452 F.3d 1097, 1101

(9th Cir. 2006) ("Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a

party later comes to regret through subsequently-gained knowledge that corrects the erroneous

legal advice of counsel. . . .  This includes not only an innocent, albeit careless or negligent,

attorney mistake, but also intentional attorney misconduct."); *accord Pryor v. U.S. Postal Serv.*,

769 F.2d 281, 288 (5th Cir. 1985) (holding that district court did not abuse its discretion in

denying Rule 60 motion and noting that "the mistakes of counsel, who is the legal agent of the

client, are chargeable to the client" and are not a basis for reopening a judgment).  Accordingly,

errors resulting from a lawyer's ignorance, carelessness, or intentional misconduct are not

grounds for relief under Rule 60(b)(1), but are "more appropriately addressed through

malpractice claims."  *Latshaw*, 452 F.3d at 1101.

Moreover, Movant's allegations of malpractice are not the sort of conduct that constitutes

"mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1).  For the reasons

discussed above, Mr. Pazuniak's refusal to file a motion for reconsideration based on the

financial holdings of Judge Andrews and Judge Stark was not the product of "mistake" or

"neglect," but rather is consistent with the applicable law.  *See, e.g.*, 28 U.S.C. § 455(d)(4)(i).

---

[7]  These allegations include: (1) interfering with and deterring certain additional appellate
counsel from working on Movant's appeal before the Federal Circuit; (2) improperly filing
certain arguments in concurrent proceedings before the PTO; (3) failing to timely communicate
with Movant regarding an Order issued by Judge Andrews in a different case on August 20,
2014; (4) filing for an appeal in the Federal Circuit while intoxicated; (5) refusing to inform the
Court of the "discovery that the Judges had considerable financial holdings in a litigant"; and
(6) filing "incorrect claim construction positions." (D.I. 191 at 5, 22-24.)  Accusations
(1) through (4), even if true, are irrelevant to the Court's inquiry under Rule 60(b) because they
occurred *subsequent to* the judgment and orders that Movant seeks to vacate, or occurred in *other
proceedings* before different judges.

Movant's allegation that Mr. Pazuniak filed "incorrect" claim constructions is similarly misplaced for several reasons.  First, the Court is not bound to accept any construction that the parties propose for a disputed claim term.  *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1556 (Fed. Cir. 1995) (adopting a construction different from what either party had proposed and noting that "the judge's task is not to decide which of the adversaries' [proposals] is correct," but rather is to "independently assess" the relevant evidence and "declare the meaning of the claims").  Courts frequently adopt their own unique constructions in light of their reading of the evidence, as the Court did in this case.  (*See, e.g.*, D.I. 163 at 9-10 (adopting construction different from those proposed by the parties for the terms "point-of-service application" and "transactional application").)  Thus, even if the Court had been provided with different constructions for the proposed terms, Movant puts forward no evidence to support the notion that the Court would have altered its *Markman* decision—indeed, Movant does not even identify the allegedly "correct" constructions that she claims should have been submitted to the Court.

Second, the proper forum to challenge the claim constructions that were adopted by this Court is in the Federal Circuit, which determines the proper construction for disputed terms as a matter of law, and is not bound by any of the constructions proposed by the parties.  *See Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1368 (Fed. Cir. 2014) ("Claim construction is a question of law that we review *de novo*.").  Pi-Net has already initiated such an appeal to the Federal Circuit.

Third, Movant fails to acknowledge that nearly all of the terms that the Court declared indefinite were computer-executed means-plus-function terms.  (*See* D.I. 163 at 12-28.)  The Federal Circuit has held that "[c]omputer-implemented means-plus-function claims are indefinite unless the specification discloses an algorithm to perform the function associated with the limitation." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1319 (Fed. Cir. 2012).  Because the

16

specification of the patents-in-suit discloses no such algorithm, claims 1-7 and 35 of the '500 patent and claims 1-8 of the '492 patent are invalid for indefiniteness—regardless of whether Movant believes that a different "construction" for those terms should have been proposed. Courts have no authority to rewrite a patent specification to insert an algorithm where none has been disclosed, and extrinsic evidence or argument cannot be used to fill that gap. *See Merck & Co. v. Teva Pharms. USA Inc.*, 395 F.3d 1364, 1380 (Fed. Cir. 2005) (Rader, J., dissenting) (noting that it would be "[c]ontrary to this court's rules . . . [to] rewrite[] the specification and substitute[] language not chosen by the patentee"); *see also Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification."). Movant's arguments that some unspecified claim constructions should have been proposed (and presumably adopted by the Court) therefore offer no basis for relief under Rule 60(b)(1).

Fourth, Movant's only relevant arguments relating to her counsel's alleged malpractice focus exclusively on his failure to advance certain claim constructions for which she advocated. (*See* D.I. 191 at 5; D.I. 196, ¶¶ 25-30.)  Movant has not addressed the numerous deficiencies in the specification—including the lack of a disclosed protocol for executing the claimed invention, the internally inconsistent and abstract figures, lack of working examples, and lack of guidance as to how to make and use the claimed invention—which, as noted above, rendered the patents invalid for lack of written description and lack of enablement.  (D.I. 165 at 17-21.)  There is no evidence that these findings, which are based on the intrinsic disclosure of the patents, would have been any different if Movant's preferred claim constructions had been before the Court.

Finally, even if Pi-Net's counsel proposed claim constructions that were not precisely what Movant wanted to propose, that does not constitute an "extraordinary circumstance" that is

17

required to invoke Rule 60(b)(6).  Disagreements over strategy between clients and counsel are part and parcel of civil litigation; if a litigant was permitted to vacate a judgment every time that it did not agree 100% with the strategy pursued by counsel, very few judgments would ever be final.  *See, e.g.*, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS, 2005 WL 2136917, at *2 (W.D.N.Y. Sept. 2, 2005) (noting that "neither poor strategy on the part of an attorney, nor disagreement with the strategic decisions of an attorney, are appropriate grounds for relief pursuant to rule 60(b)") (citing *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986)).  Pi-Net had the opportunity to submit extensive briefing, participate in oral argument, and submit supplementary written materials—and at no time, prior to the final judgment of this Court, did Movant take any steps to terminate her relationship with counsel, or to inform the Court of any disagreement between Movant and her counsel regarding the proper construction of the disputed claim terms.

## VI.    MOVANT HAS PROVIDED NO BASIS FOR TRANSFERRING THIS CASE

Movant contends that "[t]he extraordinary facts in this matter dictate that this motion be filed in an unbiased court other than the originating District Court of the State of Delaware," and that "[t]herefore, in the interest of judicial economy this case must be transferred to a verifiably impartial tribunal."[8]  (D.I. 191 at 10-11.)

As an initial matter, Rule 60 does not provide authority for this Court to transfer this case (which is currently on appeal to the Federal Circuit) to another tribunal; that rule provides only a means to effect "relief from a judgment or order."  *See, e.g.*, *Inwood Int'l Co. v. Wal-Mart Stores, Inc.*, 243 F.3d 567, 2000 WL 1720676, at *3 (Fed. Cir. 2000) (unpublished table decision) ("Rule 60(b) motions may not be used to obtain relief beyond setting aside the final judgment.")

---

[8]  This is the forum that Movant has repeatedly chosen to litigate her claims of patent infringement.  As recently as April 2014, Movant was filing new cases in this venue.  *See, e.g.*, *Pi-Net Int'l, Inc. v. Fulton Fin. Corp.*, Civ. No. 14-cv-00490-RGA.  Movant has not filed a motion seeking transfer, and does not suggest a transferee forum.

(citing 12 James W. Moore *et al.*, *Moore's Federal Practice* ¶ 60.25 (3d ed. 1999)).  However, even if the Court has jurisdiction to entertain such a motion at this time, and even if Movant's Rule 60 motion is construed to be a separate, proper request for transfer from the forum in which Movant chose to bring this case (and more than a dozen other cases), it should be denied.

As discussed above, Movant's allegations of judicial bias are entirely unfounded.  Movant has offered evidence only of (1) a routine intra-district transfer; (2) the unremarkable fact that Movant disagrees with a judgment invalidating her patents; and (3) ownership of shares in mutual funds by two judges in this District, neither of whom rendered any of the decisions or orders which Movant seeks to vacate.  Under such circumstances, courts have consistently denied motions to transfer.  *See, e.g.*, *Nixon v. Abbott*, No. 3:13-cv-3807-N, 2013 WL 5676304, at *1 (N.D. Tex. Oct. 18, 2013) (determining that "conclusory allegations of judicial bias" were "insufficient to justify recusal" and "do not support transfer"); *Alexander v. Medtronic, Inc.*, No. 2:12-cv-04104-NKL, 2012 WL 3724052, at *4 (W.D. Mo. Aug. 27, 2012) (rejecting allegations of a "broader conspiracy of judicial bias against" litigant, and refusing to transfer); *Jones v. Buffalo*, 867 F. Supp. 1155, 1162 (W.D.N.Y. 1994) (denying motion for recusal and transfer where there was "no basis" for a claim that tribunal was "biased or prejudiced against [plaintiff]").  The Court should likewise reject Movant's request for transfer.

## VII.   JPMC SHOULD BE AWARDED ITS FEES AND COSTS INCURRED IN RESPONDING TO THIS FRIVOLOUS MOTION.

Movant's Rule 60 motion is frivolous.  It disparages the members of this Court with baseless and unfounded accusations of a judicial conspiracy.  The only evidence that Movant cites in support of this scurrilous hyperbole is the fact that Judge Andrews and Judge Stark apparently own mutual funds, which in turn hold shares of JPMC stock.  This is not the first time that Movant has attempted to make such an argument—she made nearly identical accusations

against the Federal Circuit, all of which were roundly rejected.  (*See* Ex. C)  Moreover, Movant

was advised by her former counsel that the instant motion was baseless.  (D.I. 191 at 24.)  Given

the on-point decision directed to Movant from the Federal Circuit, and her own counsel's

admonition, the resources of both the Court and JPMC have been needlessly expended on a

motion that Movant knew full well was contrary to the established law.  JPMC has already

incurred considerable costs in defending against what it considers to be baseless allegations of

infringement, and now has had to do so again in response to a flurry of additional filings that

have followed Movant's termination of her counsel.  JPMC respectfully submits that the only

way to deter Movant from needlessly consuming further resources is to award JPMC its costs

and fees in opposing this frivolous motion.  *See, e.g.*, *Innovative Sports Mgmt, Inc. v. Neto*, No.

13-1497 (SRC), 2013 WL 5935982, at *3 (D.N.J. Nov. 1, 2013) ("[T]he court possesses the

inherent authority to assess attorney's fees as a sanction for frivolous conduct . . . .").

## VIII.   CONCLUSION

For the foregoing reasons, JPMC respectfully requests that Movant's Rule 60 motion be

denied, and that JPMC be awarded its reasonable fees and costs incurred in filing this opposition.

DATED:  September 17, 2014

|  |  |
|---|---|
| OF COUNSEL:<br>Daniel A. DeVito<br>Douglas R. Nemec<br>Edward L. Tulin<br>Andrew D. Gish<br>SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>Four Times Square<br>New York, New York  10036<br>Tel.:  (212) 735-3000<br>daniel.devito@skadden.com<br>douglas.nemec@skadden.com<br>edward.tulin@skadden.com<br>andrew.gish@skadden.com | Respectfully submitted,<br><br>*/s/ Robert S. Saunders*<br>Robert S. Saunders (ID No. 3027)<br>Jessica Raatz Kunz (ID No. 5698)<br>SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>920 N. King Street, 7th Floor<br>Wilmington, Delaware  19801<br>Tel.:  (302) 651-3000<br>Fax:  (302) 651-3001<br>rob.saunders@skadden.com<br>jessica.kunz@skadden.com<br><br>*Attorneys for Defendant JPMorgan Chase & Co.* |