## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PI-NET INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., <br><br> Defendant. | Civ. No. 1:12-cv-00282-SLR |

### COMPENDIUM OF SELECTED AUTHORITIES CITED IN DEFENDANT'S BRIEF IN OPPOSITION TO MOTION TO VACATE JUDGMENT FOR FRAUD ON THE COURT PURSUANT TO FED. R. CIV. P. 60(b) AND 60(d)(3)

OF COUNSEL:
Daniel A. DeVito
Douglas R. Nemec
Edward L. Tulin
Andrew D. Gish
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
daniel.devito@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
andrew.gish@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica Raatz Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King Street, 7th Floor
Wilmington, Delaware  19801
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendant JPMorgan Chase & Co.*

# INDEX

## CASES                                                                    TAB NO.

*Alexander v. Medtronic, Inc.*,
    No. 2:12-cv-04104-NKL, 2012 WL 3724052 (W.D. Mo. Aug. 27, 2012)........................1

*Box v. Petsock*,
    Civil Action No. 3:86-CV-1704, 2014 WL 4093248 (M.D. Pa. Aug. 18, 2014) ...............2

*Carefirst of Maryland, Inc. v. Care First Transportation, Inc.*,
    No. Civ.A. 02-229(MPT), 2002 WL 31500927 (D. Del. 2002) .........................................3

*Cunningham v. Riley*,
    No. Civ.A. 99-460-SLR, 2003 WL 21383723 (D. Del. June 12, 2003), *aff'd* 115 F.
    App'x 600 (3d Cir. 2004) ..................................................................................................4

*Gallant Blazer, Inc. v. City of Wilmington Fire Dept.*,
    No. Civ. 05-479-SLR, 2006 WL 1726664 (D. Del. June 14, 2006) ...................................5

*Hooten v. Greggo & Ferrara Co.*,
    No. 10-776-RGA, 2013 WL 5272366 (D. Del. Sept. 18, 2013), *aff'd* 559 F. App'x
    173 (3d Cir. 2014)..............................................................................................................6

*Hurst v. State Farm Mutual Automobile Insurance Co.*,
    Civ. Action No. 10-1001-GMS, 2012 WL 426018 (D. Del. Feb. 9, 2012) ........................7

*Innovative Sports Management, Inc. v. Neto*,
    No. 13-1497 (SRC), 2013 WL 5935982 (D.N.J. Nov. 1, 2013) .........................................8

*Inwood International Co. v. Wal-Mart Stores, Inc.*,
    243 F.3d 567, 2000 WL 1720676 (Fed. Cir. 2000) ...........................................................9

*Lauren v. Nellis*,
    No. 2:10–CV–01544–KJD–PAL, 2013 WL 621935 (D. Nev. Feb. 19, 2013).................10

*Nixon v. Abbott*,
    No. 3:13-cv-3807-N, 2013 WL 5676304 (N.D. Tex. Oct. 18, 2013) ...............................11

*Pedro v. Office for Dispute Resolution*,
    No. 11-777, 2012 WL 5588384 (E.D. Pa. Nov. 14, 2012) ...............................................12

*Phelps v. Kapnolas*,
    No. 94-CV-7543-CJS, 2005 WL 2136917 (W.D.N.Y. Sept. 2, 2005) .............................13

*Revolutions Medical Corp. v. Viverito*,
    No. 2:07–3711–MBS, 2008 WL 4542877 (D.S.C. Oct. 6, 2008)......................................14

*Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.*, C.A.,
    No. 05-245-JJF, 2009 WL 3805569 (D. Del. Nov. 12, 2009) ...........................................15

*United States v. Pelullo*,
    Crim. No. 94-276(DRD), Civ. No. 01-124(DRD), 2011 WL 3022534
    (D.N.J. July 22, 2011). ...................................................................................................16

# TAB 1

Not Reported in F.Supp.2d, 2012 WL 3724052 (W.D.Mo.)
**(Cite as: 2012 WL 3724052 (W.D.Mo.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Missouri,
Central Division.
Donald K. ALEXANDER, Plaintiff,
v.
MEDTRONIC, INC. and CH Allied Services, Inc.
(dba Boone Hospital Center), Defendant.

No. 2:12–cv–04104–NKL.
Aug. 27, 2012.

Donald K. Alexander, Rocky Mount, MO, pro se.

Daniel L. Ring, Chicago, IL, Patrick Lysaught, Tyler M. Burger, Baker, Sterchi, Cowden & Rice, LLC, Kansas City, MO, for Defendant.

**ORDER**

NANETTE K. LAUGHREY, District Judge.

**\*1** Pending before the Court are Plaintiff Donald Alexander's motions for recusal. [Doc. # 27], change of venue [Doc. # 26], and reconsideration of the Court's order dated June 6, 2012 [Doc. # 28]. Also pending is the voluntary dismissal of co-plaintiffs Gary Lee Patterson and George Dalton [Doc. # 29]. For the following reasons, the Court DENIES Alexander's motions for recusal, change of venue, and reconsideration. The Court GRANTS the voluntary dismissal with prejudice of co-plaintiffs Gary Lee Patterson and George Dalton.

**I. Background**

Plaintiff Donald Alexander claims that Defendant Medtronic, and others, negligently implanted him with a defective defibrillator lead, and that Medtronic engaged in bribery, illegal false statements, and illegal kickbacks in doing so. Prior to filing this lawsuit, Alexander filed three separate lawsuits against Medtronic, all arising from Medtronic's role in implanting an allegedly defective defibrillator lead in Alexander. Alexander's

third such case was originally filed in this Court and claimed damages under civil RICO, medical negligence, false advertising and consumer fraud, vicarious liability, and conspiracy. Case No. 10–04081–CV–C–NKL, Doc. # 1 at 1.

All three of these cases were eventually resolved in the District of Minnesota where they were dismissed because they were barred by a settlement agreement between Alexander and Medtronic.

Alexander then filed the current lawsuit against Medtronic in Missouri state court, arguing that Medtronic's role in implanting an allegedly defective defibrillator entitled Alexander to damages for criminal conspiracy, bribery, fraud, and gross medical negligence. Medtronic removed the action to this Court. Alexander moved for remand to state court, arguing that the case was improperly removed.[FN1] The Court denied this motion.

> FN1. Alexander's motion did not explicitly ask for remand to state court, but was rather captioned as a motion to dismiss. [Doc # 14]. The Court determined from Alexander's briefing, however, that it was apparent that Alexander wanted the case to continue, but viewed removal to federal court as improper. Consequently, the Court treated Alexander's motion as a motion for remand to state court.

Alexander now seeks my recusal or a change of venue claiming that I am biased against him. Alexander also requests reconsideration of the Court's order, dated June 6, 2012, denying his motion for remand to state court.

**II. Discussion**

**A. Recusal**

Alexander argues that recusal is necessary under 28 U.S.C. sections 455 and 144 due to references Medtronic made to certain, prior cases con-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3724052 (W.D.Mo.)
**(Cite as: 2012 WL 3724052 (W.D.Mo.))**

cerning Alexander. Alexander claims that the undersigned has personal knowledge of the events leading up to the decisions cited by Medtronic and that Medtronic successfully influenced the undersigned by referring to these cases. Medtronic responds that Alexander's motion should be denied because it is untimely and without merit.

**1. Failure to Comply with Section 144**

Alexander's claim, insofar as it invokes section 144, must fail. A party seeking recusal under section 144 must file a timely and sufficient affidavit accompanied by a certificate from counsel of record stating that the affidavit is made in good faith. 28 U.S.C. § 144 (2012). A motion for recusal based on section 144 must strictly comply with these requirements. *In re Medlock,* 406 F.3d 1066, 1073 (8th Cir.2005) ("An affidavit must strictly comply with all of the statutory requirements before it will effectively disqualify a judge." (quoting *United States v. Anderson,* 433 F.2d 856, 859 (8th Cir.1970)); *see also Holloway v. United States,* 960 F.2d 1348, 1354–55 (8th Cir.1992) (quoting *United States v. Faul,* 748 F.2d 1204, 1210 (8th Cir.1984)).

**\*2** Alexander's motion does not contain an affidavit, a sworn declaration, or any statement that the allegations contained in the motion were made under penalty of perjury. Alexander also did not submit a certificate of any kind. This is ground for denial regardless of whether, as Medtronic contends, a *pro se* litigant such as Alexander is absolutely barred from using section 144. [FN2]

> FN2. Some courts have held that the required certificate of good faith from counsel of record prevents *pro se* litigants from seeking recusal under section 144. *E.g., Green v. Stevenson,* No. 12–432, 2012 WL 2154123, at \*2 (E.D.La. June 13, 2012); *Robinson v. Gregory,* 929 F.Supp. 334, 337–38 (S.D.Ind.1996) (citing *Mitchell v. United States,* 126 F.2d 550, 552 (10th Cir.1942)). The Court need not reach this issue, however, because Alexander did not even attempt to comply with the statutory

requirements.

**2. Timeliness**

Alexander's motion for recusal is also denied as untimely. A motion for recusal "will not be considered unless timely made." *Tri–State Fin. v. Lovald,* 525 F.3d 649, 653 (8th Cir.2008) (quoting *Fletcher v. Conoco Pipe Line Co.,* 323 F.3d 661, 664 (8th Cir.2003)); *see also In re Kan. Pub. Emps. Ret. Sys.,* 85 F.3d 1353, 1360 (8th Cir.1996) ("[O]ur circuit has consistently required timely action as to [section] 455 in general, i.e., as to both (a) and (b)."); *Holloway,* 960 F.2d at 1355 ("Relief under section 144 is expressly conditioned on the timely filing of a legally sufficient affidavit." (quoting *Faul,* 748 F.2d at 1210)). " 'Timeliness requires a party to raise a claim at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' " *White v. Nat'l Football League,* 585 F.3d 1129, 1138 (8th Cir.2009) (quoting *Fletcher,* 323 F.3d at 664). An untimely motion for recusal can be denied "on this basis alone." *Tri–State Fin.,* 525 F.3d at 654.

Alexander's motion is based on the undersigned's personal knowledge of a series of alleged events that date back over twenty years. Nonetheless, Alexander waited nearly three months, until after the Court denied Alexander's contested motion to dismiss, before moving for recusal. Alexander provides no persuasive explanation for this delay. *See Holloway,* 960 F.2d at 1355 ("The burden is on the affiant to show good cause for failing to file a timely motion.").

In addition, the timing of Alexander's motion is highly suspect. A motion to recuse "should not be withheld as a fallback position to be asserted only after an adverse ruling." *White,* 585 F.3d at 1141; *see also Tri–State Fin.,* 525 F.3d at 653 ("A party is required to bring its recusal motion promptly to avoid the risk that the party might hold its application as an option in the event the trial court rules against it."). Alexander's motion for recusal was filed almost immediately after the Court denied his motion to remand for lack of subject matter juris-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3724052 (W.D.Mo.)
**(Cite as: 2012 WL 3724052 (W.D.Mo.))**

diction.

Alexander's motion, based on alleged facts Alexander knew about from the very start of these proceedings, is thus untimely and apparently motivated by litigation strategy. Alexander's motion for recusal is denied.

### 3. Merits

Even if Alexander's motion were timely, it would fail on its merits. Alexander relies first on 28 U.S.C. section 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard for recusal under section 455(a) is objective: whether a reasonable person with knowledge of the circumstances would question the judge's impartiality. *Am. Prairie Constr. Co. v. Hoich,* 560 F.3d 780, 789 (8th Cir.2009).

**\*3** Alexander also relies on 28 U.S.C. sections 455(b) and 144, which both provide for recusal where a judge has "a personal bias or prejudice" against the moving party. In assessing this type of claim, the Court considers only the legal sufficiency of the claim, not its factual merit. *Souder v. Owens–Corning Fiberglas Corp.,* 939 F.2d 647, 653 (8th Cir.1991). Nonetheless, to succeed on a personal bias claim, the moving party must " 'allege specific facts and not mere conclusions or generalities.' " *Anderson,* 433 F.2d at 860 (8th Cir.1970) (quoting *Brotherhood of Locomotive Fireman & Enginemen v. Bangor & Aroostook R.R.,* 380 F.2d 570, 576 (D.C.Cir.1967)). Furthermore, "[b]ecause a judge is presumed to be impartial, 'the party seeking disqualification bears the substantial burden of proving otherwise.' " *United States v. Dehghani,* 550 F.3d 716, 721 (8th Cir.2008) (quoting *United States v. Denton,* 434 F.3d 1104, 1111 (8th Cir.2006)). The moving party thus "carries a heavy burden of proof." *Fletcher,* 323 F.3d at 664 (quoting *Pope v. Fed. Express Corp.,* 974 F.2d 982, 985 (8th Cir.1992)).

Nothing in Alexander's motion would lead a reasonable person with knowledge of the circum-

stances to doubt the undersigned's impartiality in the present case. Nor does Alexander provide any specific facts tending to show that the undersigned was improperly influenced by Medtronic in the prior proceedings. Alexander argues only that Medtronic's attorney, in an attempt to influence the undersigned, "introduced into the record before this Court" certain references to Alexander's litigation history. But "opinions formed by the judge on the basis of facts introduced ... in the course of the current proceedings, ... do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Alexander states that the alleged attempt to influence the Court "apparently worked." But Alexander provides no facts to support this conclusory accusation or demonstrate the deep-seated partiality required by *Liteky.* A judge is presumed to remain impartial in the face of each party's most persuasive attempts to influence her decision and Alexander offers nothing to counter that presumption. Alexander's motion for recusal is thus insufficient on its merits.

### 4. Obligation Not to Recuse

Where a party moves for recusal but the rules do not require it, the judge is obligated not to recuse herself. *See Sw. Bell Tel. Co. v. FCC,* 153 F.3d 520, 523 (8th Cir.1998) (Hansen, J., in chambers); *Holloway,* 960 F.2d at 1350–51 (8th Cir.1992) ("Judges have an affirmative duty: ... 'not to disqualify themselves unnecessarily.' ") (quoting *Davis v. Comm'r of Internal Revenue,* 734 F.2d 1302, 1303 (8th Cir.1984) (per curiam)); *Anderson,* 433 F.2d at 859 ("When an affidavit does not meet the requirements imposed by law, the judge has an obligation not disqualify himself.").

**\*4** Because Alexander's motion does not require recusal under either section 144 or section 455, the undersigned is obligated not to recuse. The Court thus denies Alexander's motion for recusal.

### B. Change of Venue

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3724052 (W.D.Mo.)
**(Cite as: 2012 WL 3724052 (W.D.Mo.))**

Alexander argues that the present case ought to be transferred to the Springfield Division due to the judicial bias alleged in Alexander's motion for recusal. Because this is Alexander's only argument in support of a transfer, Alexander's motion for a change of venue is in large part identical to his motion for recusal. *Compare* [Doc. # 26 at 2–8], *with* [Doc. # 27 at 2–8]. The only meaningful difference between the two motions is the requested relief. Consequently, because the Court finds that Alexander's claim of judicial bias is without merit, as discussed above, Alexander's motion for a change of venue is denied.

It appears from Alexander's briefings that Alexander's motion for change of venue is confined to the same narrow claim of bias as Alexander's motion for recusal. To the extent, however, that Alexander further alleges a broader conspiracy of judicial bias against him, the Court notes that Alexander's motion contains the same accusations the Missouri Supreme Court rejected as "unsupported" and "unfounded" in *In re Alexander,* 807 S.W.2d 70, 72–74. As such, the Court finds no merit in Alexander's claim of widespread judicial bias.

### C. Reconsideration of the Court's June 6, 2012 Order

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.,* 627 F.3d 716, 721 (8th Cir.2010) (quoting *Hagerman v. Yukon Energy Corp.,* 839 F.2d 407, 414 (8th Cir.1988)). A motion for reconsideration "is not a vehicle for simple reargument on the merits." *Broadway v. Norris,* 193 F.3d 987, 990 (8th Cir.1999).

Alexander's motion for reconsideration simply restates the same arguments he previously made. With respect to the Court's denial of Alexander's motion to remand for lack of subject matter jurisdiction, Alexander repeatedly asserts that his complaint raises no federal question. In the June 6, 2012 order, the Court expressly considered and rejected this argument. Similarly, Alexander re-

peatedly asserts that all of his claims are state tort law claims. In the June 6, 2012 order, the Court considered this argument and found that, even if it were true, the Court would still have subject matter jurisdiction because Alexander's tort law claims all turn on whether Medtronic violated federal law. With respect to the portion of the Court's order granting Medtronic's motion to stay, Alexander likewise makes no argument he did not make, or could not have made, in his earlier briefings on this motion. Alexander offers nothing to suggest that the Court's conclusions on these issues represent manifest errors of law.

Consequently, the Court denies Alexander's motion for reconsideration of the Court's order dated June 6, 2012.

### D. Voluntary Dismissal of Co–Plaintiffs

**\*5** Co-plaintiffs Gary Lee Patterson and George Dalton seek voluntary dismissal with prejudice of their claims in this case, with all parties to pay their own costs incurred to date. Medtronic does not object to this dismissal. Consequently, the Court grants the voluntary dismissal with prejudice of co-plaintiffs Gary Lee Patterson and George Dalton.

### III. Conclusion

For the foregoing reasons, it is ORDERED that Plaintiff Donald Alexander's Motions for recusal of Judge Nanette K. Laughrey [Doc. # 27], change of venue [Doc. # 26], and reconsideration of the Court's order dated June 6, 2012 [Doc. # 28] are DENIED. The voluntary dismissal with prejudice of co-plaintiffs Gary Lee Patterson and George Dalton [Doc. # 29] is GRANTED.

W.D.Mo.,2012.
Alexander v. Medtronic, Inc.
Not Reported in F.Supp.2d, 2012 WL 3724052 (W.D.Mo.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 2

Westlaw.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

H

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
Earl Eugene BOX, Petitioner,
v.
PETSOCK, et al., Respondents.

Civil Action No. 3:86–CV–1704.
Signed Aug. 18, 2014.

### MEMORANDUM

WILLIAM J. NEALON, District Judge.

**\*1** On December 3, 1986, Petitioner, Earl Eugene Box, an inmate then-confined FN1 in the State Correctional Institution in Pittsburgh, Pennsylvania filed a habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 1975 conviction in the Dauphin County Court of Common Pleas. (Doc. 1). By Memorandum and Order dated November 16, 1987, the habeas petition was dismissed on the merits. (Doc. 37). On March 21, 2013, Petitioner filed a *pro se* motion under Rule 60(b) to reopen the judgment. (Docs.57–59). A notice of appearance for Petitioner was subsequently filed, and on October 25, 2013, a supplemental motion to reopen judgment pursuant to Rule 60 was submitted. (Doc. 80). The matter has been fully briefed and, for the reasons set forth below, the motion will be denied.

> FN1. Petitioner is currently incarcerated at the State Correctional Institution in Graterford, Pennsylvania.

### Background

The factual background provided in the Memorandum dated November 16, 1987, is as follows:

On September 14, 1974, shortly after midnight, Steelton police received a call to investigate a shooting at Mueller's Tavern, a family-owned bar/restaurant located in the borough. The bar had been the target of a robbery. Three armed men had entered the establishment and ordered everyone to lie on the floor. One patron ran into the tavern's kitchen and began to run up the stairs that connected the first floor tavern to the upstairs family living quarters. She fainted on the steps after seeing that one of the gunmen had followed her.

Twenty-year-old John B. Mueller III was upstairs and apparently heard the commotion; he came to the top of the stairs. The gunman fired a single.32 caliber bullet which pierced Mueller's heart. He died a short time later.

The gunmen fled with money taken from cash registers and patrons. They entered a waiting car and sped off.

This incident as one in a series of similar robberies that occurred in the Harrisburg area. A subsequent robbery took place at the Fireside Bar in Carlisle. It resulted in the shooting death of a patron named Paul Liebold. Two days later one of the defendant's companions, Frank Martin, attempted to cash one of Liebold's checks. A suspicious teller kept the check and got the license number of the vehicle in which Martin was riding. He was subsequently arrested and identified in a lineup. Based on information received from Martin, police learned of the defendant and issued a warrant for his arrest. A search of an abandoned apartment which had been rented by a woman named Nellie Dixon, and which was said to be the defendant's residence, revealed two guns, at least one of which was used by the gunmen. The defendant was later arrested in Boston, Massachusetts.

During the trial the defendant's companions identified him as the person who shot and killed John Mueller III. The Commonwealth also introduced evidence of the other robberies committed by the gang as well as one of the guns found in the Dixon apartment. The court instructed the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

jury on the elements of first, second and third degree murder and on those of robbery. After several hours of deliberation they found the defendant guilty of both murder in the second degree and robbery. Defendant was sentenced to a term of life and two consecutive terms of ten (10) to twenty (20) years.

*2 (Doc. 37, pp. 2–3) (taking facts from the decision of the Dauphin County Court of Common Pleas denying Petitioner's request for relief under the Post Conviction Hearing Act, dated April 4, 1983).FN2 Judgments of sentence were affirmed on appeal. *Commonwealth v. Box,* 481 Pa. 62 (1978).

> FN2. Although Petitioner alleges that these facts depend upon fabricated evidence, *see* (Doc. 98, p. 3), the operative facts underlying the state conviction retain preclusive effect until set aside on appeal or by grant of writ of habeas corpus. *See Beckwith v. Sherwood,* 2001 U.S. Dist. LEXIS 24079, *10 (E.D.Pa.2001) (citing *Heck v. Humphrey,* 512 U.S. 477 (1994)).

On December 6, 1979, Petitioner filed a petition for relief under the Post–Conviction Hearing Act ("PCHA"),FN3 alleging trial counsel's ineffectiveness "in failing to file a pre-trial motion to suppress evidence and in failing to seek a charge to the jury on voluntary manslaughter", and alleging that he was "denied a fair trial by the introduction of evidence of unrelated offenses." *Commonwealth v. Box,* 451 A.2d 252, 254 (Pa.Super.1982). On January 28, 1981, the petition was denied without a hearing. *Id.* On appeal, the Pennsylvania Superior Court remanded the matter to the PCHA court to determine whether the admissibility of evidence was waived. *Id.* at 255.

> FN3. The PCHA was later replaced by the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S. § 9541 *et seq.*

Following an evidentiary hearing, PCHA relief was denied on April 4, 1983. *Commonwealth v.*

Box, Nos. 965, 968 C.D.1975 (Dauphin County Ct. C.P. April 4, 1983). The PCHA court considered, and rejected, Petitioner's claims that trial counsel was ineffective in not appealing the admission of the other robberies, in failing to request that the jury be instructed on voluntary manslaughter, and for failing to seek suppression of evidence found in Dixon's apartment. *Id.* The decision was affirmed by the Pennsylvania Superior Court on September 21, 1984.FN4 *Commonwealth v. Box,* No. 199 Harrisburg 1983 (Pa.Super. September 21, 1984). On August 21, 1985, the Pennsylvania Supreme Court granted Petitioner the right to file a *nunc pro tunc* appeal. FN5 *Commonwealth v. Box,* No. 171 M.D. All. Dkt.1985 (Pa. August 21, 1985). But, on October 6, 1986, the Pennsylvania Supreme Court denied the petition for allowance of appeal. *Commonwealth v. Box,* No. 171 M.D. All. Dkt.1985 (Pa. October 6, 1986).

> FN4. The parties briefs list the date that the Pennsylvania Superior Court affirmed denial of PCHA relief as June 1, 1983. (Doc. 80, p. 3); (Doc. 94, p. 2). However, the exact date is irrelevant for purposes of this opinion.

> FN5. The parties state that Petitioner obtained permission from the Pennsylvania Supreme Court to file a *nunc pro tunc* appeal on September 20, 1985. (Doc. 80, p. 3); (Doc. 94, p. 2). Regardless, the exact date is not important for purposes of this opinion.

On December 2, 1986, Petitioner initiated the instant action by filing a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging fifteen (15) separate claims of trial court error and the ineffective assistance of counsel. (Doc. 1). The habeas claims were addressed on the merits and denied by Memorandum and Order dated November 16, 1987. *See* (Doc. 37). The Third Circuit Court of Appeals affirmed. *Box v. Petsock,* 860 F.2d 1074 (3d Cir.1988), *cert. denied* 489 U.S. 1028 (1989).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

On January 5, 2006, Petitioner filed a *pro se* motion to reopen pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Doc. 52). The motion claimed that the Court misapplied the facts, and alleged fraud on the Court. (Doc. 52). This motion was dismissed as untimely on January 9, 2006. (Doc. 53). Petitioner took an appeal from this decision, but on April 21, 2006, the Third Circuit Court of Appeals denied his request for a certificate of appealability. *Box v. Petsock, et al.,* App. No. 06–1353 (3d Cir. April 21, 2006). Additionally, the Third Circuit Court of Appeals denied his application for permission to file a second or successive section 2254 petition. *In Re: Earl Eugene Box,* App. No. 06–1554 (3d Cir. April 13, 2006).

**\*3** On March 21, 2013, Petitioner filed a pro se motion under Rule 60(b) to reopen the judgment dated November 16, 1987, and a motion for leave to proceed *in forma pauperis.* (Docs.57–58). Petitioner refiled his Rule 60(b) motion on April 2, 2013, along with supporting exhibits. (Doc. 59). On April 26, 2013, counsel entered his appearance on behalf of Petitioner and subsequently sought an extension of time to file an amended motion and memorandum of law. (Docs.60–64). After receiving several extensions of time, *see* (Docs.65, 67, 73–79), Petitioner, through counsel, filed a supplemental motion to reopen judgment pursuant to Rule 60, and a consolidated brief on October 25, 2013. (Doc. 80). The motion seeks relief under Rule 60(b)(6) and (d)(3), "alleging extraordinary circumstances and significant fraud upon this court, which taints the judgment previously entered on November 16, 1987, and warrants reopening the matter so that it can be litigated properly." (*Id.* at p. 18). The motion claims that change in the law brought by the United States Supreme Court's decision in *Martinez v. Ryan,* 132 S.Ct. 1309 (2012) FN6, represents an "extraordinary" circumstance to justify relief under Rule 60(b) (6). (Doc. 80, p. 20). Petitioner alleges the ineffective assistance of counsel at trial, on direct appeal, and at his first PCRA proceeding. (*Id.* at p. 22).

FN6. *Martinez* held, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez,* 132 S.Ct. at 1320.

Additionally, Petitioner claims that the judgment may be set aside pursuant to Rule 60(d)(3) for fraud on the court. (Doc. 80, pp. 22–48). Specifically, he alleges there was fraudulent testimony at trial concerning the discovery of the guns in Dixon's apartment. (*Id.* at pp. 24–36). He contends that the Commonwealth's answer to the PCHA petition also fraudulently represented the trial testimony. ( *Id.* at p. 32). Petitioner claims that this fraud continued into the federal habeas proceedings because he had not yet obtained a copy of the transcript from a co-conspirator's trial and that the Commonwealth's answers were either deceptive or failed to directly answer Petitioner's allegations in his habeas petition. (*Id.* at p. 34–36). Next, he alleges that the trial transcript has been altered to omit certain testimony and events relating to Petitioner's alleged inculpatory and racist statement to Frank Martin, an alleged co-conspirator. (Doc. 80, pp. 36–40). Petitioner asserts that his first PCHA counsel was ineffective in failing to litigate these issues. (*Id.* at pp. 33, 38). Petitioner further alleges that trial counsel fraudulently represented to the trial court that he had subpoenaed Leroy Willie Smith, an alleged co-conspirator who had been acquitted of charges. (*Id.* at pp. 41–43). Petitioner claims that this issue was raised in his habeas petition and overlooked by this Court. (*Id.* at pp. 43–44). The motion to reopen then alleges that the prosecution committed fraud on the trial court in its attempt to bolster the testimony of John Hyman. (*Id.* at pp. 44–46). Petitioner asserts that PCHA counsel was ineffective for failing to raise this issue. (*Id.*). Next, Petitioner argues that in his original habeas petition, he alleged that counsel

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

was ineffective for failing to challenge the constitutionally insufficient arrest warrant, but that Respondents concealed the constitutionally deficient warrant by failing to provide the Court with a copy of the document or specifically answering this claim. (*Id.* at pp. 46–48). He contends that this Court relied solely on Detective Macon's testimony, which is allegedly contradicted by other testimony, in finding that the warrant was sufficient. (*Id.*). Additionally, Petitioner claims that he recently obtained a copy of the arrest warrant, but that it "is a sham" because it refers to scars on his face that he received while incarcerated. (*Id.* at p. 47). He alleges that trial counsel was ineffective in failing to challenge the warrant. (*Id.* at pp. 47–48). Finally, Petitioner argues that his motion should not be construed as a second or successive habeas petition, and that his claims should relate back to the original petition. (*Id.* at pp. 48–51).

**\*4** On October 28, 2013, a show cause order was entered directing Respondents to file a responsive brief to the motion to include, *inter alia,* a discussion as to whether the decision in *Martinez* provides relief in this case where the original habeas petition was denied on the merits, and whether the motion is timely. (Doc. 81), *citing Silfies v. Walsh,* 2013 U.S. Dist. LEXIS 84503 (M.D.Pa.2013) (Kane, J.); *Gagliardi v. Courter,* 2011 U.S. Dist. LEXIS 16943, \*6–7 (W.D.Pa.2011).

On February 28, 2014, following the receipt of extensions of time, Respondents filed a brief in opposition to the motion. (Doc. 94). Respondents argue that *Martinez* is irrelevant and inapplicable to this case because the original habeas claims were not procedurally defaulted, and further, that Petitioner is using *Martinez* to subvert the rules governing successive habeas petitions. (*Id.* at pp. 10–16). Additionally, Respondents assert that Petitioner has failed to effectively allege that a fraud has been committed on the court. (*Id.* at pp. 16–21).

Petitioner filed a reply brief on April 4, 2014. (Doc. 98).

*Standards of Review*

**A. Rule 60(b)**

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby,* 545 U.S. 524, 528 (2005). The Rule provides:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). "Rule 60(b)(6) ... permits reopening when the movant shows 'any ... reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rules 60(b)(1)-(5)." *Gonzalez,* 545 U.S. at 528–29, *citing Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, n. 11 (1988); *Klapprott v. United States,* 335 U.S. 601,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

613 (1949). A "movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez,* 545 U.S. at 535. "It is available where the party seeking relief demonstrates that 'extreme' and 'unexpected' hardship will result absent such relief." *Jackson v.. Danberg,* 656 F.3d 157, 165–66 (3d Cir.2011) (citing *United States v. Swift & Co.,* 286 U.S. 106, 119 (1932)). The movant bears a heavy burden of proof that extraordinary circumstances are present. *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir.1991); *United States v. Rota,* 1999 U.S. Dist. LEXIS 562, *5 (E.D.Pa.1999).

**\*5** A "motion under Rule 60(b) must be made within a reasonable time-and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c). "What constitutes a 'reasonable time' depends on the circumstances of each case" and "which Rule 60(b) clause a claimant is trying to avail." *In re Diet Drugs Prod. Liab. Litig .,* 383 Fed. Appx. 242, 246 (3d Cir.2010). "A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties." *Id.; Pridgen v. Shannon,* 2013 U.S. Dist. LEXIS 40848, *5 (E.D.Pa.2013). "A motion under Rule 60(b)(6) filed more than a year after final judgment is generally untimely unless 'extraordinary circumstances' excuse the party's failure to proceed sooner." *Gordon v. Monoson,* 239 Fed. Appx. 710, 713 (3d Cir.2007) . " Rule 60(b)(6) is not intended as a means by which the time limitations of 60(b)(1–3) may be circumvented." *Stradley v. Cortez,* 518 F.2d 488, 493 (3d Cir.1975). Furthermore, "the Court is powerless to extend the one year time limits imposed." *Federal Deposit Ins. Co. v. Alker,* 30 F.R.D. 527, 529 (E.D.Pa.1962) (holding that the court "may not consider a motion for new trial under clauses (1), (2) and (3) of the Rule ... because the express terms of Rule 60(b) provide that a motion for new trial under these clauses may not be made more than one year after the judgment was

entered"), *affirmed by,* 316 F.2d 236 (3d Cir.1963).

**B. Rule 60(d)(3)**

In 2005, the Third Circuit Court of Appeals explained the standard to be applied to a motion to set aside judgment pursuant to Rule 60(d)(3) as follows:

Actions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept. The concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment. The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff-face to scale.

In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and that it must be supported by clear, unequivocal and convincing evidence.

*Herring v. United States,* 424 F.3d 384, 386–87 (3d Cir.2005) (internal citations omitted). "Thus fraud on the court must involve truly egregious conduct, such as bribing a judge, tampering with a jury, hiring an attorney for the purpose of influencing a judge." *United States v. Pelullo,* 2011 U.S. Dist. LEXIS 80154, *51 (D.N.J.2011) (citing *Herring,* 424 F.3d at 386).

**C. Successive Habeas Petitions**

**\*6** "[A] Rule 60(b) motion that seeks to revisit the federal court's denial on the merits of a claim for relief should be treated as a successive habeas petition." *Gonzalez,* 545 U.S. at 534. If a petitioner seeks to relitigate issues previously decided by the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

district court on habeas review or to pose new claims that would have been cognizable on federal habeas review, his Rule 60(b) motion will constitute a successive habeas petition. *United States v. Medina,* 2006 U.S. Dist. LEXIS 87936, *19 (E.D.Pa.2006) (citing *Pridgen v. Shannon,* 380 F.3d 721, 726 (3d Cir.2004). Similarly, when the Rule 60(b) motion seeks to attack the petitioner's underlying conviction, the motion should be treated as a second or successive habeas petition. *Pridgen,* 380 F.3d at 727.

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) prohibits the filing in the district court of a second or successive habeas petition under section 2254 unless the petitioner has first obtained permission from the appropriate court of appeals." *Edwards v. Palakovich,* 2007 U.S. Dist. LEXIS 52185, *5 (M.D.Pa.2007) (Caldwell, J.), *citing* 28 U.S.C. § 2244(b) (3)(A)[FN7]; *Benchoff v. Colleran,* 404 F.3d 812, 816 (3d Cir.2005). "A petitioner must follow this procedure even if the first petition was filed before the AEDPA was enacted." *Edwards,* 2007 U.S. Dist. LEXIS 52185 at *6 (citing In re Minarik, 166 F.3d 591, 599 (3d Cir.1999)). When a petitioner does not have authorization to file a second or successive petition under 28 U.S.C. § 2254, the district court does not have jurisdiction to consider it. *See* Burton v. Stewart, 549 U.S. 147, 152–57 (2007). "When a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson v. Johnson,* 313 F.3d 128, 139 (3d Cir.2002), *cert. denied* 540 U.S. 826 (2003).

> FN7. 28 U.S.C. § 2244(b)(3)(A) states: "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."

However, a "Rule 60(b) motion is not, in effect, a habeas petition if the motion attacks a ruling on a non-merits basis." *Brewington v. Klopotoski,* 2012 U.S. Dist. LEXIS 44713, *8 (E.D.Pa.2012) (citing Gonzalez, 545 U.S. at 532 n. 4). "If neither the [Rule 60(b) ] motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." Gonzalez, 545 U.S. at 533 (finding that a Rule 60(b) (6) motion alleging that the federal courts misapplied the statute of limitations fits this description); *Horton v. Dragovich,* 2010 U.S. Dist. LEXIS 109012, *3 (E.D.Pa.2010) (concluding that where the petitioner "is only asking this court to vacate and reopen the ... final judgment/order denying his habeas corpus petition as procedurally barred ... it is proper to review the motion because it is not the equivalent of a successive habeas petition").

**\*7** A "Rule 60(d) motion is subject to the same successive petition restrictions that apply to Rule 60(b) motions." *Mabry v. United States,* 2012 U.S. Dist. LEXIS 123509, *2 (M.D.Pa.2012) (Kane, J.).

### Discussion

### A. Timeliness of Motion

Initially, it is determined that the motion to reopen pursuant to Rule 60(b), filed more than twenty-five (25) years after habeas relief was denied, is untimely. *See* FED. R. CIV. P. 60(c) (requiring that a Rule 60(b) motion be filed "no more than a year after the entry of the judgment order"); *Grande v. Patrick,* 2011 U.S. Dist. LEXIS 765, *2–3 (W.D.Pa.2011) (stating that the Rule 60(b) motion, which alleged that the respondents fraudulently withheld transcripts from the habeas court, appeared to be untimely when filed three (3) years after the habeas petition was dismissed); *Rainey v. Dist. Attorney's Office of Phila.,* 2009 U.S. Dist. LEXIS 115777, *20–21 (E.D.Pa.2009) (finding that the Rule 60(b) motion, which alleged

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

fraud on the federal habeas court because the state withheld evidence, was untimely filed more than four (4) years after the section 2254 petition was dismissed). Petitioner's reliance on *Martinez,* which he argues is an "extraordinary circumstance" under Rule 60(b)(6) justifying the delay, is unavailing. *See Powell v. Tennis,* 2013 U.S. Dist. LEXIS 2524, *1–3 (M. D.Pa.2013) (Conner, J.) (finding, *inter alia,* that the petitioner's motion filed pursuant to Federal Rule of Civil Procedure 60(b)(2) and (6), which challenged the 2006 denial of his habeas corpus petition in light of *Martinez,* was untimely as the change in decisional law is not an "exceptional circumstance"). *Accord Cox v. Horn,* 2014 U.S.App. LEXIS 15207, *35 (3d Cir.2014) (commenting on the "concededly timely filed underlying motion"). He suggests that his Rule 60(b)(6) motion, filed within one-year of *Martinez,* is timely because the AEDPA permits claims to be brought within one-year of newly announced retroactive constitutional holdings. (Doc. 98, p. 10). This AEDPA provision applies to habeas corpus petitions, however, not to Rule 60(b) motions. *See* 28 U.S.C. § 2244(d)(1)(C). Furthermore, "the Court in *Martinez* was clear that it was not creating a new constitutional rule." *Printup v. Commonwealth,* 2013 U.S. Dist. LEXIS 71313, *18 (M.D.Pa.2013) (Schwab, M.J.), *adopted by* 2013 U.S. Dist. LEXIS 68167 (M.D.Pa.2013) (Caldwell, J.): *Young v. Lamas,* 2013 U.S. Dist. LEXIS 59407, *13–14 (E.D.Pa.2013) (" *Martinez* does not provide Petitioner with a rule that provides an alternative AEDPA start date under Section 2244(d)(1) (C), because the Court's holding did not create a newly recognized constitutional right. Rather, the Court's holding was limited to an equitable decision" and "Petitioner cannot rely on *Martinez* for relief under 28 U.S.C. § 2244(d)(1)(C).") (internal citations omitted). Moreover, as will be explained herein, the *Martinez* decision is not applicable to Petitioner's situation. *See House v. Warden. Sci–Mahanoy,* 2013 U.S. Dist. LEXIS 19132, *10–11 (M.D.Pa.2013) (Kosik, J.) (finding that *Martinez* did not apply because the only claim found to be procedurally defaulted was not a challenge to the effectiveness of PCRA counsel in failing to raise an issue of trial counsel's ineffectiveness).

**\*8** Additionally, Petitioner contends that his fraud allegations are brought pursuant to Rule 60(d) and are therefore not subject to the time limitations of subsection (b). *See* (Doc. 98, pp. 10–12). However, as will be discussed in greater detail below, despite Petitioner's reference to Rule 60(d), his fraud allegations fall under Rule 60(b)(3) and had to be raised by November 17, 1988. *See Gagliardi,* 2011 U.S. Dist. LEXIS 16943 at *6–7 (explaining that fraud on the court under Rule 60(d)(3) is reserved for egregious conduct and is distinct from the type of fraud covered by Rule 60(b)(3), which includes misrepresentations or misconduct by opposing parties or counsel in a case and remains subject to the one-year statute of limitations). Except perhaps for the argument that the arrest "warrant is a sham," essentially each of the claims raised in the instant motion were also brought in the initial Rule 60(b) motion filed on January 5, 2006. *Compare* (Doc. 52), *with* (Doc. 80). That motion, filed more than eighteen (18) years after the habeas petition was denied, was dismissed as untimely. (Doc. 53). The Third Circuit Court of Appeals denied Petitioner's request for a certificate of appealability from that decision. *See Box,* App. No. 06–1353. Consequently, the instant motion, filed after more than another nine (9) years have elapsed, is also untimely. *See United States v. Dixon,* 171 Fed. Appx. 403, 404 (3d Cir.2006) (stating that "[i]n light of the decision in Dixon's previous appeal, the District Court had little choice but to deny Dixon's motion" filed under Rule 60(b) challenging the denial of his prior Rule 60(b) motion).

It is therefore concluded that the instant motion is untimely. Regardless, it will be addressed on the merits.

**B. Rule 60(b) and *Martinez***

Petitioner claims that *Martinez* is an "extraordinary circumstance" under Rule 60(b)(6). *See* (Doc. 80). He argues that in light of the fact that his conviction predated *Grant*[FN8] and he was

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

represented on direct appeal by trial counsel, his situation is covered by *Martinez* pursuant to *Trevino.* (Doc. 80, p. 20), *citing Trevino v. Thaler,* 133 S.Ct. 1911 (2013) (applying *Martinez* to cases where the defendant was not limited to bringing ineffective assistance of trial counsel claims on collateral review, but could also assert them on direct appeal). He alleges that because his ineffective assistance of trial counsel claims were "given short shrift and an inadequate hearing on collateral review, as the direct result of ineffective performance by attorneys on collateral review and ... fraud on the court," *Martinez* is "just the kind of 'extraordinary' circumstance needed to justify Rule 60(b)(6) relief." (Doc. 80, p. 20). Additionally, he claims that " *Martinez* side-stepped the issue of whether there is a freestanding constitutional right to effective assistance of counsel in 'initial-review collateral proceedings.' " (*Id.*). He cites a decision of the Eastern District of Missouri that rejected the Fifth Circuit's holding that *Martinez* does not constitute an "extraordinary circumstance" warranting relief under Rule 60(b)(6), and instead followed the Ninth Circuit's reasoning which, although denying the Rule 60(b) motion, first applied the six-factor test developed in *Phelps v. Alameida,* 569 F.3d 1120 (9th Cir.2009). (Doc. 80, p. 21), *citing Barnett v. Roper,* 941 F.Supp.2d 1099, 1111 (E.D.Mo.2013) (discussing *Adams v. Thaler,* 679 F.3d 312 (5th Cir.2012) and *Lopez v. Ryan,* 678 F.3d 1131 (9th Cir.2012)). Petitioner, relying in part on his allegations of fraud, contends that the standards enunciated in *Lopez* favor reopening his habeas petition. (Doc. 80, p. 22).

> FN8. *Commonwealth v. Grant,* 813 A.2d 726 (Pa.2003) (announcing a new rule that "a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review"). *But see Cox v. Horn,* 2014 U.S.App. LEXIS 15207, *33 n. 8 (3d Cir.2014) ("We do not decide whether, as a general matter, Pennsylvania's pre-*Grant* legal landscape falls within the ambit of the *Martinez* rule.").

**\*9** Until recently, it appeared that the courts in this Circuit had adopted the approach taken by the Fifth Circuit in *Adams,* 679 F.3d 312. *See Stroll v. Johnson, et al.,* No. 3:00–cv–1959 (M.D.Pa. February 22, 2013) (Conaboy, J.) (denying the petitioner's motion to reopen his habeas corpus proceedings, stating that "the *Martinez* decision is simply a change in decisional law which does not warrant relief under Rule 60(b)" and citing *Adams,* 679 F.3d 312), *cert. denied* 2013 U.S.App. LEXIS 23570, *1 (3d Cir.2013) (denying the petitioner's request for a certificate of appealability, concluding that he had "failed to show that jurists of reason would find the District Court's decision denying his Rule 60(b) motion to be debatable or wrong [because] *Martinez* ... does not provide a basis for relief under Rule 60(b)," and citing *Adams,* 679 F.3d 312), *cert. denied* 134 S.Ct. 687 (2013); *House,* 2013 U.S. Dist. LEXIS 19132 at *10 ("This court is persuaded by the Fifth Circuit's reasoning and joins other courts in holding that *Martinez* does not alone constitute an 'extraordinary circumstance' warranting relief under Rule 60(b) (6)."); *Johnson v. Vaughn,* 2013 U.S. Dist LEXIS 165171, *23 (E.D.Pa.2013) (stating, "this court as well as other district courts in the Third Circuit have relied on the Fifth Circuit's ruling in *Adams v. Thaler,* 679 F.3d 312 (5th Cir.2012), to find that *Martinez* does not constitute an extraordinary circumstance"); *Bender v. Wynder,* 2013 U.S. Dist. LEXIS 99221, *6–7 (W.D.Pa.2013) (agreeing with the Fifth Circuit's "finding that *Martinez* does not present extraordinary circumstances justifying reopening of habeas proceedings under Rule 60(b) "); *Vogt v. Coleman,* 2012 U.S. Dist. LEXIS 99767, *9–11 (W.D.Pa.2012) (agreeing with the Fifth Circuit that 'the *Martinez* decision is simply a change in decisional law and is not the kind of extraordinary circumstance that warrants relief under Rule 60(b) (6)' " and citing *Adams,* 679 F.3d at 320). However, on August 7, 2014, the Third Circuit Court of Appeals determined that " *Adams* does not square with our approach to Rule 60(b)(6)." *Cox v. Horn,* 2014 U.S.App. LEXIS 15207, *20 (3d Cir.2014), The *Cox* court explained that the "Fifth Circuit in *Adams* ended its analysis

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

after determining that *Martinez'*s change in the law was an insufficient basis for 60(b)(6) relief and did not consider ... any other factor ... or reasons for granting 60(b)(6) relief." *Id.* at *21–22. Rejecting this approach, *Cox* held:

> We have not taken that route. Instead, we have long employed a flexible, multifactor approach to Rule 60(b)(6) motions, including those built upon a post-judgment change in the law, that takes into account all the particulars of a movant's case. The fundamental point of 60(b) is that it provides 'a grand reservoir of equitable power to do justice in a particular case.' A movant, of course, bears the burden of establishing entitlement to such equitable relief, which, again, will be granted only under extraordinary circumstances. But a district court must consider the full measure of any properly presented facts and circumstances attendant to the movant's request.

**\*10** *Cox,* 2014 U.S.App. LEXIS 15207 at *22–23 (internal citations omitted). In remanding the matter for further consideration, the *Cox* court made several observations to aid in the District Court's review. *See id.* at *35 (concluding that the same decision may be reached on remand, but that a more comprehensive analysis was appropriate). First, it agreed that "*Martinez,* without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief." *Id.* at *29. The Court also cautioned that "the merits of a petitioner's underlying ineffective assistance of counsel claim can affect whether relief based on *Martinez* is warranted." *Id.* at *30–31 ("A court need not provide a remedy under 60(b)(6) for claims of dubious merit that only weakly establish ineffective assistance by trial or post-conviction counsel ."). Next, *Cox* stated that "courts must heed the Supreme Court's observation—whether descriptive or prescriptive—that Rule 60(b)(6) relief in the habeas context, especially based on a change in federal procedural law, will be rare." *Id.* at *33 (citing *Gonzalez,* 545 U.S. at 535–36 & n. 9). Additionally, "[c]onsiderations of repose and finality become stronger the longer a decision has been

settled;" therefore, "a district court reviewing a habeas petitioner's 60(b)(6) motion may consider whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago." *Id.* at *33–34 (noting that the petitioner's "direct appeal was decided in 1996 and his initial habeas petition, in which his claims were deemed defaulted, was dismissed in 2004, eight years before *Martinez* "). "A movant's diligence in pursuing review of his ineffective assistance claims is also an important factor." *Id.* at *34.

Accordingly, in deciding whether to grant the instant Rule 60(b) (6) motion, this Court will conduct an "equitable evaluation" that includes, *inter alia,* consideration of Petitioner's allegations of fraud.[FN9] *See Cox,* 2014 U.S.App. LEXIS 15207 at *28. Initially, it is noted that *"Martinez'*s change of law to the federal rules of procedural default," *see id.* at *29, does not apply in this case because the underlying ineffectiveness claims were considered on the merits in the habeas proceedings. *See* (Doc. 37). The concern that the "fundamental constitutional claims receive review by at least one court," has therefore been satisfied. *See Cox,* 2014 U.S.App. LEXIS 15207 at *28. Significantly, these claims were found to be without merit. (Doc. 37). Another factor for consideration is that the habeas corpus petition, which challenged Petitioner's state court conviction from 1975, was denied in 1987, more than twenty-five (25) years before the instant motion was filed. Principles of finality and comity weigh against disturbing those judgments. *See Cox,* 2014 U.S.App. LEXIS 15207 at *33. Also, this is Petitioner's second Rule 60(b) motion raising many of the same fraud allegations. The first motion was denied in 2006, more than seven (7) years before his second motion to reopen was brought. The most significant change in that time was the Supreme Court's decision in *Martinez,* which does not apply here and "without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief." *Cox,* 2014 U.S.App. LEXIS 15207 at *29. Also relevant in the instant analysis is the fact that the Third Circuit Court of Appeals not only denied a certificate of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

appealability from the 2006 dismissal order, but it also denied Petitioner's separate application for permission to file a second or successive section 2254 petition. *See Box,* App. No. 06–1353; *In Re: Earl Eugene Box,* App. No. 06–1554. After considering the equitable factors of this case,[FN10] in addition to *Martinez,* as instructed by the Third Circuit Court of Appeals in *Cox,* it is determined that Petitioner has failed to satisfy his burden of proving extraordinary circumstances to justify granting relief. The motion to reopen pursuant to Rule 60(b)(6) will be denied.

> FN9. A more detailed discussion of each allegation is given below.

> FN10. In light of *Cox,* it is unnecessary to address Petitioner's argument that "the categorical denial of Rule 60(b) relief on the basis of *Martinez* has clearly been called into question by both the United States Supreme Court and the Third Circuit" in light of the decision to remand the case of *Richardson v. Piazza,* No. 2:07–cv–2065 (E.D.Pa. Jan. 20, 2010), to the District Court for consideration of whether PCRA counsel's ineffectiveness constitutes cause to excuse the procedural default. *See* (Doc. 98, pp. 9–10).

**\*11** Moreover, as mentioned above, Petitioner's reliance on *Martinez* is misplaced because his habeas corpus petition was dismissed on the merits, not on procedural default grounds. *See Silfies,* 2013 U.S. Dist. LEXIS 84503 (concluding that because the federal habeas petition was denied on the merits, *Martinez* is inapplicable);[FN11] *House,* 2013 U.S. Dist. LEXIS 19132 at \*10–11 (holding that even if *Martinez* constituted an "extraordinary circumstance" warranting relief, it would be unavailing because the only claim found to be procedurally defaulted was not a challenge to the effectiveness of PCRA counsel in failing to raise an issue of trial counsel's ineffectiveness). Regardless of whether PCRA counsel abandoned viable claims and was ineffective in this regard, *see* (Doc. 98, pp. 6–7), be-

cause such issues were not raised in the habeas corpus petition, *Martinez* does not offer relief. *See Johnson,* 2013 U.S. Dist. LEXIS 106923 at \*4–5; *Boyd v. Rozum,* 2012 U.S. Dist. LEXIS 118242, \*4–5 (W.D.Pa.2012) (finding that *Martinez* "would not be an appropriate manner by which to overcome the procedural default" of PCRA counsel because the petitioner did not raise claims of trial counsel's ineffectiveness in his habeas petition, and denying relief under Rule 60(b)). Neither *Trevino* nor *Martinez* offer the relief Petitioner seeks. *See Garcia v. Varner,* 2014 U.S. Dist. LEXIS 83341, \*8 (E.D.Pa.2014) (stating that "*Trevino v. Thaler,* and the other cases Garcia discuss concerning procedural default, including *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) and *Martinez v. Ryan,* 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), have no application here" because the dismissal of his " § 2254 petition was not based, to any extent, on procedural default grounds").

> FN11. Petitioner attempts to distinguish *Silfies* and *Vogt* based on his allegations of fraud. *See* (Doc. 98, p. 9). To the extent these cases can be distinguished because they followed the Fifth Circuit's approach to *Martinez,* this issue has been addressed in the discussion of *Cox* above. But, as seen in the case at hand, these courts also concluded that *Martinez* was inapplicable because the underlying habeas petitions were not denied on procedural default grounds. *See Silfies,* 2013 U.S. Dist. LEXIS 84503 at \*8 (concluding that the only habeas claim raising ineffective assistance of trial counsel was considered and rejected on its merits, such that "[t]here was no procedural default that prevented a resolution of his claim on the merits such that *Martinez* would even be applicable"); *Vogt,* 2012 U.S. Dist. LEXIS 99767 at \*10 (stating that nothing in *Martinez* is applicable to the petitioner's situation because "consideration of Petitioner's habeas petition was limited to the threshold issue of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)

**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

timeliness").

As to Petitioner's claim that " *Martinez* side-stepped the issue of whether there is a freestanding constitutional right to effective assistance of counsel in 'initial-review collateral proceedings,' " the United States Supreme Court has already ruled on this issue and determined that there is not. *See Coleman v. Thompson,* 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (internal citations omitted); *Moore v. Diguglielmo,* 489 Fed. Appx. 618, 627 (3d Cir.2012) (stating that the *Martinez* "Court left standing ... its long-established principle that there is no right to counsel in post-conviction collateral proceedings"). To the extent *Martinez* created an exception to *Coleman,* that exception is "narrow" and has no application here as Petitioner's habeas claims were not dismissed as procedurally defaulted. *Martinez,* 132 S.Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."). Furthermore, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254 ." 28 U.S.C. § 2254(i). *See also Martinez,* 132 S.Ct. at 1320 (explaining that "cause" for a procedural default "is not synonymous with 'a ground for relief"); *Paulino v. Balicki,* 2014 U.S. Dist. LEXIS 5692, *33–35 (D.N.J.2014) (explaining that "Section 2254 explicitly excludes from the scope of federal habeas relief a claim based upon ineffective assistance of PCR counsel", and that the petitioner's reliance on *Martinez* was misplaced because the rule adopted therein does not apply to the ineffectiveness of PCRA counsel).

**\*12** Furthermore, in light of the fact that the Third Circuit Court of Appeals denied Petitioner's request for a certificate of appealability from the Order denying habeas relief and from the Order finding his original Rule 60(b) motion untimely,

*see* (Docs .45); *Box,* App. No. 06–1353, and the fact that *Martinez* is not alone an "exceptional circumstance," this Court cannot grant relief on any claims that were, or could have been, raised at those times. *See United States v. Fiorelli,* 337 F.3d 282, 288 (3d Cir.2003); *Cooper,* 2008 U.S. Dist. LEXIS 6851 at *3–4 n. 1 (concluding that where the petitioner appealed the District Court's denial of his section 2255 motion and the Third Circuit denied his request for a certificate of appealability, it could not then grant the relief that the Court of Appeals declined to grant). The Third Circuit Court of Appeals "has held that, when reviewing a Rule 60(b) motion brought following an appeal, district courts are 'without jurisdiction to alter the mandate of this court on the basis of matters included or includable in [the party's] prior appeal." *Bernheim v. Jacobs,* 144 Fed. Appx. 218, 222 (3d Cir.2005) (citing *Standard Oil v. United States,* 429 U.S. 17 (1976); *Seese v. Volkswagenwerk, A.G.,* 679 F.2d 336 (3d Cir.1982)); *see also Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988) (holding "that a Rule 60(b) motion may not be used as a substitute for appeal, and that legal error, without more, cannot justify granting a Rule 60(b) motion"). The courts "distinguish between a Rule 60(b) motion based on matters that were before the court on appeal, which may not be reviewed subsequently by the district court, and a Rule 60(b) motion based on matters that come to light when the appellate court has issued a decision, which properly may be reviewed by the district court." *Id.; see also United States v. Cooper,* 2008 U.S. Dist. LEXIS 6851, *3–4 n. 1 (W.D.Pa.2008) (stating that a district "court cannot grant relief under Rule 60(b)(6) if the party could have reasonably sought the same relief by means of an appeal"). Further, a Rule 60(b) motion may not be used as a "second bite at the apple." *See Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir.1995). It "is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Walsh v. Krantz,* 2009 U.S. Dist. LEXIS 21525, *2 n. 1 (M.D.Pa.2009) (Conner, J.) (quoting *Abu–Jamal v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 21

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

*Horn,* 2001 U.S. Dist. LEXIS 20813, \*35 (E.D.Pa.2001)).

In sum, Rule 60(b) offers no relief. The motion to reopen pursuant to Rule 60(b) will therefore be denied.

**B. Fraud Allegations** [FN12] **and Rule 60(d)(3)**

> FN12. These claims will each be addressed; however, the next section of this Memorandum discusses whether the issues are more properly raised under 28 U.S.C. § 2254 and are successive.

Petitioner states that he does not rely solely on *Martinez* and Rule 60(b) for relief; rather, he asserts that his motion to alter judgment may also be granted pursuant to Rule 60(d)(3) for fraud on the court. (Doc. 80, p. 22) (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238 (1944)). Because there is no time limit on motions brought pursuant to Rule 60(d)(3), each allegation of fraud will be considered.

**\*13** Petitioner makes a number of allegations of fraud on the trial court and on the PCRA court, *see* (Doc. 80, pp. 24–36, [FN13] 41–46); however, such allegations are not cognizable under Rule 60(d)(3). *See Reardon v. Leason,* 465 Fed. Appx. 208, 210 (3d Cir.2012) (holding that the petitioner could not use Rule 60(d)(3) to allege fraud upon the state court in the underlying criminal proceeding). These claims may not be raised under subsection (b) either; rather, allegations that the trial was polluted by fraud must be raised under 28 U.S.C. § 2254. *See United States v. Bush,* 457 Fed. Appx. 94, 96 (3d Cir.2012) (finding that the Rule 60(b)(6) "motion is a clear attack on [Bush's] original conviction, as he alleges that his trial was polluted by fraud and conspiracy. He must therefore proceed under § 2255, which—at this stage—would require that permission to do so be granted by this Court."). His allegations of PCRA counsel's ineffectiveness for failing to raise such issues, *see* (Doc. 80, pp. 31–34, 38–39, 43, 45–48), are also not properly before this Court. [FN14] *See* 28 U.S.C. § 2254(i).

> FN13. Curiously, Petitioner alleges that he did not have access to the Brown trial transcript until May of 2007, which he claims "demonstrates the fraudulent intent of the prosecutor in procuring such gravely disparate stories for use in these various trials." (Doc. 80, pp. 29–30). However, in the Rule 60(b) motion filed in 2006, Petitioner refers to "pages 130–151 of Jerome Brown's trial transcript." (Doc. 52, p. 6).

> FN14. To the extent such claims might establish cause to excuse any procedural default, this issue was addressed above.

As to Petitioner's argument that fraudulent testimony regarding discovery of the guns infected the habeas proceedings, *see* (Doc. 80, pp. 34–36); (Doc. 98, p. 13), the allegations of fraud do not rise to the level of egregious conduct contemplated by Rule 60(d) (3). *See Pelullo,* 2011 U.S. Dist. LEXIS 80154 at \*51 ("Thus fraud on the court must involve truly egregious conduct, such as bribing a judge, tampering with a jury, hiring an attorney for the purpose of influencing a judge."), *citing Herring,* 424 F.3d at 386). Petitioner's claim that Respondent failed to directly answer, or deceptively answered, his allegations regarding the testimony of Detective Macon and Detective Ulrich, or to admit that a Commonwealth witness allegedly established his residency at the Penn Photo Apartment is the type of fraud covered by Rule 60(b)(3), not subsection (d). *See Gagliardi,* 2011 U.S. Dist. LEXIS 16943 at \*6–7 ("[T]he type of fraud covered by Rule 60(b)(3) ... includes misrepresentations or misconduct by opposing parties or counsel in a case.").

Next, Petitioner claims that Respondents failed to address his habeas allegations regarding tampering with the trial transcript surrounding inculpatory, racist statements. *See* (Doc. 80, pp. 39–40), *citing* (Doc. 1, ¶ 12(D), (K); (Doc. 22). However, he did not allege in his habeas petition that the transcript

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

was altered; rather, he complained that the witness's statement was prejudicial and irrelevant, and that trial counsel was ineffective for failing to object to the prosecutor's allegedly inflammatory remark during closing. *See* (Doc. 1, ¶ 12(D), (K)). Accordingly, Respondents could not "side-step" a claim that was not presented, a Rule 60(b) motion is inappropriate, and there was no fraud upon this Court. *See Gillespie v. Janey,* 527 Fed. Appx. 120, 122 (3d Cir.2013) (discussing "the demanding standard of proof required to demonstrate fraud upon the court"); *Bhatnagar,* 52 F.3d at 1231 (stating that Rule 60(b) may not be used to get a "second bite at the apple").

**\*14** The motion to reopen complains that trial counsel fraudulently represented to the trial court that he had subpoenaed Leroy Smith, an alleged co-conspirator who had been acquitted of the charges, that Petitioner alleged in his original habeas petition that PCRA counsel was ineffective in not identifying this issue for collateral review, and that this Court overlooked the issue by focusing on other witnesses Petitioner also wanted to have testify. *See* (Doc. 80, pp. 41–44); (Doc. 98, p. 14). Despite Petitioner's contention that he raised this issue in the habeas corpus petition, review of that document reveals that he did not. *See* (Doc. 1). Furthermore, the motion to reopen states that Petitioner did not discover that no subpoena had been issued for Mr. Smith until sometime in 2002, more than fifteen (15) years after the habeas petition was filed. (Doc. 80, p. 43). To suggest that this Court overlooked an issue that was not raised in the habeas corpus petition, or known at the time of the initial habeas proceedings, is frivolous. To the extent that the information obtained in 2002 may have constituted after-discovered fraud, it is again noted that Rule 60(d)(3) may not be used to allege fraud upon the state trial court. *See Bush,* 457 Fed. Appx. at 96; *Reardon,* 465 Fed. Appx. at 210. Further, Petitioner waited more than three (3) years to raise the issue in a Rule 60(b) motion, which was not a reasonable time. *See Wyatt v. Diguglielmo,* 2008 U.S. Dist. LEXIS 55076, \*14 (E.D.Pa.2008) (dismissing the

Rule 60(b)(6) motion as untimely when filed "almost two years after he obtained the allegedly newly discovered evidence").

Petitioner also argues that in seeking habeas relief, he alleged counsel's ineffectiveness for failing to challenge the arrest warrant, and that Respondents concealed the deficient warrant by failing to provide the Court with a copy and by not specifically answering his claim. (Doc. 80, pp. 46–48); (Doc. 98, p. 15). He asserts that this Court's finding that the warrant was sufficient is problematic as it was based on the incredible testimony of Detective Macon. (*Id.*). Petitioner claims that he recently obtained a copy of the arrest warrant, but that it "is a sham" because it refers to scars on Petitioner's face that he received while incarcerated. (*Id.* at p. 47). He argues that the fraud perpetrated by Detective Macon's testimony is sufficient to grant relief under Rule 60(b). (*Id.* at pp. 47–48).

Whether viewed under Rule 60(b) or Rule 60(d), these claims are unpersuasive. Considering them first under Rule 60(b), it is determined that the allegations regarding Detective Macon's testimony were raised in the first Rule 60(b) motion, *see* (Doc. 52, pp. 7–8), and will be dismissed for the reasons previously given. To the extent Petitioner relies on a "newly discovered" copy of the arrest warrant which he claims "is a sham," the Rule 60(b) motion will be dismissed as a successive habeas petition, as will be discussed in greater detail below. *See Gonzalez,* 545 U.S. at 532. After evaluation of the claim under Rule 60(d), it is concluded that Petitioner has failed to meet his burden of proof. *See Herring,* 424 F.3d at 390 (requiring, *inter alia,* that the "intentional fraud" "in fact deceives the court"). Significantly, the decision denying habeas relief was not based on the allegedly fraudulent warrant because it was not provided to the Court, nor was the decision entirely dependent on the testimony of Detective Macon. *See id.* Rather, the Memorandum and Order denying the habeas corpus petition stated that "even if there were no probable cause to support the arrest war-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

rant, petitioner has failed to claim, and this court is unable to find, any prejudice resulting from the arrest itself. For example, petitioner does not claim that a confession or some other incriminating evidence was obtained while he was under arrest." (Doc. 37, p. 14 n. 3). Although Petitioner, in his reply brief, now alleges that he was prejudiced by the invalid arrest warrant because it was used by the police to approach Mr. Kleinfelter and obtain access to Nellie Dixon's apartment, *see* (Doc. 98, p. 15 n. 4), even assuming *arguendo* that the warrant was invalid and that it tainted the search of Ms. Dixon's apartment, Petitioner had no standing to challenge the allegedly unconstitutional search. *See* (Doc. 37, pp. 8–12). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois,* 439 U.S. 128, 134 (1978). *See also United States v. Livingston,* 2010 U.S. Dist. LEXIS 42399, *28 (M.D.Pa.2010) (Conner, J.) (finding that even if the defendant's mother did not consent to the seizure of a laptop, the defendant did not have a reasonable expectation of privacy in his mother's home and he could not complain about the acquisition of property therefrom). Therefore, Petitioner was not prejudiced by the use of the allegedly invalid warrant. Furthermore, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews,* 445 U.S. 463, 474 (1980) (holding, "Respondent is not himself a suppressible 'fruit' "). A "conviction may not be overturned simply because the defendant was illegally arrested." *United States v. Riggins,* 319 Fed. Appx. 180, 182 (3d Cir.2009). Contrary to his contention, Petitioner has not demonstrated prejudice, or that an " 'extreme' and 'unexpected' hardship will result" if his motion to reopen is not granted. *See Jackson,* 656 F.3d at 165–66.

### C. Successive Habeas Petition

**\*15** Petitioner argues that his Rule 60(b) motion should not be construed as a second or success-

ive habeas petition because he has "alleged in addition to the advent of the *Martinez* opinion, a number of circumstances that clearly amount to a fraud on this Court, and therefore warrant reopening of the judgment so that proceeding untainted by the fraud may be completed." (Doc. 80, pp. 48–50).

"When a motion is filed in a habeas case under a Rule 60(b) or 60(d) label, the district court must initially determine whether the motion is actually a 'second or successive' habeas petition within the meaning of § 2244(b)." *Davenport v. Brooks,* 2014 U.S. Dist. LEXIS 51047, *10–11 (E.D.Pa.2014), *citing Gonzalez v. Crosby,* 545 U.S. 524, 530 (U.S.2005); *Benchoff v. Colleran,* 404 F.3d 812, 817 (3d Cir.2005). "The *Martinez* decision did not alter the applicable rules regarding second or successive habeas applications and, more importantly, determining if *Martinez* triggers the § 2244(b)(2)(A) 'new rule of constitutional law' exception to the second or successive bar is an issue for the Third Circuit Court of Appeals, not this Court." *Gibbs v. Delaware,* 2014 U.S. Dist. LEXIS 46329, *3 (D.Del.2014) (determining that to "the extent Petitioner's citation to *Martinez v. Ryan,* 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) should be liberally construed as his attempt to avoid the second or successive bar, it is unavailing").

As explained herein, the majority of Petitioner's fraud allegations, which he combines with arguments regarding the ineffectiveness of trial and PCRA counsel, relate to alleged frauds perpetrated on the state courts. Such claims seek to challenge the underlying criminal proceedings and not this Court's decision denying habeas relief. In this regard, the motion to reopen is properly construed as a second or successive habeas petition. *See Hardaway v. United States,* 2013 U.S. Dist. LEXIS 15405, *5–6 (M.D.Pa.2013) (Caputo, J.) (holding that although the motion was styled as one pursuant to Rule 60(d)(3), because the petitioner claimed that the "prosecutor in his criminal case committed a fraud on the court by withholding and overstating evidence against him, ... he is required to pursue

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

such relief through a petition filed pursuant to 28 U.S.C. § 2255"); *Mabry v. United States,* 2012 U.S. Dist. LEXIS 123509, *3–4 (M.D.Pa.2012) (Kane, J.) (Because the Rule 60 motion "does not challenge the procedures surrounding the disposition of Petitioner's original habeas petition—but, rather, challenges the circumstances underlying Petitioner's conviction—the motion is a successive Section 2255 petition that this Court lacks jurisdiction to consider. Petitioner, therefore, must seek permission from the Third Circuit to file the motion.") (internal citations omitted).

To the extent the instant motion attempts to raise new allegations of ineffectiveness decades after habeas relief was denied, the motion again must be construed as a successive section 2254 petition and cannot be considered by this Court.FN15 *See Johnson v. Phelps,* 2013 U.S. Dist. LEXIS 106923, *4–5 (D.Del.2013) (concluding that the petitioner's Rule 60(b) motion, which "contends that the court should reopen his case pursuant to *Martinez* [ ] to enable him to present ineffective assistance of counsel arguments that he did not raise in his § 2254 petition", was a second or successive § 2254 petition filed without permission from the Third Circuit Court of Appeals and had to be dismissed). The rules on successive petitions also prohibit consideration of new claims or new evidence, such as the alleged "sham" arrest warrant, to support the Rule 60 motion. *See Gonzalez,* 545 U.S. at 532 (explaining that whether the Rule 60(b) motion presents a new claim for relief or new evidence in support of a claim already litigated, "use of Rule 60(b) would impermissibly circumvent the requirement that a successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar") (citing 28 U.S.C. § 2244(b)(3)).

> FN15. Because this Court is without jurisdiction to consider these claims, Respondents' argument that they lack merit will not be addressed. *See* (Doc. 94, p. 11).

**\*16** Petitioner asserts that "it must be re-

membered that [his] first habeas petition was litigated and concluded prior to the United States Supreme Court even deciding *Coleman v. Thompson,* 501 U.S. 722 (1991)." (Doc. 98. p. 8) (citing *In re Minarik,* 166 F.3d 591). In the case he cites, the Third Circuit Court of Appeals stated:

> We hold that anyone seeking to file a second or successive petition under 18 U.S.C. § 2254 after April 24, 1996, must move in the appropriate Court of Appeals for an order authorizing the District Court to consider the application. When such a motion is filed by a petitioner whose previous petition was filed before that date, the Court of Appeals must apply the substantive gatekeeping standards of 28 U.S.C. § 2244(b) as amended by AEDPA unless such application would bar a second or successive petition that could have been considered by the District Court under the law existing at the time the previous petition was filed.

*In re Minarik,* 166 F.3d at 609. Accordingly, it is for the Court of Appeals, not the District Court, to decide whether the AEDPA's stringent standards for successive habeas petitions should be applied. *Id.* Notably, the Third Circuit Court of Appeals previously denied Petitioner's request for a certificate of appealability in 2006, years after the decision in *Coleman. See Box,* App. No. 06–1353. In the absence of permission from the Court of Appeals to file a successive petition, this Court is without jurisdiction to entertain any claims that must be raised under section 2254. *See Burton,* 549 U.S. at 152 (holding that where a second or successive habeas petition is filed without authorization from the court of appeals, the district court does not have jurisdiction to consider it); *Suber v. Kerestes,* 2012 U.S. Dist. LEXIS 128335, *2 (W.D.Pa.2012) (deciding that the "Motion filed pursuant to Rule 60(b) is really a second or successive Petition for Writ of Habeas Corpus and must be denied for lack of subject matter jurisdiction").

**D. *Rule 15***

Petitioner's argument that his claims, and any

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

amendments, should relate back to the original peti-
tion, *see* (Doc. 80, pp. 50–51); (Doc. 98, p. 10 n. 2),
is rejected. The Third Circuit Court of Appeals has
explained that:

> [u]nder Fed.R.Civ.P. 15(c), an amendment which,
> by way of additional facts, clarifies or amplifies a
> claim or theory in the petition may, in the District
> Court's discretion, relate back to the date of that
> petition if and only if the petition was timely
> filed and the proposed amendment does not seek
> to add a new claim or to insert a new theory into
> the case.

*United States v. Thomas,* 221 F.3d 430, 431 (3d
Cir.2000). As discussed herein, the Rule 60 fraud
allegations were previously dismissed as untimely
such that Rule 15 does not allow an amendment.
*See id.* ("... if and only if the petition was timely
filed ..."). As to Petitioner's reliance on the al-
legedly recently obtained "sham" arrest warrant,
this issue has been analyzed and denied on its mer-
its. To the extent he seeks to bring alternative the-
ories of ineffective assistance of counsel, such
amendments represent "new" claims. *See United
States v. Duffus,* 174 F.3d 333, 337 (3d Cir.1999)
(finding that "while Duffus asserted in his initial
motion that his attorney had been ineffective, the
particular claim with respect to failing to move to
suppress evidence was completely new. Thus, the
amendment could not be deemed timely under the
'relation back' provisions of Fed.R.Civ.P. 15(c)").
Consequently, Rule 15 cannot save his motion to
reopen from being untimely or from being con-
strued, in part, as a successive habeas petition.

### Certificate of Appealability

**\*17** To the extent Petitioner's motion is con-
strued as a successive petition for habeas corpus re-
lief pursuant to 28 U.S.C. § 2254, a certificate of
appealability will not be issued. Where a motion is
dismissed on procedural grounds, a certificate of
appealability "should issue when the prisoner
shows, at least, that jurists of reason would find it
debatable whether the petition states a valid claim
of the denial of a constitutional right and that jurists

of reason would find it debatable whether the dis-
trict court was correct in its procedural ruling."
*Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Here,
it is determined that jurists of reason would not find
it debatable that, to the extent the motion presents
claims for relief under section 2254, it is an unau-
thorized successive habeas petition. *See Johnson,*
2013 U.S. Dist. LEXIS 106923 (refusing to issue a
certificate of appealability after concluding that the
Rule 60(b) motion, which sought to bring new inef-
fectiveness claims under *Martinez,* was a second or
successive § 2254 petition); *Rainey,* 2009 U.S. Dist.
LEXIS 115777 at \*25–26 (refusing to issue a certi-
ficate of appealability to the extent the motion is
construed as a successive 2254 petition).

### Conclusion

The motion to reopen, filed more than twenty-
five (25) years after habeas relief was denied, is un-
timely. Rule 15 cannot save its untimeliness be-
cause most of the fraud allegations were also raised
in a 2006 Rule 60(b) motion, which was dismissed
as untimely. Although Petitioner attempts to bring
claims of fraud on the court under Rule 60(d),
which has no time limitation, his fraud allegations
do not rise to the level of egregiousness contem-
plated by subsection (d) and, instead, fall under
Rule 60(b). Regardless, the motion has been con-
sidered on its merits.

After an "equitable evaluation" that included,
*inter alia,* consideration of *Martinez* and Petition-
er's allegations of fraud, it has been determined that
he has failed to establish extraordinary circum-
stances warranting relief, Significantly, the United
States Supreme Court decision in *Martinez,* which
changed the federal rules of procedural default,
does not apply to this case because the habeas
claims were not dismissed on procedural default
grounds. Rather, each claim was considered, and
rejected, on its merits. This factor, along with
strong interests of repose and finality, weigh
against reopening the 1987 habeas proceedings,
which challenged a state court conviction from
1975. Additionally, the fraud claims, many of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 4093248 (M.D.Pa.)
**(Cite as: 2014 WL 4093248 (M.D.Pa.))**

which were raised in a previous Rule 60(b) motion, primarily focus on allegations of misconduct during the underlying state court proceedings and only tangentially reach the habeas corpus proceedings. The fact that the Third Circuit Court of Appeals denied a certificate of appealability from the dismissal of the first Rule 60(b) motion, and also denied Petitioner's application for permission to file a second or successive section 2254 petition, also weigh against granting relief in this case. The motion to reopen will therefore be denied. Notably, to the extent the motion attempts to raise new allegations of ineffective assistance of counsel or to present new claims or evidence, it is a successive section 2254 petition which this Court is without jurisdiction to entertain. Rule 15 does not allow Petitioner to avoid the rules against successive petitions.

**\*18** A separate Order will be issued.

### ORDER

**NOW,** THIS 18th DAY OF AUGUST, 2014, for the reasons set forth in the Memorandum issued this date, **IT IS HEREBY ORDERED THAT:**

1. Petitioner's motion to reopen judgment, (Docs.57, 59, 80), is **DENIED;**

2. Petitioner's motion for leave to proceed *in forma pauperis,* (Doc. 58), is **GRANTED;**

3. The Clerk of Court is directed to **CLOSE** this case;

4. Any appeal will be deemed frivolous, without probable cause, and not taken in good faith; and

5. To the extent Petitioner's motion is construed as a successive petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, there is no basis to issue a certificate of appealability.

M.D.Pa.,2014.
Box v. Petsock
Slip Copy, 2014 WL 4093248 (M.D.Pa.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 3

2002 WL 31500927
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

CAREFIRST OF MARYLAND, INC., d/b/
a Care First Blue Cross Blue Shield, Plaintiff,
v.
CARE FIRST TRANSPORTATION, INC.,
d/b/a Care First Transportation, a/k/
a Care First Transportation, Defendant.

No. Civ.A. 02–229(MPT).  |  Nov. 1, 2002.

**Attorneys and Law Firms**

Sheldon K. Rennie, Fox, Rothschild, O'Brien & Frankel, LLP, Wilmington, DE, for Plaintiff.

***MEMORANDUM OPINION***

THYNGE, Magistrate J.

**I. Introduction.**

**\*1**  Presently before the Court is Defendant's motion to dismiss for Plaintiff's failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the foregoing reasons stated below, Defendant's motion to dismiss is DENIED.

**II. Background.**

**A. Factual.**

Plaintiff is a Maryland corporation, with its principle place of business in Maryland, *D.I. 2 at 2,* and a licensee of Blue Cross Blue Shield Association, located in Chicago, Illinois. *D.I. 2 at 5 .* Plaintiff serves as the parent corporation to a number of health maintenance and preferred provider organizations. *D.I. 2 at 3.* It services more than 5.2 million members (including family members), who reside in various states. Plaintiff has been the registered title owner of a collective membership mark registration for the mark "CAREFIRST" since June 6, 1989, and title owner of trademark and service mark registrations for the "CAREFIRST" mark as of July 4, 1989. The mark has been used by plaintiff since 1977 through their predecessor companies, prepaid health care plans, also using the variations of "MEDICAREFIRST" and "LIBERTY CAREFIRST". *Id.*

Through contracted plans, plaintiff provides comprehensive medical services, products and care to its enrolled members. *D.I. 2 at 3.* The "CAREFIRST" mark and name is used to indicate comprehensive medical services rendered to or on behalf of their members and preferred provider organizations. *D.I. 2 at 4.* The mark is used to distinguish plaintiff from other health care service providers. It is used on membership cards, enrollment kits, membership packets and member newsletters. *Id.*

Plaintiff's membership predominantly resides in Maryland, Virginia, West Virginia, Pennsylvania, Delaware, New Jersey and the District of Columbia. *D.I. 2 at 4.* Other members live in states including Michigan, Florida, Kentucky and Kansas. These members travel throughout the United States and foreign countries. Each member receives a membership card entitling them to payment for emergency healthcare anywhere in the world and to non-emergency health care with prior notification and approval by the respective health care maintenance or preferred provider owned by plaintiff. Plaintiff's membership is honored by most health care facilities in the United States. *Id.*

Currently, plaintiff's organizations have agreements with more than 1,000 different companies under which they will provide to all enrolled employees medical services at a specified rate of coverage. *D.I. 2 at 4–5.* Several of these companies are located throughout the country. *D.I. 2 at 5.*

Defendant is a Delaware corporation organized on January 11, 2001, *D.I. 2 at 5,* with its principle place of business in Delaware *D.I. 2 at 2.* Defendant provides point to point transportation services in Delaware and Pennsylvania. *D.I. 2 at 2.* These services are promoted through defendant's "http// www.carefirsttransport.com" website/domain name and direct mailing. *Id.* The promotions are also provided in connection with medical appointments, dialysis, counseling and clinics to those who qualify for "Senior Citizens Affordable Taxi" (SCAT). [1] *D.I. 2 at 6*

**\*2**  Defendant does not sell and/or offer health care plans, enrollment kits, memberships, or preferred networks. *D.I. 11 at 2.* Defendant has applied for the trademark "CARE FIRST TRANSPORTATION ITS ALL ABOUT YOU" at the United States Patent and Trademark Office. *Id.*

**B. Procedural.**

On January 11, 2002, plaintiff sent defendant a letter requesting cease and desist of any and all use by defendant of the "CARE FIRST" mark. *D.I. 2 at 6.* Defendant did not respond and on March 27, 2002, plaintiff filed its complaint in this Court. *D.I. 9 at 1.* Defendant was served on April 2, 2002 but did not answer or otherwise respond to plaintiff's complaint. Plaintiff moved for entry of default on April 26, 2002, which was entered by the District Court Clerk on May 13, 2002. *Id.* Subsequently, plaintiff moved for default judgment pursuant to Fed.R.Civ.P. 55(b). *D.I. 9 at 1.*

In that motion, plaintiff requested the Court find in accordance with their complaint, that defendant committed: (1) trademark infringement of plaintiff's "CAREFIRST" trademark and service mark, and the "CAREFIRST" collective membership mark in violation of 15 U.S.C. § 1114; (2) common law trademark, service mark, collective membership mark and trade name infringement of the "CAREFIRST" mark and name; (3) unfair competition of the "CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(a) and (b); (4) common law unfair competition; and (5) dilution of the "CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(c). *D .I. 9 at 2.*

Upon a finding of these above claims, plaintiff then requests the Court to grant the following relief: (1) order that defendant and all persons in active concert or participation be permanently enjoined and restrained from further acts of trademark, service mark, collective membership mark and trade name infringement, dilution, and unfair competition of the "CAREFIRST" mark and name specifically from further use of said mark, trade name, or colorable variants thereof; (2) order that defendant's website/domain name be transferred to plaintiff; (3) order that defendant pay over all profits which were obtained as a result of defendant's willful appropriation, infringement, dilution and intentional acts of infringement and unfair competition; (5) award plaintiff reasonable attorney's fees and expenses incurred as a consequence of defendant's willful appropriation, infringement, dilution and intentional acts of unfair competition. *D.I. 9 at 2–3.*

On August 7, 2002, defendant filed a motion to dismiss by failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P 12(b)(6). *D.I. 11 at 1.* Plaintiff responded to defendant's motion on August 19, 2002, reiterating their previous arguments and requesting defendant's motion to dismiss be stricken because: (1) a corporation cannot defend itself *pro se;* (2) the motion is untimely; and (3) that the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1–2.*

## III. Discussion.

### A. Standard for 12(b)(6) motion to dismiss.

**\*3** To grant a 12(b)(6) motion to dismiss, a court must determine that the moving party is entitled to relief under the "reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint." *Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997).* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.*

It is well established that a complaint should be dismissed on the basis of failing to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson, 355 U.S. 41, 45 (1957).* However, this court does not have to accept every allegation as true. *Flanagan v. Shively, 783 F.Supp. 922, 927 (M.D.Pa.1992).* Nor should "[c]onclusory allegations of law, unsupported conclusions and unwarranted inferences ... be accepted as true." *Id. (citing Conley, 355 U.S. at 45–46).* Thus, although the plain statement required by Fed. R. Civ. P 8(a)(2) should be read in a light most favorable to the plaintiffs, the conclusory allegations unsupported by any factual assertions, made in plaintiffs' complaint cannot withstand a motion to dismiss.

Here, plaintiff does provide this Court with facts to support their claims against defendant. A "reasonable reading of the pleadings" in this matter shows that relief can be granted under the presented facts. Therefore, defendant is not entitled to dismiss plaintiff's motion pursuant to grant a Fed.R.Civ.P. 12(b)(6). The reasoning for this decision are set forth as follows.

### B. Plaintiff's arguments against dismissal of their claim.

As mentioned above, plaintiff provides three reasons why defendant's motion to dismiss should be denied: (1) that a corporation cannot defend itself *pro se;* (2) defendant's motion is untimely; and (3) the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1–2.* All of plaintiff's arguments are correct.

Defendant must be represented by counsel. A corporation may appear in federal court only by representation of a

licensed attorney. *Rowland v. California Men's Colony, 506 U.S. 194, 201–02 (1993); U.S. v. Cocivera 104 F.3d 566 (3rd Cir.1996).* Here, defendant's motion to dismiss was filed by its president, Denette Dawson, who is not a Delaware licensed attorney. Thus, because defendant is a corporation appearing before this Court without proper representation, defendant's motion to dismiss is denied on this ground.

Defendant also failed to timely respond to plaintiff's allegations. A motion to dismiss must also be filed within twenty (20) days after service and summons. *Fed.R.Civ.P. 12(a).* Here, plaintiff filed its complaint on March 27, 2002. Defendant's motion was not filed until July 23, 2002, nearly four months later. Therefore, due to defendant's untimeliness, the motion should also be denied on that basis.

**\*4** Lastly, defendant failed to accompany its motion to dismiss with proper briefing. According to the Local District Court Civil Rule 7.1.2., a motion to dismiss must be accompanied by supportive briefing unless a party advised the Court that because of the nature of the motion, the involved parties believe no briefing is required. Beyond the motion itself, there are no further pleadings or other evidence on the record in support of defendant's motion to dismiss. Due to defendant's failure to observe the rules of this Court, defendant's motion should be denied. More importantly, defendant in its motion has failed to provide any bases for its

position. In light of the absence of any factual or legal support for the motion, defendant's motion to dismiss is denied on that basis, as well.

### IV. Conclusion

For the foregoing reasons discussed above, this Court finds that "reasonable reading of the pleadings" show no doubt that plaintiff can be relieved under the facts presented. Consequently, defendant's motion to dismiss for failure to state a claim is DENIED. An Order consistent with this opinion will follow.

### *ORDER*

At Wilmington, this 1st day of November, 2002.

For the reasons set forth in the Memorandum Opinion dated November 1, 2002,

IT IS ORDERED that defendant's motion to dismiss for failure to state a claim is DENIED. 28 U.S.C. § 636 and Fed.R.Civ.P. 72 apply to any objections to the Memorandum Opinion and this Order.

---

Footnotes

1    In order to be eligible for SCAT, an individual must be "ambulatory handicapped" or over the age of 60. *D.I. 2 at 6.*

---

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 4

Not Reported in F.Supp.2d, 2003 WL 21383723 (D.Del.)
**(Cite as: 2003 WL 21383723 (D.Del.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Robert D. CUNNINGHAM Jr., Plaintiff,
v.
Richard W. RILEY, Secretary, U.S. Department of
Education, Defendant.

No. Civ.A. 99–460–SLR.
June 12, 2003.

Robert D. Cunningham, Dover, Delaware, Plaintiff,
pro se.

Colm F. Connolly, United States Attorney, Patricia
C. Hannigan, Assistant United States Attorney,
United States Attorney's Office, Wilmington,
Delaware, for Defendant.

MEMORANDUM OPINION
ROBINSON, Chief J.
I. INTRODUCTION
   *1 Plaintiff Robert D. Cunningham filed this
action on July 20, 1999 against defendant Richard
W. Riley, Secretary, U.S. Department of Education.
(D.I.1, 2) Plaintiff alleges defendant violated his
due process rights under the Fifth Amendment of
the Constitution by failing to investigate a com-
plaint filed with the United States Department of
Education's Office of Civil Rights ("OCR") against
the Delaware Division of Public Health ("DDPH").
The court has jurisdiction over plaintiff's claims
pursuant to 28 U.S.C. § 1331. Currently before the
court is plaintiff's motion for relief from judgment
pursuant to Rule 60 of the Federal Rules of Civil
Procedure. (D.I.43) For the following reasons,
plaintiff's motion is denied.

II. Background
   Plaintiff, Robert D. Cunningham, Jr., filed an
action with this court against DDPH in 1996, titled
*Cunningham v. Nazario, et al.,* claiming defendants

violated 42 U.S.C. § 1983 and § 504 of the Rehabil-
itation Act, 29 U.S.C. § 794.[FN1] (D.I. 41 at 2) The
claim was dismissed on the grounds that the statute
of limitations had expired, plaintiff lacked standing,
and plaintiff failed to state a claim. (Id.) The U.S.
Court of Appeals for the Third Circuit affirmed this
court's judgment and the Supreme Court denied
plaintiff's petition for a writ of certiorari. (Id.)

   FN1. The circumstances leading up to
   plaintiff's allegations against DDPH are
   complex, but for the purposes of plaintiff's
   current motion before the court, it is not
   necessary to describe the circumstances in
   any detail.

   After exhausting judicial avenues for relief,
plaintiff pursued an administrative complaint with
OCR. (D.I. 23 at 3) OCR informed plaintiff that it
did not have jurisdiction to consider his allegations.
(Id.) As a result, plaintiff filed suit against defend-
ant alleging OCR mishandled his complaint against
DDPH, thereby, violating plaintiff's Fifth Amend-
ment due process rights. (D.I.1) Defendant filed a
motion to dismiss arguing, *inter alia,* plaintiff
failed to state a claim upon which relief could be
granted. (D.I. 15; D.I. 16) After reviewing both
parties' briefs, this court granted defendant's motion
to dismiss. (D.I.24)

   In the memorandum opinion supporting the
grant of defendant's motion to dismiss, the court re-
lied on Hannah v. Larche, 363 U.S. 420 (1960) and
Jenkins v. McKeithen, 395 U.S. 411 (1969) to de-
termine plaintiff was not entitled to due process
rights in the context of the OCR investigation. (D.I.
23 at 8) The court held plaintiff was not entitled to
due process protections unless the agency at issue
went beyond performing an investigatory function,
to adjudicate issues which affect individual legal
rights. (Id.)

   OCR merely processed the complaint pursuant to
federal regulations, an investigative as opposed to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21383723 (D.Del.)
**(Cite as: 2003 WL 21383723 (D.Del.))**

an adjudicative function....In the absence of the exercise of adjudicatory power, i.e., when only the investigative powers of an agency are utilized, due process considerations do not attach.

(Id.)

Plaintiff appealed and the Third Circuit affirmed. (D.I.40) Plaintiff's appeal claimed the motion to dismiss was in conflict with the earlier decision in Nazario. (D.I. 41 at 4) Plaintiff argued this court contradicted itself because in *Nazario* the court determined Cunningham lacked standing, but in the current case the court noted plaintiff's rights were not affected because he was free to file suit against DDPH at any time. (Id.) The Third Circuit held the two decisions were not inconsistent because OCR's actions did not affect plaintiff's ability to sue DDPH, therefore, the two judgments were not mutually exclusive. (Id. at 5) Plaintiff petitioned to the Supreme Court for a writ of certiorari, but the petition was denied. (D.I. 44 at A–22)

### III. STANDARD OF REVIEW

**\*2** Rule 60(b) of the Federal Rules of Civil Procedure provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, or for reasons (1), (2), and (3)

not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Fed.R.Civ.P. 60(b). A motion filed pursuant to Rule 60(b) is " 'addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." ' Ross v. Meagan, 638 F.2d 646, 648 (3d Cir.1981) (quoting 7 James Wm. Moore et al., Moore's Federal Practice, ¶ 60.42, at 903 (2d ed.1979)).

Rule 60(b), however, "does not confer upon the district courts a 'standardless residual of discretionary power to set aside judgments .'' ' Moolenaar v. Government of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir.1987) (quoting Martinez–McBean v. Government of the Virgin Islands, 562 F.2d 908, 911 (3d Cir.1977)). Rather, relief under Rule 60(b) is available only where the " 'overriding interest in the finality and repose of judgments may properly be overcome." ' Harris v. Martin, 834 F.2d 361, 364 (3d Cir.1987) (quoting Martinez–McBean, 562 F.2d at 913); see Moolenaar, 822 F.2d at 1346. "The remedy provided by Rule 60(b) is 'extraordinary, and special circumstances must justify granting relief under it." ' Moolenaar, 822 F.2d at 1346 (quoting Page v. Schweiker, 786 F.2d 150, 158 (3d Cir.1986)). As explained by the Third Circuit, "Rule [60(b) ] must be applied '[s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be cast aside, [and] that clause (6) is not a substitute for appeal ...' It is intended to be a means for accomplishing justice in extraordinary situations; and so confined, does not violate the principle of the finality of judgments." Kock v. Government of the Virgin Islands, 811 F.2d 240, 246 (3d Cir.1987) (internal citations ommitted).

### IV. DISCUSSION

Plaintiff filed a motion for relief from judgment, pursuant to Federal Rules of Civil Procedure Rule 60. (D.I.43) The motion claimed plaintiff was entitled to relief from the final judgment because

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21383723 (D.Del.)
**(Cite as: 2003 WL 21383723 (D.Del.))**

the court erred by only considering plaintiff's procedural due process rights when granting defendant's motion to dismiss. (Id. at 1) Plaintiff argues that since he did not specify in his original complaint what rights under the Fifth Amendment's due process clause FN2 were violated by OCR, the court had an affirmative duty to evaluate his allegations under all three components of the Fifth Amendment, not just under procedural due process. (Id.) Plaintiff claims that because this court only considered procedural due process, the court did not fulfill its obligations to fully evaluate all allegations against OCR before granting defendant's motion to dismiss, therefore, he is entitled to relief from judgment under Rule 60. (Id. at 2)

> FN2. Plaintiff claims the term "due process" in the original complaint should have been interpreted by the court to include rights under procedural due process, substantive due process and equal protection. (D.I. 43 at 1)

**\*3** Plaintiff argues he is entitled to relief from judgment under Rule 60(b), clauses (1) and (6), but that subsection (6) is more likely to provide him with relief. (D.I. 43 at 37) The analysis of plaintiff's motion under Rule 60(b)(1) and (b)(6) must be done independently because they are distinct. Rule 60(b)(1) requires the motion be made no more than one year after the judgment. Fed.R.Civ.P. 60(b). However, under Rule 60(b)(6) no time limit for filing the motion is imposed. Id. As a result, the Supreme Court has held that clauses (1) through (5) of Rule 60(b) are mutually exclusive from clause (6). Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988).

**A. Motion for Relief from Judgment under Rule 60(b)(1)**

Analyzing plaintiff's motion under Rule 60(b)(1), plaintiff has failed to show grounds upon which relief from judgment should be granted. It can be inferred from plaintiff's motion that he is seeking relief on the grounds that this court made a legal mistake by failing to evaluate his claims

against defendant under Fifth Amendment substantive due process and equal protection. However, a legal error made by the court is not properly brought under a Rule 60 motion. Although the circuit courts are split on whether relief from judgment can be granted under Rule 60(b)(1) when the court has made a legal error, See 12 James Wm. Moore et al., Moore's Federal Practice, ¶ 60.41, (3d ed.1999), the Third Circuit has maintained that "a legal error, without more cannot justify granting a Rule 60(b) motion." Smith v. Evans, 853 F.2d 155, 158 (3d Cir.1988).

Furthermore, Rule 60(b)(1) motions are not to be used by the moving party as a substitution for an appeal. Smith, 853 F.2d at 158. "The correction of legal errors committed by the district courts is the function of the Court of Appeals." Martinez–McBean v. Government of Virgin Islands, 562 F.2d 908, 912 (3d Cir.1977).

Since plaintiff's motion for relief from judgment under Rule 60(b)(1) is based solely on his claim that the district court committed a legal error by only analyzing his procedural due process rights in the OCR investigation, relief from judgment is denied. The allegation that this court had a duty to evaluate whether plaintiff had a claim against defendant based on Fifth Amendment substantive due process and equal protection grounds FN3 would have been properly brought by plaintiff on appeal to the Third Circuit, which he failed to do. As a result, plaintiff is not entitled to relief from judgment under Rule 60(b)(1).

> FN3. Whether plaintiff's suit against defendant would have withstood defendant's motion to dismiss had the court evaluated the claim under Fifth Amendment substantive due process and equal protection is irrelevant to the current motion.

**B. Motion for Relief from Judgment under Rule 60(b)(6)**

Plaintiff has also failed to provide a basis for his motion for relief from judgment under Rule

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21383723 (D.Del.)
**(Cite as: 2003 WL 21383723 (D.Del.))**

60(b)(6). As under Rule 60(b)(1), legal error, without more, does not justify relief under 60(b)(6). *Martinez–McBean,* 562 F.2d at 912. The precedent for motions under Rule 60(b)(6) based on a court's legal error points even more strongly towards denying plaintiff's motion. The Third Circuit in *Martinez–McBean* noted they were unaware of any authority that granted Rule 60(b)(6) relief for legal errors. *Id.* at 912. Consequently, as was the case under Rule 60(b)(1), plaintiff has failed to provide grounds upon which relief under Rule 60(b)(6) can be granted. The claim that plaintiff's suit should have been analyzed under Fifth Amendment substantive due process and equal protection, as well as procedural due process, should have been raised on appeal from this court's judgment, therefore, he is not entitled to relief from the judgment under Rule 60(b)(6).

## V. CONCLUSION

**\*4** For the reasons stated, plaintiff's motion for relief from judgment pursuant to Federal Rules of Civil Procedure Rule 60 is denied. An appropriate order shall issue.

### ORDER

At Wilmington this 12th day of June, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that plaintiff's motion for relief from judgment pursuant to Federal Rules of Civil Procedure Rule 60 (D.I.43) is denied.

D.Del.,2003.
Cunningham v. Riley
Not Reported in F.Supp.2d, 2003 WL 21383723 (D.Del.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 5

2006 WL 1726664
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

GALLANT BLAZER, INC., President James R.
Jobes, Terrance Gadson, Bracey Dixon, Fred
Cooper, Anel Collins, and Corey Ferrell, Plaintiffs,
v.
CITY OF WILMINGTON FIRE
DEPARTMENT, Defendant.

No. Civ. 05–479–SLR.   |   June 14, 2006.

**Attorneys and Law Firms**

Gallant Blazer Inc., pro se.

James R. Jobes, Wilmington, DE, pro se.

Terrance Gadson, Wilmington, DE, pro se.

Bracey C. Dixon, Jr., Wilmington, DE, pro se.

Fred Cooper, Parksburg, PA, pro se.

Anel Collins, Wilmington, DE, pro se.

Corey Ferrell, Wilmington, DE, pro se.

**MEMORANDUM ORDER**

ROBINSON, J.

*1  Plaintiffs, who proceed pro se, filed this discrimination lawsuit on July 11, 2005. (D.I.1) After plaintiffs failed to respond to a show cause order, on March 13, 2006, the court dismissed the case without prejudice for failure to timely serve process as required by Fed.R.Civ.P. 4. (D.I.3) Plaintiffs Bracey C. Dixon, Jr., Terrance Gadson, and Correy Ferrell move for reconsideration and seek a reopening of case so that they can move forward with the case. (D.I.4)

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A motion for reconsideration may be granted if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need

to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

It is a well settled principle that district courts, upon determining that process or service of process is insufficient, have broad discretion in dismissing a plaintiff's complaint. *Umbenhauer v. Woog,* 969 F.2d 25, 30 (3d Cir.1992). In determining whether to dismiss a complaint, or grant a plaintiff an extension of time to serve a defendant, the court utilizes a two step procedure. *McCurdy v. American Bd. Of Plastic Surgery,* 157 F.3d 191, 196 (3d Cir.1998). First to be determined is whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service. *Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3d Cir.1995).

Granting the motion for reconsideration is appropriate in this case. When the court dismissed the case for lack of service, the court was unaware that the majority of the plaintiffs had not received notice of the order to show cause why the case should not be dismissed for failure to timely serve. Nor was the court aware that plaintiffs Dixon, Gadson and Ferrell's addresses were not provided to the court with the original complaint. Indeed, the moving plaintiffs advise the court that they were never informed by the court or by the first named plaintiff, James R. Jobes, of orders entered by the court or the Rule 4 service requirements. Interestingly, the first named plaintiff, James R. Jobes, and another plaintiff, Anel Collins, recently filed a "request to be removed from this civil action" which the court construes as a motion to voluntarily dismiss pursuant to Fed.R.Civ.P. 41(a). (D.I.5)

Plaintiffs have demonstrated good cause for their failure to serve. The first named co-plaintiff, whose address was the only one originally provided to the court, failed to advise the remaining plaintiffs of the service requirements and/or court orders. Moreover, the moving plaintiffs had no notice of the service requirements or dismissal of the case. Once they discovered, inadvertently, that the case had been dismissed for failure to serve, the moving plaintiffs promptly moved the court to reopen the case and allow the case to proceed.

*2  As a housekeeping matter, the court notes that Gallant Blazer, Inc. is a named plaintiff and appears pro se. However, Gallant Blazer, Inc., as a corporation, is not permitted to

appear in that status. A corporation cannot appear pro se or by a representative of the corporation, and may only participate in litigation through licensed counsel. *Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 217, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *Simbraw, Inc. v. United States,* 367 F.2d 373 (3d Cir.1996).

Therefore, Gallant Blazer, Inc. is given thirty days from the date of this order to obtain counsel. Failure to obtain counsel will result in the dismissal of Gallant Blazer, Inc. as a plaintiff in this case.

IT IS THEREFORE ORDERED, at Wilmington this *14th* day of June, 2006, that:

1. The motion to reconsider (D.I.4) is GRANTED.

2. The clerk of the court is directed to reopen the case.

3. The motion to voluntarily dismiss (D.I.5) is GRANTED, the claims brought by James Jobes and Anel Collins are DISMISSED WITHOUT PREJUDICE, and they are dismissed as a party plaintiffs.

4. Gallant Blazer, Inc. is given THIRTY (30) days from the date of this order to obtain counsel. Failure to obtain counsel will result in the dismissal of Gallant Blazer, Inc. as a plaintiff in this case.

5. Plaintiffs shall effectuate proper service upon defendants in accordance with Federal Rule of Civil Procedure 4 within THIRTY (30) days from the date of this order.

Plaintiffs, who proceed pro se, are advised that future filing must be signed by all plaintiffs. Filings made on behalf of all plaintiffs, and that are not signed by all plaintiffs will be stricken by the court.

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 6

**Westlaw.**

Not Reported in F.Supp.2d, 2013 WL 5272366 (D.Del.)
**(Cite as: 2013 WL 5272366 (D.Del.))**

H

Only the Westlaw citation is currently available.

United States District Court, D. Delaware
Carl Hooten, Plaintiff,
v.
Greggo and Ferrara Company, Defendant.

Civ. No. 10–776–RGA
September 18, 2013

Carl Hooten, New Castle, DE, pro se.

Adria Benner Martinelli, Barry M. Willoughby,
Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE, for Defendant.

**MEMORANDUM ORDER**

RICHARD G. ANDREWS, UNITED STATES
DISTRICT JUDGE

**\*1** At Wilmington this 18th day of September,
2013, having considered Plaintiff's motions to set
aside the order, amend complaint and request to reopen EEOC's mishandling of investigation of
Plaintiff's discrimination claim against Defendant
(D.I.69, 71);

IT IS ORDERED that the motions (D.I.69, 71)
are DENIED, for the following reasons:

On October 3, 2012, the Court entered an order
(D.I.63) that granted Defendant's motion for summary judgment (D.I.49), and judgment (D.I.64) was
entered in favor of Defendant and against Plaintiff.
Plaintiff filed a motion for judgment as a matter of
law and to set aside the order (D.I.65), denied on
November 2, 2012 (D.I.67). The order stated, "if it
were considered to be a motion for reconsideration,
it would also be denied." (*Id.*) On August 14, 2013
and September 10, 2013, Plaintiff filed the motions
now before the court.

Rule 60(b) provides that a party may file a motion for relief from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable
neglect; (2) newly discovered evidence by which
due diligence could not have been discovered in
time to move for a new trial under Rule 59(b); (3)
fraud (whether heretofore denominated intrinsic
or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is
void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon
which it is based has been reversed or otherwise
vacated, or it is no longer equitable that the judgment should have prospective application; or (6)
any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). A motion filed pursuant to
Rule 60(b) is addressed to the sound discretion of
the trial court guided by accepted legal principles
applied in light of all relevant circumstances.
*Pierce Assoc. Inc., v. Nemours Found.,* 865 F.2d
530, 548 (3d Cir.1988).

Plaintiff does not indicate under which section
of Rule 60(b) he relies. To the extent Plaintiff relies
upon Rule 60(b)(1), the Third Circuit has not yet
decided whether legal error may be characterized as
"mistake" within the meaning of Rule 60(b)(1).
*Bernheim v. Jacobs,* 144 F. App'x 218, 221, 223
(3d Cir.2005). Nonetheless, legal error, without
more, cannot justify granting a Rule 60(b) motion.
*Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988)
(citations omitted). Accordingly, relief is not appropriate under Rule 60(b)(1).

Relief is also not appropriate under Rule
60(b)(6). Rule 60(b)(6) "is a catch-all provision that
allows relief for 'any other reason justifying relief
from the operation of the judgment.' " *United
States v. Witco Corp.,* 76 F.Supp.2d 519, 527
(D.Del.1999). The Third Circuit "has consistently
held that the Rule 60(b)(6) ground for relief from
judgment provides for extraordinary relief and may

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 5272366 (D.Del.)
**(Cite as: 2013 WL 5272366 (D.Del.))**

only be invoked upon a showing of exceptional cir-
cumstances." *Coltec Indus., Inc. v. Hobgood,* 280
F.3d 262, 273 (3d Cir.2002) (internal citations and
quotations omitted). Rule 60(b)(6) generally re-
quires the movant to make "a more compelling
showing of inequity or hardship" than would nor-
mally be required to reopen a case under any one of
the first five subsections of Rule 60(b). *Project Mg-
mt. Inst., Inc. v. Ireland,* 144 F. App'x 935, 937 n.1
(3d Cir.2005). The court thoroughly reviewed the
record and the law before granting Defendant's mo-
tion for summary judgment. Plaintiff fails to estab-
lish any basis for relief under Rule 60(b)(6). The
other subsections of Rule 60(b) are inapplicable.

**\*2** Therefore, the Court will deny Plaintiff's
motions. Plaintiff is place on notice that future mo-
tions pursuant to Fed.R.Civ.P. 60(b) or to reopen
the case will be docketed, but not considered.

D.Del., 2013
Hooten v. Greggo and Ferrara Company
Not Reported in F.Supp.2d, 2013 WL 5272366
(D.Del.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 7

Westlaw.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Jerry A. HURST, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE IN-
SURANCE COMPANY, et al., Defendants.

Civ. Action No. 10–1001–GMS.
Feb. 9, 2012.

Jerry A. Hurst, Arlington, VA, pro se.

Sherry Ruggerio Fallon, Tybout, Redfearn & Pell,
Daniel A. Griffith, Whiteford, Taylor & Preston,
L.L.C., Nicholas E. Skiles, Swartz Campbell LLC,
Colin M. Shalk, Casarino, Christman & Shalk,
P.A., Kevin J. Connors, Marshall, Dennehey,
Warner, Coleman & Goggin, Christian J. Singewald
, White & Williams, Wilmington, DE, Glenn Chris-
topher Mandalas, Baird Mandalas LLC, Dover, DE,
for Defendants.

***MEMORANDUM***
GREGORY M. SLEET, Chief Judge.
**I. INTRODUCTION**
**\*1** The plaintiff, Jerry A. Hurst ("Hurst"), who
proceeds *pro se*, filed this lawsuit on November 22,
2010, alleging violations of the Driver's Privacy
Protection Act ("DPPA"), 18 U.S.C. §§ 2121
through 2725, that in turn violated 42 U.S.C. §
1983 and Hurst's right to privacy under the Fourth
Amendment to the United States Constitution.
Hurst further alleges conspiracy, retaliation, fraud,
abuse of process, intentional infliction of emotional
distress, tortious interference with a contract, tor-
tious interference with business relations, inad-
equate hiring, training, supervision and discipline,
and breach of contract. He also alleges, generally,
constitutional claims and State law claims. (D.I.2.)

Before the court are motions to dismiss filed by

the defendants United National Insurance Company
("UNIC"), the City of Rehoboth Beach ("Rehoboth
Beach"), Harleysville Mutual Insurance Company
("HMIC"), Marty Harbin ("Harbin"), Colin Shalk
("Shalk"),[FN1] Kevin Connors ("Connors"), Keith
Banks ("Banks"), Walter Speakman ("Speakman"),
[FN2] Guy Harbert ("Harbert"), Maxwell Wiegard
("Wiegard"), and State Farm Mutual Automobile
Insurance Company ("State Farm").[FN3] (D.I.23,
26, 28, 29, 32, 43, 44, 51, 60, 61, 64.) Also before
the court are UNIC's motion for leave to file excess
pages of its memorandum of law, Hurst's motion to
strike the motions to dismiss, Hurst's request for de-
fault as to Banks, Hurst's motion to substitute a per-
sonal representative for Speakman, and Speakman's
motion to substitute a party. (D.I.25, 36, 38, 66,
70.) For the reasons that follow, the court will grant
the motions to dismiss and will direct the Clerk of
Court to close the case.

> FN1. Shalk is improperly named as "Collin
> Shalk." (*See* D.I. 31.)

> FN2. Speakman died on July 13, 2011, but
> service was not effected prior to his death.
> Service documents were given to the de-
> cedent's son on August 3, 2011, who ad-
> vised the server of his father's death.
> (D.I.57.) Pending are two motions to sub-
> stitute a party representative for the de-
> cedent. (D.I.66, 70.) Because the court will
> grant the motions to dismiss, and finds that
> amendment would be futile, the motions to
> substitute a party representative for Speak-
> man will be denied as moot.

> FN3. Hurst proceeds *pro se* and has been
> granted leave to proceed *in forma pauper-
> is,* and, therefore, certain defendants have
> requested that the court screen the com-
> plaint pursuant to 28 U.S.C. § 1915. The
> complaint was screened at the time the ser-
> vice order was entered. (*See* D.I. 5.) Hurst
> contends, incorrectly, that, because the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

case was screened, the complaint survived dismissal, the service order is the law of the case, and the motions to dismiss must be denied. The defendants, however, have raised issues in the motions to dismiss that were not apparent from the face of the complaint at the time the court conducted its initial screening.

## II. BACKGROUND

This action stems from State Farm's denial of an insurance claim made by Hurst for the April 3, 2001 theft of his customized van. The court takes judicial notice that Hurst has filed four other lawsuits regarding the theft of the van, as follows:

1. ***Hurst v. State Farm Mut. Auto. Ins. Co.,*** Civ. No. 04–1350–TSE–BRP (E.D.Va.), a RICO action against State Farm, Harbin, David L. Jones ("Jones"), Marshall Major ("Major"), and John D. McGavin ("McGavin"), dismissed on November 15, 2004. Hurst did not appeal the dismissal.

2. ***Hurst v. State Farm Mut. Auto. Ins. Co.,*** Civ. No. 05–1279–GBL–TRJ (E.D.Va.), filed November 7, 2005, alleging that State Farm breached the terms of an automobile insurance policy when it denied Hurst's claim for the 2001 theft of his van. Hurst attached as an exhibit to the complaint a non-redacted Affidavit of Vehicle Theft ("the Affidavit"). The complaint also alleged fraud, conspiracy, and intentional infliction of emotional distress. The matter was transferred from the Eastern District of Virginia to the Western District of Virginia on December 21, 2005, *Hurst v. State Farm Mut. Auto. Ins.,* Civ. No. 05–776–GEC (W.D.Va.), and summary judgment was granted in favor of State Farm, affirmed on appeal, on April 29, 2009.

**\*2** 3. ***Hurst v. State Farm Mut. Auto. Ins. Co.,*** Civ. No. 08–2907–WMN (D.Md.), a RICO action against State Farm, Harbin, Jones, Major, and McGavin, dismissed on November 19, 2008, as barred by res judicata, affirmed on appeal on April 29, 2009.

4. ***Hurst v. City of Salisbury,*** Civ. No. 10–2516–WDG, alleging violations under the federal criminal code, as well as breach of contract, tortious breach of contract, bad faith and intentional infliction of emotional distress, against the City of Salisbury, Chief Webster, Captain Wiley, Officer Smullen, State Farm, Major, Harbin, McGavin, Wiegard, and Harbert, dismissed as barred by res judicata and, in the alternative, as time-barred, affirmed on appeal, on May 31, 2011.

The instant complaint contains fifteen counts: (1) Count I alleges violations of the DPPA; (2) Count II alleges violations of 42 U.S.C. § 1983 by reason of the DPPA violations; (3) Count III alleges violations of privacy rights under the Fourth Amendment of the United States Constitution by reason of the DPPA violations; (4) Count IV alleges constitutional violations of the right to privacy by publicizing private facts and by false light; (5) Count V alleges conspiracy; (6) Count VI alleges retaliation; (7) Count VII alleges fraud, fraudulent concealment, and fraud on the court; (8) Count VIII alleges abuse of process; (9) Count IX alleges intentional infliction of emotional distress; (10) Count X alleges tortious interference with contractual relations; (11) Count XI alleges tortious interference with business relations; (12) Count XII alleges inadequate hiring, training, supervision, and discipline; (13) Count XIII alleges breach of the covenant of good faith and fair dealing and privacy policy; (14) Count XIV alleges constitutional claims; and (15) Count VX alleges State law claims. Hurst seeks statutory, compensatory, and punitive damages, as well as injunctive and declaratory relief.

UNIC and HMIC, as insurers, provided a defense for Rehoboth Beach in lawsuits Hurst filed against it. Attorney Shalk was retained to represent Rehoboth Beach and Speakman, the city solicitor for Rehoboth Beach. Connors was retained to represent Banks, chief of police for Rehoboth. Attorneys Wiegard and Harbert were retained to represent State Farm in lawsuits Hurst filed against it.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)

**(Cite as: 2012 WL 426018 (D.Del.))**

Harbin is a State Farm representative. (D.I.2, ¶¶ 15, 19.)

The instant complaint alleges that Hurst received a November 24, 2008 letter from State Farm, "confessing" that State Farm, through its outside agents and legal counsel, disclosed Hurst's "personal information," including Hurst's social security number, driver identification number, address, and other information that identifies an individual, in violation of the DPPA. The complaint alleges that it was not until Hurst received the November 24, 2008 letter that he became aware of the disclosure. The November 24, 2008 letter is not attached to the complaint. (D.I.2, ¶¶ 1, 10, 11.)

**\*3** The complaint alleges that, at an earlier time, the information was sent by Harbert, who along with Wiegard, was counsel for State Farm, to Shalk who was retained to defend Rehoboth Beach and Speakman in *Hurst v. City of Dover,* Civ. No. 04–083–GMS (D.Del.) ("the *Dover* case") FN4 and in *Hurst v. City of Rehoboth Beach,* Civ. No. 03–362–SLR (D.Del.) ("the *Rehoboth Beach* case"). FN5 The court takes judicial notice that the Affidavit, the document in question, is on a State Farm form and had been attached as an exhibit to a complaint Hurst filed on November 7, 2005, in the United States District Court for the Eastern District of Virginia against State Farm in Civ. No. 05–1279–GBL–TRJ (E.D.Va.). It contains Hurst's personal information. The court takes further judicial notice that Shalk filed the Affidavit in the *Rehoboth Beach* case on November 29, 2006 (*Rehoboth Beach,* Civ. No. 03–362–SLR, D.I. 182, ex. B) and in the *Dover* case on November 12, 2008, ( *Dover,* Civ. No. 04–083–GMS at D.I. 136, ex. 9B.) Hurst alleges that State Farm approved the "DPPA violations" as a bad faith settlement tool to coerce him to settle his insurance claim. (D.I. 2, at ¶¶ 3, 8.) He further alleges that the use of the information in the Affidavit is ongoing and its continued use violates the DPPA daily. (*Id.* at ¶ 11.)

FN4. On September 18, 2009, summary judgment was granted in favor of the de-

fendants and against Hurst. (*See* Civ. No. 04–083–GMS, D.I. 163.) Hurst filed an untimely notice of appeal, and the appeal was dismissed for lack of appellate jurisdiction on August 18, 2011. (*Id.* at D.I. 172.)

FN5. Most of the claims and parties had been dismissed by the court when it dismissed the case, on December 6, 2006, pursuant to *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863 (3d Cir.1984), affirmed on appeal on July 30, 2008. (*See* Civ. No. 03–362–SLR, D.I. 186, 218.)

In addition, the complaint alleges: (1) that each attorney, in representing his or her client, acted as an agent of the insurers or the insured; (2) that all actions taken were in accordance with, and implemented, the policies, customs and practices of the insurers and employers that have been in place since 2001; (3) that State Farm, and its agents and counsel, violated State Farm's contractual duty of good faith and fair dealing to protect Hurst's personal information; (4) that State Farm used its performance, planning, and review program for the purpose of retaliating against Hurst for his unwillingness to accept an inadequate settlement; (5) a conspiracy between State Farm and Shalk, as well as among all defendants for violations of the DPPA and federal statutes of obstruction of justice, wire fraud, mail fraud and related federal and state laws; and (6) that all defendants conspired against Hurst, not only to settle with State Farm in ongoing Virginia litigation, but also to intimidate, coerce, prevent and dissuade him from continuing in the *Dover* case. FN6 (D.I. 2 at ¶¶ 10, 12, 13, 14, 17, 23, 24.)

FN6. Hurst filed the instant complaint on November 22, 2010, well after April 29, 2009, when the appellate court affirmed the dismissal of the Virginia litigation.

All defendants move for dismissal under numerous theories pursuant to Fed.R.Civ.P. 12(b)(6). Hurst opposes the motions to dismiss and moves to strike the motions pursuant to Fed.R.Civ.P. 12(f).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 229 (3d Cir.2008); *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Because Hurst proceeds *pro se,* his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." [FN7] *Erickson v. Pardus,* 551 U.S. at 94 (citations omitted).

> FN7. Hurst is not unskilled in the law. At one time he was a licensed attorney admitted to the State Bar of California. He maintains a "not eligible" status for failure to pay Bar member fees. *See* http:// members.calbar.ca.gov.

*\*4 A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210–11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Hurst has a "plausible claim for relief." *Id.* at 211; *see also Iqbal,* 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 570. In other words, the complaint must do more than allege Hurst's entitlement to relief; rather, it must "show" such an entitlement with its facts. A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. In making this determination, the court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint. *Pryor v. National Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002). Documents attached to a defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claims. *Id.* "Courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient" unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108, 114 (3d Cir.2002).

## IV. DISCUSSION

### A. Pleading Deficiencies

Harbin, Wiegard, Harbert, Shalk, Connors, Banks, Speakman, and State Farm move for dismissal of the complaint on the grounds that it fails to meet the pleading requirements *of Iqbal* and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)

**(Cite as: 2012 WL 426018 (D.Del.))**

*Twombley.* More particularly, they argue that Hurst disclosed his own personal information in a prior pleading filed by him and he lacks a reasonable basis to assert claims against others for its disclosure. They argue that the complaint fails to set forth grounds that any of the defendants actually violated the DPPA. As to the remaining claims, they argue that the complaint fails to state claims as it seeks to relitigate previously dismissed claims and attempts to bootstrap claims to the alleged DPPA violation. Finally, State Farm takes exception to the complaint's referencing the dissenting opinion in *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 429–39, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), when the complaint pleads no factual grounds to state a cause of action as to State Farms' performance, planning, and review program.

**\*5** With the exception of the DPPA, the complaint, for the most part, contains conclusory allegations, legal theories with no supporting facts, and does not contain sufficient facts, accepted as true, to state claims to relief that are plausible on its face. In addition, almost all of the claims are time-barred and many of the claims are barred by reason of claim and issue preclusion. As discussed in more detail below, even accepting all factual allegations as true, and construing the complaint in the light most favorable to Hurst, he has not set forth claims upon which he may be entitled to relief for violations of his constitutional rights and state and federal laws.

**B. Claim and Issue Preclusion**

The court addresses the issues of res judicata and collateral estoppel raised by Harbin and State Farm as grounds for dismissal of the complaint. They argue that the instant complaint represents the last incarnation of previously adjudicated claims arising from State Farm's denial of Hurst's 2001 claim for the theft of his van. They argue that Hurst presents the same allegations as those contained in his prior litigation, but now frames them as violations of the DPPA. They urge this court to dismiss the complaint for the same reasons as set forth by

the Maryland District Court in *Hurst v. State Farm Mutual Auto. Inc. Co.,* 08–2907–WMN (D.Md.)

The following history is relevant to dismissal on these grounds. In April 2001, the customized van of Hurst, a resident of Arlington, Virginia, was stolen in Salisbury, Maryland. Hurst filed a *pro se* 28 U.S.C. § 1332 diversity action in the Eastern District of Virginia against State Farm, alleging that it breached his automobile insurance policy when it denied his 2001 van theft claim and that State Farm committed and conspired to commit fraud, and intentionally inflicted emotional distress. On December 21, 2005, the matter was transferred to the Western District of Virginia and, on September 26, 2008, summary judgment was granted in favor of State Farm as to the breach of contract claim, and affirmed on appeal. *See Hurst v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 4394759 (W.D.Va. Sept.26, 2008), *aff'd,* 324 F. App'x 250 (4th Cir.2009) (not published). The fraud, conspiracy, and intentional infliction of emotional distress claims had previously been dismissed based upon the statute of limitations and for failure to state a claim. *See Hurst v. State Farm Mut. Auto. Ins. Co.,* 2007 WL 951672 (W.D.Va. Mar.23, 2007);

On October 31, 2008, Hurst filed a 28 U.S.C. § 1331 action in the District of Maryland against State Farm and its agents, Harbin, Jones, Major, and McGavin. *See Hurst v. State Farm Mut. Auto. Ins. Co.,* Civil No. WMN–08–2907. Hurst accused the defendants of committing numerous federal crimes over a ten year period and further alleged breach of contract, tortious breach of contract and bad faith settlement, and intentional infliction of emotional distress, all related to the denial of his insurance claim on the 2001 theft of his van. The case was summarily dismissed with prejudice on November 19, 2008, under the doctrines of claim and issue preclusion, affirmed on appeal. *See Hurst v. State Farm Mut. Auto. Ins. Co.,* 324 F. App'x 261 (4th Cir.2009) (not published).

**\*6** Hurst filed yet another complaint in the District of Maryland on September 13, 2010, based on

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

federal question, civil rights, and pendant jurisdictions pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a). The complaint alleged that, although he complied with formal orders regarding the theft of his van, Salisbury law enforcement failed to properly complete a vehicle theft report and file it with the National Criminal Investigation Bureau ("NCIB") and made false accusations in internal reports from 2001 and 2002. Hurst seemed to assert that the failure to file the NCIB report was one reason why State Farm denied his insurance claim. He further complained that State Farm's claims managers and investigators, nationwide, have a history of underpaying and denying legitimate claims of its insured. The complaint alleged that the State Farm defendants acted under the color of state law and committed constitutional torts. In addition, it raised counts of civil rights violations; intentional interference with contractual relations; tortious interference with business relationships; intentional infliction of emotional distress; intentional invasion of privacy by publicizing private facts; intentional false light invasion of privacy; slander per se and libel per se; retaliation; civil conspiracy; tortious breach of contract and bad faith settlement and fraud; inadequate hiring, training, supervision, and discipline; DPPA claims; and state law claims, virtually all of the claims raised in the instant complaint.

The complaint was summarily dismissed under the doctrine of res judicata as to Hurst's claims against State Farm and its agents. The remaining claims were dismissed on the basis that the complaint failed to allege action that implicated the court's federal question or civil rights jurisdiction. In the alternative, the court found that the claims were time-barred, and it declined to retain jurisdiction over state tort claims. *See Hurst v. City of Salisbury,* 2010 WL 4103582 (D.Md. Oct. 18, 2010), *aff'd,* 432 F. App'x 263 (4th Cir.2011) (not published).

Under the doctrine of res judicata (referred to now as claim preclusion), a judgment in a prior suit involving the same parties, or parties in privity with them, bars a subsequent suit on the same cause of action. *See Fairbank's Capital Corp. v. Milligan,* 234 F. App'x 21, 23 (3d Cir.2007) (not published); *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 392 (3d Cir.2002) . "The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims." *Transamerica Occidental,* 292 F.3d at 392.

Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated. *See Fairbank's Capital Corp.,* 234 F. App'x at 23. Issue preclusion occurs "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 249 (3d Cir.2006) (quoting Restatement (Second) of Judgments § 27 (1982)). There are four requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.* (internal quotation marks and citations omitted).

**\*7** Federal courts in Maryland and Virginia have found, and this court agrees with them, that Hurst is barred under the doctrines of claim and issue preclusion to relitigate his claims relating to the actions of State Farm, Harbin, and Wiegard, and Harbert; individuals who were defendants in prior federal litigation Hurst filed against them. To the extent Hurst seeks to raise additional claims that could have been raised in his prior actions, said

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

claims are also barred. *See CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir.1994). Hurst's time to raise his claims occurred when he unsuccessfully sought recovery in the District Courts in Virginia and Maryland. Hurst may not relitigate the claims he currently raises against State Farm, Harbin, Wiegard, and Harbert as they are barred under the doctrines of claim and issue preclusion.

### C. Statutes of Limitations

Hurst filed the instant complaint on November 22, 2010. (D.I.2.) The defendants move for dismissal of most claims on the basis that they are time-barred. Hurst responds that the instant claims did not accrue until November 24, 2008, the date he received State Farm's letter stating that the company had sent personal information to Shalk.

Harbin, Maxwell, Harbert, and State Farm move for dismissal of all contract claims arising from the 2001 theft of the van as time-barred. In Virginia, the statute of limitations for a claim arising from a contract is five years. Va. C. § 8.01–246. In Maryland and Delaware for contract claims the statute of limitations is three years. Md.Code, Courts and Judicial Procedure, § 5–101; 10 Del. C. § 8106. To the extent that Count XIII raises a breach of contract claim for the breach of the covenant of good faith and fair dealing, the instant complaint was filed long after the expiration of the limitations period for any contract claims with regard to the State Farm insurance contract and Hurst's claim for theft of the van.

Harbin, Maxwell, Harbert, Shalk, Connors, and State Farm move for dismissal of the Delaware tort claims and abuse of process as time-barred pursuant to Delaware's two year statute of limitations. 10 Del. C. § 8119. Counts IV, VIII, IX, X, and XI, raise claims wherein the two year limitation period is applicable. Even assuming Hurst's own disclosure of the Affidavit did not make it a public document, Shalk filed the Affidavit in the *Rehoboth Beach* case on November 29, 2006, and the Affidavit was filed in the *Dover* case on November 12,

2008, yet Hurst did not file the instant Complaint until November 22, 2010, approximately ten days after the limitations period had expired with regard to the November 12, 2008 filing.

Similarly, the defendants move for dismissal of the § 1983 claims based upon its two-year limitation period. For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions, *Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1983), and, in Delaware, § 1983 claims are subject to a two-year limitations period. 10 Del. C. § 8119; *Johnson v. Cullen,* 925 F.Supp. 244, 248 (D.Del.1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State,* 2001 WL 845654, at *2 (D.Del. July 24, 2001). The complaint appears to raise § 1983 claims in Counts II, III, IV, V, VI, VII, and XII. [FN8] For the same reasons as discussed in the preceding paragraph, the claims are time-barred.

> FN8. Some Counts contain mixed federal and state claims.

**\*8** Shalk and Connors further move for dismissal of the fraud, intentional interference with contract, and abuse of process claims as time-barred based upon Delaware's three-year statute of limitations. 10 Del. C. § 8106. *In re Winstar Comm., Inc.,* 435 B.R. 33, 43 (Bkrtcy.D.Del.2010) (Delaware statute of limitations for fraud and Delaware civil conspiracy is three years). Liberally construing the complaint, as the court must, the court cannot say that the fraud and civil conspiracy claims are time-barred, at least as to the claims that may have accrued as a result of the November 12, 2008 filing of the Affidavit.

For the above reasons, the court will grant the motions to dismiss Counts II, III, IV, V (42 U.S.C. § 1983 conspiracy), VI, VII (42 U.S.C. § 1983 constitutional claims), VIII, IX, X, XI, XII, and XIII as

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

time-barred. The court will deny the motions to dismiss on statute of limitations grounds as to the State claims contained in Counts V (Delaware conspiracy) and VII (Delaware fraud).

### D. Absolute Litigation Privilege

The defendants argue that they are protected by the absolute litigation privilege. Delaware adheres to the common law rule of "absolute privilege" that "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to a matter at issue in the case." *Barker v. Huang,* 610 A.2d 1341, 1345 (Del.1992). Any claim for claim for "breach of privacy" is defeated by the absolute litigation privilege under Delaware law. "The absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' or 'invasion of privacy' could void its effect.... To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability." *Barker,* 610 A.2d at 1349.

It is evident from court filings that information contained in the Affidavit occurred during the course of judicial proceedings and, pursuant to precedent, cannot be considered as violating Hurst's privacy rights or inflicting emotional distress. Accordingly, the defendants are protected under the absolute litigation privilege and, for this reason, the court finds that dismissal of the complaint is appropriate.

### E. Malicious Defense

UNIC moves for dismissal of the complaint on the grounds that it contains no direct claim against it. It argues that Hurst seeks to impose liability upon defense counsel and insurers of defendants in other litigation under a "malicious defense" claim, even though such a claim is not cognizable under Delaware law. *See Rowlands v. Phico Ins. Co.,* 2000 WL 1092134 (D.Del. July 27, 2000). Delaware courts have expressly rejected a cause of action for malicious defense for sound policy reasons." *Id.* (citing *Hostetter v. Hartford Ins. Co.,* 1992 WL 179423, at *7–8 (Del.Super.Ct. July 13, 1992) (holding, as a matter of law, that [the defendant] had no duty to deal with [the] plaintiff in good faith, to settle her claim promptly or to refrain from 'malicious defense' of her claim, or to use reasonable care in the investigation and handling of [her] claim"). A malicious defense claim is not cognizable under Delaware law. Therefore, the court will grant the motion to dismiss to the extent that Hurst attempts to raise said claim.

### F. DPPA—Count I

**\*9** Count I, Hurst's DPPA claim, is central to all other claims in the complaint. In an apparent effort to avoid dismissal by reason of claim and issue preclusion, the complaint alleges that the DPPA violations are "entirely independent" litigation from the State Farm breach of insurance contract litigation. (D.I.2, ¶ 4.) The complaint alleges that State Farm, through its outside agents and legal counsel, violated § 2722(a) and § 2722(b) of the DPPA when it disclosed Hurst's personal information as defined 18 U.S.C. § 2725(3) and disclosure was not permissible under the DPPA.

The defendants move for dismissal of the DPPA claim on the grounds that: (1) the DPPA claim is not directed towards all the defendants; (2) the complaint alleges that State Farm and Shalk, but no other defendants, knowingly obtained, used, or disclosed personal information; (3) Hurst disclosed the Affidavit at issue in a public record by virtue of a prior lawsuit that he filed; (4) the Affidavit was not obtained from a motor vehicle record; (5) the Affidavit, as an exhibit to a lawsuit, falls within the litigation use exception; (6) the disclosure of the Affidavit is not actionable by reason of the common law litigation privilege; and (7) the claim is barred by the applicable statute of limitations.

The DPPA regulates the disclosure and resale of personal information contained in the records of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

state motor vehicle departments ("DMV's"). *See Reno v. Condon,* 528 U.S. 141, 143, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). Under the DPPA, it is "unlawful for any 'person' knowingly to obtain or disclose any record for a use that is not permitted under its provisions, or to make a false representation in order to obtain personal information from a motor vehicle record." *Reno v. Condon,* 528 U.S. at 146 (quoting §§ 2722(a) and (b)). A person who violates the DPPA "shall be liable to the individual to whom the information pertains, who may bring a civil action." *Pichler v. UNITE,* 542 F.3d 380, 391 (3d Cir.2008) (quoting 18 U.S.C. § 2724(a)). The DPPA thus confers a cause of action to "the individual" whose personal information from his or her motor vehicle records is at issue. *See id.* The DPPA provides no statute of limitation for actions brought under its provisions; civil actions arising under federal law, however, must be brought within four years of the action giving rise to the suit. *See* 28 U.S.C. § 1658(a).

The DPPA defines personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status." *Id.* at 144 (quoting § 2725(3)). A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* (quoting § 2725(1)).

**\*10** "The DPPA is structured such that § 2721(a) provides the general prohibition on the release and use of motor vehicle information, and § 2721(b) enumerates fourteen specific exceptions to the general prohibition. *Pichler,* 542 F.3d at 394–95. The DPPA requires disclosure of personal information "for use in connection with matters of motor vehicle or driver safety and theft." *Reno v.*

*Condon,* 528 U.S. at 145.

The DPPA creates liability when three elements are met: (1) the defendant knowingly obtains, discloses, or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted. *See* 18 U.S.C. § 2724(a); *see also Taylor v. Acxiom Corp.,* 612 F.3d 325, 335 (5th Cir.2010); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.,* 525 F.3d 1107, 1111 (11th Cir.2008). "The plain meaning of the third factor is that it is only satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)." *Id. See also Reno v. Condon,* 528 U.S. 141 at 146, 120 S.Ct. 666, 145 L.Ed.2d 587.

Initially the court notes that it is far from clear that the Affidavit in question is a motor vehicle record. To be considered as a motor vehicle record, the document in question must be issued by a DMV. The Affidavit at issue, however, is on a State Farm form, and there is no indication on its face that it issued from a DMV.

Even if the Affidavit is a motor vehicle record, the complaint does not allege that any defendants performed a search with any state DMV or that they caused a DMV search to be made by a third party to obtain Hurst's "personal information." Instead, the complaint alleges that State Farm, through attorney Harbert, provided Shalk the Affidavit. State Farm is not a state motor vehicle agency. *See Morgan v. Niles,* 250 F.Supp.2d 63, 68–69 (N.D.N.Y.2003) (Congress emphasized that DPPA's purpose was to prohibit state motor vehicle agencies from disclosing personal information contained in motor vehicle records, except in certain circumstances specifically enumerated in the statute.).

Moreover, even if State Farm provided the information to Shalk, the source of the personal information concerning Hurst was available from another source. Hurst, himself, provided the information when, on November 7, 2005, he filed a lawsuit against State Farm in the United States District

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)

**(Cite as: 2012 WL 426018 (D.Del.))**

Court for the Eastern District of Virginia and attached the Affidavit, in a non-redacted form, as an exhibit to the complaint. Where, as here, a defendant does not obtain a plaintiff's "personal information" from a state motor vehicle agency, but instead, obtains that information directly from the plaintiff, any subsequent disclosure of that "personal information" is not a DPPA violation. *See Ocasio v. Riverbay Corp.,, 2007 WL 1771770, at \*6 (S.D.N.Y. June 19, 2007); O'Brien v. Quad Six, Inc.,, 219 F.Supp.2d 933 (N.D.Ill.2002).* The lack of allegations establishing that Hurst's personal information was obtained by the defendants from any state DMV is fatal to his claim.

**\*11** In the alternative, the court finds that the use of the Affidavit falls within the ambit of a use exception as listed under § 2721 of the DPPA. Section 2721(b)(4) states that DPPA-covered personal information may be disclosed "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders." Here, the Affidavit at issue was used during the course of the *Dover* and the *Rehoboth Beach* litigation. *See, e.g., Briggman v. Ross,* 2009 WL 3254459, at \*2 (W.D.Va. Oct.9, 2009) (granting Rule 12(b)(6) motion and dismissing DPPA claims pursuant to the litigation exception when the defendant accessed the plaintiff's DMV records during the course of litigation); *Manso v. Santamarina & Assocs.,* 2005 WL 975854, at \*4 (S.D.N.Y. Apr.26, 2005) (dismissing DPPA claim when the defendants attached a DMV Report with plaintiff's address to papers filed in litigation in the New York Housing Court); *but see Pichler v. UNITE,* 585 F.3d 741, 752 (3d Cir.2009) (the exception does not include disclosure of information for the purpose of "identify[ing] potential litigants and claimants who may wish to pursue remedies for [defendant's] violation of the DPPA.").

The court takes judicial notice that the Affidavit was used in the *Dover* and *Rehoboth Beach* cases to establish a point in the litigation when it was used to rebut Hurst's claim that he was entitled to damages for the van as a result of an April 9, 2001 incident inasmuch as the theft of the van occurred on April 3, 2011, several days prior to April 9, 2001. (D.I.31, ex. D.) In both instances, there was a specific proceeding, wherein Shalk submitted the Affidavit in "an effort to establish" a particular point. Contrary to Hurst's position, the Third Circuit's holding of *Pichler, supra,* does not support Hurst's position that the use of the Affidavit does not fall within the litigation use exception. Indeed, the facts alleged by the complaint are distinguishable from *Pichler,* since there were legal proceedings in the instant case, but in *Pichler* no proceeding in connection with which the driver's record information could have been used was identified.

The complaint does not contain any factual allegations that plausibly suggest that the defendants accessed Hurst's DMV records "for a purpose not permitted under [§ 2721(b) ]." 18 U.S.C. § 2724(a). For the reasons stated above, the court will grant the defendants' motions to dismiss the DPPA claims.

**G. 42 U.S.C. § 1983**—Counts II, III, IV, V, VI, VII, XII, XIV

The complaint alleges violations of 42 U.S.C. § 1983,[FN9] violations of privacy rights under the Fourth Amendment,[FN10] violations of the right to privacy by publicizing private facts and by false light, conspiracy, retaliation, fraud that resulted in due process violations, failure to train, hire, supervise or discipline,[FN11] and generalized constitutional claims. (D.I. 2, Counts II, III, IV, V, VI, VII, XII, XIV.) In reviewing the complaint, it is not clear in Counts V and VII whether Hurst intends to plead only State claims, only federal claims, or both.

FN9. Appellate courts are split on the issue of whether statutory rights created by the DPPA are enforceable both directly and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
(Cite as: 2012 WL 426018 (D.Del.))

under § 1983. *See Collier v. Dickinson,* 477 F.3d 1306, 1311 (11th Cir.2007) (the statutory rights created by the DPPA are enforceable both directly and under § 1983 ; *see also Roth v. Guzman,* 60 F.3d 603 (6th Cir.2011); *but see McCready v. White,* 417 F.3d 700, 703 (7th Cir.2005) (under the DPPA there is no private right of action pursuant to 42 U.S.C. § 1983). The Third Circuit has not addressed the issue, but has stated, "like § 1983, the DPPA sounds in tort." *Pichler v. UNITE,* 542 F.3d 380, 388 (3d Cir.2008).

FN10. The "right of privacy" is founded in the Fourteenth Amendment's concept of personal liberty. *Whalen v. Roe,* 429 U.S. 589, 599 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

FN11. Count XII does not refer to § 1983. However, it sets forth the constitutional standard of "deliberate indifference." *See Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417(2011) (In order for a municipality's failure to train its employees to rise to the level of city policy or custom actionable under § 1983, the failure to train must amount to a deliberate indifference to the rights of persons with whom the untrained employees come into contact.).

**\*12** The defendants move for dismissal of constitutional claims on the basis that: (1) UNIC, HM-IC, Harbin, Wiegard, Harbert, Shalk, Connors, Speakman, and State Farm are not state actors; (2) Rehoboth Beach and Speakman cannot be held liable under a § 1983 claim on the basis of vicarious liability; (3) the defendants lack the requisite personal involvement necessary to impose liability under § 1983; (4) because the complaint fails to state a DPPA claim, the counts that stem from the DPPA should also be dismissed; (5) Banks and Speakman, in their official capacities, are not capable of being sued under 42 U.S.C. § 1983, and there are no al-

legations that they acted outside their official capacity; (6) because Rehoboth Beach is a named defendant, the claims against Banks and Speakman are necessarily redundant; and (7) Hurst has not adequately pled a claim under § 1983.

Initially, the court notes that the § 1983 claims are time-barred as discussed above. *See* ¶ IV.B., *supra.* Regardless, the court will address dismissal on other grounds. As is well-established, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) . The majority of the defendants, save Rehoboth Beach, Speakman (former city solicitor for Rehoboth Beach) and Banks (chief of police for Rehoboth Beach) are not state actors. In addition, except for the allegations directed towards Harbert, Wiegard, and Shalk, none of whom are State actors, the complaint fails to establish the requisite personal involvement necessary to impose liability under § 1983. *See Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.").

As to the § 1983 claim against Rehoboth Beach, "[a]" municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' "to such deprivation." *Connick v. Thompson,* 131 S.Ct. at 1359 (citations omitted). However, under § 1983, local governments are responsible only for "their own illegal acts" and are not vicariously liable under § 1983 for the actions of its agents. *Id.* (citations omitted); *see also Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (city is not vicariously liable under § 1983 for constitutional torts of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
(Cite as: 2012 WL 426018 (D.Del.))

Page 52

its agents; it is only liable when it can be fairly said that the city itself is the wrongdoer."). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Hurst has failed to plead that Rehoboth Beach was the "moving force" behind any alleged constitutional violation. Absent any allegation that a custom or policy established by the Rehoboth Beach directly caused harm to Hurst, his § 1983 claim cannot stand.

**\*13** Counts III and IV allege that the DPPA violations also violated Hurst's right to privacy under the Fourth Amendment and right to privacy by publicizing private facts and by false light, and they, too, fail to state a claim upon which relief may be granted. The Fourth Amendment states, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Hurst does not allege that he suffered from an unreasonable search or that he seeks to suppress evidence obtained by an unreasonable search. To the extent Hurst complains that disclosure of his personal information violates his right to privacy, the Supreme Court has opined that the "right of privacy" is founded in the Fourteenth Amendment concept of personal liberty, not the Fourth Amendment. *See Whalen v. Roe,* 429 U.S. 589, 599 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

In addition, Hurst's claims are fatally flawed, because the information allegedly disclosed was previously a matter of public record. Even assuming a violation of a constitutional right of privacy,

"[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus, there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record...." Restatement (Second) of Torts § 652D (1977) (Comment (b)). *See Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 494–95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1974) (Supreme Court concludes there was no invasion of privacy when a broadcasting company publicized the name of a rape victim, since the broadcaster obtained the name through court papers because "interests in privacy fade when the information involved already appears on the public record."). The general principle that matters of public record are not private applies with even greater force to information in documents filed as part of a court proceeding. *Id.* at 492–93. Hurst initially disclosed the personal information in a complaint he filed several years prior to the filing of the Affidavit by Shalk. Hence, his claims fail.

Count V, the § 1983 claim conspiracy also fails. To state a conspiracy claim under § 1983, Hurst must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. V.N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir.1999). In addition, there must be evidence of actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor,* 69 F.Supp.2d 649, 665–66 (M.D.Pa.), *aff'd,* 211 F.3d 1263 (3d Cir.2000) (citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir.1999)). A § 1983 conspiracy claim only arises, however, when there has been an actual deprivation of a right. *Andree v. Ashland Cnty.,* 818 F.2d 1306, 1311 (7th Cir.1987); *see also Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990) (recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability). *Accord Perano v. Township of Tilden,* 2011 WL 1388381 (3d Cir. Apr.13, 2011).

**\*14** Hurst alleges that the defendants conspired to violate his DPPA and constitutional rights. As

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

previously discussed in this memorandum, the complaint fails to allege that the defendants violated the DPPA or deprived Hurst of any federally protected right. In addition, while Hurst alleges that the defendants conspired against him, he does so in a conclusory manner without facts to support his claim. Accordingly, the court finds that Hurst has failed to state a § 1983 conspiracy claim.

Likewise, Hurst's retaliation claim, found at Count VI, assuming he raises it pursuant to § 1983, also fails. Proof of a retaliation claim requires that Hurst demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). As discussed above, most of the defendants are not State actors and, furthermore, the allegations do not point to any adverse actions taken against Hurst by a State actor.

Count XII alleges inadequate hiring, training, supervision, and discipline. Hurst alleges the defendants "failed to obtain for themselves and failed to provide others, adequate training, supervision, and discipline, and failed to properly screen and hire employees and outside." A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989); *see also Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240 (3d Cir.2005) (not published). Hurst alleges nothing more than the defendants injured him based upon conclusory allegations. In effect, Hurst attempts to assert untenable claims for vicarious liability against various supervisors by couching them in the language of failure-to-train or failure-

to-supervise claims.

Finally, the claims of generalized constitutional violations found at Counts VII and XIV are insufficient to withstand dismissal.[FN12] *See Brown v. Borough of Mahaffey,* 35 F.3d 846, 850 (3d Cir.1994) ("The plaintiffs have asserted several constitutional violations; they cannot attach a "catch-all" tort claim as a fallback if those specific constitutional claims fail.").

> FN12. Hurst's allegations improperly incorporate the *Dover* case claims into the instant case in an attempt to plead due process violations. Count VII also seems to raise criminal claims.

For the above reasons, the court will grant the motions to dismiss Counts II, III, IV, V, VI, VII, XII, and XIV.

**H. State Claims—Counts IV, V, VII, VIII, IX, X, XI, XIII, XV**

The defendants move for dismissal on the grounds that the complaint does not adequately state claims for recovery under Delaware state law. As discussed above, many of the State claims are time-barred, including those found in Count IV for invasion of privacy, Count VIII for abuse of process, Count IX for intentional infliction of emotional distress, Count X for tortious interference with contractual relations, and Count XI for tortious interference with business relations.

**\*15** It is unclear if Count IV is raised as a constitutional claim or as a state claim. Regardless, HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm argue that the complaint fails to state a claim of the privacy tort of "false light." The tort of false light invasion of privacy, recognized by the Delaware Supreme Court in *Barbieri v. News–Journal Co.,* 189 A.2d 773 (Del.1963), is defined in the Restatement (Second) of Torts § 652E as the tort of giving publicity to something that places the plaintiff in a false light before the public, the false light being highly of-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

fensive to a reasonable person, and knowing of or acting "in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Wyshock v. Malekzadeh,* 1992 WL 148002, at *2 (Del.Super.Ct. June 10, 1992). The allegations in the complaint fail to state a claim of invasion of privacy. There is no indication of reckless disregard in filing the Affidavit or that the Affidavit contained false information.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm argue that Count V fails to state a claim for conspiracy under Delaware law. Under Delaware law, to state a claim for conspiracy, the complaint must allege (1) a confederation or combination of two or more persons (2) an unlawful act done in furtherance of the conspiracy (3) and actual damage. *Nicolet, Inc. v. Nutt,* 525 A.2d 146 (Del.1987). Count V as it now stands does not meet pleading requirements of *Iqbal* and *Twombley.* The complaint alleges in a conclusory manner, without supporting facts, that the defendants acted in concert with regard to the filing by Shalk. In fact, Hurst alleges vicarious liability, making it impossible for the parties to have acted in concert. Further, as discussed above, the complaint fails to identify the violations of the DPPA or constitutional violations that Hurst relies upon as unlawful acts in furtherance of the alleged conspiracy.

HMIC, Rehoboth Beach, Banks, Speakman, and State Farm move for dismissal of the catch-all averments in Count VII on the basis that Count VII fails to meet the pleading requirements of *Iqbal* and *Twombley.* Count VII is titled, "Fraud, Fraudulent Concealment, and Fraud on the Court." However, it appears that the intent behind Count VII is to retry or again raise the same claims as those raised in the *Dover* case.

Common law fraud consists of five elements: (1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance. *See Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983). These elements also comprise a claim of fraudulent concealment, except that a plaintiff must allege a deliberate concealment by the defendant. *Nicolet v. Nutt,* 525 A.2d 146, 149 (Del.1987). The failure to allege any of the elements warrants dismissal of the claim. *Anderson v. Airco, Inc.,* 2004 WL 1551484 (Del.

**\*16** In order to meet the necessarily demanding standard for proof of fraud upon the court there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. *Herring v. United States,* 424 F.3d 384, 386–87 (3d Cir.2005). In addition, a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and it must be supported by clear, unequivocal and convincing evidence. *Id.* Actions for fraud upon the court are rare. *Herring,* 424 F.3d at 386.

The complaint fails to allege the elements of fraud, fraudulent concealment, or fraud upon the court, particularly that the defendants made false representations of fact or knew any representations were false, or knowingly made false representations.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move to dismiss Count VIII, the abuse of process claim, on the grounds that it is deficiently pled. The elements of an abuse of process claim are: (1) an ulterior improper purpose; and (2) a willful act improperly used in the regular conduct of proceedings. *STMicroelectronics N.V. v. Agere Sys., Inc.,* 2009 WL 1444405 (Del.Super.Ct. May 19, 2009). The improper purpose is usually to obtain a collateral advantage. *See Pfeiffer v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 7062498 (Del.Super.Ct. Dec.20, 2011). The allegations in the complaint do not give rise to an abuse of process claim. While the com-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

plaint alleges that the Affidavit was filed in violation of the DPPA, which as discussed above it was not, the allegations fail to rise to the level that the Affidavit was improperly used. Specifically, the court notes the failure to allege coercion or any collateral advantage to defendants arising from said coercion.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move to dismiss Count IX on the grounds that the complaint fails to allege any extreme and outrageous conduct on their behalf under the theory of intentional inflection of emotional distress. The elements of intentional or reckless infliction of emotional distress can be established when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Cooper v. Board of Educ. of Red Clay Consol. Sch. Dist.,* 2009 WL 2581239, at *3 (Del.Super.Ct. Aug.20, 2009). A claim for intentional infliction of emotional distress may be made even in the absence of accompanying bodily harm, if the conduct is outrageous. *See Cummings v. Pinder,* 574 A.2d 843, 845 (Del.1990). The complaint fails to allege any extreme and/or outrageous conduct on behalf of the defendants. Indeed, it is difficult to find any extreme and/or outrageous conduct by the defendants when Hurst, himself, disclosed the personal information that he now alleges causes him distress.

**\*17** HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move for dismissal of Count X, tortious interference with Hurst's contractual relations, on the grounds that the complaint fails to plead the requisite facts to establish that they had any information regarding the contract between State Farm and Hurst or that they took any action to interfere with the contractual relationship. To survive dismissal, a claim for tortious interference with contractual relations must allege: (1) a contract; (2) about which defendant

knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; and (5) which causes injury. *Aspen Advisors, LLC v. United Artists Theatre Co.,* 861 A.2d 1251, 1266 (Del.2004). justification; and (5) which causes injury. *Aspen Advisors, LLC v. United Artists Theatre Co.,* 861 A.2d 1251, 1266 (Del.2004).

The complaint alleges in a conclusory manner, without supporting facts, that the defendants used the DPPA as a means to coerce Hurst into settling an insurance claim with State Farm. As previously stated, the complaint fails to state a claim for violations of the DPPA. Moreover, even if there were violations of the DPPA, the allegations fail to make the leap that the alleged DPPA violation was a factor in any alleged breach of contract.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, and Speakman move for dismissal of Count XI, the tortious interference with business relations claim, on the grounds that the Count is overly vague, generalized, and does not adequately state a claim. To survive dismissal, a claim for tortious interference with business relations must allege: (a) the reasonable probability of a business opportunity; (b) the intentional interference by defendant with that opportunity; (c) proximate causation; and (d) damages." *Malpiede v. Townson,* 780 A.2d 1075, 1099 (Del.2001). Hurst states that he is an independent contractor engaged in the purchase and transfer of major weapons systems. He alleges that he directly challenged his criminal convictions in the *Dover* case and that the *Dover* case set forth the "felonious acts of defendants." The complaint goes on to allege, in a conclusory manner, that the defendants "have tortiously interfered with Hurst's business relations, but presents no facts to support the claim. The allegations fall far short of meeting the elements of a tortious interference with business relations claim. Notably, there are no facts alleged that any defendant interfered with Hurst's business opportunities.

HMIC, Rehoboth Beach, Shalk, Connors,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

Banks, and Speakman move for dismissal of Count XIII, breach of the covenant of good faith and fair dealing, on the grounds that it fails to order to state a claim for breach of the implied covenant of good faith and fair dealing, a party "must allege (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damage to the plaintiff." *Kelly v. Blum,* 2010 WL 629850, at \*13 (Del.Ch. Feb.24, 2010). Hurst has failed to plead any specific implied contractual obligation or breach of that obligation, both of which are essential elements of this claim.

**\*18** The catch-all State claims contained in Count XV fail to meet the pleading requirements of *Iqbal* and *Twombly.* The complaint alleges, in a conclusory manner Rehoboth Beach, State Farm, UNIC, and HMIC are subject to vicarious liability on all state law claims for the acts of their employees, legal counsel, agents and co-conspirators. Under Delaware law, Hurst has no direct cause of action against the tortfeasor's liability insurer. *See Delmar News, Inc. v. Jacobs Oil Co.,* 584 A.2d 531, 533–34 (Del.Super.Ct.1990) (Under Delaware law, an injured party may not bring a direct action against a liability insurer based upon the negligence of the insured.). Accordingly, the claims against State Farm, UNIC, and HMIC fail. Count XV fails to identify any cognizable legal theory or any conduct that Rehoboth Beach violated Hurst's rights under state law.

For the foregoing reasons, the court will grant the motions to dismiss Counts IV, V, VII, VIII, IX, X, XI, XIII, and XV.

## V. CONCLUSION

For the above reasons, the court will grant the motions to dismiss complaint, as well as UNIC's motion to file excess pages. (D.I.23, 25, 26, 28, 29, 32, 43, 51, 60, 61, 64.) To the extent Hurst seeks to amend his complaint, the court finds that any such amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (indicating that district court may deny leave to amend on the basis of futility). All other

motions will be denied as moot. (D.I.36, 38, 44, 66, 70.)

An appropriate order will be issued.

## ORDER

At Wilmington this *9th* day of *Feb.,* 2012, for the reasons set forth in the Memorandum issued this date;

1. The complaint is dismissed. The court finds that amendment is futile.

2. The defendant United National Insurance Company's motion to dismiss is **granted.** (D.I.23.)

3. The defendant United National Insurance Company's motion for leave to file excess pages is **granted.** (D.I.25.)

4. The defendants City of Rehoboth Beach's and Harleysville Mutual Insurance Company's motion to dismiss is **granted.** (D.I.26.)

5. The defendant Marty Harbin's motion to dismiss is **granted.** (D.I.28.)

6. The defendant Collin Shalk's motions to dismiss are **granted.** (D.I.29, 51.)

7. The defendant Kevin Connors' motion to dismiss and for joinder is **granted.** (D.I.32.)

8. The plaintiff Jerry A. Hurst's motion to strike is **denied.** (D.I.36.)

9. The plaintiff Jerry A. Hurst's request for default as to Keith Banks is **denied** as moot. (D.I.38.)

10. The defendant Keith Banks' motion to dismiss is **granted.** (D.I.43.)

11. The defendant Walter Speakman's motion to dismiss for insufficient service of process is **denied** as moot. (D.I.44.)

12. The defendants Guy Harbert's and Maxwell Wiegard's motion to dismiss and for joinder is

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)
**(Cite as: 2012 WL 426018 (D.Del.))**

**granted.** (D.I.60.)

13. The defendant Walter Speakman's motion to dismiss is **granted.** (D.I.61.)

14. The defendant State Farm Mutual Automobile Insurance Company's motion to dismiss is **granted.** (D.I.64.)

**\*19** 15. The plaintiff Jerry A. Hurst's motion to substitute personal representative as party is **denied** as moot. (D.I.66.)

16. The defendant Walter Speakman's motion to substitute is **denied** as moot. (D.I.70.)

17. The clerk of court is directed to **close** the case.

D.Del.,2012.
Hurst v. State Farm Mut. Auto. Ins. Co.
Not Reported in F.Supp.2d, 2012 WL 426018 (D.Del.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 8

2013 WL 5935982
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

INNOVATIVE SPORTS, MANAGEMENT,
INC. t/a Integrated Sports Media, Plaintiff,
v.
Antonio M. NETO, Individually and as
officers, directors, shareholders, and/
or principals of Kimbara, Defendants.

Civil Action No. 13–1497 (SRC). | Nov. 1, 2013.

**Attorneys and Law Firms**

Ryan Richard Janis, Feasterville, PA, for Plaintiff.

Damiano M. Fracasso, Attorney at Law, Budd Lake, NJ, for
Defendants.

**OPINION**

CHESLER, District Judge.

**\*1** This matter comes before the Court upon the Motion to
Strike Affirmative Defenses by Plaintiff, Innovative Sports
Management, Inc. t/a Integrated Sports Media ("Plaintiff").
For the reasons stated below, the Court will grant Plaintiff's
Motion.

**I. BACKGROUND**
Plaintiff was granted exclusive nationwide commercial
distribution rights to the cable televised broadcast of
*"International Match: Costa Rica v. Argentina,"* scheduled
for March 29, 2011 (the "Broadcast"). Pursuant to the
contract granting Plaintiff distribution rights to the Broadcast,
Plaintiff entered into sub-licensing agreements with various
commercial establishments for public exhibition of the
Broadcast. Plaintiff alleges that Defendants unlawfully
intercepted and exhibited the Broadcast at Kimbara, their
restaurant. Plaintiff filed a complaint against Defendants in
this Court on March 12, 2013 asserting three claims: 1)
violation of 47 U.S.C. § 605; 2) violation of 47 U.S.C. § 553;
and 3) conversion.

On July 8, 2013, Defendants filed an Answer which included
thirty-four (34) affirmative defenses. Plaintiff now moves
to strike all 34 of Defendants' affirmative defenses and
requests that attorney's fees be awarded as a sanction under
Fed.R.Civ.P. 11.

**II. LEGAL STANDARD**
Motions to strike affirmative defenses are governed by
Fed.R.Civ.P. 12(f), which gives the Court the discretion
to "strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter." A
defendant is required to plead available affirmative defenses
in his answer under Fed.R.Civ.P. 8(c). Parties must assert
affirmative defenses "early in litigation, so they may be ruled
upon, prejudice may be avoided, and judicial resources may
be conserved." *Robinson v. Johnson,* 313 F.3d 128, 134 (3d
Cir.2002).

A motion to strike a defense shall not be granted "unless the
insufficiency of the defense is clearly apparent." *Cipollone
v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986).
The Court is restrained from evaluating the merits of a
defense where the factual background of a case is largely
undeveloped. *Id.* Affirmative defenses will survive a motion
to strike if, by providing sufficient facts, plaintiff is given
fair notice of the nature of the defenses being asserted and
a reasonable opportunity to demonstrate why the defenses
should not succeed. *Robinson,* 313 F.3d at 136. Specifically,
defenses that are "nothing more than bare bones conclusory
allegations can be stricken." *F.D.I.C. v. Modular Homes, Inc.,*
859 F.Supp. 117, 120–21 (D.N.J.1994).

**III. DISCUSSION**

**A. Striking Defendants' Affirmative Defenses**
Plaintiff makes three arguments in support of its motion
to strike: (1) Defendants' affirmative defenses are each
legally insufficient because they are boilerplate assertions
that provide no factual support or notice; (2) the affirmative
defenses have no possible relation to the present controversy;
and (3) the affirmative defenses are objectively improper and
will prejudice Plaintiff.

**\*2** The 34 affirmative defenses asserted by Defendants are
patently insufficient and are not evidently applicable to the
claims asserted by Plaintiff. Defendants failed to provide any,
let alone sufficient, factual background to support any of the
affirmative defenses asserted, and instead listed each defense

in a formulaic fashion. For example, Defendant merely asserts the single words, "laches," "license," "payment," and "release" as individual affirmative defenses, with no explanation or additional information whatsoever. The absence of any supporting or explanatory facts accompanying each affirmative defense affords no notice whatsoever to Plaintiff and makes it impossible for Plaintiff to adequately respond. *See Robinson,* 313 F.3d at 316.

Further, none of the affirmative defenses asserted by Defendants relate in any way to the strict liability Communications Act or conversion counts alleged by Plaintiff. Defendants additionally assert defenses that directly contradict each other or deal with unrelated subject matter. For example, Defendants' twenty-second and twenty-third defenses argue "lack of personal jurisdiction" and "improper venue," but Defendants' Answer states affirmatively that the Court has personal jurisdiction over Defendants and that venue in this Court is proper. The Answer also asserts three affirmative defenses related to negligence, despite the fact that Plaintiff's Complaint contains no allegations of negligence. The defenses are clearly insufficient as they have no comprehensible relationship to this dispute, but only serve to confuse the issues here. *See Cipollone,* 780 F.2d at 188.

Affirmative defenses that will "substantially complicate the discovery proceedings" prejudice a plaintiff enough to justify granting a *Rule 12(f)* motion to strike. *F.T.C. v. Hope Now Modifications, LLC,* Civ. No. 09–1204 (JBS/JS), 2011 WL 883202 at *4 (D.N.J. Mar.10, 2011) (quoting *La. Sulphur Carriers, Inc. v. Gulf Resources & Chemical Corp.,* 53 F.R.D. 458, 460 (D.Del.1971)). Plaintiffs risk substantial prejudice by having to expend additional time, energy, and money on irrelevant and extensive discovery necessary to research each

insufficient and improper affirmative defense. *See Robinson,* 313 F.3d at 137. Allowing the details of Defendants' asserted affirmative defenses to be sorted out during discovery would ultimately result in extensive guesswork as to the nature and scope of each defense as well as unnecessary expenditures and motions. Defendants' 34 affirmative defenses must thus be stricken to avoid prejudice to Plaintiff.

**B. Rule 11 Sanctions**

The Federal Rules of Civil Procedure provide protections against a defendant asserting frivolous defenses. While the Third Circuit does not require specificity in pleading affirmative defenses, "Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation.' " *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d. Cir.1986). A defendant asserting frivolous pleadings or defenses thus may be subject to sanctions under Rule 11. *Id.; Cinema Serv. Corp. v. Edbee Corp.,* 774 F.2d 584, 586 (3d. Cir.1985).

 **\*3** Rule 11 sanctions are not warranted here. While the court possesses the inherent authority to assess attorney's fees as a sanction for frivolous conduct, such authority should be exercised only in exceptional circumstances. *Ford Motor Co. v. Summit Motor Prods.,* 930 F.2d 277, 289 (3d Cir.1991). While Defendants' conduct is not to be condoned, it does not reach the level of unreasonableness necessary for sanctions.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Strike Defendants' Affirmative Defenses.

---

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 9

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))**

**H**

NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. Use FI CTAF Rule 47.6 for
rules regarding the citation of unpublished opin-
ions.)

United States Court of Appeals, Federal Circuit.
INWOOD INTERNATIONAL CO., Plaintiff-Ap-
pellant,
v.
WAL-MART STORES, INC., Apogee Software,
Ltd., Scott Miller, and George Broussard, Defend-
ants-Appellees.

No. 00-1024.
Nov. 17, 2000.
Rehearing Denied Dec. 13, 2000.

Before RADER, SCHALL, and LINN, Circuit
Judges.

LINN, Circuit Judge.
  **\*1** Inwood International Co. ("Inwood") seeks
review of the decision of the United States District
Court for the Northern District of Texas ("the dis-
trict court") denying its Rule 60(b) motion to vacate
the dismissal of its claims against Wal-Mart Stores,
Inc., Apogee Software, Ltd., Scott Miller, and
George Broussard (collectively "Wal-Mart"). *See
Inwood Int'l Co. v. Wal-Mart Stores, Inc.,* No.
3:98-CV-1846-D (N.D.Tex. Sept. 17, 1999); *see
also Inwood Int'l Co. v. Wal-Mart Stores, Inc.,* No.
00-1024, slip op. at 2 (Fed.Cir. Nov. 8, 1999)
(Order). Because we discern no abuse of discretion
by the district court in dismissing Inwood's Rule
60(b) motion, we *affirm.*

BACKGROUND
  On August 20, 1997, Inwood sued Wal-Mart
for infringement of its U.S. Patent No. 4,662,635,

(the " '635 patent") entitled "Video Game with
Playback of Live Events." In a mediation session
held on March 19, 1999, the parties drafted and
signed a two-page settlement agreement
("Settlement Agreement") to resolve the infringe-
ment suit. The Settlement Agreement states in per-
tinent part:

  The following constitutes a settlement agreement
  between the parties ... in Civil Action No.
  3:98CV1846.

  1. Inwood grants to [Wal-Mart] and Action En-
  tertainment a perpetual, royalty-free license to
  make, use, sell and offer for sale games covered
  by ... the '635 patent.

  2. Inwood grants to Wal-Mart [Stores, Inc.] a per-
  petual royalty-free covenant not to sue for selling
  or offering to sell games covered by the '635 pat-
  ent, and using such games in the context of
  [their] efforts to sell the games. Inwood also
  promises not to sue [Wal-Mart Stores, Inc.'s] cus-
  tomers for using games covered by the '635 pat-
  ent, which were purchased from [Wal-Mart
  Stores, Inc.], but does not release the fact that
  such use may be an infringement of the '635 pat-
  ent.

  3. Each party agrees to execute mutual releases.

  4. Inwood shall dismiss its claims against Apo-
  gee, Miller, and Broussard with prejudice.

  5. Inwood shall dismiss, with prejudice, its
  claims against Wal-Mart [Stores, Inc.] that relate
  to Apogee's games.

  6. Inwood shall dismiss, without prejudice, its
  claims against Wal-Mart [Sores, Inc.] that do not
  relate to Apogee's games.

  7. Each party shall bear its own costs, expenses,
  and attorneys' fees....

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)

**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))**

9. The parties shall execute formal settlement documents in accordance with the terms of this agreement....

On July 9, 1999, the district court held an evidentiary hearing principally to address Wal-Mart's motion to enforce the Settlement Agreement. At the conclusion of the hearing, the district court found that the Settlement Agreement contained sufficient essential terms to be enforceable and that it was unambiguous in setting forth the terms on which the parties would settle. The court also found that the obligations of the parties to execute mutual releases and to execute formal settlement documents set forth in the Settlement Agreement were simply mutual obligations to execute documents that reflect what is set forth in the two-page agreement. In addition, the district court noted that there were no subsequent agreements reached by the parties, and thus, the two-page March 19, 1999 agreement was the only enforceable Settlement Agreement regarding the infringement suit.[FN1] In view of the foregoing, the district court directed the parties to submit an agreed order of dismissal of the infringement suit in accordance with the terms of the Settlement Agreement and noted that the parties had an obligation to execute mutual releases and formal settlement documents incorporating the specific terms set forth in the Settlement Agreement.

> FN1. The district court specifically noted that the formal documentation and counter documentation by the parties prepared after the signing of the Settlement Agreement were merely offers, declined offers, and counteroffers.

**\*2** After this hearing, the parties corresponded with each other to arrive at agreed upon releases and formal documents. However, disputes arose concerning the language of both. In particular, Inwood contended that the mutual releases should not include the release of the parties' agents, shareholders, attorneys, assigns, and successors-in-interest. The district court resolved these disputes in an August 10, 1999 order. In that order the district court

concluded that the Settlement Agreement contemplated that the releases would be full releases, and, as such, it was proper for the mutual release to include the obligation to release the parties and their attorneys. Moreover, the district court ordered the parties to execute the mutual releases and submit the dismissal order to the court no later than August 24, 1999.

On August 24, 1999, pursuant to the district court's August 10, 1999 order, the parties finally submitted an agreed order of dismissal to the court. Consequently, the district court entered judgment dismissing all of Inwood's claims against Wal-Mart on August 27, 1999. On September 17, 1999, Inwood filed a motion requesting not only that the district court vacate its August 27 dismissal order, but also requesting that the court vacate its patent claim construction, and rule as a matter of law that Wal-Mart infringes its patent. The district court denied Inwood's motion on September 20, 1999. Inwood filed a notice of appeal in this court on October 5, 1999.

Wal-Mart moved to dismiss Inwood's appeal to this court as untimely because it was filed well after thirty days from the district court's August 27, 1999 final judgment and because Inwood's September 17, 1999 motion to the district court did not toll the time for filing an appeal of that final judgment in this court. In our Order, we denied Wal-Mart's motion. *See Inwood,* No. 00-1024, slip op. at 1. We determined that Inwood's September 17, 1999 motion could be treated as a motion for relief from judgment under Fed.R.Civ.P. 60(b); and, as such, Inwood's October 5, 1999 appeal was timely filed within thirty days of the district court's September 20, 1999 denial of that 60(b) motion. *Id.*

We have jurisdiction of this appeal under 28 U.S.C. § 1295(a)(1) (1994).

DISCUSSION

A. Standard of Review

Rules 60(b)(1) and 60(b)(6) allow a district court to relieve a party from a final judgment for:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)
**(Table, Text in WESTLAW), Unpublished Disposition**
(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))

(1) mistake, inadvertence, surprise, or excusable neglect; or (2) any other reason justifying relief from the operation of the judgment. Fed.R.Civ.P. 60(b)(1) and (6). Because the denial of a Rule 60(b) motion is a purely procedural question not unique to patent law, we review that denial under the law of the regional circuit where appeals from the district court would normally lie, in this case the Fifth Circuit. *See Marquip, Inc. v. Fosber Am., Inc.,* 198 F.3d 1363, 1369 (Fed.Cir.1999) (citing *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1550 (Fed.Cir.1987)).

**\*3** The Fifth Circuit has noted that Rule 60(b) "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981) (internal citations omitted). Thus, "a Rule 60(b) appeal may not be used as a substitute for the ordinary process of appeal once the appeal period has passed." *In re Ta Chi Navigation (Pan.) Corp. S.A. v. United States,* 728 F.2d 699, 703 (5th Cir.1984); *see also Chick Kam Choo v. Exxon Corp.,* 699 F.2d 693, 695 (5th Cir.1983); *Alvestad v. Monsanto Co.,* 671 F.2d 908, 912 (5th Cir.), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 489, 74 L.Ed.2d 632 (1982).

Relief from final judgments premised on Rule 60(b)(6) requires a showing of "extraordinary circumstances." *See Bailey v. Ryan Stevedoring Co.,* 894 F.2d 157, 160 (5th Cir.1990). Relief from final judgments premised on "mistake" may be invoked in the Fifth Circuit to rectify an obvious error of law apparent on the record, such as when the judgment obviously conflicts with a clear statutory mandate or when the judgment involves a fundamental misconception of the law. *Hill v. McDermott, Inc.,* 827 F.2d 1040, 1043 (5th Cir.1987). But, even assuming that the district court made an error of law, it has the discretion to deny a Rule 60(b) motion where the petitioner has forfeited a proper appeal of the merits, and is by the motion attempting to end-

run the normal appellate process for correcting legal error. *See Halicki v. La. Casion Cruises, Inc.,* 151 F.3d 465, 471 (5th Cir.1987). In other words, even if there was an error of law, the reopening of a judgment is not mandatory. *See Fackelman v. Bell,* 564 F.2d 734, 736 (5th Cir.1977).

Consequently, in the Fifth Circuit, "[m]otions under Rule 60(b) are directed to the sound discretion of the district court and [a] denial of relief upon such motion will be set aside on appeal only for abuse of that discretion .... It is not enough that the granting of relief might have been permissible, or even warranted-denial must have been so unwarranted as to constitute an abuse of discretion." *Godwin v. Fed. Sav. & Loan Ins. Corp.,* 806 F.2d 1290, 1293 (5th Cir.1987) (quoting *Seven Elves,* 635 F.2d at 402) FN2

> FN2. Inwood contends that an abuse of discretion exists if the district court's decision is based on a clearly erroneous factual finding, an erroneous conclusion of law, or the record contains no evidence on which the lower court could have rationally based its decision, or the court's decision is clearly unreasonable, arbitrary or fanciful. In view of *Hill, Fackelman,* and *Godwin,* however, this contention is clearly incorrect. To find that a denial of a Rule 60(b) motion was an abuse of discretion, it is not necessarily enough that the judgment obviously conflicts with a clear statutory mandate or that the judgment involves a fundamental misconception of the law, as that would merely mean that granting of relief would have been permissible. Rather, denial must have been so unwarranted as to constitute an abuse of discretion, and the petitioner must not have forfeited a proper appeal on the merits.

### B. Analysis

Rule 60(b) motions may not be used to obtain relief beyond setting aside the final judgment. *See generally,* 12 James W. Moore et al., *Moore's Fed-*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)
**(Table, Text in WESTLAW), Unpublished Disposition**
(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))

eral Practice, § 60.25 (3rd ed.1999). In other words "[t]he denial of a Rule 60(b) motion does not bring up the underlying judgment for review." *Ta Chi Navigation,* 728 F.2d at 703. Inwood's September 17, 1999 motion: (1) requested that the district court vacate its dismissal order; (2) requested that the court vacate its patent claim construction; and, (3) requested judgment as a matter of law that Wal-Mart infringes the patent in suit. Clearly, Inwood's arguments relating to the dismissal of its claims and the merits of the patent issues are not relevant to our review of the district court's denial of Inwood's 60(b) motion, as they are requests for relief beyond setting aside the final judgment. *Id.; see also* Order, slip op. at 2. Consequently, we will only address Inwood's arguments that pertain to the district court's alleged abuse of discretion in denying Inwood's request to vacate the dismissal order.

**\*4** First, Inwood contends that the evidence does not support the court's factual finding that the parties had reached an enforceable settlement agreement upon which the case should be dismissed. In support of this contention, Inwood asserts that the parties never came to a meeting of the minds as to what the Settlement Agreement covered. Inwood contends that there were communications from both sides after March 19, 1999 regarding changes to the agreement, which indicate that all of the terms of the agreement were not settled. Moreover, the content of those communications evidence that the sides were at polar opposites with respect to certain provisions of the agreement.

In further support of its contention that no enforceable settlement agreement had been reached, Inwood asserts that neither Wal-Mart Stores, Inc. nor George Broussard, one of the owners of Apogee, signed the Settlement Agreement. Instead, only an associate attorney of the law firm whose partners represent these two parties signed for them. Inwood contends that the failure of the two clients to sign the March 19, 1999 document themselves renders it an unenforceable agreement.

The foregoing arguments do not evince that the district court had a fundamental misconception of the law as to contract formation regarding the Settlement Agreement. As to the issue of execution of the agreement by Wal-Mart Stores, Inc.'s counsel on behalf of it and Broussard, we note that to prevail on a Rule 60(b) motion premised on the court's allegedly mistaken belief that counsel had settlement authority, the movant must establish that the attorney acted without any kind of authority. *See Infante v. Bridgestone/Firestone, Inc.,* 6 F.Supp.2d 608, 610 (E.D.Tex.1998); *Crum & Forster, Inc. v. Monsanto Co.,* 887 S.W.2d 103, 124 (Tex.App.1994). However, a party's counsel is presumed to have settlement authority when counsel is present at a mediation session intended to settle a lawsuit. *See Walden v. Sanger,* 250 S.W.2d 312, 316 (Tex.Civ.App.1952); *Applewhite v. Sessions,* 131 S.W.2d 301, 304 (Tex.Civ.App.1939). To overcome this presumption, Inwood would have had to provide affirmative proof that the attorney had no right to consent to a settlement. *See Williams v. Nolan,* 58 Tex. 708 (1883), available at 58 Tex. 708, 1883 WL 9093, at \*5; *Walden,* 250 S.W.2d at 316.

The purpose of the March 19 mediation session was to settle the infringement suit. Moreover, the Settlement Agreement specifically indicates that the person who signed for Wal-Mart Stores, Inc. was "counsel for" them. In addition, the Settlement Agreement specifically includes that associate's indication that he was also signing the document "as counsel for ... Broussard." Furthermore, the district court noted that Inwood has not provided affirmative proof that the associate had no right to consent to the settlement agreement. In view of the foregoing circumstances and the presumption, we conclude that Inwood's argument as to the execution of the agreement lacks merit.

**\*5** Furthermore, the district court considered and rejected Inwood's arguments regarding the meeting of the minds of the parties in the July 9, 1999 hearing. In particular, the court noted that notwithstanding the fact that Inwood disagreed with the Markman claim interpretation going into the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)
**(Table, Text in WESTLAW), Unpublished Disposition**
(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))

mediation, the signed agreement FN3 contains essential terms so as to be enforceable. Moreover, the district court noted that the Settlement Agreement is unambiguous, and it sets forth the terms on which the parties would settle. In addition, the court pointed out that none of the post-mediation offers and counteroffers for changes to the Settlement Agreement were accepted by the parties; and, thus, it was proper to enforce the original document produced at the mediation. FN4

FN3. Inwood contends that the Settlement Agreement is a draft document and in view of *Wang Lab., Inc. v. Applied Computer Sci., Inc.,* 958 F.2d 355, 359, 22 USPQ2d 1055, 1059 (Fed.Cir.1992), it is unenforceable. However, we disagree that *Wang* dictates that the instant Settlement Agreement is an unenforceable draft because, unlike in *Wang,* the Settlement Agreement was signed by the parties. Moreover, the document contains no other indicia that it is a draft.

FN4. Inwood asserts, in the alternative, that the post-mediation correspondence between the parties constitutes a repudiation or anticipatory breach of the Settlement Agreement. However, an anticipatory breach occurs only when a party makes a clear and unequivocal statement of his intention to break the contract when his performance comes due-a statement "sufficiently positive to be reasonably understood as meaning that the breach will actually occur ." 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.21, p. 475 (1990); *see also Mobley v. New York Life Ins. Co.,* 295 U.S. 632, 638, 55 S.Ct. 876, 79 L.Ed. 1621 (1935)(noting that repudiation by one party, to be sufficient to entitle the other to treat the contract as absolutely and finally broken, must at east amount to an unqualified refusal, or declaration of inability, substantially to perform

according to the terms of his obligation). In view of the foregoing, we note that there can be no breach of the Settlement Agreement where the post-mediation offers or counteroffers regarding the mutual releases and formal documents did not manifest either parties' intent to breach the dismissal of the claims of the infringement suit, i.e., to substantially perform under the contract. Therefore, this argument also does not support a finding of an abuse of discretion.

Our review of the terms of the Settlement Agreement supports the district court's determination that the agreement, as a contract, contained unambiguous terms and is binding on the parties. Thus, none of Inwood's arguments regarding the lack of a meeting of the minds convince us that the district court made an error of law. Therefore, none of Inwood's arguments in this regard provide evidence to support an abuse of discretion by the district court in dismissing the Rule 60(b) motion.

Inwood also contends that because there was never a meeting of the minds as to the Settlement Agreement, in that "not all parties" signed it, and it lacked consideration, the agreement was invalid. Thus, Inwood asserts that the district court erred as a matter of law in enforcing the Settlement Agreement against it. As we noted above, Inwood's contention that not all of the parties signed the agreement is without merit. As for the contention regarding lack of consideration, the district court considered and rejected that argument in the July 9, 1999 hearing. The district court recognized that contract formation requires consideration, noting specifically that consideration is implied in a written contract. Moreover, the district court indicated that the party seeking to demonstrate a lack of consideration bears the burden of proof, which burden it found Inwood had not carried.

We agree that in the Fifth Circuit there is a presumption of sufficient consideration to support a written agreement that is signed by the parties sought to be charged. *See Tag Res., Inc. v. Petro-*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 243 F.3d 567, 2000 WL 1720676 (C.A.Fed.))**

*leum Well Serv., Inc.,* 791 S.W.2d 600, 605-606 (Tex.App.1990); *Cortez v. Nat'l. Bank of Commerce,* 578 S.W.2d 476, 479 (Tex.App.1979); 14 Tex. Jur.3d Contracts, sec. 104 (1988 Supp.). Moreover, we agree that in the Fifth Circuit, a party who wishes to contest the existence of consideration for a written contract has the burden of proving a lack of consideration. *See* Tex.R. Civ. P. 93(9). Furthermore, in the Fifth Circuit surrendering a legal right represents valid consideration. *N. Natural Gas Co., v. Conoco, Inc.,* 986 S.W.2d 603, 607 (Tex.1998). In this regard, as Wal-Mart points out, its claims for costs and attorney's fees were extinguished as a term of the Settlement Agreement. Thus, we cannot say that the district court fundamentally misconceived the law regarding consideration. Consequently, this argument by Inwood does not support a finding of an abuse of discretion.

**\*6** Lastly, Inwood asserts that it was unreasonable for the district court to require that the mutual release include the obligation to release the parties and their attorneys. This last contention was not raised by Inwood before the district court. It is within our discretion to resolve issues raised for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("The matter of what questions may be taken and resolved for the first time on appeal is one left primarily to the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule.") Because this is not a purely legal issue in which the record pertinent to resolution of the issue has been fully developed, we exercise our discretion not to address it. *See Jay v. Sec'y of Health and Human Servs.,* 998 F.2d 979, 983 n. 4 (Fed.Cir.1993) (declining to consider a complex legal issue not raised); *Cemex, S.A. v. United States,* 133 F.3d 897, 904 (1998) (declining to address an argument raised for the first time on appeal that involved resolution of factual issues).

In addition to the foregoing, we note all of Inwood's arguments are ones that could have been made on a timely appeal of the final judgment. In-

wood, however, failed to do this. We conclude that Inwood is attempting to improperly end-run the normal appellate process for correcting legal error through its Rule 60(b) motion. *See Fackelman,* 564 F.2d at 736; *Alvestad,* 671 F.2d at 913. Under the foregoing circumstances, Rule 60(b) cannot be considered an appropriate avenue of relief for Inwood.

CONCLUSION

Allowing Inwood to invoke Rule 60(b) would allow it to challenge alleged mistakes of law that should have been raised on a direct appeal of the judgment. It would also permit the circumvention of the time restrictions for an appeal, and thus, would undermine the concepts of orderly procedure and desirable finality in judgments. For the reasons discussed above, we discern no abuse of discretion in the district court's denial of Inwood's September 17, 1999 motion, which we have deemed to be a Rule 60(b) motion. Thus, we affirm the district court's judgment denying that motion.

C.A.Fed.,2000.
Inwood Intern. Co. v. Wal-Mart Stores, Inc.
243 F.3d 567, 2000 WL 1720676 (C.A.Fed.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 10

Not Reported in F.Supp.2d, 2013 WL 621935 (D.Nev.)
**(Cite as: 2013 WL 621935 (D.Nev.))**

H

Only the Westlaw citation is currently available.

United States District Court,
D. Nevada.
Wildy LAUREN, Plaintiff,
v.
William NELLIS, et al., Defendants.

No. 2:10–CV–01544–KJD–PAL.
Feb. 19, 2013.

Wildy Lauren, Las Vegas, NV, pro se.

Thomas D. Dillard, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, for Defendants.

### ORDER

KENT J. DAWSON, District Judge.

**\*1** Presently before the Court is Plaintiff's Motion to Vacate Judgment (# 68). Defendants filed a response in opposition (# 70). Also before the Court is Plaintiff's Motion to Quash/Oppose (# 72). Plaintiff then filed a Motion for a Hearing and Notice of Newly Found Discoveries (# 73/74). Defendants filed a response in opposition (# 76). Plaintiff then filed a Notice of Defendants' Failure to Serve an Opposition and Motion for E-mail Notification (# 77).

*I. Background and Procedural History*

Plaintiff filed the present action on August 3, 2010 in Nevada state court under 28 U.S.C. § 1983 asserting that Defendants violated her constitutional rights under color of state law. Plaintiff asserts that Defendants violated her right to be free from unreasonable search and seizure and excessive force. This action was subsequently removed to federal court and Plaintiff filed her amended complaint on December 20, 2010. The amended complaint asserted claims for violations of Plaintiff's Fourth and Fifth Amendment rights, a state law claim for intentional infliction of emotional distress, and a Monell claim against the Las Vegas Metropolitan Police

Department. On November 17, 2011, the Court granted (# 62) Defendants' motion for summary judgment and Judgment (# 63) was entered against Plaintiff. On May 16, 2012, Plaintiff filed the present motion to vacate the judgment under Federal Rule of Civil Procedure 60(b), asserting that she did not receive notice of hearings, clerical mistakes were made in the Court's findings of fact and that she had newly discovered evidence.

*II. Reconsideration*

A motion to reconsider a final appealable order is appropriately brought under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See United States v. Martin,* 226 F.3d 1042, 1048 n. 8 (9th Cir.2000). Motions for reconsideration are committed to the discretion of the trial court. *See School Dist. No. 1J. Mutlinomah County v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir.1993).

A Rule 59(e) motion must be filed no later than twenty-eight (28) days following entry of the final judgment. *See* Fed.R.Civ.P. 59(e). A motion for reconsideration is treated as a Rule 59(e) motion if it is timely filed within the specified twenty-eight-day period. *See Am. Ironworkers & Erectors Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 899 (9th Cir.2001).[FN1] Otherwise, the motion is treated as a Rule 60(b) motion for relief from judgment or order. *See id.*

> FN1. In 2009, Rule 59(e) was amended to change the time for filing a Rule 59(e) motion from ten to twenty-eight days.

Pursuant to Rule 60(b), reconsideration is appropriate only upon a showing of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) an adverse party's fraud, misrepresentation, or other misconduct; (4) a void judgment; (5) a satisfied, released or discharged judgment; or (6) any other reason justifying relief from the operation of the judgment. *See* Fed.R.Civ.P. 60(b). A party can obtain relief under

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 621935 (D.Nev.)
**(Cite as: 2013 WL 621935 (D.Nev.))**

Rule 60(b) only upon an adequate showing of exceptional or extraordinary circumstances. *See Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995). A Rule 60(b) motion must be filed within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered. *See* Fed.R.Civ.P. 60(b). Errors of law are cognizable under Rule 60(b)(1). *See Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir.1999). Also, Rule 60(b) allows a district court judge to vacate a judgment on its own motion if after "mature judgment and re-reading the record he [is] apprehensive that he had made a mistake." *Id.* at 352. However, due process requires the court to give notice and an opportunity to be heard before vacating a judgment on its own motion. *See id.*

**\*2** A motion for reconsideration should not merely present arguments previously raised; that is, a motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented. *See Merozoite v. Thorp,* 52 F.3d 252, 255 (9th Cir.1995); *Beentjes v. Placer County Air Pollution Control District,* 254 F.Supp.2d 1159, at 1161 (E.D.Cal.2003); *Khan v. Fasano,* 194 F.Supp.2d 1134, 1136 (S.D.Cal.2001) ("A party cannot have relief under this rule merely because he or she is unhappy with the judgment."). "As a general rule, the Court does not consider evidence on a motion for reconsideration if the evidence could have been provided before the decision was rendered initially." *Arizona Civil Liberties Union v. Dunham,* 112 F.Supp.2d 927, 935 (D.Ariz.2000) (citing *School Dist. No. 1J.,* 5 F.3d at 1263). In order for a party to demonstrate clear error, the moving party's arguments cannot be the same as those made earlier. *See Glavor v. Shearson Lehman Hutton, Inc.,* 879 F.Supp. 1028, 1033 (N.D.Cal.1994). If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived. *See id.* It is not an abuse of discretion for a district court to decline to address an issue raised for the first time in a motion for reconsideration. *See 389 Orange Street Partners v.*

*Arnold,* 178 F.3d 656, 665 (9th Cir.1999).

In order to meet the "newly discovered evidence" requirement within the meaning of Rules 60(b)(2) and 59, parties must show the evidence: "(1) is truly-newly discovered; (2) could not have been discovered through due diligence; and (3) is of such a material and controlling nature that it demands a probable change in the outcome." *United States v. Westlands Water Dist.,* 134 F.Supp.2d 1111, 1130 n. 45 (E.D.Cal.2001); *see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211 (9th Cir.1987). Failure to file documents in an original motion or opposition does not turn the late-filed documents into newly discovered evidence. *See School Dist. No. 1J.,* 5 F.3d at 1263. Under both Rules 59 and 60, if the evidence was in the possession of the party before the judgment was rendered it is not newly discovered. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 212 (9th Cir.1987). Moreover, fact of possession makes clear the party did not use due diligence to discover it. *See Coastal Transfer Co.,* 833 F.2d at 212.

*III. Analysis*

It is clear that most of Plaintiff's arguments are her mere disagreement with the Court's previous order on the motion for summary judgment. Mere disagreement with the Court's ruling is not grounds for reconsideration under Rule 60(b). For example, Plaintiff's assertion that "clerical mistake[s]" made the Court's factual findings clear error are mistaken and at best argumentative. For example, the first error identified by Plaintiff that the Court committed clear error when it mistakenly found "that neighbor Bach asserted that Plaintiff Wildy Lauren deliberately tried to strike Ms. Bach with her vehicle" does not withstand analysis. First, the Court did not find that Plaintiff deliberately attempted to strike Bach with her car. Instead, the Court found that Bach made that assertion in Bach's 911 call leading to Lauren's confrontation with the police. It is undisputed that Bach made the assertion in her 911 call. Just as this argument is clearly incorrect, Plaintiff's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 621935 (D.Nev.)
**(Cite as: 2013 WL 621935 (D.Nev.))**

subsequent arguments are so insubstantial as to require no further consideration.

**\*3** As to Plaintiff's claim that she did not receive notice of hearings, it is undisputed that in one instance the magistrate judge noted that Plaintiff had not been properly notified of a hearing held by the magistrate. Plaintiff was not prejudiced by her failure to appear at the hearing as noted by the Court. Instead of hearing argument on the motion, the magistrate judge only considered the briefing and properly issued an order based only on the written briefing. Plaintiff never objected to the magistrate's ruling, making it the law of the case. Further, this Court did not hold a hearing on Defendants' Motion for Summary Judgment (# 62), instead finding the motion appropriate for resolution on the briefing. Therefore, Plaintiff's motion to vacate based on this claim is denied.

Finally, Plaintiff argues that compact discs ("CDs") that she filed separately with her motions contains newly discovered evidence that require the Court to vacate judgment. However, Plaintiff has failed to point out that any specific item on the CDs is newly discovered evidence, or what specific items require the Court to vacate its judgment. Judges are not required to evaluate Plaintiff's lump of "evidence" and determine how it best aids Plaintiff's argument that the judgment should be vacated. *See U.S. v. Dunkel,* 927 F.2d 955 (7th Cir.1991)("Judges are not like pigs, hunting for truffles buried in briefs."). Instead, Plaintiff is required to lay out the evidence and pinpoint the exact portions that support her argument.

Even if the Court considers the evidence on the CDs, it is clear that one CD contains no newly discovered evidence, but is video and photographs that Plaintiff has had access to from the beginning of her action. The second CD appears to contain video of her criminal trial for misdemeanor obstruction of a police officer, for which she was found guilty. She identifies no specific testimony as requiring a new trial. The Court will not do so for her. Her motions are denied, and the Court will consider no further motions for reconsideration or to vacate.

*IV. Conclusion*

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Vacate Judgment (# 68) is **DENIED;**

IT IS FURTHER ORDERED that Plaintiff's Motion to Quash (# 72) is **DENIED;**

IT IS FURTHER ORDERED that Motion for a Hearing and Notice of Newly Found Discoveries (# 73/74) is **DENIED;**

IT IS FURTHER ORDERED that Plaintiff's Motion for E-mail Notification (# 77) is **DENIED.**

D.Nev.,2013.
Lauren v. Nellis
Not Reported in F.Supp.2d, 2013 WL 621935 (D.Nev.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 11

Slip Copy, 2013 WL 5676304 (N.D.Tex.)
**(Cite as: 2013 WL 5676304 (N.D.Tex.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
Tracy NIXON, Plaintiff,
v.
Greg ABBOTT, Defendant.

No. 3:13–cv–3807–N.
Oct. 18, 2013.

Tracy Nixon, Dallas, TX, pro se.

**ORDER**

DAVID C. GODBEY, District Judge.

**\*1** The United States Magistrate Judge made findings, conclusions and a recommendation in this case. No objections were filed. The District Court reviewed the proposed findings, conclusions and recommendation for plain error. Finding none, the Court ACCEPTS the Findings, Conclusions and Recommendation of the United States Magistrate Judge. Plaintiff's motion to transfer venue [Dkt. No. 9] is therefore DENIED.

SO ORDERED.

***FINDINGS, CONCLUSIONS, AND RECOM-
MENDATION OF THE UNITED STATES MA-
GISTRATE JUDGE***

DAVID L. HORAN, United States Magistrate Judge.

Plaintiff Tracy Nixon has filed a motion seeking transfer of venue to the Northern District of Illinois in this 42 U.S.C. § 1983 proceeding. *See* Dkt. No. 9. Plaintiff alleges that venue should be changed because the undersigned sent a notice to Plaintiff reminding him that he had previously been given a sanctions warning and because Plaintiff has filed a judicial complaint against a district judge and bankruptcy judge of this Court. *See id.*

Venue in a civil rights action is governed by 28 U.S.C. § 1391(b). *See Davis v. Louisiana State Univ.,* 876 F.2d 412, 413 (5th Cir.1989).

This statute provides that venue is proper in the judicial district: (1) where the defendant resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3), if there is no district where the action may otherwise be brought, in any judicial district in which any defendant is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(b).

The Court may transfer a case to any proper judicial district or division "for the convenience of parties and witnesses, in the interest of justice," *id.* § 1404(a*); see also Hardwick v. Brinson,* 523 F.2d 798, 800 n. 2 (5th Cir.1975), or may transfer a case filed in the wrong district or division "to any district or division in which it could have been brought," 28 U.S.C. § 1406(a).

Here, Plaintiff claims that Defendant Abbott violated his constitutional rights by seeking to enforce a child support order despite the automatic stay provisions of the Bankruptcy Code. *See* Dkt. No. 3 at 1–9. All such conduct allegedly occurred in the Northern District of Texas or is associated with civil proceedings instituted in the 301st Judicial District Court of Dallas County, Texas or bankruptcy proceedings that have taken place in the Northern District of Texas. *See id.* at 1–2.

None of Plaintiff's allegations involve any defendants residing in, or conduct taking place in, the Northern District of Illinois. And Plaintiff has not established that Defendant is subject to the personal jurisdiction of that court.

Plaintiff's conclusory allegations of judicial bias—which are insufficient to justify recusal of the undersigned, as the undersigned has ruled in an order entered on this same date—do not support transfer to the Northern District of Illinois or any

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5676304 (N.D.Tex.)
**(Cite as: 2013 WL 5676304 (N.D.Tex.))**

other district. Plaintiff invokes the presumed preju-
dice doctrine, but that doctrine has no application
here. *See generally Mayola v. State of Ala., 623
F.2d 992, 996–97 (5th Cir.1980)* (addressing pre-
sumed prejudice due to pervasive pretrial publi-
city). Plaintiff has not alleged any adverse pretrial
publicity. Rather, he asserts that a potential juror
could review the docket in this case and discover
the undersigned's notice regarding the prior sanc-
tions warning against him in another case. Not only
is this allegation, on its face, too attenuated to sup-
port a finding of presumed prejudice, but, here, the
undersigned's order made no finding that the law-
suit is frivolous, malicious, or fails to state a claim..
*See* Dkt. No. 6.

**\*2** Plaintiff also asserts that the Court should
presume that another judge of this Court will be
called as a witness in some other action. This as-
sumption likewise does not support a change of
venue under the presumed prejudice doctrine.

### Recommendation
Plaintiff's motion to transfer venue [Dkt. No. 9]
should be DENIED.

A copy of these findings, conclusions, and re-
commendation shall be served on all parties in the
manner provided by law. Any party who objects to
any part of these findings, conclusions, and recom-
mendation must file specific written objections
within 14 days after being served with a copy. *See*
28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In
order to be specific, an objection must identify the
specific finding or recommendation to which objec-
tion is made, state the basis for the objection, and
specify the place in the magistrate judge's findings,
conclusions, and recommendation where the dis-
puted determination is found. An objection that
merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.
Failure to file specific written objections will bar
the aggrieved party from appealing the factual find-
ings and legal conclusions of the magistrate judge
that are accepted or adopted by the district court,
except upon grounds of plain error. *See Douglass v.*

*United Services Auto. Ass'n,* 79 F.3d 1415, 1417
(5th Cir.1996).

N.D.Tex.,2013.
Nixon v. Abbott
Slip Copy, 2013 WL 5676304 (N.D.Tex.)

END OF DOCUMENT

# TAB 12

Westlaw.

Not Reported in F.Supp.2d, 2012 WL 5588384 (E.D.Pa.)
**(Cite as: 2012 WL 5588384 (E.D.Pa.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Carmencita Maria PEDRO, in her own right and as
natural mother and next best friend to her minor
son, K.L.F., Plaintiff,
v.
OFFICE FOR DISPUTE RESOLUTION et al., Defendants.

Civil Action No. 11–777.
Nov. 14, 2012.

Carmencita Maria Pedro, Philadelphia, PA, pro se.

John D. Blumenthal, Law Offices of John D. Blumenthal, Doylestown, PA, Jonathan E. Butterfield, Murphy Butterfield Holland, Williamsport, PA, A. Richard Feldman, Christina Maria Reger, Bazelon Less & Feldman PC, Philadelphia, PA, for Defendant.

**MEMORANDUM**

YOHN, District Judge.

**\*1** Plaintiff, Carmencita Maria Pedro, moves for relief under Federal Rule of Civil Procedure 60(b) from orders I issued granting defendants' motions to dismiss. For the reasons set forth below, and in the interest of finality, I will deny her motion.

**I. Factual and Procedural Background**

Pedro brought this action on behalf of herself and her son, K.L.F ., against defendants, the Office for Dispute Resolution ("ODR"), Anne Carroll, the School District of Philadelphia, Kimberly Caputo, Dolores Liebel, Linda Williams, Rachel Holzman, Eileen Bazelon, and Kenneth Cooper. She invoked the Individuals with Disabilities Education Improvement Act of 2004, Section 504 of the Rehabilitation Act of 1973, and a host of other federal and state statutes and regulations.

Some time prior to January 2011, Pedro initiated special-education due process administrative proceedings against the School District. The proceedings were conducted by ODR with Carroll as the Hearing Officer. Caputo served as Assistant General Counsel to the School District. On January 29, 2011, Carroll issued an order dismissing Pedro's case. On February 8, 2011, Pedro filed this federal action, styling it as an appeal of the administrative dismissal order. Pedro amended her complaint twice, in April and June 2011, to add various doctors and lawyers associated with the School District as defendants.

In July and August of 2011, the defendants all filed motions to dismiss the case. On August 17, 2011, Pedro filed for an extension of time to respond. On August 22, 2011, I granted Pedro's motion and set September 22, 2011, as the deadline. Pedro never filed a response, and on October 3, 2011, I granted the motions and dismissed all defendants from the case with prejudice.

Unknown to the court at the time, a series of tragedies had stricken Pedro and her family during the summer of 2011. Pedro argues that these circumstances kept her from prosecuting the instant action. Specifically, in June 2011, K.L.F. was discharged from a residential treatment facility, where he had resided since September 2009 as a result of substance-abuse and behavioral issues related to his bipolar disorder. After his discharge, K.L.F. went to live with his biological father. He discontinued his perscribed medication and therapeutic treatment, and began to self-medicate with illicit drugs. All efforts by Pedro to intervene were ignored, and K.L.F.'s behavior and emotional state became increasingly volatile.

In June 2012, as a result of this downward spiral, K.L.F. became homeless. He spent the summer jumping in and out of psychiatric hospitals, until he was finally readmitted to a residential treatment facility in August 2012. I have no doubt that watch-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5588384 (E.D.Pa.)
**(Cite as: 2012 WL 5588384 (E.D.Pa.))**

ing her only child's deterioration was, as Pedro writes, "absolutely heart-wrenching and agonizing for the Plaintiff." (Motion for Relief from Judgment or Order and Motion to Reopen Civil Action No. 11–cv–777 ("Mot. to Reopen") at 5.)

**\*2** K.L.F.'s crisis was not the only hardship Pedro faced during this time. Between June and August 2011, Pedro's income was substantially diminished when her employment contract with a local yoga studio expired and was not renewed. Moreover, in August 2011, Hurricane Irene caused so much damage to her home that it was rendered uninhabitable. Pedro was without homeowners insurance and was ineligible for FEMA assistance. While dealing with the fallout of the hurricane, Pedro sustained an injury that impacted her ability to work between September and November 2011; this further undercut her income. Pedro struggled to secure further employment and repair the damage to her home. She avers that only recently, in September 2012, has she found additional opportunities for work, such that she can "earn a living sufficient to meet her most basic living expenses." (Mot. to Reopen at 6.)

Thus, exactly one year after I ordered her case dismissed, Pedro filed the motion for relief from judgment currently under consideration. She asks that I vacate the dismissal orders pursuant to Federal Rules of Civil Procedure 60(b)(1), 60(b)(2), and 60(b) (6).

## II. Discussion

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." "[A] motion for relief from a judgment under Rule 60(b) is addressed to the discretion of the court ... [and t]he policy of the law to favor a hearing of a litigant's claim on the merits must be balanced against the desire to achieve finality in litigation." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2857 (2d ed.2012).

Relief under Rule 60(b) may be appropriate

where a movant shows "mistake, inadvertence, surprise, or excusable neglect" (60(b) (1)) or "newly discovered evidence that, with reasonable diligence, could not have been discovered" earlier (60(b)(2)). Rule 60(b) (6) is a catchall provision stating that a movant may prevail for "any other reason that justifies relief." Under Rule 60(c), a 60(b) motion that relies on subsections (1)-(3) must be filed within a year of the judgment targeted. Otherwise, the only restraint is that motion "must be made within a reasonable time" of the judgment.

Because Pedro filed this within a year of the dismissal orders, all the reasons under Rule 60(b) are available to her. I address her contentions in turn.

## A. Subsection (b)(1)

"The test for excusable neglect is equitable," and I must focus on the "totality of the circumstances." *Nara v. Frank,* 488 F.3d 187, 194–95 (3d Cir.2007) (internal quotation marks omitted). In particular, I must consider "1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay—and whether it was within the movant's control; and 4) whether the movant acted in good faith." *Id.* at 195.

**\*3** An equitable, totality-of-the-circumstances analysis should also look to the merits of the movant's case. *See Budget Blinds, Inc. v. White,* 536 F.3d 244, 256 (3d Cir.2008) (in determining whether to set aside default judgment, court should see whether defendant has meritorious defense); *Lorenzo v. Griffith,* 12 F.3d 23, 27 (3d Cir.1993) (applying the default-judgment standards when plaintiff sought reconsideration of grant of summary judgment); *Andrews v. Time, Inc.,* 690 F.Supp. 362, 365 (E.D.Pa.1988) ("Even if plaintiff could demonstrate excusable neglect, which she cannot, she must assert a defense on the merits against the Time defendants' motion to dismiss or for summary judgment in order to prevail on her Fed.R.Civ.P. 60(b) motion.").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5588384 (E.D.Pa.)
**(Cite as: 2012 WL 5588384 (E.D.Pa.))**

In light of these considerations, Pedro is not entitled to relief under Rule 60(b)(1). I am sympathetic to the hardships she has faced over the past year and a half. And, clearly, her son's relapse, her injury, her loss of employment, and the damage caused by Hurricane Irene were circumstances outside of her control. But Pedro's explanation fails to account for the *length* of the delay. Pedro admits receiving the court orders of August 22 and October 3 as early as November 2011. While I would not expect Pedro to file her 60(b) motion immediately, there is no excuse for her waiting eleven months. Any contention that she was completely unable to act until September 2012 (the point at which she fully healed from her injury and supplemented her income) is simply incredible.

Moreover, Pedro has not provided any indication in her brief that she would be able to survive defendants' motions to dismiss. The defendants argued for dismissal on a variety of grounds, including judicial immunity (Carroll and ODR); Eleventh Amendment immunity (Carroll and ODR); failure to state a claim under Rule 12(b)(6) due to complete lack or insufficiency of factual allegations (Bazelon, Liebel, Williams, Holzman, Caputo, Cooper, and the School District); lack of subject-matter jurisdiction under Rule 12(b)(1) for failure to exhaust administrative remedies (same); Pedro as a non-lawyer cannot sue on behalf of her son (same); insufficient service of process under Rule 12(b)(5) (same). I do not express any view on the merits of these arguments; however, Pedro's complete failure to address them makes me reluctant to exercise my discretion at the cost of finality. Moreover, case law indicates that the burden is on the movant to demonsrate that she is entitled to relief under Rule 60(b)(1). *See Ethan Michael Inc. v. Union Tp.,* 392 F. App'x 906, 909 (3d Cir.2010) (affirming in case where district court reasoned that movant "had the burden of proving that it was entitled to relief under the four [Pioneer] factors"). Again, without any argument whatsoever, Pedro necessarily fails to meet this burden.

**B. Subsection (b)(2)**

"The movant under Rule 60(b) [ (2) ] bears a heavy burden, which requires more than a showing of the potential significance of the new evidence." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir.1991) (internal citations and quotation marks omitted). Here, Pedro writes that communications with defendants have "revealed the existence of evidence that, with reasonable diligence, could not have been discovered" earlier. (Mot. to Reopen at 7.) Pedro does not explain the nature of this new evidence or its impact on the case. And she only conclusorily asserts that it could not have been discovered earlier without reasonable diligence. I find Pedro's vague assertion falls far short of the "heavy burden" she carries under Rule 60(b)(2).

**C. Subsection (b)(6)**

**\*4** "To justify relief under subsection (6), a party must show extraordinary circumstances suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (internal quotation marks omitted). The circumstances Pedro describes may well be extraordinary. *See Klapprott v. United States,* 335 U.S. 601, 613–614, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (poverty, illness, and incarceration "set up an extraordinary situation" where petitioner could not defend against denaturalization proceeding. And, of course, Pedro is not at fault for the hardships themselves. However, as I explain above, I do not believe that the circumstances she describes can account for the full period of delay in filing the current motion. And insofar as Pedro has been careless or lackadaisical in pursuing her action, she is not "faultless in the delay." *See Ethan Michael Inc.,* 392 F. App'x at 910 n. 5 ("[I]f a party contributes to the delay, relief is foreclosed under Rule 60(b)(6) .") (emphasis omitted). Therefore, she is not entitled to relief from judgment under Rule 60(b)(6).

**III. Conclusion**

For the reasons set forth above, I will deny Pedro's motion for relief from the orders of October

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5588384 (E.D.Pa.)
**(Cite as: 2012 WL 5588384 (E.D.Pa.))**

3, 2011, dismissing all defendants .[FN1] An appro-
priate order follows.

> [FN1]. Only Carroll, ODR, and Bazelon
> have filed responses in opposition to the
> instant motion. This raises the possibility
> of granting Pedro's motion as uncontested
> with regard to the non-responsive defend-
> ants. *See* E.D. Pa. Civ. R. 7.1(c) ("In the
> absence of timely response, the motion
> *may* be granted as uncontested.")
> (emphasis added). However, I find the al-
> legations in Pedro's second amended com-
> plaint to be nonspecific and I believe her
> lawsuit is likely without merit. Reopening
> the case, meanwhile, will lead to a signific-
> ant expenditure of judicial resources (not
> to mention the cost to the defendants).
> Therefore, I decline to exercise my discre-
> tion under Local Rule 7.1 to grant the mo-
> tion in part as uncontested.

E.D.Pa.,2012.
Pedro v. Office for Dispute Resolution
Not Reported in F.Supp.2d, 2012 WL 5588384
(E.D.Pa.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 13

Not Reported in F.Supp.2d, 2005 WL 2136917 (W.D.N.Y.)
**(Cite as: 2005 WL 2136917 (W.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Darryl A. PHELPS, Plaintiff,
v.
N. KAPNOLAS, et al, Defendants

No. 94-CV-7543-CJS.
Sept. 2, 2005.

Darryl A. Phelps 98-A-3370, Attica Correctional Facility, Attica, NY, for Plaintiff, pro se.

Charles D. Steinman, A.A.G., New York State Attorney General's Office, Rochester, New York, for Defendants.

DECISION & ORDER
SIRAGUSA, J.

### INTRODUCTION

**\*1** Plaintiff brought an action pursuant to 42 U.S.C. § 1983. Now before the Court is plaintiff's motion for relief from judgment, pursuant to Rule 60(b), of the Rules of Federal Civil Procedure. For the reasons stated below, plaintiff's motion is denied.

### BACKGROUND

The factual and procedural background of this case was set forth in this Court's Decision and Order [# 126], filed on June 1, 2005, and will not be repeated here. In that Order, the Court granted defendants' motion for summary judgment after finding that, *inter alia,* plaintiff had failed to prove both the subjective and objective elements of his Eighth Amendment claim, and that, in any event, defendants were entitled to qualified immunity. Judgment was entered against plaintiff [# 127] on June 7, 2005, and on June 9, 2005, plaintiff filed a Notice of Appeal [# 128] to the United States Court of Appeals for the Second Circuit. On June 27, 2005, plaintiff filed the instant motion with this Court in which he seeks relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Plaintiff's motion also appears to be requesting permission to submit a cross-motion for partial summary judgment. For the reasons that follow, plaintiff's motion is denied.

### STANDARDS OF LAW

Rule 60(b) states, in pertinent part: "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]" FED. R. CIV. P. 60(b)(1).

Rule 60(b), "allows extraordinary judicial relief, [therefore] it is invoked only upon a showing of exceptional circumstances. A motion seeking such relief is addressed to the sound discretion of the district court with appellate review limited to determining whether that discretion has been abused." *Nemaizer v. Baker,* 793 F.2d 58, 61-62 (2d Cir.1986). Since plaintiff is now proceeding *pro se,* the court must read his papers "liberally, interpreting them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

### DISCUSSION

Plaintiff does not specify under which subsection of Rule 60(b) he seeks relief. However, since he alleges ineffective assistance of counsel, the Court will analyze his application under subsection (1), which is the one under which "relief from counsel's error is usually sought ..." *Nemaizer,* 793 F.2d at 62.

In explaining how his counsel was ineffective, plaintiff claims that his attorney erred in not making a motion for "cross summary judgment partial judgment," and "put an opposition without first confronting me [sic]." (Pl.'s Mot. Partial Summ. J. at 2.) Plaintiff's papers are not entirely clear, but he appears to misconstrue his attorney's papers filed in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2136917 (W.D.N.Y.)
**(Cite as: 2005 WL 2136917 (W.D.N.Y.))**

in opposition to defendants' summary judgment motion, as being in opposition to summary judgment for him.

**\*2** The Second Circuit has held that neither poor strategy on the part of an attorney, nor disagreement with the strategic decisions of an attorney, are appropriate grounds for relief pursuant to rule 60(b):

[W]e have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney.... Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.

*Nemaizer v. Baker,* 793 F.2d at 62 (internal citations and quotations omitted). Plaintiff contends that his attorney erred in submitting an opposition to summary judgment, and that had he not done so, plaintiff would have prevailed in a jury trial. The Court need not determine whether or not this is so, because plaintiff's complaint clearly relates to his attorney's strategy, which is not an appropriate circumstance for Rule 60(b) relief. Accordingly, plaintiff's motion is denied. Since plaintiff's motion for relief pursuant to Rule 60(b) has been denied, the Court deems it unnecessary to consider plaintiff's motion for "cross summary partial judgment."

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

W.D.N.Y.,2005.
Phelps v. Kapnolas
Not Reported in F.Supp.2d, 2005 WL 2136917 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 14

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4542877 (D.S.C.)
**(Cite as: 2008 WL 4542877 (D.S.C.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. South Carolina,
Charleston Division.
REVOLUTIONS MEDICAL CORPORATION,
Plaintiff,
v.
Jerard VIVERITO and Jerry V Consulting, LLC,
Defendants.

C/A No. 2:07-3711-MBS.
Oct. 6, 2008.

Allan Riley Holmes, Timothy O'Neill, Lewis Gibbs
and Holmes, Charleston, SC, for Plaintiff.

David Stewart Yandle, Ryan Daniel Gilsenan, Buist
Moore Smythe and McGee, Charleston, SC, for Defendants.

**ORDER**

MARGARET B. SEYMOUR, District Judge.

*1 Plaintiff Revolutions Medical Corporation
brought this action in state court on October 9,
2007, alleging that Defendants Jerard Viverito and
Jerry V Consulting failed to provide consulting and
marketing services in accordance with an agreement entered into between the parties on or about
April 30, 2007. Defendants removed the action to
this court on November 13, 2007.

The April 30, 2007 agreement contained a forum selection clause providing that:

*Governing Law*

10. This Agreement shall be construed under and
in accordance with the laws of ... Norfolk
County, Ma. and all obligations of the parties created under it are performed in Norfolk County,
Ma. In any controversy arising out of this Agreement, venue for said proceeding shall be in Norfolk County, Ma.

On November 14, 2007, Defendants moved pursuant to 28 U.S.C. § 1404(a) to transfer the within case to the District of Massachusetts. The court
granted Defendants' motion by order filed July
24, 2008.

This matter now is before the court on motion
for reconsideration pursuant to Fed.R.Civ.P. 59(e)
and 60(b), which motion was filed by Plaintiff on
August 4, 2008. Defendants filed a memorandum in
opposition on August 19, 2008.

I.

A. *Rule 59(e) Standard*

Although Rule 59 addresses grounds for new
trials, some courts have reasoned that the concept
of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court
without a jury. 11 Wright & Miller, *Federal Practice & Procedure* § 2804. Notwithstanding the
broad nature of Rule 59, motions for reconsideration are disfavored. They are not a matter of routine
practice. *Settino v. City of Chicago,* 642 F.Supp.
755, 759 (N.D.Ill.1986). Several courts have observed that they are neither expressly cognizable
under the Federal Rules of Civil Procedure nor authorized by the local rules of the district court. *See,
e.g., Fisher v. Samuels,* 691 F.Supp. 63, 74
(N.D.Ill.1988).

Motions for reconsideration are inappropriate
merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion. *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656 (N.D.Ill.),
aff'd, 736 F.2d 388 (7th Cir.1982). The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): (1)
to accommodate an intervening change in controlling law; (2) to account for new evidence not
available earlier; or (3) to correct a clear error of
law or prevent manifest injustice. *Hutchinson v.
Staton,* 994 F.2d 1076 (4th Cir.1993). The Fourth
Circuit has emphasized that counsel's mere dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4542877 (D.S.C.)
**(Cite as: 2008 WL 4542877 (D.S.C.))**

agreement with the court's ruling does not warrant a Rule 59(e) motion. *Id.* (citing *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990)).

B. *Rule 60(b) Standard*

Rule 60(b) allows the court to reconsider its order for "any other reason justifying relief from the operation of the judgment." The Supreme Court has held that Rule 60(b)(6) "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.' " *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863-64, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (quoting *Klapprott v. United States,* 335 U.S. 601, 614-15, 69 S.Ct. 384, 93 L.Ed. 266 (1949)).

II.

**\*2** Plaintiff contends that the court erred:

(1) in failing to find that the forum selection clause was invalid as procured by fraud;

(2) in failing to find that the forum selection clause mandates a state forum;

(3) in failing to accord Plaintiff's choice of a South Carolina venue great weight; and

(4) in failing to consider any factors that weigh in favor of retaining the case in South Carolina.

As the court noted previously, the forum selection clause is enforceable under federal law and is an appropriate factor to consider in undertaking a § 1404 analysis. Contrary to Plaintiff's contentions, the court weighed all of the facts in determining whether to transfer the case to the District of Massachusetts. Mere disagreement with the court's decision is not an adequate basis to obtain relief.

Plaintiff has not established an intervening change in controlling law; new evidence, or a clear error of law. Plaintiff also has not shown any other reason justifying relief from the operation of the judgment. Plaintiff's motion to reconsider, alter,

amend, and/or modify judgment (Entry 39) is **denied.**

**IT IS SO ORDERED.**

D.S.C.,2008.
Revolutions Medical Corp. v. Viverito
Not Reported in F.Supp.2d, 2008 WL 4542877 (D.S.C.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TAB 15

2009 WL 3805569
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

SEA STAR LINE, LLC, a limited
liability company, Plaintiff,
v.
EMERALD EQUIPMENT LEASING,
INC., a corporation, Defendant.

Civ. Act. No. 05–245–JJF.   |   Nov. 12, 2009.

West KeySummary

**1**    **Federal Courts**
   👉 Amendment of, vacation of, or relief from
   judgment

A company's final judgment order was not
vacated as the district court was without
authority to grant the motion while a notice
of appeal was pending. Significant questions
existed as to whether the company's appeal to
the circuit court was premature, and as such, the
doubts about the legitimacy of the appeal were
resolved in favor of awaiting disposition of the
appeal by the court of appeals. 28 U.S.C.A. §
1292(a)(3).

2 Cases that cite this headnote

**Attorneys and Law Firms**

Timothy J. Armstrong, Esquire of Armstrong & Mejer,
P.A., Miami, FL, Kathleen M. Miller, Esquire of Smith,
Katzenstein & Furlow, LLP, Wilmington, DE, for Plaintiff.

Gary M. Schildhorn, Esquire and Alan I. Moldoff, Esquire
of Adelman Lavine Gold and Levin, A Professional
Corporation, Philadelphia, PA, Ronald S. Gellert, Esquire;
Tara L. Lattomus, Esquire and Margaret F. England, Esquire
of Eckert Seamans Cherin & Mellott, LLC, Wilmington, DE,
for Defendant.

*MEMORANDUM OPINION*

FARNAN, District Judge.

 **\*1**   Pending before the Court is a Motion To Vacate Final
Judgment Order (D.I.295) filed by Plaintiff, Sea Star Line,
LLC ("Sea Star"). For the reasons discussed, the Court will
deny the Motion with leave to renew.

**I. Background**
This case has had a protracted history, both in this Court
and before Magistrate Judge Stark. The background of this
action is set forth fully in the Court's previous decisions. With
respect to the instant Motion, the Court provides the following
additional background.

On September 19, 2008, the Court entered an Opinion
determining that Sea Star had not established it was entitled
to certain requested declarations. (D.I.220.) In the Order
accompanying that decision, the Court denied Sea Star's
requested declarations and indicated that the Court "will
enter a Final Judgment Order once Emerald's Amended
Counterclaim has been fully adjudicated." (D.I.221.) No
appeal was taken by either party from the Order
accompanying the September 19 Opinion.

On August 27, 2009, the Court issued a Memorandum
Opinion determining that Sea Star was liable to Emerald
on certain of its counterclaims, and concluding that an
accounting as to damages was not necessary because Emerald
sufficiently established the damages it was owed by virtue of
the invoices submitted by Emerald. (D.I.282.) In the Order
accompanying the decision, the Court provided rulings on
certain evidentiary objections and stated:

> 3. In accordance with the procedures
> set forth in the Memorandum Opinion
> accompanying this Order, Emerald
> shall submit a proposed Final
> Judgment Order consistent with the
> Court's rulings as set forth in both
> this Memorandum Opinion and the
> Opinion issued on September 19,
> 2008.

(D.I.283.)

On September 4, 2009, Emerald submitted its proposed Final Judgment Order. Sea Star did not file any objections to the proposed Final Judgment Order in the time frame provided by the Court.

On September 10, 2009, Sea Star filed a Notice of Appeal seeking to appeal the Court's September 19, 2008 Opinion and accompanying Order, and the August 27, 2009 Memorandum Opinion and Order. On September 21, 2009, Sea Star filed an Amended Notice of Appeal adding to its appeal, the Memorandum Order Regarding Sanctions (D.I.263), the Order imposing sanctions (D.I.275), the Memorandum Order overruling objections (D.I.276) and the Order (D.I.287) denying Sea Star's request for an extension of time to pay the sanctions. Later that same day, Sea Star filed an Amended Notice Of Amended Appeal adding Timothy J. Armstrong as an appellant.

Also on that same day, Emerald filed a Request For Entry of Final Judgment Order (D.I.289). Three days later, on September 24, 2009, Sea Star filed a letter to the Court indicating it would be filing a response to the Request For Entry Of Final Judgment Order. (D.I.292.)

Having determined that a response from Sea Star was not necessary because it did not timely object to the proposed Final Judgment Order, the Court entered a Final Judgment Order on September 24, 2009. Five days later, Sea Star filed the instant Motion To Vacate.

 **\*2** On October 2, 2009, and in response to calls received by the Clerk of Court from Emerald, the Court issued an Order directing the Clerk to hold in abeyance the directive in the Final Judgment Order regarding the release of funds until further Order of the Court. (D .I. 296.) In issuing this directive, the Court noted that the Motion To Vacate Final Judgment Order filed by Plaintiff requests that the Court rescind the direction to the Clerk with respect to the deposit in the Court's registry.

On October 6, 2009, the Court issued a Memorandum Opinion and Order sustaining Sea Star's objections to the Sanctions Order issued by Magistrate Judge Stark and remanding the matter to him for further consideration. (D.I.297, 298.) Emerald has advised Magistrate Judge Stark that it does not intend to proceed further with the sanctions issue at this time, and has requested that the issue of sanctions be held in abeyance pending disposition of the instant Motion

and Sea Star's Interlocutory Appeal of the trial decisions in this case. (D.I.304.)

## II. Parties' Contentions

By its Motion, Sea Star requests the Court to vacate its Final Judgment Order pursuant to Rule 60(b)(4). Specifically, Sea Star contends that the filing of its Notice of Appeal pursuant to 28 U.S.C. § 1292(a)(3), deprived the Court of jurisdiction rendering the Final Judgment Order void. In this regard, Sea Star emphasizes that Section 1292 was meant to allow immediate appeals in admiralty cases from interlocutory orders determining the rights and liabilities of parties.

In response, Emerald contends that Sea Star's filing of the Notice of Appeal did not divest the Court of jurisdiction to enter the Final Judgment Order. In this regard, Emerald contends that Sea Star's appeal did not prevent the Court from finishing its work. More specifically, Emerald contends that

> Sea Star's appeal involves, inter alia, this Court's determination of liability, whether this Court erred in addressing the damages issue and whether Emerald satisfied its burden of proof as to damages. It does not, however, involve the specific calculation of those damages. Thus, there is no potential for "conflict among tribunals" occasioned by this Court entering the Final Judgment Order which does not change, modify or amend the prior decisions which are the subject of the interlocutory appeal. The findings incorporated into the Final Judgment Order are not before the appellate court and therefore there can be no "conflict" in determinations by different tribunals.

(D.I. 300 at 6.)

## III. DISCUSSION

The question underlying Sea Star's Rule 60(b) Motion is essentially whether this Court was divested of jurisdiction by the filing of Sea Star's Notice of Appeal, such that the Final Judgment Order should not have been entered. This same question regarding the effect of the Notice of Appeal is also at the heart of whether this Court can grant Sea Star's Rule

60(b) Motion in the first instance. This case, however, is in a complicated procedural posture, and therefore, while the issue is succinctly stated, its resolution is not as clear.

**\*3** The Court begins its analysis by examining a few general principles. As a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance; it immediately confers jurisdiction on the court of appeals and divests the district court of its control over aspects of the case involved in the appeal. *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). However, an appeal from a non-appealable order is considered a nullity and does not have the effect of divesting the district court of jurisdiction. *Venen v. Sweet,* 758 F.2d 117, 121 (3d Cir.1985) (citations omitted). Similarly, a premature appeal does not divest the district court of jurisdiction. *Mondrow v. Fountain House,* 867 F.2d 798, 800 (3d Cir.1989).

The purpose of the divestiture rule is to "prevent [ ] the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously." *Venen,* 758 F.2d at 121. Because this rule is a judge-made doctrine premised upon prudential considerations, the Third Circuit has further recognized that "the rule should not be applied when to do so would defeat its purpose of achieving judicial economy." *Mary Ann Pensiero, Inc. v. Linqle,* 847 F.2d 90, 97 (3d Cir.1988).

In this case, Sea Star filed its Notice of Appeal pursuant to 28 U.S.C. § 1292(a)(3), which provides for appellate review of interlocutory decrees "determining the rights and liabilities of the parties to admiralty cases." Because this statute presents an exception to the rule providing for the appeal of only final judgments, the statute has been narrowly construed to allow interlocutory appeals only after liability has been determined, but before the damages phase, and only in those cases in which the district court's order conclusively determines the appellant's claim. *In re Complaint of PMD Enter., Inc.,* 301 F.3d 147, 149–150 (3d Cir.2002); *Hager v. Laurelton Welding Serv., Inc.,* 124 Fed. Appx. 104, 106 (3d Cir.2005).

In the Court's view there are significant questions about whether Sea Star's Notice of Appeal complies with the requirements of Section 1292(a)(3). In this regard, the Court notes that Sea Star has appealed from an Opinion and Memorandum Opinion of the Court, which is not permissible. *In the Matter of Chelsea Hotel Corp.,* 241 F.2d 846, 848

(3d Cir.1957) ("[I]t is settled that an appeal may not be taken from an opinion. It is only the definitive order or judgment which follows the opinion which is reviewable by appeal."). As for the Orders appealed by Sea Star, the Court notes that both Orders contemplate the entry of a Final Judgment Order. Therefore, it is unclear to the Court whether it can be said that these Orders conclusively determine the rights and liabilities of the parties as required for an appeal pursuant to Section 1292(a)(3). Indeed, it was the Court's intention to make the determination of the parties' rights and liabilities clear and definitive as to all issues by entering a comprehensive Final Judgment Order that encompassed the rulings in both the September 2008 and August 2009 decisions. The Court's purpose in entering the Final Judgment Order was to facilitate a full resolution of the case without piecemeal appeals. Presumably, Sea Star was aware of this intent, because it did not appeal from the Opinion and Order entered in September 2008, in which the Court expressly indicated that it would reserve entry of a final judgment until after Emerald's Counterclaims were adjudicated. The Court further announced its intention to enter a Final Judgment Order when it ordered Emerald to file a proposal and provided Sea Star the opportunity to file objections to the proposal in its August 2009 Memorandum Opinion and Order. However, Sea Star did not timely file any objections and instead filed its preemptory Notice of Appeal.

**\*4** In any event, it now appears to the Court that significant questions exist as to whether Sea Star's appeal to the Third Circuit is premature and valid in light of the Section 1292(a)(3) requirements. [1] However, as the parties and the Court acknowledge, the question of whether the Notice of Appeal is premature and comports with Section 1292(a)(3) is ultimately a question reserved for the Third Circuit.

In clear cases of a premature appeal, the Third Circuit has counseled that the district court should continue to exercise jurisdiction:

> We recognize that a district court may be reluctant to proceed when, in order to do so, it must in effect determine that the court of appeals has no jurisdiction. Nevertheless, such a procedure has the salutary effect of avoiding delay at the trial level during the pendency of an ineffective appeal. While this is not an invitation for district courts to resolve thorny

issues of appellate jurisdiction the application of the *Griggs* rule is sufficiently clear, and the interest in expediting cases sufficiently strong, that the district courts should continue to exercise their jurisdiction when faced with clearly. premature notices of appeal.

*Mondrow v. Fountain House,* 867 F.2d 798, 800 (3d Cir.1989). In cases in which the answer is less clear, however, "doubts about the legitimacy of the appeal should be resolved in favor of awaiting disposition of the appeal by the court of appeals." Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed,* 143 F.R.D. 307, 311–312 (1992).

In the case of a Rule 60(b) motion, the Court is without authority to grant such a motion while a Notice of Appeal is pending and may only deny such a motion or consider it. [2] *Venen,* 758 F.2d at 123. Rather than compound any error that

may have been committed in entering the Final Judgment Order with further error in the adjudication of the Rule 60(b) motion here, the Court will await the Third Circuit's determination regarding jurisdiction in the first instance, before taking any action that would result in the granting of Sea Star's Rule 60(b) Motion and the vacating of the Final Judgment Order. [3]

## IV. CONCLUSION

For the reasons discussed, the Court will deny Sea Star's Motion with leave to renew following a determination from the Third Circuit regarding its jurisdiction and instructions from the Third Circuit regarding the impact of its determination on the Court's actions subsequent to the filing of Sea Star's Notice of Appeal, including the entry of the Final Judgment Order in this case and the decision to vacate the Magistrate Judge's award of sanctions.

An appropriate Order will be entered.

---

Footnotes

[1]   In addition to questions regarding the validity of the Notice of Appeal, the Court also questions whether the Final Judgment Order is the type of Order which can be said to have altered the status of the case before the Third Circuit, because it essentially encompasses the rulings set forth in the September 2008 Opinion and August 2009 Memorandum Opinion. Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed,* 143 F.R.D. 307, 308 (1992). In this regard, the Final Judgment Order could even loosely be said to be an aid to the appeal. *Id.* at 320–323.

   With regard to the provision of damages in the Final Judgment Order, the Court notes that although the precise amount of damages was not quantified in the Court's August 2009 Memorandum Opinion, it was evident that the Court had accepted Emerald's invoices as evidence of the amount due, and therefore, a totaling of the invoices was the only necessary step to achieving a dollar value. With regard to attorneys' fees and costs, the Court likewise concluded that Emerald was entitled to such fees and costs, but awaited the proposed Final Judgment Order with respect to the entry of such amounts. The Court anticipated that if Sea Star disagreed with the amounts, it would file objections to the proposal, and it was for this reason, that the Court provided Sea Star with an objection deadline before entering the Final Judgment Order.

[2]   If the Court intends to grant a Rule 60(b) motion, it would have to certify its intention to the Third Circuit, which would then entertain a motion to remand. Only after remand would this Court have the power to grant such a motion. *Venen,* 758 F.2d at 123.

[3]   The Court would be remiss if it did not note that Sea Star has not argued that the Court's decision vacating Judge Stark's imposition of sanctions against Sea Star, which was entered after Sea Star filed its Notice of Appeal, was impermissible. Courts have recognized that issues like sanctions and attorneys' fees are collateral to an appeal on the merits, and therefore, can continue to be adjudicated after the filing of a Notice of Appeal. However, in this case, Sea Star amended its Notice of Appeal to include Judge Stark's sanction decision, and therefore, under Sea Star's line of reasoning, the Court would also presumably have been without jurisdiction to take this action.

   In sum, the Court notes several complexities given the procedural posture of this case and Sea Star's preemptive action in filing its Notice of Appeal before entry of the Court's contemplated Final Judgment Order, and therefore, the Court awaits instruction from the Third Circuit as to whether the Court's subsequent actions, in entering Final Judgment and adjudicating the sanctions issue, should be vacated.

---

**End of Document**                                      © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 16

2011 WL 3022534
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

UNITED STATES of America, Plaintiff,

v.

Leonard A. PELULLO, Defendant.

Crim. No. 94–276(DRD).   |   Civ.
No. 01–124(DRD).   |   July 22, 2011.

**Attorneys and Law Firms**

Paul J. Fishman, United States Attorney, by: Leslie F. Schwartz, Assistant United States Attorney, Norman J. Gross, Assistant United States Attorney, Newark, NJ, for United States of America.

Gibbons, P.C., by: Lawrence S. Lustberg, Esq., Thomas R. Valen, Esq., Newark, NJ, for Leonard A. Pelullo, On Defendant's May 17, 2010 Motion.

Leonard A. Pelullo, White Deer, PA, pro se.

### OPINION

DEBEVOISE, Senior District Judge.

 **\*1** Two defense applications are pending before the Court. First, Defendant Leonard Pelullo moves for relief pursuant to Federal Rule of Civil Procedure 60(b) and (d) on the ground that the government misrepresented material facts to the Court of Appeals for the Third Circuit and to this Court. Second, Pelullo moves for relief pursuant to Rule 60(b) on the ground that the Supreme Court decision in *United States v. Santos,* 553 U.S. 507 (2008) established that his conviction on the indictment's money laundering counts was invalid, requiring that the judgment of conviction on all counts be set aside and a new trial ordered on the theft counts.

### I. Background

On December 9, 1994 a grand jury sitting in Newark, New Jersey returned a 54 count indictment against defendants Leonard Pelullo and Raul Corona. [1]

Count 1 charged a two-part conspiracy. First, defendants and others were accused of conspiracy to embezzle approximately $4,176,000 belonging to the Compton Press Employees' Profit Sharing Retirement Plan (the "Retirement Plan") and belonging to the Compton Press Employees' Thrift Plan (the "Thrift Plan") contrary to 18 U.S.C. § 664. (The two plans will be referred to collectively as the "Employees Benefit Plans"). Second, defendants and others were accused of conspiring to commit money laundering offenses, namely, to conduct financial transactions that involved the proceeds of unlawful activity (the thefts from the Employees Benefit Plans) with the intent to promote the unlawful activity and knowing that the financial transactions were designed to conceal the nature and ownership of the proceeds of the unlawful activity contrary to 18 U.S.C. § 1956(a)(1).

Counts 2 through 12 each charged that the defendants embezzled an amount of money or assets of one or the other or both of the two Employees Benefit Plans. Counts 13–54 each charged that the defendants engaged in a specific transaction which constituted an act of money laundering.

The Indictment charged that Pelullo conspired to commit and committed three separate, multi-transaction embezzlements. First, he transferred a total of $1.15 million from various brokerage accounts maintained by the Employees Benefit Plans to Granada Investments, Inc. ($750,000), and to Paribas—an investment banking firm ($450,000)—to further his interest in a takeover of DWG Corp., as well as to pay personal expenses.

Second, he transferred $1,326 million from the Employees Benefit Plans accounts at various brokerage houses to pension accounts at a Florida bank. From there the funds were transferred to the trust account of Adorno, Zeder, a Miami law firm. Thereafter, Pelullo orchestrated numerous transfers out of the Plans' funds from the trust account, a significant portion of which was used to reimburse Pelullo and others for their investment in Away–to–Travel–South, Inc. ("ATTS"), a travel agency, [2] and the remainder of which was used to further the business interests and pay personal expenses of Pelullo and members of his family.

 **\*2** The third embezzlement arose from Pelullo's termination of an annuity contract owned by the Employees Benefit Plans and issued by the UNUM insurance company, resulting in a $330,000 liquidation charge. At the directions of Pelullo's subordinates, UNUM transferred the remaining proceeds of the annuity, $1.4 million, to a corporate account controlled

by Pelullo. From there, Pelullo caused the transfer of those proceeds to the Adorno, Zeder trust account, and their ultimate expenditure on Pelullo's business and personal expenses. Among the business ventures that Pelullo sought to fund with Employees Benefit Plans funds included a deal involving Nursery Acquisition Corp., and the acquisition of National Media, an infomercial company which had $10 million in cash.

On November 8, 1996 a jury convicted Pelullo of all forty-four counts in the Indictment. The Court denied a series of post-verdict motions, *see* 961 F.Supp. 736 (D.N.J.1997) (in which the trial evidence is discussed extensively), 971 F.Supp. 159 (D.N.J.1997) and 5 F.Supp.2d 285 (D.N.J.1998). On December 8, 1997, the Court imposed a sentence of 210 months for each of the 41 money laundering counts, six months for the conspiracy and each of the embezzlement counts, all to be served concurrently with each other and with the sentence imposed on Pelullo for racketeering and wire fraud convictions in the Eastern District of Pennsylvania.

The Court of Appeals affirmed the Court's judgment on June 15, 1999, and rehearing *en banc* was denied on August 23, 1999. The Supreme Court denied Pelullo's petition for a writ of certiorari on January 10, 2000.

During the two and one-half years after the Court of Appeals affirmed Pelullo's conviction on June 15, 1999, *United States v. Pelullo,* 185 F.3d 863 (3d Cir.1999 (Table), (*rehearing denied en banc* August 23, 1999)), Pelullo filed a series of motions and a petition for relief pursuant to 28 U.S.C. § 2255.

In November, 1999 Pelullo filed a tri-partite motion for a new trial pursuant to Fed.R.Crim.P. 33. Each part developed one aspect of Pelullo's contention that newly discovered evidence disclosed that the government had suppressed and failed to disclose favorable evidence in violation of its obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), and had elicited perjured testimony and argued from false evidence to the jury at his trial. The evidence that allegedly had not been disclosed came from a 2,400 square foot warehouse Pelullo maintained in Miami Florida, and from the Department of Labor's ("DOL") Pension and Welfare Benefits Administration ("PWBA").

The third part of the 1999 motion for a new trial relied primarily upon depositions and documents that Pelullo obtained from the DOL pursuant to an order of the court and documents obtained from the DOL pursuant to a Freedom of Information Act (FOIA) request. The depositions were of David Hellhake taken in a Florida bankruptcy matter, *In re Ocean Properties of Delaware Inc.,* S.D. Fla. Case No. 90–11919 BRC–SM and of David Hellhake's father, George P. Hellhake, taken in the same matter. In addition Pelullo relied upon the newly discovered letter dated August 30, 1989 to Douglas Miller of Shearson Lehman authorizing the transfer of the Employees Benefit Plans' account at A.G. Edwards. The letter was signed by Coolidge Marqueen, one of Compton Press's former owners, as well as by Raul Corona (a former defendant) and David Hellhake. Further, Pelullo relied upon the newly produced report of Gus R. Lesnevich, an expert forensic document examiner who had examined seven of the original Granada Investment Inc. loan documents and concluded that the signatures of Andrew N. Heine on each of these documents were genuine.

**\*3** These documents, according to Pelullo, contradicted the government's contentions and the testimony of its witnesses i) concerning the relationship of David and George Hellhake to GH Enterprises, the role of GH Enterprises in the DWG transaction and George Hellhake's role in the ATTS transaction, ii) that Gerardi and Marqueen had not been aware of the transfer of Employees Benefit Plans' funds to acquire the DWG stock and iii) that Heine had not signed loan instruments in connection with the DWG stock acquisition.

In April, 2000, prior to argument on Pelullo's new trial motion, the court suggested that the government turn over to Pelullo the documents in the PWBA file, which the government agreed to do. In January 2001, Pelullo filed a petition for relief pursuant to 28 U.S .C. § 2255 asserting 1) the Court failed to provide the jury with specific unanimity instructions, 2) the Court misapplied the sentencing guidelines in that it sentenced Pelullo pursuant to U.S.S .G. § 2S1.1, which is applicable to money laundering, rather than the embezzlement, guidelines, 3) the Court improperly amended Pelullo's judgment of conviction to include forfeiture provisions, and 4) the government failed to present sufficient evidence to support the conviction for money laundering. [3]

In its May 17, 2002 opinion the Court granted Pelullo's motion for a new trial based upon *Brady* violations. The Court denied Pelullo's petition for relief under § 2255 on the first and fourth grounds for relief, granting a certificate of appealability on the first ground. It did not address the second and third § 2255 grounds.

The court found no evidence that the government knowingly used false evidence, but held that the disclosures subsequent to trial of documents primarily from a Florida warehouse but also from the DOL's own files evidenced such a serious violation of the government's *Brady* obligations that Pelullo's motion for a new trial had to be granted on that ground alone. *United States v. Pelullo,* Civ. No. 01–124, Crim. No. 94–276, slip op. at 12–23 (D.N.J. May 17, 2002).

The government appealed the order granting the new trial. It argued that the warehouse documents were Pelullo's, that he was familiar with them and that he had full opportunity to review them. As to the DOL documents, the government urged that the PWBA was a civil arm of the DOL monitoring a separate civil law suit and thus was not part of the prosecution team responsible to search for and turn over to Pelullo material that might be considered *Brady* material.

In support of its contention that the PWBA was not part of the prosecution team the government in its Third Step Brief in the Court of Appeals (Pelullo Exh. 1) stated "the PWBA Officials who possessed the documents at issue were not members of the prosecution team in this case." In a Memorandum submitted in a subsequent proceeding (Pelullo Exh. 16), the government summarized its position before the Court of Appeals: "Rather, the government contended that the agents and employees of the DOL and PWBA who were part of the prosecution team were not involved in collecting civil lawsuit documents."

**\*4** The Court of Appeals reversed this court's grant of Pelullo's motion for a new trial and remanded so that the court could address the motions that it had found unnecessary to decide in light of the fact that it anticipated a new trial, *United States v. Pelullo,* 399 F.3d 197 (3d Cir.2005).

With respect to the warehouse documents, the Court of Appeals held:

> In sum, the following factors militate against a finding of suppression of the warehouse documents: (1) the massive amount of documents, which belonged to Pelullo; (2) the government's lack of knowledge as to the exculpatory nature of the material contained in the warehouse documents; (3) the defense knowledge of, and access to, the subject documents. The government's representations, the only factor weighing in favor of suppression do not, under the circumstances, negate Pelullo's duty to exercise reasonable diligence.

We hold that the District Court clearly erred in its findings of fact and that there was no suppression of the warehouse documents.

*Id.* at 216.

Turning to the PWBA documents, the Court of Appeals held: "Because we reject the District Court's conclusion that the PWBA should be considered part of the 'prosecution team' we conclude the government did not suppress the PWBA documents." *Id.*

The Court presented the factual question as follows:

> Here, there is no question that certain DOL agents were integral members of the prosecution team. Pelullo argues that this compels the conclusion that the PWBA (as part of the DOL) was part of the prosecution team as well, thus extending the government's *Brady* obligations to information possessed by the PWBA. The government argues that the prosecution team should not be defined to include the entire DOL, a massive federal agency. The question presented then, is whether the PWBA officials who possessed the documents at issue were members of the "prosecution team" in this case.

> *Id.*

The following quotations from the Court of Appeals's opinion demonstrate that it accepted the government's characterization of the PWBA's role:

> While the United States Attorney's Office in New Jersey and agents from the Labor Racketeering Office of the DOL (which is responsible for enforcing violations of federal criminal law) were investigating Pelullo's actions with respect to the benefit plans, officials of the PWBA, a civil arm of the DOL, were monitoring a separate lawsuit, *Gerardi, et al. v. Pelullo, et al.,* United States District of New Jersey Civ. No. 89–4069. That case, like this one, involved the conversion of benefit plan assets. The PWBA collected documents which had been exchanged in discovery between Pelullo and other litigants in that civil case.

399 F. 3d at 209

The District Court also found that the government suppressed the PWBA documents, on the ground that the government's *Brady* obligations extended to the content of

U.S. v. Pelullo, Not Reported in F.Supp.2d (2011)

those files because "this material was in the files of the same agency, the DOL, that prepared the present case for trial." Because we reject the District Court's conclusion that the PWBA should be considered part of the "prosecution team," we conclude the government did not suppress the PWBA documents.

**\*5**  *Id.* at 216

Applying the general principles set forth in these cases —that the prosecution is only obligated to disclose information known to others acting on the government's behalf in a particular case—we conclude that the PWBA was not a member of the prosecution team. There is no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources. *Cf. United States v. Antone,* 603 F.2d 566, 569– 70 (5th Cir.1979) (holding that information possessed by state investigator should be imputed to federal prosecutor because "the two governments, state and federal, pooled their investigative energies [to prosecute the defendants' "). Nor is there any indication that the prosecution had any sort of control over the PWBA officials who were collecting documents. And Pelullo's arguments to the contrary notwithstanding, that other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team. Indeed, in *Locascio,* information was not attributable to the prosecution team, even though it was known to investigators drawn from the same agency as members of the prosecution team. Likewise here, the PWBA civil investigators who possessed the documents at issue played no role in this criminal case.

*Id.* at 216

Finally, the Court of Appeals noted that:

> even if the prosecutor is charged with knowledge, either actual or constructive of the PWBA documents, Pelullo's *Brady* claim would still fail if he could have obtained the information through the exercise of reasonable diligence. While the public nature of these documents, generated as they were during the course of two civil actions, suggests that Pelullo had sufficient access, to the documents to defeat his *Brady* claim, we need not reach that issue in light of our holding here. (Emphasis added).

*Id.* at 219 fn. 24.

The Court of Appeals also affirmed this Court's denial of collateral relief, holding that Pelullo's challenge to his jury instructions was procedurally barred. The Court of Appeals directed this Court to 1) reinstate Pelullo's judgment of conviction and sentence, 2) resolve the remaining § 2255 issues, and 3) give serious consideration to vacating its order releasing Pelullo on bail. The Supreme Court denied Pelullo's petition for certiorari on or about January 26, 2006.

In compliance with the mandate, on May 12, 2005 this Court entered an order reinstating the judgment of conviction. The Court also ordered that Pelullo's bail be revoked. On May 24, 2005 Pelullo filed an appeal with the Court of Appeals from the order reinstating his judgment of conviction and sentence, asserting, among other things, that this Court in connection with the sentence should have applied the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005).

On November 1, 2005 the Court denied Pelullo's § 2255 claim that he was incorrectly sentenced pursuant to the money laundering guidelines rather than the embezzlement guidelines. The Court, however, granted Pelullo's § 2255 claim that the judgment of conviction had been improperly amended to include a forfeiture provision. The Court also rejected Pelullo's claim that he should be resentenced under *Booker,* finding that for retroactivity purposes, the judgment became final on January 10, 2006 when the Supreme Court denied certiorari from Pelullo's direct appeal. Further, this Court denied Pelullo's motion to amend his § 2255 petition to add a claim of ineffective assistance of counsel, finding that this claim was totally unrelated to any of his four § 2255 claims. The Court denied a certificate of appealability as to all claims.

**\*6**  Pelullo filed separate appeals from the Court's reinstatement of the judgment of sentence, and from the Court's denial of his § 2255 claims and of its denial of his motion to amend that petition.

The government filed a cross-appeal regarding the Court's decision that the judgment of conviction was improperly amended to include forfeiture. [4]

On or about May 12, 2006, defendant Pelullo filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b) in which he sought to vacate the Judgment of conviction reinstated by this Court on May 12, 2005. In particular, Pelullo contended that documents he received after May 12, 2005, pursuant to FOIA requests, demonstrated that

the PWBA was an integral part of the "prosecution team." According to Pelullo, this cast doubt upon the basis for the Court of Appeals's March 8, 2005 decision that the four allegedly material PWBA documents he received post-trial were not "suppressed" under *Brady*. On July 28, 2006, Pelullo filed a Motion for Release on Bail pending Appeal and Resolution of his Rule 60(b) application.

In an order dated December 14, 2006, this Court held that the Rule 60(b) motion should be treated as a second and successive petition under 28 U.S.C. § 2255 [5] , and as a result the Court lacked jurisdiction because Pelullo had neither requested nor received approval from the Court of Appeals to file such a petition. *See* 28 U.S.C. § 2255(h). In making its ruling, this Court noted that "the role of the DOL and PWBA agents was exactly what the Court of Appeals understood it to be: "there is no question that certain DOL agents were integral members of the prosecution team," "*see* 12/14/06 Opinion at 39, 2006 WL 3694590, at * 22, and "that the record does not establish that the government attorneys made misrepresentations to the Court of Appeals," see 12/14/06 opinion, at 41, 2006 WL 3694590, at *22. [6]

This Court transferred the Rule 60(b) motion to the Court of Appeals to be treated as an application for leave to submit a second or successive petition. This Court also denied Pelullo's motion for bail. Pelullo thereafter filed a notice of appeal from this Court's December 14, 2006 order.

By letter dated August 2, 2007, Pelullo elected not to proceed with the transferred proceeding in the Court of Appeals. Accordingly, the Court of Appeals dismissed the transferred application for leave to submit a second or successive petition on June 1, 2007. On October 15, 2007, the Court of Appeals dismissed Pelullo's appeal of this court's December 14, 2006 order transferring his Rule 60(b) motion to the Court of Appeals for lack of jurisdiction. In particular, the Court of Appeals held that orders transferring motions found to be second or successive section 2255 motions to a Court of Appeals are not appealable. The Court of Appeals, however, dismissed Pelullo's appeal without prejudice to the defendant filing a new section 2244 application with the appellate court. Finally, the Court of Appeals affirmed this Court's denial of bail.

 **\*7**  On or about March 29, 2007, Pelullo filed a motion asking this Court to rule upon claims asserted in his 1999 Rule 33 motion which the Court did not rule upon in 2002, for leave to supplement his motions with a claim of ineffective

assistance of counsel, and for leave to supplement his Rule 33 motion with two allegedly newly discovered letters between Michael Rich, Esq., and government witness Fred Schwartz.

On or about January 4, 2008, Pelullo filed a motion pursuant to Fed.R.Civ.P. 60(b), in which he sought 1) to vacate this Court's January 7, 2004 opinion on remand denying his motion to expand the appellate record, 2) to vacate his judgment of conviction and sentence, 3) dismissal of the indictment, and 4) bail pending disposition of his motions.

On or about October 14, 2008, this Court held that the undecided contentions raised in Pelullo's 1999 Rule 33 motion were without merit. In particular, this Court held that Pelullo did not act with reasonable diligence in discovering before trial the alleged "newly discovered evidence" in the files of two related civil cases. 10/14/08 Opinion at 54–55. In addition, this Court held that "even if the jury had the evidence before it and heard Pelullo's contentions as to its significance, there is no likelihood that the jury would have acquitted Pelullo," as "the evidence of his guilt on all counts was overwhelming." *See* 10/14/08 Opinion at 57. This Court further held that it was without jurisdiction to entertain Pelullo's attempt to amend his Rule 33 motion to add a claim of ineffective assistance of counsel and to supplement his Rule 33 motion with letters generated by Michael Rich, Esq. in an entirely different civil lawsuit than the lawsuits that were the subject of the 1999 Rule 33 motion. *See* 10/14/08 Opinion at 48.

Finally, this Court held in its 10/14/08 Opinion that Pelullo's 2008 Rule 60(b) motion seeking to strike the Court's January 7, 2004 Opinion denying his motion to expand the appellate record was in reality a second and successive Section 2255 petition which required authorization from the Court of Appeals in that it attacked his underlying conviction and sentence. *See* 10/14/08 Opinion at 53.

On or about October 24, 2008, Pelullo filed a Motion for Reconsideration with respect to this Court's denial of his Rule 60(b) motion. Among other things, Pelullo argued that a December 31, 2008 letter that he received from Jonathan Kay, Regional Director of the Department of Labor's Employee Benefits Security Administration (formerly the PWBA), in response to a FOIA request for documents, established that the U.S. Attorney's Office had continued to make misrepresentations regarding the involvement of the PWBA.

In a 3/10/09 Opinion denying reconsideration, this Court held that Director Kay's December 31, 2008 letter was entirely consistent with the Court's 2006 Opinion that the government attorneys made no misrepresentations regarding the PWBA. In the letter, Director Kay had stated that the PWBA had investigated two criminal cases involving Compton Press and that the files for these criminal cases were maintained at the U.S. Attorney's Office in Newark and the Dept. of Labor's Office of Labor Racketeering in Newark. *See* 3/10/09 Opinion, 2009 WL 689680, at *8 (D.N.J.2009). In particular, in denying Pelullo's motion for reconsideration, the Court stated:

> **\*8** Everything contained in the Kay letter is consistent with the facts found in the 2006 Opinion. According to the letter, PWBA classified its investigation as a civil investigation and as two criminal investigations —the criminal investigation. Concerning the Compton Press Profit Sharing Plan and the criminal investigation concerning the Compton Press Thrift Plan. As described in the 2006 Opinion, PWBA's civil investigation consisted of receiving copies of pleadings, certifications, deposition transcripts and other documents in the civil actions in this court and conferring with the Plaintiff's attorneys in those actions.

> PWBA's criminal investigation consisted of assigning personnel first to work with the Newark Strike Force as it conducted its wide ranging investigation of Pelullo and later assigning the same or different personnel to work with the AUSAs who were prosecuting Pelullo solely on the Compton Press related charges.

> 3/10/09 Opinion, 2009 WL 689680, at *11 (D.N.J.2009).

A July 2, 2009 Order of the Court of Appeals denying a Pelullo application to file a second or successive motion under 28 U.S.C. § 2255 included language that gives rise to his most recent motion filed December 30, 2010 on which Pelullo originally appeared pro se:

> [Pelullo] cites *United States v. Santos,* 128 S.Ct. 2020 (2008), a case in which the Supreme Court interpreted the meaning of a term in a federal statue. Nothing in this order precludes Pelullo from filing a habeas petition pursuant to 28 U.S.C. § 2241 to present his claim, *see, e.g.,* In re Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997), but

we do not express any opinion on the District Court's jurisdiction over, or the merit in, any such petition.

On or about November 19, 2009, the Court of Appeals issued an opinion summarily affirming this Court's 1) denial on the merits of the claims left open in Pelullo's initial Rule 33 motion; 2) denial of Pelullo's Rule 33 motion to add an ineffective assistance of counsel claim and to supplement his original new trial motion with the Michael Rich, Esq. letters; and 3) denial of Pelullo's rule 60(b) motion alleging fraud on the federal court regarding the PWBA's involvement in the Compton Press case. *See Pelullo v. U.S.,* 352 Fed. App'x. 620 (3d Cir.2009). In summarily affirming the denial of Pelullo's Rule 60(b) claim of alleged fraud upon the federal courts, the Court of Appeals stated in pertinent part: "The district court did not abuse its discretion in concluding that Pelullo did not produce any evidence pertaining to the Compton Press case that warranted reopening the proceedings." 352 Fed. App'x. at 623, n. 5. Finally, the Court of Appeals declined to issue a certificate of appealability as to this Court's dismissal of Pelullo's Rule 60(b) motion, seeking to vacate this Court's January 7, 2004 Opinion denying the motion to expand the appellate record, as Pelullo's claim involved neither newly discovered evidence nor a new rule of constitutional law made retroactive to cases on collateral review, and further would not have affected the outcome of his trial. 352 Fed. App'x. at 625.

**\*9** On or about May 17, 2010 Pelullo filed yet another pro se motion pursuant to Fed. R. Civil Procedure Rule 60(b) contending that documents he recently acquired pursuant to FOIA requests from the Department of Labor, Office of Inspector General established that the government "knowingly misrepresented the PWBA's actual role on the prosecution team and its access to the exculpatory documents in the possession of the PWBA agents who monitored the civil litigation ." Pelullo filed a Motion for Release pending the disposition of his Rule 60(b) Motion. The Court found that the issues Pelullo raised were sufficiently serious to request that Lawrence S. Lustberg, Esq. and Thomas R. Valen represent him in these proceedings. A bail hearing was held on the bail motion on or about June 21, 2010. The government opposed the motion for release on both jurisdictional and substantive grounds.

On or about June 25, 2010, this Court filed an opinion and order regarding Pelullo's bail application.

The opinion summarized the lengthy history of the Pelullo proceedings and particularized the reason that the Court of Appeals advanced in its 2005 opinion for its finding that the PWBA documents were not *Brady* material because the PWBA was not a part of the "prosecution team."

Further, the Court referred to its prior rulings holding that "the role of the DOL and PWBA agents was exactly what the Court of Appeals understood it to be: 'there is no question that certain DOL agents were integral members of the prosecution team.' " *see* 12/14/06 Opinion at 39, 2006 WL 3694590, at *22, and "that the record does not establish that the government attorneys made misrepresentations to the Court of Appeals," *see* 12/14/06 Opinion, at 41, 2006 WL 3694590, at *22. The Opinion referred to its March 10, 2009 Opinion in which it held that the December 31, 2008 letter of Regional Director Jonathan Kay was entirely consistent with the Court's opinion that the government attorneys made no misrepresentations regarding the PWBA.

The May 17, 2010 Rule 60(b) motion was supported by documents that Pelullo had recently received pursuant to his FOIA requests. These documents supported a strong argument that, however one defines "prosecution team," the PWBA did more than contribute a limited number of its personnel to work with the prosecution and otherwise limit its activities to monitoring the civil case against Pelullo. For example, a November 15, 1990 letter to Chief Stewart of the Strike Force, DOL's Special Agent in Charge wrote "OLR, FBI and PWBA (DOL) have opened an investigation of a potential embezzlement (18 U.S.C. 664) of 3,000,000 from the benefit plans of Compton Press which was sold in 1987 to Equity Finance Group. Leonard Pelullo, a Scarfo LCN associate." A further example, a November 13, 1996 press release of the DOL on the occasion of the jury verdict finding Pelullo guilty on all 54 counts of the Indictment, included the statement that "[t]he investigation leading to the conviction was conducted by the U.S. Labor Department's OIG and PWBA and the Federal Bureau of Investigation."

 **\*10**  The Opinion described the numerous documents from which it could be argued that the DOL and PWBA were not only members of the prosecution team but were important members. After the Opinion was issued Pelullo asked that the government turn over certain documents that the government had withheld as privileged. The Court examined the documents in camera and then asked that they be turned over to Pelullo. Interestingly they tend to support the government's position that at least initially the DOL's role

was to monitor the civil action and simply provide technical assistance to the prosecution.

The Court rejected the government's contention that under *Pridgen v. Shannon* 380 F.3d 720 (3d Cir.2004), this motion is a second § 2255 petition and that absent a certification of the Court of Appeals this Court lacks jurisdiction, stating: "However, when one considers the totality of the allegations and the likely relief that would result from validation of the allegations, this is not a direct attack on the judgment of conviction; it is an attack on the manner in which the earlier habeas judgment was procured."

The Court found three arguable grounds for jurisdiction: "The first is Rule 60(b)(6)'s 'any other reason that justifies relief.' The second is the grant of power to a court in Rule 60(d)(1) 'to entertain an independent action to relieve a party from a judgment, order or proceeding.' The third is the general equity power of the court to address grievous abuses of judicial process." In any event the Court concluded it had jurisdiction to proceed with the bail motion.

The Opinion concluded, noting the many uncertainties that remained in the factual development of Pelullo's claims, about which the Court had reached no findings. There were uncertainties about the remedies that might result if Pelullo established that the government misrepresented the PWBA's role in the investigation of the case: "at this point in the proceeding the likelihood that this will result in the vacation of his conviction or a new trial is problematical." The Court found that "[i]n the present circumstances bail is not appropriate." [7]

In his brief in reply to the government's answering brief on Pelullo's *Santos* motion, Pelullo not only addressed the *Santos* issues, but also submitted additional Department of Labor ("DOL") documents that Pelullo contends support his contention that the government knew that the PWBA was a part of the prosecution team. On March 22, 2011 the DOL turned over to Pelullo two additional boxes of documents in response to Pelullo's original FOIA request. Pelullo contends that a number of these documents are relevant to his Rule 60(b) and (d) motion.

One time DOL Agent Rosario (Sal) Ruffino was an acknowledged member of the prosecution team during the pre-indictment investigation of Pelullo and thereafter. Among the newly submitted documents is a February 22, 1991 handwritten note from Ruffino to Assistant United States

U.S. v. Pelullo, Not Reported in F.Supp.2d (2011)

Attorney Arthur Zucker, who at that time was handling the criminal case against Pelullo. It reads:

**\*11** Art,

These are PWBA documents which you may wish to look at (particularly the Miami Herald article). See Carmine Pascale if you have any questions.

Sal

Pelullo contends that this note is further evidence that the PWBA was part of the prosecution team, as Pascale was a PWBA agent and Ruffino was working as a full time member of the prosecution team.

The government responds that the only document referred to in the note is a copy of a publically available 4/28/90 article in The Miami Herald that refers to Pelullo's indictment by a federal grand jury in Ohio for crimes that had nothing to do with embezzlement of pension monies from Compton Press. Affidavits of Arthur Zucker and Ruffino state that neither has any recollection of this note which was written three years before the indictment and five years before Pelullo's criminal trial.

Pelullo refers to a handwritten note of Michael Briglia (who filled PWBA Agent Pascale's role in December 1991) in which he describes developments in the Compton Press civil litigation. The role immediately follows a note in the files from DOL–OIG (the DOL criminal investigative arm). Pelullo deduces from this that the PWBA forwarded these documents to Ruffino.

Apart from observations that the note is not addressed to anyone and the documents could not have been supplied to the DOL, OIG contemporaneously with the note, the government points out that the documentation was publically available and could not be characterized as evidence. According to the affidavits of AUSA Arthur Zucker and Ruffino, the documents relied upon by the prosecution team included the financial documents obtained through grand jury subpoena and the documents contained in the six boxes obtained from the Florida warehouse. By letter dated March 2, 1995 Pelullo was advised that he could make arrangements to copy all of the documents in the possession of the U.S. Attorney's Office, including documents obtained pursuant to grand jury subpoena.

The newly produced DOL–OIG documents include a number of documents that appear to correspond to entries in an index of documents from the PWBA files previously provided to the Court. Pelullo speculates that the presence of documents in both the PWBA indices and in the files of entities on the prosecution team undercuts the government's claim that it did not receive documents from the PWBA. He notes that 53 documents in the custody of the government trial lawyers and Agent Ruffino were also in the possession of PWBA, suggesting that the government obtained the documents from the PWBA rather than other sources.

The government has submitted affidavits of AUSA Arthur Zucker and Michael Rich demonstrating that the U.S. Attorney's Office was not dependent upon the PWBA to obtain documents relating to the civil case against Pelullo, and it is not remarkable that the PWBA file concerning the civil action and the U.S. Attorney's files should contain many of the same documents. The AUSAs met with the civil action attorneys and obtained documents directly from them. Attorney Rich recalls meeting with AUSA Rufolo and AUSA Schwartz and providing them with documents.

**\*12** Special Agent Ruffino further describes his and the PWBA's relationship with the U.S. Attorney's Offic in his affidavit accompanying the most recent government brief:

1. I am a former Special Agent of the United States Department of Labor. Office of Labor Racketeering ("OLG"). I was involved in the investigation of Leonard Pelullo for embezzlement of approximately $4 million from the Compton Press Pension and Thrift Funds. Although I retired from OLG in May 1995, I continued to assist in the prosecution of Leonard Pelullo from the fall of 1995 through the trial in November 1996 in my capacity as an employee of the Waterfront Commission.

2. Carmine Pascale was an employee of the Department of Labor, Pension and Welfare Benefits Administration ("PWBA"). It is my recollection that he referred this matter to OLG for possible criminal prosecution based upon a complaint to his office.

3. I recall that I worked with Robert Goldberg of the Pension and Welfare Benefits Administration ("PWBA") and Special Agent Dick Mohr of the Federal Bureau of Investigation with regards to the prosecution of the criminal case against Leonard Pelullo. I do not recognize the name of PWBA employee Michael Briglia. It is my recollection that once a grand jury investigation was

initiated that there was a wall between any criminal and civil investigations.

4. I believe that I relied upon the following sources for documents gathered during the investigation: 1) grand jury subpoenas and 2) six boxes retrieved from a warehouse in Florida which had been seized pursuant to a search warrant by another district.

5. I have no recollection of sending a note to AUSA Arthur Zucker in 1991 stating that the PWBA had documents that he may wish to look at. In fact, I do not recall getting any documents from the PWBA.

6. I recall interviewing Janice Larson but I have no specific recollection concerning an interview with her and her attorney in March 1995.

Included among the documents in Pelullo's May 2011 DOL–OIG production was the deposition of George Hellhake from the Ocean Properties Bankruptcy proceeding. Pelullo contends that this demonstrates that the government suppressed *Brady* material from the DOL OIG files as well as the PWBA files. It is difficult to discern how this bankruptcy deposition of a non-witness in the Pelullo trial constitutes *Giglio* or *Brady* material. It is something of which Pelullo must have had knowledge. It was marked as an exhibit on the Andrew Heine deposition in the Compton Press litigation, which, according to the government, was provided to Pelullo as part of the *Jencks* material during the case.

Finally, Pelullo contends that Agent Ruffino was untruthful in an affidavit the government filed in which he stated that the only notes that he took during the trial preparation process related to the interview of Jacob Der Hagopian. The newly produced DOL–OIG documents include handwritten notes he made during an interview of Janice Larson, a witness in the case. The government suggests that the notes were taken during a proffer session and not during trial preparation. Pelullo had been furnished with Ms. Larson's proffer agreement and grand jury testimony. The government contends that there was no *Brady* material in the overlooked Larson notes.

**\*13** In short, the documents that Pelullo recently filed add nothing to his earlier submissions in support of his Rule 60(b) and (d) motion.

## II. *Jurisdiction*

**A.** *May 17, 2010 Motion:*
In this motion Pelullo moved for relief pursuant to Fed.R.Civ.P. 60(b) and (d) on the ground that the government misrepresented to the Court of Appeals that the PWBA was not a part of the prosecution team and therefore the government could not be held responsible for a failure to turn over to Pelullo documents that the PWBA possessed that could otherwise be classified as *Brady* material.

Fed.R.Civ.P. 60(b) provides in pertinent part as follows:

"(b) *Grounds for Relief from a Final Judgment, Order or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment order or proceedings for the following reasons:

...

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

...

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(d) provides in pertinent part:

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding.

...

(3) set aside a judgment for fraud on the Court.

The government points out, and Pelullo concedes, that the motion pursuant to Rule 60(b)(3) for fraud is time barred. Fed.R.Civ.P. 60(c)(1) provides that a motion pursuant to Rule 60(b)(3) must be made within one year after the entry of the judgment or order or the date of the proceeding. The date of the Court of Appeals decision that relied on the alleged misrepresentation was May 17, 2002, and the date of the last district court order entered in this case prior to the instant motion for relief was this Court's March 10, 2009 Order denying Pelullo's motion for reconsideration. Either date places Pelullo's motion outside the one year time limit.

Motions filed pursuant to Rule 60(b)(6) must be filed "within a reasonable time." However, the grounds for relief under Rule 60(b) (6) are restricted to reasons *other than* those enumerated in the previous subsections (which include fraud). *Arrieta v. Battaglia,* 461 F.3d 861, 864 (7th Cir.2006) ("if the asserted ground for relief falls within one of the enumerated grounds for relief subject to the one year time limit of Rule 60(b), relief under the residual provision of Rule 60(b)(6) is not available"); *Cotto v. United States,* 993 F.3d 274, 278 (1st Cir.1993). Thus 60(b)(6) is not available to Pelullo.

Despite his strenuous argument to the contrary, Pelullo lacks jurisdiction under Rule 60(b) for a more fundamental reason. His motion is a second or successive motion under 28 U.S.C. § 2255, and cannot proceed in this Court without prior permission from the Court of Appeals.

As recited above, Pelullo filed his initial motion for relief under 28 U.S.C. § 2255 on January 9, 2001. He styles his present motion as a Rule 60(b) motion. That Rule provides for relief from a final judgment or order in a civil, not criminal case. A habeas proceeding pursuant to § 2255 is a civil proceeding. However, the Court of Appeals has held that when a purported Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction rather than "the manner in which the earlier habeas judgment was procured," the matter should be treated as a successive § 2255 petition subject to the limitations on such petitions. *Pridgen v. Shannon,* 380 F.3d 721, 727 (3d Cir.2004), *see also United States v. Winestock,* 340 F.3d 200, 207 (4th Cir.2003).

 **\*14** The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104–132, Tit. I, 110 Stat. 1214 limits a defendant's ability to file more than one collateral challenge. The defendant has one year within which to file his first request for relief under § 2255 from the latest of four specified events, which in this case is the date the judgment of conviction became final. 28 U.S.C. § 2255. Before a defendant may seek a second or successive application for such relief from a district court, he must move before the pertinent court of appeals for an order authorizing the district court to consider the motion.

In *Pridgen* the Court of Appeals held that when a Rule 60(b) motion attacks the petitioner's underlying conviction, it must be deemed a § 2255 petition requiring Court of Appeals certification when it is a successive such petition. It is not

deemed a § 2255 petition when it attacks "the manner in which the earlier habeas judgment was procured." *Id.* at 727.

Here, by its terms, Pelullo's motion is an attack on the judgment of conviction. It is entitled "Motion to Vacate the Judgement of Conviction and Dismiss the Indictment with Prejudice." For relief it asks "that this Honorable Court vacate the judgment of conviction, dismiss the indictment with prejudice, or in the alternative, grant a new trial and release Petitioner forthwith." (Memo in Support of Motion at p. 51).

Pelullo argues that he was proceeding pro se when he drafted his initial Memorandum, and that the reality of the situation demonstrates that his claim based on misrepresentations to the Courts about the role of the PWBA is an attack on the manner in which the earlier habeas judgment was obtained.

This argument cannot be sustained. Pelullo is not attacking the manner in which the earlier habeas judgment was obtained. He seeks vacation of his conviction on grounds not raised in the prior § 2255 petition. As recited above, on November 4, 1999 Pelullo filed a motion under Fed.R.Crim.P. 33 for a new trial on *Brady* grounds. On January 9, 2001 he filed a § 2255 petition raising four claims, none of which alleged failure of the government to make disclosures. On May 17, 2002 this Court granted the Rule 33 motion and ordered a new trial. It denied two of the § 2255 claims, issuing a certificate of appealability as to one of them. It did not address two of the claims. Among other developments, the government appealed this Court's grant of Pelullo's Rule 33 motion and grant of a new trial. It was during the prosecution of that appeal that the government is asserted to have made the misrepresentations about the role of the PWBA.

Pelullo is not claiming that these asserted misrepresentations prevented him from fairly presenting any of the claims that he raised in his initial § 2255 motion. His claim in the instant motion is that misrepresentations were made during the resolution of his Rule 33 motion. This confirms that within the meaning of *Pridgen* Pelullo's Rule 60(b) motion is an attack on his judgment of conviction and subject to the limitations of the AEDPA. Because Pelullo has not obtained authorization of the Court of Appeals, this Court lacks jurisdiction to hear Pelullo's motion to the extent it relies upon Rule 60(b).

 **\*15** Pelullo relies not only upon Rule 60(b) to establish jurisdiction, he also argues that this Court has jurisdiction

both under its general equitable power to address a judgment obtained by fraud and has specific authorization to entertain an independent action to relieve a party from a judgment, order, or proceeding (Rule 60(d)(1) and to set aside a judgment for fraud on the court (Rule 60(d)(3)).

Pelullo relies upon *Hazel–Atlas Glass Co. v. Hartford–Empire Co* ., 322 U.S. 238 (1944) (referred to approvingly in *United States v. Beggerley,* 524 U.S. 38 (1998)) to support his contention that the Court has jurisdiction to consider his application pursuant to the Court's inherent equitable powers. In *Hazel–Atlas* the plaintiff in a patent infringement action against Hazel–Atlas obtained a judgment of infringement in 1932 and on appeal relied in part upon an article purportedly written by a disinterested expert but actually written by one of the plaintiff's attorneys. After obtaining its judgment the plaintiff went to great efforts to prevent the purported author from disclosing the true facts about the authorship of the article. However, Hazel–Atlas was ultimately able to develop irrefutable evidence of the fraud and commenced an action in the Court of Appeals. The Court refused relief on the grounds that (i) the fraud was not newly discovered, (ii) the spurious publication, though quoted in the 1932 opinion, was not the primary basis of the 1932 decision and (iii) that in any event it lacked the power to set aside the decree of the district court because of the expiration of the term during which the 1932 decision had been rendered.

The Supreme Court reversed, stating:

> Federal courts, both trial and appellate, long ago established the general rule that they would not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. This salutary general rule springs from the belief that in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered. This has not meant, however, that a judgment finally entered has ever been regarded as completely immune from impeachment after the term. From the beginning there has existed along side the term rule a rule of equity to the effect that under certain circumstances, one of which is after—discovered fraud, relief will be granted against judgments regardless

> of the term of their entry. This equity rule, which was firmly established in English practice long before the foundation of our Republic, the courts have developed and fashioned to fulfill a universally recognized need for correcting injustices, which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the term rule.

*Id.* at 244 (citations omitted). The Court concluded that "[e]very element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments." *Id.,* at 245. It added, "[e]quitable relief against fraudulent judgments is not of statutory creation. It is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgments should not be disturbed after the term of their entry has expired." *Id.* at 248.

**\*16** Notwithstanding *Hazel–Atlas,* Pelullo cannot rely upon an inherent equity power of the court to support jurisdiction over this application. The cases upon which he relies, including *Hazel–Atlas,* are all civil cases. *United States v. Beggerly supra; Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir.1993). In this Circuit it has been held that federal courts do not have an inherent power to vacate their criminal judgments and must rely on statutory or Rule authority to do so:

> ... However, both *Hazel–Atlas* and *Chambers* are civil cases. In the criminal context, the Supreme Court has held that district courts lack "inherent supervisory power" to enter an untimely judgment of acquittal sua sponte when doing so is in clear contradiction of Federal Rule of Criminal Procedure 29(c). *Carlisle v. United States,* 517 U.S. 416, 425–28 (1996). The Court explained, "[w]hatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426.

*United States v. Washington,* 549 F.3d 905, 912 (3d Cir.2008); *see also id.* at 914:

> Given the absence of authority suggesting a longstanding inherent power of a district court to vacate a criminal sentence based on fraud, other than [*United States v. Bishop,* [774 F.2d 771 (7th Cir.1985) ] and its limited

progeny, we find that there is no " 'long unquestioned' power of federal district courts" to vacate a judgment procured by fraud in the criminal context.

*see also id.* at 917:

> While we are dubious that federal courts ever had the inherent power to vacate criminal sentences that were procured by fraud, "[w]hatever the scope of this "inherent power," ... it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle,* 517 U .S. at 426. Accordingly, we hold that to the extent there might have at one point been inherent power in the court, such power was abrogated by Congress pursuant to [18 U.S.C.] § 3582(c) and Federal Rule of Criminal Procedure 35(a).

Pelullo attempts to distinguish *Washington,* noting that in *Washington* it was the government, not the defendant, seeking to vacate the judgment and that the judgment to be vacated was a sentence (and not a decision on an appeal from a Rule 33 order). While these distinctions exist, *Washington* stands for the general proposition that in criminal cases district courts do not have an inherent power going beyond that given by statute or Rule to vacate a judgment of conviction as Pelullo seeks to do here. It is necessary to examine whether the remaining Rule upon which Pelullo relies provides this Court with jurisdiction to hear his application.

Rule 60(d) provides:

> (d) Other Powers to Grant Relief. This rule does not limit a court's power to:

> > (1) entertain an independent action to relieve a party from a judgment, order, or proceeding,

**...**

**\*17** (3) set aside a judgment for fraud on the court.
The evidence upon which Pelullo relies to establish his claim of fraud on the court is set forth extensively in the Court's June 25, 2010 opinion addressing Pelullo's bail application. At that time the Court relied primarily upon Pelullo's extensive papers, and the government had not yet had an opportunity to address fully either the jurisdiction question or the merits of his misrepresentation claim. Notwithstanding this one-sided presentation, the Court denied bail. In addition, Pelullo has

submitted additional DOL documents along with his May 10, 2011 reply brief concerning his *Santos* motion.

The new documents upon which Pelullo relies are largely of DOL origin, describing the roles of the PWBA, OIG and OLR, often in cooperation with the FBI. They portray the major role that the DOL played in the entirety of the proceedings against Pelullo-almost an exclusive role in the civil proceedings and an important cooperative role in the criminal proceedings.

During the many years when Pelullo faced civil and criminal actions both the DOL and the United States Attorney's Office personnel changed. For example, in the United States Attorney's Office initially Robert C. Stewart assumed supervision of the Pelullo investigation and prosecution, followed by a series of Assistant United States Attorneys ("AUSAs"): AUSA Arthur P. Zucker (1990–), AUSA Jose P. Sierra (1992–1995), AUSA Mark W. Rufolo (1995–), and AUSA Leslie Schwartz (-to date). The prior opinions in this case describe the complexity of its investigation, prosecution and trial.

In its documents the DOL and its sub-agencies emphasized their important role in the various phases of the proceedings against Pelullo. It is not unusual for each agency participating in an important prosecution to emphasize the significance of its own role, leaving it to its cooperating agencies to inform the public of the credit to which they are due. For example, the DOL issued a November 13, 1996 press release (Pelullo Exh. 10) upon the occasion of the jury verdict finding Pelullo guilty on all 54 counts of the indictment that stated, "[t]he investigation leading to the conviction was conducted by the U.S. Labor Department's OIG and PWBA, and the Federal Bureau of Investigation." Surely the United States Attorney's Office's press people gave appropriate credit to that Office. These statements are not useful in determining who was part of the prosecution team for *Brady* purposes.

The manner in which the DOL described its role in the Pelullo proceedings does not answer the question whether the PWBA was part of the "prosecution team" within the meaning of that term as employed in the Court of Appeals's February 25, 2005 opinion. The Court of Appeals was informed that the PWBA was deeply involved in the civil proceedings against Pelullo. Its opinion also recited that the PWBA contributed personnel to assist the United States Attorney's Office investigation, prosecution and trial of Pelullo.

U.S. v. Pelullo, Not Reported in F.Supp.2d (2011)

**\*18** The meaning of "prosecution team" can be debated, and, depending upon that meaning, it can be persuasively argued the government's description of the DOL's role in the Pelullo investigation, prosecution and trial was not accurate. But there is no evidence that any government attorney acted with the intent to deceive either the Court of Appeals or this Court concerning that role.

Assuming that in the extraordinarily complex circumstances of this case there were inaccurate descriptions of the extent of the PWBA's exact role in the Pelullo proceedings, this would not rise to the kind of conduct that would permit use of Civil Rule 60(d)(1) and (3) for relief for fraud on the court. "Fraud on the court" is limited to fraud which "seriously affects the integrity of the normal process of adjudication [and] should embrace only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *King v. First Am. Investigations, Inc.,* 287 F.3d 91, 95 (2d Cir.2002) (internal quotation marks omitted). The challenged conduct " 'must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' " *State Street Bank and Trust Co. v. Inversiones Evazuriz Limitada.* 374 F.3d 158, 176 (2d Cir.2004).

A judgment may be set aside only upon a showing of (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court. *Herring v. United States,* 424 F.3d 384, 390 (3d Cir.2005). Pelullo urges the Court to follow the Sixth Circuit's requirement that a movant's burden when pursuing an independent action is to show, instead of intentional fraud, "reckless disregard" for, or "willful blindness" of the truth. *Johnson v.. Bell,* 605 F.3d 333, 339 (6th Cir.2010); *Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir.1993). Although the Court of Appeals has not adopted a test for fraud on the court, its language in *Herring* suggests that it will reject the Sixth Circuit rule and follow the "intentional fraud" rule adopted by the other circuits that have addressed the question:

> Actions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept. The concept of fraud upon the court challenges the very principle upon which our judicial system is based, the finality of a judgment. The presumption against the reopening of a case that has gone through the appellate process all the way to the United

States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff face to scale.

424 F. 3d at 386

Thus fraud on the court must involve truly egregious conduct, such as bribing a judge, tampering with a jury, hiring an attorney for the purpose of influencing a judge. *See Stewart v. O'Neill,* No. 00 Civ. 8560, 2002 WL 1917 888, \*2 (S.D.N.Y. Aug. 16, 2002).

**\*19** Even if one drew from Pelullo's documents all the inferences he seeks be drawn, nothing of this dire nature took place in this case. This does not provide a basis for relief pursuant to Fed.R.Civ.P. 60(d). Even were the Sixth Circuit standard applied, Pelullo has not established either reckless disregard or willful blindness upon the part of government attorneys.

Pelullo has advanced a number of other contentions, such as estoppel, materiality of documents and numerous contentions previously dealt with. In view of the fact that the Court lacks jurisdiction over this application these contentions will not be addressed. The Court will transfer the Rule 60(b) and (d) motion to the Court of Appeals to be treated as an application for leave to submit a second or successive petition.

## B. December 30 2010 (*Santos* ) Motion

Pelullo also styles his *Santos* motion as an application for relief under Rule 60(b)(6). He asks the Court to apply the holding of *Santos*—that the "proceeds of some form of unlawful activity" used by the money laundering statute [8] means criminal profits rather than criminal receipts —to "vacate the money laundering counts of conviction and grant a new trial on the non-money laundering counts...." (Dec.2010 Br. 15). Pelullo argues that his payment of business expenses cannot constitute money laundering under *Santos* and that his other convictions under 18 U.S.C. § 664 for embezzlement were so closely intertwined with the money laundering charges as to require that they be retried. (Dec.2010 Br. 3–4).

As stated above, Rule 60(b) is a civil mechanism that applies only to private actions and cannot normally be used to vacate a criminal conviction. However Pelullo claims that the Court has authority to apply Rule 60(b) to this purpose under the holding of *Gonzalez v. Crosby,* 545 U.S. 524 (2005). He quotes language from the *Gonzalez* decision stating that Rule 60(b)(6) "permits reopening when the movant shows any

reason justifying relief from the operation of the Judgment" and that "[a] change in the interpretation of a substantive statute may have consequences for cases that have already reached final judgment, particularly in the criminal context." *Id.* at n. 9.

Despite these select quotes, the balance of the *Gonzalez* decision makes clear that Pelullo's motion is impermissible under Rule 60(b). In *Gonzalez,* the Supreme Court reviewed a Rule 60(b) motion filed by a prisoner in state custody. The motion challenged the procedures followed in the disposition of the prisoner's previously filed habeas petition. The prisoner's first habeas petition had been rejected as untimely under the statute of limitations contained in AEDPA. [9] After the petition had been dismissed, the Supreme Court decided the *Artuz v. Bennett* [10] case, which clarified a tolling rule concerning the AEDPA statute of limitations. [11] Armed with this new ruling, the prisoner filed a motion under Rule 60(b) seeking to reopen the dismissed habeas petition.

 **\*20**  The state in *Gonzalez* argued that the Rule 60(b) motion should be barred as a "second or successive" habeas corpus application under 28 U.S.C.A. § 2244(b). [12] The Court of Appeals for the Eleventh Circuit agreed and dismissed the petition for failure to demonstrate either (1) a new rule of constitutional law of retroactive application, (2) newly discovered facts, or (3) fraud on the court in the previous petition. *Gonzalez,* 531 U.S. at 528. In opposition, the petitioner argued that the Rule 60(b) motion was a challenge to a procedural ruling in a prior habeas case and not a new application.

On review, the Supreme Court described the steps that a court must follow in determining whether a Rule 60(b) motion constitutes a "second or successive application," writing:

Under § 2244(b), the first step of analysis is to determine whether a "claim presented in a second or successive habeas corpus application" was also "presented in a prior application." If so, the claim must be dismissed; if not, the analysis proceeds to whether the claim satisfies one of two narrow exceptions. [13] In either event, it is clear that for purposes of § 2244(b) an "application" for habeas relief is a filing that contains one or more "claims." That definition is consistent with the use of the term "application" in the other habeas statutes in chapter 153 of title 28. See, *e.g., Woodford v. Garceau,* 538 U.S. 202, 207, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) (for purposes of § 2254(d), an

application for habeas corpus relief is a filing that seeks "an adjudication on the *merits* of the petitioner's claims"). These statutes, and our own decisions, make clear that a "claim" as used in § 2244(b) is an asserted federal basis for relief from a state court's judgment of conviction.

*Id.* at 530.

The court then presented some examples of Rule 60(b) motions that would constitute "claims" subject to the procedural bar of § 2244, noting that:

[A] motion might contend that a subsequent change in substantive law is a "reason justifying relief," from the previous denial of a claim. Virtually every Court of Appeals to consider the question has held that such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly.

We think those holdings are correct. A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a "habeas corpus application," at least similar enough that failing to subject it to the same requirements would be "inconsistent with" the statute.

*Id.* at 531 (internal citations omitted).

Turning to the *Gonzalez* petitioner's claim, the court found that the Rule 60(b) motion was not an attack on his underlying conviction or a merits determination made concerning a previous habeas petition. Rather petitioner alleged a "defect in the integrity of the federal habeas proceedings." *Id.* at 532. The court held that a motion under Rule 60(b) is not precluded under § 2244 where the motion "merely asserts that a previous ruling which ***precluded a merits determination*** was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* at n. 4 (emphasis added). In contrast, a challenge to a prior merits determination or a new claim on the merits would be precluded. *Id.* at 532. However, the *Gonzalez* court, while holding that the petitioner's motion was not barred under § 2244, ultimately rejected the motion for another reason, that he had failed to show that the minor change in procedural law represented "extraordinary circumstances" as required by Rule 60(b)(6). *Id.* at 536. The court did note that "[a] change in the interpretation of a *substantive* statute may have consequences for cases that have already reached final judgment, particularly in the criminal context" *Id.* at n. 9.

**\*21** Here, Pelullo's Rule 60(b) *Santos* motion is an unambiguous attack on the validity of his underlying conviction based on an intervening change in the interpretation of a federal substantive statute. Unlike the *Gonzalez* petitioner, Pelullo does not seek to revive his prior § 2255 petition from dismissal on technical or procedural grounds. To the contrary, Pelullo's § 2255 petition was resolved on the merits over ten years ago. Pelullo's action is a collateral attack on his conviction that cannot be countenanced under Rule 60(b). *United States. v. Akers,* 519 F.Supp.2d 94, 95–96 (D.D.C.2007) ("Generally, a motion pursuant to Rule 60(b) seeks a remedy for some defect in the collateral review process. By contrast, an attack on a prisoner's conviction or sentence is tantamount to a § 2255 motion.").

Since Pelullo has already filed a § 2255 motion, any "second or successive" motion like this one "must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain ... newly discovered evidence ... or ... a new rule of constitutional law ...." 28 U.S.C. § 2255. Pelullo has not obtained such a certification for the instant motion and is not likely to be successful in doing so. Indeed, on July 2, 2009, the Court of Appeals issued an order stating that Pelullo's *Santos* challenge did not implicate either undiscovered evidence or a new rule of constitutional law. This Court is bound by that decision. If adjudicated under § 2255, Pelullo's motion must fail.

Aware of this procedural vulnerability, Pelullo argues in the alternative that his motion be construed as an application for habeas corpus relief under 28 U.S.C. § 2241. Since Pelullo is a *pro se* litigant [14], his filings must be "liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). To avoid "unnecessary dismissal" we may "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Castro v. United States,* 540 U.S. 375, 381 (2003). And there is authority suggesting that a merits attack on a conviction based on an intervening change in law may be properly brought under § 2241 even if a petitioner has already exhausted his or her remedies under § 2255. *See e.g., In re Dorsainvil,* 119 F.3d 245, 251 (3d Cir.1997).

However § 2241 is not a broad alternative waiting to be invoked once a prisoner has exhausted his or her § 2255 rights. [15] A petitioner may bring a § 2241 claim, "only in unusual situations, such as those in which a prisoner has had no prior opportunity to challenge his conviction for a crime later deemed to be non-criminal by an intervening change in law." *Brown v. United States,* No. 10–2895, 2011 WL 240693, *1 (3d Cir. Jan 27, 2011) (table); *see also Okereke v. United States,* 307 F.3d 117, 121 (3d Cir.2002) (exception requires an "intervening change in law ... that potentially made the crime for which that petitioner was convicted noncriminal").

**\*22** In this case, Petitioner makes a variety of arguments in favor of habeas relief, many of which are effectively irrelevant. As an initial matter, Pelullo argues that the transactions charged as money laundering did not promote the underlying § 664 charges. (Dec. 30 Br. 23–26). While this argument is wrapped in a *Santos* motion, it has little to do with the decision in that case and is, in essence, a challenge to the sufficiency of the evidence used to support the initial jury verdict. As such, Pelullo has already exercised his repeated opportunities to make this very argument, at trial, in his appeal, and in his first § 2255 motion. A raw challenge to the sufficiency of a jury verdict, based on no new evidence or change to the legal environment cannot be properly entertained under § 2241, particularly when that challenge has already been made and rejected.

More substantially, Pelullo and his counsel argue that the *Santos* decision has effectively made his conduct "non-criminal" by modifying the meaning of the word "proceeds" as used in the money laundering statute to mean "profits" rather than "net receipts." Pelullo argues that because the money he stole from the pension funds was used to pay for various business transactions and expenses there were no profits. For example, Pelullo argues that "the proceeds of the Plan loans to Granada were used to pay investment bank fees to Paribas, reimbursement to Fairview Financial for the fees paid to Trafalger Investment Bank and the buyout of MBA's interest in the Granada L.P ... [t]hus there were no profits." (Dec. 30 Br. 36). In contrast, the government contends that the crime of embezzlement was complete when Pelullo removed money from the pension funds and that all money removed constituted ill-gotten "profits" of that crime, no matter how it is ultimately spent.

Pelullo's position fundamentally misconstrues *Santos* and is at odds with subsequent authority applying the decision. The profits of crime are the total money or property unlawfully obtained, minus any expenses incurred in the criminal activity itself. *U.S. v. Yusuf,* 536 F.3d 178, 190 (3d Cir.2008) ( "Other than some small expenses incurred in perpetuating the mail fraud-i.e., the postage stamp affixed to their monthly tax

return or any other preparation fees relating to the return-the unpaid taxes retained by defendants amounted to profits."). Once this money or property is converted from its lawful owner, the manner in which it is spent has no bearing on whether it constitutes profits. *Abuhouran v. Grondolsky,* 643 F.Supp.2d 654, 669 (D.N.J.2009) ("when the [Defendants] through their manifold fraudulent acts, secured each loan, the specified unlawful activity, bank fraud, was completed. Whatever was done with the proceeds of each loan was the start of a new activity, a separate crime if done with the requisite intent."). [16] As such, profits of crime, once obtained, remain profits whether spent on business expenses, utility bills, sports cars, or merely stuffed under a mattress. If profits are invested in a fashion that conceals or promotes the underlying offense, the separate crime of money laundering has been committed. *Id.* But a subsequent act of money laundering does not mean that the initial crime yielded no profits. Money laundering conceals the profits of crime; it does not actually eliminate them.

**\*23** In the May 2011 Brief, Pelullo argues that the government's position is inconsistent with statements made at trial and in subsequent proceedings concerning when the "embezzlement scheme" was completed or what the objects of the scheme were. (May 2011 Br. 13). Pelullo contends that the government is in a double bind. Either the transactions were "integral" and "necessary" components of the money laundering, making them "mere proceeds" that cannot give rise to liability post *Santos,* or they were "independent" and "not integral," and therefore could not have "promoted" the underlying crime as required under the statute. (May 2011 Br. 14–15).

But this argument does great violence to the statute. First, if all acts of promotion involved only receipts and not proceeds, then the promotion arm of the money laundering statute would be effectively nullified. No authority submitted to the Court suggests that *Santos* should be read in this fashion. Second, numerous courts have held that a defendant may "promote" unlawful activity via transactions which permit him to realize the benefits of that activity or conduct that activity in the future. [17] These transactions are not "expenses" and do not reduce the profits of the original criminal act. Third, the jury verdict convicting Pellullo of money laundering did not specify whether each transaction "promoted" the underlying embezzlement or "concealed" the proceeds. It would be inappropriate for this Court to reexamine the sufficiency of the evidence supporting the jury verdict on a limited procedural vehicle such as § 2241.

Finally, even if Pelullo's arguments were persuasive, it would be improper for this Court to order relief. Merely casting Pelullo's motion as a § 2241 petition does not imbue this Court with jurisdiction to hear it. Unlike § 2255, which vests jurisdiction with the trial district, applications for habeas corpus relief under § 2241 must be brought in the district of confinement. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *Meyers v. R. Martinez,* No. 10–3298, 2010 WL 4846051, 1 (3d Cir. Nov. 30, 2010) ("for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement"). Pelullo is presently confined in White Deer, Pennsylvania, located in the Middle District of Pennsylvania. Any habeas petition brought under § 2241 must be heard there.

Pelullo argues that this requirement is not one of subject matter jurisdiction, but merely one of "personal jurisdiction" or "venue ." (May 2011 Br. 11). Pelluo further argues that the government may "waive objections to jurisdiction in § 2241 petitions." *Id.* But these arguments are unavailing. First, the language of both *Padilla* and *Meyers* explicitly state that the district of confinement requirement is one of jurisdiction rather than venue. Second, even if the district of confinement requirement is non-jurisdictional, it is still a requirement of the statute, and we may not simply ignore it for the petitioner's convenience. Last, even if the government may waive the requirement under some circumstances, it has not done so here. Indeed, the government has filed a brief challenging the jurisdictional validity of petitioner's motion.

**\*24** Since this Court lacks authority to evaluate Pelullo's *Santos* motion, the Court will not address his contentions on the merits. Petitioner's *Santos* motion will be denied.

### III. *Conclusion*

Petitioner's application for relief under 60(b) and (d) concerning alleged misrepresentations made to the Court of Appeals will be treated as an application for leave to file a subsequent § 2255 petition and TRANSFERRED to the Court of Appeals. Petitioner's application for relief under *Santos* will be treated as a § 2241 petition and DENIED.

Footnotes

1    Prior to trial the charges against Corona were dismissed for the reason that the government used information immunized during proceedings in the Middle District of Florida to obtain the indictment against him in the District of New Jersey. *United States v. Pelullo,* 917 F.Supp. 1065 (D.N.J.).

2    ATTS had been formed to purchase from the bankruptcy court the assets of Ambassador Travel, a heavily indebted travel agency with offices located in department stores, which had filed a Chapter 11 petition.

3    As the Court ruled in a December 14, 2006 Opinion this was a first § 2255 motion that rendered a subsequent Rule 60(b) motion a second or successive § 2255 petition.

4    On or about January 5, 2009, the Third Circuit affirmed this Court's May 18, 2005 Order reinstating the judgment of sentence and further remanded for entry of an order correcting the judgment of sentence to include forfeiture in the amount of $3,562.897. *United States v. Pelullo,* 305 F. App'x 823, 827–28 (3d Cir.), *cert. denied Pelullo v. United States,* 130 S.Ct. 64 (Oct. 5, 2009).

5    Pelullo had filed his first petition for Section 2255 relief on or about January 9, 2001. At the July 21, 2011 hearing on the application for relief under Rule 60(b) and (d) the government argued that the December 14, 2006 Opinion is dispositive of the jurisdictional issues in the pending application.

6    The Court found that the government's statement in a letter to defense counsel that PWBA employee Carmine Pascale was not involved in the monitoring of the civil lawsuits was a "mistake" as it appeared that he had been involved in such monitoring in 1990 and 1991, *see* 12/14/06 Opinion, at 39–40; 2006 WL 3694590, at *22. As this Court stated, "Pascale was doing what several DOL and PWBA personnel were doing-monitoring the civil actions. There is no evidence that they were doing that under the guidance or supervision of the Strike Force or the United States Attorney's Office." *See* 2006 WL 3694590, at *22.

7    At the July 21, 2011 hearing Pelullo's counsel justifiably relied heavily on this opinion both with respect to jurisdiction and the fact of misrepresentation. Although the government's characterization of the PWBA's role in the prosecution was not accurate, and the Court of Appeals accepted that characterization, the finding of possible jurisdiction was premature and there was no finding that the alleged misrepresentation was either intentional or the result of willful blindness.

8    18 U.S.C. § 1956. The statute has since been modified to reverse the *Santos* decision.

9    28 U.S.C. § 2244(d)(2).

10   531 U.S. 4 (2000).

11   The *Gonzalez* petitioner had filed his habeas petition two months after the statute of limitation had expired. But in dismissing the petition, the lower court did not toll the statute of limitations during the pendency of prior applications for relief brought by the petitioner in state court, finding that they were "not properly filed." *Artuz* clarified the rule concerning when a state petition is "properly filed" for the purposes of staying the AEDPA statute of limitations (28 U.S.C. § 2244(d)(2)) and made clear that the statute of limitations should have been stayed for the *Gonzalez* petitioner.

12   Because the prisoner in *Gonzalez* was in state custody, the Court evaluated the "second or successive" rule that appears in 28 U.S.C. § 2244 and applies to habeas petitions brought under 28 U.S.C. § 2254. As Pelullo is federal custody, his application is vulnerable under the comparable terms of 28 U.S.C. § 2255. While the *Gonzalez* court warned that the provisions are "not identical" and expressly "limit[ed] [its] consideration to § 2254 cases", the analysis of *Gonzalez* would appear to apply with equal force here given the remarkable similarity in the applicable language between § 2254 and § 2255.

13   From context, it is clear that the *Gonzalez* court is referring to the "new facts" and "new rule of constitutional law" exceptions found in § 2244(b)(2).

14   While Pellulo is currently represented by counsel, the instant motion was filed while he was *pro se.*

15   *See Dorsainvil,* 119 F.3d at 251 ("We do not suggest that § 2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255.").

16   *See also Soreide v. Zickefoose,* No. 10–2452, 2010 WL 4878744, 11 (D.N.J. Nov. 23, 2010) ("a litigant aiming to bring his/her claims under *Santos* must allege facts showing that his/her money laundering charges (and conviction) was based only on the transactions executed by the litigant for the purposes integral to his/her execution of the underlying illegal activity, e.g., on the payments of the costs necessitated by running that particular underlying illegal "business.").

17   *See, e.g., U.S. v. Paramo,* 998 F.2d 1212, 1218 (3d Cir.1993) ("a defendant can engage in financial transactions that promote not only ongoing or future unlawful activity, but also prior unlawful activity ... Accordingly, the jury rationally could have concluded that cashing the checks promoted each antecedent fraud ...."); *United States v. Williamson,* 339 F.3d 1295, 1302 (11th Cir.2003) ("Thus, the depositing and cashing of checks that represented the proceeds of the mail fraud promoted not only the Appellants'

prior unlawful activity, but also their ongoing and future unlawful activity. Such evidence is sufficient to sustain a conviction for promotional money laundering.") *cert. denied,* 540 U.S. 1184 (2004); *United States. v. Silvestri,* 409 F.3d 1311, 1335 (11th Cir.2005) ("The subsequent deposit of the checks, as proceeds of the specified unlawful activity of mail fraud, satisfied the requirements of the money-laundering counts.").

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

---

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.  18