IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> J.P. MORGAN CHASE AND COMPANY, <br><br> Defendant. | C.A. No. 1:12-cv-00282-SLR |

### PATENT OWNER'S RESPONSE TO DEFENDANT'S OPPOSITION BRIEF TO 60(D)(3) MOTION

Defendant's Opposition Brief is proof of violation of attorney-client privilege, and evidences collusion and corruption among officers of the Court and Judges in defending each other's judicial misconduct—which Former U.S. Attorney General John Ashcroft condemned as "organized crime."

1. **Chief Judge Randall R. Rader's resignation <u>proves</u> that Dr. Arunachalam's judicial ethical concerns in *Leader Techs v. Facebook* were justified, <u>not frivolous</u>**: Defendant's attempts to use epithets to bully Dr. Arunachalam backfire. They cite a Federal Circuit order regarding judicial conflicts of interest in *Leader Techs v. Facebook*. The Federal Circuit Bar

Association ("FCBA") later moved to have that order made precedential.[1] The FCBA attorney who filed the motion on that order was Edward R. Reines, Weil Gotshal LLP. Federal Circuit Chief Judge Rader, who was managing Leader's appeal, did not disclose his conflicts with Reines. Recently, Reines was discovered colluding with Judge Rader, who later resigned the bench in disgrace.[2] Dr. Arunachalam rightly argued that corruption and conflicts of interest were at play.

2. **This Court's docket games mimic similar games played at the Federal Circuit that triggered the resignations of Chief Judge Randall R. Rader and Clerk of Court Jan Horbaly**: Reines' FCBA motion *disappeared* from the docket, and tellingly, clerk of court Jan Horbaly has also resigned in disgrace. Dr. Arunachalam was served a copy of that motion. Defendant's counsel fell into the trap created by this corruption since they could not find the censored FCBA motion on Westlaw. It had been removed from the docket by clerk of court Jan Horbaly after Dr. Arunachalam's blistering rebuttal that discredited the FCBA motion.

3. **Defendant's juvenile epithets impugn the Federal Circuit Bar Association (FCBA), Harold Wenger, Foley Lardner LLP, the Los Angeles**

---

[1] Federal Circuit Bar Association's Request for Reissue Re. *Leader v. Facebook*, Case No. 2011-1366 (Fed. Cir.), Sep. 17, 2012 http://www.fbcoverup.com/docs/federalcircuit/Response-to-Request-of-Federal-Circuit-Bar-Association-s-Request-for-Reissue-Re-Leader-v-Facebook-Case-No-2011-1366-Fed-Cir-by-Lakshmi-Arunach.pdf#page=31.

[2] "Judge Rader, Author of Controversial Email to Lawyer, to Resign from Bench" by Ashby Jones, The Wall Street Journal, Law Blog, Jun. 13, 2014 http://blogs.wsj.com/law/2014/06/13/judge-rader-author-of-controversial-email-to-lawyer-to-resign-from-bench/.

**Intellectual Property Law Association (LAIPLA), as well as Dr. Arunachalam**

The FCBA evidently believed that Dr. Arunachalam's arguments merited intervention by the FCBA. Therefore, Defendant argues that the FCBA's motion was frivolous too. In fact, fraud was occurring, as it is in this case. Respected lawyer/legal commentator, Harold C. Wenger, believed Dr. Arunachalam's arguments in *Leader Techs v. Facebook* were concerning enough and meritorious enough that he republished them on the Los Angeles Intellectual Property Law Association ("LAIPLA") website on May 29, 2013.[3] Defendant is impugning Mr. Wenger's integrity as well.

4. **JPMorgan was one of Facebook's primary underwriters during the pendency of the *Leader Techs v. Facebook* case; mutual funds cannot be used to mask holdings and relationships:** Defendant's obsession with *Leader Techs v. Facebook* is curious. This matter has nothing to do with that case. This case must be argued on its own merits. However, since Defendant opened the door, Dr. Arunachalam points out that JPMorgan was one of Facebook's primary underwriters during the pendency of the *Leader Techs v. Facebook* case. The Judges hid their holdings in JPMorgan and Facebook behind the mutual fund curtain. The mutual fund rules are discombobulated. Nonetheless, in the end they return to the "appearance of impropriety" standard.

---

[3] "The Departure of Circuit Executive Jan Horbaly (con'd)" by Harold Wenger, LAIPLA, May 29, 2013 http://www.laipla.net/the-departure-of-circuit-executive-jan-horbaly-cond/.

Curiously, Defendants did not argue that the judges pass the "appearance of impropriety" test because they know they do not. Why is this Court even asking one of the parties to argue on their behalf? This is more evidence of the Court's collusion with the Defendants to protect their substantial financial holdings in JPMorgan. The appearance of impropriety is now glaringly manifest.

In *Leader Techs*, Reines attempted to absolve the judges of their conflicts of interest. Judge Rader and other judges in *Leader Techs* did not disclose their holdings in Facebook interests through Fidelity, T. Rowe Price and Vanguard mutual funds. The pattern of this investing deception is evident. These incestuous relationships between mutual funds and companies in whom they hold stock for investors prejudices inventors when attorneys, judges and deep-pocket companies are colluding, as is clearly occurring in this case as well.

**5.    Defendant argues the mutual fund safe harbor, but fails to cite the numerous exceptions to the rule:** Judges are not absolved from disclosure responsibilities by hiding behind the paper-thin mutual fund veil. Recusal may be required if a judge has an "interest that could be affected substantially by the outcome of the proceeding." A mutual fund that invests in only a few companies in a particular industry would be more likely to be substantially affected by certain types of litigation involving one of them. The DE Court Judges hold narrow financial sector/industry mutual funds. Per Canon 4D(3), *§ 455(b)(4) and § 455(f)*,

"[a] judge should divest investments and other financial interests that might require frequent disqualification." Canon 3C(1) directs judges to disqualify if the judge's impartiality might reasonably be questioned. <u>Each situation should be assessed on a case-by-case basis</u>. Under the Judicial Conference policy on electronic conflicts screening, JCUS-SEP 06, p.11, a judge has a continuing obligation to update the judge's list of financial interests that would require recusal, the scope of their financial disclosure obligations may change as their sector fund, industry fund, ETF, blind trust or SMA portfolio develops. *See The Committee Guide to Judiciary Policy, Vol. 2B, Ch. 2 Page 106-2.*

6.  **Defendant has improperly applied Rule 60(d)(3) and 60(b):** Rule 60(d)(3) does not limit a court's power to set aside a judgment for fraud on the court. Abuse of discretion by Judge Andrews and Judge Stark interfered with the judicial system's ability impartially to adjudicate a matter. The Court did not adequately address its material conflicts of interest in a manner that would restore the public's confidence in the conduct of this Court. The Court misrepresented the spirit and intent of the conflict of interest rules for judges which dictate that they *avoid even the appearance of impropriety.*

The Court cannot claim that the Judges should benefit from the safe harbor rule. Judges Andrews and Stark committed to high ethical standards in their Senate confirmation hearings where they stated in writing:

> **Richard G. Andrews, Jul. 13, 2011:** "I would resolve any potential conflicts of interest by applying § 455 and the Code of Conduct for United States Judges." [4]
> **Leonard P. Stark, April 22, 2010:** "If confirmed, I will continue to handle all matters involving actual or potential conflicts of interest through the careful and diligent application of Canon 3 of the Code of Conduct for United States Judges as well as other relevant Canons and statutory provisions, including 28 U.S.C. §§ 144 and 455." [5]

Judge Robinson was thrown into this case by Judges Andrews and Stark. Therefore, whether or not she holds stock in JPMorgan, her judicial sponsors do. Therefore, these relationships and lack of disclosure taint her participation, especially since she was thrown into this case cold, just a week before the all-important Markman Hearing. Dr. Arunachalam has an *affirmative right* to relying upon these solemn promises made by Judges Andrew, Stark and Robinson to the American public. Indeed, all of American justice relies upon fidelity to these principles. Americans also rely upon Judges to liberally interpret these principles of fairness in favor of recusal to avoid the appearance of impropriety. Judge Stark has multiple holdings in JP Morgan. For example, he holds stock in FUSEX Fidelity Spartan 500 Index Inv which holds $896,713,000 in JP Morgan, their 10th largest holding. He also holds VINIX Vanguard Institutional Index I which holds $ 2,190,882,000 in JP Morgan, also their 10th largest holding. Defendant's flimsy

---

[4] S. HRG. 112-72, Pt. 3, Senate Confirmation Hearing for Richard G. Andrews, July 13, 2011, GPO Serial No. J-112-4, p. 868.
5 S. HRG. 111-695, Pt. 6, Senate Confirmation Hearing for Leonard P. Stark, April 22, 2010, GPO Serial No. J-111-4, p. 87.

excuse on behalf of the Judges for nondisclosure of these substantial interests in JPMorgan does not avoid the appearance of impropriety. Getting the attorneys for JPMorgan to fabricate arguments defending a judge before whom they appear is, in itself, the height of impropriety. It is the height of incredulity to have attorneys for a litigant to argue about the Judges' ethical practices, since presumably the litigant attorneys cannot know the private actions of the Judge, unless they are colluding.

Judges are responsible to make reasonable effort to keep informed of their personal and fiduciary financial interests 28 U.S.C. §455(c). *Porter v. Singletary*, 49 f.3d 1483 (11th Circuit 1995)("a judge should disclose on the record information which the judge believes the parties or their lawyers might consider relevant"). An ordinary person would consider Judge Andrews' holdings certainly relevant and worthy of disclosure.

On March 7, 2012, Chief Judge Randall R. Rader vacated and remanded a case due to the financial conflicts of interest of a judge and his family. In *Shell Oil Co. v. US*, 672 F. 3d 1283 (Federal Circuit 2012) Judge Rader stated:

> "Because we find that the trial judge's failure to recuse in this case was not harmless error, particularly given the risk of injustice and risk of undermining the public's confidence in the judicial process, we conclude that the appropriate remedy is to vacate the district court's orders and remand the case."
> "[W]e vacate Judge Smith's final judgment . . . as well as the summary judgment orders . . . This case is hereby remanded with instructions that it be reassigned to a different judge . . . VACATED AND REMANDED"

The Federal Circuit concluded that, when deciding whether to vacate a judgment for violation of § 455(a) [financial conflicts of interest], a court should consider: (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that the denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process."

To be clear, on March 7, 2012 Judge Rader himself remanded *Shell Oil* and removed a judge because his *wife* had some stock in old-line Shell Oil. By contrast, Judge Andrews does not consider his substantial JPMorgan holdings worthy of disclosure and disqualification. This conduct is contrary to the Code of Conduct and perpetrates a manifest injustice against Plaintiff. The conduct also undermines the public's confidence which Judge Rader says he cares about. The same standard of financial disclosure should apply in both cases. No "special justice" for powerful litigants is appropriate.

**Court ignores material new evidence not previously available to Plaintiff**: The Court is ignoring newly-discovered evidence that was not available to Plaintiff until recent months. This new evidence is newly-discovered JP Morgan mutual funds held by Judges Andrews and Stark. Then discovery of this new-found evidence would completely change the tenor of this trial. The Supreme Court said that the courts should not play these games in *Foman v. Davis*, 371 U.S. 178, 181-82 (Supreme Court 1962) stating:

> "The Federal Rules of Civil Procedure embody the principle that where possible, <u>cases should be decided on their merits and not on mere procedural technicalities</u>."

The Court's apparent double-standard in this case and the Court's deference to deep-pocketed litigants is apparent. Judges Andrews' and Stark's substantive misconduct more clearly and directly subverts the judicial process. The integrity of the judicial system is challenged. What can be more clear and convincing evidence than the new discovery of the Judges' JP Morgan holdings. Withholding of material evidence, even "without guile," is a denial of due process. This silence is directed to the judicial machinery itself, is a positive averment or a concealment when one is under a duty to disclose and deceives the court. This silence is constructive fraud, at a minimum, which is willful and hence in reckless disregard of the truth. Judge Andrews and Judge Stark engaged in constructive fraud, which by its "necessary tendency to deceive or mislead, or to violate a public or private confidence, or to impair or injure public interest, is deemed equally reprehensible with positive fraud, and is therefore prohibited by law…" Bovier's Law Dictionary- 1856 Edition. Corrupt judicial systems not only violate the basic right to equality before the law but deny procedural rights guaranteed by the United States Constitution. A substantive Due Process violation has occurred when judicial misconduct violates "fundamental fairness." *See* Rochin v. Ca, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 ('52), where the Supreme Court applied the

Due Process clause to the "whole course of the proceeding in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice …even toward those charged with the most heinous offences." Id. at 169. "…Sovereignty itself remains with the people, by whom and for whom all government exists and acts." U.S. Supreme Court in Yick Wo v. Hopkins, 118 US 356, 370. "<u>A void judgment which includes judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time in any court</u>..." Long v. Shorebank Dev Corp., 182 F. 3d 548 (C.A. 7 Ill. 1999). Chief Judge Edith Jones of the Fifth Circuit Court of Appeals stated on March 7, 2003: "The legal system has also been wounded by lawyers who themselves no longer respect the rule of law." "…how can a system founded on law survive if the administrators of the law daily display their contempt for it?" "..serious due process violation . . . [b]ut a failure to disclose is even more egregious because it threatens the right to a fair trial." A Certificate of Service is attached here below.

Respectfully submitted,

DATED: September 22, 2014

*Lakshmi Arunachalam*
_____
Dr. Lakshmi Arunachalam

222 Stanford Avenue
Menlo Park, CA 94025
650 854 3393
laks22002@yahoo.com

Inventor and Owner of Patents-in-Suit
and CEO, Pi-Net International, Inc.
*Pro-Se Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Dr. Lakshmi Arunachalam, hereby certify that on September 19, 2014, the attached "PI-NET INTERNATIONAL, INC.'S AND DR. LAKSHMI ARUNACHALAM'S RESPONSE TO DEFENDANT'S BRIEF IN OPPOSITION TO 60(D)(3) MOTION " was sent by PARCELS Inc. Courier Service of Wilmington, DE to the Clerk of the Court for filing and docketing in this case and I sent notification by email to the following registered attorneys of record that the attached "PI-NET INTERNATIONAL, INC.'S AND DR. LAKSHMI ARUNACHALAM'S RESPONSE TO DEFENDANT'S BRIEF IN OPPOSITION TO 60(D)(3) MOTION" has been sent by PARCELS Inc. Courier Service of Wilmington, DE to the Clerk of the Court for filing.
I further certify that on September 19, 2014, the attached "PI-NET INTERNATIONAL, INC.'S AND DR. LAKSHMI ARUNACHALAM'S RESPONSE TO DEFENDANT'S BRIEF IN OPPOSITION TO 60(D)(3) MOTION" was Electronically Mailed to the following Counsel for Defendant:

douglas.nemec@skadden.com for J.P. Morgan Chase and Company.

DATED: September 22, 2014     /s/Lakshmi Arunachalam

Dr. Lakshmi Arunachalam
222 Stanford Avenue
Menlo Park, CA 94025
650 854 3393
laks22002@yahoo.com